David Chiappetta, State Bar No. 172099
dchiappetta@perkinscoie.com
Kaycie Wall, State Bar No. 226027
kwall@perkinscoie.com
PERKINS COIE LLP
101 Jefferson Drive
Menlo Park, California 94025
Telephone: 650.838.4300 / Facsimile: 650.838.4350

James McCullagh, *pro hac vice application to follow*
jmccullagh@perkinscoie.com
Joseph Cutler, *pro hac vice application to follow*
jcutler@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101
Telephone: 206.359.8000 / Facsimile: 206.359.9000

Attorneys for Plaintiff
FACEBOOK, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>POWER VENTURES, INC. d/b/a POWER.COM, a California corporation; POWER VENTURES, INC. a Cayman Island Corporation; STEVEN VACHANI, an individual; DOE 1, d/b/a POWER.COM, an individual and/or business entity of unknown nature; DOES 2 through 25, inclusive, individuals and/or business entities of unknown nature,<br><br>Defendants. | Case No. C-08-05780-JF<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**1) VIOLATION OF CONTROLLING THE ASSAULT OF NON-SOLICITED PORNOGRAPHY AND MARKETING ACT OF 2003, 15 U.S.C. § 7701,** *et seq.***;**<br><br>**2) VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030,** *et seq.***;**<br><br>**3) VIOLATION OF THE CALIFORNIA COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT, CALIFORNIA PENAL CODE SECTION 502;**<br><br>**4) COPYRIGHT INFRINGEMENT, 17 U.S.C. § 101,** *et seq.***;**<br><br>**5) VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. § 1201,** *et seq.***;**<br><br>**6) TRADEMARK INFRINGEMENT, 15 U.S.C. §§ 1114 and 1125(a);**<br><br>**7) TRADEMARK INFRINGEMENT UNDER CALIFORNIA LAW;**<br><br>**8) UNLAWFUL, UNFAIR, AND FRAUDULENT COMPETITION UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200**<br><br>**DEMAND FOR JURY TRIAL** |

For its complaint, Facebook, Inc. ("Facebook") alleges as follows:

## I. INTRODUCTION

1. This action arises from Defendants' infringement of Facebook's trademarks and copyrights, their unauthorized solicitation, storage and use of Facebook users' login information to gain unauthorized access to Facebook's protected computer network and the unauthorized use of Facebook user accounts to send unsolicited commercial messages to other Facebook users.

2. Facebook developed and operates one of the most popular social networking sites on the Internet that connects people with their friends, family and coworkers. Facebook allows users to join networks and to "friend" other users and thereby creates online communities of users with shared interests and connections. Facebook's widespread popularity, which now includes more than 132 million active users worldwide, is at least partially the result of the sophisticated methods of communication available on Facebook's website.

3. In addition to providing users with great flexibility in ways to communicate with their friends, Facebook is dedicated to protecting the privacy and security of its users. Facebook tightly controls access to its network, and implements a variety of features in order to protect the privacy and security of its users' personal information. One such security measure is the prohibition of soliciting or sharing user login information (i.e. username and password).

4. Facebook operates an "open development" platform called "Facebook Connect" that permits third party software developers to create applications that run on Facebook's website. Facebook grants developers interested in integrating their applications with Facebook a limited license to access Facebook's website. This limited license is conditioned on developers' compliance with specified development protocols and procedures for implementing Facebook Connect and accessing information stored on Facebook computers. The development protocols and procedures, including the requirement that third parties never solicit, collect, or store Facebook usernames or passwords, are intended to ensure the integrity of the Facebook website and interoperability of all Facebook applications.

5. Defendants operate a website accessible at http://power.com, which offers to integrate multiple social networking accounts into a single experience on Defendants' website.

Defendants have knowingly and willfully disregarded Facebook's protocols and procedures for accessing information stored on Facebook computers and are offering a product that solicits, stores, and uses Facebook login information to access information stored on Facebook computers without authorization and to display Facebook copyrighted material without permission. Defendants are also infringing upon Facebook's trademark by displaying and using the Facebook trademark without authorization in a manner that is likely to confuse consumers into wrongly believing that Defendants' services are affiliated with, sponsored by, or endorsed by Facebook. In addition to these injurious activities, Defendants are also inducing Facebook users to provide them with email addresses of their Facebook contacts ("Friends") for the purpose of sending unsolicited commercial messages that purposefully and falsely state that they come from "The Facebook Team."

6. Defendants have ignored Facebook's requests to respect its intellectual property rights, to cease its unauthorized access of Facebook's computer system and to stop interfering with its relationships with its users. In fact, Defendants essentially admit that their activities violate Facebook's rights, and they have informed Facebook that they made a "business decision" to continue these malicious activities.

7. Facebook, through this lawsuit, seeks to immediately stop Defendants from their continuing injurious actions, from which Facebook has suffered irreparable and incalculable harm, and which will continue unless Defendants are enjoined from further abuse of Facebook's trademarks and copyrighted material and unauthorized access to Facebook's protected computers.

## II. PARTIES

8. Plaintiff Facebook is a Delaware corporation with its principal place of business in Palo Alto, California.

9. Defendant Power Ventures, Inc. d/b/a Power.com is a corporation incorporated in California, doing business in the State of California.

10. Defendant Power Ventures, Inc. is a corporation incorporated in the Cayman Islands, doing business in the State of California. Facebook is informed and believes, and based

thereon, alleges that Power Ventures, Inc. directed, conducted, participated in, ratified, endorsed, or was otherwise involved in the acts complained of and has liability for such acts.

11.     Defendant Steven Vachani ("Vachani") is an individual who conducts business in the State of California and, on information and belief, is domiciled in this judicial district. Vachani purports to be the CEO of Power.com. Facebook is informed and believes, and based thereon, alleges that Vachani directed, conducted, participated in, ratified, endorsed, or was otherwise involved in the acts complained of and that he has liability for such acts.

12.     Defendant Doe 1 d/b/a Power.com is an individual or entity that operates and/or controls the website located at http://power.com and does business as Power.com. Doe 1 engaged in and is responsible in whole or in part for the wrongdoing alleged herein. Facebook is ignorant of the true name of Doe 1, which is a fictitious name. Facebook will amend this First Amended Complaint if and when the identity of Doe 1 becomes known.

13.     Does 2-25 are persons or entities responsible in whole or in part for the wrongdoing alleged herein. Facebook is informed and believes, and based thereon, alleges that Does 2 -5 individually directed, conducted, participated in, ratified, endorsed, or were otherwise involved in the acts complained of, and that they have liability for such acts. Facebook is ignorant of the true names of Does 2-25, which are fictitious names. Facebook will amend this First Amended Complaint if and when the identities of such persons or entities and/or the scope of their actions become known.

14.     Defendants Power Ventures, Inc. d/b/a Power.com, Power Ventures, Inc., Vachani and the Doe Defendants are referred to collectively in this First Amended Complaint as "Defendants."

### III.     JURISDICTION AND VENUE

15.     This Court has federal question jurisdiction of this action under 28 U.S.C. § 1331 because this action alleges violations of federal statutes, including the Computer Fraud and Abuse Act (18 U.S.C. § 1030), the Copyright Act (17 U.S.C. 101), the Digital Millennium Copyright Act (17 U.S.C. 1201); and the Lanham Act (15 U.S.C. 1114 and 1125(a)). The Court has supplemental jurisdiction over the remaining claims under 29 U.S.C. § 1367.

16. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims raised in this lawsuit occurred in this District.

17. Jurisdiction and venue are also proper in this Court under California Penal Code § 520(j), which states: "For purposes of bringing a civil or a criminal action under this section, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, or computer network in each jurisdiction."

18. During all relevant times, Defendants have repeatedly, knowingly, and intentionally solicited Facebook usernames and passwords from Facebook users, and accessed or permitted access to Facebook servers located in this judicial district without Facebook's authorization. While accessing Facebook servers, Defendants made systematic and continuous contacts with this judicial district, and has targeted its wrongful acts at Facebook, which is headquartered in this judicial district.

## IV.  INTRADISTRICT ASSIGNMENT

19. Assignment to the San Jose Division of this Court is appropriate under Civil L.R. 3-2, in that the claims asserted herein arose in the county of Santa Clara. Facebook is headquartered in the county of Santa Clara, and it has servers located at several locations in this county.

## V.  FACTS AND BACKGROUND

### A.  Facebook Background

20. Facebook owns and operates the widely popular social networking website located at http://www.facebook.com. Facebook currently has more than 132 million active users.

21. To access its computer network and social networking website, Facebook requires each user to register with a unique username and password. Only registered users may access Facebook user profiles or use the Facebook service and/or applications.

22. Registered users customize their user profile by adding content such as personal information, content related to their interests, and photographs, which can then be shared with other Facebook users with whom the user has a Facebook connection.

- 5 -

23. Facebook user profiles are available for viewing and Facebook users may be contacted only by Facebook or other registered Facebook users.

24. Users increase the number of Facebook connections by joining networks of users with shared interests, by inviting other Facebook users to be their "friends" or by accepting "friend" invitations from other users. A Facebook user cannot add a "friend" to his or her profile until the friend consents to being added to the user's friend list. In this manner, Facebook's website creates a virtual social network of interconnected profiles.

25. Facebook permits users to control access to different portions of their profile to the user's friends, friends of friends, the user's networks, or a subset of these groups. The ability to control access to certain parts of a user's profile, including messaging options, minimizes unwanted communications and increases the security of Facebook communications.

26. Secure communication between Facebook users is vital to the integrity of Facebook's proprietary computer network as well as to the level of confidence that users have in using Facebook. Facebook does not tolerate or permit the use of its service or site for sending unsolicited commercial messages ("spam").

27. Facebook grants third parties a limited license to create applications that interact with Facebook's proprietary network, provided that these applications adhere to a standardized set of protocols and procedures and that the third party developers agree to Facebook's Developer Terms of Service, Facebook Terms of Use, and all other applicable Facebook Terms and Policies. Among the reasonable limitations that Facebook places on developers is the prohibition of applications that:

a. request, collect, solicit or otherwise obtain access to usernames, passwords or other authentication credentials from any Facebook Users, or [] proxy authentication credentials for any Facebook Users for the purposes of automating logins to the Facebook Site;

b. interfere or attempt to interfere in any manner with the functionality or proper working of the Facebook Site or Facebook Platform, or any portion or feature of either; and

c.      engage in spamming or other advertising or marketing activities that violate any applicable laws, regulations or generally-accepted advertising industry guidelines.

28.      Facebook permits integration with third party websites, and even permits exchange of proprietary data with third party websites, provided that the third party website uses Facebook's "Connect" service, which allows users to "connect" their Facebook identity, friends and privacy to any site using a trusted authentication interface.  This interface ensures that Facebook users only provide their login information to Facebook, and that this sensitive information is stored only on Facebook's secure servers – not the servers of the third party websites.  By offering Facebook Connect, Facebook enables users to integrate with other sites without compromising Facebook's commitment to safeguard its users' privacy and security. Facebook does not permit third party access to Facebook user profile data unless such third parties use Facebook Connect.

**B.      Facebook's Terms of Use**

29.      Before Facebook activates a username and permits a user access to certain features of the Facebook website, the user must agree to Facebook's Terms of Use, which set forth the acceptable terms of use of its computer network and prohibit users from conducting certain activities.  These Terms of Use are attached as Exhibit A and can also be found at: http://www.facebook.com/terms.php?ref=pf.

30.      Facebook's Terms of Use require Facebook users to abide by certain rules of user conduct, in which among other things, users agree that in their use of Facebook's Service or Site, they will refrain from:

a.      soliciting personal information from anyone under 18 or soliciting passwords or personally identifying information for commercial or unlawful purposes;

b.      using or attempting to use another's account, service or system without authorization from Facebook, or creating a false identity on Facebook;

c.      using automated scripts to collect information from or otherwise interact with the Facebook website;

d.      impersonating any person or entity, or falsely stating or otherwise misrepresenting oneself;

e.      uploading, posting, transmitting, sharing or otherwise making available any unsolicited or unauthorized advertising, solicitations, promotional materials, junk mail, spam, chain letters, pyramid schemes or any other form of solicitation;

f.      harvesting or collecting email addresses or other contact information of other users from Facebook by electronic or other means for purposes of sending unsolicited emails or other unsolicited communications;

g.      registering for more than one User account or falsely stating or otherwise misrepresenting oneself; and

h.      using Facebook's website for commercial use without the express permission of Facebook.

31.     Facebook users who agree to Facebook's Terms of Use enjoy a limited license to access and use Facebook's website and services.  However, "[a]ny use of the Site or the Site Content other than as specifically authorized herein, without the prior written permission of Company, is strictly prohibited and will terminate the license granted herein."  Thus, unauthorized use of Facebook's website terminates a user's license to access the site.

## C.      Facebook's Copyrights

32.     Facebook's website is, by design, uniquely distinctive in its creative composition and its comprehensive and user friendly interfaces.  Among the significant unique elements of the Facebook website is the distinctive account registration and login page.

33.     Facebook's website embodies its promise to provide an easy to use, highly interactive service that encourages individual expression and allows users to disseminate personal information to a controlled group of friends through varying methods including news feeds, direct messaging, status updates, wall-posts and forums.  The website, including its innovative, yet accessible interfaces is fundamental to Facebook's reputation and garners substantial and valuable goodwill with its users.

- 8 -

34.     As an online venture, the intellectual property related to the Facebook website is a vital asset to Facebook.

35.     Facebook's website is a work of authorship protected by copyright law.

36.     Facebook owns all right, title and interest, including copyrights, in and to its website. The Facebook website is copyright protected under Registration No. VA-0001409016, dated November 7, 2006, and entitled "Facebook homepage."

**D.     Facebook's Trademarks**

37.     Facebook also carefully protects its trademarks.

38.     Facebook owns all common law rights in the FACEBOOK mark.

39.     Facebook is also the owner of U.S. federal registrations: 3041791, 3122052 for the FACEBOOK mark, covering, *inter alia,* "providing an online directory information service featuring information regarding, and in the nature of, collegiate life, general interest, classifieds, virtual community, social networking, photo sharing, and transmission of photographic images, advertising and information distribution services…; providing on-line computer databases and on-line searchable databases in the field of collegiate life, general interest, classifieds, virtual community, social networking, photosharing, videosharing and transmission of photographic images;" "providing online chat rooms and electronic bulletin boards for registered users for transmission of messages concerning collegiate life, general interest, classifieds, virtual community, social networking, photo sharing, and transmission of photographic images;" "computer services, namely, hosting online web facilities for others for organizing and conducting online meetings, gatherings, and interactive discussions;" and "internet based introduction and social networking services."

40.     FACEBOOK has been used in commerce by Facebook since 2004. Facebook's use has been continuous and exclusive.

41.     Facebook has attained strong name recognition in the FACEBOOK mark. The mark has come to be associated with Facebook and identifies Facebook as the source of advertising, information, online directory information, internet based introduction, online chat

rooms, bulletin boards, hosting online web facilities and social networking services offered in connection with the mark.

42.     Facebook has also developed substantial goodwill in the FACEBOOK mark.

43.     Facebook's website is currently the leading social networking site based on the number of unique visitors that visit its site each month.  In fact, it is one of the most visited websites in the world, attracting over 132 million unique visitors in a month.

44.     The Facebook mark is among Facebook's most important and valuable assets.

**E.     Defendants' Unauthorized Activities**

45.     Power.com's website, located at http://power.com, induces visitors to surrender their Facebook usernames and passwords in order to "integrate" their Facebook account into Power.com's website.

46.     On information and belief, Defendants or individuals acting in concert with Defendants, in developing and testing Power.com's website, registered for at least one Facebook account and during all relevant times agreed to abide by Facebook's Terms of Use.

47.     At no time have Defendants received permission from Facebook to conduct any commercial activity on Facebook's website.

48.     At no time have Defendants received permission from Facebook to use other users' accounts to access Facebook's computer systems.

49.     On or before December 1, 2008, Power.com began advertising and offering integration with Facebook's site.

50.     In order for a visitor to integrate a Facebook account into Power.com's website, Power.com requires that users provide it with their Facebook username and password.

51.     Power.com stores these passwords outside of Facebook's network, and outside the control of Facebook's security staff.

52.     Upon information and belief, on or before December 1, 2008, Power.com began to "scrape" proprietary data from Facebook users who had given their login credentials as part of its integration services.  This data was copied from Facebook's site and re-purposed and re-displayed on Power.com's website.

- 10 -

53.     At no time have Defendants received permission from Facebook to represent that solicitation of Facebook username and passwords was authorized or endorsed by Facebook.

54.     At no time have Defendants received permission from Facebook to use automated scripts to collect information from or otherwise interact with the Facebook's website or to access Facebook's computers for the purpose of scraping user data from Facebook and displaying it on Power.com's website.

55.     Defendants' actions are knowing, intentional, willful, malicious and fraudulent.

56.     Upon information and belief, Defendants do not disclose to their customers that their services are unlawful and violate the Facebook Terms of Use.  Indeed, Defendants knowingly, willfully, intentionally, fraudulently and maliciously induce, encourage and assist Facebook users in abusing the Facebook system and violating Facebook's Terms of Use.

**1.     Facebook Notified Power.com of Its Unauthorized and Unlawful Activity**

57.     Facebook notified Defendant Vachani on December 1, 2008, that Power.com's access of Facebook's website and servers was unauthorized and violated Facebook's rights, including Facebook's trademark, copyrights, and business expectations with its users.

58.     On December 12, 2008, Defendant Vachani responded to Facebook's notice by promising that Power.com would "implement Facebook connect on our main login page and work with the capabilities of Facebook connect for the login to our site."  He also promised that Power.com would "delete any Facebook friend information we currently have."  He "estimate[d] that it [would] take 2 weeks to completely finish this integration with Facebook connect and shift the user experience for our current users."

59.     On December 15, 2008, Facebook communicated its acknowledgement of Defendant Vachani's promise to have Facebook Connect integrated into Power.com's website within two weeks (by December 26), and to purge and delete any Facebook information that Power.com already had.

60.     On December 17, 2008, Defendant Vachani for the first time communicated his concern that Power.com might not be able to integrate Facebook Connect fully by the December 26, 2008 deadline, and asked for an extension of time to integrate Facebook Connect.

- 11 -

61.     On December 22, 2008, Defendant Vachani further responded to Facebook that Power.com intended to comply with the December 26, 2008 deadline to take down all integration services with Facebook.com, remove all Facebook trademarks from Power.com's website, and purge and destroy any ill-gotten data, including user login information, even if it had not fully integrated Facebook Connect as a replacement solution.

62.     However, despite his earlier promises, after close of business on Friday December 26, 2008, Defendant Vachani sent an email to Facebook's counsel expressing for the first time Power.com's "business decision" to continue its website's unauthorized use of Facebook user login credentials and unauthorized access to Facebook's computers until it was able to fully implement Facebook's Connect service. Defendant Vachani estimated that this would take more than five additional weeks to complete.

63.     Upon learning of Power.com's intent to continue accessing Facebook's computers without authorization, Facebook implemented technical measures to block access to the Facebook Site by Power.com.

64.     Upon information and belief, Defendants deliberately circumvented Facebook's technological security measures in order to continue Power.com's unlawful practice of accessing Facebook's computers systems without authorization and to thereby obtain proprietary information from Facebook.

**2.      Defendants Are Sending Unsolicited Commercial Messages to Facebook Users**

65.     On or before December 26, 2008, Power.com began a "Launch Promotion" that promises Power.com's website's users the chance to win one hundred dollars if they successfully invite and sign up the most new Power.com users.

66.     As part of this promotion, Power.com provides participants with a list of their Facebook friends, obtained without authorization by Power.com from Facebook, and asks the participant to select which of those friends should receive a Power.com invitation. Power.com then sends unsolicited commercial emails to those friends.

67.     These unsolicited commercial emails are deceptive and misleading.

68. The "from" line of the emailed messages purports to come from "Facebook" and uses an "@facebookmail.com" address, not Power.com.

69. The message, drafted by Power.com, is signed by "The Facebook Team," which is both misleading and false.

70. An example of one of these unsolicited messages is included here:

**From: Facebook <eventmaster+z0s9a6jc@facebookmail.com>**
**To:** [Redacted]
**Subject:** Nik [Redacted] invited you to the event "Bring 100 friends and win 100 bucks!"...
**Date:** Tue, Dec 30, 2008 at 11:44 AM

---

```
Nik invited you to "Bring 100 friends and win 100 bucks!" on Friday, March 20
at 1:00am.

Nik says, "Bring 100 friends and win 100 bucks!".

Event: Bring 100 friends and win 100 bucks!
What: Reunion
Host: Power
Start Time: Friday, March 20 at 1:00am
End Time: Friday, March 20 at 11:55pm
Where: Power

To see more details and RSVP, follow the link below:
http://www.facebook.com/n/?event.php&eid=[redacted]

Thanks,
The Facebook Team
___

Want to control which emails you receive from Facebook? Go to:

http://www.facebook.com/editaccount.php?notifications&md=ZXZlbnRfaW52aXRlO2Zyb
209MTEzNTM3MDM4NztlaWQ9NDc0NjIwODk7dG89MTEwNzc2ODMyOA==
```

71. The unsolicited commercial messages do not properly identify the initiators of the messages, nor do they provide clear or conspicuous notice that the messages are advertisements for Power.com, information on how recipients can opt-out of future messages, or a valid address that recipients can use to contact the Defendants.

72. Power.com's offer of potential monetary compensation induces Facebook users to participate in Power.com's "Launch Promotion." Power.com then sends these unsolicited messages to the user's Facebook friends.

73.     Defendants' use of a Facebook address to send these messages and deceptive sender and signature information is likely to confuse recipients and lead to the false impression that Facebook is affiliated with, endorses, or sponsors these messages.

**3.     Defendants Are Violating Facebook's Intellectual Property Rights**

74.     Upon information and belief, Defendants developed computer software and other automated devices and programs to access and obtain information from the Facebook website for aggregating services.

75.     Upon information and belief, Defendants accessed and copied the Facebook website (including but not limited to, creation of cached copies of the website) to develop, test, implement, use and provide Defendants' aggregating services.

76.     Defendants without authorization have used the famous FACEBOOK mark in commerce to advertise Defendants' services on the Internet in a manner likely to confuse consumers as to its association, affiliation, endorsement or sponsorship with or by Facebook

77.     Defendants' unauthorized use of the FACEBOOK mark includes, but is not limited to, use of the mark on Power.com's website to advertise its services and in unsolicited promotional emails sent to current Facebook users.

78.     Defendants' use of the FACEBOOK mark causes confusion and mistake and is likely to deceive customers and potential customers regarding the origin, affiliation, association, connection, and/or endorsement of Defendants' services and website with or by Facebook.

79.     At no time has Facebook authorized or consented to Defendants' use of the FACEBOOK mark or any other Facebook intellectual property.

80.     At no time has Facebook had any association, affiliation or connection with, or endorsed Defendants' services, Power.com's website or Defendants.  Specifically, Defendants' services are not authorized, approved, endorsed or sponsored by, or associated, affiliated or connected with Facebook, and Defendants and Power.com's website is not authorized, approved, endorsed, or sponsored by, or associated, affiliated or connected with Facebook.

81.     In using the FACEBOOK mark, Defendants have willfully and deliberately sought to profit from Facebook's pre-established goodwill and reputation.

- 14 -

82.  Facebook has suffered significant harm to its reputation and goodwill due to Defendants' actions and will continue to suffer irreparable harm to its reputation and goodwill if Defendants' conduct is not enjoined.

83.  Facebook has suffered economic damages in excess of $5,000, including effort and resources used to investigate and combat Defendants' unauthorized access to Facebook computers and sending of unsolicited commercial messages, to prevent further attacks and to locate and identify the Defendants.

84.  Upon information and belief, Defendants willfully and maliciously engaged in unauthorized access to and appropriation of Facebook computers, servers, systems, networks and data, including network information, Facebook user information, and Facebook user login information.

85.  Upon information and belief, Defendants willfully and maliciously sent deceptive and unsolicited commercial messages in order to trick Facebook users into believing that Facebook authorized Defendants' solicitation of their login credentials and to thereby profit from Defendants' unlawful spamming scheme.

86.  Defendants benefited financially from their behavior while at the same time harming Facebook and its users.

## VI.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**VIOLATION OF CONTROLLING THE ASSAULT OF NON-SOLICITED PORNOGRAPHY AND MARKETING ("CAN-SPAM"), 15 U.S.C. § 7701, *et seq.***

87.  Plaintiff Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

88.  Facebook is a provider of Internet access service as defined in 15 U.S.C. § 7702(11) because it provides a service that enables users to access content, information, electronic mail, or other services offered over the Internet, and may also include access to proprietary content, information, and other services as part of a package to consumers.

89.  Facebook's website and computers operate in interstate and foreign commerce and communication and are therefore protected computers under 15 U.S.C. § 7702(13).

- 15 -

90.     Facebook's computers that operate the website are involved in interstate and foreign commerce and communication and are therefore protected computers under 15 U.S.C. § 7702(13).

91.     The electronic messages initiated by Defendants were "commercial" electronic messages because their primary purpose was the commercial advertisement or promotion of a commercial product or service (including content on an Internet website operated for a commercial purpose) as provided in 15 U.S.C. § 7702(2)(A).

92.     Defendants intentionally misled Facebook users by initiating the transmission of commercial electronic messages through Facebook's computers to Facebook users that contained header information that was materially false or misleading as to the true identity of the sender of the messages in violation of 15 U.S.C. § 7704(a)(3).

93.     Defendants initiated the transmission of commercial electronic messages, in a pattern or practice, through Facebook's computers to Facebook users, that did not contain a functioning return electronic mail address or other Internet-based opt-out mechanism in violation of 15 U.S.C. § 7704(a)(3).

94.     Defendants initiated the transmission of commercial electronic messages, in a pattern or practice, through Facebook's computers to Facebook users, that did not contain clear and conspicuous identification that the messages were advertisements or solicitations, clear and conspicuous notice of the opportunity to decline to receive further commercial emails from the sender, and a valid physical postal address of the sender in violation of 15 U.S.C. § 7704(a)(5).

95.     Defendants initiated the transmission of commercial electronic messages, in a pattern or practice, through Facebook's computers to Facebook users, that contained "from" lines that were misleading regarding the actual sender of the message and misleading regarding Facebook's connection to the messages in violation of 15 U.S.C. § 7704(a)(2).

96.     Facebook is informed and believes, and based thereon alleges, that Defendants initiated the transmission of the misleading commercial electronic messages with actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that the

- 16 -

messages' subject heading would be likely to mislead a recipient, acting reasonably under the circumstances.

97. Facebook is informed and believes, and based thereon alleges, that Defendants initiated the transmission of commercial electronic messages, in a pattern or practice, through Facebook's computers to Facebook users, that are misleading and unlawful under 15 U.S.C. § 7704(a), as alleged above, or assisted in the origination of such messages through the unauthorized relay or retransmission of the messages as defined in 15 U.S.C. § 7704(b)(3).

98. Defendants have caused Facebook harm by deterring users and potential users from using Facebook; by damaging Facebook's goodwill and reputation with its customers; and by causing other injuries to Facebook.

99. Facebook is entitled to an injunction prohibiting further violations of CAN-SPAM by Defendant as provided by 15 U.S.C. § 7706(g)(1)(A), since it will continue to suffer immediate and irreparable harm if Defendants' conduct is not enjoined. Facebook has no adequate remedy at law.

100. Facebook is entitled to the greater of its actual monetary loss or statutory damages as provided by 15 U.S.C. § 7706(g)(1)(B), in an amount to be proven at trial.

101. Facebook is entitled to an award of aggravated damages in an amount equal to three times the amount otherwise available pursuant to 15 U.S.C. § 7706(g)(3)(C) because Defendants violated CAN-SPAM willfully and knowingly and because Defendants' unlawful activity included one or more of the aggravated violations set forth in 15 U.S.C. § 7704(b).

102. Facebook is entitled to reasonable costs, including reasonable attorneys' fees as provided by 15 U.S.C. § 7706(g)(4).

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030, *et seq.***

103. Plaintiff Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

104. Facebook's computers are involved in interstate and foreign commerce and communication, and are protected computers under 18 U.S.C. § 1030(e)(2).

105. On information and belief, Defendants knowingly and intentionally accessed Facebook's computers without authorization or in excess of authorization as defined by Facebook's Terms of Use.

106. On information and belief, after gaining unauthorized access to Facebook servers, Defendants obtained and used valuable information from Facebook's protected computers in transactions involving interstate or foreign communications. This information included, among other things, Facebook users' friend lists, and the means of sending messages to those friends. The use included sending unauthorized messages from Facebook user accounts without authorization and copying proprietary Facebook data and re-displaying it on Power.com's website.

107. Defendants knowingly, willfully, and with an intent to defraud accessed Facebook's computers without authorization or in excess of authorization and obtained valuable information from Facebook's computers that, on information and belief, Defendants used to obtain something of value.

108. Defendants knowingly, willfully, and with an intent to defraud trafficked in login information through which computers were accessed without authorization, affecting interstate commerce.

109. Defendants' conduct has caused a loss to Facebook during a one-year period in excess of $5,000.

110. Facebook has been damaged by Defendants' actions, including being forced to expend resources to investigate the unauthorized access and abuse of its computer network. Facebook seeks compensatory and other equitable relief under 18 U.S.C. § 1030(g) in an amount to be proven at trial.

111. Facebook has suffered irreparable and incalculable harm and injuries resulting from Defendants' conduct, which harm will continue unless Defendants are enjoined from further unauthorized use of Facebook's protected computers. Facebook has no adequate remedy at law.

112.     Plaintiff Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations contained in all the preceding paragraphs.

113.     Defendants knowingly accessed and without permission used Facebook data, computers, computer systems and/or computer network in order to devise and/or execute a scheme to defraud and deceive in violation of California Penal Code § 502(c)(1).

114.     Defendants knowingly accessed and without permission took, copied, and/or used data from Facebook's computers, computer systems and/or computer network in violation of California Penal Code § 502(c)(2).

115.     Defendants knowingly and without permission used or caused to be used Facebook's computer services in violation of California Penal Code § 502(c)(3).

116.     Defendants knowingly and without permission accessed and added data to Facebook's computers, computer systems and/or computer network in violation of California Penal Code § 502(c)(4).

117.     Defendants knowingly and without permission accessed or caused to be accessed Facebook's computers, computer systems, and/or computer network in violation of California Penal Code § 502(c)(7).

118.     Facebook suffered and continues to suffer damage as a result of Defendants' violations of the California Penal Code § 502 identified above.

119.     Defendants' conduct also caused irreparable and incalculable harm and injuries to Facebook (including, but not limited to, Facebook's reputation and goodwill), and, unless enjoined, will cause further irreparable and incalculable injury, for which Facebook has no adequate remedy at law.

120.     Defendants willfully violated California Penal Code § 502 in disregard and derogation of Facebook's rights and the rights of legitimate Facebook users, and Defendants' actions as alleged above were carried out with oppression, fraud and malice.

121.     Pursuant to California Penal Code § 502(e), Facebook is entitled to injunctive relief, compensatory damages, punitive or exemplary damages, attorneys' fees, costs and other equitable relief.

**FOURTH CLAIM FOR RELIEF**
**COPYRIGHT INFRINGEMENT (DIRECT VICARIOUS AND CONTRIBUTORY)**
**17 U.S.C. § 101, *et seq.***

122.     Plaintiff Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

123.     Plaintiff Facebook owns and has registered copyrights in its website.

124.     Defendants had and have access to Facebook's website.

125.     Defendants have copied and/or created derivative works from Facebook's website and/or portions thereof, and continues to do so.

126.     Defendants' copies and/or derivative works are substantially similar to Facebook's original copyright-protected website.

127.     The copies and/or derivative works created by Defendants are unauthorized.

128.     At all times relevant, Defendants obtained direct financial benefit from the infringement and had the right and ability to control the infringing conduct, and/or intentionally induced, encouraged, caused or materially contributed to the infringement.

129.     The foregoing acts of Defendants constitute direct infringement, vicarious infringement, and/or contributory infringement of Facebook's exclusive rights in its copyrighted works under 17 U.S.C. § 106.

130.     Upon information and belief, Defendants' actions were and are intentional, willful, wanton and performed in disregard of Facebook's rights.

131.     Plaintiff Facebook has been and will continue to be damaged, and Defendants have been unjustly enriched by, Defendants' unlawful infringement.

132.     Defendants' conduct also has caused irreparable and incalculable harm and injuries to Facebook, and, unless enjoined, will cause further irreparable and incalculable injury, for which Facebook has no adequate remedy at law.

133.    Plaintiff Facebook is entitled to the relief provided by 17 U.S.C. §§ 502-505, including but not limited to, injunctive relief, an order for the impounding and destruction of all of Defendants' infringing copies and/or derivative works, compensatory damages (including, but not limited to actual damages and/or Defendants' profits), statutory damages, punitive damages, and Facebook's costs and attorneys' fees in amounts to be determined at trial.

## FIFTH CLAIM FOR RELIEF
## VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT ("DMCA")
## 17 U.S.C. § 1201, *et seq.*

134.    Plaintiff Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

135.    Plaintiff Facebook has registered copyrights in its website.

136.    Plaintiff Facebook employs numerous technological measures, including identification and blocking the IP addresses of known offenders.

137.    Defendants have circumvented and are circumventing technological measures that effectively control access to Facebook's copyrighted website and portions thereof.

138.    On information and belief, Defendants manufacture, import, provide, offer to the public, or otherwise traffics in technology, products, services, devices, components, or parts thereof, that are primarily designed or produced for the purpose of circumventing technological measures and/or protection afforded by technological measures that effectively control access to Facebook's copyrighted website and/or portions thereof.

139.    On information and belief, Defendants' technology products, services, devices, components or parts thereof, are primarily designed or produced for the purpose of circumventing technological measures and/or protection afforded by technological measures that effectively control access to Facebook's copyrighted website and/or portions thereof.

140.    On information and belief, Defendants' technology, products, services, devices, components, or parts thereof have no or limited commercially significant purpose or use other than to circumvent technological measures that effectively control access to the Facebook website and/or portions thereof.

141.     On information and belief, Defendants and/or others acting in concert with Defendants market such technology, products, services, devices, components, or parts thereof with Defendants' knowledge for use in circumventing technological measures that effectively control access to Facebook's website and/or portions thereof.

142.     Facebook has been and will continue to be damaged in an amount not presently known with certainty, but which will be proven at trial.

143.     Defendants' conduct also has caused irreparable and incalculable harm and injuries to Facebook, and, unless enjoined, will cause further irreparable and incalculable injury, for which Facebook has no adequate remedy at law.

144.     Facebook is entitled to the range of relief provided by 17 U.S.C. §§ 1201-1203, including, but not limited to, injunctive relief, compensatory damages or statutory damages, punitive damages, and Facebook's costs and attorneys' fees in amounts to be proven at trial.

## SIXTH CLAIM FOR RELIEF
### TRADEMARK INFRINGEMENT, 15 U.S.C. §§ 1114 and 1125(a)

145.     Plaintiff Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

146.     Plaintiff Facebook owns U.S. federal registrations 3041791, 3122052 for the FACEBOOK mark.  These registrations are in full force and effect and are enforceable.

147.     At all times relevant, Defendants exercised ownership or control over online advertising for its products, services and websites, and knowingly cooperated in and/or induced encouraged, enabled or aided the infringement of Facebook's trademark rights in online advertising for its products, services and website.

148.     Defendants' use of the FACEBOOK mark in interstate commerce is likely to cause customer confusion or to cause mistake or to deceive as to the origin of the products and services offered and sold by Defendants and as to their affiliation, connection, or association with and/or endorsement or approval by Facebook.

149.    The foregoing acts of Defendants constitute false designation of association, affiliation, connection, endorsement and/or approval under 15 U.S.C. § 1125(a), and/or vicarious or contributory infringement of Facebook's rights under 15 U.S.C. § 1125(a).

150.    Defendants' actions also constitute the use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of a registered trademark of Facebook in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion or mistake, or to deceive, in violation of 15 U.S.C. § 1114.

151.    Upon information and belief, Defendants have engaged in such false designation of origin, association, affiliation, connection, endorsement and/or approval knowingly, willfully, deliberately, and in conscious disregard of Facebook's rights, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

152.    Facebook has been damaged and will continue to be damaged, and Defendants have been unjustly enriched, by such unlawful conduct in an amount to be proven at trial.

153.    In addition, Defendants' conduct described herein has caused and, if not enjoined, will continue to cause irreparable damage to Facebook's rights in its marks, and to the business, positive reputation and goodwill of Facebook, which cannot be adequately compensated solely by monetary damages.  Facebook therefore has no adequate remedy at law and seeks permanent injunctive relief pursuant to 15 U.S.C. § 1116.

## SEVENTH CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT UNDER CALIFORNIA LAW

154.    Plaintiff Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

155.    Plaintiff Facebook owns common law rights in the FACEBOOK mark that date back to 2004.

156.    The acts and conduct of Defendants as alleged in the Sixth Claim for Relief immediately above constitute trademark infringement under the common law of California

## EIGHTH CLAIM FOR RELIEF
### UNLAWFUL, UNFAIR, AND FRAUDULENT COMPETITION UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, et seq.

157.     Plaintiff Facebook realleges and incorporates by reference, as is fully set forth herein, the allegations in all the preceding paragraphs.

158.     The acts and conduct of Defendants as alleged above in this Complaint constitute unlawful, unfair, and/or fraudulent business acts or practices as defined by Cal. Bus. & Prof. Code § 17200 et seq.

159.     Defendants' acts of unlawful, unfair, and fraudulent competition have caused harm to competition, to consumers, and to its competitors.  Defendants' acts of unlawful, unfair, and fraudulent competition have proximately caused Facebook to suffer injury in fact and loss of money and/or property (including as a result of expenses that Facebook has incurred, and continues to incur, in its efforts to prevent and deter Defendants from engaging in unlawful conduct) in an amount to be proven at trial.  Defendants' acts of unlawful, unfair, and fraudulent competition also have caused irreparable and incalculable injury to Facebook, to the FACEBOOK mark and trade name and to the business and goodwill represented thereby, and, unless enjoined, could cause further irreparable and incalculable injury, whereby Facebook has no adequate remedy at law.

## VII.     PRAYER FOR RELIEF

**WHEREFORE**, plaintiff Facebook prays for the following relief:

A.     For injunctive relief, as follows:  A permanent injunction enjoining and restraining Defendants, and all persons or entities acting in concert with them, during the pendency of this action and thereafter perpetually from:

1.     soliciting and/or storing Facebook login information;

2.     accessing or attempting to access Facebook's website and computer systems;

3.     initiating unsolicited commercial electronic mail messages to Facebook users;

1        4.     procuring unsolicited commercial electronic mail messages to Facebook

2               users;

        4.      procuring unsolicited commercial electronic mail messages to Facebook users;

        5.      displaying Facebook's trademark anywhere on their websites;

        6.      engaging in any activity that disrupts, diminishes the quality of, interferes with the performance of, or impairs the functionality of Facebook's website; and

        7.      engaging in any activity that violates Facebook's Terms of Use.

    B.      An award to Facebook of damages, including but not limited to, compensatory, statutory, and punitive damages, as permitted by law and in such amounts to be proven at trial.

    C.      An award to Facebook of reasonable costs, including reasonable attorneys' fees.

    D.      For pre and post-judgment interest as allowed by law.

    E.      For such other relief as the Court may deem just and proper.


DATED: January 13, 2009         **PERKINS COIE** LLP


By: /s/ _____
       David P. Chiappetta

Attorneys for Plaintiff
FACEBOOK, INC.

- 25 -

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable in this action.

DATED: January 13, 2009

**PERKINS COIE** LLP

By: /s/
_____
   David P. Chiappetta

Attorneys for Plaintiff
FACEBOOK, INC.