David Chiappetta, (State Bar No. 172099)
dchiappetta@perkinscoie.com
Kaycie Wall, (State Bar No. 226027)
kwall@perkinscoie.com
PERKINS COIE LLP
101 Jefferson Drive
Menlo Park, CA  94025-1114
Telephone: 650.838.4300
Facsimile:  650.838.4350

James McCullagh, *pro hac vice application to follow*
jmccullagh@perkinscoie.com
Joseph Cutler, *pro hac vice application to follow*
jcutler@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101
Telephone:  206.359.8000
Facsimile:  206.359.9000

Attorneys for Plaintiff
  FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>POWER VENTURES, INC.,  a Cayman Island Corporation; STEVEN VACHANI, an individual; DOE 1, d/b/a POWER.COM, an individual and/or business entity of unknown nature; DOES 2 through 25, inclusive, individuals and/or business entities of unknown nature,<br><br>    Defendants. | **08-CV-05780 JF**<br><br>**PLAINTIFF FACEBOOK, INC.'S OPPOSITION TO DEFENDANTS POWER VENTURES, INC.'S AND STEVEN VACHANI'S MOTION TO DISMISS**<br><br>**Judge:**  Honorable Jeremy Fogel<br>**Hearing Date:**  May 8, 2009<br>**Hearing Time:** 9:00 a.m.<br>**Crtm:**  Courtroom 3 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1
II. STATEMENT OF ISSUES ............................................................................................. 1
III. STATEMENT OF RELEVANT FACTS ........................................................................ 1
IV. ARGUMENT ................................................................................................................... 2
   A. Legal Standard .................................................................................................... 2
   B. The First Amended Complaint States a Claim Under Each Cause of Action......... 3
      1. Violation of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (First Claim)............................. 3
      2. Violation of the Computer Fraud and Abuse Act, (Second Claim) ............ 5
      3. Violation of California Penal Code Section 502 (Third Claim) ................. 8
      4. Copyright Infringement (Fourth Claim)........................................................ 9
      5. The First Amended Complaint States a Claim for Violation of the Digital Millennium Copyright Act (Fifth Claim) ....................................... 9
      6. Trademark Infringement under the Lanham Act (Sixth Claim)................. 11
      7. Claim for Trademark Infringement Under California Law (Seventh Claim)........................................................................................................... 12
      8. Unlawful, Unfair and Fraudulent Competition Under California Business & Professions Code § 17200 ...................................................... 12
   C. Defendants' Alternative Request for a More Definite Statement Should be Denied ................................................................................................................. 13
V. CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

Page

**Cases**

*A.G. Edwards & Sons, Inc. v. Smith*, 736 F. Supp. 1030 (D. Ariz. 1989). ................................. 14

*Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446 (9th Cir. 1991) ........................................................................................................ 13

*Am. Online, Inc. v. LCGM, Inc.*, 46 F. Supp. 2d 444 (E.D. Va. 1998) ........................................ 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) ...................................... 2

*Boxall v. Sequoia Union High Sch. Dist.*, 464 F. Supp. 1104 (N.D. Cal.1979) ......................... 14

*Bureerong v. Uvawas*, 922 F. Supp. 1450 (C.D. Cal.1996) ....................................................... 13

*Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175 (9th Cir. 1988) ................................. 13

*Chamberlain Group, Inc. v. Skylink Technologies, Inc.*, 381 F.3d 1178 (Fed. Cir. 2004) .......... 10

*Conley v. Gibson*, 355 U.S. 41 (1957) ......................................................................................... 2

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997) ......................................................................... 4

*Coupons, Inc. v. Stottlemire*, 588 F. Supp. 2d 1069 (N.D. Cal. 2008) ...................................... 11

*Craigslist v. Autoposter Pro, Inc.*, No. CV 08 05069, 2009 WL 890896 (N.D. Cal. 2009) .......... 8

*Davison v. Santa Barbara High Sch. Dist.*, 48 F. Supp. 2d 1225 (C.D. Cal.1998) .................... 14

*EBay Inc., v. Digital Point Solutions, Inc., et al.*, No. 08-CV-4052 JF (PVT), 2009 WL 481269 (N.D. Cal. February 24, 2009) ................................................................................ 6, 8

*Erickson v. Pardus*, 551 U.S. 89 (2007). .................................................................................. 13

*Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087 (N.D. Cal. 2007) ................................. 8

*Falkowski v. Imation Corp.*, 309 F.3d 1123 (9th Cir. 2002). ....................................................... 2

*Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940 (E.D. Cal.1981) ........................ 14

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ......................................... 9

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997) ....................................................... 2

*Gordon v. Impulse Marketing Group, Inc.*, 375 F. Supp. 2d 1040 (E.D. Wash. 2005) ................ 3

*Haltman v. Aura Systems, Inc.*, 844 F. Supp. 544 (C.D. Cal. 1993) ........................................... 4

*Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122 (E.D. Cal. 2008) ...................................................................................................................... 5

**TABLE OF AUTHORITIES**
(continued)

Page

*M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073 (9th Cir. 2005) ............................................ 12

*Meta-Film Assocs, Inc. v. MCA, Inc.*, 586 F. Supp. 1346 (C.D. Cal. 1984) ................................. 13

*Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) ................................................................. 4

*Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998) .................................................................... 2

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114 (C.D. Cal. 2001). .................... 9

*Reid-Ashman Mfg, Inc. v. Swanson Semiconductor Service, LLC*, No. C-06-4693, 2007
   WL 1394427 (N.D. Cal. 2007) .................................................................................................. 4

*Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072 (C.D. Cal.1994). ......................................... 13

*San Bernardino Pub. Employees Ass'n v. Stout*, 946 F. Supp. 790 (C.D. Cal.1996) ................... 14

*Shade v. Gorman*, No. 08-Cv-3471, 2009 WL 196400 (N.D. Cal. Jan. 28, 2009). ........................ 6

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002). ............................................................. 2

*Ticketmaster LLC v. RMG Technologies, Inc.*, 507 F. Supp. 2d 1096 (C.D. Cal. 2007) ..... 9, 10, 11

*U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048 (9th Cir. 2001) ................................ 4

*Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097 (9th Cir. 2003) .............................................................. 3

*Visual Changes Skin Care Int'l, Inc. v. Neways, Inc.*, No CV F 08-0959 LJO DLB, 2008
   WL 4723603 (E.D. Cal. 2008) ................................................................................................. 13

*Walker v. Mattel, Inc.*, 210 F.3d 1108 (9th Cir. 2000) ................................................................. 13

*Warshaw v. Xoma Corp.*, 74 F.3d 955 (9th Cir. 1996) ................................................................... 4

*Wood v. Apodaca*, 375 F. Supp. 2d 942 (N.D. Cal. 2005). .......................................................... 12

*Zero Down Supply Chain Solutions, Inc. v. Global Transp. Solutions, Inc.*, No. 07-CV-
   400, 2008 WL 4642975 (D. Utah Oct. 17, 2008) ..................................................................... 5

**Statutes**

California Business & Professions Code § 17200 ................................................................... 12, 13

California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 ........ 1, 8

Computer Fraud and Abuse Act 18 U.S.C. § 1030, *et seq* .................................................. 1, 5, 6, 8

Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003, 15
   U.S.C. § 7701, *et seq*......................................................................................................... passim

# TABLE OF AUTHORITIES
**(continued)**

**Page**

Digital Millennium Copyright Act, 17 U.S.C. § 1201 .............................................................. 9, 11

Lanham Act, 15 U.S.C § 1114 ............................................................................................... 11

**Regulations and Rules**

Federal Rule Civil Procedure 8 ..................................................................................... 2, 8, 13

Federal Rule of Civil Procedure 9 ............................................................................... 3, 4, 5, 8

Federal Rule of Civil Procedure 12 ................................................................................. 2, 13

## I. INTRODUCTION

Power Ventures, Inc.'s and Steven Vachani's (collectively, "Defendants") Motion to Dismiss or in the Alternative for a More Definite Statement ignores clear, specific allegations of fact set forth in Facebook's First Amended Complaint (hereinafter "Complaint"). Far from being vague, the Complaint goes beyond the level of specificity required and describes in detail the who, what, when and where of Defendants' illicit acts that give rise to Facebook's claims. These activities include soliciting Facebook user names and passwords in violation of Facebook's Terms of Use; exploiting Facebook user information for Defendants' commercial gain; illicitly copying portions of the copyright-protected Facebook website; circumventing Facebook's security; using without authorization the protected Facebook mark on the Power.com website; accessing Facebook's computers without authorization or in excess of its authorization to misappropriate user data in violation of the Terms of Use; and sending unsolicited and deceptive commercial messages to Facebook Users. Facebook has alleged these bad acts, as well as the legal claims to which they give rise, in ample detail to sustain its claims and defeat Defendants' motion to dismiss and their request for a more definite statement.

## II. STATEMENT OF ISSUES

Defendants' Motion raises two issues:

(1) Whether Facebook's Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM"), 15 U.S.C. § 7701, *et seq.*, Computer Fraud and Abuse Act ("CFAA") 18 U.S.C. § 1030, *et seq.*, and California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502, claims command a heightened pleading requirement; and

(2) Whether the Complaint sufficiently states claims under each of the asserted causes of action.

## III. STATEMENT OF RELEVANT FACTS

The facts relevant to determination of the pending motion are in the Complaint, including paragraphs 8 to 86 that set out the factual allegations underlying the claims in the Complaint.

## IV. ARGUMENT

### A. LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules require only that this "statement" constitute a "'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). The rules "do not require a claimant to set out in detail the facts upon which he bases a claim. To the contrary, all that is required is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (internal quotation omitted). A plaintiff's factual allegations need only "be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965.[1]

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The court must find "enough facts to raise a reasonable expectation that discovery will reveal evidence" to substantiate the necessary elements of the plaintiff's claim. *Id.* "However, the Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotation omitted). Indeed, a motion to dismiss must be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1132 (9th Cir. 2002).

In evaluating a motion to dismiss, the Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). Further, the complaint must be read in the light most favorable to plaintiff. *Id.*

---

[1] "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002).

Defendants' various wrongful acts — which are enumerated and described in the Complaint with ample detail to permit Defendants to answer the charges — give rise to each of the distinct claims contained with the Complaint.

**B. THE FIRST AMENDED COMPLAINT STATES A CLAIM UNDER EACH CAUSE OF ACTION**

**1. Violation of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (First Claim)**

Defendants incorrectly assert that Facebook must satisfy the heightened pleading requirements of Rule 9(b) for all elements of its CAN-SPAM claim. "Where a complaint contains allegations of both fraudulent and non-fraudulent conduct, only the specific averments of fraud must be pled with particularity." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

Under California law, common law fraud requires proof of (1) a false representation, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable reliance, and (4) damages. *ASIS v. Optin Global, Inc.*, No. C 05-5124 CW, 2006 WL 1820902, at *3 (N.D. Cal. June 30, 2006). In contrast, the CAN-SPAM Act makes it "unlawful for any person to initiate the transmission, to a protected computer, of a commercial electronic mail message . . . that contains, or is accompanied by, header information that is materially false or materially misleading." 15 U.S.C. § 7704(a)(1). It also prohibits the act of initiating the transmission of commercial email messages "if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject of the message." 15 U.S.C. § 7704(a)(2). These violations of CAN-SPAM do not rise to the level of common law fraud and therefore, do not require the Complaint to satisfy the heightened pleading standard of Rule 9(b). Even where CAN-SPAM violations sound in fraud, courts have determined that a plaintiff alleging CAN-SPAM violations "need not plead with particularity the circumstances surrounding the initiation of the alleged email" but "only to their content." *ASIS*, No. C 05-5124, 2006 WL 1820902, at *4; *see also Gordon v. Impulse Marketing Group, Inc.*, 375 F. Supp. 2d 1040 (E.D. Wash. 2005).

Moreover, even if this Court were to determine that Facebook's CAN-SPAM claims are entirely subject to the heightened standard of Rule 9(b), the Complaint satisfies this standard. Under Rule 9(b), "[a]verments of fraud must be accompanied by 'the who, what, where, when, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Rule 9(b) does not require a plaintiff "to allege, in detail, all facts supporting each and every instance of [fraud] over a multi-year period." *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051-52 (9th Cir. 2001). Rather, Rule 9(b) is satisfied if the complaint "identifies the circumstances of the alleged fraud so that defendants can prepare an adequate answer." *Warshaw v. Xoma Corp.*, 74 F.3d 955, 960 (9th Cir. 1996) (quotation omitted). Thus, a plaintiff need only "set forth what is false or misleading about a statement and why it is false." *Cooper*, 137 F.3d at 625.

Moreover, Rule 9(b)'s particularity requirements are relaxed "as to matters within the opposing party's knowledge." *Reid-Ashman Mfg, Inc. v. Swanson Semiconductor Service, LLC*, No. C-06-4693, 2007 WL 1394427, at *10 (N.D. Cal. 2007) (quotation omitted); *see also Haltman v. Aura Systems, Inc.*, 844 F. Supp. 544, 547 (C.D. Cal. 1993) ("The Ninth Circuit, however, has relaxed Rule 9(b)'s requirements where, as in cases of corporate fraud, the plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing." (internal quotations and citation omitted)). Facebook has pled all of the elements of its CAN-SPAM claim with the information available to it, and the facts alleged are sufficient to meet the standards of Rule 9(b) and permit the Defendants to prepare an adequate answer. *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (a "pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.").

The Complaint explains how Defendants, doing business as Power.com, on or before December 26, 2008, were involved in drafting and initiating a promotional email campaign that violated CAN-SPAM. (Complaint ¶¶ 65-73.) It details how this campaign took place on Facebook's website, which resides on servers located in Santa Clara, California, and violations occurred each time Defendants sent a message utilizing the Facebook service. (Complaint ¶¶ 19,

64.) The Complaint also provides specific averments explaining which statements in the message header information and content were materially false and why. For example, Paragraphs 67 through 73 contain allegations that Defendants exploited the Facebook messaging system, and sent messages with header information indicating to recipients that the unsolicited messages were sent by "Facebook" at an "@facebookmail.com" address. Defendants failed to indicate anywhere on the message that the message was actually initiated by Power.com, and thereby masked the true identity of the sender and the commercial nature of their messages in violation of 15 U.S.C. § 7704(a). (Complaint ¶¶ 67-73, 92, 95.) The content of the messages was misleading because each message indicated it was from "The Facebook Team," without any mention of Power Ventures, Inc. (Complaint ¶ 69.) Thus, the recipients of these messages inevitably were led to believe that Facebook authorized or supported Power.com's activities. (Complaint ¶ 69.)

The Complaint even incorporates an actual spam message sent by Power.com, which demonstrates the lack of proper identification of the sender, clear and conspicuous notice that it was an advertisement, information on how recipients could opt out of future messages, or a valid address that recipients could use to contact the Defendants. (Complaint ¶¶ 70-71.)

Facebook's CAN-SPAM claims are fully supported by these factual allegations, and any further details regarding Defendants' spam campaigns that Defendants' may desire are solely within their own knowledge, possession and control, and cannot be known to Facebook until discovery has been completed.

### 2. Violation of the Computer Fraud and Abuse Act (Second Claim)

Defendants are also wrong that all violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 must be pled with particularity. *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1131 (E.D. Cal. 2008) ("The term 'defraud' for purposes of § 1030(a)(4) simply means wrongdoing and does not require proof of common law fraud").[2] However, even assuming *arguendo* that Rule 9(b) applies to Facebook's

---
[2] In addition to *Hanger*, the U.S. District Court for the District of Utah has held that Rule 9(b) does not apply to CFAA claims. *See Zero Down Supply Chain Solutions, Inc. v. Global Transp. Solutions, Inc.*, No. 07-CV-400, 2008 WL 4642975, at *8 (D. Utah Oct. 17, 2008) ("The Moving Defendants have cited no case law, nor does the text of the statute itself suggest, that a claim under the CFAA requires pleading with particularity. Only one of the subsections on which the Complaint relies even mentions

CFAA claim, the Complaint contains sufficient detail to easily satisfy a heightened pleading standard.

To properly assert a CFAA claim, Facebook must have alleged that Defendants intentionally accessed a computer without authorization or exceeded authorized access and thereby obtained information from any protected computer, and caused $5,000 in loss or damage during a one year period. 18 U.S.C. § 1030(a).

Here, the Complaint alleges the who, what, where, when, and how of these elements with sufficient detail to provide Defendants with notice of the claims against them and enable them to respond to the charges. As to who, the Complaint alleges that Defendants d/b/a Power.com engaged in the unauthorized access. (Complaint ¶¶ 5, 6, 9, 52-56, 59.)

As to the who and what, the Complaint alleges that Defendants accessed Facebook's computers, computer servers and computer networks without authorization[3] and with the intent to defraud, and that Defendants obtained information from Facebook's computers. (Complaint ¶¶ 5, 6, 52, 54, 56, 62, 64, 84, 103-108.) The Complaint also alleges that Steve Vachani, the purported CEO of Power.com, was informed on December 1, 2008, that Power.com was violating the Terms of Use and that its access of Facebook's website and servers was unauthorized. (Complaint ¶ 57.) Defendants' later "business decision" to continue accessing and scraping user information from the Facebook Site despite previously assuring Facebook that they would stop such activity is further evidence of Defendants' knowing, willful and intentional unauthorized

---

fraudulent conduct, and then only an intent to defraud, which may be pleaded generally. Accordingly, the Court finds that notice pleading is sufficient with regard to Plaintiffs' CFAA claims."). However, in two unpublished decisions, courts in this district have taken different approaches. In one, this Court assumed without discussion the applicability of Rule 9(b) to CFAA claims. *See Shade v. Gorman*, No. 08-Cv-3471, 2009 WL 196400, at *3 (N.D. Cal. Jan. 28, 2009). In the other case, the court followed *Hanger*.

[3] Defendants are wrong in their assertion that "the computer that is alleged to have been accessed without authorization appears to be a public website that may be accessed by anyone through the internet and thus is not a protected computer under the cited statutes." Motion at 3. However, the CFAA defines a "protected computer" as any computer "which is used in interstate or foreign commerce or communication…." 18 U.S.C. § 1030(e)(2). Indeed, this Court recently rejected the identical argument and reiterated that "[a]llegations with respect to access and use beyond those set forth in a user agreement constitute unauthorized use under the CFAA." *EBay Inc., v. Digital Point Solutions, Inc., et al.*, No. 08-CV-4052 JF (PVT), 2009 WL 481269, *5 (N.D. Cal. February 24, 2009) (citing *Am. Online, Inc. v. LCGM, Inc.*, 46 F. Supp. 2d 444, 450 (E.D. Va. 1998). Furthermore, unlike the website at issue in EBay that permits public access to almost all areas of the website, Facebook requires a user name and password to access the information described in the Complaint.

access of Facebook's protected computers. (Complaint ¶¶ 57, 59, 62.) The Complaint also alleges that Defendants took specific actions to circumvent the technological security measures Facebook implemented upon learning of Defendants' intent to continue accessing Facebook's computers without authorization. (Complaint ¶¶ 63, 64.)

As to where, the Complaint alleges that the unauthorized access took place on Facebook's servers in Santa Clara, California. (Complaint ¶¶ 19, 28, 52, 54, 57, 64, 105-108.)

As to when, the Complaint alleges that the unauthorized access started on or before December 1, 2008, and occurred every time Defendants accessed the Facebook website hosted on Facebook's computers in violation of the Terms of Use, including every time Defendants accessed Facebook's computers to scrape Facebook user information and friend lists. (Complaint ¶¶ 29-31, 49, 52, 105-108, 111.)

As to how, the Complaint alleges that Defendants' violated the Terms of Use and that their license to use the Facebook website has been revoked. (Complaint ¶ 31.) Consequently, each time Defendants accessed the Facebook Site utilizing any method, their access was unauthorized. (Complaint ¶ 31, 105.) Additionally, the Complaint alleges that Defendants accessed the Facebook website without authorization when they used misappropriated Facebook login information and utilized automated scripts. (Complaint ¶¶ 53, 54.) The Complaint also states that despite promising to stop its unauthorized access by December 26, 2008, Defendants later informed Facebook that they had made a "business decision" to continue their unauthorized use of Facebook user login credentials and unauthorized access to Facebook's computers for at least an additional five weeks. (Complaint 58, 59, 62.) Indeed, far from providing no details as Defendants assert, the Complaint is replete with references to Defendants' unauthorized access. (Complaint ¶¶ 1, 5, 18, 29-31, 45, 61-62, 64, 105-108.) The Complaint also alleges that Facebook expended resources in excess of $5,000 to investigate and combat Power.com's unauthorized access. Any additional details that Defendants believe they need regarding their respective roles, the timing of each instance of unauthorized access, and their methods of unauthorized access are solely in the Defendants' knowledge, possession and control.

### 3. Violation of California Penal Code Section 502 (Third Claim)

Similar to the CAN-SPAM and CFAA claims, Facebook's claims under California Penal Code ("CPC") § 502 should not be subject to the heightened pleading requirements of Rule 9(b). Where the underlying basis for a CPC § 502 claim is unauthorized access, the heightened pleading requirements of Rule 9(b) do not apply. *See e.g. Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087, 1091 (N.D. Cal. 2007) (applying the Rule 8(a) simplified pleading standard to CPC § 502, where the underlying basis of the claim was unauthorized access); *Craigslist v. Autoposter Pro, Inc.*, No. CV 08 05069, 2009 WL 890896, at *4 (N.D. Cal. 2009). Defendants cite to *eBay v. Digital Point Solutions, Inc.*, 2009 WL 481269, at *7 (N.D. Cal. Feb 24, 2009) in support of the position that the heightened Rule 9(b) standard applies to claims for violation of CPC § 502. However, in that case the CPC § 502 claim was grounded in a fraudulent cookie stuffing scheme.

Here, Facebook's unauthorized access claims are not based in fraud and do not incorporate all of the elements of common law fraud. Thus, the Court should apply the notice pleading requirements of Rule 8(a). However, regardless of which standard applies, Facebook has sufficiently supported is CPC § 502 claim. As explained immediately above, the Complaint contains detailed allegations that meet the Rule 9(b) pleading standard by providing the "who, what, when, where and how" of Defendants' unauthorized access to Facebook's servers. *Supra*, Part IV.B.2. It was this same unauthorized access that gives rise to Facebook's CPC § 502 claims.

The Complaint alleges that Defendants accessed the Facebook website in contravention of Facebook Terms of Use to obtain information from Facebook and to send unsolicited commercial messages. This activity continued even after Defendants were expressly informed that their access violated Facebook Terms of Use, was unauthorized, and was causing harm to Facebook. (Complaint ¶¶ 45 – 64.) These allegations are sufficient to state a claim under CPC § 502. *See Facebook, Inc.*, 489 F. Supp. 2d at 1091 (denying motion to dismiss where "the Complaint alleges facts showing that ConnectU knowingly accessed Facebook's website to collect, copy, and use data found thereon in a manner not authorized or permitted by Facebook").

### 4. Copyright Infringement (Fourth Claim)

To state a claim for copyright infringement, a plaintiff need only show: (1) ownership of a valid copyright; and (2) copying of original elements of the work. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The Complaint clearly and expressly alleges each of these elements in more than sufficient detail, as "[c]opyright claims need not be pled with particularity." *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001).

The Complaint satisfies the first element by alleging that "Facebook's website is a work of authorship protected by copyright law," that "Facebook *owns* all right, title and interest, including copyrights, in and to its website," and that the "Facebook website is copyright protected under Registration No. VA-0001409016." (Complaint ¶¶ 35-36, 123.) As to the second element, despite Defendants' assertion that Facebook failed to identify the copied work, the Complaint specifically alleges that Defendants "accessed and copied the Facebook *website*," including, but not limited to, creating cached copies of the website while developing, testing, implementing, and maintaining their automated devices and the programs related to their website aggregator service. (Complaint ¶¶ 74 -75, 123-124 (emphasis added)); see *Ticketmaster LLC v. RMG Technologies, Inc.*, 507 F. Supp. 2d 1096, 1105 (C.D. Cal. 2007) ("The copies of webpages stored automatically in a computer's cache or random access memory ("RAM") upon a viewing of the webpage fall within the Copyright Act's definition of 'copy.'"). Plainly, the Complaint supports Facebook's claims of copyright infringement.

### 5. The First Amended Complaint States a Claim for Violation of the Digital Millennium Copyright Act (Fifth Claim)

Facebook has similarly alleged sufficient facts to provide Defendants with notice of its claims under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201. First, there is no heightened pleading requirement that mandates detailed allegations. *Perfect 10, Inc.*, 167 F. Supp. 2d at 1120. Second, the Complaint contains factual allegations supporting all elements of the DMCA claim.

The elements necessary to state a claim under the DMCA are: (1) ownership of a valid copyright on a work, (2) effectively controlled or protected by a technological measure, which has been circumvented, (3) that third parties can now access, (4) without authorization, in a manner that (5) infringes or facilitates infringing a right protected by the Copyright Act, because of a product, service, device or component that, (6) the defendant either (i) designed or produced primarily for circumvention; (ii) made available despite only limited commercial significance other than circumvention; or (iii) marketed for use in circumvention of the controlling technological measure. *See Chamberlain Group, Inc. v. Skylink Technologies, Inc.*, 381 F.3d 1178, 1203 (Fed. Cir. 2004) (listing elements for § 1201(a)(2) claims); *Ticketmaster*, 507 F. Supp. 2d at 1112 (noting that a claim under § 1201(b)(1) differs only in that it covers technological measures that protect copyrighted material).[4]

Here, the Complaint alleges ownership of valid copyrights in the Facebook website, access to which is controlled and protected by user login and password protection and other technical measures implemented to block access by third party applications and websites not using Facebook Connect. (Complaint ¶ 35, 36, 63.) As explained in the Complaint, Facebook users *must* register a Facebook account with a unique user name and password and agree to the Terms of Use before they are able to access the copyright-protected portion of the Facebook Service containing user profiles. (Complaint ¶ 21, 29.) Facebook limits access to its messaging options to registered users and allows its users to place additional restrictions on access to their profiles. (Complaint ¶ 25.) Additionally, The Complaint alleges that Facebook implemented technical measures to block Power.com's access to the Facebook Service after Defendants informed Facebook that they had made the decision to continue their unauthorized access to Facebook's protected website, and that Defendants then attempted to circumvent those technological measures. (Complaint ¶ 63, 64.) Even though Defendants themselves are in possession of the information related to their efforts to circumvent Facebook's attempts to prevent

---

[4] Section 1201(a)(2) "makes its wrongful to traffic in devices that circumvent technological measures that *control access to protected works*, while 1201(b)(1) makes it wrongful to traffic in devices that circumvent technological measures that *protect rights of a copyright owner in a work*." *Ticketmaster*, 507 F. Supp. 2d at 1112 (emphasis in original).

their unauthorized access to Facebook's copyrighted website, they claim that the Complaint "provides no notice whatsoever as to what the defendants are alleged to have done."

The Complaint, however, clearly puts Defendants on notice that they violated the DMCA by the unauthorized use of other users' account names and passwords and well as the other methods they employed to circumvent Facebook's efforts to prevent them from accessing Facebook's copyrighted material without authorization. (Complaint ¶ 27, 31, 52-54, 56); *see Ticketmaster*, 507 F. Supp. 2d at 1110, 1112 (the fact that Defendant viewed the website in a manner that violated the Terms of Use in order to pursue its own commercial objectives and that its service empowered its customers to also violate the Terms of Use was sufficient to show a likelihood of success on the merits of a copyright infringement claim and defeat challenges to the DMCA claim); *see also Coupons, Inc. v. Stottlemire*, 588 F. Supp. 2d 1069 (N.D. Cal. 2008) (denying motion to dismiss DMCA claim predicated on the argument that the technological measure only controlled access to copyrighted coupons in the first instance but did nothing to control access by third parties who received the coupons from the initial user).

### 6. Trademark Infringement under the Lanham Act (Sixth Claim)

Even though Lanham Act claims require only notice pleading, the Complaint goes well beyond the level of detail required by Rule 8(a). In fact, each element of Facebook's claims under 15 U.S.C Sections 1114 and 1125(a) is supported by concrete factual allegations.

The Lanham Act imposes liability upon any person who: (1) uses an infringing mark in interstate commerce, (2) in connection with the sale or advertising of goods or services, (3) where such use is likely to cause confusion or mislead consumers. 15 U.S.C. § 1114(1)(a). The Complaint provides that Facebook is the owner of the registered FACEBOOK mark, which has been used continually by Facebook since 2004. (Complaint ¶ 38-39, 146.) At no time has Facebook authorized or consented to Defendants' use of the mark. (Complaint ¶ 79.)

The Complaint alleges that on or before December 1, 2008, Defendants placed the Facebook mark on its website to advertise its services and that such use causes confusion and mistake and is likely to deceive customers and potential customers regarding the origin, affiliation, association, connection, and/or endorsement of Defendants' services and website with

or by Facebook. (Complaint ¶¶ 77, 78.) Similarly, the Complaint contains explicit allegations with respect to the Lanham Act claims based on Defendants unauthorized use of the FACEBOOK mark in causing their advertisements to be distributed from an "@facebookmail.com," and signed "The Facebook Team." (Complaint ¶ 69-70.) Paragraphs 65 through 72 state that Defendants spam messages, sent and signed utilizing the Facebook mark, were advertising Power.com's social network aggregator services with a "Bring 100 friends and win 100 bucks!" promotion. (Complaint ¶¶ 65, 70, 72.) Finally, the Complaint also alleges that Defendants' unauthorized use of the Facebook mark was likely to "confuse recipients and lead to the false impression that Facebook is affiliated with, endorses, or sponsors" Defendants' services and website. (Complaint ¶ 73, 76, 78.) Thus, the Complaint supports every element of Facebook's Lanham Act claims.

### 7. Claim for Trademark Infringement Under California Law (Seventh Claim)[5]

To state a claim for trademark infringement under California common law, a plaintiff need allege only: (1) its prior use of the trademark, and (2) the likelihood of the infringing mark being confused with its mark. *Wood v. Apodaca*, 375 F. Supp. 2d 942, 947-48 (N.D. Cal. 2005). *See M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1080 (9th Cir. 2005) (The test of trademark infringement under state, federal, and common law is whether there will be a likelihood of confusion). Here, as stated above, the Complaint alleges prior use of the Facebook trademark dating back to 2004. (Complaint ¶ 38-39, 146.) The Complaint also alleges a likelihood of confusion caused by Defendants' use of the Facebook mark to promote Defendants' social network aggregation services. (Complaint ¶¶ 65, 70, 72-73.) Nothing more is required. If Defendants' did in fact intend to argue that the Complaint fails to state a California trademark claim, their argument is without merit.

### 8. Unlawful, Unfair and Fraudulent Competition Under California Business & Professions Code § 17200

Defendants' assertions regarding the breadth of the statute are immaterial to determining the sufficiency of Facebook's pleading. Facebook's § 17200 claim incorporates all the preceding

---

[5] Defendants provide no argument supporting the dismissal of Facebook's state law trademark infringement claim and have therefore failed to carry their burden. Because the title of Section II indicates it was intended to apply to Counts IV through VII, Facebook's response assumes that Defendants' argument regarding Count VI was also intended to apply to Count VII.

paragraphs of the complaint, which explain in detail Defendants' unlawful, unfair, and fraudulent competition. (Complaint ¶¶ 157-159.) There can be no question that under the liberal notice pleading requirements, defendants have "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 90 (2007).

In particular, the Ninth Circuit has consistently held that actions pursuant to California Business & Professions Code § 17200 are "substantially congruent to a trademark infringement claim under the Lanham Act." *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (the "ultimate test" is "whether the public is likely to be deceived or confused by the similarity of the marks") (internal quotations omitted)); *Meta-Film Assocs, Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1362 (C.D. Cal. 1984) (misappropriation deemed "unfair" under the Lanham Act is also "wrongful" under § 17200). Moreover, "Federal, common law and statutory unfair competition claims are treated as 'coextensive' in that they 'turn on the sufficiency of proof of likelihood of confusion." *Visual Changes Skin Care Int'l, Inc. v. Neways, Inc.*, No CV F 08-0959 LJO DLB, 2008 WL 4723603 (E.D. Cal. 2008) (citing *Walker v. Mattel, Inc.*, 210 F.3d 1108, 1111 (9th Cir. 2000) (denying Motion to Dismiss claims under § 17200 because plaintiff had sufficiently pled its Lanham Act claims).

Here, Facebook has made sufficient allegations to plead its Lanham Act claims, and thereby has adequately pled its claims under Cal. Bus. & Prof. Code § 17200.[6] *Supra* Part IV.B.6.

C. **Defendants' Alternative Request for a More Definite Statement Should be Denied**

"Motions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal.1996) (citing *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal.1994). A Rule 12(e) motion for a more definite statement must be considered in light of the liberal pleading standards of Rule 8(a) in federal court. *Id*. Under the liberal pleading standards, "pleadings in the federal courts are only required to fairly notify the opposing party of

the nature of the claim." *A.G. Edwards & Sons, Inc. v. Smith*, 736 F. Supp. 1030, 1032 (D. Ariz. 1989). Consequently, Rule 12(e) motions must be denied unless a complaint is so unintelligible that the defendant cannot ascertain the nature of the claim being asserted, meaning the complaint is so vague that the defendant cannot begin to frame a response. *See San Bernardino Pub. Employees Ass'n v. Stout*, 946 F. Supp. 790, 804 (C.D. Cal.1996); *Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal.1981); *Boxall v. Sequoia Union High Sch. Dist.*, 464 F. Supp. 1104, 1114 (N.D. Cal.1979). Moreover, a Rule 12(e) motion should be denied if the detail sought by the motion is obtainable through discovery. *Davison v. Santa Barbara High Sch. Dist.*, 48 F. Supp. 2d 1225, 1228 (C.D. Cal.1998).

As discussed above, Plaintiff's Complaint provides sufficient detail to notify Defendants of the substance of the claims asserted and to allow it to frame a response. Any further details are either in Defendants' possession or are obtainable through discovery. Thus, Defendants' motion for a more definite statement should be denied.

## V. CONCLUSION

Based on the foregoing, Facebook respectfully requests that the Court deny Defendants' motions to dismiss and for a more definite statement in their entirety.

DATED: April 17, 2009

**PERKINS COIE LLP**

By:/s/
  David Chiappetta, (State Bar No. 172099)
  dchiappetta@perkinscoie.com
  Attorney for Plaintiff
  FACEBOOK, INC.