1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 5/11/2009**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>Plaintiff,<br><br>v.<br><br>POWER VENTURES, INC.; STEVEN VACHANI; DOE 1, d/b/a POWER.COM; and DOES 2-25,<br><br>Defendants. | Case Number C 08-5780 JF (RS)<br><br>ORDER[1] (1) DENYING MOTION TO DISMISS AND (2) GRANTING IN PART AND DENYING IN PART MOTION FOR MORE DEFINITE STATEMENT<br><br>[re: doc. no. 17] |

Plaintiff Facebook, Inc. ("Facebook") alleges that Defendants Power Ventures, Inc. and Power.com (collectively "Power.com") and Steve Vachini ("Vachini") operate an Internet service that collects user information from Facebook's website in violation of the Controlling the Assault of Non-Solicited Pornography and Marketing ("CAN-SPAM") Act, 15 U.S.C. § 7701, *et seq*.; the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq*.; and California Penal Code § 502. Facebook also alleges that Defendants committed direct and indirect copyright infringement when they made copies of Facebook's website during the process of extracting user

---

[1] This disposition is not designated for publication in the official reports.

1  information. In addition, Facebook alleges that the means by which Power.com accessed the

2  Facebook website constituted a violation of the Digital Millennium Copyright Act ("DMCA"),

3  17 U.S.C. § 1201, *et seq.* Facebook also asserts claims for relief based on state and federal

4  trademark law, as well as a claim for relief under California's Unfair Competition Law ("UCL"),

5  Cal. Bus. & Prof. Code § 17200, *et seq.*

6  　　Defendants initially moved to dismiss the First Amended Complaint ("FAC") in its

7  entirety pursuant to Fed. R. Civ. P. 12(b)(6) or in the alternative pursuant to Fed. R. Civ. P.

8  12(e), but that motion was withdrawn with respect to the CAN-SPAM, CFAA, and § 502 claims

9  in light of Facebook's opposition. Defendants now seek dismissal of Facebook's remaining

10  claims for relief (counts 4 through 8 in the FAC). For the reasons set forth below, the motion to

11  dismiss for failure to state a claim will be denied, and the motion for a more definite statement

12  will be granted in part and denied in part.

13  **I. BACKGROUND**

14  　　Facebook developed and operates what is now one of the most popular social networking

15  websites. *See* FAC ¶ 2. The Facebook website allows users to create user profiles, join networks

16  and "friend" other users, which creates online communities with shared interests and

17  connections. *See id.* Every Facebook user must register before using the website, and

18  registration requires the user to assent to Facebook's Terms of Use, which essentially is a user

19  agreement that sets forth the acceptable terms of use. *See id.* Ex. A. Users who agree to the

20  Terms of Use have a limited license to access and use Facebook's website and services. *See id.* ¶

21  31 and Ex. A at 3 ("Any use of the Site or the Site Content other than as specifically authorized

22  herein, without the prior written permission of Company, is strictly prohibited and will terminate

23  the license granted herein."). Registered users create and customize their own user profiles by

24  adding content such as personal information, content related to their interests, and photographs,

25  which can then be shared with other Facebook users with whom the user has a Facebook

26  connection. *Id.* ¶ 22. Facebook users may be contacted only by Facebook or other registered

27  Facebook users. *Id.* ¶ 23. Any unauthorized use of Facebook's website will result in the

28  termination of a user's license. *See id.* ¶ 31.

2

1    Facebook also grants third parties a limited license to create applications that interact

2  with Facebook's proprietary network, provided that these applications adhere to a standardized

3  set of protocols and procedures and that the third-party developers agree to Facebook's

4  Developer Terms of Service, the Terms of Use, and any other applicable policies.  FAC ¶ 27.  In

5  addition, Facebook permits integration with third-party websites, and even permits exchange of

6  proprietary data with third-party websites, provided that these third party websites use the

7  "Facebook Connect" service, which enables users to "connect" their Facebook identity, friends

8  and privacy to those third-party websites.  *Id.* ¶ 27.  Facebook does not permit third-party access

9  to Facebook user profile data unless such access is through Facebook Connect.  *Id.* ¶ 28.

10    The corporate Defendants are alleged to be California entities and/or organizations that

11  do business in California.  FAC ¶¶ 9-10.  Defendant Vachini allegedly is the CEO of Defendant

12  Power.com, which is a website designed to integrate various social networking or email accounts

13  into a single portal  *Id.* ¶¶ 5, 11, 45.  A user has discretion with respect to whether to use

14  Defendants' services, and the user determines which accounts will be aggregated.  *See id.* ¶ 50.

15  After a user provides his or her user names and passwords to Defendants, the Power.com service

16  takes this access information to "scrape" user data from those accounts.  *Id.* ¶¶ 50-52.

17  Subsequently, the user can log on to Power.com to view the data culled from Facebook and any

18  other social networking sites or email accounts.  *See id.* at ¶ 52.

19    Prior to the filing of the FAC, the parties attempted to negotiate an arrangement whereby

20  Power.com could continue to access Facebook's website provided that it did so through the

21  Facebook Connect application.  FAC ¶¶ 58-61.  Those discussions proved fruitless, however, and

22  in late December 2008 Defendants informed Facebook that Power.com would continue to

23  operate without using Facebook Connect.  *Id.* ¶ 62.  Defendants allegedly continue to scrape

24  Facebook's website, despite technological security measures to block such access.  *Id.* ¶¶ 63-64.

25  Defendants also have solicited Facebook users to join Power.com through promotional emails.

26  *Id.* ¶¶ 65-66, 70.

27

28

3

## II.  LEGAL STANDARD

When considering a motion to dismiss, the plaintiff's allegations are taken as true and the Court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  For a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), "[d]ismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).

"If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). "Whether to grant a Rule 12(e) motion is within the discretion of the trial court." *Babb v. Bridgestone/Firestone*, 861 F. Supp. 50, 52 (M. D. Tenn., 1993).  However, "[s]uch motion [is] not favored by the courts since pleadings in federal courts are only required to fairly notify the opposing party of the nature of the claim." *Resolution Trust Corp. V. Dean*, 854 F. Supp. 626, 629 (D. Ariz. 1994) (citing *A.G. Edwards & Sons, Inc. V. Smith*, 736 F. Supp. 1030, 1032 (D. Ariz. 1989)).  "[The motion] should not be granted unless the defendant cannot frame a responsive pleading." *Falamore, Inc. V. Edison Bros. Stores, Inc.*, 525 F. Supp. 940 ( E.D. Cal. 1981).

## III.  DISCUSSION

A.  Copyright Infringement

To state a claim for copyright infringement, a plaintiff need only allege (1) ownership of a valid copyright and (2) copying of original elements of the work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  The FAC alleges that Defendants accessed the Facebook website and made unauthorized copies of the website or created derivative works

4

1   derived from the Facebook website.  *See* FAC ¶¶ 124-27.

2          Defendants contend that Facebook's copyright allegations are deficient because it is

3   unclear which portions of the Facebook website are alleged to have been copied.  Defendants

4   also argue that there are significant portions of the website that are not protected by copyright

5   because Facebook does not hold any rights to content posted by users.  In response, Facebook

6   argues that Defendants make a "cache" copy of the website on each occasion of unauthorized

7   access.  Facebook also argues that it need not define the exact contours of the protected material

8   because copyright claims do not require particularized allegations.

9          The facts as pled in the instant case may be analogized to those in *Ticketmaster L.L.C. v.*

10  *RMG Techs, Inc.*, 507 F. Supp. 2d 1096 (C.D. Cal. 2007), where in the context of a motion for a

11  preliminary injunction the district court found that the defendant made a copy of Ticketmaster's

12  website each time its automated program accessed the website.  *See id.* at 1106. ("copies of

13  webpages stored automatically in a computer's cache or random access memory ("RAM") upon a

14  viewing of the webpage fall within the Copyright Act's definition").  *See also MAI Sys. Corp. v.*

15  *Peak Computer, Inc.*, 991 F.2d 511, 519 (9th Cir.1993) ("since we find that the copy created in

16  the RAM can be 'perceived, reproduced, or otherwise communicated,' we hold that the loading

17  of software into the RAM creates a copy under the Copyright Act.").  In addition, any users that

18  accessed the Ticketmaster website were bound its terms of use, which prohibited the use of

19  automated programs to access content.  *Id.* at 1107-10.  Under those circumstances, the court

20  found that Ticketmaster had met its burden of showing a likelihood of success on the merits with

21  respect to its direct copyright infringement claim.  *Id.* at 1110.

22         Facebook's user agreement prohibits, *inter alia*, the "harvest[ing] or collect[ion] [of]

23  email addresses or other contact information of other users from the Service or the Site by

24  electronic or other means for the purpose of sending unsolicited emails or other unsolicited

25  communications."  FAC Ex. A at 4.  In addition, the user agreement broadly prohibits the

26  downloading, scraping, or distributing of any content on the website, with the exception being

27  that a user may download his or her own user content.  *Id*. at 3.  However, not even this

28  exception allows a user to employ "data mining, robots, scraping, or similar data gathering or

5

extraction methods." *Id*. Such actions are explicitly deemed to constitute "unauthorized use." *See id.* Accordingly, the allegations as set forth in the FAC sufficiently allege unauthorized access. Access for purposes that explicitly are prohibited by the terms of use is clearly unauthorized. *See Ticketmaster*, 507 F. Supp. 2d at 1108-1110.

In addition, Facebook need not allege the exact content that Defendants are suspected of copying at this stage of the proceedings. There is no requirement that copyright claims must be pled with particularity. *See Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001) ("Copyright claims need not be pled with particularity…complaints simply alleging present ownership by plaintiff, registration in compliance with the applicable statute and infringement by defendant have been held sufficient under the rules."). Defendants' argument that Facebook's website is "huge" is irrelevant. According to the FAC, Facebook owns the copyright to any page within its system, including the material located on those pages besides user content, such as graphics, video and sound files. *See* FAC ¶ 135 and Ex. A at 3. Defendants need only access and copy one page to commit copyright infringement.

Defendants correctly assert that Facebook does not have a copyright on user content, which ultimately is the information that Defendants' software seeks to extract. However, if Defendants first have to make a copy of a user's entire Facebook profile page in order to collect that user content, such action may violate Facebook's proprietary rights.[2] Accordingly, the motion to dismiss the claim for direct copyright infringement will be denied.

The FAC also sufficiently states a claim for indirect copyright infringement. "One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (citations omitted). Viewing the allegations in the FAC as true, the utilization of Power.com by

---

[2] A collection of non-copyrighted material arranged in an original way is subject to copyright protection. *See* 17 U.S.C. § 101; *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 204 (9th Cir. 1989). For example, in *Ticketmaster* the factual information about concerts and tickets was not by itself copyrightable, but Ticketmaster's arrangement of that information on its website presumably was. *See id.*

Facebook users exceeds their access rights pursuant to the Terms of Use. *See* FAC Ex. A at 3-4. Moreover, when a Facebook user directs Power.com to access the Facebook website, an unauthorized copy of the user's profile page is created. *See id.* ¶ 125. The creation of that unauthorized copy through the use of Defendants' software may constitute copyright infringement. *See Ticketmaster*, 507 F. Supp. 2d at 1110-11 ("Designing and marketing a device whose purpose is to allow unauthorized access to, and thus to infringe on, a copyrighted website is sufficient to trigger contributory liability for infringement committed by the device's immediate users."). The motion to dismiss the claim for indirect copyright infringement also will be denied.

### B. Violation of the DMCA

The elements necessary to state a claim under the DMCA are (1) ownership of a valid copyright; (2) circumvention of a technological measure designed to protect the copyrighted material; (3) unauthorized access by third parties; (4) infringement because of the circumvention; and (5) the circumvention was achieved through software that the defendant either (i) designed or produced primarily for circumvention; (ii) made available despite only limited commercial significance other than circumvention; or (iii) marketed for use in circumvention of the controlling technological measure. *See Chamberlain Group, Inc. v. Skylink Techs, Inc.*, 381 F.3d 1178, 1203 (Fed. Cir. 2004). *See also Ticketmaster*, 507 F. Supp. 2d at 1112. As with a copyright infringement claim, there is no heightened pleading requirement that mandates detailed allegations. *Perfect 10*, 167 F. Supp. 2d at 1120.

Defendants argue that Facebook's DMCA claim also is insufficient for essentially the same reasons discussed previously, except that they also argue that the unauthorized use requirement is not met because it is users who are controlling access (via Power.com) to their own content on the Facebook website. However, this argument relies on an assumption that Facebook users are authorized to use Power.com or similar services to access their user accounts. The Terms of Use negate this argument. Any user is barred from using automated programs to access the Facebook website. *See* FAC Ex. A at 3-4. Users may have the right to access their own content, but conditions have been placed on that access. *See id.* The FAC further alleges

7

that Facebook implemented specific technical measures to block access by Power.com after Defendants informed Facebook that they intended to continue their service without using Facebook Connect, and that Defendants then attempted to circumvent those technological measures. FAC ¶¶ 63, 64. Accordingly, the motion to dismiss the DMCA claim will be denied.

C. Trademark Infringement

The Lanham Act imposes liability upon any person who (1) uses an infringing mark in interstate commerce, (2) in connection with the sale or advertising of goods or services, and (3) such use is likely to cause confusion or mislead consumers. 15 U.S.C. § 1114(1)(a). The FAC states that Facebook has been the registered owner of the FACEBOOK mark since 2004. FAC ¶¶ 38-39, 146. The FAC further alleges that Defendants use the mark in connection with their business. *See id.* ¶ 70. At no time has Facebook authorized or consented to Defendants' use of the mark. *Id.* ¶ 79.

Defendants again argue that the FAC does not provide sufficient detail and that Facebook is required to provide concise information with respect to the trademark infringement allegations, including information about "each instance of such use." However, particularized pleading is not required for a trademark infringement claim. *See Perfect 10*, 167 F. Supp. 2d at 1122. The FAC incorporates a screenshot of an email sent by Defendants to Facebook users that not only incorporates the protected mark but also appears to have been originated from or been endorsed by Facebook. *See* FAC ¶ 70. The FAC also states that Defendants' unauthorized use of the Facebook mark was likely to "confuse recipients and lead to the false impression that Facebook is affiliated with, endorses, or sponsors" Defendants' services and the Power.com website. *Id.* ¶¶ 73, 76, 78. These allegations are sufficient to state a claim for trademark infringement. *See Perfect 10*, 167 F. Supp. 2d at 1122 ("Perfect 10's allegations concerning the scope of the alleged violations and Cybernet's alleged role, Cybernet is put on notice of the claims' nature and has enough information to draft its pleadings.").

"To state a claim of trademark infringement under California common law, a plaintiff need allege only 1) their prior use of the trademark and 2) the likelihood of the infringing mark being confused with their mark." *Wood v. Apodaca*, 375 F. Supp. 2d 942, 947-48 (N.D. Cal.

8

1   2005).  For the same reasons set forth above, the motion to dismiss the common law trademark

2   claim will be denied.

3        D.  UCL Claim

4        The Ninth Circuit "has consistently held that state common law claims of unfair

5   competition and actions pursuant to California Business and Professions Code § 17200 are

6   'substantially congruent' to claims made under the Lanham Act."  *Cleary v. News Corp.*, 30 F.3d

7   1255, 1263-64 (9th Cir. 1995).  *See also Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1107 (N.D.

8   Cal. 2003) (adequately pled Lanham Act claim meant that UCL claim also was pled sufficiently).

9   Facebook's UCL claim does not reference the alleged trademark violations specifically, but it

10  does incorporate all the prior allegations in the pleading by reference.  *See* FAC ¶ 157.

11  Otherwise, the UCL count merely alleges that Defendants have engaged in "unlawful, unfair,

12  and/or fraudulent business acts or practices" in violation of the UCL.  Accordingly, from the face

13  of the FAC it is unclear whether Facebook's UCL claim is based on its trade dress allegations

14  alone or whether other portions of the FAC, such as the CFAA or CAN-SPAM claims, are

15  intended to form separate and independent bases for the UCL claim.  Accordingly, the Court will

16  grant Defendants' motion for a more definite statement pursuant to Rule 12(e) with respect to the

17  UCL claim.  *See Anderson v. Dist. Bd. of Trustees of Cent. Fl. Comm. Coll.*, 77 F.3d 364,

18  367(11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues

19  are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the

20  litigants suffer, and society loses confidence in the court's ability to administer justice.").  Within

21  thirty (30) days of the date of this order, Facebook shall file a short statement clarifying the

22  ground(s) underlying its UCL claim.

23                          **IV.  ORDER**

24        Good cause therefor appearing, IT IS HEREBY ORDERED that the motion to dismiss is

25  DENIED and the motion for a more definite statement is GRANTED IN PART and DENIED IN

26  PART.  Defendants shall file an answer to the FAC within thirty (30) days of the date that Facebook

27  files its supplemental statement.

28
                              9

1

2     IT IS SO ORDERED.

3

4

5
      DATED: May 11, 2009
6

7
                                                JEREMY FOGEL
8                                               United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

Case No. C 08-5780 JF (RS)
ORDER DENYING MOTION TO DISMISS ETC.
(JFLC1)

1   This Order was served on the following persons:

2   Alan R Plutzik     aplutzik@bramsonplutzik.com

3   Daralyn Durie     ddurie@durietangri.com

4   David P. Chiappetta     dchiappetta@perkinscoie.com, docketmp@perkinscoie.com,
    docketsflit@perkinscoie.com, jcutler@perkinscoie.com, jmccullagh@perkinscoie.com,
5   kwall@perkinscoie.com, mheap@perkinscoie.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        11