1

LAW OFFICES OF SCOTT A. BURSOR
Scott A. Bursor (*pro hac vice*)

2

369 Lexington Avenue, 10th Floor
New York, NY  10017

3

Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163

4

5

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik (State Bar No. 077785)
Michael S. Strimling (State Bar No. 96135)

6

L. Timothy Fisher (State Bar No. 191626)
2125 Oak Grove Road, Suite 120

7

Walnut Creek, CA  94598
Telephone:  (925) 945-0200

8

Facsimile:  (925) 945-8792

9

Attorneys for Defendants Power
Ventures, Inc. and Steve Vachani

10

11

UNITED STATES DISTRICT COURT

12

NORTHERN DISTRICT OF CALIFORNIA

13

14

15

FACEBOOK, INC.,

16

Plaintiff,

Case No. 5:08-cv-05780

17

-against-

18

POWER VENTURES, INC. d/b/a POWER.COM, a
California corporation; POWER VENTURES, INC.

**ANSWER AND COUNTERCLAIMS
OF DEFENDANTS POWER
VENTURES, INC. AND STEVE
VACHANI**

19

a Cayman Island Corporation, STEVE VACHANI,
an individual; DOE 1, d/b/a POWER.COM, an

20

individual and/or business entity of unknown nature;
DOES 2 through 25, inclusive, individuals and/or

21

business entities of unknown nature,

22

Defendants.

23

24

25

26

27

28

Defendants Power Ventures, Inc. and Steve Vachani (hereafter collectively referred to as "Defendants" or "Power") hereby answer the First Amended Complaint ("Complaint") filed by Plaintiff Facebook, Inc. ("Facebook").

## I.  INTRODUCTION AND BACKGROUND

Power believes in a borderless Internet where users have the right to own and control their own data.  Indeed, Power recently published an Internet User Bill of Rights detailing three fundamental rights of Internet users that must be protected – rights to ownership, control and privacy.  Power's Internet User Bill of Rights details these three fundamental rights as follows:

**Ownership**
The right to complete and total ownership of their content—including profiles, messages, media, contacts and all other data.

**Control**
The right to access, disseminate, transfer or aggregate their content on any platform, or to authorize third-parties to do so for them.

**Privacy**
The right to protect their content and personal information from other users and corporate entities alike.

Power's core mission is to protect and to defend these rights and to provide users with the tools they need to exercise them.  Facebook, on the other hand, has attempted to thwart its users' ability to exercise these rights with respect to their own data.

The bulk of the Facebook site is comprised of "User Content."  This "User Content" includes "photos, profiles, messages, notes, text, information, music, video, advertisements, listings, and other content that [users] upload, publish or display" on the Facebook site.  This data is not owned by Facebook.  It is owned by the user.  Although users' ownership of their own data seems self-evident, and it has been one of our core principles since Power was founded, Facebook historically has been criticized for not respecting its users' rights to ownership of their own content – and that is the crux of the dispute.  Facebook is attempting to prevent Power from providing tools to Internet users that allow those users to exercise ownership and control over their own data.

ANSWER AND COUNTERCLAIMS OF DEFENDANTS POWER VENTURES, INC. AND STEVE VACHANI

1

Facebook is also attempting to stifle the development of Power's innovative new technologies that will liberate Internet users from proprietary restrictions that prevent them from controlling access to their own data.

      A.     **Facebook's Allegation That Power.com Has Made "Unauthorized" Use Of Users' Login Passwords Is False And Frivolous**

One example of Facebook improperly restricting their users' ownership and control of their own data is Facebook's purported "security measure" of prohibiting users from providing their own username and password to third parties, such as Power.  This purported "security measure" is discussed at paragraph 3 of Facebook's complaint.  But this is not a "security measure" at all.  The entry of usernames and passwords to access a website through a third-party site poses no threat to security.  On the contrary, it is commonplace in the industry.  Indeed, it is a practice that Facebook itself employs on its own site to allow its users to access other websites through Facebook.  For example, below is a screen capture from http://www.facebook.com/gettingstarted.php?

| Step 1 | Step 2 | Step 3 |
| --- | --- | --- |
| Find Friends | Profile Information | Join a Network |

**Find friends using your email account**

Searching your email account is the fastest and most effective way to find your friends on Facebook.

Your Email:  email@gmail.com     Valid webmail address

Password:

Find Friends

We won't store your password or contact anyone without your permission.

**Find people you Instant Message**

Skip this step

On this page, Facebook solicits users to enter their account names and passwords for users' email accounts at Google's Gmail, AOL, Yahoo, Hotmail, or other third party websites. Facebook then uses the account information to allow the user to access those accounts through Facebook, and to import information – *i.e.*, to "scrape" data – from those third-party sites into Facebook. This practice fueled Facebook's growth by allowing Facebook to add millions of new users, and to provide users with convenient tools to encourage their friends and contacts to join Facebook as well.

Facebook seeks to stifle competitors from using the same type of utility. Facebook's purported "security measure" – prohibiting Facebook users from logging into Facebook through third-party sites, such as Power.com – unduly restricts users' ability to access their own data. It thwarts the development of innovative technologies, platforms, and applications that users might wish to use, such as those offered by Power.com.

In this lawsuit Facebook alleges that Power has made "unauthorized" use of Facebook users' login credentials (usernames and passwords). *See* Complaint ¶ 50 ("In order for a visitor to integrate a Facebook account into Power.com's website, Power.com requires that users provide it with their Facebook username and password."). Power permits users to enter their account information to access the Facebook site through Power.com, just as Facebook does with respect to other sites. This is a common industry practice. Is not "unauthorized." It is clearly authorized by the user who enters his own account information. Facebook's complaint does not identify a single instance of "unauthorized" use of a username or password. Nor does Facebook's complaint identify a single instance in which anyone's account security was compromised by Power in any way. As we point out above, users' right to security of their data is one of the three fundamental principles underlying Power's Internet User Bill of Rights. Power has taken every appropriate measure to protect that security.

**B.** **Facebook's Allegation That Power.com Has Sent Unsolicited Commercial Messages To Facebook's Users Is False; In Fact, Facebook Itself Sent The "Unsolicited Message" Referenced In The Complaint**

Facebook's complaint alleges that Power sent "unsolicited" email messages to Facebook users which were "deceptive and misleading." *See* Complaint ¶ 65-73. That allegation is false. Power did not send the email message referenced in the complaint. Facebook did.

Facebook allows users to create "events," which Facebook then invites friends to attend. The screen captures from www.facebook.com below illustrates the event creation process.





After the user has created the event and selected the friends to be invited, Facebook then sends the invitations by email:



This email is sent by Facebook.  Facebook determines the address that appears in the "From:" field  *See* Complaint ¶ 68 ("From:  Facebook<eventmaster+zOs9a6jc@facebookmail.com>").  Facebook also adds the closing signature from "The Facebook Team."  *See* Complaint ¶ 69 ("The message … is signed by "The Facebook Team," which is both misleading and false.").  Neither the user nor Power has any control over these elements of the email message.  All content in these email messages that Facebook alleges to be misleading and false was written and appended to the message by Facebook itself.

Notably, Facebook's complaint is devoid of any allegation that any user was actually misled by any of these messages.  Facebook's pleading is also devoid of any allegation that any user, or any recipient of such messages, has complained about the contact or about the message being unsolicited.  Facebook's allegations concerning these "unsolicited" emails are trumped-up and frivolous.  As Facebook well knows, Facebook itself was the source of these messages.  And Facebook was the source of every element that Facebook contends is false or misleading.  Every email referenced in Complaint ¶ 65-73 was generated and transmitted by Facebook as a result of a conscious action taken by users.

        **C.**        **Facebook's Allegations That Power.com Has Violated Facebook's Intellectual Property Rights Are Frivolous**

Power.com believes strongly in intellectual property rights, including the right of users to own and to control their own data.  That is the intellectual property of the user.  Facebook does not own that intellectual property.  The users do.

Facebook's complaint broadly alleges that Power.com has violated Facebook's rights by copying the Facebook website.  But the complaint does not identify either the copyrighted work or the allegedly infringing work.  It refers generically to 'Facebook's website,' but does not identify any portion of the website, any graphics or text, or any computer program that is alleged to have been copied 'and/or' the source for a derivative work.  *See* Complaint ¶ 125.  The complaint also refers generically to "copies and/or derivative works created by Defendants," *id.* ¶ 127, but it does not identify the "copies and/or derivative works" in any intelligible way.  This is probably the most vague allegation of copyright infringement that has ever been filed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Facebook website is massive.  It includes many different elements – some of which are subject to copyrights owned by Facebook and some of which clearly are not.  The bulk of the Facebook site is comprised of "User Content."  This "User Content" includes "photos, profiles, messages, notes, text, information, music, video, advertisements, listings, and other content that [users] upload, publish or display" on the Facebook site.  *See* Facebook Terms of Use (rev. Sept. 23, 2008), available at http://www.facebook.com/terms.php.  Facebook owns no copyright to such User Content.  Indeed, Facebook's own Terms of Use expressly state that "Facebook does not assert any ownership over your User Content."  *Id.*  The Facebook site also contains "articles, photographs, text, graphics, pictures, designs, music, sound, video, information applications, software and other content or items belonging to or originating from third parties."  *Id.* (section headed "Third Party Websites and Content").  Facebook does not own the copyrights to these third party materials.

Power.com provides users with utilities that allow them to copy their own User Content for purposes of updating it and making it portable to other sites – without copying other elements of the Facebook website.  The Complaint does not allege that Power.com has copied any element of the Facebook site that is subject to a copyright owned by Facebook.

The applicable copyright statute, 17 U.S.C. § 512, requires a notification of copyright infringement to include "[i]dentification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site."  17 U.S.C. § 512(c)(3)(A)(ii).  It also requires "[i]dentification of the material that is claimed to be infringing or the subject of infringing activity."  *Id.* § 512(c)(3)(A)(iii).  Indeed, even Facebook's own DMCA Notice of Copyright Infringement, which it uses to address reports of potential copyright infringement on its own site, *requires* this information.  *See* Facebook DMCA Notice of Copyright Infringement, available at http://www.facebook.com/copyright.php?copyright_notice=1 ("Identify the copyrighted work that you claim has been infringed.  …  Identify the content on our site that you claim infringes your copyright.  …  Where does the infringing content appear on our site?  In almost all instances the

best way to help us locate the content you are reporting is to provide us with the URL."). Facebook's complaint does not include even the most basic information that it requires from its own users in order to report copyright infringement.

Unable to identify any actual infringement of a copyright-protected element of its website, Facebook has resorted to arguing that Power "created cached copies of the [Facebook] website." *See* Facebook's 4/17/09 Opposition to Power's Motion to Dismiss at 9:13-15.  What that means is that Facebook alleges that every time the Facebook website is displayed on a computer it is "copied," albeit momentarily, in the computer's cached memory.  This allegation of copying is akin to charging the Dell company with copyright infringement whenever a user accesses the Facebook website through a Dell computer; or charging the Lexmark company with copyright infringement every time a user prints a page from the Facebook website on a Lexmark printer. Furthermore, even if Facebook could premise a copyright claim on the ephemeral and momentary copying of a website in a computer's cached memory, such temporary and intermediate copying in order to extract non-copyrighted elements – such as the User Content at issue here – falls squarely within the fair use doctrine.

## II.  GENERAL DENIAL

Pursuant to Fed. R. Civ. P. 8(b)(3), Defendants generally deny all allegations in the complaint except those specifically admitted herein.

## III.  SPECIFIC DENIALS

1.      Defendants deny the allegations in paragraph 1.

2.      Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 2, except that Defendants admit that Facebook operates a social networking site.

3.      Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 3, except that Defendants deny that Facebook's attempt to prohibit users from sharing their login information is a "security measure."  Facebook solicits login information

for third-party sites.  This is a common industry practice.  Facebook's attempt to prohibit others from doing the same is an illegal and anticompetitive practice.

4.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 4.

5.     Defendants deny the allegations in ¶ 5, except that Defendants admit that they operate a website, www.power.com, which offers to integrate multiple social networking accounts into a single experience on Power.com.

6.     Defendants deny the allegations in ¶ 6.

7.     Defendants deny the allegations in ¶ 7.

8.     Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 8.

9.     Defendants deny the allegations in ¶ 9.

10.     Defendants deny the allegations in ¶ 10, except that Defendants admit that Power Ventures, Inc. is a corporation incorporated in the Cayman Islands, doing business in the State of California.

11.     Defendants deny the allegations in ¶ 11, except that Defendants admit that Vachani is CEO of Power.com.

12.     Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 12.

13.     Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 13.

14.     No response needed.

15.     The allegations of ¶ 15 state conclusions of law to which no response is required.

16.     The allegations of ¶ 16 state conclusions of law to which no response is required.

17.     The allegations of ¶ 17 state conclusions of law to which no response is required.

18.     Defendants deny the allegations in ¶ 18, except that Defendants admit that Power permits users to enter their account information to access the Facebook site through Power.com, just as Facebook does with respect to other sites.  This is a practice common in the industry.

19.     Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 19.

20.     Defendants admit the allegations in ¶ 20.

21.     Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 21, except that Defendants admit that Facebook users register with a unique user name and password.

22.     Defendants admit the allegations in ¶ 22.

23.     Defendants admit the allegations in ¶ 23.

24.     Defendants admit the allegations in ¶ 24.

25.     Defendants admit the allegations in ¶ 25.

26.     Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 26.

27.     Defendants deny the allegations in ¶ 27.

28.     Defendants deny the allegations in ¶ 28, except that Defendants admit that Facebook permits limited integration with third party websites through Facebook Connect.

29.     Defendants admit the allegations in ¶ 29, except that Defendants deny that the Terms of Use attached as Exhibit A are current.  Defendants also deny that certain of the terms of use are legally enforceable.

30.     Defendants admit that the allegations in ¶ 30, except that Defendants deny that certain of the terms of use are legally enforceable.

31.     The allegations of ¶ 31 state conclusions of law to which no response is required.

32.     Defendants deny the allegations in ¶ 32.

33.     Defendants deny the allegations in ¶ 33.

34.     Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 34.

35.     Defendants deny the allegations in ¶ 35.

36.     Defendants deny the allegations in ¶ 36.

37.     Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 37.

38.     Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 38.

39.     Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 39.

40.     Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 40.

41.     Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 41.

42.     Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 42.

43.     Defendants admit the allegations in ¶ 43.

44.     Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 44.

45.     Defendants deny the allegations in ¶ 45, except that Defendants admit that Power permits users to enter their account information to access the Facebook site through Power.com, just as Facebook does with respect to other sites.  This is a practice common in the industry.

46.     Defendants deny the allegations in ¶ 46, except that Defendants admit that Vachani and other Power employees have registered for personal Facebook accounts.

47.     Defendants deny the allegations in ¶ 47.

48.     Defendants deny the allegations in ¶ 48.

49.     Defendants admit the allegations in ¶ 49.

50.     Defendants deny the allegations in ¶ 50, except that Defendants admit that Power permits users to enter their account information to access the Facebook site through Power.com, just as Facebook does with respect to other sites.  This is a practice common in the industry.

51.     Defendants deny the allegations in ¶ 51.

52.     Defendants deny the allegations in ¶ 52.

53.     Defendants admit the allegations in ¶ 53.

54.     Defendants deny the allegations in ¶ 54.

55.     Defendants deny the allegations in ¶ 55.

56.     Defendants deny the allegations in ¶ 56.

57.     Defendants deny the allegations in ¶ 57, except that Defendants admit that Facebook has communicated such claims to Mr. Vachani.

58.     Defendants deny the allegations in ¶ 58, except that Defendants admit that Vachani offered to attempt to integrate Power.com with Facebook Connect.

59.     Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 59.

60.     Defendants deny the allegations in ¶ 59, except that Defendants admit that Vachani communicated concerns about Power's ability to integrate Power.com with Facebook Connect on the schedule that Facebook was demanding.

61.     Defendants deny the allegations in ¶ 61.

62.     Defendants deny the allegations in ¶ 62.

63.     Defendants deny the allegations in ¶ 63, except that Defendants admit that Facebook implemented technical measures to block users from accessing Facebook through Power.com.

64.     Defendants deny the allegations in ¶ 64, except that Defendants admit that Power provided users with tools necessary to access Facebook through Power.com.

65.     Defendants admit the allegations in ¶ 65.

66.     Defendants admit the allegations in ¶ 66, except that Defendants deny that Power.com sent unsolicited commercial emails, and Defendants deny that any of their conduct was "unauthorized."  All of Defendants conduct was fully authorized by the users.

67.     Defendants deny the allegations in ¶ 67.

68.     Defendants admit the allegations in ¶ 68.  In fact, Facebook sent the referenced message, and it was Facebook that designated the message with an "@facebookmail.com" address.

69.     Defendants deny the allegations in ¶ 69, except that Defendants admit that the email message purports to be "signed by 'The Facebook Team.'"  In fact, Facebook appended that signature to the message.

70.     Defendants admit the allegations in ¶ 70, except that Defendants deny that the message was "unsolicited."

71.     Defendants deny the allegations in ¶ 71.

72.     Defendants deny the allegations in ¶ 72, except that Defendants admit that Power.com's offer of potential monetary compensation may have induced some Facebook users to participate in Power's launch program.

73.     Defendants deny the allegations in ¶ 73.

74.     Defendants admit the allegations in ¶ 74.  Facebook has also "developed computer software and other automated devices and programs to access and obtain information" from other websites, as detailed above, for example.  This is a common industry practice.

75.     Defendants deny the allegations in ¶ 75, except that Defendants admit that Power creates temporary cached copies of the Facebook website in order to display it through the Power browser.  This is a standard practice used by all browsers.  For example, the Microsoft company also creates "cached copies" every time a user views the Facebook site through the Internet Explorer browser.  Similarly Google creates and stores "cached copies" of nearly every website on the internet, including Facebook.com.  (Other search engines do the same.)  Power does not store or retain these cached copies.  Facebook has also accessed and copied third party websites

(including but not limited to, creation of cached copies of the website) to develop, test, implement, use and provide" Facebook's services.  This too is a common industry practice.

76.     Defendants deny the allegations in ¶ 76.

77.     Defendants deny the allegations in ¶ 77.

78.     Defendants deny the allegations in ¶ 78.

79.     Defendants deny the allegations in ¶ 79.

80.     Defendants deny the allegations in ¶ 80.

81.     Defendants deny the allegations in ¶ 81.

82.     Defendants deny the allegations in ¶ 82.

83.     Defendants deny the allegations in ¶ 83.

84.     Defendants deny the allegations in ¶ 84.

85.     Defendants deny the allegations in ¶ 85.

86.     Defendants deny the allegations in ¶ 86.

### First Claim For Relief

**Violation of Controlling The Assault of Non-Solicited Pornography And Marketing ("CAN-SPAM"), 15 U.S.C. § 7701, *et seq.***

87.     Paragraph 87 simply refers back to the allegations of prior paragraphs.  No further response is required.

88.     Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 88.

89.     The allegations of ¶ 89 state conclusions of law to which no response is required.

90.     The allegations of ¶ 90 state conclusions of law to which no response is required.

91.     Defendants deny the allegations in ¶ 91.

92.     Defendants deny the allegations in ¶ 92.

93.     Defendants deny the allegations in ¶ 93.

94.     Defendants deny the allegations in ¶ 94.

95.     Defendants deny the allegations in ¶ 95.

96.    Defendants deny the allegations in ¶ 96.

97.    Defendants deny the allegations in ¶ 97.

98.    Defendants deny the allegations in ¶ 98.

99.    Defendants deny the allegations in ¶ 99.

100.    Defendants deny the allegations in ¶ 100.

101.    Defendants deny the allegations in ¶ 101.

102.    Defendants deny the allegations in ¶ 102.

### Second Claim For Relief

**Violation of The Computer Fraud And Abuse Act, 18 U.S.C.
§ 1030, *et seq.***

103.    Paragraph 103 simply refers back to the allegations of prior paragraphs.  No further response is required.

104.    The allegations of ¶ 104 state conclusions of law to which no response is required.

105.    Defendants deny the allegations in ¶ 105.

106.    Defendants deny the allegations in ¶ 106.

107.    Defendants deny the allegations in ¶ 107.

108.    Defendants deny the allegations in ¶ 108.

109.    Defendants deny the allegations in ¶ 109.

110.    Defendants deny the allegations in ¶ 110.

111.    Defendants deny the allegations in ¶ 111.

### Third Claim For Relief

**California Comprehensive Computer Data Access And Fraud
Act, California Penal Code § 502**

112.    Paragraph 112 simply refers back to the allegations of prior paragraphs.  No further response is required.

113.    Defendants deny the allegations in ¶ 113.

114.    Defendants deny the allegations in ¶ 114.

115.    Defendants deny the allegations in ¶ 115.

116.    Defendants deny the allegations in ¶ 116.

117.    Defendants deny the allegations in ¶ 117.

118.    Defendants deny the allegations in ¶ 118.

119.    Defendants deny the allegations in ¶ 119.

120.    Defendants deny the allegations in ¶ 120.

121.    Defendants deny the allegations in ¶ 121.

### Fourth Claim For Relief

**Copyright Infringement (Direct Vicarious And Contributory)**
**17 U.S.C. § 101, *et seq.***

122.    Paragraph 122 simply refers back to the allegations of prior paragraphs.  No further response is required.

123.    Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 123.

124.    Defendants admit the allegations in ¶ 124.

125.    Defendants deny the allegations in ¶ 125.

126.    Defendants deny the allegations in ¶ 126.

127.    Defendants deny the allegations in ¶ 127.

128.    Defendants deny the allegations in ¶ 128.

129.    Defendants deny the allegations in ¶ 129.

130.    Defendants deny the allegations in ¶ 130.

131.    Defendants deny the allegations in ¶ 131.

132.    Defendants deny the allegations in ¶ 132.

133.    Defendants deny the allegations in ¶ 133.

### Fifth Claim For Relief

**Violation Of The Digital Millennium Copyright Act ("DMCA"),**
**17 U.S.C. § 1201, *et seq.***

134.    Paragraph 134 simply refers back to the allegations of prior paragraphs.  No further response is required.

135.    Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 135.

ANSWER AND COUNTERCLAIMS OF DEFENDANTS POWER VENTURES, INC. AND STEVE VACHANI

16

136.    Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 136.

137.    Defendants deny the allegations in ¶ 137.

138.    Defendants deny the allegations in ¶ 138.

139.    Defendants deny the allegations in ¶ 139.

140.    Defendants deny the allegations in ¶ 140.

141.    Defendants deny the allegations in ¶ 141.

142.    Defendants deny the allegations in ¶ 142.

143.    Defendants deny the allegations in ¶ 143.

144.    Defendants deny the allegations in ¶ 144.

**Sixth Claim For Relief**

**Trademark Infringement, 15 U.S.C. §§ 1114 and 1125(a)**

145.    Paragraph 145 simply refers back to the allegations of prior paragraphs.  No further response is required.

146.    Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 146.

147.    Defendants deny the allegations in ¶ 147.

148.    Defendants deny the allegations in ¶ 148.

149.    Defendants deny the allegations in ¶ 149.

150.    Defendants deny the allegations in ¶ 150.

151.    Defendants deny the allegations in ¶ 151.

152.    Defendants deny the allegations in ¶ 152.

153.    Defendants deny the allegations in ¶ 153.

**Seventh Claim For Relief**

**Trademark Infringement Under California Law**

154.    Paragraph 154 simply refers back to the allegations of prior paragraphs.  No further response is required.

155.     Defendants deny knowledge sufficient to form a belief as to the truth of the allegations in ¶ 155.

156.     Defendants deny the allegations in ¶ 156.

### Eighth Claim For Relief

**Unlawful, Unfair, And Fraudulent Competition Under California Business & Professions Code § 17,200, *et seq*.**

157.     Paragraph 157 simply refers back to the allegations of prior paragraphs.  No further response is required.

158.     Defendants deny the allegations in ¶ 158.

159.     Defendants deny the allegations in ¶ 159.

### IV.  AFFIRMATIVE DEFENSES

### First Affirmative Defense

**Fair Use, 17 U.S.C. § 107**

160.     The "copying," if any, constituted fair use under 17 U.S.C. § 107, and thus is not copyright infringement.

### Second Affirmative Defense

**Copyright Misuse**

161.     Facebook's conduct, as described herein, constitutes copyright misuse.

### Third Affirmative Defense

**Trademark Misuse**

162.     Facebook's conduct, as described herein, constitutes trademark misuse.

### Fourth Affirmative Defense

**Estoppel**

163.     By its own conduct as described herein, Facebook is estopped from asserting any right to recover on the alleged causes of action in the Complaint.

### Fifth Affirmative Defense

**Unclean Hands**

164.     Facebook's recovery against Defendants is barred by the doctrine of unclean hands.

### Sixth Affirmative Defense

**Business Justification**

165.   The conduct challenged by Facebook was justified under the circumstances.

### Sixth Affirmative Defense
**Additional Defenses**

166.   Defendants reserve the right to allege additional defenses as they become known during discovery and to amend this Answer accordingly.

### V.  COUNTERCLAIMS

### First Counterclaim

**Unfair Competition In Violation Of**
**California Business & Professions Code §§ 17200 *Et Seq.***
**(Unfair Business Practices)**

167.   Defendants incorporate by reference all allegations of all prior paragraphs as though fully set forth herein.

168.   Facebook is subject to the Unfair Competition Law, Sections 17200 *et seq*. of the California Business & Professions Code (the "UCL").  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising…"

169.   Facebook violated the unfair business practices prong of the UCL by improperly restricting Facebook users' ability to access their own data in order to stifle the growth of competitors, including Power.

### Second Counterclaim

**Unfair Competition In Violation Of**
**California Business & Professions Code §§ 17200 *Et Seq.***
**(Unlawful Business Practices)**

170.   Defendants incorporate by reference all allegations of all prior paragraphs as though fully set forth herein.

171.   Facebook violated the unlawful business practices prong of the UCL by virtue of the violations of the Sherman Act and Cartwright Act detailed below.

### Third Counterclaim
### Restraint Of Trade, 15 U.S.C. § 1

172.    Defendants incorporate by reference all allegations of all prior paragraphs as though fully set forth herein.

173.    Facebook's conduct restricting users' ability to access their own data constitutes an unlawful restraint of trade under Section I of the Sherman Act.

### Fourth Counterclaim
### Restraint On Competition, Cal. Bus. & Prof. Code §§ 16,720 *et seq.*

174.    Defendants incorporate by reference all allegations of all prior paragraphs as though fully set forth herein.

175.    Facebook's conduct restricting users' ability to access their own data constitutes a prohibited restraint on competitions under §§ 16720 *et seq.* of the Business and Professions Code.

### Fifth Counterclaim
### Monopolization, 15 U.S.C. § 2

176.    Defendants incorporate by reference all allegations of all prior paragraphs as though fully set forth herein.

177.    Facebook's conduct constitutes monopolization of the market for social networking website services in violation of Section 2 of the Sherman Act.

### Sixth Counterclaim
### Attempted Monopolization, 15 U.S.C. § 2

178.    Defendants incorporate by reference all allegations of all prior paragraphs as though fully set forth herein.

179.    Facebook's conduct constitutes an unlawful attempt to monopolize the market for social networking website services in violation of Section 2 of the Sherman Act.

### VI.  PRAYER FOR RELIEF

WHEREFORE, Defendants Power and Vachani pray for judgment as follows:

1.    That plaintiffs take nothing by the Complaint, and that judgment be entered against Plaintiffs and in favor of Power and Vachani;

2.      That Power and Vachani be awarded costs of suit incurred in defending this action, including reasonable attorneys' fees;

3.      That Facebook be permanently enjoined from the unlawful and anticompetitive practices identified herein;

4.      That Power and Vachani be awarded monetary damages for the injuries caused by Facebook's unlawful and anticompetitive practices;

5.      That such damages be tripled under 15 U.S.C. § 15(a);

6.      That Power and Vachani be awarded reasonable attorneys' fees, expenses and costs associated with prosecuting their claims; and

7.      For such further relief as this Court deems necessary, just or proper.

### DEMAND FOR JURY TRIAL

Defendants demand a trial by jury.


Respectfully submitted,

Dated:  July 9, 2009                          BRAMSON, PLUTZIK, MAHLER &
                                              BIRKHAEUSER, LLP


                                              By_____/s/_____
                                                           Alan R. Plutzik

                                              Alan R. Plutzik (State Bar No. 77785)
                                              Michael S. Strimling (State Bar No. 96135)
                                              L. Timothy Fisher (State Bar No. 191626)
                                              2125 Oak Grove Road, Suite 120
                                              Walnut Creek, CA  94598
                                              Telephone:  (925) 945-0200
                                              Facsimile:  (925) 945-8792


                                              LAW OFFICES OF SCOTT A. BURSOR
                                              Scott A. Bursor
                                              369 Lexington Avenue, 10th Floor
                                              New York, NY  10017-6531
                                              Telephone:  (212) 989-9113
                                              Facsimile:   (212) 989-9163

                                              Attorneys for Defendants Power
                                              Ventures, Inc. and Steve Vachani