BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik (State Bar No. 077785)
Michael S. Strimling (State Bar No. 96135)
L. Timothy Fisher (State Bar No. 191626)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792

Attorneys for Defendants Power
Ventures, Inc. and Steve Vachani

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC.,<br><br>                              Plaintiff,<br><br>-against-<br><br>POWER VENTURES, INC. d/b/a POWER.COM, a California corporation; POWER VENTURES, INC. a Cayman Island Corporation, STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, an individual and/or business entity of unknown nature; DOES 2 through 25, inclusive, individuals and/or business entities of unknown nature,<br><br>                              Defendants. | Case No. 5:08-cv-05780<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF FACEBOOK, INC. TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES**<br><br>Judge: Honorable Jeremy Fogel<br>Date: October 30, 2009<br>Time: 9:00 a.m.<br><br>Courtroom: 3, 5th Floor |

# TABLE OF CONTENTS

PAGE

I.    THE RULE 12(B)(6) LEGAL STANDARD ...................................................................1

II.   POWER HAS STATED A CLAIM UNDER SECTION 1 OF THE
      SHERMAN ACT..............................................................................................................2

III.  POWER HAS STATED A CLAIM UNDER THE CARTWRIGHT ACT.........................4

IV.   POWER HAS STATED CLAIMS FOR MONOPOLIZATION AND
      ATTEMPTED MONOPOLIZATION UNDER SECTION 2 OF THE
      SHERMAN ACT..............................................................................................................4

V.    POWER HAS STATED A CLAIM FOR UNLAWFUL BUSINESS
      PRACTICES UNDER SECTION 17200..........................................................................4

VI.   POWER HAS STATED A CLAIM FOR UNFAIR BUSINESS
      PRACTICES UNDER SECTION 17200..........................................................................5

VII.  POWER'S AFFIRMATIVE DEFENSES SHOULD NOT BE STRICKEN.........................6

VIII. IF FACEBOOK'S MOTION IS GRANTED IN ANY RESPECT, POWER
      SHOULD BE GIVEN LEAVE TO AMEND ....................................................................7

IX.   CONCLUSION ................................................................................................................7

## TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)............................................. 1

*Cel-Tech Communications Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163 (1999).................. 5

*Conley v. Gibson*, 355 U.S. 41 (1957).................................................................................................. 1

*Falkowski v. Imation Corp.*, 309 F3d 1123 (9th Cir. 2002) .................................................................. 1

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997)................................................................ 1

*Motors, Inc. v. Times Mirror Co.,* 102 Cal.App.3d 735 (1980) ........................................................... 5

*Pareto v. F.D.I.C.*, 139 F.3d 696 (9th Cir. 1998) .................................................................................. 1

*Sega v. Accolade*, 977 F.2d 1510 (9th Cir. 1992).................................................................................. 7

*Sony v. Connectix*, 203 F.3d 596, 608 (9th Cir. 2000) ......................................................................... 7

*Stanbury Law Firm v. IRS* , 221 F.3d 1059 (9th Cir. 2000) .................................................................. 6

*Theme Promotions Inc. v. News American Marketing FSI*, 546 F.3d 991 (9th Cir. 2008) .................. 7

**Statutes**

Cal. Bus. & Prof. Code § 17200..................................................................................................... 4, 5

Fed. R. Civ. P. 8(a)(2) .......................................................................................................................... 1

Fed  R. Civ. P. 12(f) ............................................................................................................................. 6

Fed. R. Civ. P. 15(a)(2) ........................................................................................................................ 7

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF FACEBOOK, INC. TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES

ii

Defendants Power Ventures, Inc. and Steve Vachani (hereafter collectively referred to as "Defendants" or "Power") respectfully submit this Memorandum Of Points And Authorities In Opposition To Motion Of Facebook, Inc. To Dismiss Counterclaims And Strike Affirmative Defenses.

## I. THE RULE 12(b)(6) LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules require only that this "statement" constitute a " 'showing' rather than a blanket assertion of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). The rules "do not require a claimant to set out in detail the facts upon which he bases a claim. To the contrary, all that is required is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (internal quotation omitted). A plaintiff's factual allegations need only "be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965.

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The court must find "enough facts to raise a reasonable expectation that discovery will reveal evidence" to substantiate the necessary elements of the plaintiff's claim. *Id.* "However, the Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotation omitted). Indeed, a motion to dismiss must be denied unless it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Falkowski v. Imation Corp.*, 309 F3d 1123, 1132 (9th Cir. 2002).

In evaluating a motion to dismiss, the Court must accept as true all material allegations in the complaint, as well as reasonable inference to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). Further, the complaint must be read in the light most favorable to the plaintiff. *Id.*

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF FACEBOOK, INC. TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES

1

## II.  POWER HAS STATED A CLAIM UNDER SECTION 1 OF THE SHERMAN ACT

Facebook contends that Power has failed to allege "evidentiary facts" supporting three elements of the Section 1 violation: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade, and (3) which actually injures competition.  *See* Facebook Motion at 5-6.  But Power has pleaded facts showing each of these elements.

Power alleges that Facebook's "Terms of Use," the agreement that it imposes on Facebook users, purports to restrict those user's ability to access their own User Content` to stifle competition from other websites, such as Power.com.  *See* Answer And Counterclaims of Defendants Power Ventures, Inc. And Steve Vachani (hereafter "Answer And Counterclaims") at 7:5-7 (referencing the Facebook Terms of Use); *id.* at 2:6-3:12 (describing a purported "security measure" imposed under the Facebook Terms of Use which prevents users from porting data to competing websites).  The Answer And Counterclaims specifically identifies this agreement.  *Id.* at 7:5-7.  The Answer And Counterclaim also describes in detail common industry practices for porting data between websites, a practice which is essential to competition, and explains how Facebook's agreement with its users prevents such competition:

> One example of Facebook improperly restricting their users' ownership and control of their own data is Facebook's purported "security measure" of prohibiting users from providing their own username and password to third parties, such as Power.  This purported "security measure" is discussed at paragraph 3 of Facebook's complaint.  But this is not a "security measure" at all.  The entry of usernames and passwords to access a website through a third-party site poses no threat to security.  On the contrary, it is commonplace in the industry.  Indeed, it is a practice that Facebook itself employs on its own site to allow its users to access other websites through Facebook.  For example, below is a screen capture from http://www.facebook.com/gettingstarted.php?

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF FACEBOOK, INC. TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES

2

[Screenshot of Facebook "Find friends using your email account" page, showing Step 1 Find Friends, Step 2 Profile Information, Step 3 Join a Network, with fields for Your Email and Password, a Find Friends button, note "We won't store your password or contact anyone without your permission.", a "Find people you Instant Message" link, and a "Skip this step" link.]

> On this page, Facebook solicits users to enter their account names and passwords for users' email accounts at Google's Gmail, AOL, Yahoo, Hotmail, or other third party websites. Facebook then uses the account information to allow the user to access those accounts through Facebook, and to import information – *i.e.*, to "scrape" data – from those third-party sites into Facebook. This practice fueled Facebook's growth by allowing Facebook to add millions of new users, and to provide users with convenient tools to encourage their friends and contacts to join Facebook as well.
>
> Facebook seeks to stifle competitors from using the same type of utility. Facebook's purported "security measure" – prohibiting Facebook users from logging into Facebook through third-party sites, such as Power.com – unduly restricts users' ability to access their own data. It thwarts the development of innovative technologies, platforms, and applications that users might wish to use, such as those offered by Power.com.

Answer And Counterclaims at 2:6-3:12. These allegations are extremely detailed. They describe the anticompetitive effect of Facebook's conduct in detail, and also provide facts from which intent to injure competition can be inferred. Indeed, it is not possible to plead direct evidence of "intent," as this is a state of mind which must be inferred from conduct. But the allegations describing the pretextual nature of the purported "security measure," and the fact that the *only* effect of

Facebook's conduct is to restrain users' ability to port their data to competing sites, is sufficient to allege intent.

### III.  POWER HAS STATED A CLAIM UNDER THE CARTWRIGHT ACT

Facebook's argument concerning the Cartwright Act claim is identical to its argument concerning the Section 1 claim.  Power has stated a claim under the Cartwright Act for the reasons stated in Part III.B, above.

### IV.  POWER HAS STATED CLAIMS FOR MONOPOLIZATION AND ATTEMPTED MONOPOLIZATION UNDER SECTION 2 OF THE SHERMAN ACT

Facebook contends that Power's Answer and Counterclaim fails to plead "the possession of monopoly power in the relevant market and the acquisition or perpetuation of this power by illegitimate predatory practices."  Facebook Motion at 7.  In fact, Power has pleaded both of these elements.

Paragraph 20 of Facebook's First Amended Complaint states:  "Facebook owns and operates the widely popular social networking website located at http://www.facebook.com. Facebook currently has more than 132 million active users."  Power's Answer and Counterclaim admits these allegations.   *See* Answer And Counterclaim ¶ 20 ("Defendants admit the allegations in ¶ 20.").  Power also alleges that it is a competitor in this market, and that Facebook is seeking to maintain its market power by preventing Power.com from using the same industry standard practices that fueled Facebook's own growth.  *See* Answer and Counterclaim at 2:6-3:12 ("This practice fueled Facebook's growth by allowing Facebook to add millions of new users, and to provide users with convenient tools to encourage their friends and contacts to join Facebook as well.  Facebook seeks to stifle competitors from using the same type of utility.").  These allegations are also sufficient to establish the elements of attempted monopolization.

### V.  POWER HAS STATED A CLAIM FOR UNLAWFUL BUSINESS PRACTICES UNDER SECTION 17200

Power's unlawful business practices claim is predicated on the violations of the Sherman and Cartwright Acts discussed above.  Since the complaint adequately pleads those underlying claims, it adequately states a claim for unlawful business practices under Cal. Bus. & Prof. Code § 17200.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF FACEBOOK, INC. TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES

4

## VI.  POWER HAS STATED A CLAIM FOR UNFAIR BUSINESS PRACTICES UNDER SECTION 17200

Facebook asserts that the Power's unfair business practices claim should be dismissed "because it is virtually identical to Power's inadequately-pled antitrust claims." Facebook Mot. at 10.  But that argument is wrong as a matter of law.  Even if Power's antitrust claims are not adequately pled, the claim for unfair competition under § 17200 does not depend on any antitrust violation.  A business practice need not violate the antitrust law to be found an "unfair business practice" under § 17200.  If that were the case, § 17200 would be rendered mere surplussage to the antitrust laws.  And if a violation of some other statute were required to find a violation of the unfair prong of § 17200, the unfair prong would be rendered surplussage to the unlawful prong of that same statute.  On the contrary, the unfair prong of § 17200 is broader than both the antitrust laws and the unlawful prong.  As the California Supreme Court has explained:

> [Section 17200] does more than just borrow.  The statutory language referring to 'any unlawful, unfair *or* fraudulent' practice (italics added) makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law.
>
> …
>
> The unfair competition law … has a broader scope for a reason.  "[T]he Legislature ... intended by this sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur.  Indeed, ... the section was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable ' "new schemes which the fertility of man's invention would contrive." ' (*American Philatelic Soc. v. Claibourne* (1935) 3 Cal.2d 689, 698 [46 P.2d 135].)

*Cel-Tech Communications Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180-181 (1999). *See also* "[i]t would be impossible to draft in advance detailed plans and specifications of all acts and conduct to be prohibited, since unfair or fraudulent business practices may run the gamut of human ingenuity and chicanery." *Motors, Inc. v. Times Mirror Co.,* 102 Cal.App.3d  735, 740 (1980).

Power alleges that Facebook has invented a new scheme to stifle competitors by preventing internet users from porting their own data to other websites.  *See* Answer And Counterclaims at 2:6-3:12.  Given the very broad scope of § 17200's proscription of "unfair business practices," this

may be a new scheme that falls within the statute's broad, sweeping language, regardless of whether it violates the antitrust laws.

## VII. POWER'S AFFIRMATIVE DEFENSES SHOULD NOT BE STRICKEN

Facebook seeks to strike six of Power's affirmative defenses. The Ninth Circuit recognizes that "striking a party's pleadings is an extreme measure[.]" *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (9th Cir. 2000). Accordingly, the court has explained that "[m]otions to strike under Fed R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted." *Id.* (internal quotation omitted).

Facebook moves to strike Power's first through sixth affirmative defenses on the ground that these defenses "do no more than refer to a legal doctrine without any explanation of how Power's factual allegations might render that doctrine applicable." Facebook Mot. at 11. Facebook's argument misses the mark by far. Consider, for example, Power's first affirmative defense, of "fair use" under the copyright laws. Power's Answer provided an extremely detailed pleading of that defense:

> Power.com provides users with utilities that allow them to copy their own User Content for purposes of updating it and making it portable to other sites – without copying other elements of the Facebook website. …
>
> …
>
> Unable to identify any actual infringement of a copyright-protected element of its website, Facebook has resorted to arguing that Power "created cached copies of the [Facebook] website." *See* Facebook's 4/17/09 Opposition to Power's Motion to Dismiss at 9:13-15. What that means is that Facebook alleges that every time the Facebook website is displayed on a computer it is "copied," albeit momentarily, in the computer's cached memory. This allegation of copying is akin to charging the Dell company with copyright infringement whenever a user accesses the Facebook website through a Dell computer; or charging the Lexmark company with copyright infringement every time a user prints a page from the Facebook website on a Lexmark printer. Furthermore, even if Facebook could premise a copyright claim on the ephemeral and momentary copying of a website in a computer's cached memory, such temporary and intermediate copying in order to extract non-copyrighted elements – such as the User Content at issue here – falls squarely within the fair use doctrine.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF FACEBOOK, INC. TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES

6

Answer And Counterclaim at 7-8.  *See also Sega v. Accolade*, 977 F.2d 1510, 1514 (9th Cir. 1992) (holding intermediate copying of copyrighted computer work to gain understanding of unprotected functional elements was fair use); *Sony v. Connectix*, 203 F.3d 596, 608 (9th Cir. 2000) (holding intermediate copying of BIOS that was necessary to access unprotected functional elements constituted fair use).  Like the fair use defense, each of the affirmative defenses is adequately pleaded in Power's Answer.  There are no grounds for striking any of them.

## VIII.  IF FACEBOOK'S MOTION IS GRANTED IN ANY RESPECT, POWER SHOULD BE GIVEN LEAVE TO AMEND

If Facebook's motion is granted in any respect, Power should be given leave to amend its pleading.  A party may amend a pleading with a court's leave, and under Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave when justice so requires."  The Ninth Circuit applies this policy liberally, denying leave only where an amendment clearly would be futile.  *See Theme Promotions Inc. v. News American Marketing FSI*, 546 F.3d 991, 1010 (9th Cir. 2008).  This is a complicated action involving new technologies with complex legal claims asserted by both parties, and Power has made no prior amendments to its pleading.  At this stage there are no grounds to conclude that amendment to Power's counterclaims or affirmative defenses would be futile.

## IX.  CONCLUSION

For the foregoing reasons, the Facebook's motion should be denied.  If, however, Facebook's motion is granted in any respect, Power should be given leave to amend.

Respectfully submitted,

Dated:  October 9, 2009                BRAMSON, PLUTZIK, MAHLER &
                                       BIRKHAEUSER, LLP


By_____/s/_____
                Alan R. Plutzik

Alan R. Plutzik (State Bar No. 77785)
Michael S. Strimling (State Bar No. 96135)
L. Timothy Fisher (State Bar No. 191626)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA  94598
Telephone:  (925) 945-0200
Facsimile:  (925) 945-8792

| | |
|---|---|
| 1 | LAW OFFICES OF SCOTT A. BURSOR |
| 2 | Scott A. Bursor |
| | 369 Lexington Avenue, 10th Floor |
| 3 | New York, NY  10017-6531 |
| | Telephone:  (212) 989-9113 |
| 4 | Facsimile:   (212) 989-9163 |
| 5 | Attorneys for Defendants Power Ventures, Inc. and Steve Vachani |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF FACEBOOK, INC. TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES

8