I. NEEL CHATTERJEE (STATE BAR NO. 173985)
nchatterjee@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:     +1-650-614-7400
Facsimile:     +1-650-614-7401

JESSICA S. PERS (STATE BAR NO. 77740)
jpers@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     +1-415-773-5700
Facsimile:     +1-415-773-5759

Attorneys for Plaintiff and
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., | Case No.  5:08-cv-05780 JF (RS) |
| Plaintiff, | **FACEBOOK INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES** |
| v. | |
| POWER VENTURES, INC. a Cayman Island Corporation; STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, DOES 2-25, inclusive, | Date:       October 30, 2009<br>Time:       9:00 a.m.<br>Judge:      Hon. Jeremy D. Fogel<br>Courtroom: 3, 5th Floor |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ....................................................................................................... 1

    A. Power Has Not Stated Claims Under Section 1 or the Cartwright Act ................. 1

        1. No Facts Are Alleged that Plausibly Suggest Harm to Competition or Anticompetitive Intent ............................................................... 1

        2. There is No Plausible Agreement to Restrain Trade .................................. 2

    B. Power Has Not Stated Claims Under Section 2 .................................................... 4

    C. Power Has Not Stated Claims Under Business and Professions Code Section 17200 ....................................................................................................... 5

    D. Power Should Not Be Given Leave To Amend .................................................... 7

1

## TABLE OF AUTHORITIES

2

**Page**

3    *Albrecht v. Herald Co.,*
          390 U.S. 145 (1968) ................................................................................................ 3
4
     *Apple Inc. v. Psystar Corp.,*
5          586 F. Supp. 2d 1190 (N.D. Cal. 2008) ............................................................. 2, 6

6    *Ashcroft v. Iqbal,*
          129 S. Ct. 1937 (2009) ........................................................................................... 5
7
     *Bell Atl. Corp. v. Twombly,*
8          550 U.S. 544 (2007) ............................................................................................ 1, 5

9    *Brunswick Corp. v. Pueblo Bowl-o-Mat, Inc.,*
          429 U.S. 477 (1977) ................................................................................................ 1
10
     *Coalition for ICANN Transparency v. Verisign,*
11         567 F.3d 1084 (9th Cir. 2009) ............................................................................... 4

12   *Copperweld Corp. v. Independence Tube Corp.,*
          467 U.S. 752 (1984) ................................................................................................ 3
13
     *DM Research, Inc. v. College of American Pathologists,*
14         170 F.3d 53 (1st Cir. 1999) ..................................................................................... 2

15   *Dimidowich v. Bell & Howell,*
          803 F.2d 1473 (9th Cir. 1989) ................................................................................ 3
16
     *Doe ex. rel. Doe v. School Dist. of City of Norfolk,*
17         340 F.3d 605 (9th Cir. 2003) .................................................................................. 7

18   *Gabrielson v. Montgomery Ward & Co.,*
          785 F.2d 762 (9th Cir. 1986) .................................................................................. 7
19
     *Glen Holly Entertainment, Inc. v. Tektronix Inc.,*
20         352 F.3d 367 (9th Cir. 2003) .................................................................................. 1

21   *International Norcent Technology v. Koninkijke Philips Electronics N.V.,*
          Case No. CV 07-00043, 2007 U.S. Dist.
22         LEXIS 89946 (C. D. Cal., Oct. 29, 2007) .............................................................. 4

23   *Kendall v. VISA U.S.A., Inc.,*
          518 F.3d 1042 (9th Cir. 2008) ................................................................................ 3
24
     *Kingray, Inc. v. NBA, Inc.,*
25         188 F. Supp. 2d 1177 (S.D. Cal. 2008) .................................................................. 2

26   *Mularkey v. Holsum Bakery, Inc.,*
          146 F.3d 1064 (9th Cir. 1998) ................................................................................ 3
27
     *Mutual Fund Investors, Inc. v. Putnam Management Co.,*
28         553 F.2d 620 (9th Cir. 1977) .................................................................................. 2

- ii -

**TABLE OF AUTHORITIES**
(continued)

Page

*Newcal Industries, Inc. v. Ikon Office Solution, Inc.*,
    513 F.3d 1038 (9th Cir. 2008)................................................................. 4

*Nsight, Inc. v. Peoplesoft, Inc.*,
    296 Fed. Appx. 555 (9th Cir.)................................................................. 3

*Planet Coffee Roasters, Inc. v. Dam*,
    Case No. 09-00571, 2009 U.S. Dist.
    LEXIS 70775 (C.D. Cal. Aug. 12, 2009).............................................. 5

*Pool Water Prod. v. Olin Corp.*,
    258 F.3d 1024 (9th Cir. 2001)................................................................ 1

*Rebel Oil v. Arco*,
    51 F.3d 1421 (9th Cir. 1995)................................................................... 1

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987)............................................................... 2, 4

*Tarrant Service Agency v. American Standard, Inc.*,
    12 F.3d 609 (6th Cir. 1993)..................................................................... 3

*Valuepest.com of Charlotte, Inc. v. Bayer Corp.*,
    561 F.3d 282 (4th Cir. 2009)................................................................... 3

**STATE CASES**

*Cel-Tech Communications Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999).............................................................................. 6

*Chavez v. Whirlpool Corp.*,
    93 Cal. App. 4th 363 (2001).................................................................. 5, 6

*RLH Industries, Inc. v. SBC Communications, Inc.*,
    133 Cal. App. 4th 1277 (2005)................................................................. 6

*SC Manufactured Homes v. Liebert*,
    162 Cal. App. 4th 68 (2008)..................................................................... 6

I.    **INTRODUCTION**

The opposition brief filed by Power Ventures, Inc. and Steve Vachani ("Power") ignores post-*Twombly* pleading standards that require a claimant to allege facts that "plausibly suggest" an entitlement to relief and instead, parrots the same insufficient "labels and conclusions" contained in Power's Answer and Counterclaims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Power does not cite a single case that transforms its unhappiness with Facebook's unilateral security policy into a violation of the antitrust or unfair competition laws. Those laws are "only concerned with acts that harm 'allocative efficiency and raise the price of goods above their competitive level....'" *Pool Water Prod. v. Olin Corp.*, 258 F.3d 1024, 1034 (9th Cir. 2001) (quoting *Rebel Oil v. Arco*, 51 F.3d 1421 (9th Cir. 1995)). Facebook's policy to insure security on the Internet – a legitimate concern of users who enjoy Facebook free of charge – cannot plausibly raise prices, limit output or otherwise harm competition. Power's desire to circumvent the rules and threaten the security of users' data is not the basis for an antitrust action. These counterclaims simply do not allege facts sufficient to plausibly suggest that Facebook has harmed competition in a relevant market, which is the only "injury" the antitrust laws are designed to prevent. *See Brunswick Corp. v. Pueblo Bowl-o-Mat, Inc.* 429 U.S. 477, 189 (1977); *Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 352 F.3d 367, 371 (9th Cir. 2003).

II.    **ARGUMENT**

   A.    **Power Has Not Stated Claims Under Section 1 or the Cartwright Act.**

   1.    **No Facts Are Alleged that Plausibly Suggest Harm to Competition or Anticompetitive Intent.**

Power does not even try to respond to Facebook's arguments about two of the basic requirements of a Section 1 or Cartwright Act claim. The counterclaims do not allege any facts sufficient to plausibly suggest that Facebook intended to restrain trade or that it injured competition in a relevant market by adopting its security policy. The closest Power comes is the allegation that: "Facebook seeks to stifle competitors" from accessing information from the Facebook site. *See* Answer and Counterclaims of Defendants, ("Answer"), Dkt. No. 41 at 3:9. But this is no more than sweeping generality without factual support. For example, there are no

1  facts addressing the existence of a relevant market, how Power (and others) seek to compete in

2  that relevant market or how Facebook's security policy prevents such competition.

3      Merely saying that Facebook's policy was adopted for some anticompetitive purpose does

4  not meet the requirements for pleading a Section 1 claim. *See DM Research, Inc. v. College of*

5  *American Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999); *Mutual Fund Investors, Inc. v. Putnam*

6  *Management Co.*, 553 F.2d 620, 627 (9th Cir. 1977) ("[w]ithout specific <u>factual support</u> from

7  which a jury could infer the proscribed intent or motive, and in the absence of a sustainable legal

8  theory, appellants' conclusory allegations" are insufficient) (emphasis added); *Kingray, Inc. v.*

9  *NBA, Inc.*, 188 F. Supp. 2d 1177, 1197 (S.D. Cal. 2008) ("Insofar as these allegations suggest

10  intent to harm competition, they are conclusory and insufficient to withstand a motion to

11  dismiss."); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735 (9th Cir. 1987) ("The

12  allegation of specific intent to terminate a distributor with the purposeful intent to bring about

13  harm to competition is conclusory in the absence of anticompetitive conduct from which specific

14  intent may be inferred.").

15      Power's minimal response to Facebook's argument is beside the point. Power may have

16  described Facebook's security policies "in detail." *See* Opposition to Motion to Dismiss of

17  Facebook ("Opposition"), Dkt. No. 50 at 3:23. But that does not substitute for alleging facts that

18  would plausibly suggest anticompetitive intent and harm to competition. Those facts are totally

19  absent.[1]

20      **2.      There is No Plausible Agreement to Restrain Trade.**

21      The only argument relating to the Section 1 and Cartwright Act claims that Power even

22  tries to refute is whether Facebook entered into an "agreement to restrain trade." Despite the

23  complete lack of any factual allegations in the counterclaims, Power now asserts that two

24  passages in the Introduction to its Answer allege the necessary agreement to restrain trade. They

25  do not. The first passage merely describes the Facebook site and the second refers to Facebook's

---

[1] In fact, Power's narrative does not show anticompetitive intent by Facebook or harm to competition at all. On the contrary, the minimal facts alleged in the Answer (as well as those in Facebook's complaint) suggest only that Facebook adopted rules on providing user names and passwords to third parties as a security measure, and not as a means to "stifle competitors."

1   security policy that prohibits users from providing their user names and password to third parties.

2   However, Power cannot base its antitrust claims on Facebook's security policy.

3        Facebook unilaterally developed and adopted the security policy at issue – a fact that

4   Power does not (and cannot) refute.  Unilateral conduct is not actionable under either Section 1 or

5   the Cartwright Act.  *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768

6   (1984) ("Section 1 of the Sherman Act, in contrast, reaches unreasonable restraints of trade

7   effected by a 'contract, combination . . . or conspiracy' between *separate* entities.  It does not

8   reach conduct that is 'wholly unilateral.'") (emphasis in original) (citing, *Albrecht v. Herald Co.*,

9   390 U.S. 145, 149 (1968)); *See also Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478-77 (9th

10  Cir. 1989) (Cartwright Act "does not address unilateral conduct").

11       As a matter of law, a company's unilateral policy becomes no less unilateral because it is

12  incorporated into terms of use that must be accepted as a condition of service.  For example, in

13  *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1203-4 (N.D. Cal. 2008), the court dismissed a

14  Cartwright Act counterclaim on the ground that it "alleges only unilateral anticompetitive

15  conduct" even though Apple required all of its customers to enter into an End User License

16  Agreement that prohibited them from installing Apple's operating system on non-Apple

17  computers.  *See also Tarrant Service Agency v. American Standard, Inc.,* 12 F.3d 609, 617 (6th

18  Cir. 1993) (no agreement where challenged broker policy was "unilaterally implemented by

19  Trane")*; Mularkey v. Holsum Bakery, Inc.*, 146 F.3d 1064, 1065 (9th Cir. 1998) (affirming

20  judgment on Section 1 claim where the evidence showed, at most, defendant's unilateral price

21  policy); *Valuepest.com of Charlotte, Inc. v. Bayer Corp.*, 561 F.3d 282, 286 (4th Cir. 2009) (J.,

22  Wilkinson) (same, *citing Copperweld*); *Nsight, Inc. v. Peoplesoft, Inc.*, 296 Fed. Appx. 555, 558,

23  (9th Cir.) ("wholly unilateral conduct does not implicate Section 1") (internal citations omitted).

24  Power has not demonstrated "evidentiary facts which, if true, will prove . . . [the existence of] a

25  contract, combination or conspiracy among two or more persons or distinct business entities"

26  formed for the purpose of restraining trade.  *Kendall v. VISA U.S.A., Inc.*, 518 F.3d 1042, 1047

27  (9th Cir. 2008).

28

FACEBOOK'S REPLY BRIEF
5:08-CV-05780 JF

Moreover, even if Facebook's unilateral security policy could be transformed into an agreement for purposes of Section 1 and the Cartwright Act, Power cannot simply assert that it is anticompetitive without alleging any facts plausibly suggesting that it is. *See Rutman Wine Co., v. E.&J Gallo Winery*, 829 F.2d 729, 736 (9th Cir. 1983) ("The pleader may not evade [antitrust] requirements by merely alleging a bare legal conclusion; if the facts do not at least outline or adumbrate' a violation of the Sherman Act, the plaintiffs 'will get nowhere merely by dressing them up in the language of antitrust.'"). As the court noted in *International Norcent Technology v. Koninkijke Philips Electronics N.V.*, Case No. CV 07-00043, 2007 U.S. Dist. LEXIS 89946, at *38-39, (C. D. Cal., Oct. 29, 2007): "As with the magic words 'coerce,' 'combine' and 'conspiracy,' a mere allegation that parties entered into an agreement to restrain trade does not suffice to state a §1 claim." Because Power has failed completely to allege facts supporting key elements of its Section 1 and Cartwright Act claims, Facebook's motion to dismiss must be granted.

**B.      <u>Power Has Not Stated Claims Under Section 2.</u>**

Power's Opposition fails to provide any facts that support its monopolization and attempted monopolization counterclaims nor any legal basis to save these claims from dismissal. A monopolization claim must allege facts that, if true, would show both "the possession of monopoly power in the relevant market and...the acquisition or perpetuation of this power by illegitimate 'predatory' practices." *Coalition for ICANN Transparency v. Verisign*, 567 F.3d 1084, 1093 (9th Cir. 2009). Further, "[a]ntitrust law requires allegation of both a product market and a geographic market." *Newcal Industries, Inc. v. Ikon Office Solution, Inc.*, 513 F.3d 1038, 1045 (9th Cir. 2008).

Power's Opposition argues that it has done enough because Facebook alleged in its complaint that it "owns and operates the widely popular social networking website located at http://www.facebook.com" and that "Facebook currently has more than 132 million active users." Opposition at 4:8-14, citing Dkt. No. 1 at ¶ 20. These statements cannot conceivably support Power's Section 2 claims. Just because Facebook is a popular internet site that has had great success attracting users does not mean that Facebook has a monopoly, much less a

- 4 -

1  monopoly established or perpetuated through illegitimate predatory practices.

2      A Section 2 claim requires facts that show the existence of a relevant product and

3  geographic market, monopoly (or near monopoly) power in that market and the improper

4  acquisition or perpetuation of monopoly power in that market. Here, Power has utterly failed to

5  allege any of the necessary facts: what the relevant market is, who competes in that market,

6  Facebook's position in that market, how Power itself purports to compete in that market or how

7  Facebook improperly acquired or perpetuated monopoly power in that market. In addition, both

8  Section 2 counterclaims fail to allege facts indicating how the challenged action – Facebook's

9  adoption of a security policy – harmed competition in the relevant market.

10  **C.   Power Has Not Stated Claims Under Business and Professions Code Section**
11  **17200.**

12      Power's Opposition admits that its Cartwright Act counterclaims are based on the same

13  conclusory allegations made to support its antitrust counterclaims: that Facebook's security

14  measure unduly restricts users' ability to access their own data. *See* Answer at 2:6-3:12. Power's

15  conclusory, blanket allegations of violations of the UCL do not meet even the bare minimum

16  federal pleading standards. *See Planet Coffee Roasters, Inc. v. Dam*, Case No. 09-00571, 2009

17  U.S. Dist. LEXIS 70775, (C.D. Cal. Aug. 12, 2009) (dismissing unfair competition claim because

18  "[w]hile Rule 8 does not require 'detailed factual allegations,' it nevertheless 'demands more than

19  unadorned,' the defendant-unlawfully-harmed accusation") (citing, *Ashcroft v. Iqbal*, 129 S. Ct.

20  1937, 1949 (2009)); *see also Twombly*, 550 U.S. at 555 (a pleading that offers a "formulaic

21  recitation of the elements of a cause of action will not do").

22      As Facebook explained in its opening brief, Power cannot proceed under the UCL where

23  the basis for the claim is the same as its inadequately pled antitrust violations. In *Chavez v.*

24  *Whirlpool Corp.*, 93 Cal. App. 4th 363, 374 (2001), the Court of Appeal affirmed the dismissal of

25  the plaintiff's Section 17200 "unlawful" competition claim because "the complaint does not

26  allege a Cartwright Act violation to establish an 'unlawful' act or practice." It dismissed the

27  "unfair" competition claim as well, stating:

28

FACEBOOK'S REPLY BRIEF
5:08-CV-05780 JF

> If the same conduct is alleged to be both an antitrust violation and an "unfair" business act or practice for the same reason . . . the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not "unfair" toward consumers. To permit a separate inquiry into essentially the same question under the unfair competition law would only invite conflict and uncertainty and could lead to the enjoining of procompetitive conduct.

*Id.* at 375. Since *Chavez*, court after court has reached this same conclusion. *See, e.g., Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1204 (N.D. Cal. 2008) ("[i]f the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason – because it unreasonably restrains competition and harms consumers – the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers") (citing, *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001); *RLH Industries, Inc. v. SBC Communications, Inc.*, 133 Cal. App. 4th 1277, 1286-87 (2005)); *see also SC Manufactured Homes v. Liebert*, 162 Cal. App. 4th 68, 92 (2008) ("In that plaintiff cannot allege a Cartwright Act violation or a cause of action for intentional interference with prospective business advantage, the cause of action for a violation of the UCL [under the unfairness prong] also cannot stand.").

Power's Opposition does not even discuss this precedent and instead, relies entirely on *Cel-Tech Communications Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180-81 (1999). Claimants in Power's position routinely cite *Cel-Tech* to try to save their UCL claims and are routinely rebuffed by courts citing the subsequent decision in *Chavez*. *See, e.g., Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d at 1204. Under *Cel-Tech,* a claimant can challenge a practice as "unfair" under the UCL before it becomes "unlawful" by showing that the practice "threatens an incipient violation of the antitrust law . . . because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 185-87. But Power is alleging that Facebook *has* violated the antitrust laws, not that it threatens to do so. Under those circumstances, where the same conduct is alleged to be both "unfair" and "unlawful," claims under both prongs of the UCL are subject to dismissal when the underlying antitrust claim is dismissed. Because Power does not have a Cartwright Act claim, it

1  cannot proceed under either prong of the UCL either.  Power's counterclaims under Section

2  17200 should be dismissed.

3       **D.    Power Should Not Be Given Leave To Amend.**

4       "A court properly exercises its discretion in denying leave to amend if the proposed

5  amendment would be futile." *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th

6  Cir. 1986).  Power's counterclaims are based solely on its unhappiness with Facebook's Terms of

7  Use and its apparent refusal to comply with them.[2]  To avoid the rules that apply equally to

8  everyone using the Facebook site, Power has concocted a theory that tries to turn Facebook's

9  unilateral security policy into a violation of the federal and state antitrust and unfair competition

10  law.  The only facts alleged – Facebook has a policy and Power does not like it – cannot support

11  these counterclaims, no matter how Power tries to amend its pleading.  Power is unlikely to be

12  able to plead "colorable grounds for relief" under federal or state antitrust law or the California

13  Business & Professions Code, *see Doe ex. rel. Doe v. School Dist. of City of Norfolk*, 340 F.3d

14  605, 616 (9th Cir. 2003), and Facebook's motion to dismiss should be granted without leave to

15  amend.[3]

[2] Even if Power could properly allege an antitrust claim (which it has not done yet), it would lack standing to pursue that claim because it cannot adequately allege the necessary injury to competition. *See Brunswick Corp. v. Pueblo Bowl-o-Mat, Inc.*, 429 U.S. 477, 489 (1977); *Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 352 F.3d 367, 371 (9th Cir. 2003).  Thus, any amended complaint would be subject to dismissal on this ground as well.

[3] Power's affirmative defenses should be stricken, as Facebook argued in its opening brief, because they also lack any factual support.  In addition, Power should not be able to use those affirmative defenses as a back-door method of reviving these improper antitrust and unfair competition claims.  Power did not respond to this argument at all and only provided a response with respect to its Fair Use affirmative defense.  Because Power apparently used the term "fair use" within its narrative at the beginning of the Answer, it argues that those allegations are incorporated in the affirmative defense.  There are no facts alleged in connection with this defense.  If the Court believes that the allegations are sufficient in the body of the Answer, it can allow Power to amend the First Affirmative Defense to provide the necessary factual support.

1   Dated: October 16, 2009                           I. NEEL CHATTERJEE
                                                      JESSICA S. PERS
2                                                     Orrick, Herrington & Sutcliffe LLP

3

4                                                     /s/ Jessica S. Pers /s/
                                                          JESSICA S. PERS
5                                                       Attorneys for Plaintiff
                                                        FACEBOOK, INC.
6

7

8

9
                          **CERTIFICATE OF SERVICE**
10
            I hereby certify that this document(s) filed through the ECF system will be sent
11   electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
     and paper copies will be sent to those indicated as non registered participants on October 16,
12   2009.

13

14   Dated: October 16, 2009                         Respectfully submitted,

15

16                                                   /s/ Jessica S. Pers /s/
                                                          Jessica S. Pers
17

18

19

20

21

22

23

24

25

26

27

28