1   I. NEEL CHATTERJEE (STATE BAR NO. 173985)
    nchatterjee@orrick.com
2   THOMAS J. GRAY (STATE BAR NO. 191411)
    tgray@orrick.com
3   JULIO C. AVALOS (STATE BAR NO. 255350)
    javalos@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
5   Menlo Park, CA  94025
    Telephone:     +1-650-614-7400
6   Facsimile:     +1-650-614-7401

7   JESSICA S. PERS (STATE BAR NO. 77740)
    jpers@orrick.com
8   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
9   405 Howard Street
    San Francisco, CA  94105-2669
10  Telephone:     +1-415-773-5700
    Facsimile:     +1-415-773-5759
11
    Attorneys for Plaintiff and Counter-Defendant
12  FACEBOOK, INC.

13                        UNITED STATES DISTRICT COURT

14                    NORTHERN DISTRICT OF CALIFORNIA

15                             SAN JOSE DIVISION

16

17
    FACEBOOK, INC.,                          Case No. 5:08-cv-05780 JF (RS)
18
                    Plaintiff,               **FACEBOOK INC.'S NOTICE OF**
19                                           **MOTION, MOTION AND**
           v.                                **MEMORANDUM IN SUPPORT OF**
20                                           **MOTION TO DISMISS**
    POWER VENTURES, INC. a Cayman Island     **COUNTERCLAIMS AND STRIKE**
21  Corporation; STEVE VACHANI, an           **AFFIRMATIVE DEFENSES**
    individual; DOE 1, d/b/a POWER.COM,
22  DOES 2-25, inclusive,                    Date:      February 26, 2010
                                             Time:      9:00 a.m.
23              Defendants.                  Judge:     Hon. Jeremy D. Fogel
                                             Courtroom: 3, 5th Floor
24

25

26

27

28

OHS West:260795312.6

Dockets.Justia.com

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 26, 2010 at 9:00 am or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Jeremy D. Fogel, United States District Court, 280 S. First Street, San Jose, CA 95113, Facebook, Inc. ("Facebook") will move the court for an order dismissing the Counterclaims of Power Ventures, Inc. and Steven Vachini (collectively, "Power") pursuant to Federal Rule of Civil Procedure 12(b)(6), and for an order striking the Affirmative Defenses pursuant to Federal Rule of Civil Procedure 12(f). These motions are based on the Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, all pleadings on file in this action, oral argument of counsel, and any other matter that may be submitted at the hearing.

**STATEMENT OF ISSUES**

Facebook brings this motion to dismiss Power's Counterclaims that allege Facebook has violated Section 2 of the Sherman Act and Section 17200 of the California Business and Professions Code. Power has not alleged – and cannot allege – facts that show Facebook's security policies, applied to its users, violate Section 2 or the California Unfair Competition Law.

Facebook also moves to strike Power's Affirmative Defenses of copyright misuse and fair use as improper.

FACEBOOK'S MOTION TO DISMISS COUNTERCLAIMS
AND STRIKE AFFIRMATIVE DEFENSES
5:08-CV-05780 JF

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ............................................................................................................2

II.    FACTUAL BACKGROUND .........................................................................................3

III.   LEGAL ARGUMENT....................................................................................................3

     A.     Rule 12(b)(6) Standard........................................................................................3

     B.     Power Has Not Stated Claims Against Facebook For Violation of Section 2
          of the Sherman Act ..............................................................................................4

          1.     Power Has Failed To State A Claim for Monopolization.........................4

               a.     Power Has Failed To Allege Sufficient Facts to Identify A
                     Relevant Product Market In Which Facebook Has
                     Monopoly Power ........................................................................4

               b.     Power Has Failed To Allege Facts Making It Plausible that
                     Facebook Engaged in Predatory Practices ...................................5

               c.     Power Has Failed To Allege Facts Sufficient to Indicate that
                     It Suffered Cognizable Antitrust Injury .......................................7

     C.     Power Has Failed To State A Claim For Attempted Monopolization....................8

     D.     Power Has Failed to Allege a Claim Under the California Unfair
          Competition Law. .................................................................................................9

     E.     Power's Affirmative Defenses Should Be Stricken.............................................10

IV.    CONCLUSION .............................................................................................................12

1

# TABLE OF AUTHORITIES

2

3

## FEDERAL CASES

4

*A&M Records v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) ..................................................................................9

5

*America Online, Inc. v. GreatDeals.Net*,
6    49 F. Supp. 2d 851 (E.D. Va. 1999) ....................................................................3, 6, 7

7

*Apple Inc. v. Psystar Corp.*,
    586 F. Supp. 2d 1190 (N.D. Cal. 2008) ..................................................................8

8

*Ashcroft v. Iqbal*,
9    129 S. Ct. 1937 (2009) ...............................................................................................1

10

*Balistreri v. Pacifica Police Dep't.*,
    901 F.2d 696 (9th Cir. 1988) ....................................................................................2

11

*Bell Atl. Corp. v. Twombly*,
12    550 U.S. 544 (2007) ..............................................................................................1, 2

13

*Brunswick Corp. v. Pueblo Bowl-o-Mat, Inc.*,
    429 U.S. 477, 97 S. Ct. 690, 50 L. Ed. 2d 701 (1977) .........................................6, 7

14

*Cahill v. Liberty Mut. Ins. Co.*,
15    80 F.3d 336 (9th Cir. 1996) ......................................................................................2

16

*Campbell v. Acuff-Rose Music*,
    510 U.S. 569 (1994) ................................................................................................11

17

*Carter v. Variflex, Inc.* ,
18    101 F. Supp. 2d 1261 (C. D. Cal. 2000) ..................................................................9

19

*Cascade Health Solutions v. Peacehealth*,
    515 F.3d 883 (9th Cir. 2008)) (internal citations omitted .......................................6

20

*Coalition for ICANN Transparency v. Verisign*,
21    567 F.3d 1084 (9th Cir. 2009) .............................................................................3, 5, 9

22

*Eastman Kodak Co. v. Image Technical Services, Inc.*,
    504 U.S. 451 (1992) ..................................................................................................3

23

*Glen Holly Entertainment, Inc. v. Tektronix Inc.*,
24    352 F.3d 367 (9th Cir. 2003) ....................................................................................6

25

*Grosz v. Lassen Cmty. College Dist.*,
    572 F. Supp. 2d 1199 (E.D. Cal. 2008) ...................................................................2

26

*Harper House, Inc. v. Thomas Nelson, Inc.*,
27    889 F.2d 197 (9th Cir. 1989) ..................................................................................11

28

*III. ToolWorks Inc. v. Indep. Ink, Inc.*,

**TABLE OF AUTHORITIES**
continued

547 U.S. 28, 126 S. Ct. 1281, 164 L. Ed. 2d 26 (2006) ........................................................10

*LiveUniverse, Inc. v. MySpace, Inc.*,
   304 Fed. Appx. 554, 2008 U.S. App. LEXIS 27141 (9th Cir. Dec. 22, 2008)....................6, 7

*LiveUniverse, Inc. v. MySpace, Inc., No. CV 06-6994 AHM*,
   2007 U.S. Dist. LEXIS 43739 (C.D. Cal. Jun. 4, 2007), *aff'd by LiveUniverse, Inc. v.
   MySpace, Inc.*, 304 Fed. Appx. 554, 2008 U.S. App. LEXIS 27141 (9th Cir. Dec. 22,
   2008)................................................................................................................................6, 7, 8

*Lorenzo v. Qualcomm Inc.*,
   603 F. Supp. 2d 1291 (S.D. Cal. 2009) .................................................................................6

*Mag Instrument, Inc. v. JS Prods.*,
   595 F. Supp. 2d 1102 (C.D. Cal. 2008) .................................................................................9

*Practice Mgmt. Info. Corp. v. AMA*,
   121 F.3d 516 (9th Cir. 1997) ...............................................................................................10

*Quabon.com, Inc. v. eHelp Corp.*,
   315 F. Supp. 2d 1046 (N.D. Cal. 2004).................................................................................9

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) .............................................................................................3, 7

*Rutman Wine Co. v. E. & Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) .................................................................................................2

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004) ......................................................................................................3, 4, 7

*Wyshak v. City Nat'l Bank*,
   607 F.2d 824 (9th Cir. 1979) .................................................................................................9

**STATE CASES**

*Belton v. Comcast Cable Holdings, LLC*,
   151 Cal. App. 4th 1224 (2007) ..............................................................................................9

*Chavez v. Whirlpool Corp.*,
   93 Cal. App. 4th 363 (2001) ..................................................................................................8

*Cortez v. Purolator Air Filtration Products Co.*,
   23 Cal. 4th 163 (2000)..........................................................................................................11

*Ghory v. Al-Lahham*,
   209 Cal. App. 3d 1487 (1989) ..............................................................................................11

*SC Manufactured Homes v. Liebert*,
   162 Cal. App. 4th 68 (2008) ..................................................................................................8

**TABLE OF AUTHORITIES**
**continued**

*Ticconi v. Blue Shield of California Life & Health Ins. Co.,*
    160 Cal. App. 4th 528 (2008) .......................................................................................11

**FEDERAL STATUTES**

17 U.S.C. § 107.................................................................................................................12

**MISCELLANEOUS**

*ABA Section of Antitrust Law, Antitrust Law Developments* 500 (4th ed. 1997) ...........................5

*Michael A. Rosenhouse, "Sufficiency of Copyright Misuse Defense to Allegation of
    Copyright Infringement Pursuant to Federal Copyright Law,"* 18 A.L.R. 123 (2009) ..........11

California Business and Professions Code Section 17200  ...........................................................8

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3          Defendants Power Ventures, Inc.'s and Steven Vachani's (collectively "Power")

4    Amended Answer includes three counterclaims:  monopolization and attempted monopolization

5    under Section 2 of the Sherman Act and a claim under the unfairness prong of the California

6    Unfair Competition law.  The antitrust counterclaims are based on the same conduct previously

7    challenged in the counterclaims dismissed by the Court:  Power claims that Facebook's security

8    policy prohibiting third parties from accessing user data from the Facebook site unless they agree

9    to Facebook's Terms of Use is anticompetitive.  But, Power has still not proffered "enough facts

10   to state a claim to relief that is plausible on its face" under the standard set forth in *Bell Atl. Corp.*

11   *v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).  *See also*

12   Dkt. 52, 10/22/09 Order Granting Motion to Dismiss at 2.

13          As it alleged in the original counterclaims, Power claims that (1) Facebook's security

14   policy prohibits third parties like Power from accessing user data from the Facebook website; and

15   (2) Power wants to circumvent the policy, "scrape" data from Facebook and include that

16   Facebook data in the Power.com site that aggregates information from other websites, including

17   social networking sites and email sites.  As it did before (and in the same format the Court

18   previously questioned), Power uses a "seven and a half page 'Introduction and Background'

19   narrative untethered to any specific claim," *see* Amended Answer at 3, to proclaim that its goal is

20   to "free the internet," a goal that apparently requires it to violate Facebook's policies.  Power's

21   claims are based on the assertion that Facebook's Terms of Use differ from those of other

22   websites.  According to Power, because Facebook (and others) can import data from other

23   websites in a certain manner, Facebook cannot prohibit Power (and others) from importing data

24   from Facebook's site in the same manner without running afoul of the antitrust and unfair

25   competition laws.  This allegation is not sufficient to state a claim under either Section 2 of the

26   Sherman Act or the California Unfair Competition Law.

27          The allegations of the amended counterclaims do not plausibly suggest that Facebook's

28   policy is anticompetitive, or that it contributes to the acquisition or maintenance of a monopoly or

OHS West:260795312.6                              - 1 -                    FACEBOOK'S MOTION TO DISMISS COUNTERCLAIMS
                                                                          AND STRIKE AFFIRMATIVE DEFENSES
                                                                          5:08-CV-05780 JF

1   that it is part of an attempt to monopolize.  Nor has Power plausibly suggested how Facebook's

2   policy has caused the requisite antitrust injury necessary for any Sherman Act claim.  In fact, the

3   amended counterclaims highlight that Power has no standing to assert any claim against

4   Facebook:  by its own admission, Power does not even compete with Facebook.

5   **II.     FACTUAL BACKGROUND**

6          The facts relevant to this motion are set out in Facebook's original motion to dismiss

7   Power's counterclaims and strike its affirmative defenses, which the Court granted on October 22,

8   2009.  *See* Dkt. Nos. 49 and 52, respectively.

9   **III.    LEGAL ARGUMENT**

10         **A.     Rule 12(b)(6) Standard**

11         Claims may be dismissed under Rule 12(b)(6) "based on the lack of a cognizable legal

12  theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v.*

13  *Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).  To avoid dismissal, "plaintiffs must

14  plead facts showing they are entitled to relief."  *Grosz v. Lassen Cmty. College Dist.*, 572 F.

15  Supp. 2d 1199, 1207 n.11 (E.D. Cal. 2008).  "A plaintiff's obligation to provide the grounds of

16  his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

17  the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

18  (2007) (internal quotation marks omitted).  Although "all allegations of material fact are taken as

19  true and construed in the light most favorable to the nonmoving party," *Cahill v. Liberty Mut. Ins.*

20  *Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996), a complaint or counterclaim must "raise a right to relief

21  above the speculative level."  *Twombly*, 550 U.S. at 555 (citations omitted).  Specifically, in an

22  antitrust context, "if the facts do not at least outline or adumbrate a violation of the Sherman Act,

23  the [plaintiff] will get nowhere merely by dressing them up in the language of antitrust."  *Rutman*

24  *Wine Co. v. E. & Gallo Winery*, 829 F.2d 729, 736 (9th Cir. 1987) (internal citations omitted)

25  (granting a motion to dismiss antitrust claims).  Power has not come close to meeting this

26  standard.

27

28

FACEBOOK'S MOTION TO DISMISS COUNTERCLAIMS
AND STRIKE AFFIRMATIVE DEFENSES
5:08-CV-05780 J

**B.** **Power Has Not Stated Claims Against Facebook For Violation of Section 2 of the Sherman Act.**

**1.** **Power Has Failed To State A Claim for Monopolization.**

Power's desire for internet liberation does not make out a claim under Section 2,  which requires  the "possession of monopoly power in the relevant market and … the acquisition or perpetuation of this power by illegitimate predatory practices." *Coalition for ICANN Transparency v. Verisign*, 567 F.3d 1084, 1093 (9th Cir. 2009) (internal quotation marks omitted) ("*Verisign*").  To state a claim, Power must allege facts that plausibly show that Facebook:  (1) possesses monopoly power in a relevant market; (2) through the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident; (3) that causes antitrust injury.  *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) ("the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive conduct") (emphasis omitted); *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 481 (1992) (internal citations omitted); *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) (holding that causal injury is an element of all antitrust suits brought by private parties seeking damages).  Power's Second Counterclaim does not allege a relevant market in which Power competes and in which Facebook has monopoly power, predatory conduct by Facebook nor antitrust injury.

**a.** **Power Has Failed To Allege Sufficient Facts to Identify A Relevant Product Market In Which Facebook Has Monopoly Power.**

Power's amended counterclaims fail to allege facts sufficient to identify a relevant market in which Facebook possesses monopoly power.  "A relevant market has two dimensions: (1) the relevant product market, which identifies the products or services that compete with each other, and (2) the relevant geographic market, which identifies the geographic area within which competition takes place." *America Online, Inc. v. GreatDeals.Net*, 49 F.Supp.2d 851, 857 (E.D. Va. 1999) (hereafter "*America Online*") (citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 324, 82 S. Ct. 1502, 8 L. Ed. 2d 510 (1962)).  "The outer boundaries of a relevant market are

1    determined by reasonable interchangeability of use." *Id*. at 858. "'Reasonable interchangeability

2    of use' refers to consumers' practicable ability to switch from one product or service to another.'"

3    *Id*., citing *ABA Section of Antitrust Law, Antitrust Law Developments* 500 (4th ed. 1997).

4        Here, Power has not pled facts that plausibly identify a relevant product market in which

5    Facebook has market power. On the contrary, Power cannot simply define the market as it has —

6    "websites that allow users to create personal profiles, manage contacts, and provide a variety of

7    ways for users to interact with contacts"—and then allege that Facebook has a high percentage

8    share of such market. Amended Answer ¶ 172. This adds nothing to the vague and conclusory

9    allegations that the Court already found deficient in the original counterclaims. Indeed, the vague

10   market alleged by Power would include photo sharing websites (e.g., Shutterfly.com), email

11   websites (e.g., gmail.com, hotmail.com), and dating websites (e.g.,eHarmony.com), among others

12   that Power fails to mention in its counterclaims. Because it is impossible to determine what

13   websites are and are not included within the alleged market, it is impossible to assess the

14   plausibility of Power's allegation that Facebook possesses monopoly power.

15           **b.     Power Has Failed To Allege Facts Making It Plausible that**
                      **Facebook Engaged in Predatory Practices.**
16

17       Even if Power had sufficiently pled a relevant market in which it competed and Facebook

18   had monopoly power, it still has not alleged that Facebook acquired or perpetuated monopoly

19   power by "illegitimate predatory practices" and this claim should be dismissed on that basis as

20   well. *Verisign*, 567 F.3d at 1093. The core of Power's "predatory practices" theory is now

21   contained in Paragraph 174 of its amended counterclaims, where Power alleges that "Facebook

22   solicited (and continues to solicit) internet users to provide their account names and passwords for

23   users' email and social networking accounts" but "simultaneously prohibited (and prohibits) users

24   from using the same type of utility to access their own users data when it is stored on the

25   Facebook site." Amended Answer ¶ 174. There is nothing in this allegation that even hints at an

26   illegitimate predatory practice by Facebook.

27       As an initial matter, every website in a competitive marketplace can and does decide how

28   it will permit access to its website and the information it contains; there is no "one way" this has

OHS West:260795312.6                        - 4 -

1   to be done.   Power alleges that Facebook obtains data from other sites that permit third party

2   access, such as Gmail, Hotmail, AOL or Yahoo.  Even assuming that this were true, Power does

3   not (and cannot) allege that Facebook has restricted Power's ability to obtain the same data from

4   these same websites.

5         Instead, Power challenges Facebook because Facebook's policies are not the same as the

6   policies of some other websites. In essence,  Power would like to replace  Facebook's Terms of

7   Use with the rules applied by other companies.  However, Facebook does not have to allow

8   unregulated third-party access to its site merely because other websites might allow it. Nor does

9   that turn Facebook's Terms of Use into a predatory tool. [1]  Power is free to encourage users to

10  input their data into the Power.com site directly.  Facebook has not stopped Power from doing

11  that (nor could it).  Power can also get data from websites that permit access under different rules;

12  again, Power has not alleged that Facebook has stopped it from doing so.  In fact, Power could

13  even get data from Facebook, as long as it agrees to use the Facebook Connect program.  Power

14  simply does not want to comply with those rules.

15        Power has added one allegation to its monopolization claim that was not in the original

16  counterclaims, albeit on information and belief:  "[F]or approximately the past 36 months,

17  Facebook has threatened dozens of new entrants since 2006 with baseless intellectual property

18  claims, and has engaged in systematic and widespread copyright misuse . . . to discourage market

19  entry and to stifle competition from new entrants." Amended Answer, ¶ 176.  Power does not

20  allege the "new entrants" who were allegedly threatened,  how they were seeking to compete

21  against Facebook, what intellectual property claims were asserted, why the claims were

22  "baseless," how Facebook's alleged actions impeded competition, or how these "threats" harmed

23  Power.  At the end of  the day, this allegation adds nothing to the counterclaim and certainly does

24  not plausibly suggest that Facebook engaged in predatory practices; Power has failed again to

25        [1] Because the kind of data that can be scraped from "Google's Gmail, AOL, Yahoo,
26  Hotmail" (Amended Answer at ¶¶ 169, 174) – basically email addresses – is far different from
    and less sensitive than the wealth of personal and friends' user data that Power wants to scrape
27  from Facebook, it is not surprising that Facebook would adopt its own security measures to
    protect the privacy of its users.
28

FACEBOOK'S MOTION TO DISMISS COUNTERCLAIMS
AND STRIKE AFFIRMATIVE DEFENSES
5:08-CV-05780 J

1    plead exclusionary conduct with the required particularity.  *Lorenzo v. Qualcomm Inc.*, 603 F.

2    Supp. 2d 1291, 1298-99 (S.D. Cal. 2009) (noting that courts demand "a high degree of

3    particularity in the pleading of" antitrust violations).

### c.    Power Has Failed To Allege Facts Sufficient to Indicate that It Suffered Cognizable Antitrust Injury.

6        Power also lacks antitrust standing to pursue a claim because it has not, and cannot,

7    adequately allege the necessary injury to competition.  *See Brunswick Corp. v. Pueblo Bowl-o-*

8    *Mat, Inc.*, 429 U.S. 477, 489, 97 S. Ct. 690, 50 L. Ed. 2d 701 (1977); *Glen Holly Entertainment,*

9    *Inc. v. Tektronix Inc.*, 352 F.3d 367, 371 (9th Cir. 2003).  Power's "failure to allege causal

10   antitrust injury, which 'is an element of all antitrust suits,' serves as an independent basis for

11   dismissal." *LiveUniverse, Inc. v. MySpace, Inc.*, No. CV 06-6994 AHM, 2007 U.S. Dist. LEXIS

12   43739, at *9-10 (C.D. Cal. Jun. 4, 2007), *aff'd by LiveUniverse, Inc. v. MySpace, Inc.*, 304 Fed.

13   Appx. 554, 2008 U.S. App. LEXIS 27141 (9th Cir. Dec. 22, 2008) ("*LiveUniverse*") (citing,

14   *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433, 1445 (9th Cir. 1995)).  "Antitrust injury is

15   injury of the type the antitrust laws were intended to prevent . . . which means harm to the process

16   of competition and consumer welfare, not harm to the individual competitors." *LiveUniverse,*

17   *Inc. v. MySpace, Inc.*, 304 Fed. Appx. 554, 2008 U.S. App. LEXIS 27141 (9th Cir. Dec. 22, 2008)

18   (citing *Glen Holly* 352 F.3d at 372 and *Cascade Health Solutions v. Peacehealth*, 515 F.3d 883,

19   901 (9th Cir. 2008)) (internal citations omitted).

20       The counterclaims fail to allege facts indicating how Power competes with Facebook, a

21   necessary element of a Section 2 claim.  *See, e.g.*, *America Online*, 49 F.Supp.2d at 857-58.  By

22   its own admission, Power merely presents "users with tools necessary to access Facebook through

23   Power.com."  Amended Answer at ¶ 64.  In other words, and as the Court previously noted,

24   Power operates "a website designed to integrate various social networking or email accounts into

25   a single portal."  Dkt. 38 at 3.  Power describes itself as an integration website, not a social

26   networking website competitor.  In the face of these allegations, Power's conclusory statement

27   that its integration portal is a "competitor in the market for social networking websites,"

28   Amended Answer ¶ 173, is not sufficient to support a Section 2 claim.

FACEBOOK'S MOTION TO DISMISS COUNTERCLAIMS
AND STRIKE AFFIRMATIVE DEFENSES
5:08-CV-05780 J

1    Because Power has failed to allege how it seeks to compete with Facebook or how

2 Facebook has restricted its efforts to compete with Facebook, any alleged harm to Power would

3 not derive from harm to the competitive process, which is the only injury protected by the

4 antitrust laws. *Brunswick Corp.,* 429 U.S. 477 at 489.  This is similar to the antitrust injury issue

5 decided in *LiveUniverse.*  LiveUniverse operated a social networking site named "vidilife.com."

6 LiveUniverse alleged that MySpace, an online social network, violated Section 2 when it

7 prohibited MySpace users from watching LiveUniverse videos loaded onto their MySpace

8 webpage, deleted references to "vidilife.com" from MySpace, and prevented MySpace users from

9 mentioning "vidilife.com" on the MySpace website.  *See* 2007 U.S. Dist. LEXIS 43739, at *1.

10 The Ninth Circuit affirmed the district court's dismissal of LiveUniverse's Section 2 claim for

11 failure to allege antitrust injury, in circumstances very similar to this one:

12 > There is no allegation that MySpace has prevented consumers from
13 > accessing vidiLife.com (or any other social networking website).
> Indeed, it would be impossible for MySpace to do so: any consumer
> desiring such access need only type "vidiLife.com" into the address
14 > bar of his or her web browser, or into a search engine such as
> Google.  All MySpace has done is prevent consumers from
15 > accessing vidiLife.com *through MySpace.com.*  Consumers remain
> free to choose which online social networks to join, and on which
16 > websites they upload text, graphics, and other content.
> LiveUniverse's failure to allege antitrust injury serves as an
17 > independent ground on which we affirm the decision of the district
> court.

18

19 304 Fed. Appx. at 557 (emphasis in original).

20    Here, Power does not claim that Facebook has stopped anyone from accessing the

21 Power.com site or that Facebook users are not free to provide whatever information they want

22 directly to Power.  As in *LiveUniverse,* Power has failed to allege the antitrust injury necessary to

23 state a Section 2 claim.

24    **C.    Power Has Failed To State A Claim For Attempted Monopolization.**

25    A claim for attempted monopolization must allege facts to show: "(1) that the defendant

26 has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and

27 (3) a dangerous probability of achieving monopoly power." *Verisign*, 567 F.3d at 1093.  Power

28 alleges the same conduct for this claim as it does for the monopolization claim, and it is equally

1    deficient.  There is no factual basis alleged to demonstrate that Facebook's policies were

2    predatory or anticompetitive or that the challenged security policy was adopted with the intent to

3    monopolize, rather than to protect information provided by Facebook users.  For these reasons,

4    this counterclaim should be dismissed.

5          **D.     Power Has Failed to Allege a Claim Under the California Unfair Competition
              Law.**
6

7          Power no longer alleges that Facebook's business practices violate the "unlawful" prong

8    of California Business and Professions Code Section 17200, but it still alleges that Facebook's

9    business practices are "unfair" under that statute. Amended Answer, ¶ 167-69.  Power bases this

10   claim on the same allegations made to support its antitrust claims.  Power alleges that "Facebook

11   violated the unfair business practices prong of the UCL (i) by committing copyright misuse

12   systematically and on a massive scale . . . (ii) by soliciting internet users to provide their account

13   names and passwords for users' email and social networking accounts . . . while simultaneously

14   prohibiting users from utilizing the same type of utilities to access their own user data when it is

15   stored on the Facebook site, and (iii) by engaging in a campaign of threats and intimidation

16   against competitors, including by threatening dozens of new entrants since 2006 with baseless

17   intellectual property claims to discourage market entry and to stifle competition from new

18   entrants." *Id.* ¶ 169.

19         First, as a preliminary matter, this Counterclaim should be dismissed because it is virtually

20   identical to Power's inadequately-pled antitrust claims. *See Chavez v. Whirlpool Corp.*, 93 Cal.

21   App. 4th 363, 375 (2001) ("If the same conduct is alleged to be both an antitrust violation and an

22   'unfair' business act or practice for the same reason . . . the determination that the conduct is not

23   an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward

24   consumers."); *LiveUniverse*, 2007 U.S. Dist. LEXIS 43739, at *59-60 (dismissing California state

25   unfair competition claim where plaintiff had failed to state an antitrust claim against MySpace);

26   *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1204 (N.D. Cal. 2008) (same); *SC*

27   *Manufactured Homes v. Liebert*, 162 Cal. App. 4th 68, 93 (2008) ("In that plaintiff cannot allege

28   a Cartwright Act violation or a cause of action for intentional interference with prospective

FACEBOOK'S MOTION TO DISMISS COUNTERCLAIMS
AND STRIKE AFFIRMATIVE DEFENSES
5:08-CV-05780 J

1   economic advantage, the cause of action for a violation of the UCL also cannot stand.").  This is

2   true, even though Power has only alleged federal antirust claims and not Cartwright Act claims.

3   *See e.g., Carter v. Variflex, Inc. ,* 101 F.Supp 2d 1261, 1270 (C. D. Cal. 2000) (". . . in light of the

4   Court's findings under the Sherman Act, the Court finds that Variflex has failed to produce

5   sufficient evidence to support its California unfair competition claim."); *Belton v. Comcast Cable*

6   *Holdings, LLC*, 151 Cal. App. 4th 1224, 1270 (2007) (affirming summary judgment on UCL

7   "unfairness" claim because plaintiff's "unfairness" claim was based on the same facts as its

8   unsuccessful Sherman Act claim).

9   　　　　Second, Power cannot base an unfair competition claim on its theory of copyright misuse,

10  for the reasons articulated in Section E, below.  Facebook's enforcement of its security policies

11  does not prevent users from inputting their data into other websites, including Power's site.

12  Facebook's enforcement of its Terms of Use does not constitute copyright misuse and cannot be

13  unfair under the UCL, even if other websites have different policies.  Finally, Power's vague

14  reference to a "campaign of threats and intimidation against competitors" with "baseless

15  intellectual property claims" cannot possibly provide Facebook with adequate notice of its

16  supposed "unfair" acts.  If those "claims" include claims that parties other than Power have

17  violated Facebook's security policies, those claims are neither baseless nor a violation of the

18  UCL.

19  　　　　**E.     Power's Affirmative Defenses Should Be Stricken.**

20  　　　　Power's two affirmative defenses, copyright misuse and fair use, should be stricken.  *See*

21  *Quabon.com, Inc. v. eHelp Corp.,* 315 F. Supp. 2d 1046, 1049 (N.D. Cal. 2004) ("Affirmative

22  defenses are governed by the same pleading standard as complaints."); *see also Wyshak v. City*

23  *Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979) ("The key to determining the sufficiency of

24  pleading an affirmative defense is whether it gives plaintiff fair notice of the defense."); *Mag*

25  *Instrument, Inc. v. JS Prods.*, 595 F. Supp. 2d 1102, 1107 (C.D. Cal. 2008) (same).

26  　　　　Power misapprehends the equitable defense of copyright misuse.  "The defense of

27  copyright misuse forbids a copyright holder from securing an exclusive right or limited monopoly

28  not granted by the Copyright Office."  *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th

Cir. 2001) (internal citations omitted).  "The misuse defense prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly." *Id.*[2] Accordingly, the Ninth Circuit has recognized that "'[m]ost of the cases that recognize the affirmative defense of copyright misuse involve unduly restrictive licensing schemes." *Id.* at 1027.  Indeed, the overwhelming majority of cases in which the misuse doctrine has been invoked deal with instances in which a copyright holder licensed rights to its copyright to a third-party on the condition that the third-party would not also use a competitor's products.  *See, e.g.*, *Practice Mgmt. Info. Corp. v. AMA*, 121 F.3d 516, 520-21 (9th Cir. 1997) (observing that what "offends the copyright misuse doctrine is not" a party's decision to use a certain protectable form exclusively, "but the limitation imposed by the … license agreement on" the party's "rights to decide whether or not to use other protectable forms as well."); *see also* Michael A. Rosenhouse, "Sufficiency of Copyright Misuse Defense to Allegation of Copyright Infringement Pursuant to Federal Copyright Law," 18 A.L.R. 123 (2009) (observing that "[t]he misuse defense has been held applicable where the copyrighted material was licensed under terms that were deemed anticompetitive").

Power has not alleged any anticompetitive licensing involving Facebook's copyright over its site's webpages.  Indeed, Power's misuse argument seems to be based solely upon the fact that "[t]he Facebook website is massive" and "includes many different elements – some of which are subject to copyrights owned by Facebook and some of which clearly are not."  In other words, Power argues that Facebook commits copyright misuse whenever it attempts to enforce its Terms of Use and protect the integrity and safety of its website from unauthorized and uncontrolled third-party intrusion.

Facebook has not asserted copyright protection over user-generated content and all users remain free to input their data into any other site.   As the Court has previously noted,

---

[2] As the U.S. Supreme Court has recognized, the "monopoly" granted by an intellectual property right, such as a patent or copyright, does not necessarily create market power or a monopoly within the meaning of the antitrust laws. *See, e.g.*, *Ill. ToolWorks Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 126 S. Ct. 1281, 164 L. Ed. 2d 26 (2006).

- 10 -

1   "Defendants' argument that Facebook's website is 'huge' is irrelevant."  Dkt. 38 at p 6.  If

2   Power's theory were correct, any party seeking to enforce a copyright over the unique

3   arrangement of admittedly non-protectable elements would be guilty of copyright misuse because

4   the arrangement would necessarily make reference to the non-protected elements. That is not the

5   law.  *See, e.g.*, *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 204 (9th Cir. 1989) ("A

6   copyrightable compilation can consist mainly or entirely of uncopyrightable elements").  Power's

7   copyright misuse affirmative defense should be stricken.[3]

8         Power's fair use defense should not survive either.  It does not even attempt to plead the

9   elements of the fair use doctrine, including the purpose and character of the use, the commercial

10  nature of the use, the nature of the copyrighted work, the amount and substantiality of the portion

11  used in relation to the copyrighted work as a whole or the effect of the use upon the potential

12  market for or value of the copyrighted work.  *See Campbell v. Acuff-Rose Music*, 510 U.S. 569,

13  576-77 (1994) (quoting 17 U.S.C. § 107).  Instead, Power merely asserts that it has not copied

14  anything from the Facebook site, which cannot reasonably be said to put Facebook on notice as to

15  the rationale or allegations supporting Power's fair use defense.  Accordingly, this affirmative

16  defense should also be stricken.

17  **IV.     CONCLUSION**

18        The Court has already granted Power one opportunity to amend its claims.  Power has

19  done so by adding more words to describe the same conduct that was alleged in the original

20  counterclaims.  Now, Power asserts that Facebook has violated state and federal law because it

21

22  [3] As an equitable defense, copyright misuse cannot apply to Facebook's unfair competition claim,
even if it was properly alleged. *See Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th
163, 179 (2000) ("equitable defenses may not be asserted to wholly defeat a UCL claim since

23  such claims arise out of unlawful conduct").  And as a general matter, equitable defenses are
inapplicable against allegations of a statutory violation. *See, e.g.*, *Ticconi v. Blue Shield of*

24  *California Life & Health Ins. Co.*, 160 Cal. App. 4th 528, 543 (2008) ("Courts have long held that
the equitable defense of unclean hands is not a defense to an unfair trade or business practices

25  claim based on violation of a statute.  To allow such a defense would be to judicially sanction the
defendant for engaging in an act declared by statute to be void or against public policy."); *see*

26  *also Ghory v. Al-Lahham*, 209 Cal. App. 3d 1487, 1492 (1989) (rejecting equitable defense of

27  unjust enrichment against claim that wage laws were violated and stating that "[p]rinciples of
equity cannot be used to avoid a statutory mandate.").

28

1   protects the security of its users' data in ways that are different from other websites. Those

2   allegations cannot save these counterclaims. Accordingly, Power's counterclaims should be

3   dismissed without leave to amend and its affirmative defenses stricken.

4

5   Dated: December 23, 2009                    JESSICA S. PERS
                                                Orrick, Herrington & Sutcliffe LLP
6

7

8                                               /s/ Jessica S. Pers
                                                      JESSICA S. PERS
9                                               Attorneys for Plaintiff and
                                                    FACEBOOK, INC.
10

11

12
                              **CERTIFICATE OF SERVICE**
13

14          I hereby certify that this document(s) filed through the ECF system will be sent
        electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
15      and paper copies will be sent to those indicated as non registered participants on December 23,
        2009.
16
        Dated: December 23, 2009                        Respectfully submitted,
17

18                                                      /s/           *Jessica S. Pers*
                                                              JESSICA S. PERS
19

20

21

22

23

24

25

26

27

28