1  LAW OFFICES OF SCOTT A. BURSOR
   Scott A. Bursor (*pro hac vice*)
2  369 Lexington Avenue, 10th Floor
   New York, NY 10017
3  Telephone: (212) 989-9113
   Facsimile: (212) 989-9163
4

   BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
5  Alan R. Plutzik (State Bar No. 077785)
   L. Timothy Fisher (State Bar No. 191626)
6  2125 Oak Grove Road, Suite 120
   Walnut Creek, CA 94598
7  Telephone: (925) 945-0200
   Facsimile: (925) 945-8792
8
   Attorneys for Defendants Power
9  Ventures, Inc. and Steve Vachani

10
                    UNITED STATES DISTRICT COURT
11
                    NORTHERN DISTRICT OF CALIFORNIA
12

13

14
   | FACEBOOK, INC., | Case No. 5:08-cv-05780 |
15 | | |
   | Plaintiff, | **MEMORANDUM OF LAW IN** |
16 | | **OPPOSITION TO MOTION OF** |
   | -against- | **FACEBOOK, INC. TO DISMISS** |
17 | | **COUNTERCLAIMS AND STRIKE** |
   | POWER VENTURES, INC. d/b/a POWER.COM, a | **AFFIRMATIVE DEFENSES** |
18 | California corporation; POWER VENTURES, INC. | |
   | a Cayman Island Corporation, STEVE VACHANI, | Judge: Honorable Jeremy Fogel |
19 | an individual; DOE 1, d/b/a POWER.COM, an | Date: February 26, 2010 |
   | individual and/or business entity of unknown nature; | Time: 9:00 a.m. |
20 | DOES 2 through 25, inclusive, individuals and/or | |
   | business entities of unknown nature, | Courtroom: 3, 5th Floor |
21 | | |
   | Defendants. | |
22

23

24

25

26

27

28

MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF FACEBOOK, INC. TO DISMISS
COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:08-CV-05780 (JF)

## TABLE OF CONTENTS

Page No.

I. THE RULE 12(B)(6) LEGAL STANDARD ............................................................................1

II. POWER HAS STATED CLAIMS FOR MONOPOLIZATION AND ATTEMPTED MONOPOLIZATION UNDER SECTION 2 OF THE SHERMAN ACT...........................................................................................................2

    A. Power Has Alleged Facts Sufficient to Identify the Relevant Market for Its Monopolization Claims.......................................................................2

    B. Power Has Alleged Facts Sufficient to Establish that Facebook Utilized Illegitimate Predatory Practices in an Effort to Acquire Monopoly Power .........................................................................................3

    C. Power Has Adequately Alleged Antitrust Injury............................................5

III. POWER HAS STATED A CLAIM FOR UNFAIR BUSINESS PRACTICES UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200 ...........................................................................................6

IV. THE COURT SHOULD NOT STRIKE POWER'S AFFIRMATIVE DEFENSES ...............................................................................................................7

V. IF FACEBOOK'S MOTION IS GRANTED IN ANY RESPECT, THE COURT SHOULD GRANT POWER LEAVE TO AMEND ..............................................10

VI. CONCLUSION ...................................................................................................10

MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF FACEBOOK, INC. TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:08-CV-05780 (JF)

i

# TABLE OF AUTHORITIES

Page No.

**Cases**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).......................................................................... 1

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) ...................................................................... 2

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977)................................................. 5

*Cel-Tech Communications Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163 (1999)................. 6

*Conley v. Gibson*, 355 U.S. 41 (1957)................................................................................................. 1

*Daingerfield Island Protective Soc'y v. Babbitt*, 40 F.3d 442 (D.C. Cir. 1994)................................ 7

*Datagate, Inc. v. Hewlett-Packard Co.*, 941 F.2d 864 (9th Cir. 1991) .............................................. 5

*Falkowski v. Imation Corp.*, 309 F3d 1123 (9th Cir. 2002) ................................................................ 1

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997)............................................................... 1

*Motors, Inc. v. Times Mirror Co.,* 102 Cal.App.3d 735 (1980) ......................................................... 7

*Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008) .......................................... 2, 5

*Pareto v. F.D.I.C.*, 139 F.3d 696 (9th Cir. 1998) ................................................................................. 1

*Sega v. Accolade*, 977 F.2d 1510 (9th Cir. 1992)................................................................................ 8

*Sony v. Connectix*, 203 F.3d 596 (9th Cir. 2000) ............................................................................... 8

*Stanbury Law Firm v. IRS* , 221 F.3d 1059 (9th Cir. 2000) ................................................................ 7

*Theme Promotions Inc. v. News American Marketing FSI*, 546 F.3d 991 (9th Cir. 2008) ............. 10

**Statutes**

California Business & Professions Code § 17200.............................................................................. 6

Fed. R. Civ. P. 8(a) ......................................................................................................................... 1, 7

Fed. R. Civ. P. 8(a)(2) ......................................................................................................................... 1

Fed  R. Civ. P. 12(b)(6) .............................................................................................................. 1, 2, 5

Fed  R. Civ. P. 12(f) ........................................................................................................................... 7

Fed. R. Civ. P. 15(a)(2) ..................................................................................................................... 10

MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF FACEBOOK, INC. TO DISMISS
COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:08-CV-05780 (JF)

ii

Defendants Power Ventures, Inc. and Steve Vachani (hereafter collectively referred to as "Defendants" or "Power") respectfully submit this Memorandum of Points and Authorities in Opposition To Facebook Inc.'s Motion To Dismiss Counterclaims and Strike Affirmative Defenses.

## I.  THE RULE 12(b)(6) LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The rules require only that this "statement" constitute a " 'showing' rather than a blanket assertion of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, fn. 3 (2007).  The rules "do not require a claimant to set out in detail the facts upon which he bases a claim.  To the contrary, all that is required is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (internal quotation omitted).  A plaintiff's factual allegations need only "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  The court must fined "enough facts to raise a reasonable expectation that discovery will reveal evidence" to substantiate the necessary elements of the plaintiff's claim. *Id.*  "However, the Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotation omitted).  Indeed, a motion to dismiss must be denied unless it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Falkowski v. Imation Corp.*, 309 F3d 1123, 1132 (9th Cir. 2002).

In evaluating a motion to dismiss, the Court must accept as true all material allegations in the complaint, as well as reasonable inference to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).  Further, the complaint must be read in the light most favorable to the plaintiff. *Id.*

MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF FACEBOOK, INC. TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:08-CV-05780 (JF)

1

## II. POWER HAS STATED CLAIMS FOR MONOPOLIZATION AND ATTEMPTED MONOPOLIZATION UNDER SECTION 2 OF THE SHERMAN ACT

In challenging Power's monopolization and attempted monopolization claims, Facebook contends that Power has failed to plead "the possession of monopoly power in the relevant market" and "the acquisition or perpetuation of this power by illegitimate predatory practices." Facebook Motion at 3. Facebook also asserts that Power has not alleged facts sufficient to show that it has suffered any injury. *Id.* Power has more than adequately pleaded each of these elements.

### A. Power Has Alleged Facts Sufficient to Identify the Relevant Market for Its Monopolization Claims

A "relevant market" is determined by a product market and a geographic market. *See, e.g., Brown Shoe Co. v. United States*, 370 U.S. 294, 324 (1962). When considering the sufficiency of allegations related to the relevant market and power in the market, "[t]here is no requirement that these elements of the antitrust claim be pled with specificity," and a complaint will survive Rule 12(b)(6) scrutiny "unless it is apparent from the face of the complaint that the alleged market suffers a *fatal legal defect*." *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008) (emphasis added).

Poer's complaint defines the relevant market with a level of detail that is more than sufficient to survive a Rule 12(b)(6) motion:

> The *relevant market for social networking websites* includes websites that allow users to create personal profiles, manage contacts, and provide a variety of ways for users to interact with contacts. The *relevant geographic market* is the United States. As of September, 2009, the *market share of the five largest social networking websites* in the United States, ranked by market share of U.S. visits, as reported by Experian Hitwise, was as follows:

| Rank | Name | Domain | Market Share |
|---|---|---|---|
| 1 | Facebook | www.facebook.com | 58.59% |
| 2 | MySpace | www.myspace.com | 30.26% |
| 3 | Tagged | www.tagged.com | 2.38% |
| 4 | Twitter | www.twitter.com | 1.84% |
| 5 | MyYearbook | www.myYearbook.com | 1.05% |

MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF FACEBOOK, INC. TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:08-CV-05780 (JF)

2

> See http://www.hitwise.com/us/press-center/press-releases/social-networking-sept-09/. In addition to holding a dominant share of the U.S. market, "Facebook . . . is well on its way to establishing dominance in several parts of the world." *See* Alex Salkever, "Facebook, aiming for global domination, is gaining quickly in Asia," Daily Finance (Nov. 16, 2009), available at http://www.dailyfinance.com/2009/11/16/facebook-aiming-for-global-domination-is-gaining-quickly-in-as/print/.

Amended Answer and Counterclaims ¶ 172 (emphasis added). These allegations define the market both in terms of the product (social networking websites) and geography (the United States). These allegations also identify by name the top 5 competitors comprising more than 94% of the market.

Despite these detailed allegations, Facebook feebly asserts that Power's allegations are too vague and that the Power's market definition would include "photo sharing websites," "e-mail websites" and "dating websites." Facebook Motion at 4. Facebook also claims that it is "impossible to determine what websites are and are not included within the alleged market." *Id.* Those arguments are not well founded, as the allegations specifically refer only to "social networking websites" and even goes so far as to identify by name the top 5 competitors comprising more than 94% of that market. Amended Answer and Counterclaims ¶ 172 (identifying MySpace, Tagged, Twitter and myYearbook as Facebook's competitors); *see also LiveUniverse, Inc. v. MySpace, Inc.*, 2007 U.S.Dist.LEXIS 43739 at *19 (C.D. Cal. 2007) (finding that a plaintiff sufficiently alleged "a relevant antitrust market of Internet-based social networking websites"). At the pleading stage, these allegations must be presumed true, and they are more than sufficient to define a market for antitrust purposes.

### B. Power Has Alleged Facts Sufficient to Establish that Facebook Utilized Illegitimate Predatory Practices in an Effort to Acquire Monopoly Power

Facebook also contends that Power has not alleged that Facebook "acquired or perpetuated monopoly power by 'illegitimate predatory practices.'" Facebook Motion at 4. Once again, Facebook is incorrect. In paragraph 174 of the Amended Answer and Counterclaims, Power identifies and describes in great detail two devices which Facebook has used to acquire and maintain market power:

MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF FACEBOOK, INC. TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:08-CV-05780 (JF)

3

    (1)  Facebook solicited (and continues to solicit) internet users to provide their account names and passwords for users' email and social networking accounts, such as Google's Gmail, AOL, Yahoo, Hotmail, or other third party websites.  Facebook then uses the account information to allow the user to access those accounts through Facebook, and to run automated scripts to import their lists of friends and other contacts – *i.e.*, to "scrape" data – from those third party sites in Facebook.  This practice fueled Facebook's growth by allowing Facebook to add millions of new users, and to provide users with convenient tools to encourage their friends and contacts to join Facebook as well.  On information and belief it is estimated that at least approximately 35% to 50% of Facebook's "132 million active users" (Facebook Amended Complaint, ¶ 2, Docket Entry No. 9), registered with Facebook as a result of an invitation generated using this device.

    (2)  Facebook simultaneously prohibited (and prohibits) users from using the same type of utility to access their own user data when it is stored on the Facebook site.  Thus, Facebook prohibits users from logging into Facebook through third-party sites, such as Power.com, and also restricts users from running automated scripts to retrieve their own user data from the Facebook site.

Power then explains that while the first device is commonplace in the social networking industry, the second device is unique to Facebook.  Amended Answer and Counterclaims ¶ 175.  Power alleges that it was not aware of any "comparable website that at the same time solicits access to user accounts on third-party sites while attempting to prohibit such access to user data stored on its own site."  *Id.*  Power further alleges that Facebook has "maintained its monopoly power by systematically threatening new entrants, such as Power.com and others, who seek to attract users through the same device … that Facebook has itself used to fuel its own growth."  *Id.* at ¶ 176.  Power alleges that "Facebook has threatened dozens of new entrants since 2006 with baseless intellectual property claims, and has engaged in systematic and widespread copyright misuse … to discourage market entry and to stifle competition from new entrants" in the social networking market.  *Id.*  Power contends that Facebook has been highly successful in its "campaign of intimidation" such that "no new entrant has amassed a market share of more than 2.38%" since Facebook began to employ the methods set forth in the counterclaim, and Facebook has reduced MySpace's market share by more than half in the past year.  *Id.*

   Remarkably, Facebook claims that there is "nothing" in Power's allegations "that *even hints at an illegitimate predatory practice* by Facebook."  Facebook Motion at 4 (emphasis added).  That argument is simply not plausible on its face as Power has laid out Facebook's predatory practices

MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF FACEBOOK, INC. TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:08-CV-05780 (JF)

4

1   in detail.  Facebook also argues that the practices described in Power's counterclaim are not
2   predatory and that it can impose whatever terms of use it likes.  *Id.* at 5.  ("Facebook does not have
3   to allow unregulated third-party access to its site merely because other websites might allow it.")
4   Even if that assertion was true (and it is not), Facebook's argument is inappropriate at this stage of
5   the proceedings.  *See Newcal Indus.*, 513 F.3d at 1043, fn. 2 (noting that on a 12(b)(6) motion to
6   dismiss, a court must accept "as true all facts alleged in the complaint" and "draw all reasonable
7   inferences in favor of the [plaintiff]").  On a motion to dismiss, this Court cannot determine
8   whether Facebook's practices are predatory or not.  Power's allegation that these practices are
9   predatory must be accepted as true on a Rule 12(b)(6) motion.

### C.   Power Has Adequately Alleged Antitrust Injury

11  Facebook claims that Power has failed to allege injury because the monopolization
12  counterclaims supposedly do not allege facts indicating how Power competes with Facebook.
13  Facebook Motion at 6.  Antitrust injury is defined as "injury of the type the antitrust laws were
14  intended to prevent and that flows from that which makes defendants' acts unlawful."  *Brunswick*
15  *Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  Put another way, a party has
16  suffered an antitrust injury if it has been "adversely affected by an anticompetitive aspect of the
17  defendant's conduct."  *see Datagate, Inc. v. Hewlett-Packard Co.*, 941 F.2d 864, 868 (9th Cir.
18  1991) (citation and internal quotation marks omitted).
19  Power easily satisfies that standard here.  Power explicitly alleges that it is a competitor in
20  the market for social networking websites.  Amended Answer and Counterclaims ¶ 173
21  ("Power.com is a competitor in the market for social networking websites.").  Power also contends
22  that Facebook has systematically threatened new entrants like Power with "baseless intellectual
23  property claims" and has "engaged in systematic and widespread copyright misuse … to
24  discourage market entry and to stifle competition from new entrants" like Power.  *Id.* at ¶ 176.
25  These allegations are more than sufficient to allege injury under Section 2 of the Sherman Act.
26  Facebook argues that Power's allegations are insufficient because Power "has failed to
27  allege how it seeks to compete with Facebook or how Facebook has restricted its efforts to compete
28  with Facebook."  Facebook Motion at 7.  At the pleading stage, however, Power is not obligated to

MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF FACEBOOK, INC. TO DISMISS
COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:08-CV-05780 (JF)

5

explain how it seeks to compete with Facebook. It need only allege that it does. Moreover, the counterclaim explains precisely how Facebook threatens and intimidates new entrants to the social networking market like Power for the purpose of stifling competition. *See* Amended Answer and Counterclaims ¶¶ 174-178.

### III. POWER HAS STATED A CLAIM FOR UNFAIR BUSINESS PRACTICES UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200

Facebook asserts that the Court should dismiss Power's unfair business practices claim under California Business & Professions Code Section 17200 ("§ 17200") "because it is virtually identical to Power's inadequately-pled antitrust claims." Facebook Motion at 8. But that argument is wrong as a matter of law. Even if Power's antitrust claims are not adequately pled, the claim for unfair competition under § 17200 does not depend on any antitrust violation. A business practice need not violate the antitrust law to be found an "unfair business practice" under § 17200. *See Cel-Tech Communications Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 187 (1999) (defining "unfair" as "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."). Indeed, if that were the case, § 17200 would be rendered mere surplussage to the antitrust laws. And if a violation of some other statute were required to find a violation of the unfair prong of § 17200, the unfair prong would be rendered surplussage to the unlawful prong of that same statute. On the contrary, the unfair prong of § 17200 is broader than both the antitrust laws and the unlawful prong. As the California Supreme Court has explained:

> [Section 17200] does more than just borrow. The statutory language referring to 'any unlawful, unfair *or* fraudulent' practice (italics added) makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law.
>
> …
>
> The unfair competition law … has a broader scope for a reason. "[T]he Legislature ... intended by this sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur. Indeed, ... the section was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable' "new schemes which the fertility of man's invention would contrive."' (*American*

MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF FACEBOOK, INC. TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:08-CV-05780 (JF)

6

> *Philatelic Soc. v. Claibourne* (1935) 3 Cal.2d 689, 698 [46 P.2d 135].)

*Id.* at 180-81; *see also Motors, Inc. v. Times Mirror Co.,* 102 Cal.App.3d 735 (1980), 740 ("It would be impossible to draft in advance detailed plans and specifications of all acts and conduct to be prohibited, since unfair or fraudulent business practices may run the gamut of human ingenuity and chicanery.").

Power alleges that Facebook has invented a new scheme to stifle competitors by preventing internet users from porting their own data to other websites. *See* Amended Answer and Counterclaims at 2:6-3:12. Given the very broad scope of § 17200's proscription of "unfair business practices," this may be a new scheme that falls within the statute's broad, sweeping language, regardless of whether it violates the antitrust laws.

Facebook argues that Power cannot base an unfair competition claim on "its theory of copyright misuse" because Facebook's policies do not prevent users from inputting their data into other websites. Facebook's Motion at 9. That specious argument is premature as it goes to the merits of Power's counterclaim and does not concern whether Power has adequately alleged a violation of § 17200. The Court should deny Facebook's motion to dismiss Power's § 17200 claim.

### IV. THE COURT SHOULD NOT STRIKE POWER'S AFFIRMATIVE DEFENSES

Finally, Facebook moves to strike Power's affirmative defenses, copyright misuse and fair use. The Ninth Circuit recognizes that "striking a party's pleadings is an extreme measure[.]" *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (9th Cir. 2000). Accordingly, the court has explained that "[m]otions to strike under Fed R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted." *Id.* (internal quotation omitted). Affirmative defenses are also subject to the general rule that a pleading must contain a "short and plain statement" of the basis of the defense. Fed. R. Civ. P. 8(a). The purpose of this rule is to "put opposing parties on notice of affirmative defenses and afford them the opportunity to respond" to them. *See Daingerfield Island Protective Soc'y v. Babbitt*, 40 F.3d 442, 444 (D.C. Cir. 1994).

MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF FACEBOOK, INC. TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:08-CV-05780 (JF)

7

Facebook argues that Power's fair use defense does not "plead the elements of the fair use doctrine." Facebook Motion at 11. Facebook is incorrect. Power provides a detailed statement of its fair use defense:

> Power.com provides users with utilities that allow them to copy their own User Content for purposes of updating it and making it portable to other sites – without copying other elements of the Facebook website. …
>
> …
>
> The only allegation of copying by Facebook is the allegation that third parties – Internet users – utilizing Power's utilities have "created cached copies of the [Facebook] website." *See* Facebook's 4/17/09 Opposition to Power's Motion to Dismiss at 9:13-15. What that means is that Facebook alleges that every time the Facebook website is displayed on a computer it is "copied," albeit momentarily, in the computer's cached memory. This allegation of copying is akin to charging the Dell company with copyright infringement whenever a user accesses the Facebook website through a Dell computer; or charging the Lexmark company with copyright infringement every time a user prints a page from the Facebook website on a Lexmark printer. The Microsoft company also creates "cached copies" of the Facebook website every time a user views the Facebook site through the Internet Explorer browser. Similarly, Google creates and stores "cached copies" of nearly every website on the internet, including Facebook.com. (Other search engines do the same.)
>
> …
>
> Even if Facebook could premise a copyright claim on the ephemeral and momentary copying of a website in a computer's cached memory, such temporary and intermediate copying in order to extract non-copyrighted elements – such as the User Content at issue here – falls squarely within the fair use doctrine.
>
> …
>
> The "copying," if any, constituted fair use under 17 U.S.C. § 107, and thus is not copyright infringement.

Answer and Counterclaims ¶¶ 161-164; *see also Sega v. Accolade*, 977 F.2d 1510, 1514 (9th Cir. 1992) (holding intermediate copying of copyrighted computer work to gain understanding of unprotected functional elements was fair use); *Sony v. Connectix*, 203 F.3d 596, 608 (9th Cir. 2000) (holding intermediate copying of BIOS that was necessary to access unprotected functional elements constituted fair use). Power's statement of its fair use defense is more than adequate to put Facebook on notice about the nature of the defense.

MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF FACEBOOK, INC. TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:08-CV-05780 (JF)

8

The same is true for Power's copyright misuse defense. Power claims:

> Copyright misuse is a defense to copyright infringement. The copyright misuse doctrine "forbids the use of the [copyright] to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which is contrary to public policy to grant." *Altera Corp. v. Clear Logic, Inc*., 424 F.3d 1079, 1090 (9th Cir.2005). "The misuse defense prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly." *A & M Records v. Napster, Inc*., 239 F.3d 1004, 1026 (9th Cir.2001).
>
> …
>
> The Facebook website is massive. It includes many different elements – some of which are subject to copyrights owned by Facebook and some of which clearly are not. The bulk of the Facebook site is comprised of "User Content." This "User Content" includes "photos, profiles, messages, notes, text, information, music, video, advertisements, listings, and other content that [users] upload, publish or display" on the Facebook site. See Facebook Terms of Use (rev. Sept. 23, 2008), available at http://www.facebook.com/terms.php. Facebook owns no copyright to such User Content. Indeed, Facebook's own Terms of Use expressly state that "Facebook does not assert any ownership over your User Content." *Id*. The Facebook site also contains "articles, photographs, text, graphics, pictures, designs, music, sound, video, information applications, software and other content or items belonging to or originating from third parties." *Id*. (section headed "Third Party Websites and Content"). Facebook does not own the copyrights to these third party materials.
>
> …
>
> Power.com provides users with utilities that allow them to copy their own User Content for purposes of updating it and making it portable to other sites – without copying other elements of the Facebook website. The Complaint does not allege that Power.com has copied any element of the Facebook site that is subject to a copyright owned by Facebook.
>
> …
>
> Facebook has committed copyright misuse by attempting to use its copyright in the Facebook website control areas outside of their copyright monopoly, such as by restricting users' ability to access their own User Content, which is not within the limited monopoly granted by Facebook's copyright to the Facebook website.

Amended Answer and Counterclaims ¶¶165-168. Nevertheless, Facebook contends that Power "misapprehends the equitable defense of copyright misuse." Facebook Motion at 9. Facebook claims that Power's copyright misuse defense is based solely on the fact that Facebook's website is "massive" and "includes many different elements." *Id.* at 10. That argument completely mischaracterizes Power's misuse defense. Power does not base its defense on the size or scope of

Facebook's site. It is based on the manner in which Facebook utilizes its copyright. Power has alleged that Facebook has attempted to use its copyright to restrict users ability to access their own content. Amended Answer and Counterclaims ¶ 168. If proven, that would establish Power's copyright misuse defense. There are no grounds for striking either of Power's affirmative defenses.

## V.  IF FACEBOOK'S MOTION IS GRANTED IN ANY RESPECT, THE COURT SHOULD GRANT POWER LEAVE TO AMEND

If Facebook's motion is granted in any respect, Power should be given leave to amend its pleading. A party may amend a pleading with a court's leave, and under Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave when justice so requires." The Ninth Circuit applies this policy liberally, denying leave only where an amendment clearly would be futile. *See Theme Promotions Inc. v. News American Marketing FSI*, 546 F.3d 991, 1010 (9th Cir. 2008). This is a complicated action involving new technologies with complex legal claims asserted by both parties. At this stage there are no grounds to conclude that amendment to Power's counterclaims or affirmative defenses would be futile.

## VI.  CONCLUSION

For the foregoing reasons, the Facebook's motion should be denied. If, however, Facebook's motion is granted in any respect, Power should be given leave to amend.

Dated:  January 15, 2010

Respectfully submitted,

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP

By_____/s/_____
                L. Timothy Fisher

Alan R. Plutzik (State Bar No. 77785)
L. Timothy Fisher (State Bar No. 191626)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA  94598
Telephone:  (925) 945-0200
Facsimile:  (925) 945-8792

| | |
|---|---|
| 1 | LAW OFFICES OF SCOTT A. BURSOR |
| 2 | Scott A. Bursor (*pro hac vice*) |
|   | 369 Lexington Avenue, 10th Floor |
| 3 | New York, NY  10017-6531 |
|   | Telephone:  (212) 989-9113 |
| 4 | Facsimile:   (212) 989-9163 |
| 5 | Attorneys for Defendants Power Ventures, Inc. and Steve Vachani |

MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF FACEBOOK, INC. TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES
CASE NO. 5:08-CV-05780 (JF)

11