BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik (State Bar No. 077785)
L. Timothy Fisher (State Bar No. 191626)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792

Attorneys for Defendants Power Ventures, Inc. and Steve Vachani

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC., <br><br> Plaintiff, <br><br> -against- <br><br> POWER VENTURES, INC. d/b/a POWER.COM, a California corporation; POWER VENTURES, INC. a Cayman Island Corporation, STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, an individual and/or business entity of unknown nature; DOES 2 through 25, inclusive, individuals and/or business entities of unknown nature, <br><br> Defendants. | Case No. 5:08-cv-05780 <br><br> **DECLARATION OF STEVE VACHANI IN SUPPORT OF DEFENDANTS' OPPOSITION TO FACEBOOK INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C) OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT OF LIABILITY UNDER CALIFORNIA PENAL CODE § 502(c)** <br><br> Judge: Honorable Jeremy Fogel <br> Date: February 26, 2010 <br> Time: 9:00 a.m. <br><br> Courtroom: 3, 5th Floor |

DECLARATION OF STEVE VACHANI
CASE NO. 5:08-CV-05780 (JF)
60298

I, Steve Vachani, declare:

1. I am CEO of Power.com. I make this declaration in support of Defendants' Opposition To Facebook Inc.'s Motion for Judgment on the Pleadings Pursuant To Fed. R. Civ. P. 12(c) or, in the Alternative, Partial Summary Judgment of Liability Under California Penal Code § 502(c). I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify to the truth thereof.

2. During a roughly two-month period, from December 2008 through January 2009, Power offered Facebook users a different and potentially superior browser through which they could access their Facebook accounts to copy, update, and/or port their own "User Content." This "User Content" includes photos, profiles, messages, notes, text, information, music, video, advertisements, listings, and other content that users upload, publish or display on the Facebook site.

3. Though Facebook "does not assert any ownership" over this User Content, Facebook does attempt to prevent users from copying it – to make it difficult for users to port their User Content to other websites. This gives Facebook an unfair competitive advantage because users will be less likely to join a new social networking website if the user is unable to port his contacts and other User Content without laboriously re-typing and/or re-uploading each item.

4. Thus, even if Power offers new technology that is superior to Facebook, a user is not likely to migrate to that new technology if doing so would require, for example, re-typing hundreds of entries in an address book stored in the user's Facebook account. So, while Facebook "does not assert any ownership" over the user's address book, Facebook does employ a variety of measures to make it very difficult to copy it.

5. Power's browser provides users with utilities that allow them to copy their own User Content for purposes of updating it and making it portable to other sites – without copying other elements of the Facebook website. The only data accessed through Power's utilities were user's own "User Content," over which Facebook has disclaimed any ownership.

6. Facebook does not allege that Power has copied any element of the Facebook website that is subject to a copyright owned by Facebook – and in fact Power has not done so.

7. Facebook does not allege that any data, any software, or any computer owned by Facebook has been damaged in any way by users accessing their accounts through the Power browser – and in fact no such damage has occurred.

8. Actions by users to access their own accounts and to copy their own User Content through the Power browser are not "attacks." These users employed a utility that is commonplace in the industry and which Facebook itself makes available to its users to access accounts on other websites.

9. The pleadings establish that Facebook "implemented technical measures to block users from accessing Facebook through Power.com." Amended Answer ¶ 63. These technical measures were quite simple. Facebook blocked Power's IP address, so that users attempting to access their Facebook accounts through Power's browser would be denied access. An IP (Internet Protocol) address is a numeric label that is assigned to devices, including web servers and other types of computers, participating in a computer network. For example, the IP address for the Power.com web server is 70.38.96.9, and the IP address for the Facebook.com web server is 69.63.186.36. The blocking of an IP address is a simple feature that can be implemented with push-button ease by virtually any web host. The "expenditure" of "corporate resources" to accomplish this "technical measure" would involve, essentially, a few clicks of a mouse to access the IP blocking feature of the web host, and ten keystrokes to enter Power.com's IP address among those to be blocked.

10. The utilities made available to users through the Power browser were merely capable of accessing the user's own account, displaying the Facebook website, copying the user's own "User Content," and updating the user's own "User Content" if directed to do so by the user. The Power browser does not provide any capability to cause the alteration, deletion, damage, or destruction of a computer system, computer network, computer program, or data. Nor does the Power browser provide any capability to cause a denial of access to Facebook by a legitimate user.

11. I am not aware of any instance in which use of the Power browser caused any alteration, damage, deletion or destruction to any of Facebook's data or computers. That did not happen and could not have happened.

DECLARATION OF STEVE VACHANI
CASE NO. 5:08-CV-05780 (JF)
60298

2



12. Upon learning that users were accessing their accounts through the Power browser, Facebook would have no reason to believe that its computer system, computer network, computer program, or data had been altered, deleted, damaged, or destroyed by such access. Facebook is familiar with the utilities used by the Power browser because Facebook itself has used similar utilities for years. Thus Facebook should have been aware, and so far as I could tell was aware, that it had no cause for such concern. In its communications to me, Facebook never suggested any concern that its computers or data had been altered, deleted, damaged, or destroyed. Since there was no cause for concern, Facebook did not, to my knowledge, make any expenditure to verify that its computers or data had not been altered, deleted, damaged, or destroyed.

13. Facebook's only response was to block access through Power's IP address. Facebook's decision to block Power's IP address was a pure business decision with only one realistic purpose: to thwart a potential competitor from implementing new technology that may prove superior to Facebook's technology. Facebook's decision to block Power's IP address was in no sense a "reasonable" or "necessary" measure to verify that the Facebook computers or data had not been altered, deleted, damaged or destroyed. Facebook had no need for such verification, and IP blocking has nothing to do with such verification.

14. The only intended use and the only actual use of the Power browser was to display the user's own Facebook account and to enable the user to copy and/or update the user's own "User Content." We had no scheme to defraud, deceive or extort anyone. Nor could the Power browser be used for such a scheme. Nor, to my knowledge, was the Power browser used for such a scheme.

15. The Power browser was not intended to and is not capable of wrongfully controlling or obtaining money, property or data. We did not intend it for such use. Nor, to my knowledge, was the Power browser ever used for such purposes.

16. Power has never obtained any usernames or passwords from Facebook's computers. Every username and password obtained by Power was manually entered through the Power.com website by a user who wished to access his or her own account through the Power browser. No data owned by Facebook has ever been altered or destroyed from such access. And the only data

that was "copied" or "used" in any substantial way was the user's own User Content, and only for such purposes as were specifically directed by the user.

17. Power acted with a good faith belief that (i) access to users' Facebook accounts through the Power browser was done in every instance with the permission of the user, that in every instance those users had ownership of all "User Content" that was accessed and/or copied through the Power browser and that no other permission was legally required for users to access their own accounts and User Content through the Power browser.

18. To the extent that Facebook's Terms of Use purport to restrict users from accessing their own User Content in this manner, Power had, and continues to have, a good faith belief that Facebook's Terms of Use were legally unenforceable or otherwise violative of the copyright and unfair competition laws.

19. In December 2008, after receiving notice that Facebook objected to users' access through the Power browser, Power immediately began working with Facebook to implement a different type of connection through "Facebook Connect." Power maintained its belief that it had done nothing wrong, and that it had every legal right to allow users access to their own Facebook accounts through the Power browser. Nevertheless, in an effort to reach an amicable resolution, Power agreed to try to work through "Facebook Connect" instead. By January 2009, Power had taken down its existing Facebook integration through the Power browser, and had focused its efforts exclusively on implementing "Facebook Connect." Power has not made any connection to Facebook since January 2009, and has no current plan to re-start its Facebook integration. Nevertheless, at all times through January 2009, and continuing through to today, Power believed and continues to believe, in good faith, that it had all permissions legally required to permit users to access their own Facebook accounts and to copy their own User Content through the Power browser. Power never "knowingly" acted "without permission," as those terms are used in § 502(c).

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed at Salvador, Brazil this 15th day of January, 2010.

DECLARATION OF STEVE VACHANI
CASE NO. 5:08-CV-05780 (JF)
60298

4

_____
Steve Vachani

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DECLARATION OF STEVE VACHANI
CASE NO. 5:08-CV-05780 (JF)
60298

5