1  I. NEEL CHATTERJEE (STATE BAR NO. 173985)
   nchatterjee@orrick.com
2  THOMAS J. GRAY (STATE BAR NO. 191411)
   tgray@orrick.com
3  JULIO C. AVALOS (STATE BAR NO. 255350)
   javalos@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
5  Menlo Park, CA  94025
   Telephone:     +1-650-614-7400
6  Facsimile:     +1-650-614-7401

7
   Attorneys for Plaintiff
8  FACEBOOK, INC.

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                  SAN JOSE DIVISION

12

13 FACEBOOK, INC.,                        Case No.  5:08-cv-05780 JF (HRL)

14            Plaintiff,                   FACEBOOK INC.'S REPLY BRIEF
                                           IN SUPPORT OF ITS MOTION FOR
15       v.                                JUDGMENT ON THE PLEADINGS
                                           OR, IN THE ALTERNATIVE,
16 POWER VENTURES, INC. a Cayman Island    PARTIAL SUMMARY JUDGMENT
   Corporation; STEVE VACHANI, an          OF LIABILITY UNDER
17 individual; DOE 1, d/b/a POWER.COM,     CALIFORNIA PENAL CODE
   DOES 2-25, inclusive,                   SECTION 502 AND OPPOSITION TO
18                                         DEFENDANTS' MOTION FOR
             Defendants.                   SUMMARY JUDGMENT
19
                                           Date:      February 26, 2010
20                                         Time:      9:00 a.m.
                                           Judge:     Hon. Jeremy D. Fogel
21                                         Courtroom: 3

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.   STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................. 1

III.  ARGUMENT ............................................................................................................. 2

    A.    Power Misunderstands the Aim and Scope of California Penal Code
        Section 502 ....................................................................................................... 2

        1.    Penal Code 502 Was Expressly Enacted To Protect The "Integrity"
              Of Computer Systems and Networks From "Unauthorized Access"
              Regardless Of Tampering, Alterations, or Deletions ................................... 2

        2.    Power Misrepresents The Standing Requirements For Civil
              Litigants ........................................................................................................ 3

    B.    Power Has Violated Penal Code Sections 502(c)(2), (3) and (7) .......................... 4

        1.    Power "Used," "Caused To Be Used," "Made Use Of" and
              "Accessed or Caused to Be Accessed"  Facebook's Computer
              Services ........................................................................................................ 4

        2.    Power's "Use," Or "Access" Was "Knowing" .......................................... 5

        3.    Power Acted Without Permission ................................................................ 5

              a.    Permission From Users Is Irrelevant............................................... 5

              b.    A "Good Faith Belief" Of Authorization Is Irrelevant.................... 7

    C.    Facebook Has Expended Resources Tracking, Blocking and Investigating
        Power's Attacks  .............................................................................................. 8

IV.   CONCLUSION .......................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Ebay, Inc. v. Bidder's Edge,*
    100 F. Supp. 2d 1058 (N.D. Cal. 2002) ................................................................ 7

*Facebook, Inc. v. ConnectU LLC,*
    489 F. Supp. 2d 1087 (N.D. Cal. 2007) .......................................................... 6, 8

*Gozlon-Pertez v. United States,*
    498 U.S. 395 (1991) .......................................................................................... 2

## STATE CASES

*Hale v. Morgan,*
    22 Cal. 3d 388 (1978) ........................................................................................ 8

*People v. Cole,*
    156 Cal. App. 4th 452 (2007) ............................................................................ 8

*People v. Hawkins,*
    98 Cal. App. 4th 1428 (2002) ......................................................................... 7, 8

## STATE STATUTES

Cal. Penal Code § 502(a) ........................................................................... 2, 3
Cal. Penal Code § 502(b)(8) ...................................................................... 3, 4
Cal. Penal Code § 502(c) .............................................................. 1, 2, 3, 4, 7, 8, 10
Cal. Penal Code § 502(c)(1) ............................................................................ 7
Cal. Penal Code § 502(c)(2) ................................................................. 3, 4, 5, 8
Cal. Penal Code § 502(c)(3) ...................................................................... 3, 4, 5
Cal. Penal Code § 502(c)(7) ...................................................................... 3, 4, 5
Cal. Penal Code § 502(d) ................................................................................ 3
Cal. Penal Code § 502(d)(3)(A) ...................................................................... 4
Cal. Penal Code § 502(e) ............................................................................ 9, 10
Cal. Penal Code § 502(e)(1) ................................................................ 1, 3, 4, 9, 10

1    **I.**    **INTRODUCTION**

2           This case is about one simple issue: whether the owner and operator of a private computer

3 system may lawfully regulate third-party access to that system.  The three motions currently

4 pending before the Court merely present variations on that single question.  Defendants Power

5 Ventures, Inc. and Steven Vachani ("Power") believe that they are entitled to unfettered access to

6 Facebook, Inc.'s ("Facebook") computer networks and that Facebook's efforts to regulate that

7 access are anticompetitive.  Because Facebook's computers are private property, Facebook is well

8 within its rights to prohibit unauthorized access; implementing measures to prevent such access

9 cannot plausibly be considered anticompetitive or unfair.  As a consequence, Facebook's motion

10 for judgment on the pleadings relating to its Penal Code 502(c) claim should be granted – and its

11 motion to dismiss Power's antitrust counterclaims should be granted as well.[1]

12           As Power's cross-motion for summary judgment confirms, there is no factual dispute

13 about Power's trespass to Facebook's systems.  The record before the Court establishes that

14 Power has violated Section 502(c).  Power's main defenses—that it received permission to access

15 Facebook from Facebook users and that Facebook did not expend sufficient resources

16 investigating and combating Power's trespasses to have suffered damage—are unavailing.

17 Permission from users is irrelevant and 502(e)(1) requires only that resources be expended, not

18 that those resources meet Power's standards. [2]

19    **II.**    **STATEMENT OF UNDISPUTED MATERIAL FACTS**

20           Both parties have filed motions for summary judgment on Facebook's Penal Code Section

21 502(c) claim.  Accordingly, the parties appear to agree that there are no disputed material facts

22 with respect to that claim.

23

---

24 [1] Facebook has submitted a separate Reply Brief in connection with its Motion to Dismiss
Power's Counterclaims and Strike its Affirmative Defenses. Due to the intertwined nature of the
25 motions, if the Court finds Power's unauthorized access to Facebook's servers to be unlawful, it
should also dismiss Power's antitrust and unfair competition claims.  Facebook's efforts to
26 protect itself from Power's attacks cannot constitute "predatory" behavior required to state a claim
under Section 2 of the Sherman Act and cannot be an unfair practice under the UCL.
27 [2] Facebook has other meritorious claims pending against Power.  However, a judgment on this
502(c) claim will provide Facebook with a sufficient remedy.  Accordingly, Facebook would be
28 willing to dismiss the remainder of its claims if the Court grants this motion.

1  **III.    ARGUMENT**

2      **A.    Power Misunderstands the Aim and Scope of California Penal Code Section
3             502**

4      Throughout its Opposition and supporting Declaration of Steven Vachani, Power argues

5  that Power.com's functionality "does not provide any capability to cause the alteration, deletion,

6  damage, or destruction of a computer system, computer network, computer program, or data."

7  Dkt. 65 at ¶ 10.  This, Power concludes, saves it from violating Section 502(c).  Power

8  misunderstands the aim and scope of California Penal Code Section 502.

9          **1.    Penal Code 502 Was Expressly Enacted To Protect The "Integrity" Of
                  Computer Systems and Networks From "Unauthorized Access"
10                Regardless Of Tampering, Alterations, or Deletions**

11     In determining the meaning of a statute, the Court must "look not only to the particular

12 statutory language, but to the design of the statute as a whole and to its object and policy."

13 *Gozlon-Pertez v. United States*, 498 U.S. 395, 407 (1991).  When it enacted Penal Code 502, the

14 California State Legislature obviously intended to address garden variety hackers, spammers, and

15 malware.  However, the Legislature also sought to prevent "unlawful access" to computer

16 systems and enacted a separate and distinct cause of action—beyond straightforward computer

17 hacking or tampering—to deal with that problem.  Thus, in Section 502's preamble, the

18 Legislature wrote: "It is the intent of the Legislature in enacting this section to expand the degree

19 of protection afforded to individuals, businesses, and government agencies from tampering,

20 interference, damage, and unauthorized access to lawfully created computer data and computer

21 systems."  Penal Code § 502(a) (emphasis added).  The statute continues: "The Legislature

22 further finds and declares that protection of the integrity of all types and forms of lawfully created

23 computers, computer systems, and computer data is vital to protection of the privacy of

24 individuals as well as to the well-being of financial institutions, business concerns, governmental

25 agencies, and others within this state that lawfully utilize computers, computer systems, and

26 data."  *Id.*  (emphasis added).

27     By its plain language, Section 502 was thus expressly enacted, in relevant part, to protect

28 the integrity and "well-being" not just of computer data but of whole commercial *computer*

1    *systems* from "unauthorized access," with "access" broadly defined to mean "gain entry to,

2    instruct, or communicate with the logical, arithmetical, or memory function resources of a

3    computer, computer system, or computer network." Penal Code § 502(b)(1). In other words, in

4    addition to being an anti-hacking statute, Section 502 was designed as an anti-trespass statute that

5    criminalizes unauthorized "communication" with a computer system.

6          Accordingly, when enumerating the particular acts that would constitute "public offenses"

7    in Section 502(c), the Legislature went to great lengths to include several predicate acts that

8    focused on "access" and "use" as opposed to alteration, damage, deletion, or destruction. Section

9    502(c)(2), for instance, declares it a public offense to "knowingly access[] and without permission

10   take[], cop[y] or make[] use of any data from a computer, computer system, or computer

11   network." Section 502(c)(3) similarly criminalizes those who "[k]nowingly and without

12   permission use[] or cause[] to be used computer services." Finally, under Section 502(c)(7), any

13   person who "[k]nowingly and without permission accesses or causes to be accessed any

14   computer, computer system, or computer network" can be guilty of a public offense and civilly

15   liable.

16          **2.      <u>Power Misrepresents The Standing Requirements For Civil Litigants</u>**

17          Power's Opposition mistakenly insists that Section 502 "creates a private right of action

18   only in very limited circumstances." Dkt. 64 at 2:15-16. To the contrary, consistent with the

19   Legislature's desire to protect the integrity and well-being of computer systems owned by private

20   individuals and businesses, Section 502(e)(1) broadly provides civil remedies to any "owner or

21   lessee of the computer, computer system, computer network, computer program, or data who

22   suffers damage or loss by reason of a violation of any of [the nine] provisions of subdivision (c)."

23   Power incorrectly claims that Section 502(b)(8), which defines the term "injury," "further defines

24   the types of damage or loss recognized by" 502(e)(1). Dkt. 64 at 2:18-23; *see also id.* at p 3:1-3

25   (claiming that "[a] party asserting a private civil claim under § 502 must establish that it suffered

26   'injury' to its data or computers"). However, the term "injury" never appears anywhere in

27   Sections 502(a), (c) or (e)(1). The word is found only in Section 502(d) (inapplicable here), and

28   is used exclusively to help categorize criminal punishments for 502(c) violations. *See, e.g.,*

FACEBOOK'S REPLY ISO MOT. FOR
JUDGMENT ON PLEADINGS OR PARTIAL SJ AND
OPP. TO MOTION FOR SJ Case No. 5:08-cv-05780 JF

1   Section 502(d)(3)(A) ("For a first violation that does not result in <u>injury</u>, an infraction punishable

2   by a fine not exceeding one thousand dollars ($1,000)") (emphasis added).  There is no statutory

3   support for the proposition that "injury," as defined in section 502(b)(8), should be imported into

4   502(e)(1) nor does Power provide any.

5       In fact, the plain language of Section 502(e)(1) allows a party to bring a civil action for

6   violations of 502(c) if the party has suffered "damage" or "loss," which "shall include any

7   expenditure reasonably and necessarily incurred by the owner or lessee to **verify** that a computer

8   system, computer network, computer program, or data was or was not altered, damaged, or

9   deleted by the access."  Penal Code § 502(e)(1) (emphasis added).  As explained in greater detail

10  below, Facebook reasonably and necessarily expended resources investigating Power's unlawful

11  access to its servers, blocking that access, conferring with Power and Mr. Vachani to determine

12  why they were impermissibly scraping data from Facebook's servers, hiring outside counsel to

13  get Power to stop their access, investigating Power's subsequent circumvention of its

14  technological blocking measures, as well as re-blocking Power's access to Facebook.  All of these

15  expenditures qualify as damage or loss under Section 502(e)(1).  Consequently, Facebook has

16  pled sufficient grounds for standing to assert its Penal Code Section 502(c) claims against Power.

17      **B.    <u>Power Has Violated Penal Code Sections 502(c)(2), (3) and (7)</u>**

18      Power ignores the 502(c) subdivisions that do not require the destruction of data.  Again, a

19  defendant violates 502(c)(2) when he "knowingly accesses and without permission takes, copies,

20  or makes use of any data from a computer, computer system, or computer network."  The

21  defendant violates Section 502(c)(3) if he  "knowingly and without permission uses or causes to

22  be used computer services."  And he violates 502(c)(7) when he "knowingly and without

23  permission provides or assists in providing a means of accessing a computer, computer system, or

24  network."  None of these provisions requires, or even mentions, the destruction of data.

25      **1.    <u>Power "Used," "Caused To Be Used," "Made Use Of" and "Accessed</u>**
        **<u>or Caused to Be Accessed"  Facebook's Computer Services</u>**

26

27      Power has not disputed that it "used," "caused to be used," "made use of" or "accessed or

28  caused to be accessed" Facebook's computer services.  Indeed, it has repeatedly confirmed these

1  facts.  *See*, *e.g.*, Dkt. No. 54 ¶ 18 (Power admits that it "permits users to enter their account

2  information to access the Facebook site through Power.com"); *Id*. ¶¶ 45, 50 (same); *Id*. ¶ 74

3  (Power admits that it has "developed computer software and other automated devices and

4  programs to access and obtain information from the Facebook website for aggregating services");

5  Dkt. No. 65 ¶ 2 ("Power offered Facebook users a different and potentially superior browser

6  through which they could access their Facebook accounts to copy, updated, and/or port their own

7  'User Content.'").  Consequently, there is no factual dispute as to this element.

8  **2.      Power's "Use," Or "Access" Was "Knowing"**

9      Power has also admitted that it  *knowingly* "used or caused to be used" Facebook's

10  computer services, (502(c)(3)), "*knowingly*" "access[ed]" Facebook's computer services,

11  (502(c)(2)), or "*knowingly*" accessed or "caused to be accessed" Facebook's computer network,

12  (502(c)(7)).   *See* Dkt. 54 ¶¶ 5,18, 45, 50, 63, 64, 66, 74, and 75.

13  **3.      Power Acted Without Permission**

14  **a.      Permission From Users Is Irrelevant**

15      Nor is there any dispute that Power's actions were done "without permission" from

16  Facebook.  Facebook has never given Power permission to access or use its network.  In fact, the

17  record demonstrates (and Power has admitted) that on December 1, 2008 Facebook notified

18  Power that "Power.com's access of Facebook's website and servers was unauthorized and

19  violated Facebook's rights."  Dkt. 9 at ¶ 57; Dkt. 54 ¶ 57 ("Defendants admit that Facebook has

20  communicated such claims to Mr. Vachani.").  It is also undisputed that because Power refused to

21  stop, Facebook was required to implement technical blocks to keep Power from accessing the

22  Facebook network and that Power intentionally circumvented those blocking measures in order to

23  keep accessing Facebook.com without permission.  *See* Dkt. 54 ¶¶ 63 ("Defendants admit that

24  Facebook implemented technical measures to block users from accessing Facebook through

25  Power.com") and 64 (admitting that despite Facebook's technical blocks, "Defendants admit that

26  Power provided users with tools necessary to access Facebook through Power.com").

27      Despite these contrary admissions, Power argues that it was permitted to access and use

28  the Facebook network.  Power's arguments are unconvincing.  First, Power argues that its access

- 5 -

1   to Facebook's network was done with the permission of Facebook users. This theory has already

2   been rejected by this Court, as well as another Court in this District. *See* Dkt. 38 at 7:21-28; *and*

3   *Facebook, Inc. v. ConnectU LLC*, 489 F.Supp.2d 1087, 1091 (N.D. Cal. 2007).

4           In *ConnectU*, the ConnectU defendants took the same position that Power espouses here,

5   arguing that their access to Facebook had been undertaken "with permission" because ConnectU

6   "accessed information on the Facebook website that ordinarily would be accessible only to

7   registered users by using log-in information voluntarily supplied by registered users." *ConnectU*,

8   489 F.Supp.2d at 1091. The Court was unmoved by this argument, holding that "notwithstanding

9   the reference in the title to 'unauthorized access,' Penal Code section 502 prohibits *knowing*

10  access, followed by *unauthorized* (i.e., 'without permission') taking, copying, or use of data." *Id*.

11  Accordingly, Judge Seeborg denied ConnectU's motion to dismiss Facebook's 502(c) claims

12  because Facebook had adequately alleged that ConnectU had knowingly accessed Facebook's

13  website "in a manner not authorized or permitted <u>by Facebook</u>." *Id*. (emphasis added).

14          Power attempts to distinguish *ConnectU* by arguing that its procedural posture renders it

15  "not a useful precedent." Dkt. 64 at 12:26, fn 2. But Judge Seeborg's holding on this point had

16  nothing to do with the procedural posture of the case. Indeed, in reaching his decision, Judge

17  Seeborg interpreted the code and made the legal finding that only Facebook could grant

18  permission, not Facebook users. Clearly, a user cannot grant a third-party permission that is not

19  the user's to grant in the first place. This is precisely the argument that Power is trying to make in

20  this case.

21          In fact, in this case the Court has already observed that Facebook users may not grant

22  authorization to third-parties to use the Facebook service without Facebook's permission. *See*

23  Dkt. 38 at 7:24-28 ("[t]his argument relies on an assumption that Facebook users are authorized

24  to use Power.com or similar services to access their user accounts. The Terms of Use negate this

25  argument . . . Users may have the right to access their own content, but conditions have been

26  placed on that access."). Under Power's logic, a bank would have no cause of action against a

27  person who broke into the bank in the middle of the night if one of the bank's depositors had

28  given permission to the thief to retrieve its deposit. This makes no sense in logic or law.

In sum, Power cannot successfully argue that it acted "with permission" because Facebook users allegedly gave it permission to access and use Facebook's servers. Facebook's computer servers are Facebook's private property. *See Ebay, Inc. v. Bidder's Edge*, 100 F. Supp. 2d 1058, 1070 (N.D. Cal. 2002) ("eBay's servers are private property, conditional access to which eBay grants the public."). Accordingly, and under the plain meaning of Penal Code 502, it was Facebook's permission—and not that of its users—that Power was required to obtain and it is undisputed that Power did not have that permission.

### b.   A "Good Faith Belief" Of Authorization Is Irrelevant

Power's second theory is that the 502(c) subsections impute a *mens rea* requirement not only as to the "knowing" access or use of the Facebook network, but also to the fact that the access was "without permission." Accordingly, Power believes that even if the Court finds that Power was required to obtain Facebook's permission in order to access the Facebook site and that it accessed the site without that permission, Power would still not be liable under 502(c) because it had a "good faith belief" that the users' permission was sufficient. Dkt. 64 at 12:3-19. For starters, this argument is contradicted by Power's own concession that on December 1, 2008, Facebook notified it that "Power.com's access of Facebook's website and servers was unauthorized and violated Facebook's rights." Dkt. 54 ¶ 57. In response, instead of reevaluating its "good faith belief," Power admits that it not only chose to keep accessing Facebook, but went so far as to circumvent Facebook's technological blocking measures in order to keep scraping data from Facebook's network. Dkt. ¶¶ 63-64. In light of these admissions, Power's post-hoc claims of ignorance and "good faith" are not credible.

Regardless, Power's argument is contrary to the plain meaning of 502(c) as well as this Court's prior precedent. As support for its proposition, Power cites only *People v. Hawkins*, 98 Cal.App.4th 1428, 1439 (2002), a criminal trade secrets misappropriation case that is wholly inapposite here. Power claims that *Hawkins* "rejected the assertion that 'knowingly' only modifies 'accesses' and not the rest of the crime." Dkt. 64 at 12:4-6. Going even further, Power claims that *Hawkins* "require[s] [that Facebook] establish that Power 'knowingly' committed every element of an offense under § 501(c)(1)." *Id*. Power misrepresents *Hawkins*, which made

1    neither of these holdings.  The *Hawkins* defendant argued that 502(c) was unconstitutional on its

2    face because a person could be found guilty of a felony under it for knowingly accessing a

3    computer and then copying something off that computer by accident.  *See* 98 Cal.App.4th at

4    1439.  The Court rejected this argument with the unsurprising observation that "[e]vidence of

5    accidental copying would negate the mental element of section 502, subdivision (c)(2)."  The

6    Court never even mentioned the issue of "permission."  *Hawkins* does not help Power.

7          Moreover, this District's previous readings of Section 502 establish that the plain reading

8    of the statute is that "knowingly" does not modify "without permission."  For example, in

9    *ConnectU*, Judge Seeborg found that "Penal code section 502 prohibits *knowing* access, followed

10   by *unauthorized* (i.e., "without permission") taking, copying, or use of data."  *ConnectU,* 489

11   F.Supp.2d at 1091.

12         Finally, Power's defense that it should be excused from impermissibly accessing

13   Facebook's servers either because it mistakenly believed that Facebook users could give it legal

14   permission or because it had a "good faith belief that Facebook's Terms of Use were legally

15   unenforceable or otherwise violative of the copyright and unfair competition laws" is a mistake of

16   law that does not excuse illegal behavior.  *See People v. Cole*, 156 Cal.App.4th 452, 483 (2007)

17   ("Ignorance of the law is no excuse").  "In the absence of specific language to the contrary,

18   ignorance of a law is not a defense to a charge of violation."  *Hale v. Morgan*, 22 Cal.3d 388, 396

19   (1978); *see also* 1 Witkin & Epstein, Cal. Criminal Law, Defenses § 36, p. 367 (3d ed. 2000) ("If

20   the act itself is punishable when knowingly done, it is immaterial that the defendant thought it

21   was lawful.").  Power's claims of ignorance or mistaken "good faith beliefs" are immaterial.

22         Accordingly, Power's actions were plainly "without permission."

23   **C.    Facebook Has Expended Resources Tracking, Blocking and Investigating
         Power's Attacks**

24

25         Power claims that "the sole injury alleged in Facebook's complaint is the supposed injury

26   to Facebook's 'reputation and goodwill' caused by users accessing their Facebook accounts

27   through the Power browser."  Dkt. No. 64 at 2:6-8 (*quoting* First Amended Complaint, Dkt. No. 9

28   ("FAC"), ¶ 119)).  This is false.  Power ignores paragraph 118 of Facebook's FAC, which states

1    that "Facebook suffered and continues to suffer damage as a result of Defendants' violations" and

2    paragraph 121 in which Facebook specifically alleges, among other things, "compensatory

3    damages" pursuant to section 502(e).

4         Importantly, Power has conceded the facts that establish that Facebook has suffered

5    "damages" or "losses" pursuant to Section 502(e).  Specifically, 502(e)(1) provides that a plaintiff

6    may satisfy the "damage" or "loss" requirement by demonstrating any "expenditure reasonably

7    and necessarily incurred . . . to **verify** that a computer system, computer network, computer

8    program, or data was or was not altered, damaged, or deleted by the access." (Emphasis added).

9         The record demonstrates that Facebook has reasonably and necessarily expended

10   resources verifying, investigating and counteracting the impact of Power's unlawful access to its

11   servers.  For instance, Facebook was forced to retain outside counsel to investigate Power's acts

12   and to get Power to terminate its access.  Dkt. No. 9 ¶ 57; Dkt. No. 54 ¶ 57.  Facebook expended

13   further resources meeting and conferring with Power and Mr. Vachani to determine the nature of

14   Power's access and the impact of that access on Facebook's systems.  *Id.* ¶¶  57-58, 60.

15   Facebook was also required to expend resources to block Power from further accessing

16   Facebook's servers.  *See* Dkt. 54 ¶¶ 63 and 64.  Power has admitted that it circumvented these

17   blocks, requiring even further actions and expenditures by Facebook to verify that Power would

18   not continue accessing or altering Facebook's systems.  *Id.* ¶ 63 ("Defendants admit that

19   Facebook implemented technical measures to block users from accessing Facebook through

20   Power.com").  Despite these blocking measures, Power admits that it continued to "provide[] [its]

21   users with tools necessary to access Facebook through Power.com." *Id.* ¶ 64.

22        Power's response to these expenditures is two-fold.  First, Power claims that the court

23   should ignore these measures because Power's actions are allegedly "commonplace in the

24   industry."  Dkt. 64 at 7:6-8.  But Section 502(e)(1) does not contain any safe harbors for

25   commonplace unlawful access to computer servers.  Second, Power argues that the Court should

26   ignore Facebook's expenditures because they were "quite simple."  *Id.* at 7:17.  According to

27   Power, "[t]he blocking of an IP address is a simple feature that can be implemented with push-

28   button ease by virtually any web host. The 'expenditure' of 'corporate resources' to accomplish

- 9 -

1    this 'technical measure' would involve, essentially, a few clicks of a mouse to access the IP

2    blocking feature of the web host, and ten keystrokes to enter Power.com's IP address among

3    those to be blocked." *Id*. at 7:20-27.  Of course, even if true, which it is not, Power ignores the

4    obvious facts that Facebook must first monitor and verify Power's conduct before the mouse is

5    clicked and the keys stroked.  Power also ignores the fact that it did not stop attacking Facebook's

6    servers once Facebook initially blocked Power's IP address.

7            Importantly, there is no requirement in 502(e)(1) that expenditures must be "big" to

8    satisfy the statute.  All that is required is that Facebook has suffered some level of compensatory

9    damages – which is not disputed.  The amount of compensatory damages available to Facebook is

10   irrelevant to the issue of liability under Penal Code Section 502(c).  Penal Code 502 is an anti-

11   trespass statute; the duration or impact of the trespass does not determine if the trespass occurred

12   in the first place.  Facebook has alleged, and Power has conceded, that Facebook has expended

13   effort to verify and block Power's activities on Facebook's computer system and servers.  That is

14   all that is required to satisfy Section 502(e).  If needed, the parties can argue about the amount of

15   compensatory damages at a later date.

16   **IV.    <u>CONCLUSION</u>**

17           Power has violated California Penal Code Section 502.  Accordingly, Facebook

18   respectfully requests that the Court grant Facebook judgment on the pleadings with respect to that

19   claim.  For the same reasons stated above, Power's Motion for Summary Judgment as to

20   Facebook's Section 502 claim should be denied.

21

22   Dated: January 29, 2010                    ORRICK, HERRINGTON & SUTCLIFFE LLP

23

24                                                      /s/ Thomas J. Gray
                                                THOMAS J. GRAY
25                                              Attorneys for Plaintiff
                                                FACEBOOK, INC.

26

27

28

FACEBOOK'S REPLY ISO  MOT. FOR
JUDGMENT ON PLEADINGS OR PARTIAL SJ AND
OPP. TO MOTION FOR SJ Case No.  5:08-CV-05780 JF

1

## <u>CERTIFICATE OF SERVICE</u>

2

3        I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 29, 2010.

4

5    Dated:  January 29, 2010                    Respectfully submitted,

6
                                          _____
7                                              /s/ Thomas J. Gray
                                               THOMAS J. GRAY
8

9

10
     OHS West:260817691.6
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28