1   I. NEEL CHATTERJEE (STATE BAR NO. 173985)
    nchatterjee@orrick.com
2   THOMAS J. GRAY (STATE BAR NO. 191411)
    tgray@orrick.com
3   JULIO C. AVALOS (STATE BAR NO. 255350)
    javalos@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
5   Menlo Park, CA  94025
    Telephone:     +1-650-614-7400
6   Facsimile:     +1-650-614-7401

7   JESSICA S. PERS (STATE BAR NO. 77740)
    jpers@orrick.com
8   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
9   405 Howard Street
    San Francisco, CA  94105-2669
10  Telephone:  +1-415-773-5700
    Facsimile:  +1-415-773-5759
11
    Attorneys for Plaintiff FACEBOOK, INC.
12
                        UNITED STATES DISTRICT COURT
13
                     NORTHERN DISTRICT OF CALIFORNIA
14
                              SAN JOSE DIVISION
15

16
    FACEBOOK, INC.,                             Case No.  5:08-cv-05780 JF (HRL)
17
                        Plaintiff,              **FACEBOOK INC.'S REPLY
18                                              MEMORANDUM IN SUPPORT OF
            v.                                  MOTION TO DISMISS AMENDED
19                                              COUNTERCLAIMS AND STRIKE
    POWER VENTURES, INC. a Cayman Island        AMENDED AFFIRMATIVE
20  Corporation; STEVE VACHANI, an              DEFENSES**
    individual; DOE 1, d/b/a POWER.COM,
21  DOES 2-25, inclusive,                       Date:       February 26, 2010
                                                Time:       9:00 a.m.
22                      Defendants.             Judge:      Hon. Jeremy D. Fogel
                                                Courtroom:  3
23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Page**

I.     INTRODUCTION ............................................................................................................. 1

II.    ARGUMENT .................................................................................................................. 1

    A.    POWER HAS FAILED TO STATE CLAIMS FOR MONOPOLIZATION OR ATTEMPTED MONOPOLIZATION UNDER SECTION 2 OF THE SHERMAN ACT ........................................................................................... 1

        1.    Power Has Not Alleged Facts That Plausibly Establish Facebook's Practices To be Predatory.......................................................................... 1

        2.    Power Still Has Not Alleged Facts Sufficient To Identify A Relevant Product Market In Which Facebook Has Monopoly Power ........ 2

        3.    Power Does Not Compete With Facebook In A Relevant Market ............. 3

        4.    Power Has Not Suffered Antitrust Injury...................................................... 4

    B.    POWER CANNOT STATE A CLAIM UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200 ............................... 5

    C.    POWER'S AFFIRMATIVE DEFENSES SHOULD ONCE AGAIN BE STRICKEN .............................................................................................. 6

        1.    Power Has Provided No Facts to Support Its Fair Use Defense ................. 6

        2.    Power's Copyright Misuse Defense Should Be Stricken........................... 7

III.   THE COURT SHOULD NOT PERMIT ANOTHER AMENDMENT TO THE COUNTERCLAIMS................................................................................................ 7

1

## TABLE OF AUTHORITIES

2

**Page**

3

### FEDERAL CASES

4

*A&M Records v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001)..........................................................................................7

5

*Altera Corp. v. Clear Logic, Inc.*,
6   424 F.3d 1079 (9th Cir. 2005)..........................................................................................7

7

*Am. Ad. Mgmt. v. General Telephone Co. of California, et al.*,
  190 F.3d 1051 (9th Cir. 1997)..........................................................................................4

8

*America Online, Inc. v. GreatDeals.Net*,
9   49 F. Supp. 2d 851 (E.D. Va. 1999)..................................................................................3

10

*Apple Inc. v. Psystar Corp.*,
  586 F. Supp. 2d 1190 (N.D. Cal. 2008) ............................................................................5

11

*Atlantic Richfield v. USA Petroleum*,
12   495 U.S. 328 (1990)..........................................................................................................4

13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544......................................................................................................................4

14

*Brunswick Corp. v. Pueblo Bowl-o- Mat, Inc.*,
15   429 U.S. 477 (1977) ..........................................................................................................4

16

*Campbell v. Acuff-Rose Music*,
  510 U.S. 569 (1994) ..........................................................................................................6

17

*Cargill Inc. v. Budine, et al.*,
18   No. CV-F-07-349-LJO, 2007 U.S. Dist.
  LEXIS 67526 (E.D. Cal. Aug. 30, 2007) ..........................................................................3

19

*Harper House, Inc. v. Thomas Nelson, Inc.*,
20   889 F.2d 197 (9th Cir. 1989).............................................................................................6

21

*LiveUniverse, Inc. v. MySpace, Inc.*, No. CV 06-6994 AHM,
  304 Fed. Appx. 554, 557 2008 U.S. App.
22   LEXIS 27141 (9th Cir. Dec. 22, 2008) .............................................................................5

23

*Quabon.com, Inc. v. eHelp Corp.*,
  315 F. Supp. 2d 1046 (N.D. Cal. 2004) ............................................................................6

24

*Streamcast Networks, Inc. v. Skype Techs., S.A., No. CV 06-391 FMC (Ex)*,
25   2006 U.S. Dist. LEXIS 97392 (C.D. Cal. Sep. 14, 2006)..................................................3

26

*Western Mining Council v. Watt*,
  643 F.2d 618 (9th Cir. 1981).............................................................................................4

27

28

FACEBOOK'S REPLY ISO MOTION TO DISMISS
CASE NO. 08-5780 JF (HRL)

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**STATE CASES**

*Chavez v. Whirlpool Corp.*,
93 Cal. App. 4th 363 (2001).............................................................................................................. 5

**MISCELLANEOUS**

*ABA Section of Antitrust Law Developments* 400 (4th ed. 1997) .................................................... 3

1

## I. INTRODUCTION

2       This case is about one thing:  Power wants to have access to Facebook's website and its

3  users without complying with Facebook's Terms of Use.  When Power first tried to fashion an

4  antitrust claim out of its displeasure with Facebook's right to control access to its site, this Court

5  appropriately dismissed Power's counterclaims.  In response, Power has repeated the same

6  argument – it wants access to Facebook's site without complying with the Terms of Use – but

7  now asserts that the Terms of Use are anticompetitive because other, unrelated websites allow

8  third-party access different from Facebook's and because Facebook enforces its policies.  Those

9  allegations cannot save these counterclaims; far from it.  It is now clear that Power cannot state

10  any antitrust or unfair competition claims against Facebook and the Court should grant

11  Facebook's motion to dismiss without leave to amend.

12

## II. ARGUMENT

13 14      **A.      POWER HAS FAILED TO STATE CLAIMS FOR MONOPOLIZATION OR ATTEMPTED MONOPOLIZATION UNDER SECTION 2 OF THE SHERMAN ACT**

15 16          **1.      Power Has Not Alleged Facts That Plausibly Establish Facebook's Practices To be Predatory.**

17      Since the filing of Facebook's motion to dismiss, both Power and Facebook have brought

18  cross-motions for judgment on the pleadings or, in the alternative, for summary judgment on

19  Facebook's claim that Power has improperly accessed, used, or induced others to access or use

20  Facebook's computer system, network or service in violation of California Penal Code Section

21  502(c).  *See* Dkt Nos. 56 and 62, respectively.  If the Court determines that Power has violated

22  Penal Code Section 502(c), then it follows that Facebook's efforts to protect itself from those

23  criminal attacks cannot plausibly be considered "predatory." That alone should lead the Court to

24  grant this motion to dismiss.

25      Even without the pending cross motions, Power's allegations of "predation" are

26  insufficient.  First, Power claims that Facebook has engaged in a campaign to enforce its Terms

27  of Use against "new entrants" into the social networking market so as to "stifle competition."

28  This conclusory statement is made without any supporting factual allegations whatsoever and

- 1 -

1   merely alleges that Facebook's unspecified actions against unidentified other parties were

2   "baseless." If those actions are similar to Facebook's actions against Power – acting to stop

3   improper access to the Facebook site in violation of the Terms of Use – they are neither baseless

4   nor predatory.

5          Second, Power asserts that Facebook must allow unfettered third-party access to its

6   website simply because other websites might allow unfettered access to theirs. *See* Dkt. No. 63 at

7   5:2-5.  In essence, this is the core of Power's complaint – it does not like Facebook's Terms of

8   Use and wants Facebook to adopt different ones. Under Power's view of the world, Facebook is

9   engaging in a predatory practice merely by enforcing a Term of Use that is different from that of

10   some other website.  That makes no sense and Power's failure to cite any authority for this

11   proposition speaks volumes.  Nor has Power explained how Facebook's policies have stopped

12   Power from getting information directly from users, from other websites that allow third party

13   access or even from Facebook, through the Facebook Connect program.  In short, Facebook's

14   policy has not stopped Power from getting the information it needs; it has merely stopped it from

15   getting that information by violating Facebook's Terms of Use.

16          **2.      Power Still Has Not Alleged Facts Sufficient To Identify A Relevant
                        Product Market In Which Facebook Has Monopoly Power.**
17

18          Although Power claims the relevant market is limited to "social networking websites," *id.*

19   at 3:13-14, that is not what the counterclaims say.  In fact, the Amended Answer and

20   Counterclaim defines the market to include "websites that allow users to create personal profiles,

21   manage contacts, and provide a variety of ways for users to interact with contacts."  Dkt. No. 54 ¶

22   172; *see also* Dkt. 63 at 2:16-21.  As Facebook noted in its opening brief, this definition

23   encompasses *at least* photo sharing websites, email websites and dating websites, in addition to

24   sites like Facebook and MySpace.  Because it is impossible to determine which websites are

25   included within this alleged market, it is impossible to assess the plausibility of Power's

26   allegation that Facebook possesses illegitimate monopoly power.  Courts routinely grant Rule

27   12(b)(6) motions to dismiss when a plaintiff's definition of the relevant market is found to be

28   overly broad or narrow "with respect to its identification of the relevant product pool."  *See*

1    *Streamcast Networks, Inc. v. Skype Techs., S.A.*, No. CV 06-391 FMC (Ex), 2006 U.S. Dist.

2    LEXIS 97392, at \*29-30 (C.D. Cal. Sep. 14, 2006).   That description certainly applies to these

3    counterclaims.

4                  **3.**       <u>**Power Does Not Compete With Facebook In A Relevant Market.**</u>

5          Even if Power has adequately alleged a relevant product market, the allegations of the

6    Amended Counterclaims show that Power does not compete in that market and that it thus lacks

7    standing to bring its antitrust claims.  The "boundaries of a relevant market … are determined by

8    reasonable interchangeability of use," which refers to "consumers' practicable ability to switch

9    from one product or service to another." *America Online, Inc. v. GreatDeals.Net*, 49 F.Supp.2d

10   851, 858 (E.D. Va. 1999) ("*America Online*"), citing, *ABA Section of Antitrust Law Developments*

11   400 (4th ed. 1997).  Power's Opposition never so much as mentions "reasonable

12   interchangeability," let alone argues that the services offered by Power fill the same consumer

13   need as the websites included within the alleged product market.

14         In *Cargill Inc. v. Budine, et al.*, No. CV-F-07-349-LJO, 2007 U.S. Dist. LEXIS 67526, at

15   \*15 (E.D. Cal. Aug. 30, 2007), the Eastern District of California dismissed plaintiff's Sherman

16   Act claims because its allegations did not establish that it competed in the relevant market as the

17   plaintiff had defined it.   The Court should dismiss Power's counterclaims for the same reasons.

18   As the Court has already noted, Power merely operates a "website designed to integrate various

19   social networking or email accounts into a single portal." Dkt. 38 at 3:12-13.  Rather than

20   operating a competing social networking site,  Power admits that it only provides "users with

21   tools necessary to access Facebook through Power.com." Dkt. No. 54 at ¶ 64.  In his recently

22   filed declaration, Power CEO Steven Vachani stated that "Power offered Facebook users a

23   different and potentially superior browser through which they could access their Facebook

24   accounts to copy, update, and/or port their own 'User Content.'" Dkt. 65 at ¶ 2, defining Power

25   as a "browser" not a social networking website.  There can be no dispute:  Power does not operate

26   a social networking website.

27         Power tries to avoid this problem by alleging, without more, that "Power.com is a

28   competitor in the market for social networking websites." Dkt. 63 at 5:21.  But such a bare,

1  conclusion is not sufficient. Power admits that it has provided no support for this allegation and

2  instead, argues incorrectly that it "is not obligated to explain how it seeks to compete with

3  Facebook. It need only allege that it does." *Id*. at 5:28-6:1. That argument clearly violates

4  federal pleading requirements requiring more than a mere "blanket assertion of entitlement to

5  relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555; *see also Cargill*, 2007 U.S. Dist.

6  LEXIS 67526, at *5-6 ("Although Courts assume the facts alleged as true, courts do not 'assume

7  the truth of legal conclusions merely because they are cast in the form of factual allegations.")

8  (quoting *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Here, there are no

9  factual allegations that plausibly demonstrate how Power competes with Facebook. On the

10  contrary, the facts alleged show that Power seeks to exploit Facebook, not compete with it.

11  **4.    Power Has Not Suffered Antitrust Injury**

12         Finally, Power cannot just assert that it has suffered cognizable antitrust injury without

13  providing facts that plausibly support that allegation. Antitrust injury "stems from a competition-

14  *reducing* aspect or effect of the defendant's behavior," *Atlantic Richfield v. USA Petroleum*, 495

15  U.S. 328, 344 (1990) (citations omitted) (emphasis in original), and "requires the plaintiff to have

16  suffered its injury in the market where competition is being restrained." *Am. Ad. Mgmt. v.*

17  *General Telephone Co. of California, et al.*, 190 F.3d 1051, 1057 (9th Cir. 1997). The "injury"

18  Power claims to have suffered – not being able to have its users access Facebook through the

19  Power website – is an injury caused by Power's refusal to comply with Facebook's Terms of Use.

20  That is not the kind of injury that the antitrust laws were designed to prevent. *See Brunswick*

21  *Corp. v. Pueblo Bowl-o- Mat, Inc.,* 429 U.S. 477 (1977). The allegations added in the Amended

22  Counterclaims and stressed by Power in its Opposition are merely other ways of saying that

23  Facebook seeks to enforce its Terms of Use and protect its intellectual property. Those actions do

24  not become antitrust violations nor supply the antitrust injury necessary for standing merely by

25  Power's bald assertion that they were designed to "stifle competition." There are still no facts

26  alleged that even hint at that purpose and certainly none that can plausibly be interpreted in that

27  way. As in *LiveUniverse, Inc. v. MySpace, Inc.*, No. CV 06-6994 AHM, 304 Fed. Appx. 554, 557

28  2008 U.S. App. LEXIS 27141 (9th Cir. Dec. 22, 2008), where plaintiff claimed that consumers

FACEBOOK'S REPLY ISO MOTION TO DISMISS
CASE NO. 08-5780 JF (HRL)

1    could not access its website through the MySpace site because of MySpace's policies, the "failure

2    to allege causal antitrust injury . . . serves as an independent basis for dismissal." [1]

3                **B.    POWER CANNOT STATE A CLAIM UNDER CALIFORNIA BUSINESS
                         AND PROFESSIONS CODE SECTION 17200**
4

5            If Power's antitrust claims fail, so do its unfair competition claims because a

6    "determination that the conduct is not an unreasonable restraint of trade necessarily implies that

7    the conduct is not 'unfair.'" *See Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001).

8    Facebook's opening brief cites other opinions, including some by this Court, that reach the same

9    conclusion. *See* Dkt. 58 at 8:19-28.  Power's Opposition brief does not deal with this precedent

10   and instead points to the broad reach of the UCL.  But that argument has been rejected time and

11   again. *See, e.g*., *Apple Inc. v. Psystar  Corp*., 586 F. Supp 2d 1190, 1204 (N.D. Cal. 2008) ("Apart

12   from its conclusory allegations regarding the 'sweeping nature of *section 17200*,' Psystar fails to

13   explain a relevant distinction in the standards.")

14           Power argues that "[a] business practice need not violate the antitrust law to be found an

15   'unfair competition practice' under 17200."  Dkt. 63 at 6: 10-13.  That is certainly true.  However,

16   *Chavez* makes it clear that where a party claims its opponent's actions violate the antitrust laws

17   but they do not, those same actions cannot be deemed "unfair" under 17200.  Power does not, and

18   cannot, deny that it challenges the same actions in both its antitrust and Section 17200 claims.

19           As discussed above, there is a separate and independent ground to dismiss Power's UCL

20   claim.  If Facebook is within its right to  "prevent. . . [Facebook]. . . users from porting their own

21   data to other websites," like Power.com, then  it cannot be unfair for Facebook to stop Power

22   from obtaining that data by violating Facebook's Terms of Use.[2]  Nor can it be unfair for

23   Facebook to enforce its Terms of Use against others attempting to do the same thing.  And finally,

24   it is not "unfair" for Facebook to have Terms of Use that are different from other websites.

25   _____

26   [1] Power's Opposition does not contain any argument or analysis directed at its attempted
     monopolization claim against Facebook.  The claim should be dismissed for the reasons set forth
     in Facebook's opening brief.  *See* Dkt. No. 58 at 7:24-8:4.
27   [2] Similarly, if Power's attempts to violate Facebook's Terms of Use also violate California Penal
     Code Section 502(c), then Facebook's efforts to curb those violations cannot possibly be deemed
28   an "unfair" business practice.  See Section II.B. below.

FACEBOOK'S REPLY ISO MOTION TO DISMISS
                                                                                      CASE NO. 08-5780 JF (HRL)

1    Actions do not become unfair merely because Power uses words like "scheme" and "stifle

2    competition" to describe them.

3          **C.    POWER'S AFFIRMATIVE DEFENSES SHOULD ONCE AGAIN BE
                    STRICKEN**
4

5          Power does not dispute that "affirmative defenses are governed by the same pleading

6    standard as complaints." *Quabon.com, Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049 (N.D.

7    Cal. 2004).  Despite that rule, Power has not made any factual allegations that would give rise to a

8    fair use or copyright misuse defense.  Accordingly, the Court should strike these affirmative

9    defenses as it did previously.

10         **1.    Power Has Provided No Facts to Support Its Fair Use Defense**

11         Power claims that it has provided "a detailed statement of its fair use defense."  Dkt. No.

12   63 at 8:1-28.  Power may have described its view of what the fair use doctrine should be, but its

13   description does not reflect how the fair use defense has been analyzed by any court.  A defendant

14   does not raise a cognizable fair use defense merely by asserting that its copying of plaintiff's

15   protectable expression was "ephemeral" or "momentary."  Dkt. 63 at 8:17-22 (citing Dkt. No. 54

16   ¶¶ 161- 64).  In other words, it is not a "fair use" just because it is a brief one.  The specific

17   elements of the fair use doctrine – the purpose and character of the use, the commercial nature of

18   the use, the nature of the copyrighted work, the amount and substantiality of the portion used in

19   relation to the copyrighted work, the amount and substantiality of the portion used in relation to

20   the copyrighted work as a whole or the effect of the use upon the potential market for or the value

21   of the copyrighted work – must be pled and supported by facts.  *See* Dkt. 58 at 11:8-16 (citing

22   *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 576-77 (1994)).[3]  Power has failed to meet this

23   standard.

24

25   ───────────────
     [3] *See also* Dkt. No. 38 at 6:15-19 ("Defendants correctly assert that Facebook does not have a
26   copyright on user content, which ultimately is the information that Defendants' software seeks to
     extract.  However, if Defendants first have to make a copy of user's entire Facebook profile page
27   in order to collect that user content, such action may violate Facebook's proprietary rights")
     (citing *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 204 (9th Cir. 1989)) (holding
28   that a collection of non-copyrighted material arranged in an original way is subject to copyright
     protection).

                                                            FACEBOOK'S REPLY ISO MOTION TO DISMISS
                                    -6-                         CASE NO. 08-5780 JF (HRL)

1

### 2.    Power's Copyright Misuse Defense Should Be Stricken.

2    The defense of copyright misuse is typically reserved for cases in which a copyright

3    holder licenses rights to a third-party on the condition that the third-party will not also use a

4    competitor's products. *See* Dkt. No. 58 at 10:1-15.  Indeed, both cases that Power relies upon in

5    asserting its defense involved license agreements. *See* Dkt. No. 63 at 9:2-6.  For instance, the

6    court in *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001), held that "most of

7    the cases that recognize the affirmative defense of copyright misuse involve unduly restrictive

8    licensing schemes" (citations omitted).  Similarly, the court in *Altera Corp. v. Clear Logic, Inc.*,

9    424 F.3d 1079, 1090 (9th Cir. 2005), dealt with allegations that Apple Computer had misused its

10   end user license agreements.  In the face of this precedent, Power has made a completely different

11   claim:  that Facebook has used its copyright "to restrict users ability to access their own content."

12   *Id*. at 10:1-3 (quoting Dkt. No. 54 ¶ 168). Power has provided no support for claiming that

13   Facebook's policies constitute copyright misuse.  This affirmative defense should be stricken.

14   **III.    THE COURT SHOULD NOT PERMIT ANOTHER AMENDMENT TO THE
         COUNTERCLAIMS.**

15

16   Power has already been granted one opportunity to amend its counterclaims and it should

17   not be given another chance.   Power may have added more words to its pleading, but its claim is

18   the same:  It does not want to comply with Facebook's Terms of Use.  That is not the basis for an

19   antitrust or unfair competition counterclaim.

20   Dated: January 29, 2010                        ORRICK, HERRINGTON & SUTCLIFFE LLP

21

22                                                  _____/s/ Jessica S. Pers_____
                                                    JESSICA S. PERS
                                                    Attorneys for Plaintiff
23                                                  FACEBOOK, INC.

24

25

26

27

28

FACEBOOK'S REPLY ISO MOTION TO DISMISS
CASE NO. 08-5780 JF (HRL)

1

## **CERTIFICATE OF SERVICE**

2

3

       I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 29, 2010.

4

5

Dated:  January 29, 2010                       Respectfully submitted,

6

7

                               /s/ Jessica S. Pers
                               JESSICA S. PERS

8

OHS West:260814384.6

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

FACEBOOK'S REPLY ISO MOTION TO DISMISS
CASE NO. 08-5780 JF (HRL)