LAW OFFICES OF SCOTT A. BURSOR
Scott A. Bursor (*pro hac vice*)
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 989-9113
Facsimile: (212) 989-9163

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik (State Bar No. 077785)
L. Timothy Fisher (State Bar No. 191626)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792

Attorneys for Defendants Power
Ventures, Inc. and Steve Vachani

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC.,<br><br>         Plaintiff,<br><br>-against-<br><br>POWER VENTURES, INC. d/b/a POWER.COM, a California corporation; POWER VENTURES, INC. a Cayman Island Corporation, STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, an individual and/or business entity of unknown nature; DOES 2 through 25, inclusive, individuals and/or business entities of unknown nature,<br><br>         Defendants. | Case No. 5:08-cv-05780 JF<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date: February 26, 2010<br>Time: 9:00 a.m.<br>Judge: Hon. Jeremy Fogel<br>Courtroom: 3 |

# TABLE OF CONTENTS

**PAGE(S)**

I. INTRODUCTION ................................................................................................................1

II. STATUTORY REQUIREMENTS FOR PRIVATE-LITIGANT
STANDING UNDER PENAL CODE § 502 ......................................................................2

III. FACEBOOK FAILED TO PRESENT EVIDENCE OF STANDING .................................5

    A. Facebook Presented No Evidence Of Injury ..........................................................6

    B. Facebook Presented No Evidence Of Any "Victim Expenditure" .........................7

        1. "Facebook was forced to retain outside counsel to investigate
Power's acts and to get Power to terminate its access" ..............................8

        2. "Facebook expended further resources meeting and
conferring with power and Mr. Vachani to determine the
nature of Power's access and the impact of that access on
Facebook's systems." ................................................................................10

        3. "Facebook was also required to expend resources to block
Power from further accessing Facebook's servers." .................................11

        4. "Power has admitted that it circumvented these blocks,
requiring even further actions and expenditures by Facebook
to verify that Power would not continue accessing or altering
Facebook's systems." ................................................................................12

        5. "Despite these blocking measures, Power admits that it
continued to 'provide[] [its] users with tools necessary to
access Facebook through Power.com.'" ....................................................13

    C. Facebook Presented No Evidence Of Causation ..................................................13

IV. CONCLUSION ..................................................................................................................14

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*In re R&T Roofing Structures & Commercial Framing, Inc.*, 887 F.2d 981 (9th Cir. 1989).............. 6

*Meyer v. Sprint Spectrum L.P.*, 45 Cal.4th 634 (2009) ...................................................................... 5

*Snake Rivers Farmers' Assn. v. Dept. of Labor*, 9 F.3d 792 (9th Cir. 1993) ...................................... 5

*T.W. Electrical Service v. Pacific Electrical Contractors Assn.*, 809 F.2d 626 (9th Cir. 1987) ......... 6

*Williams v. Boeing Co.*, 517 F.3d 1120 (9th Cir. 2008) ................................................................. 6, 8

**Statutes**

California Penal Code § 502.................................................................................................... passim

## I. INTRODUCTION

Power moved for summary judgment on Facebook's claim under California Penal Code § 502 on the ground that Facebook has no standing to assert a civil claim under that statute because Facebook did not suffer any "alteration, deletion, damage or destruction" of any computer or data, and because Facebook did not incur any expenditure to verify that it had not suffered such an injury. Facebook's responds in two ways.

<u>First</u>, Facebook argues that § 502(e) does not require a plaintiff to establish an injury or expenditure related to the plaintiff's computers or data. According to Facebook, a plaintiff can establish standing by showing that it made any "expenditure." *See* Facebook Oppn Br. at 1:17 (Docket Entry No. 66) ("502(e)(1) requires only that resources be expended.").[1] For the reasons explained in Part II below, Facebook's reading of the statute is far too broad. The statute means what is says: the prerequisite for private-litigant standing to assert a civil claim is an injury comprising "alteration, deletion, damage or destruction" of the plaintiff's computer or data, or an expenditure to verify whether such an injury occurred.

<u>Second</u>, Facebook argues that a hodgepodge of allegations from its complaint, liberally embellished, establish that Facebook made "expenditures" that qualify to establish standing under § 502. This is a new argument invented for the first time in the briefing on this motion. Facebook's complaint did not allege any expenditure of any kind. Instead, the sole injury alleged in Facebook's complaint was the supposed injury to Facebook's "reputation and goodwill" caused by users accessing their Facebook accounts through the Power browser. *See* First Amended Complaint ¶¶ 118-119. Facebook has apparently abandoned that theory – which clearly could not give rise to standing under § 502 – and has instead theorized a hodgepodge of abstract "expenditures." For example, Facebook contends that the "expenditures" it made to hire "outside counsel" to file this lawsuit qualify as "damage or loss" under the statute. *See* Facebook Oppn Br. at 9:11-12 (Docket No. 66) ("Facebook was forced to retain outside counsel to investigate Power's

---

[1] Facebook submitted a single brief (Docket Entry No. 66) as both a reply brief in support of its motion for summary judgment and an opposition brief to Power's motion for summary judgment. That brief is cited herein as "Facebook Oppn Br."

actions and to get Power to terminate its access."). If Facebook's argument were correct, plaintiffs could manufacture standing simply by hiring counsel to file a lawsuit. The statute, however, is clear that the only expenditures that give rise to "damage or loss" under § 502(e) are expenditures "reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, deleted, damaged, or destroyed by the [prohibited] access." Penal Code § 502(b)(9) and (e)(1). Facebook strains to characterize its hodgepodge allegations of theoretical "expenditures" to fit this mold. In doing so, Facebook is trying for force a square peg into a round hole. None of Facebook's alleged "expenditures" fit § 502's requirements.

What is most significant for purposes of this motion, however, is what Facebook did <u>not</u> do. Facebook did not submit any evidence in opposition to Power's summary judgment motion. This omission is fatal. Power's motion was supported by evidence that Facebook suffered no injury and made no expenditure as defined in the statute. *See generally*, Declaration Of Steve Vachani (Docket Entry No. 65). Facebook did not submit a declaration, or any other form of evidence, contesting these issues. Facebook did not, for example, submit a declaration from a Facebook employee, a Facebook user, or an independent expert, asserting that Facebook suffered any type of injury to its data or computers. Nor did Facebook submit any declaration, or any other evidence, concerning any "expenditure" it claims to have made. Instead, Facebook relied solely on the allegations in the pleadings. And at this stage, a party cannot avoid summary judgment merely by pointing to the allegations in the pleadings.

## II. STATUTORY REQUIREMENTS FOR PRIVATE-LITIGANT STANDING UNDER PENAL CODE § 502

Standing to assert a civil claim under § 502 is conferred only to "the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation." Penal Code § 502(e). The statute further defines the types of damage or loss recognized by the statute. Section 502(b)(8) provides a definition for "injury":

> "Injury" means any alteration, deletion, damage, or destruction of a computer system, computer network, computer program, or data caused by the access, or the denial of access, to legitimate users of a computer system, network, or program.

And § 502(b)(9) provides a definition for "victim expenditure":

> "Victim expenditure" means any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, deleted, damaged, or destroyed by the access.

A party asserting a private civil claim under § 502 must establish that it suffered "injury" to its data or computers, or that it made a "victim expenditure" to verify whether its data or computers suffered such an injury. This, Facebook has not done and cannot do.

Facebook does not attempt to show injury to its computers or data. Instead, Facebook contends that it made "expenditures" which qualify as "damage or loss" under § 502(e)(1). Facebook also contends that Power "misunderstands the aim and scope" of the statute. Facebook Oppn Br. at 2:2-3 (Docket Entry No. 66). According to Facebook, "502(e)(1) requires only that resources be expended, not that those resources meet Power's standards." Facebook Oppn Br. at 1:17-18 (Docket No. 66). Facebook is dead wrong on this point. The statute does not say that "any expenditure of resources" is sufficient to establish damage or loss under § 502(e)(1). On the contrary, § 502(e)(1) parrots the exact language of 502(b)(9) defining "victim expenditure:

> [T]he owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief. Compensatory damages shall include any *expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access* ...

Penal Code § 502(e)(1) (emphasis added). The italicized language in the foregoing quote from § 502(e)(1) is identical to the language in § 502(b)(9) defining "victim expenditure." The statute is clear: only parties who have suffered an "injury" or made a "victim expenditure" as defined, have standing to assert a private civil claim under § 502.

Facebook seeks to avoid the clear language of the statute by concocting a theory of "damage or loss" untethered from the language of § 502. *First*, Facebook asserts that the statutory definition of "injury" in § 502(b)(8) should not be considered in evaluating whether the plaintiff has established "damage or loss" under § 502(e)(1). *See* Facebook Oppn Br. at 4:2-4 (Docket

Entry No. 66) ("There is no statutory support for the proposition that 'injury' as defined in section 502(b)(8), should be imported into 502(e)(1) …."). Thus, Facebook implicitly concedes that it cannot show an "injury" as defined by § 502(b)(8), but contends that § 502(e)(1) recognizes other forms of "damage or loss" that do not constitute "injury."

One problem with Facebook's argument is that the terms "injury," "damage," and "loss" are, for the most part, synonymous. Even within § 502 itself, the term injury is defined by reference to "damage." *See* Penal Code § 502(b)(8) ("Injury means … damage …."). Furthermore, the terms "injury," "damage," and "loss" are widely recognized as synonyms in legal parlance. *See, e.g.*, Black's Law Dictionary at 389 (6th ed. 1990) (defining "Damage" as "*Loss, injury*, or deterioration, caused by the negligence, design, or accident of one person to another." (italics added); *id.* at 785 (defining "Injury" as "Any wrong or *damage* done to another, either in his person, rights, reputation, or property." (italics added); *id.* at 945 (defining "Loss" as "a generic and relative term … synonymous with, or equivalent to, '*damage*', 'damages', 'deprivation', 'detriment', '*injury*', and 'privation'" (italics added)). The suggestion that the standing requirements of § 502(e)(1) can be satisfied by some form of "damage or loss" that does not qualify as "injury" finds no support in the statute, or in any authority construing the statute, with one exception.

In addition to the statutorily defined "injury," there is only one other form of "damage or loss" recognized under § 502(e)(1). That is a "victim expenditure" as defined in § 502(b)(9), which definition is incorporated verbatim into § 502(e)(1). But the definition of a "victim expenditure is a narrow one. The statute has at least three requirements for an "expenditure" to qualify as a "victim expenditure" and hence "damage or loss":

1. The expenditure must be made for one of the statutorily defined purposes – "to verify that a computer system, computer network, computer program, or data was or was not altered, deleted, damaged, or destroyed by the access." Penal Code § 502(b)(9) and (e)(1).

2. The expenditure must be "reasonably and necessarily incurred." Penal Code § 502(b)(9) and (e)(1). And

      3.      The expenditure must be incurred "by reason of a violation" of § 502(c).  Penal Code § 502(e)(1).

Power's motion squarely challenged each of these three elements.  Facebook's opposition presents no evidence on any of these points.  Instead, Facebook argues that any expenditure will do, because "502(e)(1) requires only that resources be expended."  Facebook Oppn Br. at 1:17 (Docket Entry No. 66).  Facebook's argument that *any* expenditure will do cannot be squared with the plain language of the statute.[2]

### III.  FACEBOOK FAILED TO PRESENT EVIDENCE OF STANDING

Power's motion for summary judgment squarely challenged Facebook's standing to assert a civil claim under Penal Code § 502.  Power presented evidence specifically challenging three elements of standing.  <u>First</u>, Power presented evidence that Facebook had suffered no "alteration deletion or destruction to any of Facebook's data or computers," thus, Facebook suffered no injury cognizable under § 502(b)(8) and (e)(1).  *See* Vachani Decl. ¶¶ 10-12.  <u>Second</u>, Power presented evidence that Facebook had no cause to, and did not, "make any expenditure to verify that its computers or data had not been altered, deleted, damaged, or destroyed."  Vachani Decl. ¶ 12.  Thus, Facebook did not make a "victim expenditure" as defined in § 502(b)(9) and (e)(1).  <u>Third</u>, Power presented evidence that that there was no causal link between Power's actions and any injury to or victim expenditure by Facebook.  *See* Vachani Decl. ¶¶ 10-13 (explaining that Power's browser "does not provide any capability to cause the alteration, deletion, damage or destruction of a computer system").  Thus, Facebook could not show that it suffered any damage or loss "by reason of" Power's conduct.  Penal Code § 502(e)(1).

When Power presented this evidence, the burden shifted to Facebook to present evidence to raise a triable issue of fact on each element of standing.  *See, e.g.*, *Snake Rivers Farmers' Assn. v. Dept. of Labor*, 9 F.3d 792, 795 (9th Cir. 1993) ("A defendant's violation of a statutory duty is not

---

[2] *Cf. Meyer v. Sprint Spectrum L.P.*, 200 P.3d 295, 299, 45 Cal.4th 634, 641 (2009) ("If the Legislature had intended to equate 'any damage' with being subject to an unlawful practice by itself, it presumably would have omitted the causal link between 'any damage' and the unlawful practice, and instead would have provided something like 'any consumer who is subject to a method, act, or practice declared to be unlawful by Section 1770 may bring an action' under the CLRA.").

enough …. The party invoking federal jurisdiction bears the burden of establishing standing, and in response to a summary judgment motion must provide cognizable evidence of specific facts, not mere allegations."); *T.W. Electrical Service v. Pacific Electrical Contractors Assn.*, 809 F.2d 626, 630 (9th Cir. 1987) ("If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleading in order to preclude summary judgment."); *in re R&T Roofing Structures & Commercial Framing, Inc.*, 887 F.2d 981, 988 (9th Cir. 1989) (same); *Williams v. Boeing Co.*, 517 F.3d 1120, 1128 (9th Cir. 2008) ("Each element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation. On a summary judgment motion challenging standing a plaintiff may not rest on mere allegations, but must set forth by affidavit or other evidence specific facts that demonstrate standing." (internal quotation marks and citations omitted)).

These authorities make clear that a plaintiff facing a summary judgment motion challenging its standing to sue "may not rely on the mere allegations in the pleading." *T.W. Electrical Service*, 809 F.3d at 630. But that is exactly what Facebook has done. Facebook submitted no evidence at all, and continues to rely entirely on the unsupported allegations in its pleading.

### A. Facebook Presented No Evidence Of Injury

Penal Code § 502 defines injury as "any alteration, deletion, damage, or destruction of a computer system, computer network, computer program, or data caused by the access, or the denial of access, to legitimate users of a computer system, network, or program." Penal Code § 502(b)(8). The evidence submitted with Power's motion showed that Facebook did not and could not possibly have suffered any such injury. *See* Vachani Decl. ¶ 7 ("Facebook does not allege that any data, any software, or any computer owned by Facebook has been damaged in any way by users accessing their accounts through the Power browser – and in fact no such damage has occurred.") (Docket Entry No. 65); *id.* ¶ 11 ("I am not aware of any instance in which use of the Power browser caused any alteration, damage, deletion or destruction to any of Facebook's data or

computers. That did not happen and could not have happened."). Facebook submitted no evidence of injury, and does not dispute these facts in its brief. Instead, Facebook argues that certain "expenditures" it claims to have made qualify as a form of "damage or loss" under § 502(e)(1) despite the lack of any injury under § 502(b)(8).

### B. Facebook Presented No Evidence Of Any "Victim Expenditure"

That statutory language defining a "victim expenditure" under § 502(b)(9) is identical to the language in § 502(e)(1) defining the type of "expenditure" that would qualify as "damage or loss":

> any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, deleted, damaged, or destroyed by the access.

Facebook presented no evidence that it made such an expenditure, let alone that such expenditure was reasonable or necessary.

Instead of presenting evidence, Facebook instead scraped allegations from the pleadings, then embellished liberally to try to cook up something to characterize as a "victim expenditure." The fruits of those labors are presented at page 4, lines 5-14 of Facebook's opposition brief (Docket Entry No. 66):

> "As explained in greater detail below, Facebook reasonably and necessarily expended resources **[i]** investigating Power's unlawful access to its servers, **[ii]** blocking that access, **[iii]** conferring with Power and Mr. Vachani to determine why they were impermissibly scraping data from Facebook's servers, **[iv]** hiring outside counsel to get Power to stop their access, **[v]** investigating Power's subsequent circumvention of its technological blocking measures, as well as **[vi]** re-blocking Power's access to Facebook.

Facebook follows this listing with the assertion that "All of these expenditures qualify as damage or loss under Section 502(e)(1)." Facebook Oppn at 4:14-15. But none of them do. Not one of these six items has anything to do with "verify[ing] that a computer system, computer network, computer program, or data was or was not altered, deleted, damaged, or destroyed." Furthermore, Facebook presents no evidence that it did any of these things, let alone made an expenditure relating to any of these things, let alone that such expenditure was reasonable or necessary. Facebook presented no evidence at all.

The foregoing passage from page 4 of Facebook's brief promises "greater detail below." The only further discussion of the matter is found at page 9, lines 9 through 20 of Facebook's brief (Docket No. 66):

> "The record demonstrates that Facebook has reasonably and necessarily expended resources verifying, investigating and counteracting the impact of Power's unlawful access to its servers. For instance, **[1]** Facebook was forced to retain outside counsel to investigate Power's acts and to get Power to terminate its access. Dkt. No. 9 ¶ 57; Dkt. No. 54 ¶ 57. **[2]** Facebook expended further resources meeting and conferring with Power and Mr. Vachani to determine the nature of Power's access and the impact of that access on Facebook's systems. *Id.* ¶¶ 57-58, 60. **[3]** Facebook was also required to expend resources to block Power from further accessing Facebook's servers. *See* Dkt. 54 ¶¶ 63 and 64. **[4]** Power has admitted that it circumvented these blocks, requiring even further actions and expenditures by Facebook to verify that Power would not continue accessing or altering Facebook's systems. *Id.* ¶ 63 ("Defendants admit that Facebook implemented technical measures to block users from accessing Facebook through Power.com"). **[5]** Despite these blocking measures, Power admits that it continued to 'provide[] [its] users with tools necessary to access Facebook through Power.com.' *Id.* ¶ 64."

Again, the "greater detail" provided in this passage of Facebook's brief does not include a shred of evidence. Instead, Facebook relies entirely on the allegations in the pleadings, providing citations only to its own complaint and to Power's answer. *See Williams v. Boeing Co.*, 517 F.3d at 1128 (9th Cir. 2008) ("On a summary judgment motion challenging standing a plaintiff may not rest on mere allegations, but must set forth by affidavit or other evidence specific facts that demonstrate standing.").

And again, none of the purported "expenditures" described has anything to do with "verify[ing] that a computer system, computer network, computer program, or data was or was not altered, deleted, damaged, or destroyed." Penal Code § 502(b)(9) and (e)(1). We address each in detail below.

    **1.** <u>**"Facebook was forced to retain outside counsel to investigate Power's acts and to get Power to terminate its access"**</u>

Facebook's brief at 9:11-12 (Docket No. 66) asserts that "Facebook was forced to retain outside counsel to investigate Power's actions and to get Power to terminate its access." To support this contention, Facebook cites ¶ 57 of its Amended Complaint (Docket No. 9):

> 57. Facebook notified Defendant Vachani on December 1, 2008, that Power.com's access of Facebook's website and servers was unauthorized and violated Facebook's rights, including Facebook's trademark, copyrights, and business expectations with its users.

and ¶ 57 of Power's Amended Answer (Docket No. 54):

> 57. Defendants deny the allegations in ¶ 57, except that Defendants admit that Facebook has communicated such claims to Mr. Vachani.

These pleadings show that Facebook contacted Mr. Vachani and communicated certain claims to him. Nothing more. Power's admission that Facebook communicated these claims to Mr. Vachani does not evidence an expenditure to verify that Facebook's "computer system, computer network, computer program, or data was or was not altered, deleted, damaged, or destroyed." Penal Code § 502(b)(9) and (e)(1). Indeed, Power presented evidence, in the form of the Vachani declaration, explaining that Facebook "had no cause for such concern," and "in its communications with [Vachani], Facebook never suggested any concern that its computers or data had been altered, deleted, damaged, or destroyed." Vachani Decl. ¶ 12 (Docket Entry No. 65). Mr. Vachani also states: "Since there was no cause for concern, Facebook did not, to my knowledge, make any expenditure to verify that its computers or data had not been altered, deleted, damaged or destroyed." *Id.*

To the extent it is possible to prove a negative, Power and Mr. Vachani presented evidence that Facebook did *not* undertake any investigation or make any expenditure "to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." Penal Code § 502(b)(9) and (e)(1). That shifted the burden to Facebook to present *evidence* to raise a triable issue of fact that it made such an expenditure. But Facebook stood pat and merely pointed to ¶ 57 of the pleadings, which establish nothing beyond the fact that Facebook communicated its arguments to Mr. Vachani.

Furthermore, the statement in Facebook's brief that it was "forced to retain outside counsel to investigate" is not supported by ¶ 57 of the pleadings. Even if one could stretch the pleadings to infer an "investigation" of some sort, there is only one type of "investigation" that would qualify as a victim expenditure under § 502: an investigation "reasonably and necessarily incurred … to verify that a computer system, computer network, computer program, or data was or was not

altered, damaged, or deleted by the access." Penal Code § 502(b)(9) and (e)(1). That type of investigation would be done by a computer technician. It is not the type of investigation ordinarily performed by "outside counsel."

To the extent that Facebook contends that hiring counsel to file a lawsuit is a "victim expenditure" qualifying as "damage or loss" under § 502(e)(1), that cannot possibly be correct. In addition to violating the plain language of the statute, that argument would render the standing requirement a nullity, because every plaintiff will have made an "expenditure" of some sort to get a lawsuit filed.

### 2. "Facebook expended further resources meeting and conferring with power and Mr. Vachani to determine the nature of Power's access and the impact of that access on Facebook's systems."

Facebook's brief at 9:12-14 (Docket No. 66) asserts that "Facebook expended further resources meeting and conferring with power and Mr. Vachani to determine the nature of Power's access and the impact of that access on Facebook's systems." To support this assertion, Facebook cites ¶¶ 57-58, and 60 of the Power's answer (Docket No. 54):

> 57. Defendants deny the allegations in ¶ 57, except that Defendants admit that Facebook has communicated such claims to Mr. Vachani.
>
> 58. Defendants deny the allegations in ¶ 58, except that Defendants admit that Vachani offered to attempt to integrate Power.com with Facebook Connect.
>
> 60. Defendants deny the allegations in ¶ 60, except that Defendants admit that Vachani communicated concerns about Power's ability to integrate Power.com with Facebook Connect on the schedule that Facebook was demanding.

These paragraphs establish that Facebook communicated its legal arguments to Mr. Vachani (¶ 57), that Mr. Vachani offered to attempt to integrate Power.com with Facebook Connect (¶ 58), then communicated concerns about Power's ability to do so on the schedule Facebook was demanding (¶ 60). There is nothing here about any expenditure "reasonably and necessarily incurred … to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." Cal. Penal Code § 502(b)(9) and (e)(1). Every verb in the statute – "was or was not," "altered," "damaged," "deleted" – is expressed

in the past tense.  Meeting and conferring about a future method of integration has nothing to do with verifying whether past access has caused those effects.  Furthermore, Mr. Vachani's declaration, which is unrebutted, states that there were no communications whatsoever concerning these issues.  *See* Vachani Decl. ¶ 12 ("Facebook … had no cause for such concern.  In its communications with me, Facebook never suggested any concern that its computers or data had been altered, deleted, damaged, or destroyed.") (Docket Entry No. 65).

### 3. "Facebook was also required to expend resources to block Power from further accessing Facebook's servers."

Facebook's brief at 9:15-16 (Docket No. 66) asserts that "Facebook was also required to expend resources to block Power from further accessing Facebook's servers."  To support that contention, Facebook cites ¶¶ 63 and 64 of Power's Amended Answer (Docket No. 54), which state:

> 63.  Defendants deny the allegations in ¶ 63, except that Defendants admit that Facebook implemented technical measures to block users from accessing Facebook through Power.com.
>
> 64.  Defendants deny the allegations in ¶ 64, except that Defendants admit that Power provided users with tools necessary to access Facebook through Power.com.

These portions of the pleadings do not establish any "expenditure" by Facebook, let alone one that would qualify as a victim expenditure under § 502(b)(9) and (e)(1).  Note, again, that every verb in the statute – "was or was not," "altered," "damaged," "deleted" – is expressed in the past tense.  Expenditures allegedly made to prevent further access simply do not fall within the purview of the statute.

Power specifically addressed this point with *evidence*.  Mr. Vachani's declaration explains that whatever efforts were made to block Power's access were *de minimis*.  *See* Vachani Decl. ¶ 9 ("The 'expenditure' … would involve, essentially, a few clicks of a mouse to access the IP blocking feature of the web host, and ten keystrokes to enter Power.com's IP address among those to be blocked.") (Docket Entry No. 65).  Power also presented evidence that whatever minimal "resources" were "expended" on such blocking would not qualify as a victim expenditure under

§ 502 because the purpose for such "expenditure" has "nothing to do" with the verification described by § 502(b)(9) and (e)(1):

> "Facebook's decision to block Power's IP address was in no sense a 'reasonable' or 'necessary' measure to verify that the Facebook computers or data had not been altered, deleted, damaged or destroyed. Facebook had no need for such verification, and IP blocking has nothing to do with such verification.

Vachani Decl. ¶ 13 (emphasis added).

On this point, Facebook's response again presents no evidence whatsoever. Facebook does not dispute the *de minimis* nature of its blocking efforts, but argues that "there is no requirement that expenditures must be 'big' to satisfy the statute." Facebook Oppn Br. at 10:7 (Docket Entry No. 66). Nevertheless, regardless of the size of the expenditure, there *is* are requirement that it be "reasonably and necessarily incurred … to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." Cal. Penal Code § 502(b)(9) and (e)(1). And on this point, Facebook's response is mum. Power presented evidence that Facebook's blocking expenditures did not serve such purpose, and were not reasonably or necessarily incurred. *See* Vachani Decl. ¶ 13. And Power's evidence on these points is unrebutted.

### 4. "Power has admitted that it circumvented these blocks, requiring even further actions and expenditures by Facebook to verify that Power would not continue accessing or altering Facebook's systems."

Facebook's brief at 9:16-18 (Docket No. 66) asserts that "Power has admitted that it circumvented these blocks, requiring even further actions and expenditures by Facebook to verify that Power would not continue accessing or altering Facebook's systems." To support that contention, Facebook cites ¶ 63 of Power's Amended Answer (Docket No. 54), which is quoted above. This is essentially just a restatement of Facebook's argument characterizing attempts to block Power's IP address as a "victim expenditure" under § 502. It fails for the same reasons explained in Part III.B.3 above, detailing why expenditures to block future access do not fall within the purview of § 502.

### 5. "Despite these blocking measures, Power admits that it continued to 'provide[] [its] users with tools necessary to access Facebook through Power.com.'"

Facebook's brief at 9:20-21 (Docket No. 66) asserts that "Despite these blocking measures, Power admits that it continued to 'provide[] [its] users with tools necessary to access Facebook through Power.com.'" To support that contention, Facebook cites ¶ 64 of Power's Amended Answer (Docket No. 54), which is quoted above. Facebook again offers no evidence on this point. In any event, the allegation that Power circumvented Facebook's blocking is *not* an allegation about an expenditure by Facebook. It is an allegation about *Power's* conduct. Part III.B.3 above, explains that expenditures made to block access do not qualify as a "victim expenditure" under § 502. So too, allegations about circumvention of those blocks have nothing to do with any expenditure "reasonably and necessarily incurred … to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." Cal. Penal Code § 502(b)(9) and (e)(1).

### C. Facebook Presented No Evidence Of Causation

Power's motion also squarely challenged Facebook's failure to present evidence of causation. Power's brief in opposition to Facebook's summary judgment motion had a section headed "Facebook Has Not Met Its Burden To Establish Causation," Power Br. Part III.B.5 (Docket Entry No. 64):

> "Even if Facebook had met its burden to show an injury or a victim expenditure cognizable under § 502 – and Facebook has not met that burden – that alone would not be enough. Facebook must also show that such injury or victim expenditure was caused 'by reason of' defendants' alleged violation. Cal. Penal Code § 502(e)(1). Facebook's claim fails in this respect as well. Facebook has neither alleged nor submitted evidence of any causal link between Power's actions and any injury to or victim expenditure by Facebook."

*Id.* at 9:23-10:2. That argument was incorporated by reference into Power's motion for summary judgment. Power SJ Br. at 2:2-8 (Docket Entry No. 62). Power also presented evidence negating the element of causation. *See* Vachani Decl. ¶ 11 ("I am not aware of any instance in which use of the Power browser caused any alteration, damage, deletion or destruction to any of Facebook's data or computers. That did not happen and could not have happened.").

To the extent it is possible to prove a negative – *i.e.*, no causation – Power has submitted evidence negating that element. That shifted the burden to Facebook to present evidence of an injury or victim expenditure caused "by reason of" Power's conduct. But again, Facebook presented no evidence whatsoever. Indeed, on the issue of causation, Facebook does not present evidence or argument. The issue is completely overlooked in Facebook's papers.

## IV.  CONCLUSION

For the foregoing reasons, there are no triable issues of fact concerning Facebook's lack of standing to assert a claim under Penal Code § 502, and Power's motion for summary judgment should be granted.

Dated:  February 9, 2010

Respectfully submitted,

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP


By_____/s/_____
        L. Timothy Fisher

Alan R. Plutzik (State Bar No. 77785)
L. Timothy Fisher (State Bar No. 191626)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA  94598
Telephone:  (925) 945-0200
Facsimile:  (925) 945-8792

LAW OFFICES OF SCOTT A. BURSOR
Scott A. Bursor (*pro hac vice*)
369 Lexington Avenue, 10th Floor
New York, NY  10017-6531
Telephone:  (212) 989-9113
Facsimile:   (212) 989-9163

Attorneys for Defendants Power Ventures, Inc. and Steve Vachani