LAW OFFICES OF SCOTT A. BURSOR
Scott A. Bursor (*pro hac vice*)
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 989-9113
Facsimile: (212) 989-9163

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik (State Bar No. 077785)
L. Timothy Fisher (State Bar No. 191626)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792

Attorneys for Defendants Power
Ventures, Inc. and Steve Vachani

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC.,<br><br>                                    Plaintiff,<br><br>-against-<br><br>POWER VENTURES, INC. d/b/a POWER.COM, a California corporation; POWER VENTURES, INC. a Cayman Island Corporation, STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, an individual and/or business entity of unknown nature; DOES 2 through 25, inclusive, individuals and/or business entities of unknown nature,<br><br>                                    Defendants. | Case No. 5:08-cv-05780 (JF)<br><br>**DEFENDANTS' CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO FACEBOOK INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C) OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT OF LIABILITY UNDER CALIFORNIA PENAL CODE § 502(c)**<br><br>Date: February 26, 2010<br>Time: 9:00 a.m.<br>Judge: Hon. Jeremy D. Fogel<br>Courtroom: 3 |

DEFENDANTS' CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO FACEBOOK INC.'S MOTION FOR
JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 (JF)

Dockets.Justia.com

# TABLE OF CONTENTS

**PAGE(S)**

I. INTRODUCTION ........................................................................................................................1

II. APPLICABLE LEGAL STANDARDS ....................................................................................3

    A. The Rule 12(c) Judgment On The Pleadings Standard ...............................................3

    B. The Rule 56 Summary Judgment Standard ................................................................4

III. ARGUMENT ............................................................................................................................5

    A. Facebook Has Not Met Its Burden To Establish Standing To Sue Under Penal Code § 502 .................................................................................................5

        1. The Only "Injury" Alleged Is To "Facebook's Reputation And Goodwill" ..............................................................................................................5

        2. Facebook Submitted No Evidence Of Injury ................................................5

        3. Facebook Has Not Met Its Burden To Establish "Injury" As Defined By § 502(b)(8) ..................................................................................6

        4. Facebook Has Not Met Its Burden To Establish A "Victim Expenditure" As Defined By § 502(b)(9) .........................................................6

        5. Facebook Has Not Met Its Burden To Establish Causation ..........................9

    B. Facebook Has Not Met Its Burden To Establish A Violation Of Penal Code § 502(c)(1)................................................................................................10

    C. Facebook Has Not Met Its Burden To Establish A Violation Of Penal Code § 502(c)(2)-(4) or § 502(c)(7) ...........................................................13

    D. Power Has Raised Triable Issues Of Fact Concerning Its Affirmative Defenses ...........................................................................................................13

IV. CONCLUSION .......................................................................................................................13

DEFENDANTS' CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO FACEBOOK INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 (JF)

i

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Cetacean Cmty. v. Bush*, 386 F.3d 1169 (9th Cir. 2004) ................................................................ 2

*Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297 (9th Cir. 1982) ................................................ 3

*Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992) ................................ 4

*Facebook Inc. v. ConnectU LLC*, 489 F.Supp.2d 1087 (N.D. Cal. 2007) ................................. 1, 11

*Fonteno v. Upjohn*, 780 F.2d 1190 (5th Cir. 1986) ........................................................................ 4

*Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542 (9th Cir. 1990) ........................ 3, 5, 11

*Laster v. T-Mobile USA, Inc.*, 2009 WL 4842801 (C.D. Cal. Dec. 14, 2009) ................................ 2

*Nelson v. City of Davis*, 571 F.3d 924 (9th Cir. 2009) ................................................................... 4

*Nissan Fire & Marine Ins. Co. v. Fritz*, 210 F.3d 1099 (9th Cir. 2000) ......................................... 4

*People v. Hawkins*, 98 Cal.App.4th 1428 (2002) ......................................................................... 12

*Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F.Supp.2d 1121
   (W.D. Wash. 2000), ................................................................................................................ 8, 9

*T. W. Electrical Services, Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626
   (9th Cir. 1987) ............................................................................................................................ 4

*United States v. Diebold*, 369 U.S. 654 (1962) ............................................................................. 4

*United States v. Perry*, 431 F.2d 1020 (9th Cir. 1970) .................................................................. 4

**Statutes**

17 U.S.C. § 107 ............................................................................................................................. 13

17 U.S.C. § 301(a) ........................................................................................................................ 13

California Penal Code § 501 .................................................................................................. passim

California Penal Code § 502 .................................................................................................. passim

Fed. R. Civ. P. 12(c) ................................................................................................................... 1, 3

Fed. R. Civ. P. 56(c) ....................................................................................................................... 4

Fed. R. Evid. 402 ............................................................................................................................ 6

Fed. R. Evid. 403 ............................................................................................................................ 6

Fed. R. Evid. 407 ............................................................................................................................ 6

Fed. R. Evid. 408 ............................................................................................................................ 6

DEFENDANTS' CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO FACEBOOK INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 (JF)

ii

Defendants Power Ventures, Inc. and Steve Vachani (hereafter collectively referred to as "Defendants" or "Power") respectfully submit this Memorandum Of Law In Opposition To Facebook Inc.'s Motion For Judgment On The Pleadings Pursuant To Fed. R. Civ. P. 12(c) Or, In The Alternative, Partial Summary Judgment Of Liability Under California Penal Code § 502(c).

## I. INTRODUCTION

Facebook seeks judgment on a single claim, Count 3 of Facebook's First Amended Complaint, a novel civil claim under a state criminal statute, California Penal Code § 502. This claim is based on the fact that, during a roughly two-month period, from December 2008 through January 2009, Power offered Facebook users a different and potentially superior browser through which they could access their Facebook accounts to copy, update, and/or port their own "User Content." This "User Content" includes photos, profiles, messages, notes, text, information, music, video, advertisements, listings, and other content that users upload, publish or display on the Facebook site. *See* Amended Answer at 7:3-6. Facebook owns no copyright to such User Content. *Id.* at 7:6-7. Indeed, Facebook's Terms of Use expressly state that "Facebook does not assert any ownership over your User Content." *Id.* at 7:7-8.

Though Facebook "does not assert any ownership" over this User Content, Facebook does attempt to prevent users from copying it – to make it difficult for users to port their User Content to other websites. *See* Vachani Decl. ¶ 2. This gives Facebook an unfair competitive advantage because users will be less likely to join a new social networking website if the user is unable to port his contacts and other User Content without laboriously re-typing and/or re-uploading each item. *See id.* ¶ 3. Thus, even if Power offers new technology that is superior to Facebook, a user is not likely to migrate to that new technology if doing so would require, for example, re-typing hundreds of entries in an address book stored in the user's Facebook account. *See id.* ¶ 4. So, while Facebook "does not assert any ownership" over the user's address book, Facebook does employ a variety of measures to make it very difficult to copy it. *See id.*

Power's browser provides users with utilities that allow them to copy their own User Content for purposes of updating it and making it portable to other sites – without copying other elements of the Facebook website. *See id.* ¶ 5; Amended Answer at 7:12-15. Facebook does not

1   allege that Power has copied any element of the Facebook website that is subject to a copyright

2   owned by Facebook – and in fact Power has not done so.  *See* Vachani Decl. ¶ 6; Amended Answer

3   at 7:15-16.  Facebook does not allege that any data, any software, or any computer owned by

4   Facebook has been damaged in any way by users accessing their accounts through the Power

5   browser – and in fact no such damage has occurred.  *See* Vachani Decl. ¶¶ 7, 11.

6          The sole injury alleged in Facebook's complaint is the supposed injury to Facebook's

7   "reputation and goodwill" caused by users accessing their Facebook accounts through the Power

8   browser.  *See* First Amended Complaint ¶ 119.  Facebook has submitted no evidence of that (or

9   any other) injury in support of this motion.  ***Most importantly, Facebook has neither alleged nor***

10  ***submitted evidence that it has suffered any injury to its data, software or computers.***

11         A plaintiff attempting to state a claim for violation of a statute must plead and prove the

12  statute in question grants a right to sue.  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir.

13  2004); *Laster v. T-Mobile USA, Inc.*, 2009 WL 4842801 (C.D. Cal. Dec. 14, 2009).  Having

14  suffered no injury to its data, software or computers, Facebook cannot establish standing to assert a

15  claim under Penal Code § 502.  This criminal statute creates a private right of action only in very

16  limited circumstances.  Standing to assert a civil claim under § 502 is conferred only to "the owner

17  or lessee of the computer, computer system, computer network, computer program, or data who

18  suffers damage or loss by reason of a violation."  Penal Code § 502(e).  The statute further defines

19  the types of damage or loss recognized by the statute.  Section 502(b)(8) provides a definition for

20  "injury":

21>      "Injury" means any alteration, deletion, damage, or destruction of a
        computer system, computer network, computer program, or data
22>     caused by the access, or the denial of access, to legitimate users of a
        computer system, network, or program.
23
    And § 502(b)(9) provides a definition for "victim expenditure":
24
25>     "Victim expenditure" means any expenditure reasonably and
        necessarily incurred by the owner or lessee to verify that a computer
        system, computer network, computer program, or data was or was
26>     not altered, deleted, damaged, or destroyed by the access.

27

28

DEFENDANTS' CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO FACEBOOK INC.'S MOTION
FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 (JF)

2

1 A party asserting a private civil claim under § 502 must establish that it suffered "injury" to its data
2 or computers, or that it made a "victim expenditure" to verify whether its data or computers
3 suffered such an injury.

4 This, Facebook cannot do. Having suffered no injury to its data or computers, the best
5 allegation Facebook could muster is unspecified harm to its "reputation and goodwill." *See* First
6 Amended Complaint ¶ 119. Power denies that such harm occurred. But regardless, that issue is
7 immaterial because harm to "reputation and goodwill" simply is not cognizable under § 502. A
8 party cannot establish standing to assert a civil claim under § 502 based on alleged harm to its
9 "reputation and goodwill."

10 Having suffered no injury to its data or computers, Facebook has no right to assert any
11 claim under § 502. The claim also fails because Facebook has not pled or proved a violation of the
12 elements of the statute. Finally, even if Facebook could establish its standing and the elements of a
13 violation, Power has raised triable issues concerning the defenses of fair use, copyright misuse, and
14 federal preemption.

## II.  APPLICABLE LEGAL STANDARDS

### A.  The Rule 12(c) Judgment On The Pleadings Standard

17 For purposes of Facebook's motion for judgment on the pleadings under Fed. R. Civ. P.
18 12(c), the allegations of the non-moving party (Power) must be accepted as true, while the
19 allegations of the moving party (Facebook) which have been denied are assumed to be false. *Hal*
20 *Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990) ("[T]he allegations of
21 the non-moving party must be accepted as true, while the allegations of the moving party which
22 have been denied are assumed to be false."). Judgment on the pleadings is proper only when the
23 moving party clearly establishes on the face of the pleadings that no material issue of fact remains
24 to be resolved and that it is entitled to judgment as a matter of law. *Id.* However, judgment on the
25 pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a
26 proceeding must properly be treated as a motion for summary judgment. Fed. R. Civ. P. 12(c); *cf.*
27 *Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297, 1301 (9th Cir. 1982) (discussing Fed. R. Civ. P.
28 12(b)(6)), *cert. denied*, 467 U.S. 1251, 104 S. Ct. 3533, 82 L. Ed. 2d 838 (1984).

DEFENDANTS' CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO FACEBOOK INC.'S MOTION
FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 (JF)

3

### B. The Rule 56 Summary Judgment Standard

Summary judgment is appropriate where "there is no issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz*, 210 F.3d 1099, 1102 (9th Cir. 2000), *citing* 10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2727 (3d ed. 1998).

To meet its burden of production, Facebook must produce evidence of every factual element of its claim, and also must demonstrate that there is no genuine issue as to any of those facts. *See Fonteno v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (holding when a plaintiff moves for summary judgment on an issue upon which he bears the burden of proof, "he must establish beyond peradventure all of the essential elements of the claim to warrant judgment in his favor"). The court must accept all of the nonmoving party's direct evidence as true. *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 457, 112 S.Ct. 2072, 2077 (1992). The "district court has the responsibility to construe all facts in the light most favorable to the non-moving party." *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009). All ambiguities or questions of credibility are to be resolved against the moving party. *United States v. Diebold*, 369 U.S. 654 (1962). "[I]f a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *T. W. Electrical Services, Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). Even where the underlying facts are undisputed, "[s]ummary judgment should not be granted where contradictory inferences may be drawn from undisputed evidentiary facts." *United States v. Perry*, 431 F.2d 1020, 1022 (9th Cir. 1970).

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything … [and] may defeat the motion for summary judgment without producing anything. *Nissan Fire*, 210 F.3d at 1102. If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id.*

DEFENDANTS' CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO FACEBOOK INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 (JF)

4

### III. ARGUMENT

**A. Facebook Has Not Met Its Burden To Establish Standing To Sue Under Penal Code § 502**

**1. The Only "Injury" Alleged Is To "Facebook's Reputation And Goodwill"**

Facebook's First Amended Complaint (Docket Entry No. 9) (hereafter, "Complaint") does not assert any form of injury or victim expenditure cognizable under § 502. Facebook's allegations of injury supporting the § 502 claim are set forth at ¶¶ 118-119:

> 118. Facebook suffered and continues to suffer damage as a result of Defendants' violations of the California Penal Code § 502 identified above.
>
> 119. Defendants' conduct also caused irreparable and incalculable harm and injuries to Facebook (including but not limited to, Facebook's reputation and goodwill), and, unless enjoined, will cause further irreparable and incalculable injury, for which Facebook has no adequate remedy at law.

Facebook's allegations are heavy with adjectives, but light on facts. Facebook's injuries are said to be "irreparable" and "incalculable," but there is no description of exactly what those injuries might be – with one possible exception. The only type of injury that is alluded to in the Complaint is the purported harm to "Facebook's reputation and goodwill." Although, again, there is no indication as to exactly what harm is alleged to have befallen "Facebook's reputation and goodwill." Power's answer denies the allegations of ¶¶ 118-119. (*See* Amended Answer, Docket Entry No. 54, at ¶¶ 118-119.) Thus, so far as Facebook's motion for judgment on the pleadings under Rule 12(c) is concerned, Facebook's allegations must be assumed false. *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990) ("[T]he allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false.").

**2. Facebook Submitted No Evidence Of Injury**

Facebook's motion does not include any evidence of injury. The only evidence submitted with Facebook's motion is the Declaration of Julio C. Avalos (Docket Entry No. 57), one of Facebook's lawyers, attaching settlement communications between Facebook's counsel and Mr. Vachani, who was, at the time of the correspondence, an unrepresented party. The settlement

DEFENDANTS' CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO FACEBOOK INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 (JF)

5

correspondence does not establish or evidence any injury to Facebook, and the purpose for which it was submitted is unclear.[1]

### 3. Facebook Has Not Met Its Burden To Establish "Injury" As Defined By § 502(b)(8)

Facebook has not alleged any "alteration, deletion, damage, or destruction" of any computer or data owned by Facebook. *See* Cal. Penal Code § 502(b)(8). Nor has Facebook alleged any "denial of service" to legitimate users. *See id.* Nor has Facebook submitted any evidence of such injuries. Thus Facebook has not met its burden to establish an "injury" as defined by Penal Code § 502(b)(8).

### 4. Facebook Has Not Met Its Burden To Establish A "Victim Expenditure" As Defined By § 502(b)(9)

Facebook also failed to allege or to submit evidence that it has made a "victim expenditure" as defined by § 502(b)(9). Facebook contends it "has been forced to commit corporate resources to deal with the repeated attacks by Power," in that Facebook "implemented technical measures to block users from accessing Facebook through Power.com." Facebook Mot. at 8:1-5. But there is no evidence of any expenditure made for these purposes. And if such expenditures were made, they still would not qualify as "victim expenditures" under the statute.

First, consider what happened to the Facebook website. The pleadings establish that Facebook users accessed their own Facebook accounts and their own User Content through the Power browser. Nothing more. There is no allegation, let alone evidence, that any "computer system, computer network, computer program, or data was … altered, deleted, damaged, or destroyed by the access." Penal Code § 502(b)(9).

Facebook's characterization of these actions as "cyber attacks" is hyperbole. *See* Facebook Mot. at 3:16 ("cyber-attack"); *id.* at 8:2 ("repeated attacks by Power"); *id.* at 8:11 ("Power's attacks"); *id.* at 8:11-12 ("even more attacks"). Actions by users to access their own accounts and to copy their own User Content through the Power browser are not "attacks." These users employed a utility that is commonplace in the industry and which Facebook itself makes available

---

[1] Defendants object to this evidence under Fed. R. Evid. 402, 403, 407, 408. Defendants hereby move to strike the Declaration of Julio C. Avalos (Docket Entry No. 57) in its entirety.

DEFENDANTS' CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO FACEBOOK INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 (JF)

6

1  to its users to access accounts on other websites. *See* Vachani Decl. ¶ 8; Amended Answer at 2:4-
2  3:25 ("Facebook solicits users to enter their account names and passwords for users' email
3  accounts at Google's Gmail, AOL, Yahoo, Hotmail, or other third party websites. Facebook then
4  uses the account information to allow the user to access those accounts through Facebook, and to
5  import information – *i.e.*, to 'scrape' data – from those third-party sites into Facebook.").
6  Facebook's use of the hyperbolic phrase "cyber attack" to describe this common industry practice
7  is preposterous.
8      Next, consider Facebook's response. The pleadings establish that Facebook "implemented
9  technical measures to block users from accessing Facebook through Power.com." Amended
10 Answer ¶ 63. These technical measures were quite simple. Facebook blocked Power's IP address,
11 so that users attempting to access their Facebook accounts through Power's browser would be
12 denied access. *See* Vachani Decl. ¶ 9. Nothing more.
13     An IP (Internet Protocol) address is a numeric label that is assigned to devices, including
14 web servers and other types of computers, participating in a computer network. *Id.* For example,
15 the IP address for the Power.com web server is 70.38.96.9, and the IP address for the
16 Facebook.com web server is 69.63.186.36. *Id.* The blocking of an IP address is a simple feature
17 that can be implemented with push-button ease by virtually any web host. *Id.* The "expenditure"
18 of "corporate resources" to accomplish this "technical measure" would involve, essentially, a few
19 clicks of a mouse to access the IP blocking feature of the web host, and ten keystrokes to enter
20 Power.com's IP address among those to be blocked. *Id.*; *see also* First Amended Complaint ¶ 136
21 ("Facebook employs numerous technological measures, including identifying and blocking the IP
22 addresses of known offenders.").
23     Facebook contends that "[t]he time and resources invested by Facebook in tracking Power's
24 attacks, blocking Power's attacks, and then fielding even more attacks after Power's admitted
25 circumvention are cognizable injuries demonstrating damage or loss under the computer trespass
26 statutes." Facebook Mot. at 8:10-13. Facebook's contention is both factually and legally
27 unsupported. The only fact established by the pleadings and the evidence is that Facebook blocked
28 Power's IP address. There is no evidence of record concerning what, if any, "expenditure" was

1    made by Facebook to block Power's IP address.  Nor is there any allegation or evidence related to

2    any "tracking" or "circumvention" efforts, let alone any "expenditure" related thereto.

3          In any event, resources expended to "track" or "block" access are not a cognizable "victim

4    expenditure" under § 502.  The only expenditures cognizable under § 502 are those "reasonably

5    and necessarily incurred … to verify that a computer system, computer network, computer program

6    or data was or was not altered, deleted, damaged or destroyed by the access."  Cal. Penal Code

7    § 502(b)(9).  There is no allegation, let alone evidence, that Facebook made any expenditure at all,

8    let alone any expenditure "verify" the matters described in the statute.

9          Facebook's reliance on *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119

10   F.Supp.2d 1121 (W.D. Wash. 2000), is misplaced.  *Shurgard Storage* involved a different statute

11   and a very different set of facts.  The plaintiff in *Shurgard Storage* alleged that one of its

12   employees had been lured by a competitor to act as a double-agent, to obtain confidential business

13   plans and trade secrets from the plaintiff's computer system, and to email them to a competitor,

14   before eventually being hired away by that competitor.  *See* 119 F.Supp.2d at 1123.  The issue in

15   *Shurgard Storage* was whether the plaintiff had sufficiently pled "damage" to support a claim

16   under the federal Computer Fraud and Abuse Act (CFAA), which defines "damage" to include

17   "*any impairment* to the integrity … of data … or information."  *Shurgard Storage*, 119 F.Supp.2d

18   at 1126, *quoting* 18 U.S.C. § 1030(e)(8)(A).  The court found the CFAA's use of the term

19   "integrity" ambiguous, and engaged in a lengthy analysis of the legislative history of the statute to

20   conclude that the disclosure of trade secrets alleged in the complaint impaired the "integrity" of the

21   data, and thus qualified as "damage" under the CFAA.  *Shurgard Storage*, 119 F.Supp.2d at 1127;

22   *see also id.* at 1126-29 (reciting an extensive discussion of the legislative history of the CFAA).

23         *Shurgard Storage* is factually very different from the instant case, because this case does

24   not involve any theft of proprietary data or trade secret information.  On the contrary, the only data

25   accessed through Power's utilities were user's own "User Content," over which Facebook has

26   disclaimed any ownership.  *See* Vachani Decl. ¶ 5; Amended Answer at 7:13-15 ("Power.com

27   provides users with utilities that allow them to copy their own User Content … without copying

28   other elements of the Facebook website."); *id.* at 7:6-9 ("Facebook owns no copyright to such User

1  Content.  Indeed, Facebook's own Terms of Use expressly state that 'Facebook does not assert any
2  ownership over your User Content.'").
3       More importantly, the question of injury in *Shurgard Storage* arose under a very different
4  statute from the one at issue here.  This motion concerns Facebook's claim under California Penal
5  Code § 502, which is a fundamentally different statute than the federal CFAA, with a
6  fundamentally different standing requirement.  The language defining injury under § 502 is not
7  even remotely similar to the language of the CFAA.  The statutes were enacted by different
8  legislative bodies and have different legislative histories.  *Shurgard Storage* says nothing that is
9  even remotely relevant to the application of the distinct standing requirements for a private litigant
10 asserting a civil claim under § 502.  There is no authority for private litigant standing under § 502
11 based on expenditures to "track" or "block" users from accessing their own User Content on their
12 own accounts.  Neither *Shurgard Storage*, nor any other authority, supports the expansion of the
13 private right of action under § 502 to allow such a claim.

### 5.  Facebook Has Not Met Its Burden To Establish Causation

15     Even if Facebook had met its burden to show an injury or a victim expenditure cognizable
16 under § 502 – and Facebook has not met that burden – that alone would not be enough.  Facebook
17 must also show that such injury or victim expenditure was caused "by reason of" defendants'
18 alleged violation.  Cal. Penal Code § 502(e)(1).  Facebook's claim fails in this respect as well.
19 Facebook has neither alleged nor submitted evidence of any causal link between Power's actions
20 and any injury to or victim expenditure by Facebook.  Moreover, Power has submitted evidence
21 that no such injury or victim expenditure was or could have been caused by its conduct.  According
22 to the declaration of Power's CEO, Steven Vachani:

> 10.  The utilities made available to users through the Power browser were merely capable of accessing the user's own account, displaying the Facebook website, copying the user's own "User Content," and updating the user's own "User Content" if directed to do so by the user.  The Power browser does not provide any capability to cause the alteration, deletion, damage, or destruction of a computer system, computer network, computer program, or data.  Nor does the Power browser provide any capability to cause a denial of access to Facebook by a legitimate user.

DEFENDANTS' CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO FACEBOOK INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 (JF)

9

> 11.  I am not aware of any instance in which use of the Power browser caused any alteration, damage, deletion or destruction to any of Facebook's data or computers.  That did not happen and could not have happened.
>
> 12.  Upon learning that users were accessing their accounts through the Power browser, Facebook would have no reason to believe that its computer system, computer network, computer program, or data had been altered, deleted, damaged, or destroyed by such access.  Facebook is familiar with the utilities used by the Power browser because Facebook itself has used similar utilities for years.  Thus Facebook should have been aware, and so far as I could tell *was* aware, that it had no cause for such concern.  In its communications to me, Facebook never suggested any concern that its computers or data had been altered, deleted, damaged, or destroyed.  Since there was no cause for concern, Facebook did not, to my knowledge, make any expenditure to verify that its computers or data had not been altered, deleted, damaged, or destroyed.
>
> 13.  Facebook's only response was to block access through Power's IP address.  Facebook's decision to block Power's IP address was a pure business decision with only one realistic purpose: to thwart a potential competitor from implementing new technology that may prove superior to Facebook's technology.  Facebook's decision to block Power's IP address was in no sense a "reasonable" or "necessary" measure to verify that the Facebook computers or data had not been altered, deleted, damaged or destroyed.  Facebook had no need for such verification, and IP blocking has nothing to do with such verification.

Vachani Decl. ¶¶ 10-13.

### B.  Facebook Has Not Met Its Burden To Establish A Violation Of Penal Code § 502(c)(1)

Facebook has not met its burden to establish a violation of § 501(c)(1) for at least five reasons.  *First*, Facebook has neither alleged nor submitted proof that users' accessing their own accounts through the Power browser did anything that altered, damaged, deleted or destroyed any data, computer, computer system or computer network owned by Facebook.  That did not happen. *See* Vachani Decl. ¶ 11.

*Second*, Facebook has neither alleged nor submitted proof of any "scheme or artifice to defraud, deceive or extort anyone."  *Compare* Cal. Penal Code § 502(c)(1)(A) *with* Vachani Decl. ¶ 14 ("The only intended use and the only actual use of the Power browser was to display the user's own Facebook account and to enable the user to copy and/or update the user's own 'User Content.'

DEFENDANTS' CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO FACEBOOK INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 (JF)

10

1   We had no scheme to defraud, deceive or extort anyone. Nor could the Power browser be used for
2   such a scheme. Nor, to my knowledge, was the Power browser used for such a scheme.").

3   *Third*, Facebook has neither alleged nor submitted proof that anyone using the Power
4   browser "wrongfully control[led] or obtain[ed] money, property or data." *Compare* Cal. Penal
5   Code § 502(c)(1)(B) *with* Vachani Decl. ¶ 15 ("The Power browser was not intended to and is not
6   capable of wrongfully controlling or obtaining money, property or data. We did not intend it for
7   such use. Nor, to my knowledge, was the Power browser ever used for such purposes.").

8   *Fourth*, Facebook has never identified any instance in which Power accessed any data
9   without the express permission of the user and rightful owner of the accessed data. Facebook's
10  motion contends – without evidentiary support – that "Power has admitted to knowingly accessing
11  and without permission taking, copying, and/or making use of Facebook login information data."
12  Facebook Mot. at 6:7-8. That contention is absolutely false, and is presented in a manner
13  purposely designed to mislead the Court by creating the impression that Power obtained users'
14  login information (usernames and passwords) by hacking into Facebook's computers. The real
15  facts are that Power has never obtained any usernames or passwords from Facebook's computers.
16  *See* Vachani Decl. ¶ 16. Every username and password obtained by Power was manually entered
17  through the Power.com website by a user who wished to access his or her own account through the
18  Power browser. *See id.* No data owned by Facebook has ever been altered or destroyed from such
19  access. *See id.* And the only data that was "copied" or "used" in any substantial way was the user's
20  own User Content, and only for such purposes as were specifically directed by the user. *See id.*[2]

---

[2] Magistrate Judge Seeborg's decision in *Facebook Inc. v. ConnectU LLC*, 489 F.Supp.2d 1087 (N.D. Cal. 2007) held that Facebook stated a claim under § 502(c)(2) where it alleged that ConnectU collected email addresses of registered Facebook users, and then sent commercial email to those persons "without permission." But *ConnectU* is both factually and legally distinguishable. *ConnectU* was a Rule 12(b)(6) case, which required that Facebook's allegations be accepted as true and that all inferences be drawn in Facebook's favor. The procedural posture on this motion requires that similar allegations, which have been denied by Power, "are assumed to be false." *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d at 1550. Furthermore, Power has made a substantial showing that it has never accessed any user account other than as specifically directed by the user, has never directly sent any communication to any address obtained through Facebook, and has never made any use of "User Content" other than as specifically directed by the user. *See* Vachani Decl. ¶¶ 10, 14. Given the distinct procedural posture and distinct facts of this case, *ConnectU* is not a useful precedent.

*Fifth*, the pleadings do not establish, and Facebook has submitted no proof, that Power acted with the requisite *men rea* to "knowingly" commit a violation § 501(c)(1). To establish liability, Facebook is required to establish that Power "knowingly" committed every element of an offense under § 501(c)(1). *See, e.g.*, *People v. Hawkins*, 98 Cal.App.4th 1428, 1439 (2002) (rejecting the assertion that "'knowingly' only modifies 'accesses' and not the rest of the crime"). Neither the pleadings nor the proof submitted by Facebook establish that Facebook acted "knowingly" "without permission" to damage any data or computer as part of any scheme to accomplish any of the objects prohibited by § 501(c)(1). On the contrary, the only record evidence on this issue establishes that Power acted with a good faith belief that (i) "access to users' Facebook accounts through the Power browser was done in every instance with the permission of the user," Vachani Decl. ¶ 17, that "in every instance those users had ownership of all "User Content" that was accessed and/or copied through the Power browser," *id.*, and "that no other permission was legally required for users to access their own accounts and User Content through the Power browser," *id.* "To the extent that Facebook's Terms of Use purport to restrict users from accessing their own User Content in this manner, Power had, and continues to have, a good faith belief that Facebook's Terms of Use were legally unenforceable or otherwise violative of the copyright and unfair competition laws." *Id.* ¶ 18.[3]

---

[3] In December 2008, after receiving notice that Facebook objected to users' access through the Power browser, Power immediately began working with Facebook to implement a different type of connection through "Facebook Connect." Vachani Decl. ¶ 19. Power maintained its belief that it had done nothing wrong, and that it had every legal right to allow users access to their own Facebook accounts through the Power browser. *Id.* Nevertheless, in an effort to reach an amicable resolution, Power agreed to try to work through "Facebook Connect" instead. *Id.* By January 2009, Power had taken down its existing Facebook integration through the Power browser, and had focused its efforts exclusively on implementing "Facebook Connect." *Id.* Power has not made any connection to Facebook since January 2009, and has no current plan to re-start its Facebook integration. *Id.* Nevertheless, at all times through January 2009, and continuing through to today, Power believed and continues to believe, in good faith, that it had all permissions legally required to permit users to access their own Facebook accounts and to copy their own User Content through the Power browser. *Id.* Power never "knowingly" acted "without permission," as those terms are used in § 502(c). *Id.*

### C. Facebook Has Not Met Its Burden To Establish A Violation Of Penal Code § 502(c)(2)-(4) or § 502(c)(7)

Facebook has not met its burden to establish a violation of § 501(c)(2)-(4) and (7) because neither the pleadings nor the evidence establish that Power "knowingly" accessed any Facebook account "without permission," for the same reasons as those set forth in Part III.B, above. Facebook has not met its burden to establish a violation of § 501(c)(4) for the additional reason that neither the pleadings nor the evidence establish that Power "knowingly" and "without permission" added, altered, damaged, deleted or destroyed any data, computer software, or computer programs. *See* Vachani Decl. ¶ 11 ("I am not aware of any instance in which use of the Power browser caused any alteration, damage, deletion or destruction to any of Facebook's data or computers.  That did not happen and could not have happened.").

### D. Power Has Raised Triable Issues Of Fact Concerning Its Affirmative Defenses

Power has asserted two formidable affirmative defenses based on Fair Use under 17 U.S.C. § 107, *see* Amended Answer ¶¶ 161-164, and the common law doctrine of copyright misuse, *id.* ¶¶ 165-168.  The facts asserted in those defenses must be accepted as true on this motion.  *See* Part II.A and II.B, above.

It now appears that a third defense, federal preemption, may also apply.  As explained in Part III.A.1, *supra*, the only injury Facebook alleges in support of its § 502 claim is injury to "Facebook's reputation and goodwill."  If Facebook had asserted an injury under § 502 based on the use or display of copyrighted information through the Power browser, the § 502 claim would be preempted by the Copyright Act, 17 U.S.C. § 301(a).  This may be why Facebook purposely omitted such an allegation of harm.

### IV.  CONCLUSION

For the foregoing reasons, Facebook's motion for judgment on the pleadings, or in the alternative, for summary judgment, of liability under California Penal Code § 502(c) should be denied.

DEFENDANTS' CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO FACEBOOK INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 (JF)

13

| | |
|---|---|
| | Respectfully submitted, |
| Dated:  March 2, 2010 | BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP |

By _____/s/_____
       L. Timothy Fisher

Alan R. Plutzik (State Bar No. 77785)
L. Timothy Fisher (State Bar No. 191626)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA  94598
Telephone:  (925) 945-0200
Facsimile:  (925) 945-8792

LAW OFFICES OF SCOTT A. BURSOR
Scott A. Bursor (*pro hac vice*)
369 Lexington Avenue, 10th Floor
New York, NY  10017-6531
Telephone:  (212) 989-9113
Facsimile:   (212) 989-9163

Attorneys for Defendants Power Ventures, Inc. and Steve Vachani

DEFENDANTS' CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO FACEBOOK INC.'S  MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 (JF)

14