1  LAW OFFICES OF SCOTT A. BURSOR
   Scott A. Bursor (*pro hac vice*)
2  369 Lexington Avenue, 10th Floor
   New York, NY 10017
3  Telephone: (212) 989-9113
   Facsimile: (212) 989-9163
4
   BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
5  Alan R. Plutzik (State Bar No. 077785)
   L. Timothy Fisher (State Bar No. 191626)
6  2125 Oak Grove Road, Suite 120
   Walnut Creek, CA 94598
7  Telephone: (925) 945-0200
   Facsimile: (925) 945-8792
8
   Attorneys for Defendants Power
9  Ventures, Inc. and Steve Vachani

10                    UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12

13

14  FACEBOOK, INC.,

15                      Plaintiff,            Case No. 5:08-cv-05780

16  -against-

17  POWER VENTURES, INC. d/b/a POWER.COM, a    **DEFENDANTS' SUPPLEMENTAL**
    California corporation; POWER VENTURES, INC. **BRIEF IN SUPPORT OF**
18  a Cayman Island Corporation, STEVE VACHANI, **DEFENDANTS' MOTION FOR**
    an individual; DOE 1, d/b/a POWER.COM, an    **SUMMARY JUDGMENT AND IN**
19  individual and/or business entity of unknown nature; **OPPOSITION TO FACEBOOK'S**
    DOES 2 through 25, inclusive, individuals and/or **MOTION FOR JUDGMENT ON**
20  business entities of unknown nature,        **THE PLEADINGS OR, IN THE**
                                                **ALTERNATIVE, FOR SUMMARY**
21                      Defendants.            **JUDGMENT**
22
                                               Hearing Date: June 7, 2010
23                                             Time: 9:00 a.m.
                                               Judge: Hon. James Ware
24

25

26

27

28

## TABLE OF CONTENTS

**PAGE(S)**

I.  PENAL CODE § 502 DOES NOT CRIMINALIZE TERMS OF USE VIOLATIONS ................................................................................................................1

    A.  Terms Of Use Violations Do Not Confer Standing Under § 502 ..............................1

    B.  The Substantive Prohibitions Of § 502 Do Not Apply To Terms Of Use Violations ..............................................................................................................2

II.  TECHNOLOGICAL BARRIERS DO NOT CHANGE THE ANALYSIS UNDER § 502 ........................................................................................................................4

    A.  Facebook's Technological Barriers Argument Is Contradicted By The Evidence .............................................................................................................5

    B.  Section 502 Does Not Address Technological Barriers ............................................6

        1.  Technological Barriers Are Irrelevant To The Concepts Of "Injury" And "Victim Expenditure" Under § 502(b)(8)-(9) And (e)(1) ..........................................................................................................6

        2.  Technological Barriers Are Irrelevant To The Concept Of "Permission" Under § 502(c) .............................................................................8

III.  CONCLUSION .........................................................................................................................9

DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO FACEBOOK'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

i

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Chrisman v. City of Los Angeles* (2007) 155 Cal.App.4th 29 .......................................................... 3, 8

*LVRC Holdings, LCC v. Brekka* (9th Cir. 2009) 581 F.3d 1127 ................................................. 3, 8, 9

*Mahru v. Superior Court* (1987) 191 Cal.App.3d 545 ...................................................................... 3, 8

**Statutes**

15 U.S.C. § 1114 ....................................................................................................................................... 4

15 U.S.C. § 7701 ....................................................................................................................................... 4

17 U.S.C. § 101 ......................................................................................................................................... 4

17 U.S.C. § 1201 ....................................................................................................................................... 4

18 U.S.C. § 1030 ....................................................................................................................................... 4

Business & Professions Code § 17200 ................................................................................................... 4

Penal Code § 502 ............................................................................................................................. passim

Penal Code § 502(b)(8) ................................................................................................................... 1, 2, 6

Penal Code § 502(b)(9) ................................................................................................................ 1, 2, 6, 7

Penal Code § 502(c) ............................................................................................................................. 3, 8

Penal Code § 502(c)(3) ........................................................................................................................ 3, 8

Penal Code § 502(e)(1) .............................................................................................................................. 6

Penal Code § 503 ....................................................................................................................................... 4

At the conclusion of the June 7, 2010 hearing, the Court requested supplemental briefing on two issues.  "First is the issue of the terms of use barrier and whether that qualifies under [Penal Code §] 502," and second, "to the extent that the amicus brief would add further argument beyond what you've already argued on the technological [barriers] as pled."  6/7/10 Hearing Tr. at 49.  Defendants respectfully submit this supplemental brief to address these two issues.

## I. PENAL CODE § 502 DOES NOT CRIMINALIZE TERMS OF USE VIOLATIONS

When the Court directly posed the question to Facebook's counsel, he conceded that violation of Facebook's terms of use is not sufficient to establish liability under § 502:

> THE COURT:  … So do I understand from your argument that Facebook is not contending that Power's initial access where it did not invade any technological barrier, was a violation of 502?  The violation came after Facebook initiated the technological barrier; and Power, using some mechanism that's not clear to me at this point, overcame that barrier?
>
> MR. CHATTERJEE:  Your Honor, it's a very good question.  … *When you are just talking about a terms of use violation, we are not saying that, in and of itself would necessarily rise to a knowing violation* ….

6/7/10 Hearing Tr. at 8:14-9:14 (emphasis added).  Facebook's concession of this point is well taken, since violation of terms of use without a concomitant "injury" or "victim expenditure" as defined by § 502, cannot possibly confer standing to assert a civil claim under § 502, let alone establish a violation of § 502's substantive prohibitions.

### A.     Terms Of Use Violations Do Not Confer Standing Under § 502

To establish standing, a private litigant asserting a civil claim under § 502 must establish that it suffered "injury" to its data or computers,[1] or that it made a "victim expenditure" to verify whether its data or computers suffered such an injury.[2]  If the Legislature had intended § 502 to be used as an instrument for the enforcement of websites' terms of use, the Legislature would not have included these standing requirements; or, alternatively, the Legislature would have written the

---

[1] *See* Penal Code § 502 (b)(8) ("'Injury' means any alteration, deletion, damage, or destruction of a computer system, computer network, computer program, or data caused by the access, or the denial of access, to legitimate users of a computer system, network, or program.").

[2] *See* Penal Code § 502 (b)(9) ("'Victim expenditure' means any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, deleted, damaged, or destroyed by the access.").

statute to confer standing to private parties alleging violations of terms of use, or other licensing or contractual terms. This, the Legislature obviously did not do, as § 502(b)(8) does not reference a violation of terms of use, or any analogous private contractual term, within its definition of "injury." Nor does § 502(b)(9) reference such matters within its definition of a "victim expenditure." The statute provides, in crystal clear language, that *a "victim expenditure" must be made for a specific purpose: "to verify that a computer system, computer network, computer program, or data was or was not altered, deleted, damaged, or destroyed by the access."* Penal Code § 502(b)(9) (emphasis added). An expenditure to enforce compliance with terms of use does not fit within that definition.[3]

As the Electronic Frontier Foundation ("EFF") amicus brief explains, website terms of use are often buried in fine print behind obscure links that are rarely accessed by users, and they contain provisions that are routinely violated. *See* EFF Amicus Brief at 16-19. Some of these terms of use are, frankly, silly. *See, e.g.*, *id.* at 18 (discussing YouTube's terms of use, which prohibit posting videos that show "bad stuff"). As EFF explains, a Facebook user who shaves a few years off her age in her profile listing, asserts that she is single when she is in fact married, who seeks to hide or obfuscate her current physical location, hometown, or educational history for any number of legitimate reasons, or who changes jobs or addresses without notifying Facebook, would technically be in violation of Facebook's terms of use, which require users to maintain accurate profiles and to keep them "up to date." *See id.* at 16-17. Clearly, the Legislature did not intend to criminalize such common behavior. One way that § 502 excludes these matters from its purview is the requirement that a private litigant suffer an "injury" or make a qualifying "victim expenditure" to establish standing to assert a claim.

### B. The Substantive Prohibitions Of § 502 Do Not Apply To Terms Of Use Violations

The broadest of § 502's substantive provisions makes it a crime to "[k]nowingly and without permission use[] or cause[] to be used computer services." Penal Code § 502(c)(3). By definition, one who is a party to "terms of use" for computer services has permission to "use" such

---

[3] The language of § 502(e)(1) repeats verbatim § 502(b)(9)'s definition of "victim expenditure."

DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO FACEBOOK'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

2

services, and therefore cannot violate this prohibition. Facebook argues that it has the right to set limits on users' access and to enforce those limits – thus, when an authorized user accesses Facebook in a manner prohibited by the terms of use, that access is "without permission" and violates § 502(c)(3). The law, however, is to the contrary:

> "[C]ourts have rejected the application of section 502(c) to criminalize the behavior of persons who have permission to access a computer or computer system and the data stored there, but who use that access to do things that violate the rules applicable to the system."

EFF Amicus Br. at 9:21-24. *See also Mahru v. Superior Court* (1987) 191 Cal.App.3d 545, 549 (holding § 502(c) inapplicable to employee who maliciously directed a subordinate to disrupt the operation of employer's computer system, because the subordinate had permission to access the computer); *Chrisman v. City of Los Angeles* (2007) 155 Cal.App.4th 29, 32 (police officer who accessed computer system for unauthorized purpose of searching for information about celebrities did not violate § 502 because the police officer was "entitled to access those [computer] resources"); *LVRC Holdings, LCC v. Brekka* (9th Cir. 2009) 581 F.3d 1127, 1133 (holding that an employee who stole computer files for competitive purposes did not violate the federal Computer Fraud and Abuse Act, stating: "For purposes of the CFAA, when an employer authorizes an employee to use a company computer subject to certain limitations, the employee remains authorized to use the computer even if the employee violates those limitations."). The detailed discussion of *Mahru*, *Chrisman*, and *LVRC Holdings* at pages 9-11 and 14 of the EFF Amicus Brief is instructive, and demonstrates that neither Penal Code § 502 nor the CFAA prohibits terms of use violations, because those statutes do not apply where an authorized user exceeds the limits of the authorization.

Facebook attempts to frame the issue here in terms of its right to regulate third-party access to its website. *See, e.g.*, 1/29/10 Facebook Reply Br. at 1:2-3 (Docket Entry No. 66) ("This case is about one simple issue: whether the owner and operator of a private computer system may lawfully regulate third-party access to that system."); 6/7/10 Hearing Tr. at 6:21-24 (""The fundamental issue that's presented by this motion is whether Facebook can regulate access to its website by Third Parties and other commercial entities."). But the issue on this motion is much

DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO FACEBOOK'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

3

narrower than that. On this motion, the issue is whether an uninjured private party can use Penal Code § 502 to enforce terms of use against admittedly authorized users of the system. On this point, the law is clear. Section 502 has no application here. The broader issue that Facebook describes – whether Facebook "may lawfully regulate third-party access" through means other than Penal Code § 502 – is not presently before the Court.

## II. TECHNOLOGICAL BARRIERS DO NOT CHANGE THE ANALYSIS UNDER § 502

During the June 7, 2010 hearing, Facebook's counsel heavily emphasized the purported "technological barriers" that Facebook implemented to block users from accessing Facebook's website through Power.com:

> "MR. CHATTERJEE: … The fundamental issue that's presented by this motion is whether Facebook can regulate access to its website by Third Parties and other commercial entities. And it is not … purely about a terms of use issue.
>
> … Facebook had a terms of use that restricted access to its website for particular purposes. When it was clear that Power was incentivizing its users to violate that terms of use, ***Facebook said directly to Power … don't access our website.***
>
> At that point in time Facebook put up technical barriers, they blocked the IP address of Power to foreclose Power from accessing the website. When that happened Power, now that there had been a lock on the door, there had been an express request not to trespass and there had been a fence build around the Facebook website, Power decided to jump over it.
>
> That, your Honor, is an unauthorized trespass to a computer system."

6/7/10 Hearing Tr. at 6:21-8:4 (emphasis added). Mr. Chatterjee's concluding rhetorical flourish – "That, your Honor, is trespass to a computer system." – missed the mark with respect to the applicable law. Facebook's complaint does not assert any claim for "trespass to a computer system," or any other form of common law "trespass."[4] Beyond that error, there are two further

---

[4] Facebook's First Amended Complaint (Docket Entry No. 9) asserts claims, for violations of the CAN-SPAM Act, 15 U.S.C. § 7701, *et seq.*, violations of the CFAA, 18 U.S.C. § 1030, *et seq.*, violations of Penal Code § 503, copyright infringement under 17 U.S.C. § 101, *et seq.*, violation of the Digital Millenium Copyright Act, 17 U.S.C. § 1201, *et seq.*, trademark infringement under 15 U.S.C. §§ 1114 and 1125(a), trademark infringement under the common law of California, and for violations of California's Unfair Competition Law, Business & Professions Code § 17200. The complaint does not assert any claim for "trespass to a computer system," or for any form of common law "trespass."

DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO FACEBOOK'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

4

problems with Facebook's "technological barriers" argument. It is contradicted by the evidence and it is irrelevant to the § 502 claim.

### A. Facebook's Technological Barriers Argument Is Contradicted By The Evidence

Facebook's complaint generically alleges that "Facebook implemented technical measures to block access to the Facebook Site by Power.com," Complaint ¶ 63, but does not specify what those technical measures were or how Power "deliberately circumvented" them. *Id.* ¶ 64. Facebook submitted no evidence concerning these matters. The only competent evidence on this point is the testimony of Steven Vachani, Power's CEO, explaining that Facebook had "blocked Power's IP address." Vachani Decl. ¶ 9 (Docket Entry No. 65).

The sparse evidence that is in the record contradicts Mr. Chatterjee's characterization of the facts. Mr. Chatterjee asserted that, in connection with the blocking of the IP address, Facebook had told Power "don't access our website." That assertion is contradicted by the contemporaneous correspondence between the parties, which shows that Facebook was encouraging Power to access the website, albeit through an alternate means, called "Facebook Connect," which offered restricted capabilities when compared with the Power browser. *See* Avalos Decl. Exh. A (December 15, 2008 email from Power's counsel, Mr. Cutler, to Mr. Vachani and others, stating: "Facebook … is willing to accept your offer to have Facebook Connect implemented by EOD December 26," and requesting confirmation that Power "will commit to integrating Facebook Connect by EOD, December 26, 2008.") (Docket Entry No. 57-1). Nowhere is the message described by Mr. Chatterjee – "*don't access our website*" – conveyed. Indeed, Facebook's message to Power was the opposite. It was: *Go ahead and access our website, but do it in a certain way, by using Facebook Connect rather than the more robust Power browser.* The facts were not as Mr. Chatterjee characterized them, with Facebook building a "fence" to keep out an "intruder" who had been warned to stay away. On the contrary, Power was an invited guest encouraged to use a particular means of ingress called Facebook Connect.

DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO FACEBOOK'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

5

**B.     Section 502 Does Not Address Technological Barriers**

Section 502 is a detailed statute, the text of which comprises more than 2,200 words. It includes careful definitions for terms such as "access," "computer network," "computer systems," "data," and other terms that demonstrate the Legislature's careful attention to technical elements of computing technology. Despite its length and careful attention to detail, nowhere does § 502 address, or even allude to, the significance of any technological barrier to computer access. Such technological barriers are irrelevant to the two dispositive issues raised by Power's motion for summary judgment: (1) Facebook's lack of standing as an uninjured party, and (2) the lack of any violation of the substantive provisions of § 502.

       **1.     Technological Barriers Are Irrelevant To The Concepts Of "Injury" And "Victim Expenditure" Under § 502(b)(8)-(9) And (e)(1)**

To establish standing under § 502(e)(1), a private litigant must establish that it suffered "injury" to its data or computers as defined in § 502(b)(8), or that it made a "victim expenditure" to verify whether its data or computers suffered such an "injury," as defined in § 502(b)(9). Technological barriers have no relevance to these requirements.

Section 502(e)(1) does not speak of technological barriers. It requires that "the owner or lessee of the computer, computer system, computer network, computer program, or data" must suffer "damage or loss" in order to bring a civil action. Damage or loss is further defined by § 502(b)(8)-(9), which also do not speak of technological barriers. Section 502(b)(8) defines "injury" as "any alteration, deletion, damage, or destruction of a computer system, computer network, computer program, or data caused by the access, or the denial of access, to legitimate users of a computer system, network, or program." It does not include the circumvention of technological barriers within the definition of "injury." It concerns only whether the computers or data have been altered, damaged, deleted or destroyed. How that happened – by overcoming technological barriers or otherwise – is irrelevant. All that matters is whether such an injury occurred. In this case, it is undisputed that such injury did not occur.

Section 502(b)(9) defines "victim expenditure" as "any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network,

DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO FACEBOOK'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

6

1  computer program, or data was or was not altered, deleted, damaged, or destroyed by the access."
2  This definition includes no reference to any technological barrier.  It concerns only whether an
3  expenditure was made for the stated purpose:  "to verify" whether a past access has caused
4  alteration, deletion, damage or destruction of computers or data.  The amount of the expenditure is
5  not relevant.  Nor is the nature of the prior access, whether it involved the circumvention of a
6  technical barrier or not.  The statute focuses on *the purpose* of the expenditure, and whether it was
7  reasonably and necessarily incurred *for that purpose*.  If the expenditure was reasonably and
8  necessarily incurred for the purpose of providing the verification described, then it qualifies as a
9  "victim expenditure," regardless of whether any technological barriers were circumvented.
10 Similarly, if the expenditure was not reasonably and necessarily incurred for that purpose, then it
11 would not qualify as a "victim expenditure," no matter what technological barriers were alleged to
12 have been circumvented.
13         As Power explained at pages 11-13 of its reply brief in support of its motion for summary
14 judgment (Docket Entry No. 68), whatever minimal resources Facebook may have expended to
15 block Power's IP address would not qualify as a victim expenditure under § 502 because *the*
16 *purpose* for such expenditure has nothing to do with the verification described by § 502(b)(9) and
17 (e)(1).  Every verb in the statute – "was or was not," "altered," "damaged," "deleted" – is expressed
18 in the past tense.  Expenditures allegedly made to prevent future access do not qualify.  Allowing
19 private litigants to characterize expenditures to secure their systems against future access as
20 "victim expenditures" under § 502 would open the floodgates for claims based on general security
21 measures and system upgrades that are not specifically directed to a past unauthorized access.  That
22 is why § 502(b)(9) and (e)(1) narrowly limit "victim expenditures" only to those that are
23 reasonably and necessarily incurred to verify that prior access has or has not caused any damage,
24 alteration or deletion to the computers or data.
25         Here, Facebook presented no evidence about any expenditure it claims to have made.
26 Facebook provided no evidence about the purpose for such expenditure.  And Facebook provided
27 no evidence to show that the expenditure was reasonably or necessarily incurred for such purpose.
28 Power, on the other hand, submitted the declaration testimony of Steven Vachani which

specifically and directly negates each of these elements. *See* Vachani Decl. ¶¶ 11-13 (Docket Entry No. 65). Mr. Vachani's testimony remains unrebutted.

### 2. Technological Barriers Are Irrelevant To The Concept Of "Permission" Under § 502(c)

Technological barriers are also irrelevant to the concept of "permission" as that term is used in every substantive provision of § 502(c). Each enumerated subsection of § 502(c) makes it a crime to "knowingly … and without permission" access or disrupt access to a computer. The broadest of these is § 502(c)(3), which makes it a crime to "[k]nowingly and without permission use[] or cause[] to be used computer services." But again, none of these prohibitions speaks to any concern about the manner in which the access to the computer is achieved. Under § 502(c), the only relevant issue is whether the use was made with or without "permission." There is no reference to any technological barriers, or the circumvention of same. If the user had "permission" to use the system, it makes no difference what technological barriers were overcome. And similarly, if the use was made "without permission," the absence of any technological barrier is irrelevant.

The text of the § 502 confirms, in every instance, the Legislature's intent to protect data and computer systems from injuries caused by unauthorized access, regardless of the technological barriers, or lack of same, employed to secure them. In *Mahru*, *Chrisman*, and *LVRC Holdings*, courts have focused on the issue of permission – whether the user was authorized to access the system –without regard to any technological barriers that may or may not have been in place to secure access to the system. *See Mahru*, 191 Cal.App.3d at 549 (holding § 502(c) inapplicable to employee who maliciously directed a subordinate to disrupt the operation of employer's computer system, because the subordinate had permission to access the computer); *Chrisman*, 155 Cal.App.4th at 32 (police officer who accessed computer system for unauthorized purpose of searching for information about celebrities did not violate § 502 because the police officer was "entitled to access those [computer] resources"); *LVRC Holdings, LCC*, 581 F.3d at 1133 ("For purposes of the CFAA, when an employer authorizes an employee to use a company computer subject to certain limitations, the employee remains authorized to use the computer even if the

DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO FACEBOOK'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

8

employee violates those limitations."). The text of § 502, as well as *Mahru*, *Chrisman*, and *LVRC Holdings*, all show that technological barriers have no relevance under the law.

### III. CONCLUSION

During the June 7, 2010 hearing, Facebook abandoned its principal argument that violations of Facebook's terms of use were sufficient to establish liability under § 502, and retreated to a fallback argument vaguely asserting Power violated § 502 by circumventing technological barriers to access. But Facebook's new "technological barriers" argument is wrong on the facts and wrong on the law.

Facebook's characterization of Power as a fence-jumping trespasser is wrong on the facts, because the evidence demonstrates that Power was an invited guest, and that Facebook encouraged Power to access the Facebook website through the Facebook Connect utility. *See* Avalos Decl. Exh. A (December 15, 2008 email from Power's counsel, Mr. Cutler, to Mr. Vachani and others, stating: "Facebook … is willing to accept your offer to have Facebook Connect implemented by EOD December 26," and requesting confirmation that Power "will commit to integrating Facebook Connect") (Docket Entry No. 57-1); *see also supra* Part II.A.

Facebook's technological barriers argument is also wrong on the law, because Penal Code § 502 nowhere speaks to the issue of technological barriers, and such barriers are completely irrelevant to the key concepts of "injury," "victim expenditure," and "permission," as those terms are used in § 502. *See supra* Parts II.B.1 and II.B.2.

Facebook's technological barriers argument is a red herring. Facebook has presented no evidence to support its claim under § 502. The evidence that is in the record shows that Power was invited to access Facebook, that Facebook suffered no injury from such access, made no victim expenditure, lacks standing to assert a claim under § 502, and has shown no violation of § 502. Power's motion for summary judgment should be granted. Facebook's motion should be denied.

DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO FACEBOOK'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

9

Dated:  July 6, 2010

Respectfully submitted,

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP

By _____/s/_____
     L. Timothy Fisher

Alan R. Plutzik (State Bar No. 77785)
L. Timothy Fisher (State Bar No. 191626)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA  94598
Telephone:  (925) 945-0200
Facsimile:  (925) 945-8792

LAW OFFICES OF SCOTT A. BURSOR
Scott A. Bursor (*pro hac vice*)
369 Lexington Avenue, 10th Floor
New York, NY  10017-6531
Telephone:  (212) 989-9113
Facsimile:   (212) 989-9163

Attorneys for Defendants Power Ventures, Inc. and Steve Vachani

DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO FACEBOOK'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

10