# EXHIBIT A

1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                      SAN JOSE DIVISION

4

     FACEBOOK, INC.,                )  CV-08-5780-JW
5                                    )
                     PLAINTIFF,      )  SAN JOSE, CALIFORNIA
6                                    )
            VS.                      )
7                                    )  JUNE 7, 2010
     POWER VENTURES, INC.,           )
8                                    )
                     DEFENDANT.      )  PAGES 1-52
9    _____ )

10

11                 TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE JAMES WARE
12               UNITED STATES DISTRICT JUDGE

13

14   A P P E A R A N C E S:

15

16   FOR THE PLAINTIFF:  ORRICK HERRINGTOPN SUTCLIFFE
                         BY:  NEEL CHATTERJEE
17                            JULIO AVALOS
                         1000 MARSH ROAD
18                       MENLO PARK, CA 94025

19

20   FOR THE DEFENDANT:  LAW OFFICES OF SCOTT BURSOR
                         BY:  SCOTT BURSOR
21                       369 LEXINGTON AVE, 10TH FL
                         NEW YORK, NY 10017
22

23        (APPEARANCES CONTINUED ON THE NEXT PAGE)

24

25   OFFICIAL COURT REPORTER: SUMMER FISHER, CSR, CRR
                              CERTIFICATE NUMBER 13185

                                                          1

```
 1      FOR THE PLAINTIFF:  ORRICK HERRINGTON & SUTCLIFFE
                            BY:  JESSICA PERS
 2                          405 HOWARD STREET
                            SAN FRANCISCO, CA 94105
 3

 4      FOR THE DEFENDANT:  BRAMSON PLUTZIK
                            BY:  LAWRENCE TIMOTHY FISHER
 5                          2125 OAK GROVE ROAD, STE 120
                            WALNUT CREEK, CA 94598
 6

 7      ALSO PRESENT:       JENNIFER GRANICK

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

2

```
1    SAN JOSE, CALIFORNIA          JUNE 7, 2010

2                  P R O C E E D I N G S

3              (WHEREUPON, COURT CONVENED AND THE

4    FOLLOWING PROCEEDINGS WERE HELD:)

5              THE CLERK:  CALLING CASE NUMBER 08-5780.

6    FACEBOOK, INC. V. POWER VENTURES, INC., ET AL.

7              ON FOR PLAINTIFF'S MOTION FOR JUDGMENT ON

8    THE PLEADINGS AND FOR PARTIAL SUMMARY JUDGEMENT.

9    PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND TO

10   STRIKE AFFIRMATIVE DEFENSES, AND DEFENDANT'S MOTION

11   FOR SUMMARY JUDGEMENT ON COUNT THREE.

12             30 MINUTES EACH SIDE FOR ALL MOTIONS.

13   COUNSEL, PLEASE COME FORWARD AND STATE YOUR

14   APPEARANCES.

15             MR. BURSOR:  GOOD MORNING, YOUR HONOR.

16   SCOTT BURSOR FOR THE DEFENDANTS POWER VENTURES AND

17   STEVEN VACHANI.  AND WITH ME IS MY COLLEAGUE

18   TIM FISHER, AND MY CLIENT IS WITH US TODAY AS WELL.

19   THIS IS ROB POLLOCK, THE CEO OF POWER.COM.

20             THE COURT:  THANK YOU FOR COMING.

21             MR. CHATTERJEE:  GOOD MORNING,

22   YOUR HONOR.  NEEL CHATTERJEE FOR FACEBOOK.  WITH ME

23   IS JULIO AVALOS AND JESSICA PERS FROM MY OFFICE.

24             THE COURT:  THANK YOU.  HAVE A SEAT.  YOU

25   DON'T HAVE TO SIT DOWN, THE ADVOCATES, I WAS
```

1      TALKING ABOUT THE REST OF THEM.

2              BUT LET'S SEE, WHAT DO I HAVE?  I HAVE A

3      MOTION BY FACEBOOK FOR JUDGMENT ON THE PLEADINGS OR

4      IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGEMENT

5      UNDER THIS 502 STATUTE, AND A DEFENDANT'S MOTION

6      FOR SUMMARY JUDGEMENT.  AND I HAVE A MOTION TO

7      DISMISS THE COUNTERCLAIMS, STRIKE AFFIRMATIVE

8      DEFENSES -- I CAN SEE WHY MY STAFF SAID 30 MINUTES

9      EACH SIDE IF WE ARE GOING TO ADDRESS ALL OF THIS.

10             ACTUALLY, THE ISSUE THAT I THOUGHT WOULD

11     BE IMPORTANT FOR US TO DISCUSS IS THIS 502 ISSUE.

12     AND I UNDERSTAND THAT THERE ARE CERTAIN AMICUS

13     BRIEFS THAT HAVE BEEN FILED WITH RESPECT TO THIS.

14     SO I WOULD ACTUALLY CALL UPON COUNSEL FOR FACEBOOK

15     FIRST TO ADDRESS THE QUESTION OF WHETHER OR NOT

16     THERE IS A SUFFICIENT ALLEGATION OF A VIOLATION OF

17     502.

18             MR. CHATTERJEE:  SURE, YOUR HONOR, I'M

19     HAPPY TO.

20             FIRST, IF I MAY ADDRESS THE AMICUS BRIEF,

21     WE HAD CONTACTED CHAMBERS BECAUSE IT ACTUALLY HAD

22     NEVER BEEN FILED.  THERE WAS A MOTION REQUESTING IT

23     AND YOUR HONOR ISSUED AN ORDER SETTING A DEADLINE

24     AND THEN IT WAS NEVER FILED.

25             IF YOUR HONOR IS GOING TO CONSIDER THAT

                                                              4

1    BRIEF, WE WOULD LIKE TO HAVE AN OPPORTUNITY TO FILE

2    A RELATIVELY SHORT RESPONSE TO IT.  I CAN ALSO

3    ADDRESS IT DURING THE ARGUMENT TODAY.

4            AFTER YOU GAVE LEAVE, THE AMICUS BRIEF

5    WAS ACTUALLY NOT FILED PER YOUR ORDER.  AND IT'S A

6    PROCEDURAL HOUSEKEEPING ISSUE, ALTHOUGH WE THINK

7    THAT BECAUSE THEY DIDN'T FILE IT, IT SHOULD NOT BE

8    CONSIDERED AT THIS POINT.

9            THE COURT:  WELL, I HAD -- THERE WAS A

10   DOCUMENT FILED WHICH WAS A MOTION FOR LEAVE TO

11   FILE.  AND IT'S THAT, THAT I HAD READ.  AND SO YOUR

12   POSITION IS THAT THIS IS NOT THE BRIEF THAT WAS

13   SORT OF FOLLOWED ON THAT WAS GOING TO COME FROM

14   THIS.

15           MR. CHATTERJEE:  THEY ATTACHED A BRIEF ON

16   THE MOTION AND THEN YOUR HONOR ISSUED AN ORDER

17   GIVING THEM UNTIL, I BELIEVE THE 14TH, TO ACTUALLY

18   FILE THAT BRIEF.

19           IT WAS, IN FACT, NEVER FILED.  WE HAD

20   CONTACTED YOUR HONOR TO FIGURE OUT WHAT WE SHOULD

21   DO, IF ANYTHING.  AND ALL I ASK YOUR HONOR IS THAT

22   IF IN FACT YOU ARE GOING TO CONSIDER THEIR

23   SUBMISSION, WE BE GIVEN LEAVE TO FILE A FAIRLY

24   SHORT RESPONSE TO IT.  SO IF YOU ARE CONSIDERING

25   THE ISSUE -- ANY ISSUES RAISED THEREIN, WE CAN

1     ENSURE WE'VE HAD AN OPPORTUNITY TO BE HEARD.

2              THE COURT:  ALL RIGHT.

3              I HAD ASSUMED THAT I HAD BEFORE ME THE

4     AMICUS MATERIAL AND HAD LOOKED AT IT.  SO TO THE

5     EXTENT THAT I FIND THERE'S A NEED FOR YOU TO SAY

6     ANYTHING MORE, PERHAPS YOU CAN RESPOND TO THAT AS

7     WELL.

8              MR. CHATTERJEE:  SURE, YOUR HONOR.

9              IF I CAN GRAB SOME AIDES FOR OUR ARGUMENT

10    TODAY ON THE 502(C) ISSUE.

11             THE COURT:  SURE.

12             MR. CHATTERJEE:  YOUR HONOR, I WILL GIVE

13    OPPOSING COUNSEL A COPY OF THIS.  I WILL ALSO GIVE

14    A COPY FOR YOU, AND I'M HAPPY TO GIVE ONE FOR YOUR

15    LAW CLERK AS WELL.  THE AIDES ARE FAIRLY

16    STRAIGHTFORWARD, ALMOST ALL OF IT ARE MATERIALS

17    THAT ARE ALREADY SUBMITTED.  THERE'S ONLY ONE

18    ADDITIONAL PIECE OF WORK PRODUCT.

19             LET'S START WITH KIND OF, I GUESS THE

20    FUNDAMENTAL ISSUE THAT'S PRESENTED BY THIS MOTION.

21    THE FUNDAMENTAL ISSUE THAT'S PRESENTED BY THIS

22    MOTION IS WHETHER FACEBOOK CAN REGULATE ACCESS TO

23    ITS WEBSITE BY THIRD PARTIES AND OTHER COMMERCIAL

24    ENTITIES.  AND IT IS NOT, AS VARIOUS PEOPLE IN THE

25    BRIEFING ON THIS CASE SUGGEST, PURELY ABOUT A TERMS

1    OF USE ISSUE.

2         I WAS VERY INTERESTED IN YOUR HONOR'S

3    COMMENTS ABOUT THE MULTIVEN CASE THAT WAS JUST HERE

4    BECAUSE IT WASN'T A MATTER OF FACEBOOK LOCKING A

5    DOOR, IT WAS FAR MORE THAN THAT.  FACEBOOK HAD A

6    TERMS OF USE THAT RESTRICTED ACCESS TO ITS WEBSITE

7    FOR PARTICULAR PURPOSES.  WHEN IT WAS CLEAR THAT

8    POWER WAS INCENTIVISING ITS USERS TO VIOLATE THAT

9    TERMS OF USE, FACEBOOK SAID DIRECTLY TO POWER, AND

10   POWER DOESN'T DISPUTE THIS, DON'T ACCESS OUR

11   WEBSITE.

12        POWER AGREED.  THEY ACTUALLY SAID, OKAY,

13   WE WON'T ACCESS IT, WE ARE GOING TO TRY TO WORK

14   THROUGH A MECHANISM THAT FACEBOOK DOES ALLOW FOR

15   THAT ACCESS.  BUT THEN AT THE LAST MINUTE THEY

16   CHANGED THEIR MIND AND THEY SAID, WE ARE GOING TO

17   CONTINUE ACCESSING FACEBOOK'S WEBSITE DESPITE

18   FACEBOOK'S EXPRESS REQUEST SAYING, DO NOT ACCESS

19   OUR WEBSITE.

20        AT THAT POINT IN TIME FACEBOOK PUT UP

21   TECHNICAL BARRIERS, THEY BLOCKED THE IP ADDRESS OF

22   POWER TO FORECLOSE POWER FROM ACCESSING THE

23   WEBSITE.  WHEN THAT HAPPENED POWER, NOW THAT THERE

24   HAD BEEN A LOCK ON THE DOOR, THERE HAD BEEN AN

25   EXPRESS REQUEST NOT TO TRESPASS AND THERE HAD BEEN

1    A FENCE BUILT AROUND THE FACEBOOK WEBSITE, POWER

2    DECIDED TO JUMP OVER IT.

3            THAT, YOUR HONOR, IS AN UNAUTHORIZED

4    TRESPASS TO A COMPUTER SYSTEM.  AND AT THE VERY

5    TIME THAT THEY WERE JUMPING OVER THOSE FENCES, THEY

6    THEN ACCESSED THE FACEBOOK WEBSITE AND THEY START

7    SENDING COMMERCIAL MESSAGES THROUGH A CALENDARING

8    FUNCTION OF FACEBOOK TO INVITE POTENTIALLY

9    THOUSANDS OF PEOPLE TO JOIN THE POWER WEBSITE.

10            YOUR HONOR, THAT IS THE CLASSIC CASE, IT

11   IS AN EXTREME CASE OF COMPUTER TRESPASS, WHICH IS

12   WHAT CALIFORNIA PENAL CODE IN 502(C) SEEKS TO

13   COVER.

14            THE COURT:  NOW LET ME SEE IF I CAN PARSE

15   THAT JUST A BIT.

16            SO DO I UNDERSTAND FROM YOUR ARGUMENT

17   THAT FACEBOOK IS NOT CONTENDING THAT POWER'S

18   INITIAL ACCESS WHERE IT DID NOT INVADE ANY

19   TECHNOLOGICAL BARRIER, WAS A VIOLATION OF 502?  THE

20   VIOLATION CAME AFTER FACEBOOK INITIATED THE

21   TECHNOLOGICAL BARRIER; AND POWER, USING SOME

22   MECHANISM THAT'S NOT CLEAR TO ME AT THIS POINT,

23   OVERCAME THAT BARRIER?

24            MR. CHATTERJEE:  YOUR HONOR, IT'S A VERY

25   GOOD QUESTION.

8

1          THE ANSWER IS A LITTLE MORE COMPLICATED

2    THAN THAT.  THE ISSUE YOUR HONOR RAISED WITH

3    RESPECT TO THE MULTIVEN CASE WAS ONE OF, AT WHAT

4    POINT DOES SOMETHING BECOME A KNOWING VIOLATION?

5    IT WAS THE KNOWLEDGE REQUIREMENT THAT I THINK

6    YOUR HONOR WAS CONCERNED ABOUT IN ASKING THE

7    QUESTIONS ABOUT THE DIRECTOR LEVEL PERSON AND WHAT

8    HE -- WOULD HE KNOW ABOUT OR NOT KNOW ABOUT OR THE

9    OTHER PERSON WHO WAS USING HIS PASSWORD THAT WOULD

10   KNOW ABOUT THE ACCESS TO THE CISCO COMPUTER SYSTEM.

11          WHEN YOU ARE JUST TALKING ABOUT A TERMS

12   OF USE VIOLATION, WE ARE NOT SAYING THAT, IN AND OF

13   ITSELF WOULD NECESSARILY RISE TO A KNOWING

14   VIOLATION; THAT'S AN ISSUE FOR ANOTHER DAY.  BUT IN

15   THIS INSTANCE WITH THESE FACTS THAT ARE ADMITTED,

16   THERE IS NO QUESTION THAT THE STOP SIGN WAS ON THE

17   OUTSIDE OF THE FACEBOOK WEBSITE.

18          THERE WASN'T ONE INSTANCE OF A TERMS OF

19   USE GIVING NOTICE, THERE WAS A DIRECT MESSAGE SENT

20   TO POWER THAT THEY ACKNOWLEDGED AND RECOGNIZED THAT

21   THE WELCOME SIGN WASN'T ON AND THEN AFTER THEY

22   CHOSE NOT TO HONOR IT, THEY ADMITTED THAT THEY KNEW

23   WE PUT IN PLACE TECHNICAL BARRIERS AND THEY CHOSE

24   TO JUMP OVER THAT FENCE.

25          WITH THOSE THREE THINGS, THE KNOWING

9

1    ELEMENT IS UNDISPUTABLE.  AND THAT IS THE POINT AT

2    WHICH THERE'S NO QUESTION THERE WOULD BE A

3    VIOLATION UNDER CALIFORNIA PENAL CODE 502(C).

4              DOES THAT ANSWER YOUR QUESTION,

5    YOUR HONOR?

6              THE COURT:  I THINK SO.

7              YOU SAID THE ANSWER IS NOT AS

8    STRAIGHTFORWARD AS THAT.  I DIDN'T GET AN ANSWER,

9    BUT IT SEEMS THAT THE ANSWER IS YES.

10             INDEED, THERE'S NO CLAIM -- YOU ARE

11   MAKING YOUR CLAIM BASED UPON THE STATE OF THE

12   AFFAIRS THAT EXISTED AFTER OVERCOMING THE TECHNICAL

13   BARRIER, AND PERHAPS IT'S MOOT WHAT HAPPENED

14   EARLIER.

15             BUT AS I WAS READING THROUGH THE HISTORY

16   OF THE CASE, AND AS YOU RECITED IT, THERE WAS AN

17   EARLY ENTRY UNDER DIFFERENT CIRCUMSTANCES.  THERE

18   WAS SOME CORRESPONDENCE BETWEEN THE PARTIES WITH

19   RESPECT TO THAT.  SOME EFFORT WAS MADE TO SEE

20   WHETHER OR NOT POWER WOULD BECOME AN ACCEPTED USER

21   BECAUSE THIS IS A PROCESS THAT FACEBOOK ALLOWS

22   PERHAPS, AND EVEN ENGAGES IN, BUT DIDN'T HAVE POWER

23   AMONG ITS AUTHORIZED VENDORS FOR PURPOSES OF THIS

24   GATHERING OF INFORMATION THROUGH FACEBOOK.

25             AND THEN IN THE COURSE OF TIME, AS I

1    UNDERSTAND IT, FACEBOOK PUT IN PLACE VARIOUS

2    TECHNOLOGICAL BARRIERS AND THOSE WERE CIRCUMVENTED.

3    AND IT'S THAT STATE OF AFFAIRS, THE CIRCUMVENTION

4    THAT I AM LOOKING AT, TO DETERMINE WHETHER OR NOT

5    THERE'S A 502 VIOLATION.

6                MR. CHATTERJEE:  CORRECT, YOUR HONOR.

7                WE ARE NOT MOVING SOLELY UPON THE TERMS

8    OF USE VIOLATION, ALTHOUGH IT'S AN ADMITTED FACT

9    THAT IS RELEVANT FOR YOUR HONOR TO CONSIDER.

10               THE COURT:  WELL, AS A HISTORICAL PURPOSE

11   IT SEEMS TO ME -- SO MAYBE THIS IS AN INVITATION

12   FOR THE COURT TO RENDER AN ORDER WHETHER OR NOT

13   TERMS OF USE VIOLATIONS ALONE CONSTITUTE A

14   VIOLATION OF 502 SO AS TO REMOVE THAT FROM A

15   QUESTION.

16               SO IT'S A QUESTION I'M RAISING, NOT A

17   STATEMENT OF SOMETHING I'M GOING TO DO, BUT YOU'VE

18   RAISED AT LEAST ENOUGH OF A CONCERN IN THE COURT'S

19   MIND THAT AN ANSWER TO THAT QUESTION MIGHT BE

20   NECESSARY.

21               LET ME HEAR FROM YOUR OPPONENT AND I WILL

22   COME BACK.

23               MR. CHATTERJEE:  YOUR HONOR, IF I CAN

24   JUST SAY, AN ANSWER TO THAT QUESTION IS NOT

25   NECESSARY HERE BECAUSE YOU CAN RELY SOLELY ON THE

11

1    CIRCUMVENTION AFTER THE REQUEST WAS MADE NOT TO

2    ACCESS AND THE BARRIERS WERE JUMPED OVER.

3              THE COURT:  I UNDERSTAND.

4              COUNSEL?

5              MR. BURSOR:  YOUR HONOR, I THINK THE

6    COURT IN ITS COLLOQUY WITH MR. CHATTERJEE HAS

7    JUMPED PAST A DISPOSITIVE ISSUE THAT REALLY OUGHT

8    TO BE THE FOCUS OF THE ANALYSIS ON THIS MOTION,

9    WHICH IS NOT WHETHER THERE WAS A VIOLATION OF 502

10   DUE TO AUTHORIZE OR LACK OF AUTHORIZE, AND I CAN

11   ADDRESS WHY WE THINK THERE WAS NO VIOLATION OF 502

12   BECAUSE THE USERS WERE AUTHORIZED TO ACCESS THEIR

13   ACCOUNTS; HOWEVER, THAT DISCUSSION JUMPS OVER A

14   VERY BIG HURDLE AND THAT IS THE BASIS FOR OUR

15   MOTION FOR SUMMARY JUDGEMENT.

16             WE THINK THE COURT DOESN'T EVEN GET THERE

17   BECAUSE FACEBOOK LACKS STANDING TO ASSERT ANY CLAIM

18   FOR 502 EVEN IF THERE WAS A VIOLATION.  AND THE

19   REASON IS BECAUSE YOUR HONOR, CALIFORNIA'S PENAL

20   CODE SECTION 502 IS, OF COURSE, A CRIMINAL STATUTE,

21   IT'S MEANT TO BE ENFORCED BY THE GOVERNMENT.

22             IT DOES, HOWEVER, CREATE A PRIVATE RIGHT

23   OF ACTION IN CERTAIN LIMITED CIRCUMSTANCES.  AND

24   THOSE ARE SPELLED OUT IN SECTION 502 (E)(1) WHICH

25   CREATES PRIVATE LITIGATE STANDING FOR THE OWNER OR

1    LESSEE OF A COMPUTER WHO HAS SUFFERED DAMAGE OR

2    LOSS BY REASON OF A VIOLATION.

3              AND OUR MOTION FOR SUMMARY JUDGEMENT,

4    YOUR HONOR, IS PREMISED ON THE COMPLETE ABSENCE OF

5    ANY ALLEGATION THAT FACEBOOK SUFFERED DAMAGE OR

6    LOSS COGNIZABLE UNDER THE STATUTE OR THAT IT MADE

7    WHAT'S CALLED A VICTIM EXPENDITURE, WHICH IS A

8    PARTICULAR TYPE OF LOSS, RECOGNIZED UNDER SECTION

9    502.

10             WHAT HAPPENED IN THIS CASE, YOUR HONOR,

11   IS THAT FACEBOOK USERS WHO WERE AUTHORIZED, HAD

12   ACCOUNTS ON FACEBOOK, HAD PASSWORDS AND LOGIN NAMES

13   ISSUED BY FACEBOOK, HAD PERMISSION TO ACCESS THEIR

14   FACEBOOK ACCOUNTS, DID SO THROUGH A DIFFERENT

15   BROWSER OFFERED BY POWER THAT PROVIDED ADDITIONAL

16   UTILITIES THAT FACEBOOK DIDN'T WANT TO HAVE

17   PROVIDED.

18             AND WHEN THOSE USERS ACCESSED THEIR OWN

19   ACCOUNTS THEY DID NOT TAKE ANY ACTION THAT CAUSED A

20   DAMAGE OR LOSS TO FACEBOOK; THEY HAD NO EFFECT ON

21   FACEBOOK WHATSOEVER.

22             SO A FUNDAMENTAL PREREQUISITE FOR A

23   PRIVATE LITIGANT LIKE FACEBOOK TO ASSERT A CLAIM

24   UNDER 502 IS THEY HAVE TO SHOW ONE OF TWO THINGS:

25             THEY HAVE TO SHOW AN INJURY AS DEFINED BY

13

1    THE STATUTE, WHICH IS DEFINED BY 502 (B)(8) AS THE

2    ALTERATION, DELETION, DAMAGE OR DESTRUCTION OF A

3    COMPUTER SYSTEM, COMPUTER NETWORK, COMPUTER PROGRAM

4    OR DATA, OR THE DENIAL OF ACCESS TO LEGITIMATE

5    USERS; THAT'S ONE THING THEY COULD SHOW.

6         OR ALTERNATIVELY THEY COULD SHOW WHAT'S

7    CALLED A VICTIM EXPENDITURE WHICH IS IDENTIFIED IN

8    502(B)(9) WHICH IS THE EXPENDITURE OF RESOURCES

9    REASONABLY AND NECESSARILY INCURRED BY THE OWNER OR

10   LESSEE OF THE COMPUTER SYSTEM TO VERIFY THAT THE

11   INJURIES DESCRIBED IN (B)(8), NAMELY THE

12   ALTERATION, DELETION, DAMAGE, OR DESTRUCTION OF

13   THEIR COMPUTER SYSTEM, NETWORK OR DATA, EITHER DID

14   OR DID NOT OCCUR.

15        NOW, IN THIS CASE FACEBOOK FILED A

16   COMPLAINT AND THEY FILED AN AMENDED COMPLAINT.  AND

17   IN PLEADING THEIR 502 CLAIM IN BOTH INSTANCES THE

18   ONLY INJURY THEY ALLEGE WAS INJURY TO THEIR

19   "REPUTATION AND GOOD WILL."  AND YOUR HONOR, THAT'S

20   AT PARAGRAPHS 118 AND 119 OF FACEBOOK'S AMENDED

21   COMPLAINT.  THAT'S THE ONLY INJURY THEY ALLEGE.

22   THEY SAY, "OUR REPUTATION AND GOOD WILL WAS

23   HARMED."

24        NOW, IN POWER'S ANSWER WE DENY THAT.  AND

25   SO ON THE 12(C) MOTION IT HAS TO BE PRESUMED FALSE.

14

1    BUT THE MORE IMPORTANT POINT, YOUR HONOR, IS

2    WHETHER THAT ALLEGATION IS TRUE OR FALSE ABOUT AN

3    INJURY TO REPUTATION AND GOOD WILL, THAT TYPE OF

4    INJURY DOES NOT QUALIFY AS AN INJURY UNDER 502

5    (B)(8).  IT DOES NOT QUALIFY AS A VICTIM

6    EXPENDITURE UNDER 502(B)(9) AND DOES NOT QUALIFY

7    UNDER DAMAGE OR LOSS UNDER 502(B)(1).

8              SO BEFORE FACEBOOK CAN BE HEARD TO

9    COMPLAIN THAT SOMEONE HAS VIOLATED 502(C), THEY

10   HAVE TO SHOW ONE OF THOSE TWO THINGS.

11             THE COURT:  DO YOU EQUATE INJURY AND

12   VICTIM EXPENDITURE UNDER THE STATUTE WITH DAMAGE OR

13   LOSS?

14             IN OTHER WORDS, ARE THE ONLY THINGS THAT

15   ARE DAMAGE OR LOSS, WHAT IS DEFINED UNDER

16   SUBPARAGRAPHS 8 AND 9, DEFINED AS INJURY OR VICTIM

17   EXPENDITURE?

18             MR. BURSOR:  YES.

19             THE COURT:  WHERE DO YOU GET THAT?

20             MR. BURSOR:  WHERE I GET THAT,

21   YOUR HONOR, IS FROM THE FACT THAT 502(E)(1) USES

22   THE EXACT SAME LANGUAGE VERBATIM AS (B)(9) WHICH

23   DEFINES VICTIM EXPENDITURE.

24             IF YOU LOOK AT (E)(1), THE LANGUAGE THAT

25   TALKS ABOUT ANY EXPENDITURE REASONABLY AND

1    NECESSARILY INCURRED BY THE OWNER OR LESSEE TO

2    VERIFY THAT A COMPUTER SYSTEM, COMPUTER NETWORK,

3    COMPUTER PROGRAM OR DATA WAS OR WAS NOT ALTERED

4    DAMAGED OR DELETED BY THE ACCESS.

5          THAT LANGUAGE IS IDENTICAL TO THE

6    DEFINITION OF VICTIM EXPENDITURE IN (B)(9). AND IF

7    YOU LOOK TO THE DEFINITION OF INJURY IN (B)(8), IT

8    SAYS "INJURY MEANS DAMAGE."

9          INJURY IS A DEFINED TERM TO INCLUDE

10    DAMAGE AND SOME OTHER -- AND TYPES OF DAMAGE LIKE

11    ALTERATION, DELETION, OR DESTRUCTION OF A COMPUTER

12    SYSTEM OR COMPUTER DATA.

13          SO THERE IS NO FORM OF DAMAGE OR LOSS

14    THAT COULD GIVE RISE TO STANDING UNDER 502(E)(1)

15    THAT WOULD NOT ALSO QUALIFY AS AN INJURY OR VICTIM

16    EXPENDITURE UNDER (B)(8) OR (B)(9).

17          THE COURT: LET'S ASSUME I GO THAT WAY,

18    AND I CAN SEE WHY YOU ARGUED THAT, ALTHOUGH THE

19    STATUTE USES TERMS THAT ARE NOT ALWAYS AS DEFINED

20    AS SYMMETRICALLY AS YOU ARE ARGUING.

21          WHY WOULDN'T A CIRCUMSTANCE SUCH AS THIS

22    WHERE THIS CIRCUMSTANCE WHERE FACEBOOK INVESTIGATED

23    WHATEVER WAS GOING ON AND UNDERTOOK MEASURES TO

24    PROTECT THE INTEGRITY, AS IT DEFINED IT, OF ITS

25    SYSTEM, WHY WOULDN'T THOSE QUALIFY AS DAMAGE OR

1    LOSS?

2              MR. BURSOR:  WELL, THEY WOULDN'T QUALIFY

3    YOUR HONOR BECAUSE THEY DON'T MEET THE CRITERIA

4    THAT ARE SPELLED OUT IN THE STATUTE.

5              I THINK FACEBOOK CONCEDES THAT THEY HAVE

6    NOT SUFFERED AN INJURY AS DEFINED BY THE STATUTE.

7    THEIR ARGUMENT IS WE MADE THESE EXPENDITURES TO

8    INVESTIGATE WHAT WAS HAPPENING, TO HAVE DISCUSSIONS

9    WITH MR. VACHANI AND THEN TO THEN BLOCK THE IP

10   ADDRESS.

11             AND BECAUSE WE MADE THOSE EXPENDITURES

12   WHICH ARE NOT REALLY SPECIFIED IN ANY WAY, EITHER

13   IN THE PLEADINGS OR EVIDENTIARY MATERIALS BEFORE

14   THE COURT, FACEBOOK'S INTENTION IS ANY EXPENDITURE

15   WILL DO.

16             YOUR HONOR, IN OUR REPLY BRIEF WE BROKE

17   THESE OUT ONE BY ONE AND EXPLAINED WHY EACH ONE OF

18   THEM FAILED THE TEST UNDER 502(B)(9) AND 502(E)(1).

19             NOW, WE HAD THE DISCUSSION ABOUT (B)(8)

20   AND THE DEFINITION OF INJURY AND I THINK THAT'S

21   IMPORTANT, BUT IT'S IMPORTANT TO RECOGNIZE THAT

22   FACEBOOK HAS CONCEDED THAT POINT.  THEY DON'T HAVE

23   AN INJURY.  THEY RELY ENTIRELY ON THESE

24   EXPENDITURES.

25             SO IT'S ENTIRELY A (B)(9)/(E)(1) ISSUE

17

1    WHERE (B)(9) AND (E)(1) USE THE IDENTICAL LANGUAGE.

2              AND THERE'S THREE REQUIREMENTS FOR AN

3    EXPENDITURE TO FALL UNDER ONE OF THOSE STATUTES.

4    NUMBER ONE, IT HAS TO BE REASONABLY INCURRED.  TWO,

5    IT HAS TO BE NECESSARILY INCURRED.  AND NUMBER

6    THREE, IT HAS TO BE BY REASON OF -- IT HAS TO BE

7    INCURRED TO VERIFY "WHETHER AN ALTERATION, DELETION

8    OR DAMAGE HAS OCCURRED TO THE DATA OR THE COMPUTER

9    NETWORK."

10             NOW FACEBOOK --

11             THE COURT:  WHERE DO YOU GET THE

12   REASONABLY INCURRED -- THERE'S NO STANDARD AS TO AN

13   AMOUNT HERE, CORRECT?

14             MR. BURSOR:  THERE'S NO STANDARD AS TO AN

15   AMOUNT, BUT I GET REASONABLY AND NECESSARILY FROM

16   THE LANGUAGE OF (E)(1) AND (B)(9) WHICH SAYS THAT

17   THE EXPENDITURE HAS TO BE REASONABLY AND

18   NECESSARILY INCURRED.

19             AND IT HAS TO BE REASONABLE AND

20   NECESSARILY INCURRED FOR A PARTICULAR PURPOSE.

21   THAT PURPOSE BEING "TO VERIFY THAT A COMPUTER

22   SYSTEM, COMPUTER NETWORK, COMPUTER PROGRAM OR DATA

23   WAS OR WAS NOT ALTERED, DAMAGED, OR DELETED BY THE

24   ACCESS."

25             SO THE STATUTE DOESN'T SAY ANY

1    EXPENDITURE, IT DOESN'T SAY IT HAS TO BE A CERTAIN

2    AMOUNT.

3              THE COURT:  IS THIS A THIRD PARTY

4    STANDARD, REASONABLE AND NECESSARILY INCURRED?

5              MR. BURSOR:  YOUR HONOR, I THINK WHEN THE

6    LAW USES THE TERM "REASONABLE," THAT'S AN OBJECTIVE

7    STANDARD, YES.

8              SO YOUR HONOR, WHEN THE MOTION CAME IN,

9    FACEBOOK SAID VERY LITTLE ABOUT WHAT THEY DID OTHER

10   THAN THEY TRACKED AND BLOCKED THE ASSESS.

11             THEY NEVER SAID IN THEIR MOVING PAPERS

12   THAT THE ASSESS CAUSED ANY INJURY, ALTERATION, OR

13   DELETION OF DATA.  THEY DIDN'T PUT IN ANY EVIDENCE

14   THAT SUGGESTED THAT THAT HAPPENED.  THEY DIDN'T PUT

15   ANY EVIDENCE THAT THEY EVEN HAD A CONCERN THAT THAT

16   HAPPENED.  THEY DIDN'T PUT IN EVIDENCE THAT THE

17   REASON THEY TRACKED THE ACCESS WAS OUT OF CONCERN

18   THAT THERE WAS AN ALTERATION OR DELETE OF DATA.

19   NOTHING ABOUT THIS.

20             WE THEN FILED A CROSS MOTION FOR SUMMARY

21   JUDGEMENT ON THIS POINT SAYING FACEBOOK HAS NO

22   STANDING BECAUSE THEY HAVE NO INJURY.  THEY'VE ONLY

23   PLEADED HARM TO REPUTATION, THAT DOESN'T QUALIFY.

24             THEY THEN CAME BACK --

25             THE COURT:  LET ME SLOW YOU DOWN BECAUSE

                                                        19

1    THESE ARE IMPORTANT ENOUGH THAT I WANT TO

2    UNDERSTAND BECAUSE THIS IS ALL STATUTORY

3    INTERPRETATION.

4              I DON'T HAVE MUCH TO GO ON IN TERMS OF

5    HOW TO LOOK AT THE STATUTE, BUT IT SEEMS TO ME AS I

6    HEAR YOUR ARGUMENT, IF A THIRD PARTY STANDARD OF

7    REASONABILITY IS TO BE APPLIED AND THE OWNER OF THE

8    SYSTEM KNOWS THAT THERE HAS BEEN THIS INTRUSION AND

9    THEY WANT TO INVESTIGATE WHETHER IT HAS ALTERED,

10   DAMAGED ANYTHING, WHETHER OR NOT IT ACTUALLY HAS

11   TAKEN PLACE AND SOME EXPENDITURE IS INCURRED FOR

12   THAT.

13             YOUR ARGUMENT IS THAT THAT'S NOT COVERED

14   BY THE STATUTE; IS THAT CORRECT?

15             MR. BURSOR:  YOUR HONOR, IN ORDER TO BE

16   COVERED IT WOULD HAVE TO BE REASONABLY INCURRED AND

17   THERE WOULD HAVE TO BE EVIDENCE OF THAT BUT THAT

18   SKIPS OVER --

19             THE COURT:  I INCLUDED THAT IN MY

20   HYPOTHETICAL.  I SAID IF THEY REASONABLY AND

21   NECESSARILY, MEETING A THIRD PARTY STANDARD,

22   DECIDED THEY ARE GOING TO INVESTIGATE AND WHAT THEY

23   FIND IS THERE'S NO LOSS, THAT THAT EXPENSE OF THE

24   INVESTIGATION IS NOT COVERED; IS THAT CORRECT?  IS

25   THAT YOUR ARGUMENT?

1          MR. BURSOR:  NO, THAT'S NOT.  YOUR HONOR,

2     I THINK THAT WOULD BE COVERED.  IF THEY MADE AN

3     EXPENDITURE FOR THE PURPOSE OF VERIFYING --

4          THE COURT:  HOW MUCH OF AN EXPENDITURE IS

5     REQUIRED?

6          MR. BURSOR:  SOMETHING BEYOND A DE

7     MINIMUS EXPENDITURE.

8          THE COURT:  WHERE DO YOU GET THAT?

9          MR. BURSOR:  WELL, THERE HAS TO BE SOME

10    EXPENDITURE.

11         THE COURT:  RIGHT.  BUT THERE'S NO

12    STANDARD.

13         MR. BURSOR:  THERE'S NO AMOUNT STATED.

14         THE COURT:  IF ANY EXPENDITURE IS MADE TO

15    INVESTIGATE, TO VERIFY, EVEN IF THERE'S NO HARM THE

16    PARTY HAS STANDING?

17         MR. BURSOR:  CORRECT.

18         THE COURT:  ALL RIGHT.

19         NOW LET ME TURN TO YOUR OPPONENT ON THIS

20    ISSUE.  I WILL COME BACK.  I WILL COME BACK, BUT I

21    WANT TO HEAR ON THE STANDING ISSUE.

22         MR. CHATTERJEE:  I WOULD BE HAPPY TO,

23    YOUR HONOR.

24         FIRST OF ALL THERE ARE TWO CASES THAT I

25    THINK ARE PARTICULARLY IMPORTANT TO READ WITH

1    RESPECT TO THE DAMAGE OR LOSS ISSUE.  ONE IS THE

2    COMPUTER FRAUD AND ABUSE ACT CASE AND THE OTHER IS

3    ACTUALLY A CALIFORNIA PENAL CODE 502(C) CASE OUT

4    OF, OF ALL PLACES, THE DISTRICT OF JEW JERSEY.

5              THE COURT:  WHY IS THAT NOTEWORTHY?

6              MR. CHATTERJEE:  THE ONLY REASON IS IT'S

7    A NEW JERSEY COURT INTERPRETING CALIFORNIA PENAL

8    CODE 502(C) WHICH IS A LITTLE BIT UNUSUAL.

9              THE COURT:  I SEE.

10             MR. CHATTERJEE:  AND THE NEW JERSEY CASE

11   IS JOSEPH OAT HOLDINGS, AND THE CITE ON IT IS 2009,

12   U.S. DISTRICT LEXIS 95909.

13             AND THEN THE OTHER IS THE

14   SHURGARD STORAGE CENTERS, INC. CASE OUT OF WESTERN

15   DISTRICT OF WASHINGTON, 119 F. SUPP 2D 1121.

16             IN BOTH OF THOSE CASES -- ONE IS UNDER

17   THE COMPUTER FRAUD AND ABUSE ACT, THAT'S THE

18   SHURGARD STORAGE CASE, AND THE JOSEPH OAT HOLDINGS

19   CASE IS UNDER 502(C), THEY BOTH ENDORSE

20   YOUR HONOR'S QUESTION WHICH IS, IF YOU ARE SPENDING

21   EFFORT TO TRY AND STOP AN INTRUSION, THAT IS DAMAGE

22   OR LOSS.

23             NOW THERE'S A STATUTORY INTERPRETATION

24   QUESTION THAT I THINK YOUR HONOR CORRECTLY NOTICED

25   ABOUT THE 502(E)(1) STANDING REQUIREMENT.

1          THE FIRST THING TO NOTICE ABOUT THE

2    DAMAGE OR LOSS LANGUAGE IS THAT DAMAGE OR LOSS IS

3    NOT SOMETHING THAT IS EXPRESSLY DEFINED IN THE

4    STATUTE.  I THINK YOUR HONOR'S QUESTIONS PROPERLY

5    NOTED THAT THE DEFINITIONS THAT MR. BURSOR RELIED

6    UPON ARE NOT ABOUT DAMAGE OR LOSS, THEY ARE

7    DEFINING OTHER TERMS.

8          WHY IS THAT SO?  BECAUSE THE STATUTE

9    UNDER 502(E)(1) SAYS THAT FACEBOOK, OR A PERSON WHO

10   IS A VICTIM OF THIS CRIME, CAN FILE A CIVIL ACTION

11   AGAINST THE VIOLATOR FOR COMPENSATORY DAMAGES AND

12   INJUNCTIVE RELIEF OR OTHER EQUITABLE RELIEF.

13          FOLLOWING THAT PORTION OF 502(E)(1) THERE

14   IS ONE OF THE THINGS THAT COMPENSATORY DAMAGES

15   SHALL INCLUDE.  BUT THE STATUTE IN AND OF ITSELF

16   IDENTIFIES THAT THERE CAN BE OTHER FORMS OF HARM

17   BEYOND COMPENSATORY DAMAGES BECAUSE IT ALLOWS FOR

18   INJUNCTIVE OR OTHER FORMS OF EQUITABLE RELIEF.

19   IT'S PRECISELY THE RELIEF WE ARE SEEKING HERE.

20          IN THIS CASE, WHEN POWER DECIDED TO

21   ENGAGE IN ITS COMPUTER INTRUSION, WE HAD TO COMMIT

22   RESOURCES TO SENDING A CEASE AND DESIST LETTER, WE

23   HAD TO SEND RESOURCES TO ENGAGING IN NEGOTIATION

24   WHICH THEY LATER BAILED OUT OF, WE HAD TO ENGAGE IN

25   EFFORTS AND EXPENDITURES IN ORDER TO PUT UP

23

1    TECHNICAL BARRIERS, AND THEN WE HAD TO ENGAGE IN

2    EFFORTS TO EVALUATE WHAT HAD ACTUALLY BEEN DONE BY

3    POWER.

4            THOSE ARE ALL THE SORTS OF DAMAGES AND

5    LOSSES THAT 502(C), THE SHURGARD STORAGE CASE AND

6    JOSEPH OAT RECOGNIZED ARE PROPER.

7            THE COURT:  WELL, LET ME DO THIS.  I TAKE

8    SERIOUSLY THIS QUESTION ABOUT STANDING AND I WILL

9    TAKE A LOOK AT IT.  MY INITIAL REACTION IS THAT I

10   SHOULD ACCORD TO FACEBOOK, STANDING TO ASSERT A 502

11   VIOLATION SO THAT I CAN GET TO THE MERITS OF

12   WHETHER OR NOT THIS CONSTITUTES SUCH A VIOLATION,

13   BECAUSE IT SEEMS TO ME THAT I DON'T WANT TO SET TOO

14   HIGH A BARRIER OF ALLEGED VICTIM TO AT LEAST BRING

15   THE MATTER TO A COURT.

16           AND SO IF I WERE TO SAY FACEBOOK HAS NO

17   STANDING I WOULD SAY I'M NOT EVEN GOING TO LISTEN

18   OF WHETHER OR NOT THERE'S BEEN A VIOLATION OF 502,

19   BECAUSE I THINK THE LANGUAGE OF THE STATUTE HAVING

20   TO DO WITH VERIFICATION AND THOSE KINDS OF TERMS

21   ADMIT TO LEGITIMATE, REASONABLE, INVESTIGATION AND

22   WHETHER OR NOT A HARM IS ACTUALLY FOUND AND GIVES

23   STANDING FOR SOMEONE TO BRING THAT TO A COURT.

24           SO GO TO THE QUESTION OF WHETHER OR NOT

25   THERE IS A VIOLATION OF 502 ON THE MERITS.

1          MR. BURSOR:  YOUR HONOR, IF I MAY, I

2    THINK -- I DIDN'T GET A CHANCE TO ADDRESS THE

3    REALLY CRUCIAL ISSUE ON THE STANDING POINT WHICH IS

4    THE PURPOSE OF THE EXPENDITURE, NOT THE AMOUNT.

5          WHEN YOU LOOK AT THE EXPENDITURES

6    DESCRIBED IN FACEBOOK'S PAPERS AND THE EXPENDITURES

7    DESCRIBED BY MR. CHATTERJEE AT THIS ARGUMENT, NONE

8    OF THEM HAVE ANYTHING TO DO WITH THE PURPOSE

9    DESCRIBED IN (E)(1).

10          THE EXPENDITURES THEY LIST ARE THEY HIRED

11   OUTSIDE COUNSEL TO SEND A CEASE AND DESIST LETTER.

12   OUTSIDE COUNSEL DO NOT DO THINGS LIKE VERIFY IF THE

13   COMPUTER SYSTEM WAS INJURED.

14          THEY SAY THEY EXPENDED RESOURCES TO BLOCK

15   FUTURE ACCESS.  THE PURPOSES PERMITTED UNDER

16   502(E)(1) HAVE NOTHING TO DO WITH FUTURE ACCESS,

17   THEY ARE ALL IN THE PAST TENSE TO VERIFY IF THERE

18   WAS AN INJURY TO THE COMPUTERS CAUSED BY THE

19   ACCESS.

20          SO I THINK, YOUR HONOR, WHEN -- IF THE

21   COURT IS TO FOCUS ON THE AMOUNT OR OTHER ASPECTS OF

22   THE EXPENDITURE THAT WAS MADE, THAT REALLY MISSES

23   THE POINT THAT THESE EXPENDITURES WERE NOT MADE FOR

24   THE PURPOSE DESCRIBED IN THE STATUTE.

25          AND YOUR HONOR, THIS IS A SUMMARY

25

1    JUDGEMENT MOTION.  AND A SUMMARY JUDGEMENT MOTION

2    IS NOT ABOUT THEORIES THAT LAWYERS PUT INTO A

3    BRIEF, IT'S ABOUT EVIDENCE.

4              SO IF THERE WAS AN EXPENDITURE MADE FOR

5    THESE PURPOSES, IT WAS INCUMBENT ON THE DEFENDANTS

6    TO COME FORWARD WITH EVIDENCE.

7              THE COURT:  MAYBE YOU MISUNDERSTOOD ME.

8    I'LL LOOK AT YOUR STANDING ISSUE, I'M NOT

9    DISMISSING IT, I'M NOT RULING AGAINST YOU.  I'M

10   ASKING YOU TO MOVE ON TO THE MERITS BECAUSE IF I

11   GET OVER IT AND I HAVEN'T HEARD FROM YOU ON THE

12   MERITS THEN YOU ARE IN TROUBLE.

13             MR. BURSOR:  YOUR HONOR, ON THE MERITS,

14   THERE WAS NO -- EVEN IF FACEBOOK HAD STANDING BASED

15   ON THIS EPHEMERAL THEORY OF INJURY BECAUSE THEY

16   HIRED LAWYERS, THERE IS NO VIOLATION OF 502(C) BY

17   POWER BECAUSE EVERY ACCESS TO FACEBOOK'S WEBSITE

18   WAS MADE BY AN AUTHORIZED FACEBOOK USER WITH

19   LEGITIMATE LOGIN CREDENTIALS WHO UNDENIABLY HAD

20   PERMISSION TO ACCESS THEIR OWN USER DATA ON

21   FACEBOOK; THERE IS ISN'T EVEN A DISPUTE ABOUT THAT.

22             POWER NEVER ACCESSED FACEBOOK DIRECTLY,

23   IT WAS ONLY FACEBOOK SUBSCRIBERS ACCESSING THE

24   FACEBOOK WEBSITE THROUGH THE POWER BROWSER.  THE

25   SAME WAY ANY USER WOULD ACCESS FACEBOOK THROUGH THE

1    INTERNET EXPLORER BROWSER OR THE FIREFOX BROWSER OR

2    THE SAFARI BROWSER.  ALL POWER DID WAS GIVE USERS A

3    MEANS TO ACCESS THEIR OWN DATA WHERE THEY WERE

4    AUTHORIZED TO DO SO.

5            AND YOUR HONOR, THERE IS SOME CASE LAW

6    AND MUCH OF IT IS DISCUSSED IN THE ELECTRONIC

7    FRONTIER FOUNDATION AMICUS BRIEF.  WE FOCUSED

8    HEAVILY ON THE STANDING ARGUMENT, AND WE ARGUED

9    AUTHORIZATION AS WELL AND EFF FOCUSED ON THAT AS

10   WELL IN THEIR AMICUS BRIEF.

11           BUT THERE ARE SEVERAL CASES, YOUR HONOR,

12   THAT STAND FOR THE PROPOSITION THAT ACCESS IS NOT

13   UNAUTHORIZED UNDER 502 IF IT'S MADE BY A PERSON WHO

14   HAS AUTHORIZATION TO ACCESS THE COMPUTER BUT THEN

15   ACCESSES THE COMPUTER FOR A PURPOSE OR IN A MANNER

16   THAT GOES BEYOND THE DEFINED AUTHORIZATION.

17           I WILL GIVE TWO EXAMPLES.  IN

18   CHRISMAN V.  LOS ANGELES, THE CASE BEFORE THE

19   CALIFORNIA COURT OF APPEAL, A POLICE OFFICER HAD

20   GONE AND USED THE POLICE DEPARTMENT'S COMPUTERS,

21   THE CITY'S COMPUTERS, TO LOOK UP INFORMATION ABOUT

22   CELEBRITIES AND OTHER MATTERS THAT HE HAD NO

23   BUSINESS LOOKING AT.

24           SO HE WAS AUTHORIZED TO USE THE COMPUTER

25   SYSTEM BUT HE WAS ONLY AUTHORIZED TO USE IT FOR

1    PROPER POLICE BUSINESS.  AND WHEN HE WENT AND

2    LOOKED AT CELEBRITY GOSSIP TYPE GOSSIP THINGS, HE

3    EXCEEDED WHAT HE WAS AUTHORIZED TO DO.

4              AND THE CALIFORNIA COURT OF APPEALS SAID

5    NO, THAT IS NOT UNAUTHORIZED ASSESS UNDER 502

6    BECAUSE THE POLICE OFFICER WAS AUTHORIZED TO USE

7    THE COMPUTER, HE SIMPLY WENT BEYOND THE PROPER

8    PURPOSES.

9              THE COURT:  I'M FAMILIAR WITH THAT CASE.

10   LET ME SEE IF I CAN PUT IT IN THE CONTEXT OF WHAT'S

11   HAPPENING HERE.

12             HERE, LET'S ASSUME THAT OFFICER GOES IN

13   AND HE'S LOOKING FOR INFORMATION FOR A PERSONAL

14   PURPOSE, AND THE CITY OR WHOEVER IS OPERATING THE

15   SYSTEM KNOWS THAT PEOPLE ARE DOING THAT SO THEY PUT

16   IN CERTAIN PROTECTIONS WHERE YOU NEED A POLICE CASE

17   NUMBER AND YOU NEED THE SERGEANT WHO IS INVOLVED IN

18   THE CASE AND ALL THAT INFORMATION TO BE ADDED.

19             AND THIS PERSON DOESN'T HAVE THAT, AND SO

20   THE TECHNOLOGY IS SET UP SO THAT HE NEEDS TO GET

21   AROUND THOSE REQUIREMENTS AND HE STARTS TO USE SOME

22   DEVICE TO GET AROUND IT.

23             WOULD THAT CHANGE THE CIRCUMSTANCES WHERE

24   IT BECOMES A HACK AS OPPOSED TO SOMEONE WHO HAS

25   ACCESS?

28

1          MR. BURSOR:  I DON'T KNOW THE ANSWER TO

2     THAT, YOUR HONOR, BECAUSE I DON'T THINK THERE'S A

3     CASE THAT ADDRESSES THAT ISSUE.

4          THE COURT:  ISN'T THAT WHAT'S RAISED

5     HERE?

6          IN OTHER WORDS, WHAT FACEBOOK SAID THEY

7     DID WAS IT PUT IN A TECHNOLOGICAL BARRIER TO THE

8     KIND OF ACCESS THAT WAS COMING IN.  FOR EXAMPLE, IT

9     IDENTIFIED MAYBE POWER'S, AS A WEBSITE, THAT

10    THROUGH WHICH IT WOULD NOT ALLOW.  SO IN ORDER TO

11    GET AROUND THAT, POWER MADE SOME MODIFICATIONS TO

12    ITSELF OR TO HOW IT ACCESSED FACEBOOK TO DISGUISE

13    WHAT'S GOING ON, AND THAT THEN BECAME SOMETHING

14    OTHER THAN THE USER SIMPLY USING POWER AS THE KEY

15    TO ENTERING INTO THEIR OWN ACCOUNT.

16         MR. BURSOR:  WELL, ACTUALLY THE LAST PART

17    OF YOUR HONOR'S STATEMENT IS NOT ACCURATE.  THE

18    USERS WERE STILL USING THEIR AUTHORIZED USERNAMES

19    AND PASSWORDS TO GET INTO THEIR ACCOUNT.

20         THERE WAS A DISPUTE BETWEEN POWER AND

21    FACEBOOK AS TO WHETHER POWER WAS GOING TO BE

22    ALLOWED TO OFFER THOSE SERVICES SO THAT PEOPLE

23    COULD ACCESS THEIR ACCOUNTS THROUGH POWER.

24         AND I THINK IF YOUR HONOR TAKES A LOOK AT

25    THE EVIDENCE THAT WAS SUBMITTED BY FACEBOOK

29

1    ATTACHED TO MR. AVALOS'S DECLARATION WHERE HE

2    SUBMITTED THE BACK AND FORTH BETWEEN MR. VACHANI

3    AND THE FACEBOOK FOLKS.  YOU CAN SEE THERE'S A BACK

4    AND FORTH WHERE POWER IS A NEW BUSINESS THAT'S

5    STARTING AND THEY WANT TO BE ON GOOD TERMS WITH

6    FACEBOOK SO THEY ARE CONSTANTLY TRYING TO ENGAGE

7    FACEBOOK TO SOLVE WHATEVER PROBLEM FACEBOOK HAS AND

8    ATTACH IN AN APPROPRIATE WAY WITHOUT -- WHETHER

9    POWER HAD A LEGAL ENTITLEMENT TO DO WHAT THEY WERE

10   DOING, WHICH THEY BELIEVE THEY DID, NEVERTHELESS

11   BECAUSE THEY WANTED GOOD RELATIONS, THEY WANTED TO

12   WORK WITH FACEBOOK.

13          AND FACEBOOK HAD THROWN UP THIS BARRIER

14   AND POWER DID CIRCUMVENT THAT BARRIER, AND THAT IS

15   ESTABLISHED BY THE PLEADINGS.  BUT POWER'S

16   CIRCUMVENTION STILL DID NOTHING OTHER THAN ALLOW

17   USERS TO CONTINUE TO ACCESS THEIR OWN ACCOUNTS WITH

18   THE KEYS AND PASSWORDS THAT FACEBOOK HAD GIVEN

19   THEM.

20          WHAT POWER DID WAS TO DEFEND ITSELF SO

21   THAT IT WOULD BE ON THE SAME FOOTING WITH EVERY

22   OTHER BROWSER SO THE USER USING THE FACEBOOK

23   BROWSER COULD ACCESS IT THE SAME AS SOMEONE USING

24   INTERNET EXPLORER OR FIREFOX OR SAFARI

25          THE COURT:  SO I SHOULD SAY AS A MATTER

1    OF LAW THAT ANY TECHNOLOGICAL BARRIER WHICH

2    FACEBOOK ERECTS TO ITS USERS' ACCESS CANNOT, AS A

3    MATTER OF LAW, VIOLATE 502?

4         MR. BURSOR:  WE ARE NOT ASKING YOU TO DO

5    THAT AT THIS HEARING, YOUR HONOR.

6         THE COURT:  WELL, WHERE IS THE LINE?

7         IN OTHER WORDS, IF I -- IF THERE IS A

8    TECHNOLOGICAL BARRIER THAT FACEBOOK COULD ERECT

9    WHERE ITS USERS, GOING THROUGH POWER, WOULD VIOLATE

10   502, DON'T I NEED TO KNOW WHERE THAT IS SO THAT I

11   CAN SAY CLEARLY I'M NOT AT THAT LINE IN THIS CASE?

12   SO THAT'S WHY I ASKED THE QUESTION.

13        MR. BURSOR:  THAT'S A DIFFICULT QUESTION,

14   YOUR HONOR, PARTICULARLY IN A CASE WHERE THERE'S NO

15   EVIDENTIARY RECORD PERTINENT TO THAT QUESTION.

16        THE COURT:  LET ME TAKE THAT AS THE

17   REASON I'M CONCERNED.  THIS IS A MOTION FOR

18   JUDGEMENT ON THE PLEADINGS.  SO IF THERE IS A --

19   THAT MOTION REQUIRES THAT EVERYTHING I ASSUME ON

20   HIS SIDE CAN BE PROVED AND I'VE GOT TO CONSTRUE THE

21   EVIDENCE FAVORABLY TO POWER IN THIS CASE.

22        THIS IS VERY EARLY IN THIS LITIGATION AND

23   I CAN APPRECIATE WHERE BOTH SIDES WOULD WANT TO

24   HAVE EARLY COURT DETERMINATION, BUT AM I IN A

25   POSITION WHERE SIMPLY THE ADMISSION ON THE PART OF

1    POWER THAT IT USES ITS TOOLS TO ALLOW THOSE WHO

2    WOULD WISH TO ACCESS FACEBOOK THROUGH POWER, AREN'T

3    I TOO EARLY IN THIS CASE TO MAKE A JUDGMENT THAT

4    THAT ALONE VIOLATES 502?

5             MR. CHATTERJEE:  NO, YOUR HONOR.  YOU CAN

6    ISSUE AN ORDER ON JUDGMENT ON THE PLEADINGS IN OUR

7    FAVOR NOW.

8             THE COURT:  WHY?

9             MR. CHATTERJEE:  BECAUSE THEY ADMITTED AN

10   EXTRAORDINARY AMOUNT OF FACTS IN THEIR ANSWER, AND

11   THAT IS A KEY ISSUE BECAUSE IT'S THE SAME AS A

12   STIPULATION, A REQUEST FOR ADMISSION.

13            THE COURT:  HAVE THEY ADMITTED FACTS

14   HAVING TO DO WITH THE NATURE OF THE TECHNOLOGICAL

15   BARRIER AND THE NATURE OF HOW THEY OVERCAME IT THAT

16   I CAN SAY, AS A MATTER OF LAW, THAT CONSTITUTES

17   HACKING?

18            MR. CHATTERJEE:  YES, YOUR HONOR; THEY

19   DID.

20            NOT ONLY DID WE SUBMIT IT, MR. VACHANI

21   HIMSELF PUT IN TESTIMONY SAYING THAT HE DIDN'T

22   THINK PUTTING UP A TECHNICAL BARRIER WAS ALL THAT

23   HARD AND HE CIRCUMVENTED IT.

24            THE COURT:  ARE ALL TECHNOLOGICAL

25   BARRIERS TREATED EQUALLY?

1      IN OTHER WORDS, ARE THERE SOME

2   TECHNOLOGICAL BARRIERS SUCH AS MAYBE -- I KNOW

3   THERE ARE IN USE CERTAIN ENTRY DEVICES SUCH AS,

4   TYPE THE WORD THAT APPEARS BELOW, AND IT'S KIND OF

5   A LITTLE ASKEW SO AS TO ASSURE THERE'S A REAL HUMAN

6   BEING ON THE OTHER SIDE, THAT'S A TECHNOLOGICAL

7   BARRIER.  BUT THERE COULD BE OTHERS THAT MAY OR MAY

8   NOT SERVE AS A LINE OVER WHICH YOU CAN OR CANNOT

9   CROSS UNDER 502.  AND AREN'T I TOO EARLY IN THIS

10  CASE TO BE DOING THE LINE DRAWING?  BECAUSE A

11  JUDGMENT ON THE PLEADINGS MEANS CASE OVER.

12      MR. CHATTERJEE:  SURE, YOUR HONOR.  BUT

13  THIS IS A CASE THAT'S CONSIDERABLY MORE THAN THAT,

14  RIGHT?  BECAUSE NOT ONLY WERE THERE TECHNOLOGICAL

15  BARRIERS, WE TOLD THEM WE DIDN'T WANT THEM TO

16  ACCESS.

17      THE REGISTER V. VERIO CASE, WHICH WE

18  CITE, IT WAS A CASE WHERE A C&D WAS SENT AND THEY

19  SAID, PLEASE DON'T ACCESS OUR WEBSITE IN THIS WAY.

20      AND THAT'S ENOUGH -- IF YOUR HONOR IS PUT

21  IN THE POSITION OF DECIDING WHAT KIND OF TECHNICAL

22  BARRIER IS ENOUGH, THERE'S NO SUPPORT FOR THAT KIND

23  OF LANGUAGE IN THE STATUTE.

24      IN THIS CASE IT'S NOT A PLACE WHERE THE

25  LINE IS CLOSE, THEY CROSSED IT REALLY FAR.  WHAT

33

1    MORE COULD FACEBOOK HAVE DONE?  WE HAD A TERMS OF

2    USE; WE ALERTED THEM TO THE TERMS OF USE; WE SENT

3    THEM A CEASE AND DESIST; WE TRIED TO WORK WITH

4    THEM; THEY ASSURED US THEY WERE GONNA WORK WITH US.

5            ALL OF THESE ARE ADMITTED IN THE

6    PLEADINGS.  WE THEN ERECTED A TECHNICAL BARRIER.

7    THEY SAID, MAYBE YOU SHOULDN'T APPLY 502(C) IN THIS

8    INSTANCE BECAUSE IT WASN'T REALLY THAT HARD TO WORK

9    AROUND IT.  AT WHAT POINT DOES THE COURT COME IN

10   AND SAY, WELL, WE ARE NOT GOING TO RECOGNIZE WHAT

11   502(C) SAYS BECAUSE THE BARRIER WASN'T ENOUGH --

12           THE COURT:  SO YOU DON'T THINK ANY

13   TECHNOLOGICAL BARRIER IS SUFFICIENT?

14           MR. CHATTERJEE:  I WOULD SAY UNDER THE

15   FACTS THAT ARE ADMITTED IN THIS CASE, THE

16   ESCALATION THAT WAS FOLLOWED AND THE INTENTIONAL

17   DECISION THAT CONSTANTLY DID NOT HONOR FACEBOOK'S

18   REQUESTS.  THERE WAS A KNOWING AND WITHOUT

19   PERMISSION ACCESS TO THE FACEBOOK WEBSITE.

20           THEY MET THE EXPRESS -- THOSE ADMISSIONS

21   MEET THE EXPRESS LANGUAGE OF CALIFORNIA PENAL CODE

22   502(C).

23           MR. BURSOR:  YOUR HONOR, MAY I?

24           THE COURT:  CERTAINLY.

25           MR. BURSOR:  THE ACTUAL ACCESS THAT

34

1    OCCURRED IN THIS CASE ALL OCCURRED WITHIN A TWO

2    MONTH SPAN, TWO AND A HALF MONTHS -- LATE DECEMBER

3    OF '08 THROUGH FEBRUARY OF '09.

4           AND THE VERY SPARSE EVIDENCE THAT IS IN

5    THE RECORD FROM THE VACHANI DECLARATION AND FROM

6    MR. AVALOS'S DECLARATION ATTACHING A CORRESPONDENCE

7    BETWEEN FACEBOOK AND MR. VACHANI, WHAT THAT SHOWS

8    IS THAT THE PARTIES AT THAT TIME WERE ATTEMPTING TO

9    RESOLVE THIS THROUGH HAVING POWER CONNECT TO

10   FACEBOOK THROUGH MEANS THAT WERE GOING TO BE

11   ACCEPTABLE TO BOTH SIDES.

12          WHAT IS NOT IN THE RECORD IS THE TIMING

13   OF WHEN THE SUPPOSED BARRIER OF THE IP BLOCKING WAS

14   IMPLEMENTED, WHAT IS NOT IN THE RECORD IS WHAT THE

15   CIRCUMVENTION WAS THAT GOT AROUND THE IP BLOCKING.

16   WHAT IS NOT IN THE RECORD IS WHERE THE PARTIES WERE

17   IN THEIR DISCUSSIONS AND WHETHER THE CIRCUMVENTION

18   WAS NECESSARY.

19          THE COURT:  CAN I -- LET ME ASK YOU THIS:

20   CAN I SAY AT LEAST, HOWEVER, THAT IF FACEBOOK

21   ERECTS A TECHNOLOGICAL BARRIER, ANY CONDUCT TO

22   OVERCOME IT IS WITHOUT PERMISSION, BY DEFINITION?

23          MR. BURSOR:  I DON'T THINK YOUR HONOR HAS

24   THE RECORD BEFORE YOU TO MAKE A SWEEPING

25   PRONOUNCEMENT OF THAT NATURE.

1        IF THERE'S GOING TO BE A BROAD GENERAL

2   STATEMENT TO THAT EFFECT, IT OUGHT TO BE MADE ON A

3   FULL EVIDENTIARY RECORD BY A COURT THAT KNOWS WHAT

4   HAPPENED IN THIS CASE, KNOWS IT HAS AN ACTUAL CASE

5   OR CONTROVERSY BEFORE IT THAT CALLS FOR RESOLUTION

6   IN THAT MATTER.

7        THE COURT:  THAT MAY BE.

8        IN OTHER WORDS, ISN'T THE ESSENCE OF

9   PERMISSION THAT YOU DON'T HAVE TO DO SOMETHING TO

10  OVERCOME A BARRIER, PERMISSION MEANS THE GATE IS

11  OPEN.  SO IF THEY DO ANYTHING TO LOCK THE GATE,

12  AREN'T YOU, BY DEFINITION, THEN ENTERING WITHOUT

13  PERMISSION?

14       MR. BURSOR:  CLEARLY NOT, YOUR HONOR,

15  BECAUSE THAT WOULD CLEARLY BE WRONG, WITH ALL DUE

16  RESPECT, BECAUSE THERE WAS A GATE AND THERE WAS A

17  LOCK ON THE GATE, WHICH WAS THE USERNAME AND

18  PASSWORD ISSUED TO THE FACEBOOK USERS.  FACEBOOK

19  USERS HAD PERMISSION TO USE THAT KEY AND THAT GATE

20  BY USING THE LOGIN NAME AND PASSWORD; THAT'S A

21  BARRIER.

22       THE COURT:  THAT'S A FORM OF PERMISSION

23  TO THE USER.  AND I CAN WORD IT IN A WAY SUCH THAT

24  IF THE TECHNOLOGICAL BARRIER STILL ALLOWED ACCESS

25  SIMPLY USING THE USERNAME AND PASSWORD, THAT'S NOT

                                                      36

1    A TECHNOLOGICAL BARRIER, IT'S ACTUALLY THE SAME.

2              BUT IF THE BARRIER IS ANYTHING MORE THAN

3    THAT -- I'M TRYING TO GET TO WHETHER OR NOT I'M IN

4    A 502 WORLD BECAUSE THE CLAIM IS UNDER 502, AND IF

5    I'M IN THE 502 WORLD IT STILL RAISES THE QUESTION

6    OF THE MERITS OF THE CLAIM.

7              THE QUESTION THAT I'M PUTTING IS, AND I

8    PUT IT TO BOTH SIDES QUITE FRANKLY IS, IF THERE

9    WERE TECHNOLOGICAL BARRIERS AREN'T I, AS OPPOSED TO

10   USERNAME AND PASSWORD, ISN'T THAT WHAT 502 IS ALL

11   ABOUT?

12             MR. BURSOR:  LET ME EXPLAIN, YOUR HONOR,

13   I THINK VERY QUICKLY AND PRECISELY, WHY THE COURT

14   CAN'T MAKE THAT DETERMINATION NOW.

15             THE COURT DOESN'T HAVE A RECORD OF WHAT

16   THE BARRIER WAS OR CIRCUMVENTION WAS.  SO IF THE

17   PARTIES ARE IN THE COURSE OF NEGOTIATING A

18   RESOLUTION OR ATTEMPTING TO, WHICH IS CLEARLY THE

19   CASE, SEE THE AVALOS DECLARATION, AND FACEBOOK SAYS

20   WE DON'T WANT YOU ACCESSING OUR SITE IN THIS MANNER

21   FROM THIS IP THEREFORE WE'VE BLOCKED IT, AND POWER

22   IS WORKING ON A DIFFERENT MEANS OF ACCESS, TRYING

23   TO IMPLEMENT FACEBOOK CONNECT AND IS DOING SO

24   THROUGH A DIFFERENT IP ADDRESS -- AND I'M NOT

25   SAYING THOSE ARE THE FACTS.  I'M SAYING YOUR HONOR

1    DOESN'T HAVE THE FACTS BECAUSE FACEBOOK PUT IN NO

2    EVIDENCE.

3              IF THAT WAS THE CASE, THE COURT DOESN'T

4    HAVE A RECORD OF WHAT THE BARRIER WAS, WHY IT WAS

5    IN PLACE, HOW IT WAS CIRCUMVENTED, WHETHER THE

6    CIRCUMVENTION WAS PART OF THE JOINT PROJECT BETWEEN

7    THE TWO COMPANIES OF TRYING TO FIND COMMON GROUND

8    ON IMPLEMENTING THIS FACEBOOK CONNECT TECHNOLOGY.

9              THESE ARE ALL OPEN QUESTIONS IN THE CASE

10   BECAUSE FACEBOOK BROUGHT ITS MOTION BEFORE ANY

11   EVIDENCE WAS DEVELOPED, WITHOUT ANY DISCOVERY.

12             THEY COULD HAVE SUBMITTED A DECLARATION

13   FROM AN EMPLOYEE SAYING, THIS IS THE MEANS WE USED

14   TO BLOCK, AND SPECIFIED IT, AND HERE'S HOW IT WAS

15   OVERCOME AND HERE'S WHY WE DID THAT.

16             THE COURT:  BY BRINGING THE MOTION IT

17   GIVES THE COURT AN OPPORTUNITY TO NARROW THE CASE.

18             SO ARE YOU SAYING I SHOULD RESIST EVEN

19   THE TEMPTATION TO SAY IN ORDER TO STATE A CLAIM

20   UNDER THIS YOU MUST ALLEGE A TECHNOLOGICAL BARRIER

21   AND GIVE ME FACTS?

22             AND IT SEEMS TO BE YOUR POSITION IS I

23   SHOULDN'T EVEN SAY THAT, THE TECHNOLOGICAL BARRIER

24   BY DEFINITION -- THERE'S NO BARRIER THAT CAN BE TOO

25   HIGH OR TOO LOW.  AND SOMEHOW I'M BOTHERED BY THE

1     NOTION THAT I SHOULDN'T SAY ANYTHING.

2            NOW, I AM INTRIGUED BY THE NOTION THAT

3     THERE'S A SETTLEMENT BECAUSE I ALWAYS BELIEVE IN

4     WORLD PEACE AND I BELIEVE IT STARTS RIGHT HERE.

5            SO IF YOU TELL ME THAT THE PARTIES ARE

6     WORKING OUT SOME KIND OF A RESOLUTION TO THIS

7     PROBLEM WHICH WOULD AVOID THE COURT HAVING TO

8     COMMENT AT ALL ON 502 AND WHERE IT STANDS, BECAUSE

9     I SEE THE AMICUS AND THAT MEANS THAT THERE'S A

10    COMMUNITY OF PEOPLE OUT THERE, NOT SAYING YOU TWO

11    DON'T REPRESENT THAT COMMUNITY, BUT THAT ARE

12    CONCERNED WITH THE STATUTE AND HOW FAR IT GOES.

13           SO QUITE FRANKLY I THOUGHT THAT IT WOULD

14    BE BENEFICIAL TO STATE SOMETHING ON IT, BUT I DON'T

15    BELIEVE IN ACTING IF THERE'S NO REASON TO ACT.  SO

16    IF YOU TELL ME THAT THESE TWO PARTIES WILL RESOLVE

17    THIS AND I WILL LEAVE IT TO SOME OTHER JUDGE TO

18    DEFINE THESE MATTERS, I'M HAPPY TO DO THAT.

19           MR. CHATTERJEE:  YOUR HONOR, WE DID TRY

20    MEDIATION IN THIS CASE THROUGH THE COURT'S PROGRAM.

21    WE MADE ZERO PROGRESS.

22           JUST TO BE CLEAR, WHAT DOES FACEBOOK WANT

23    OUT OF THIS LITIGATION?  WHAT FACEBOOK WANTS OUT OF

24    THIS LITIGATION AT THE END OF THE DAY IS THAT IF

25    POWER CHOOSES TO ACCESS THE FACEBOOK WEBSITE, IT

39

1    ACCESS IT THROUGH THE CONNECT PROGRAM WHICH IS WHAT

2    HUNDREDS OF THOUSANDS OF OTHER COMPANIES DO,

3    INCLUDING POWER COMPETITORS.

4         THAT'S ALL WE WANT.  THAT'S ALL WE'VE

5    EVER WANTED IN THIS CASE.  AND WE DON'T UNDERSTAND

6    WHY THEY CAN'T DO THAT.  INSTEAD, THEY WANT TO

7    ENGAGE IN THIS UNRESTRICTED INTRUSION INTO OUR

8    COMPUTER, AND THEY PUT IT UNDER THE GUISE OF USER

9    REQUESTS.

10        IF YOU LOOK AT PARAGRAPH 75 AND 66 OF

11   THEIR OWN ANSWER, THEY ADMIT THEY ARE THE ONES

12   DOING IT, POWER IS, NOT THE USERS.

13        THE COURT:  WELL, I'M ABOUT TO TAKE THIS

14   MATTER UNDER SUBMISSION, BUT I WILL GIVE YOU EACH

15   KIND OF A CLOSING WORD.

16        MR. BURSOR:  YOUR HONOR --

17        THE COURT:  I UNDERSTAND I'VE GOT THESE

18   ANTI-TRUST CLAIMS, BUT I'M NOT DEALING WITH THOSE

19   TODAY.

20        MR. BURSOR:  ALL RIGHT.

21   YOUR HONOR, MY CLOSING WORD WILL BE THIS:  I CAN

22   UNDERSTAND HOW IN THIS SORT OF NOVEL AREA OF THE

23   LAW, WE ARE AT A DIFFICULT SORT OF STITCH IN A

24   SOMEWHAT NEW AREA OF THE LAW AND THE COURT WANTS TO

25   STATE A RULE WITH SOME CLARITY SO THAT NOT ONLY

1   THESE PARTIES BUT OTHER PEOPLE OUT THERE IN THE

2   WORLD IN THIS FIELD CAN KNOW WHAT THEIR

3   RESPONSIBILITIES AND WHAT THEIR OBLIGATIONS ARE.  I

4   CAN UNDERSTAND THE COURT'S DESIRE TO DO THAT.

5         BUT I THINK THE COURT HAS TO FOCUS IN ON

6   THE MOTION BEFORE IT.  AND THE MOTION THAT'S BEFORE

7   IT DOES NOT PRESENT THE OPPORTUNITY FOR SUCH A

8   SWEEPING PRONOUNCEMENT.  AND THE REASON IT DOES NOT

9   PRESENT THE OPPORTUNITY IS BECAUSE AS A MOTION FOR

10  SUMMARY JUDGEMENT, THE COURT HAS TO LOOK TO WHETHER

11  FACEBOOK HAS MET ITS EVIDENTIARY BURDEN.

12        A SUMMARY JUDGEMENT MOTION IS AN

13  EVIDENTIARY MOTION, YOU HAVE TO PUT ON EVIDENCE.

14  AND THEY HAVE NOT PUT ON ANY EVIDENCE THAT COULD

15  ALLOW THE COURT TO FORM A COGENT ANSWER TO ANY OF

16  THE VERY -- YOU KNOW, THE QUESTIONS THE COURT ASKED

17  WERE VERY ON POINT, VERY IMPORTANT, THEY GO TO THE

18  HEART OF THE MATTER.  BUT THAT DOESN'T CHANGE THE

19  FACT THAT FACEBOOK HASN'T PUT IN EVIDENCE TO MEET

20  ITS EVIDENTIARY BURDEN UNDER RULE 56 TO GET SUMMARY

21  JUDGEMENT.

22        WE HAVE -- ON THE STANDING POINT, WE DID

23  PUT IN EVIDENCE.  WE PUT IN A DECLARATION FOR

24  MR. VACHANI THAT SAID NONE OF THESE INJURIES

25  HAPPENED, THEY NEVER COULD HAVE HAPPENED, FACEBOOK

41

1   HAD NO CONCERN EVER THAT THEY WOULD HAVE HAPPENED.

2                AND IF YOU GO AND LOOK AT THE

3   CORRESPONDENCE BETWEEN MR. VACHANI AND FACEBOOK,

4   THE CONTEMPORANEOUS CORRESPONDENCE, THERE'S NO

5   CONCERN EXPRESSED BY ANY PARTY TO THOSE

6   COMMUNICATIONS ABOUT ANY OF THESE THINGS TALKED

7   ABOUT IN 502(E)(1) OR 502(B)(9).

8                AND SO YOU HAVE A CASE WHERE YOU HAVE A

9   TOTALLY UNINJURED PARTY THAT'S TRYING TO BULLY SOME

10  SMALLER START UP THAT WANTS TO COMPETE WITH THEM.

11  AND THEY HAVEN'T SHOWN AN INJURY AND THEY HAVEN'T

12  PUT ON EVIDENCE OF A VIOLATION TO GET SUMMARY

13  JUDGEMENT.

14               SO THEIR MOTION FOR SUMMARY JUDGEMENT

15  SHOULD BE DENIED, OURS SHOULD BE GRANTED BECAUSE

16  THEY DON'T HAVE STANDING UNDER 502(E)(1).

17               IF YOU WANT TO COME INTO THIS COURT AND

18  GET RELIEF UNDER 502, YOU HAVE TO SHOW YOU MADE AN

19  EXPENDITURE REASONABLY OR NECESSARILY INCURRED FOR

20  THESE PURPOSES.  THEY DIDN'T DO THAT.  OR YOU HAVE

21  TO SHOW YOU HAVE AN INJURY, AND THEY CONCEDE THEY

22  DIDN'T HAVE AN INJURY.

23               THANK YOU, YOUR HONOR.

24               THE COURT:  VERY WELL.

25               COUNSEL.

42

1          MR. CHATTERJEE:  I GUESS I WILL START

2     WITH THE CORE DISAGREEMENT AS TO WHETHER THIS IS IN

3     FACT A NOVEL QUESTION OF LAW; IT ISN'T.

4          COURTS HAVE RECOGNIZED FOR A LONG TIME

5     THAT COMPUTER INTRUSIONS ARE PROTECTED.  THEY HAVE

6     BEEN PROTECTED UNDER THE COMPUTER FRAUD AND ABUSE

7     ACT AND THEY HAVE BEEN PROTECTED AS THE

8     NINTH CIRCUIT CASE OF EBAY V. BITTERS EDGE THAT I'M

9     SURE YOUR HONOR IS FAMILIAR WITH THAT TRESPASS TO

10    CHATTELS, AND CALIFORNIA PENAL CODE 502(C).

11         JUDGE SEEBORG IN THE CONNECTU CASE

12    RECOGNIZED THAT THIS TYPE OF ACTION, A FAR LESS

13    AGGRESSIVE FORM OF THIS TYPE OF ACTION, IS

14    ACTIONABLE UNDER CALIFORNIA PENAL CODE 502(C).

15         THE JOSEPH OAT HOLDINGS CASE THAT I

16    REFERRED TO YOU GRANTED SUMMARY JUDGEMENT FOR A

17    COMPUTER INTRUSION, YOUR HONOR.

18         WE'RE NOT ASKING YOU TO DO ANYTHING

19    HIGHLY UNUSUAL HERE, WE ARE ASKING YOU TO FOLLOW

20    WHAT THE LEGIONS OF CASES HAVE SAID IN THE PAST

21    THAT WHEN YOU SAY THE WELCOME LIGHT IS NOT ON AND

22    PEOPLE DECIDE TO WALK RIGHT PAST IT, THAT THAT IS

23    CONSIDERED AND SHOULD BE CONSIDERED A TRESPASS.

24    WHEN WE HAVE TO CONTINUALLY EXPEND MONEY TO NOTIFY

25    THEM AND KEEP THE TRESPASSERS OUT, THAT THAT IS A

1      PROPER DAMAGE OR LOSS UNDER THE LAW.

2              THESE ARE ALL ADMISSIONS UNDER THE

3      COMPLAINT.  IN TAB A OF THE BINDER I GAVE YOU,

4      YOUR HONOR, WE ACTUALLY WENT THROUGH EACH ONE OF

5      THE ELEMENTS OF CALIFORNIA PENAL CODE 502(C) AND WE

6      MARRIED IT TO THE VERY ADMISSIONS OR OTHER EVIDENCE

7      SUBMITTED BY THE PARTIES TO SHOW HOW EACH ELEMENT

8      IS MET.

9              YOUR HONOR, THERE'S NO QUESTION HERE THAT

10     POWER MADE THE DECISION NOT TO COME INTO FACEBOOK

11     THROUGH THE AUTHORIZED CHANNELS, BUT AFTER THEY

12     WERE EXPRESSLY TOLD AND REPEATEDLY TOLD THAT THAT'S

13     THE ONLY WAY THEY SHOULD COME IN, THEY CHOSE NOT TO

14     DO THAT AND DECIDED TO HACK AROUND THE TECHNICAL

15     MEASURES THAT FACEBOOK PUT IN PLAY.

16             THOSE ARE THE PRECISE TYPES OF THINGS

17     THAT CALIFORNIA PENAL CODE 502(C) SEEKS TO PROTECT.

18             THE PREMISE THAT THE PLAINTIFF IS --

19     WE'RE THE PLAINTIFF, I'M SORRY -- THAT POWER IS

20     ARGUING, IS THAT IT SHOULDN'T BE -- IT SHOULD HAVE

21     TO BE A REALLY, REALLY BIG DEAL.

22             YOUR HONOR, THE STATUTE DOES NOT DEFINE

23     AT WHAT POINT A TECHNICAL MEASURE HAS TO BE SO

24     SUBSTANTIAL THAT IT COULD CONSTITUTES AN INTRUSION.

25

                                                          44

1          HERE, FACEBOOK DID EVERYTHING IT POSSIBLY

2     COULD.  POWER DECIDED NOT TO HONOR ANY OF IT.  AND

3     AT THAT POINT THEY SHOULD BE ENJOINED FROM ENTERING

4     FACEBOOK WITHOUT OUR EXPRESS PERMISSION.  IT'S THE

5     ONLY WAY WE CAN GET THAT RELIEF, AND THAT'S WHAT

6     502(C) SEEKS TO PROTECT.

7          THE COURT:  THANK YOU BOTH.

8          I THOUGHT THAT I WAS GOING TO ACTUALLY

9     HEAR FROM AN AMICUS.  MY STAFF GAVE ME A NOTE THAT

10    WE HAD ACTUALLY CONSIDERED THAT THEIR BRIEF WAS

11    FILED AND WHAT WE WANTED WAS TO HAVE IT FILED

12    SEPARATELY FROM THEIR REQUEST FOR PERMISSION.

13         SO I SHOULD SAY THAT NOTWITHSTANDING THE

14    PARTIES' UNDERSTANDING PERHAPS THAT THE COURT DID

15    NOT HAVE THAT BRIEF UNDER CONSIDERATION BECAUSE IT

16    WAS NOT FILED, I READ IT AND I CONSIDERED IT AND IT

17    IS PART OF THE CONSIDERATIONS THAT THE COURT BRINGS

18    TO AT LEAST A PART OF THIS QUESTION.  AND PERHAPS

19    THE ARGUMENT TODAY HAS ADVANCED THE QUESTION BEYOND

20    THAT TERMS OF USE ISSUE, BUT I HAD THOUGHT IT WOULD

21    BE WORTHWHILE TO ADDRESS IT.

22         VERY WELL.  YES?

23         MS. GRANICK:  I'M JENNIFER GRANICK AND

24    I'M A LAWYER FOR THE ELECTRIC FRONTIER FOUNDATION.

25    WE FILED THE AMICUS BRIEF IN QUESTION.

45

1          THE COURT:  VERY WELL.

2          MS. GRANICK:  JUST ON THE PROCEDURAL

3     POINT, IF I MAY.

4          OUR UNDERSTANDING OF THE --

5          THE COURT:  COME FORWARD.

6          MS. GRANICK:  OUR UNDERSTANDING OF THE

7     ORDER THAT THE COURT HAD FILED WAS THAT THE BRIEF

8     WHICH HAD BEEN ATTACHED TO OUR MOTION FOR LEAVE

9     WOULD BE FILED ON THE COURT DOCKET.  I DIDN'T

10    UNDERSTAND FROM THE MOTION THAT WE WERE SUPPOSED TO

11    TAKE ADDITIONAL ACTION TO FILE THE BRIEF.

12         THE COURT:  I SEE.

13         MS. GRANICK:  WE HAD ATTACHED IT WITH THE

14    MOTION FOR LEAVE.

15         THE COURT:  OKAY.

16         MS. GRANICK:  NOW GIVEN YOUR DISCUSSION

17    TODAY I UNDERSTAND THAT WHAT WAS BEING ASKED FOR US

18    WAS TO TAKE THE BRIEF AND GO THROUGH ECF AND FILE

19    IT AGAIN.

20         THE COURT:  SEPARATE FROM THE MOTION FOR

21    LEAVE.

22         BUT I HAVE IT, SO I WILL CONSIDER --

23    UNLESS THERE'S SOME OBJECTION, IT SOUNDED LIKE THE

24    NAMED PARTIES BELIEVED THAT SINCE YOU HADN'T DONE

25    ANYTHING FURTHER THEY NEED NOT RESPOND TO IT.  AND

1    PERHAPS WHAT I UNDERSTAND THERE TO BE A REQUEST

2    BEFORE I ISSUE AN ORDER, I GIVE THEM AN OPPORTUNITY

3    TO RESPOND.

4            MS. GRANICK:  RIGHT.

5            AND YOUR HONOR IT MAY BE APPROPRIATE,

6    GIVEN THE DISCUSSION WE HAD IN THE COURT TODAY, IT

7    MAY BE APPROPRIATE AT THIS POINT FOR US TO, GIVEN

8    THE WAY THE ARGUMENT HAS GONE AND WHAT IT SEEMS

9    THAT YOUR HONOR'S CONCERN IS AND THE PARTICULAR

10   QUESTION OF TECHNOLOGICAL MEASURES AND

11   CIRCUMVENTION, IT MIGHT BE APPROPRIATE FOR US TO

12   AMEND OUR BRIEF TO ADDRESS MORE SPECIFICALLY THE

13   ISSUES THAT WERE RAISED IN THE HEARING TODAY AND

14   THEN TO FILE THAT AT SOME POINT IN TIME.

15           THE COURT:  SURE.  I WELCOME YOUR INPUT,

16   UNLESS THERE'S AN OBJECTION FROM THE PARTIES.

17           SO WHATEVER WE DO TODAY, SINCE I PRESUME

18   I HAVE A REQUEST FOR YOU TO HAVE LEAVE TO RESPOND

19   TO THE AMICUS.

20           MR. CHATTERJEE:  YES, YOUR HONOR, WE DO.

21           ALTHOUGH WE WOULD PREFER FOR THINGS TO BE

22   SET, SUBMITTED BECAUSE THIS HAS BEEN LINGERING

23   AROUND.

24           THE COURT:  YOU LIKE CLOSURE, AND

25   EVERYBODY DOES AND SO DO I.

                                                        47

1          BUT IT DOES SEEM TO ME THE INITIAL

2    CONCERN WITH TERMS OF USE STILL REMAINS WITH THE

3    COURT AND I INTEND TO ADDRESS IT.  BUT IF YOU HAVE

4    CONCERNS THAT WOULD ADVANCE THE ISSUE FOR THE

5    AMICUS TO EVEN TECHNOLOGICAL BARRIERS, HOW LONG

6    WOULD IT TAKE YOU TO PROVIDE THE COURT WITH YOUR

7    SUPPLEMENTAL BRIEF?

8          MS. GRANICK:  I DON'T THINK IT WOULD TAKE

9    VERY LONG.  I, FRANKLY, THINK IT COULD BE SOMETHING

10   WE COULD DO IN TWO WEEKS.

11         THE COURT:  TWO WEEKS IS A LONG TIME FOR

12   ME.  I WILL BE ON VACATION.

13         MS. GRANICK:  YOU ARE THE JUDGE, SO I

14   CAN --

15         THE COURT:  TWO WEEKS?  YOU GOT IT.  HOW

16   LONG WILL YOU NEED AFTER THE TWO-WEEK PERIOD THAT

17   COUNSEL IS ASKING FOR FOR HER SUPPLEMENTAL TO

18   RESPOND TO THAT?

19         MR. CHATTERJEE:  YOUR HONOR, I WOULD SAY

20   ONE TO TWO WEEKS.

21         THE COURT:  AND SIMULTANEOUSLY --

22         MR. BURSOR:  WE WOULD LIKE TO RESPOND.

23         THE COURT:  SO THE WHOLE THING WILL BE

24   BEFORE ME THEN IN FOUR WEEKS?

25         MR. CHATTERJEE:  YOUR HONOR, IF I MAY ASK

48

1    A QUESTION, SHOULD THESE -- I JUST WANT TO MAKE

2    SURE WE ARE NOT GOING THROUGH AND REHASHING ALL OF

3    THE PAST.

4              SHOULD WE BE FOCUSSING ON THE QUESTION

5    YOUR HONOR ASKED ABOUT TECHNOLOGICAL MEASURES AND

6    WHERE SHOULD THE LINE BE DRAWN, OR SHOULD IT BE

7    ANYTHING PEOPLE WANT TO SAY?

8              THE COURT:  WELL, THAT IS THE AREA I'M

9    CONCERNED ABOUT.  I WOULD HAVE YOU RESPOND TO THE

10   EXTENT YOU WISH TO, TO TWO AREAS.

11             FIRST IS THE ISSUE OF THE TERMS OF USE

12   BARRIER AND WHETHER THAT QUALIFIES UNDER 502, WHICH

13   WAS THE INITIAL POSITION I HAD FROM THE AMICUS.

14             AND TO THE EXTENT THAT THE AMICUS BRIEF

15   WOULD ADD FURTHER ARGUMENT BEYOND WHAT YOU'VE

16   ALREADY ARGUED ON TECHNOLOGICAL TERMS AS PLED.

17             YOU CALLED IT A MOTION FOR SUMMARY

18   JUDGEMENT, BUT TECHNICALLY IT'S A MOTION FOR

19   JUDGMENT ON THE PLEADINGS.  SO I ACCEPT WHATEVER

20   POWER HAS ALLEGED AS PROVABLE, AND SO WHAT I HAVE

21   BEFORE ME IS FACEBOOK'S ARGUMENT THAT THAT

22   CONSTITUTES A VIOLATION OF 502.

23             YOUR AMICUS BRIEF HAS TO MAKE THE SAME

24   ASSUMPTION TO BE USEFUL.  SO YOU HAVE AN

25   OPPORTUNITY IN YOUR BRIEF TO RESPOND TO WHATEVER

49

1    NEW INFORMATION IS SUBMITTED.

2              MR. CHATTERJEE:  SO WE ARE FOCUSSING ON

3    THE TECHNOLOGICAL MEANS?

4              THE COURT:  YES.

5              MR. CHATTERJEE:  OKAY.  THANK YOU.

6              MS. GRANICK:  BUT I THINK ALSO, IF I

7    UNDERSTAND CORRECTLY, THE SUBSTANTIVE, THE BRIEF WE

8    ATTACHED --

9              THE COURT:  YES, I SAID THAT INITIALLY.

10             IN OTHER WORDS, THERE IS AN INITIAL

11   MATTER IT SEEMS TO ME WE'VE OVERCOME, BUT I WASN'T

12   CLEAR WE HAD OVERCOME IT WITH AN ACKNOWLEDGEMENT

13   THAT IT WAS NOT A VIOLATION.

14             I DO INTEND TO ADDRESS IT.  THAT'S IN THE

15   FIRST AMICUS BRIEF.  SO TO THE EXTENT YOU HAVEN'T

16   RESPONDED TO THAT AND YOU WISH TO, YOU MAY IN THIS

17   BRIEF.

18             MR. CHATTERJEE:  RIGHT.  THANK YOU,

19   YOUR HONOR.

20             MR. BURSOR:  YOUR HONOR, CAN I ASK FOR

21   ONE SUBTLE CLARIFICATION.

22             THERE WAS ALSO A MOTION ON OUR

23   COUNTERCLAIMS THAT WAS NOTICED FOR TODAY.  DOES THE

24   COURT INTEND TO RULE ON THOSE OR TO HAVE ARGUMENT

25   ON THOSE AT SOME DATE IN THE FUTURE AND THEN RULE

1    ON THEM?

2            THE COURT:  I DON'T -- I WILL LET YOU

3    KNOW.  THIS WAS THE ONLY MOTION, THE MOTION HAVING

4    TO DO WITH THE 502 THAT I THOUGHT WAS RIPE FOR A

5    DECISION ONE WAY OR THE OTHER, DENY IT, GRANT IT.

6    AND THE OTHER MOTIONS I WILL SET FORWARD TO ANOTHER

7    TIME.

8            MR. BURSOR:  THANK YOU, YOUR HONOR.

9            MR. CHATTERJEE:  THANK YOU, YOUR HONOR.

10           MS. GRANICK:  THANK YOU VERY MUCH,

11   YOUR HONOR.

12           THE COURT:  VERY WELL.  THAT COMPLETES

13   OUR LAW AND MOTION CALENDAR.

14           (WHEREUPON, THE PROCEEDINGS IN THIS

15   MATTER WERE CONCLUDED.)

16

17

18

19

20

21

22

23

24

25

51

1

2

3

4                    **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22              _____
                 SUMMER A. FISHER, CSR, CRR
23               CERTIFICATE NUMBER 13185

24

25

52