1

2

3

4

5

6

7  IN THE UNITED STATES DISTRICT COURT

8  FOR THE NORTHERN DISTRICT OF CALIFORNIA

9  SAN JOSE DIVISION

10  Facebook, Inc.,                              NO. C 08-05780 JW

11          Plaintiff,                           **ORDER DENYING FACEBOOK'S
                                                 MOTION FOR JUDGMENT ON THE
12      v.                                       PLEADINGS; DENYING THE PARTIES'
                                                 CROSS-MOTIONS FOR SUMMARY
    Power Ventures, Inc., et al.,                JUDGMENT; GRANTING FACEBOOK'S
13                                               MOTION TO DISMISS DEFENDANTS'
            Defendants.                          COUNTERCLAIMS; DENYING
14  _____/          FACEBOOK'S MOTION TO STRIKE
                                                 DEFENDANTS' AFFIRMATIVE
15  Power Ventures, Inc., et al.,                DEFENSES**

16          Counterclaimants,

17      v.

    Facebook, Inc.,
18
            Counterdefendants.
19  _____/

20                            **I.  INTRODUCTION**

21          Facebook, Inc. ("Plaintiff" or "Facebook") brings this action against Power Ventures, Inc.

22  ("Defendant" or "Power") alleging, *inter alia*, violations of the California Comprehensive Computer

23  Data Access and Fraud Act, Cal. Penal Code § 502 ("Section 502").  Facebook alleges that Power

24  accessed the Facebook website in violation of Facebook's Terms of Use, and when Facebook tried

25  to stop Power's unauthorized access, Power circumvented Facebook's technical barriers.  Power

26  brings counterclaims against Facebook alleging, *inter alia*, violations of the Sherman Act, 15 U.S.C.

27  § 2.

28

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1    Presently before the Court are Facebook's Motion for Judgment on the Pleadings Pursuant to

2    Fed. R. Civ. P. 12(c) or, in the Alternative, Partial Summary Judgment of Liability Under California

3    Penal Code § 502;[1] Defendants' Motion for Summary Judgment;[2] and Facebook's Motion to

4    Dismiss Counterclaims and Strike Affirmative Defenses.[3]  The Court conducted a hearing on June 7,

5    2010.  Based on the papers submitted to date and oral argument, the Court DENIES Facebook's

6    Motion for Judgment on the Pleadings, DENIES the parties' Cross-Motions for Summary Judgment,

7    GRANTS Facebook's Motion to Dismiss Defendants' counterclaims for violations of Section 2 of

8    the Sherman Act, GRANTS Facebook's Motion to Dismiss Defendants' UCL counterclaim, and

9    DENIES Facebook's Motion to Strike Defendants' Affirmative Defenses.

## II.  BACKGROUND

**A.    Factual Background**

A detailed outline of the factual allegations in this case may be found in the Court's May 11,
2009 Order Denying Motion to Dismiss and Granting in Part and Denying in Part Motion for More
Definite Statement.[4]  The Court will address the facts of the case, as they relate to the present
Motions, in the Discussion section below.

**B.    Procedural History**

In its May 11 Order, the Court denied Defendants' Motion to Dismiss Plaintiff's claims for
copyright infringement, violation of the Digital Millennium Copyright Act ("DMCA"), trademark
infringement under federal law, trademark infringement under state law, and violation of the
California Unfair Competition Law ("UCL"), and granted Defendants' Motion for a More Definite
Statement with respect to Plaintiff's UCL claim.

---

[1]  (hereafter, "Facebook's Motion for Judgment on the Pleadings," Docket Item No. 56.)

[2]  (Docket Item No. 62.)

[3]  (hereafter, "Facebook's Motion to Dismiss," Docket Item No. 58.)

[4]  (hereafter, "May 11 Order," Docket Item No. 38.)

On October 22, 2009, the Court issued an Order Granting Facebook's Motion to Dismiss Counter-Complaint and Strike Affirmative Defenses.  (hereafter, "October 22 Order," Docket Item No. 52.)  In its October 22 Order, the Court found that the counterclaims, as stated in Defendants' Answer and Counter-Complaint, were insufficient because they consisted only of conclusory recitations of the applicable legal standard and a general "reference [to] all allegations of all prior paragraphs as though fully set forth herein."  (Id. at 3.)  Similarly, the Court found Defendants' affirmative defenses deficient because they referenced the introductory section without delineating which allegations supported each affirmative defense.  (Id. at 3-4.)  The Court granted leave to amend the counterclaims and affirmative defenses.  (Id. at 4.)  On November 23, 2010, Defendants filed the Amended Answer and Counterclaims of Defendants Power Ventures, Inc. and Steve Vachani.  (hereafter, "Amended Answer," Docket Item No. 54.)  On February 26, 2010, Judge Fogel recused himself from the case.  (See Docket Item No. 72.)  On March 2, 2010, the case was reassigned to Judge Ware.  (See Docket Item No. 73.)

Presently before the Court are the parties' various Motions.  The Court addresses each Motion in turn.

### III.  STANDARDS

**A.      Motion for Judgment on the Pleadings**

Under Federal Rule of Civil Procedure 12(c), any party may move for judgment on the pleadings at any time after the pleadings are closed but within such time as not to delay the trial. Fed. R. Civ. P. 12(c).  "For the purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false."  Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).  Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  Id.  When brought by the defendant, a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is a "means to challenge the sufficiency of the complaint after an answer has been filed."  New. Net, Inc. v. Lavasoft, 356 F. Supp. 2d 1090, 1115

United States District Court

For the Northern District of California

(C.D. Cal. 2004).  A motion for judgment on the pleadings is therefore similar to a motion to dismiss.  Id.  When the district court must go beyond the pleadings to resolve an issue on a motion for judgment on the pleadings, the proceeding is properly treated as a motion for summary judgment.  Fed. R. Civ. P. 12(c); Bonilla v. Oakland Scavenger Co., 697 F.2d 1297, 1301 (9th Cir. 1982).

**B.      Motion for Summary Judgment**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses."  Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  The non-moving party must then identify specific facts "that might affect the outcome of the suit under the governing law," thus establishing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986).  The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded.  See, e.g. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992).  The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party.  T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987).   In such a case, summary judgment is inappropriate.  Anderson, 477 U.S. at 248.  However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

United States District Court

For the Northern District of California

Although the district court has discretion to consider materials in the court file not referenced in the opposing papers, it need not do so. See Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001). "The district court need not examine the entire file for evidence establishing a genuine issue of fact." Id. at 1031. However, when the parties file cross-motions for summary judgment, the district court must consider all of the evidence submitted in support of both motions to evaluate whether a genuine issue of material fact exists precluding summary judgment for either party. The Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1135 (9th Cir. 2001).

**C.   Motion to Dismiss**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

United States District Court

For the Northern District of California

5

United States District Court
For the Northern District of California

1  Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by

2  amendment.  Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

**IV.  DISCUSSION**

3

4  A.    **Statutory Standing**

5      As a threshold matter, Defendants contend that Facebook does not have standing to bring its

6  Section 502 claim because it has not made an adequate showing that it has suffered damage or loss

7  within the meaning of the statute.[5]

8      Section 502(e)(1) provides:

9          In addition to any other civil remedy available, the owner or lessee of the computer,
    computer system, computer network, computer program, or data who suffers damage or loss
10   by reason of a violation of any of the provisions of subdivision (c) may bring a civil action
    against the violator for compensatory damages and injunctive relief.  Compensatory damages
11   shall include any expenditure reasonably and necessarily incurred by the owner or lessee to
    verify that a computer system, computer network, computer program, or data was or was not
12   altered, damaged, or deleted by the access. . . .

13      Facebook relies solely on the undisputed facts from the pleadings to support its Motion.  In

14  their Amended Answer, Defendants admit that: (1) Facebook communicated to Defendant Steven

15  Vachani ("Vachani"), the purported CEO of Power.com, its claim that "Power.com's access of

16  Facebook's website and servers was unauthorized and violated Facebook's rights, including

17  Facebook's trademark, copyrights, and business expectations with its users;"[6] (2) "Vachani offered

18  to attempt to integrate Power.com with Facebook Connect," a Facebook program that "permits

19  integration with third party websites," but "Vachani communicated concerns about Power's ability

20  to integrate Power.com with Facebook Connect on the schedule that Facebook was demanding;"[7]

21  and (3) "Facebook implemented technical measures to block users from accessing Facebook through

22

23

24  _____

25      [5]  (Defendants' Reply Brief in Support of Motion for Summary Judgment at 5-14, hereafter,
    "Defendants' Reply re Summary Judgment," Docket Item No. 68.)

26      [6]  (FAC ¶ 57, Amended Answer ¶ 57.)

27      [7]  (FAC ¶¶ 28, 58, 60, Amended Answer ¶¶ 58, 60.)

28
                                    6

United States District Court

For the Northern District of California

1   Power.com," but nonetheless "Power provided users with tools necessary to access Facebook

2   through Power.com."[8]

3          In support of their contention that Plaintiff did not suffer damage or loss, Defendants provide

4   the declaration of Vachani, in which he states that Facebook had no cause for concern over Power's

5   access to its website, and that "in its communications with [Vachani], Facebook never suggested any

6   concern that its computers or data had been altered, deleted, damaged, or destroyed."[9]  Vachani

7   further declares that to his knowledge, "Facebook did not . . . make any expenditure to verify that its

8   computers or data had not been altered, deleted, damaged, or destroyed."  (Id.)

9          Upon review of the pleadings and evidence presented, the Court finds that the undisputed

10   facts show that Facebook suffered some damage or loss as a result of Power's actions.  Specifically,

11   Defendants' admissions that Facebook attempted to block Power's access and that Power provided

12   users with tools that allowed them to access the Facebook website through Power.com adequately

13   demonstrates that Facebook expended resources to stop Power from committing acts that Facebook

14   now contends constituted Section 502 violations.  Although Defendants contend that any steps that

15   Facebook took to block Power's access to the Facebook website were *de minimus*, and would

16   involve only a "a few clicks of a mouse . . . and ten keystrokes,"[10] Section 502 sets no threshold

17   level of damage or loss that must be reached to impart standing to bring suit.  Under the plain

18   language of the statute, any amount of damage or loss may be sufficient.

19          Moreover, Defendants provide no foundation to establish that Vachani has personal

20   knowledge of what steps Facebook took, or would reasonably have to take, to block Power's access

21   to the Facebook website.  Since information regarding Facebook's technical measures, and the cost

22

23   _____

24          [8]  (FAC ¶¶ 63-64, Amended Answer ¶¶ 63-64.)

25          [9]  (Declaration of Steve Vachani in Support of Defendants' Opposition to Facebook Inc.'s
     Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) or, in the Alternative, Partial
26   Summary Judgment of Liability Under California Penal Code § 502(c) ¶ 12, hereafter, "Vachani
     Decl.," Docket Item No. 65.)

27          [10]  (Vachani ¶ 9.)

28                                                        7

Facebook expended implementing those measures, is likely to be in Facebook's possession and not

Power's, the Court finds that Vachani's declaration alone cannot defeat Plaintiff's standing.

Defendants further contend that to impart standing, damage or loss must amount to an

"injury." (Defendants' Reply re Summary Judgment at 4.) The statute defines an "injury" as "any

alteration, deletion, damage, or destruction of a computer system, computer network, computer

program, or data caused by the access, or the denial of access, to legitimate users of a computer

system, network, or program." Cal. Penal Code § 502(b)(8). However, Defendants provide no

authority for equating damage and loss with injury beyond the observation that the terms are

synonyms. (Defendants' Reply re Summary Judgment at 4.) In fact, the only place in Section 502

that the term injury appears, other than the clause defining the term itself, is in the criminal liability

provision, which has no bearing on the civil provision granting a private right of action. See §

502(d) (setting more stringent penalties for violations that result in an injury).

Since the undisputed facts demonstrate that Facebook has suffered some damage or loss in

attempting to block Power's access to the Facebook website, the Court finds that Facebook has

standing to bring suit pursuant to Section 502(e). The Court proceeds to examine Defendants'

liability under Section 502.

**B.**     **Defendants' Section 502 Liability**

Facebook contends that the undisputed facts prove that Defendants violated Section 502.

(Facebook's Motion for Judgment on the Pleadings at 1.) Facebook bases its Section 502 claim

solely on facts that Defendants admit in their Amended Answer, which Facebook contends show

beyond dispute that Power accessed the Facebook website in violation of the Facebook terms of use,

and that when Facebook tried to stop Power, Power worked around Facebook's technical barriers.

(Id.) Defendants respond, *inter alia*, that there is no evidence that Power ever accessed the

United States District Court

For the Northern District of California

8

Facebook website without the express permission of the user and rightful owner of the accessed data.[11]

On May 5, 2010, the Court granted the Electronic Frontier Foundation's ("EFF") Motion to File Amicus Curiae in support of Defendants' Motion.[12]  EFF contends that in order to avoid constitutional vagueness concerns, the Court must construe the statutory phrase "without permission" narrowly to exclude access to a website or computer network that merely violates a term of use.[13]  Allowing criminal liability based only on violation of contractual terms of service, EFF contends, would grant the website or network administrator essentially unlimited authority to define the scope of criminality and potentially expose millions of average internet users to criminal sanctions without any meaningful notice.  (Id.)

The Court finds that all of the subsections of Section 502(c) that potentially apply in this case require that the defendant's actions be taken "without permission."  See Cal. Penal Code § 502(c)(2), (3), (7).  However, the statute does not expressly define the term "without permission." In interpreting any statutory language, the court looks first to the words of the statute.  Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004).  If the language is unambiguous, the statute should be interpreted according to the plain meaning of the text.  Id. at 534.  The structure and purpose of a statute can provide guidance in determining the plain meaning of its provisions.  K-Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988).  Statutory language is ambiguous if it is capable of being understood in two or more possible senses or ways.  Chickasaw Nation v. United States, 534 U.S. 84, 90 (2001).  If

---

[11] (Defendants' Corrected Opposition to Facebook Inc.'s Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) or, in the Alternative, Partial Summary Judgment of Liability Under California Penal Code § 502(c) at 11, hereafter, "Defendants' Opposition re Summary Judgment," Docket Item No. 74.)

[12] (Docket Item No. 79.)

[13] (Brief of Amicus Curiae Electronic Frontier Foundation in Support of Defendant Power Ventures' Motion for Summary Judgment on Cal. Penal Code 502(c) at 24-28, hereafter, "Amicus Brief," Docket Item No. 83.)  On July 6, 2010, Facebook filed its Reply to EFF's Amicus Brief. (hereafter, "Amicus Reply," Docket Item No. 86.)

United States District Court

For the Northern District of California

a statutory provision is ambiguous, the court turns to the legislative history for guidance.  SEC v. McCarthy, 322 F.3d 650, 655 (9th Cir. 2003).

Here, the Court first looks to the plain language of the statute.  However, the term "without permission" can be understood in multiple ways, especially with regard to whether access is without permission simply as a result of violating the terms of use.  Thus, the Court must consider legislative intent and constitutional concerns to determine whether the conduct at issue here falls within the scope of the statute.  See F.C.C. v. Fox Television Stations, Inc., 129 S. Ct. 1800, 1811 (2009) (noting that "the canon of constitutional avoidance in an interpretive tool, counseling that ambiguous statutory language be construed to avoid serious constitutional doubts").

### 1.    Plain Language of the Statute

Here, Facebook does not allege that Power has altered, deleted, damaged, or destroyed any data, computer, computer system, or computer network, so the subsections that require that type of action are not applicable.  However, the Court finds that the following subsections of Section 502 do not require destruction of data, and thus may apply here:

(1)    Section 502(c)(2) holds liable any person who "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network;"

(2)    Section 502(c)(3) holds liable any person who "[k]nowingly and without permission uses or causes to be used computer services;" and

(3)    Section 502(c)(7) holds liable any person who "[k]nowingly and without permission accesses or causes to be to be accessed any computer, computer system, or computer network."

To support its claim that Defendants violated these provisions, Facebook relies solely on facts that Defendants admitted in their Amended Answer.  Specifically, Facebook points to Defendants' admissions that: (1) "Power permits users to enter their account information to access the Facebook site through Power.com;"[14] (2) "Defendants developed computer software and other automated devices and programs to access and obtain information from the Facebook website for

---

[14]  (Amended Answer ¶¶ 18, 45, 50.)

10

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

aggregating services;"[15] (3) Facebook communicated to Vachani its claims that "Power.com's access of Facebook's website and servers was unauthorized and violated Facebook's rights, including Facebook's trademark, copyrights, and business expectations with its users;"[16] (4) "Facebook implemented technical measures to block users from accessing Facebook through Power.com;"[17] and (5) "Power provided users with tools necessary to access Facebook through Power.com."[18]  Since all three of the subsections at issue here require that Defendants' acts with respect to the computer or computer network be taken without permission, the Court analyzes that requirement first.

Defendants and EFF contend that Power's actions could not have been without permission because Power only accessed the Facebook website with the permission of a Facebook account holder and at that account holder's behest.  (See Defendants' Opposition re Summary Judgment at 11; Amicus Brief at 11.)  Facebook, on the other hand, contends that regardless of whatever permission an individual Facebook user may have given to Power to access a particular Facebook account, Power's actions clearly violated the website's terms of use, which state that a Facebook user may not "collect users' content or information, or otherwise access Facebook, using automated means (such as harvesting bots, robots, spiders, or scrapers) without [Facebook's] permission."[19]

Since Power admits that it utilized "automated devices" to gain access to the Facebook website, the Court finds that it is beyond dispute that Power's activities violated an express term of

---

[15] (Id. ¶ 74; FAC ¶ 74.)

[16] (Amended Answer ¶ 57; FAC ¶ 57.)

[17] (Amended Answer ¶ 63.)

[18] (Id. ¶ 64.)

[19] (Facebook Inc.'s Reply Brief in Support of its Motion for Judgment on the Pleadings or, in the Alternative, Partial Summary Judgment of Liability Under California Penal Code Section 502 and Opposition to Defendants' Motion for Summary Judgment at 5-6, hereafter, "Facebook's Reply re Summary Judgment," Docket Item No. 66.)

United States District Court

For the Northern District of California

1    the Facebook terms of use.[20]  The issue then becomes whether an access or use that involves a

2    violation of the terms of use is "without permission" within the meaning of the statute.  In the

3    modern context, in which millions of average internet users access websites every day without ever

4    reading, much less understanding, those websites' terms of use, this is far from an easy or

5    straightforward question.  Without clear guidance from the statutory language itself, the Court turns

6    to case law, legislative intent, and the canon of constitutional avoidance to assist in interpreting the

7    statute, and then analyzes whether the acts at issue here were indeed taken without permission.

8         **2.      Caselaw**

9         Since the California Supreme Court has not directly addressed the question of whether the

10   violation of a term of use constitutes access or use without permission pursuant to Section 502, the

11   Court looks to analogous state appellate court cases and federal court cases from this district for

12   guidance as to the statute's proper construction.  The Court also considers cases interpreting the

13   Computer Fraud and Abuse Act ("CFAA"), the federal corollary to Section 502, in evaluating how

14   broad an application Section 502 should properly be given.

15        EFF relies on two state appellate cases for the proposition that Section 502 should not apply

16   to persons who have permission to access a computer or computer system, but who use that access in

17   a manner that violates the rules applicable to that system.  Chrisman v. City of Los Angeles, 155

18   Cal. App. 4th 29, 32 (Cal. Ct. App. 2007); Mahru v. Superior Court, 191 Cal. App. 3d 545, 549 (Cal.

19   Ct. App. 1987).  In Chrisman, the court found that a police officer did not violate Section 502 when,

20   while on duty, the officer "accessed the Department computer system [] for non-duty-related

21   activities."  155 Cal. App. 4th at 32.  The court found that at essence, Section 502 is an anti-hacking

22   statute, and "[o]ne cannot reasonably describe appellant's improper computer inquiries about

23   celebrities, friends, and others as hacking."  Id. at 35.  The officer's "computer queries seeking

24

25        [20]  This, of course, assumes that Power was in fact subject to the Facebook terms of use, an
     issue which was not briefed by either party.  However, the terms of use state, "By accessing or using
26   our web site . . . , you (the 'User') signify that you have read, understand and agree to be bound by
     these Terms of Use . . . , whether or not you are a registered member of Facebook."  (FAC, Ex. A.)
27   Thus, in the act of accessing or using the Facebook website alone, Power acceded to the Terms of
     Use and became bound by them.

28
                                                    12

United States District Court

For the Northern District of California

1    information that the department's computer system was designed to provide to officers was

2    misconduct if he had no legitimate purpose for that information, but it was not hacking the

3    computer's 'logical, arithmetical, or memory function resources,' as [the officer] was entitled to

4    access those resources." Id. While Chrisman does not address the specific issue before the Court

5    here, and focuses on the statutory definition of "access" rather than "without permission," the Court

6    finds that the case helps to clarify that using a computer network for the purpose that it was designed

7    to serve, even if in a manner that is otherwise improper, is not the kind of behavior that the

8    legislature sought to prohibit when it enacted Section 502.

9         In Mahru, the court found that the director and part owner of a data-processing firm was not

10   liable under Section 502 when he instructed the company's chief computer operator to make

11   specified changes in the names of two files in a former customer's computer program in retaliation

12   for that customer terminating its contract with the company. 191 Cal. App. 3d at 547-48. These

13   changes had the effect of preventing the former customer's employees from being able to run their

14   computer programs without the assistance of an expert computer software technician. Id. In finding

15   that Section 502 had not been violated by the company's actions, the court stated:

16        The Legislature could not have meant, by enacting section 502, to bring the Penal Code into
          the computer age by making annoying or spiteful acts criminal offenses whenever a
17        computer is used to accomplish them. Individuals and organizations use computers for
          typing and other routine tasks in the conduct of their affairs, and sometimes in the course of
18        these affairs they do vexing, annoying, and injurious things. Such acts cannot all be
          criminal.

19
20   Id. at 549. However, the court in Mahru based its finding of no liability in part on documentary

21   evidence establishing that the company, and not the former customer, owned the computer hardware

22   and software, which explains why the company's manipulation of files stored on that computer

23   hardware was merely vexatious and not unlawful hacking. The Court finds that Mahru is not

24   applicable to the circumstances here, where it is undisputed that Power accessed data stored on

25   Facebook's server.

26        In support of its contention that Facebook users cannot authorize Power to access Facebook's

27   computer systems, Facebook relies on a previous order in this case and another case from this

28                                                   13

District.  On May 11, 2009, Judge Fogel issued an order denying Defendants' Motion to Dismiss Plaintiff's copyright infringement, DMCA, and trademark infringement claims.  In addressing Plaintiff's copyright infringement claim, Judge Fogel found that, "[v]iewing the allegations in the FAC as true, the utilization of Power.com by Facebook users exceeds their access rights pursuant to the Terms of Use.  Moreover, when a Facebook user directs Power.com to access the Facebook website, an unauthorized copy of the user's profile page is created."  (May 11 Order at 6-7.)  The Court finds that whether or not Facebook users' utilization of Power.com exceeds their access rights under Facebook's terms of use is not the issue presented in these Motions.  Instead, the Court must determine whether such a violation of the terms of use constitutes use "without permission" within the meaning of Section 502, a question that the May 11 Order did not directly address.

Finally, in Facebook, Inc. v. ConnectU LLC, Judge Seeborg found that a competing social networking site violated Section 502 when it accessed the Facebook website to collect "millions" of email addresses of Facebook users, and then used those email addresses to solicit business for itself.  489 F. Supp. 2d 1087, 1089 (N.D. Cal. 2007).  In that case, Judge Seeborg found unavailing ConnectU's contention that it did not act without permission because it only "accessed information on the Facebook website that ordinarily would be accessible only to registered users by using log-in information voluntarily supplied by registered users." Id. at 1090-91.  Judge Seeborg found that ConnectU was subject to Facebook's terms of use and rejected ConnectU's contention that "a private party cannot define what is or what is not a criminal offense by unilateral imposition of terms and conditions of use." Id. at 1091.  The court held that "[t]he fact that private parties are free to set the conditions on which they will grant such permission does not mean that private parties are defining what is criminal and what is not." Id.

The Court finds that of the cases discussed so far, the holding in ConnectU is most applicable to the present case.  However, the Court respectfully disagrees with ConnectU in one key respect.  Contrary to the holding of ConnectU, the Court finds that allowing violations of terms of use to fall within the ambit of the statutory term "without permission" does essentially place in private hands unbridled discretion to determine the scope of criminal liability recognized under the statute.  If the

14

issue of permission to access or use a website depends on adhering to unilaterally imposed contractual terms, the website or computer system administrator has the power to determine which actions may expose a user to criminal liability. This raises constitutional concerns that will be addressed below.

Although cases interpreting the scope of liability under the CFAA do not govern the Court's analysis of the scope of liability under Section 502, CFAA cases can be instructive. EFF points to several CFAA cases for the proposition that the CFAA prohibits trespass and theft, not mere violations of terms of use. See, e.g., LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1130 (9th Cir. 2009) ("[F]or purposes of the CFAA, when an employer authorizes an employee to use a company computer subject to certain limitations, the employee remains authorized to use the computer even if the employee violates those limitations."); Diamond Power Int'l, Inc. v. Davidson, 540 F. Supp. 2d 1322 (N.D. Ga. 2007) ("Under the more reasoned view, a violation for accessing 'without authorization' occurs only where initial access is not permitted."); But see Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc., 119 F. Supp. 2d 1121, 1125-29 (W.D. Wash. 2000) (finding employee may be held liable under CFAA for taking employer information from the company's computer system to his next job on the ground that he was "without authorization" when he "allegedly sent [the employer's] proprietary information to the defendant").

While there appears to be some disagreement in the district courts as to the scope of the term "without authorization" in the CFAA context, the Court finds the Ninth Circuit's opinion in LVRC Holdings to be particularly useful in construing the analogous term in Section 502. In that case, the Ninth Circuit found that access to a computer may be "authorized," within the statutory meaning of the term, even if that access violates an agreed upon term of using that computer. In general, the Court finds that the more recent CFAA cases militate for an interpretation of Section 502 that does not premise permission to access or use a computer or computer network on a violation of terms of use. However, since none of the cases discussed provides a definitive definition of without permission under Section 502, the Court now looks to the legislative purpose of the statute to the extent that it can be discerned.

15

### 3.      Legislative Purpose

Section 502 includes the following statement of statutory purpose:

> It is the intent of the Legislature in enacting this section to expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems. The Legislature finds and declares that the proliferation of computer technology has resulted in a concomitant proliferation of computer crime and other forms of unauthorized access to computers, computer systems, and computer data.
>
> The Legislature further finds that protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals as well as to the well-being of financial institutions, business concerns, governmental agencies, and others within this state that lawfully utilize those computers, computer systems, and data.

Cal. Penal Code § 502(a).

Facebook contends that this language evidences legislative intent to address conduct beyond "straightforward hacking and tampering." (Facebook's Reply re Summary Judgment at 2.) Specifically, Facebook contends that the legislature's use of the phrases "protection . . . from . . . unauthorized access" and "protection of the integrity of all types and forms of computers, computer systems, and computer data" demonstrates a far-reaching legislative purpose to protect the entire commercial computer infrastructure from trespass. (Id. at 2-3.)

The Court declines to give the statute's statement of legislative intent the sweeping meaning that Facebook ascribes to it. Section 502(a) speaks in general terms of a "proliferation of computer crime and other forms of unauthorized access to computers," but does not offer any further guidance as to what specific acts would constitute such crime or unauthorized access. It is far from clear what conduct the legislature believed posed a threat to the integrity of computers and computer systems, or if the legislature could even fathom the shape that those threats would take more than twenty years after the statute was first enacted.

Thus, the Court does not assign any weight to the statute's statement of legislative intent in construing the liability provisions of Section 502.

16

United States District Court

For the Northern District of California

### 4.    Rule of Lenity

EFF contends that interpreting Section 502 broadly to allow liability where the absence of permission is based only on the violation of a contractual term of use or failure to fully comply with a cease and desist letter would render the statute unconstitutionally vague, stripping the statute of adequate notice to citizens of what conduct is criminally prohibited.  (Amicus Brief at 24-28.)  EFF further contends that giving the statute the broad application that Facebook seeks could expose large numbers of average internet users to criminal liability for engaging in routine web-surfing and emailing activity.  (Id.)

"It is a fundamental tenet of due process that '[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." Lanzetta v. New Jersey, 306 U.S. 451, 453 (1993).  Thus, a criminal statute is invalid if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." United States v. Harriss, 347 U.S. 612 (1954).  Where a statute has both criminal and noncriminal applications, courts must interpret the statute consistently in both contexts. Leocal v. Ashcroft, 543 U.S. 1, 11 n.8 (2004).  In the Ninth Circuit, "[t]o survive vagueness review, a statute must '(1) define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited; and (2) establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner.'" United States v. Sutcliffe, 505 F.3d 944, 953 (9th Cir. 2007).

The Court finds that interpreting the statutory phrase "without permission" in a manner that imposes liability for a violation of a term of use or receipt of a cease and desist letter would create a constitutionally untenable situation in which criminal penalties could be meted out on the basis of violating vague or ambiguous terms of use.  In the words of one commentator, "By granting the computer owner essentially unlimited authority to define authorization, the contract standard delegates the scope of criminality to every computer owner."[21]  Users of computer and internet services cannot have adequate notice of what actions will or will not expose them to criminal

_____

[21] Orin S. Kerr, *Cybercrime's Scope: Interpreting "Acess" and "Authorization" in Computer Misuse Statutes*, 78 N.Y.U. L. Rev. 1596, 1650-51 (2003).

1   liability when a computer network or website administrator can unilaterally change the rules at any

2   time and are under no obligation to make the terms of use specific or understandable to the general

3   public.  Thus, in order to avoid rendering the statute constitutionally infirm, the Court finds that a

4   user of internet services does not access or use a computer, computer network, or website without

5   permission simply because that user violated a contractual term of use.[22]

6          If a violation of a term of use is by itself insufficient to support a finding that the user's

7   access was "without permission" in violation of Section 502, the issue becomes what type of action

8   would be sufficient to support such a finding.   The Court finds that a distinction can be made

9   between access that violates a term of use and access that circumvents technical or code-based

10  barriers that a computer network or website administrator erects to restrict the user's privileges

11  within the system, or to bar the user from the system altogether.[23]  Limiting criminal liability to

12  circumstances in which a user gains access to a computer, computer network, or website to which

13  access was restricted through technological means eliminates any constitutional notice concerns,

14  since a person applying the technical skill necessary to overcome such a barrier will almost always

15  understand that any access gained through such action is unauthorized.  Thus, the Court finds that

16  accessing or using a computer, computer network, or website in a manner that overcomes technical

17  or code-based barriers is "without permission," and may subject a user to liability under Section 502.

18         Applying this construction of the statute here, the Court finds that Power did not act "without

19  permission" within the meaning of Section 502 when Facebook account holders utilized the Power

20  website to access and manipulate their user content on the Facebook website, even if such action

21  violated Facebook's Terms of Use.  However, to the extent that Facebook can prove that in doing so,

22  Power circumvented Facebook's technical barriers, Power may be held liable for violation of

23  Section 502.  Here, Facebook relies solely on the pleadings for its Motion.  In their Answer,

24

---

25         [22]  This is not to say that such a user would not be subject to a claim for breach of contract.

26  Where a user violates a computer or website's terms of use, the owner of that computer or website may also take steps to remove the violating user's access privileges.

27         [23]  See generally Kerr, *supra* note 20.

28                                                    18

United States District Court

For the Northern District of California

1  Defendants do not directly admit that the tools Power provided to its users were designed to

2  circumvent the technical barriers that Facebook put in place to block Power's access to the Facebook

3  website.  Thus, the Court finds that there is a genuine issue of material fact as to whether Power's

4  access or use of the Facebook website was "without permission" within the meaning of Section 502.

5          EFF contends that even if Power evaded the technical barriers that Facebook implemented to

6  deny it access, Power's conduct does not fall within the scope of Section 502 liability.  (Amicus

7  Brief at 19-28.)  More specifically, EFF contends that it would be inconsistent to allow liability for

8  ignoring or bypassing technical barriers whose sole purpose is to enforce contractual limits on

9  access while denying liability for violating those same contractual limits when technological means

10 of restricting access are not employed.  (Id. at 19.)  Thus, according to EFF, Power's efforts to

11 circumvent Facebook's IP-blocking efforts did not violate Section 502 because Facebook was

12 merely attempting to enforce its Terms of Use by other means.[24]  (Id. at 23-24.)  The Court finds

13 EFF's contentions unpersuasive in this regard.  EFF has not pointed to any meaningful distinction

14 between IP address blocking and any other conceivable technical barrier that would adequately

15 justify not finding Section 502 liability in one instance while finding it in the other.  Moreover, the

16 owners' underlying purpose or motivation for implementing technical barriers, whether to enforce

17 terms of use or otherwise, is not a relevant consideration when determining the appropriate scope of

18 liability for accessing a computer or network without authorization.  There can be no ambiguity or

19 mistake as to whether access has been authorized when one encounters a technical block, and thus

20

21

22

23

─────────────────

24      [24]  The Court notes that although both parties discuss IP address blocking as the form of
technological barrier that Facebook utilized to deny Power access, Facebook's use of IP-blocking

25 and Power's efforts to avoid those blocks have not been established as undisputed facts in this case.
However, for purposes of this Motion, the Court finds that the specific form of the technological

26 barrier at issue or means of circumventing that barrier are not relevant.  Rather, the issue before the
Court is whether there are undisputed facts to establish that such avoidance of technological barriers

27 occurred in the first instance.

28

1  there is no potential failure of notice to the computer user as to what conduct may be subject to

2  criminal liability, as when a violation of terms of use is the sole basis for liability.[25]

3      Accordingly, the Court DENIES Facebook's Motion for Judgment on the Pleadings, and

4  DENIES the parties' Cross-Motions for Summary Judgment as to Facebook's Section 502 cause of

5  action.

6  **C.    Defendants' Counterclaims**

7      Facebook moves to dismiss Defendants' causes of action for violation of Section 2 of the

8  Sherman Act ("Section 2") on the ground that Defendants have failed to allege sufficient facts to

9  state a claim for monopolization or attempted monopolization.  (Facebook's Motion to Dismiss at 4-

10  9.)

11     To state a Section 2 claim for monopolization, the claimant must show that the alleged

12  monopolist (1) possesses monopoly power in the relevant market (2) through the willful acquisition

13  or maintenance of that power, as distinguished from growth or development as a consequence of a

14  superior product, business acumen, or historic accident, (3) that causes antitrust injury.  Verizon

15  Commc'ns v. Trinko, 540 U.S. 398, 407 (2004).

16     Since the Court finds that the element of willful acquisition or maintenance of monopoly

17  power is dispositive, the Court addresses this issue first.  Defendants allege, in pertinent part:

18          Facebook has acquired and maintained market power through two devices:
           Facebook solicited (and continues to solicit) internet users to provide their account names
19          and passwords for users' email and social networking accounts, such as Google's Gmail,
           AOL, Yahoo, Hotmail, or other third party websites.  Facebook then uses the account
20          information to allow the user to access those accounts through Facebook, and to run
           automated scripts to import their lists of friends and other contacts–i.e., to "scrape
21          data"–from those third-party sites into Facebook.  This practice fueled Facebook's growth by
           allowing Facebook to add millions of new users, and to provide users with convenient tools
22          to encourage their friends and contacts to join Facebook as well.  On information and belief
           it is estimated that at least approximately 35% to 50% of Facebook's "132 million active
23          users" . . . registered with Facebook as a result of an invitation generated using this device.

24  _____

25          [25]  As Facebook contends in its Amicus Reply, the Court finds that evidence of Power's
       efforts to circumvent Facebook's technical barrier is also relevant to show the necessary mental state
26     for Section 502 liability.  (Amicus Reply at 10-11.)  Since the facts relating to such circumvention
       efforts are still in dispute, the Court finds that there is also a genuine issue of material fact as to
27     whether Defendants possessed the requisite mental state.

28                                                    20

Facebook simultaneously prohibited (and prohibits) users from using the same type of utility to access their own user data when it is stored on the Facebook site.  Thus, Facebook prohibits users from logging into Facebook through third-party sites, such as Power.com, and also restricts users from running automated scripts to retrieve their own user data from the Facebook site.

(Amended Answer ¶ 174.)

Facebook has also maintained its monopoly power by systematically threatening new entrants, such as Power.com and others, who seek to attract users through the same device . . . that Facebook itself used to fuel its own growth.  On information and belief, for approximately the past 36 months, Facebook has threatened dozens of new entrants since 2006 with baseless intellectual property claims, and has engaged in systematic and widespread copyright misuse . . . to discourage market entry and to stifle competition from new entrants.

(Amended Answer ¶ 176.)

The Court finds that Defendants' allegations cannot support a Section 2 monopolization claim.  Defendants cite no authority for the proposition that Facebook is somehow obligated to allow third-party websites unfettered access to its own website simply because some other third-party websites grant that privilege to Facebook.  In fact, the Ninth Circuit has held that merely introducing a product that is not technologically interoperable with competing products is not violative of Section 2.  See Foremost Pro Color, Inc. v. Eastman Kodak Co., 703 F.2d 534 (9th Cir. 1983).

In response to Facebook's Motion, Defendants merely assert that Facebook's actions are anticompetitive because Defendants have alleged so, and that the Court must accept this allegation as true at the motion to dismiss stage.[26]  In maintaining this position, Defendants miss the fact that the issue of whether or not a particular practice is anticompetitive is determinative of an essential element of a monopoly claim, and is thus a question of law that may be determined by the Court. The Court is not obligated to accept as true Defendants' allegations that amount to conclusions of law, and the Court rejects Defendants' naked assertion here that Facebook's practices are predatory. Papasan, 478 U.S. at 286.

---

[26] (Defendants' Opposition to Motion of Facebook, Inc. to Dismiss Counterclaims and Strike Affirmative Defenses at 4-5, hereafter, "Defendants' Opposition re Motion to Dismiss," Docket Item No. 63.)

The Court likewise finds that Defendants' allegation that Facebook maintained monopoly power by threatening potential new entrants to the social networking market with baseless intellectual property lawsuits cannot support a Section 2 claim.  If Facebook has the right to manage access to and use of its website, then there can be nothing anticompetitive about taking legal action to enforce that right.  Furthermore, whether or not a particular lawsuit is "baseless" is a legal conclusion, and thus the Court need not accept Defendants' allegations as to the merits of Facebook's lawsuits as true.  Again, Defendants cite no authority for the proposition that filing lawsuits against competitors for infringing on one's intellectual property rights can be deemed an anticompetitive or predatory practice.

In light of the Court's finding that Defendants do not plead sufficient facts to satisfy one of the essential elements of their Section 2 claim, the Court need not address the sufficiency of Defendants' pleadings as to the remaining elements.  Since anticompetitive conduct is also an element of a claim for attempted monopolization under Section 2, the Court finds that Defendants' pleadings are deficient as to that claim as well.  See Coalition for ICANN Transparency, Inc. v. VeriSign, Inc., 567 F.3d 1084, 1093 (9th Cir. 2009).

Accordingly, the Court GRANTS Facebook's Motion to Dismiss Defendants' counterclaims for violations of Section 2 of the Sherman Act.  Since Defendants have already had the opportunity to amend their counterclaims once, the Court dismisses these claims with prejudice.

**D.      UCL Claim**

Facebook moves to dismiss Defendants' UCL claim on the ground that if Facebook's conduct is not anticompetitive under Section 2 of the Sherman Act, a UCL claim cannot be premised on that same conduct.  (Facebook's Motion to Dismiss at 8-9.)

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "The broad scope of the statute encompasses both anticompetitive business practices and practices injurious to consumers.  An act or practice may be actionable as 'unfair' under the unfair competition law even if it is not 'unlawful.'"  Chavez v. Whirlpool Corp., 93 Cal. App. 4th 363, 375 (Cal. Ct. App. 2001).

22

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In <u>Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tele. Co.</u>,[27] the court concluded that an act or practice is "unfair" under the UCL if that conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Likewise,

> the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not "unfair" toward consumers. To permit a separate inquiry into essentially the same question under the unfair competition law would only invite conflict and uncertainty and could lead to the enjoining of procompetitive conduct.

<u>Chavez</u>, 93 Cal. App. 4th at 375.

Here, the Court has found that Facebook's conduct is not anticompetitive. Thus, Defendants cannot premise their UCL claim on Facebook's conduct under either the unlawful or the unfair prong. Accordingly, the Court GRANTS Facebook's Motion to Dismiss as to Defendants' UCL counterclaim with prejudice.

**E.      <u>Affirmative Defenses</u>**

Facebook moves to strike Defendants' affirmative defenses of misuse of copyright and fair use. (Facebook's Motion to Dismiss at 9-11.)

Pursuant to Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, "[m]otions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." <u>Neilson v. Union Bank of Cal., N.A.</u>, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003); <u>see, e.g.</u>, <u>Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.</u>, 217 F. Supp. 2d 1028 (C.D. Cal. 2002). Accordingly, such motions should be denied unless the matter has no logical connection to the controversy at issue and may prejudice one or more of the parties to the suit. <u>SEC v. Sands</u>, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995); <u>LeDuc v. Kentucky Central Life Ins. Co.</u>, 814 F. Supp. 820, 820 (N.D. Cal. 1992). When considering a motion to strike, the court "must view the pleading in a light

---

[27] 20 Cal. 4th 163, 187 (Cal. Ct. App. 1999).

United States District Court

For the Northern District of California

1   most favorable to the pleading party." In re 2TheMart.com, Inc. Securities Litig., 114 F. Supp. 2d

2   955, 965 (C.D. Cal. 2000).

3          Here, the Court previously struck Defendants' affirmative defenses because they

4   "contain[ed] no factual allegations." (October 22 Order at 3.) Instead, the pleadings merely referred

5   back to the "Introduction and Background" section with the phrase "conduct, as described herein."

6   (Id. at 4.) The Court found such barebones pleading inadequate, but gave Defendants leave to

7   amend. In their Amended Answer, Defendants plead in much greater detail their misuse of

8   copyright and fair use affirmative defenses. (Amended Answer ¶¶ 161-68.) The Court finds that

9   Defendants' amended allegations are sufficient to provide Facebook with "fair notice of the

10  defense." See Mag Instrument, Inc. v. JS Prods., 595 F. Supp. 1102, 1107 (C.D. Cal. 2008).

11         Accordingly, the Court DENIES Facebook's Motion to Strike Defendants' Affirmative

12  Defenses.

13                              **V.  CONCLUSION**

14         The Court DENIES Facebook's Motion for Judgment on the Pleadings, DENIES the parties'

15  Cross-Motions for Summary Judgment, GRANTS Facebook's Motion to Dismiss Defendants'

16  counterclaims for violations of Section 2 of the Sherman Act with prejudice, GRANTS Facebook's

17  Motion to Dismiss Defendants' UCL counterclaim with prejudice, and DENIES Facebook's Motion

18  to Strike Defendants' Affirmative Defenses.

19         On **August 23, 2010 at 10 a.m.**, the parties shall appear for a Further Case Management

20  Conference. On or before **August 13, 2010**, the parties shall file a Joint Case Management

21  Statement. The Statement shall include an update on the parties' discovery efforts and proposed

22  schedule on how this case should proceed in light of this Order.

23

24  Dated:  July 20, 2010                        _____
                                                 JAMES WARE
25                                               United States District Judge

26

27

28
                                        24

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Alan R Plutzik aplutzik@bramsonplutzik.com
Cindy Ann Cohn cindy@eff.org
David P. Chiappetta david.chiappetta@corrs.com.au
Indra Neel Chatterjee nchatterjee@orrick.com
Jessica Susan Pers jpers@orrick.com
Joseph Perry Cutler JCutler@perkinscoie.com
Julio Cesar Avalos javalos@orrick.com
Lawrence Timothy Fisher ltfisher@bramsonplutzik.com
Scott A. Bursor scott@bursor.com
Thomas J. Gray tgray@orrick.com

**Dated:  July 20, 2010**                                    **Richard W. Wieking, Clerk**

                                                             **By:    /s/ JW Chambers**
                                                                 **Elizabeth Garcia**
                                                                 **Courtroom Deputy**