BURSOR & FISHER, P.A.
L. Timothy Fisher (State Bar No. 191626)
2121 North California Blvd., Suite 1010
Walnut Creek, CA 94596
Telephone: (925) 482-1515
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

BURSOR & FISHER, P.A.
Scott A. Bursor (*pro hac vice*)
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik (State Bar No. 077785)
Michael S. Strimling (State Bar No. 96135)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792
E-Mails: aplutzik@bramsonplutzik.com
         mstrimling@bramsonplutzik.com

Attorneys for Defendants Power
Ventures, Inc. and Steve Vachani

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC.,<br><br>                                        Plaintiff,<br><br>-against-<br><br>POWER VENTURES, INC. d/b/a POWER.COM, a California corporation; POWER VENTURES, INC. a Cayman Island Corporation, STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, an individual and/or business entity of unknown nature; DOES 2 through 25, inclusive, individuals and/or business entities of unknown nature,<br><br>                                        Defendants. | Case No. 5:08-cv-05780 JW<br><br>**NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date: September 19, 2011<br>Time: 9:00 a.m.<br>Judge: Hon. James Ware<br>Courtroom: 5 – 17th Floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

I.      INTRODUCTION .....................................................................................................3

II.     THREE DISPOSITIVE FACTS................................................................................4

        A.      Dispositive Fact # 1: Power did not initiate the email message
                referenced in the complaint. ........................................................................5

        B.      Dispositive Fact # 2:  No one was misled. ..................................................9

        C.      Dispositive Fact # 3:  Facebook suffered no damage or loss. .................10

III.    THE RULE 56 SUMMARY JUDGMENT STANDARD ........................................11

IV.     ARGUMENT .........................................................................................................12

        A.      Facebook Lacks Evidence To Support Essential Elements Of Its
                CAN-SPAM Claim (Claim 1) ....................................................................12

                1.      That Undisputed Evidence Confirms That Power Did Not
                        Initiate The Email Message Referenced In The Complaint .........12

                2.      The Undisputed Evidence Confirms The Email Header
                        Information And Contents Were Not Misleading .......................14

                3.      The Undisputed Evidence Confirms That Power Had No
                        Control Over Whether Facebook Made Opt-Out Utilities
                        Available To Recipients Of The Email .......................................15

                4.      The Undisputed Evidence Confirms That Facebook Was Not
                        "Adversely Affected By" The Email...........................................15

        B.      Facebook Lacks Evidence To Support Essential Elements Of Its
                CFAA Claim (Claim 2) ............................................................................16

                1.      The Undisputed Evidence Confirms Power Did Not Access
                        Facebook Without Authorization ...............................................17

                2.      The Undisputed Evidence Confirms Power Did Not Obtain
                        Anything Of Value From Facebook's Computers.......................18

                3.      The Undisputed Evidence Confirms Power Had No Intent To
                        Defraud ...................................................................................18

        C.      Facebook Lacks Evidence To Support Essential Elements Of Its
                Penal Code § 502 Claim (Claim 3).............................................................19

                1.      The Undisputed Evidence Confirms Power Did Not Access
                        Or Use Facebook "Without Permission".....................................19

                2.      The Undisputed Evidence Confirms Facebook Lacks
                        Standing Because It Suffered No Damage Or Loss ....................19

V.      CONCLUSION ......................................................................................................20

NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:08-cv-05780 JW

i

# TABLE OF AUTHORITIES

**CASES**                                                                                   **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................................12

*ASIS Internet Servs. v. Azoogle.com, Inc.*,
    357 Fed.Appx. 112 (9th Cir. 2009) ...............................................................16

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................11, 12

*Gordon v. Virtumundo, Inc.*,
    575 F.3d 1040 (9th Cir. 2009) ...................................................................15, 16

*Hypertouch, Inc. v. Kennedy-Western University*,
    2006 WL 648688 (N.D. Cal. Mar. 8, 2006) ...................................................11

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ........................................................................................12

*Multiven, Inc. v. Cisco Systems, Inc.*,
    725 F.Supp.2d 887 (N.D. Cal. 2010) ........................................................16, 18

*Neely v. St. Paul Fire and Marine Insur. Co.*,
    584 F.2d 341 (9th Cir. 1978) ...............................................................13, 14, 15

**STATUTES**

15 U.S.C. §§ 7702 ................................................................................................11, 13

15 U.S.C. § 7704 ..............................................................................................12, 14, 15

15 U.S.C. § 7706 ..............................................................................................13, 14, 15

18 U.S.C. § 1030 ....................................................................................................16, 18

California Penal Code § 502.....................................................................................17, 19

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 ..................................................................................................11, 12

NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:08-cv-05780 JW

ii

1   <center>**NOTICE OF MOTION AND MOTION**</center>

2   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

3           PLEASE TAKE NOTICE that on September 19, 2011, at 9:00 a.m. or as soon thereafter as

4   the matter may be heard, in the courtroom of the Honorable James Ware, United States District

5   Court, 450 Golden Gate Avenue, San Francisco, CA 94102, Power Ventures Inc. and Steve

6   Vachani (collectively, "Defendants"), will move the court for summary judgment pursuant to

7   Federal Rule of Civil Procedure 56.

8           Defendants bring this motion for summary judgment to dismiss Claims 1 through 3,

9   asserting claims for violation of the CAN-SPAM Act, the Computer Fraud And Abuse Act, and

10  California Penal Code § 502.  Facebook has produced no evidence substantiating these claims, and

11  is unable to provide proof that anyone was misled by Power, or that Facebook suffered any damage

12  or loss caused by Power.

13          This motion is based on the Notice of Motion and Motion, the supporting Memorandum of

14  Law, the Declaration of Steve Vachani, the Declaration of L. Timothy Fisher and the exhibits

15  thereto, all pleadings on file in this action, oral argument of counsel, and any other matter that may

16  be submitted at the hearing.

17

18                                      Respectfully submitted,

19  Dated:  May 6, 2011                 BURSOR & FISHER, P.A.

20

21                                      By _____/s/_____

22                                         L. Timothy Fisher

23                                      L. Timothy Fisher (State Bar No. 191626)
                                        2121 North California Blvd., Suite 1010
24                                      Walnut Creek, CA 94596
                                        Telephone:  (925) 482-1515
25                                      Facsimile:  (925) 407-2700
                                        E-Mail:  ltfisher@bursor.com
26

27                                      -and-

28                                      Scott A. Bursor (pro hac vice)

369 Lexington Avenue, 10th Floor
New York, NY  10017-6531
Telephone:  (212) 989-9113
Facsimile:   (212) 989-9163
E-Mail:  scott@bursor.com

-and-

Alan R. Plutzik (State Bar No. 77785)
Michael S. Strimling (State Bar No. 96135)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA  94598
Telephone:  (925) 945-0200
Facsimile:  (925) 945-8792
E-Mail: aplutzik@bramsonplutzik.com
           mstrimling@bramsonplutzik.com

Attorneys for Defendants Power
Ventures, Inc. and Steve Vachani

NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:08-cv-05780 JW

2

1

### MEMORANDUM OF LAW

2

Defendants Power Ventures, Inc. and Steve Vachani (collectively "Defendants" or

3

"Power") respectfully submit this Memorandum of Law in Support of Their Motion for Summary

4

Judgment on the remaining three claims in Facebook's First Amended Complaint.

5

### I.  INTRODUCTION

6

Power's first document request, served October 8, 2010, was a single page with 3 numbered

7

requests.  Fisher Decl. Exh. A.  It sought all documents concerning (1) "any injury that Facebook

8

suffered as a result of the events" described in the complaint; (2) "any expenditure that Facebook

9

made as a result of the events" described in the complaint; and (3) "any complaints Facebook users

10

made as a result of the events" described in the complaint.  *Id.*  Facebook produced nothing in

11

response.  *See* Fisher Decl. ¶ 4 & Exh. B ("Facebook's response to the document requests included

12

objections, assertions of privilege, and a statement that responsive documents would be produced

13

upon entry of a protective order.  However, even after the protective order was executed and then

14

entered by the Court, Facebook produced nothing.").  The testimony of Facebook's in-house

15

counsel, Craig Clark, then confirmed that no such documents exist:

16

Q:      So you're not aware of any documents that are responsive to

17
any of these three categories?

18

A:      As I sit here today, I'm not aware of any specific documents.

19
Clark Dep. at 118:20-23, Fisher Decl. Exh. C.

20

Power's first set of interrogatories, also served October 8, 2010, was a single page, with 5

21

numbered requests.  Fisher Decl. Exh. D.  Interrogatory 1 asked Facebook to "identify anyone that

22

was misled by the [email] messages referenced" in the complaint.  Facebook asserted eleven

23

general objections.  Fisher Decl. Exh. E.  Facebook also objected to "the terms 'anyone' and

24

'misled' as vague, overly broad and unduly burdensome."  *Id.* at 2.  Facebook also asserted the

25

attorney-client privilege and attorney work-product doctrine, as well as several additional

26

objections.  *Id.* at 2-3.  During his deposition, Mr. Clark, who purported to verify the interrogatory

27

responses, confirmed that Facebook is unable to identify anyone who was misled:

28

Q:      Can you tell me the name of anyone that was misled by this
message?

NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:08-cv-05780 JW

3

1          A:      I can't.

2    Clark Dep. at 58:5-7, Fisher Decl. Exh. C.

3          Interrogatories 2 through 5 asked for basic facts about Facebook's copyright and trademark

4    claims, such as the identity of the copyrighted and infringing works, and the identity of anyone that

5    experienced any form of "customer confusion," "mistake," or "deception" caused by a Facebook

6    trademark that appeared on the Power site.  Fisher Decl. Exh. D.  Facebook again responded with

7    lengthy objections, assertions of privilege, and no substantive information.  Fisher Decl. Exh. E.

8    When Power's counsel attempted to question Mr. Clark about these matters during his deposition,

9    Facebook's counsel hurriedly stipulated to the dismissal of five counts of Facebook's complaint,

10   including Count 4 (Copyright Infringement), Count 5 (Violation of the Digital Millennium

11   Copyright Act), Count 6 (Trademark Infringement), Count 7 (Trademark Infringement under

12   California Law), and Count 8 (Unlawful, Unfair, and Fraudulent Competition Under California

13   Bus. & Prof. Code § 17200).  *See* Clark Dep. at 125:22-127:23, Fisher Decl. Exh. C (Facebook's

14   counsel interjecting and stating "we're dropping the trademark and copyright claims").  *See also*

15   2/17/11 Stipulation Of Dismissal Pursuant To Fed. R. Civ. P. 41(A)(1), Fisher Decl. Exh. F

16   (Docket Entry No. 97, Stipulation of Dismissal "so ordered" by the Court).

17         Counts 1 through 3 of Facebook's complaint remain, asserting claims for violation of the

18   CAN-SPAM Act, the Computer Fraud And Abuse Act, and California Penal Code § 502.  But

19   Facebook's inability to muster proof that anyone was misled by Power, or proof that Facebook

20   suffered any damage or loss caused by Power, is fatal to those claims.  We are beyond the pleading

21   stage.  Facebook is no longer entitled to any presumption that its allegations are true.  At the

22   summary judgment stage, a plaintiff must produce evidence to support its claims.  And with respect

23   to essential elements of the remaining three claims, Facebook admits it has no evidence.

## II.  THREE DISPOSITIVE FACTS

25         The record establishes three simple facts sufficient to dispose of the remaining claims:  (1)

26   Power did not initiate the email message referenced in the complaint.   (2) No one was misled.

27   And (3) Facebook suffered no damage or loss.

28

NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:08-cv-05780 JW

4

### A. Dispositive Fact # 1: Power did not initiate the email message referenced in the complaint.

Facebook alleges Power sent "unsolicited" email messages to Facebook users that were "deceptive and misleading." *See* Complaint ¶ 65-73.  That allegation is false.  Power did not send the email messages referenced in the complaint.  Facebook did.  Vachani Decl. ¶ 2.

Facebook allows users to create "events," which Facebook then invites friends to attend. *Id.* ¶ 3.  The screen captures from www.facebook.com below illustrate the event creation process. *Id.*  First, a Facebook user creates the event using this screen:



NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:08-cv-05780 JW

5

Second, the Facebook user selects which friends should be invited to the event using this screen:



Third, after the user has created the event and selected the friends to be invited, Facebook sends the invitations by email:



NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:08-cv-05780 JW

6

This email is sent by Facebook.  *Id.*  Facebook determines the address that appears in the "From:" field.  *Id.* ¶ 4; *see also* Complaint ¶ 68 ("From: Facebook<eventmaster+zOs9a6jc@facebookmail.com>").  Facebook also adds the closing signature from "The Facebook Team."  Vachani Decl. ¶ 4; *see also* Complaint ¶ 69 ("The message … is signed by "The Facebook Team," which is both misleading and false.").  Neither the user nor Power has any control over these elements of the email message.  All content in these email messages that Facebook alleges to be misleading and false was written and appended to the message by Facebook itself.  Vachani Decl. ¶ 4.

"The specific email referenced in Facebook's complaint was generated by Facebook as a result of a Facebook user named 'Nik' creating an event and selecting the friends to invite."  *Id.* ¶ 6.  "It was Nik, not Power, that logged on to Facebook and created the event."  *Id.*  "It was Nik, not Power, that chose the friends he wished to invite."  *Id.*  "Nik could only send the invitation to other Facebook members who had agreed to 'friend' Nik, and thus had expressly agreed to receive communications from Nik."  *Id.*  "Facebook then sent an email to those friends on Nik's behalf."  *Id.*  "Power did not initiate this message.  Power did not select the recipients to whom it was sent.  And Power had no control over the content of the message or the header information.  Only Facebook did."  *Id.*

Mr. Clark's testimony confirms there is no genuine dispute about these facts:

> Q:    All right.  So let me focus in on just the "from" line.  Okay?  The one-and-only party that has any control over the content of that line is Facebook itself; isn't that true?
>
> MR. CHATTERJEE:  Speculation.
>
> THE WITNESS:  As I said, I'm not sure.  I believe so, but I'm not sure.
>
> MR. BURSOR:  Q.  If Power wanted to change that line just to say "From: Power," they have no ability to do that; isn't that true?
>
> MR. CHATTERJEE:  Speculation.
>
> THE WITNESS:  I don't believe anybody would draft this.  This would be an automated part of the email creation that would occur when somebody initiated the transmission of a message.  Right.  So, I mean, there's nobody sitting there typing the "from" line.

1          …

2          Q:      That "from" line was automatically generated by Facebook's
                   computers; right?
3
4          THE WITNESS:  Automatically generated by Facebook's computers
                   or their systems, based on a prompt from somebody outside.
                   Right.  Could be a user.  Could be whoever – whoever's
5                  creating the event.

6   Clark Dep. at 68:10-69:25, Fisher Decl. Exh. C.

7          Q:      And then do you see in the body of the message it says "Nik
                   invited you"?
8
9          A:      Mm-hmm, yes.

           Q:      Who's Nik?
10
           A:      I don't know.
11
           Q:      Did Nik initiate this message?
12
           MR. CHATTERJEE:  Speculation.
13
           A:      I don't know who Nik is, so I don't know if Nik initiated this
14                 message.  …

15  *Id.* at 74:16-75:6.

16         Q:      You see at the bottom of the page where it says "Thanks, The
                   Facebook Team"?
17
18         A:      Mm-hmm.

           Q:      Yes?
19
           A:      Yes.
20
           Q:      Who wrote that?
21
22         MR. CHATTERJEE:  Speculation.

           THE WITNESS:  I don't know.
23
24         MR. BURSOR:  Didn't Facebook itself write that?

25         MR. CHATTERJEE:  Same objections.

26         THE WITNESS:  I don't know.

27         MR. BURSOR:  Q.  Isn't it true that Facebook appends that very
                   same text to every e-mail communication it sends after an
                   event is created?
28

1          MR. CHATTERJEE:  Same objection.  Speculation.

2          THE WITNESS:  I don't know.

3  *Id.* at 87:12-88:4.  *See also* Vachani Decl. ¶ 5 ("Facebook appends that very same text to every e-

4  mail communication it sends after an event is created.").

5          Q:      So you see where it says "Nik invited you to the event"?  See
                   that?
6
          …
7
          Q:      Can you focus in on that?
8
          A:      I can focus in on that, yes.
9
          Q:      Who wrote that?
10
          MR. CHATTERJEE:  Speculation.
11
          THE WITNESS:  I don't recall – or I don't know.
12
          MR. BURSOR:  Q.  Who would know the answer to that?
13
          A:      Again, I believe the header information, as with other
14                 elements of this message, would have been auto-generated.
                   So as far as "write this," I don't know [who] would write this.
15
          Q:      It would have been auto-generated by whom?
16
          MR. CHATTERJEE:  Vague.
17
          THE WITNESS:  By the system that was called to send out the
18                 invitation.
19
          MR. BURSOR:  Q.  What system is that?
20
          A:      That would probably be Facebook's system.
21  Clark Dep. at 98:18-99:25, Fisher Decl. Exh. C.  *See also id.* at 101:7-102:20 (describing the event-

22  creation process).

23          **B.      Dispositive Fact # 2:  No one was misled.**

24          Facebook alleges Power "intentionally misled Facebook users."  Complaint ¶ 92.  That

25  allegation is false.  Facebook was unable to identify anyone who was misled by the events

26  described in the complaint and was unable to produce any documents evidencing anyone being

27  misled.  *See* Fisher Decl. Exhs. B and E (Facebook's responses to Power's document requests and

28  interrogatories); Clark Dep. at 58:5-7, Fisher Decl. Exh. C ("Q: Can you tell me the name of

anyone that was misled by this message?  A: I can't.").  Since no one was misled, no one

complained:

> Q:    Have you ever seen a document concerning a Facebook user
> complaining about something that Power did on Facebook?
>
> A:    I don't believe so.

Clark Dep. at 51:18-21, Fisher Decl. Exh. C.

> Q:    You see [document request] 3 asks for any complaints
> Facebook users made as a result of the events described in
> Facebook's First Amended Complaint?  You see that?
>
> A:    I see that.
>
> Q:    But you've never seen any documents like that; right?
>
> MR. CHATTERJEE:  Overly broad.  Vague.
>
> THE WITNESS:  Again, there are documents I've seen that may be
> responsive to this category.  If you're asking if I've seen any
> specific complaints about Power.com, I have not.
>
> Q:    Have you seen general complaints about Power.com?
>
> A:    No.
>
> Q:    All right.  So you haven't seen any specific complaints and
> you haven't seen any general complaints.  What kind of
> complaints have you seen?
>
> A:    I've not seen any complaints regarding Power.com based on
> my preparation for this deposition or otherwise.

*Id.* at 121:6-25.

Mr. Vachani's testimony is in accord with Mr. Clark's.  Mr. Vachani states that "Like

Facebook, Power also has not received a single complaint from a Facebook user about any of the

events described in Facebook's complaint.  No one complained to Power about the email

referenced in ¶ 92 of Facebook's complaint.  Nor has anyone complained to Power about any of

our activities related to Facebook.  Nor has anyone claimed to have been misled by anything we

did."  Vachani Decl. ¶ 8.

### C.    Dispositive Fact # 3:  Facebook suffered no damage or loss.

Facebook alleges Power's conduct "caused a loss to Facebook during a one-year period in

excess of $5,000."  Complaint ¶ 109.  That allegation is false.  Facebook was unable to produce

NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:08-cv-05780 JW

10

any document evidencing any loss to, or expenditure by, Facebook.  *See* Fisher Decl. ¶ 4 and Exh.

B ("Facebook produced nothing.").  Mr. Clark then admitted that Facebook has no evidence that it

suffered any damage or loss:

> Q:      Can you identify anything that Power did that caused
>         Facebook to lose money?
>
> A:      Same answer.
>
> Q:      You can't answer?
>
> A:      I can't answer that.

Clark Dep. at 116:14-18, Fisher Decl. Exh. C.

> Q:      Are you aware of any document concerning any injury that
>         Facebook suffered as a result of the events described in the
>         First Amended Complaint?  Just the existence of a document.
>
> A:      I don't know.
>
> Q:      As you sit here today, you couldn't identify any document
>         that would relate to that?
>
> A:      No, I don't believe I can.

Clark Dep. at 117:18-25, Fisher Decl. Exh. C.

### III.  THE RULE 56 SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion

by:  (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials

cited do not establish the absence or presence of a genuine dispute . . . ."  Fed. R. Civ. P. 56(c)(1).

The moving party bears the initial burden of demonstrating the absence of a genuine issue

of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, the moving

party "has no burden to negate or disprove matters on which the non-moving party will have the

burden of proof at trial."  *Hypertouch, Inc. v. Kennedy-Western University*, 2006 WL 648688, at *1

(N.D. Cal. Mar. 8, 2006); *see Celotex Corp.*, 477 U.S. at 325.   To prevail on a summary judgment

motion, the moving party need only alert the Court that there is an absence of evidence to support

the non-moving party's case.  *See Celotex Corp.*, 477 U.S. at 325.

NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:08-cv-05780 JW

11

1    Once the moving party has met its initial burden of proof, the burden then shifts to the non-

2    moving party to show that material facts are genuinely in dispute by "citing to particular parts of

3    materials in the record, including depositions, documents, electronically stored information,

4    affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials."

5    *See id.* at 324; Fed. R. Civ. P. 56(c)(1)(A).  Thus, the non-moving party must affirmatively present

6    specific evidence sufficient to create a genuine issue of material fact for trial.  *See Celotex Corp.*,

7    477 U.S. at 324.  To carry this burden, the non-moving party must "do more than simply show that

8    there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v.*

9    *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . .

10   will be insufficient; there must be evidence on which the jury could reasonably find for the [non-

11   moving party.]"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV.  ARGUMENT

### A.    Facebook Lacks Evidence To Support Essential Elements Of Its CAN-SPAM Claim (Claim 1)

15       Claim 1 asserts claims under §§ 7704(a)(1), (2), (3) and (5) of CAN-SPAM.  Compl. ¶¶ 92-

16   95.[1]  Facebook alleges Power initiated an email that "contained header information that was

17   materially false or misleading as to the true identity of the sender," Complaint ¶ 92; "did not

18   contain a functioning return electronic mail address or other Internet-based opt-out mechanism," *id.*

19   ¶¶ 93-94; and "contained 'from' lines that were misleading regarding the actual sender," *id.* ¶ 95.

20   In fact, the undisputed evidence confirms that Power did not send the message – Facebook did.

21   The header information and from line were accurate and not misleading.  And Facebook lacks

22   standing under CAN-SPAM because it was not adversely affected by the email.

### 1.    That Undisputed Evidence Confirms That Power Did Not Initiate The Email Message Referenced In The Complaint

24       Each one of the substantive prohibitions of CAN-SPAM makes it unlawful to "initiate"

25   the transmission of prohibited commercial electronic mail messages.  *See, e.g.*, 15 U.S.C.

26   § 7704(a)(1) ("It is unlawful for any person to initiate the transmission … of a commercial

---

[1] Paragraph 92 of the Complaint mistakenly cites to § 7704(a)(3) although its allegations invoke the prohibitions of § 7704(a)(1).

NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:08-cv-05780 JW

12

electronic mail message … that contains … header information that is materially false or materially misleading."). But neither Power nor Vachani initiated the message referenced in Facebook's complaint. Facebook itself initiated the message. *See supra* Dispositive Fact #1: Power did not initiate the email message referenced in the complaint. *See also* Vachani Decl. ¶ 9 ("Power did not transmit any email message to any Facebook account. Nor did Power make available any utility that would enable a user to transmit such messages."). Indeed, Facebook's in-house litigation counsel, Mr. Clark, testified that only Facebook users or Facebook itself can transmit email messages to Facebook accounts. Clark Dep. at 23:11-17, Fisher Decl. Exh. C. And Facebook is not aware of any instance where an email from an outside source was transmitted to a user's Facebook account:

> MR. BURSOR:  Q.  Okay.  Sitting here today, can you identify any
> instance when that has happened?
>
> THE WITNESS:  I cannot.

*Id.* at 26:2-12.

CAN-SPAM, however, recognizes that more than one person can "initiate" a message, and that one may be liable for "procuring" another to do so. In actions brought by ISPs, like Facebook, a special definition of "procure" applies. 15 U.S.C. § 7706(g)(2). Here, "procure" means "intentionally to pay or provide other consideration to, or induce, another person to initiate such a message on one's behalf with actual knowledge, or by conspicuously avoiding knowing, whether such person is engaging, or will engage, in a pattern or practice that violates this chapter." *See* 15 U.S.C. §§ 7702(12) and 7706(g)(2). But Facebook cannot prevail under this theory for two reasons. First, there is no evidence that Power gave any consideration to Facebook to procure transmission of the message. Second, and more importantly, any argument that Power "procured" Facebook's own transmission of the message would defeat Facebook's claim because Facebook's own conduct would be the but-for cause, proximate cause, and superseding intervening cause, of any violation and any harm caused thereby. Power's role, if any, in such "procuring" would be far too attenuated to be considered the proximate cause of the violation or harm, if any. *See, e.g.*, *Neely v. St. Paul Fire and Marine Insur. Co.*, 584 F.2d 341, 345-46 (9th Cir. 1978) (affirming grant

NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:08-cv-05780 JW

13

of defendants' summary judgment motion) ("It is well settled that proof must be sufficient to raise a reasonable inference that the act or omission complained of was in fact the proximate cause of injury.").

<p style="text-align:center"><strong>2.    <u>The Undisputed Evidence Confirms The Email Header Information And Contents Were Not Misleading</u></strong></p>

Section 7704(a)(1) prohibits commercial electronic mail messages with "header information that is materially false or materially misleading."  The undisputed evidence confirms there was no violation of this section because the header information on the email was accurate, and no one was misled thereby.  *See supra* Dispositive Fact #1 (discussing evidence confirming that the email in question was auto-generated and transmitted by Facebook); Dispositive Fact #2 ("No one was misled."); Vachani Decl. ¶ 6 ("Facebook itself transmitted the message and the header information is accurate.").  The "from" line and other contents of the email were "automatically generated by Facebook's computers" and were also accurate and not misleading. *See* Clark Dep. at 68:10-69:25, Fisher Decl. Exh. C ("That 'from' line was automatically generated by Facebook's computers …."); *id.* at 87:12-88:4 ("Thanks, The Facebook Team" is appended to the email by Facebook itself); Vachani Decl. ¶ 5 ("Facebook appends that very same text to every e-mail communication it sends after an event is created.").

Furthermore, even if those aspects of the messages were misleading in any way – and there is no evidence they were – "Power had no control over them."  Vachani Decl. ¶¶ 4, 5, 7.  "They were auto-generated by Facebook and Power could not have changed them if it wanted to."  *Id.* ¶ 5; *see also* Clark Dep. at 68:10-69:25, Fisher Decl. Exh. C ("Q:  … The one-and-only party that has any control over the content of that line is Facebook itself; isn't that true?  A: …  I believe so ….") (objection omitted).  Thus, Facebook itself, and not Power, was the but-for cause, proximate cause, and superseding intervening cause of any misleading header information or other content.  *See, e.g.*, *Neely*, 584 F.2d at 346.

NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:08-cv-05780 JW

14

### 3. The Undisputed Evidence Confirms That Power Had No Control Over Whether Facebook Made Opt-Out Utilities Available To Recipients Of The Email

Sections 7704(a)(3) and (a)(5) prohibit commercial electronic messages that do not contain a functioning return electronic mail address or other Internet-based opt-out mechanism. But the undisputed evidence confirms that Facebook transmitted the messages. *See supra* Dispositive Fact #1 (discussing evidence confirming that the email in question was auto-generated and transmitted by Facebook). "Power had no control over the return electronic mail address. Only Facebook did. And Power had no ability to include any opt-out mechanism in the message. It was Facebook, and Facebook alone, that determined whether to include an opt-out mechanism in the message." Vachani Decl. ¶ 7. So, again, Facebook itself, and not Power, was the but-for cause, proximate cause, and superseding intervening cause of any violation related to the lack of a functioning return address and opt-out mechanisms, and any harm caused thereby. *See, e.g.*, *Neely*, 584 F.2d at 346.

### 4. The Undisputed Evidence Confirms That Facebook Was Not "Adversely Affected By" The Email

The evidence confirming that Facebook suffered no damage or loss (*see supra* Dispositive Fact #3: Facebook suffered no damage or loss) deprives Facebook of standing to assert any CAN-SPAM claim. The CAN-SPAM standing inquiry involves three distinct elements: namely, (i) whether the plaintiff is an Internet access service provider ("ISP"), (ii) who was "adversely affected," (iii) "by a violation of . . . or a pattern or practice that violates [the Act]." 15 U.S.C. § 7706(g)(1). Thus, to pursue a private right of action under CAN-SPAM, an ISP must demonstrate that it has been "adversely affected by" violations of the statute. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1052-53 (9th Cir. 2009).

CAN-SPAM does not list specific examples of harm that satisfy the "adversely affected" requirement. *See id.* at 1053. "At minimum, however, the harm must be both real and of the type experienced by ISPs." *Id.* (affirming summary judgment dismissal of CAN-SPAM claims based on plaintiff's lack of standing for failure to show an adverse effect from the alleged statutory violations). Thus, the harms redressable under CAN-SPAM should reflect those types of harms "uniquely encountered by" ISPs including "network crashes, higher bandwith utilization, and

NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:08-cv-05780 JW

15

increased costs for hardware and software upgrades, network expansion and additional personnel." *Id.* at 1054.  Moreover, "the harm must be of significance to a *bona fide* [ISP]—something beyond the mere annoyance of spam and greater than the negligible burdens typically borne by an [ISP] in the ordinary course of business."  *Id.*  For example, "evidence of some combination of operational or technical impairments and related financial costs attributable to unwanted commercial e-mail would suffice." *Gordon*, 575 F.3d at 1054.  However, the ordinary costs and burdens associated with operating an Internet access service do not constitute harm upon which standing can rest.  *See id.*

Facebook failed to produce any evidence of harm upon which standing may be predicated. Facebook did not submit evidence demonstrating network crashes or other harm relating to bandwith utilization, hardware, network integrity, overhead costs, fees, staffing or equipment costs. *See Gordon*, 575 F.3d at 1055-56.  Moreover, any argument that standing exists merely because Facebook employees may have worked on issues related to this case would be precluded by controlling law.  *See ASIS Internet Servs. v. Azoogle.com, Inc.*, 357 Fed.Appx. 112, 113-114 (9th Cir. 2009) (holding ISP was not adversely affected by CAN-SPAM violations and lacked standing to sue where ISP argued harm based on employee time devoted to spam issues).  In any event, Facebook has not submitted employee records or any other evidence detailing time spent or efforts of its employees concerning these matters.

### B.  Facebook Lacks Evidence To Support Essential Elements Of Its CFAA Claim (Claim 2)

Count 2 generally alleges a violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.  Complaint ¶¶ 104-09.  Facebook does not expressly identify which subsection of § 1030 it bases its claim on, but a generous reading of the complaint appears to describe a violation of § 1030(a)(4), which prohibits unauthorized access to a protected computer.  To establish liability under § 1030(a)(4), Facebook must present evidence that Power:  (i) accessed a "protected computer," (ii) without authorization or exceeding such authorization that was granted, (iii) "knowingly and with intent to defraud," and thereby (iv) "further[ed] the intended fraud and obtain[ed] anything of value," (v) aggregating at least $5,000 in value in any 1-year period.  18

NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:08-cv-05780 JW

16

1    U.S.C. § 1030(a)(4).  Facebook has failed to produce evidence sufficient to raise a genuine dispute

2    that Power acted without authorization, had intent to defraud, or obtained anything of value.

### 1.    The Undisputed Evidence Confirms Power Did Not Access Facebook Without Authorization

This Court has already found that "Power did not act 'without permission' within the
meaning of Section 502 when Facebook account holders utilized the Power website to access and
manipulate their user content on the Facebook website, even if such action would violate
Facebook's Terms of Use."  *See* 7/20/10 Order at 18, Docket Entry No. 89, Fisher Decl. Exh. G.
The Court, however, held open the possibility that Facebook could establish that Power acted
"without permission" by providing its users with tools "designed to circumvent the technical
barriers that Facebook put in place to block Power's access to the Facebook website."  *Id.* at 19.
To date, Facebook has produced no evidence to support its circumvention theory.  And Power has
refuted that theory through the declaration of Mr. Vachani.

According to Mr. Vachani, "[a]t some time during December 2008 Facebook began
blocking one of the IP addresses Power had used."  Vachani Decl. ¶ 11.  "Power did not undertake
any effort to circumvent that block, and did not provide users with any tools designed to
circumvent it."  *Id.*  "Nevertheless, Facebook's IP block was ineffective because it blocked only
one outdated IP address Power had used, and did not block other IPs that Power was using in the
normal course of business."  *Id.*  "After the IP blocking, Power undertook efforts to implement
Facebook Connect as Facebook had requested."  *Id.*; *see also* Avalos Decl. Exh. 1 (Docket 57-1)
(December 2008 correspondence concerning the parties' negotiations over the implementation of
Facebook Connect, and Power's diligent efforts to do so), submitted herewith as Fisher Decl.
Exh. H.  "When negotiations with Facebook over the implementation of Facebook Connect broke
down, Power turned off our Facebook integration completely.  We did not circumvent any
technical barriers.  And we voluntarily turned off the integration even though Facebook's IP
blocking attack was partial, incomplete, and ineffective."  Vachani Decl. ¶ 12.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 2.   The Undisputed Evidence Confirms Power Did Not Obtain Anything Of Value From Facebook's Computers

To prevail on its CFAA claim, Facebook must prove that Power obtained something of value worth more than $5,000 in any one-year period.  *See* 18 U.S.C. § 1030(a)(4).  Facebook's complaint alleged that Power's conduct "caused a loss to Facebook during a one-year period in excess of $5,000."  Complaint ¶ 109.  That allegation is false.  *See supra* Dispositive Fact # 3: Facebook suffered no damage or loss.  The complaint does not identify anything of value that Power is alleged to have obtained from Facebook's computers.  Nor has Facebook produced any evidence that Power obtained anything of value from its computers.  This case is thus distinguishable from *Multiven, Inc. v. Cisco Systems, Inc.*, 725 F.Supp.2d 887 (N.D. Cal. 2010), where "Cisco present[ed] evidence that Cisco's operating software valued at over $14,000 was subject to unauthorized downloads, resulting from unauthorized intrusions into Cisco's secure website."  *Id.* at 895.  The website at issue here was public, and was accessed by authorized users entering their own valid account usernames and passwords.  *See* Vachani Decl. ¶ 10 ("Power did not access any nonpublic portion of Facebook's website.  Power merely offered users a different and potentially superior browser through which they could access their Facebook accounts to copy, update, and/or port their own 'User Content.'  And users did so by entering their own valid usernames and passwords, which Power never copied or stored for any purpose.").  Furthermore, "Power did not obtain any software, data, or other content of value from Facebook.  The only data accessed through Power's utilities were user's own 'User Content,' over which Facebook has disclaimed any ownership."  *Id.*

## 3.   The Undisputed Evidence Confirms Power Had No Intent To Defraud

To prevail on its CFAA claim, Facebook must prove that Power acted "with intent to defraud," and committed conduct designed to "further[] the intended fraud."  18 U.S.C. § 1030(a)(4).  But Facebook failed to produce evidence that anyone was misled, or that Power had any intend to defraud.  *See supra* Dispositive Fact # 2:  No one was misled.  And Mr. Vachani's declaration denies any intent to defraud:

NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:08-cv-05780 JW

18

1
2
3

> The only intended use and the only actual use of the Power browser
> was to display the user's own Facebook account and to enable the
> user to copy and/or update the user's own "User Content." We had
> no scheme to defraud, deceive or extort anyone. Nor could the
> Power browser be used for such a scheme. Nor, to my knowledge,
> was the Power browser used for such a scheme.

4
5
6
7
8

Vachani Decl. ¶ 13. Facebook's inability to muster a single document evidencing anyone who claims to have been misled, or to name a single person who was misled, or who complained about anything Power did, confirms that there is no genuine dispute with respect to the facts recited in Mr. Vachani's declaration. There is no evidence that Power intended to defraud, or committed any act to further such fraud.

9
10

**C.    Facebook Lacks Evidence To Support Essential Elements Of
Its Penal Code § 502 Claim (Claim 3)**

11
12
13

Count 3 asserts claims under California Penal Code § 502(c)(1)-(4) and (7). *See* Complaint ¶¶ 113-18. Each of those claims fails because Power produced no evidence that Facebook accessed its computers "without permission," and no evidence that Facebook suffered any damage or loss.

14
15

**1.    The Undisputed Evidence Confirms Power Did Not
Access Or Use Facebook "Without Permission"**

16
17
18

To prevail on any of its § 502 claims, Facebook must prove that Power accessed its computers "without permission." *See* California Penal Code § 502(c)(1)-(4) and (7). Facebook has not produced evidence sufficient to raise a genuine issue as to this element for the same reasons as those set forth in Part IV.B.1, *supra*.

19
20

**2.    The Undisputed Evidence Confirms Facebook Lacks
Standing Because It Suffered No Damage Or Loss**

21
22
23
24
25
26
27
28

Standing to assert a civil claim under § 502 is conferred only to "the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation." Penal Code § 502(e). Thus, to prevail on any of its § 502 claims, Facebook bears the burden to prove that it suffered "damage or loss." Before any discovery had been taken, Power moved for summary judgment on this issue based on the 1/15/10 Declaration of Steven Vachani. The Court denied that motion, reasoning that "Since information regarding Facebook's technical measures, and the cost Facebook expended implementing those measures, is likely to be in Facebook's possession and not Power's, the Court finds that Vachani's declaration

alone cannot defeat Plaintiff's standing."  *See* 7/20/10 Order at 7-8, Docket Entry No. 89, Fisher

Decl. Exh. H.  Now, however, Facebook's alleged "damage or loss" has been probed in discovery

and demonstrated to be nonexistent.  Facebook was unable to produce any document evidencing

such an injury or expenditure.  *See* Fisher Decl. Exhs. A and F (Power's document requests and

Facebook's responses thereto); *see also supra* Part I (discussing same).  Thus the evidence the

Court contemplated in its prior order does not exist.  *See supra* Part II.C. (Dispositive Fact # 3:

Facebook suffered no damage or loss); Part IV.A.4 (discussing evidence confirming Facebook was

not "adversely affected" by alleged CAN-SPAM violations); Part IV.B.3 (discussing evidence

confirming Power did not obtain anything of value from Facebook's computers).

### V.  CONCLUSION

This is a lawsuit where no one was misled, where no user complained, and where Facebook

suffered no damage or loss.  Yet the lawsuit has been pending for more than two years.  Power has

produced all documents responsive to Facebook's discovery requests.  Fisher Decl. ¶ 10 ("Power

answered Facebook's discovery requests on December 15, 2010 and produced all responsive

documents on February 3, 2011, promptly after the protective order was entered.").  Facebook has

produced nothing, and the testimony of its principal witness, Craig Clark, confirms Facebook has

no evidence to support its claims.  Power's motion for summary judgment on Facebook's three

remaining claims should be granted in its entirety.


Dated:  May 6, 2011

Respectfully submitted,

BURSOR & FISHER, P.A.


By_____/s/_____
                    L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
2121 North California Blvd., Suite 1010
Walnut Creek, CA 94596
Telephone:  (925) 482-1515
Facsimile:  (925) 407-2700
E-Mail:  ltfisher@bursor.com

-and-

NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:08-cv-05780 JW

20

1

Scott A. Bursor (*pro hac vice*)
369 Lexington Avenue, 10th Floor

2

New York, NY  10017-6531
Telephone:  (212) 989-9113

3

Facsimile:  (212) 989-9163
E-Mail:  scott@bursor.com

4

-and-

5

Alan R. Plutzik (State Bar No. 77785)

6

Michael S. Strimling (State Bar No. 96135)
2125 Oak Grove Road, Suite 120

7

Walnut Creek, CA  94598
Telephone:  (925) 945-0200

8

Facsimile:  (925) 945-8792
E-Mail:  aplutzik@bramsonplutzik.com

9

mstrimling@bramsonplutzik.com

10

Attorneys for Defendants Power
Ventures, Inc. and Steve Vachani

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 5:08-cv-05780 JW

21