BURSOR & FISHER, P.A.
L. Timothy Fisher (State Bar No. 191626)
2121 North California Blvd., Suite 1010
Walnut Creek, CA 94596
Telephone: (925) 482-1515
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

BURSOR & FISHER, P.A.
Scott A. Bursor (*pro hac vice*)
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik (State Bar No. 077785)
Michael S. Strimling (State Bar No. 96135)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792
E-Mail: aplutzik@bramsonplutzik.com
         mstrimling@bramsonplutzik.com

Attorneys for Defendants Power
Ventures, Inc. and Steve Vachani

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC.,<br><br>                         Plaintiff,<br><br>-against-<br><br>POWER VENTURES, INC. d/b/a POWER.COM, a California corporation; POWER VENTURES, INC. a Cayman Island Corporation, STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, an individual and/or business entity of unknown nature; DOES 2 through 25, inclusive, individuals and/or business entities of unknown nature,<br><br>                         Defendants. | Case No. 5:08-cv-05780<br><br>**DECLARATION OF STEVE VACHANI IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date: September 19, 2011<br>Time: 9:00 a.m.<br>Judge: Hon. James Ware<br>Courtroom: 5 – 17th Floor |

DECLARATION OF STEVE VACHANI
CASE NO. 5:08-CV-05780

I, Steve Vachani, declare:

1. I am CEO of Power.com ("Power"). I make this declaration in support of Defendants' Motion for Summary Judgment. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify to the truth thereof.

2. In its First Amended Complaint ("complaint"), Facebook accused Power of sending unsolicited email messages to Facebook users that were deceptive and misleading. Power did not send the email messages referenced in the complaint. Facebook sent those messages.

3. Facebook allows its users to create "events," which Facebook then invites friends to attend. Facebook users can create an event using the "Create an Event" screen on Facebook's website. Facebook users can then select which friends should be invited to the events that they create using the "Invite Friends" screen on Facebook's website. After a user has created an event and selected his or her friends to be invited, Facebook sends the invitations by email. The screen captures in our accompanying memorandum of law are true and correct representations of the screens used in Facebook's event creation process, and an email invitation initiated by Facebook through the event creation process.

4. Power did not send the email messages referenced in the complaint. Facebook did. Facebook solely determined the content of the "From:" field, and it supplied the closing signature from "The Facebook Team." Neither the user nor Power has any control over these elements of the email message.

5. All of the content in these email messages that Facebook alleges to be misleading and false was written and appended to the message by Facebook itself. In fact, Facebook appends that very same text to every email communication it sends after an event is created. Even if the "From:" field and closing signature were misleading in any way, Power had no control over them.

6. The specific email referenced in the complaint was generated by Facebook as a result of a Facebook user named "Nik" creating an event and selecting the friends to invite. It was Nik, not Power, that logged on to Facebook and created the event. It was Nik, not Power, that chose the friends he wished to invite. Nik could only send the invitation to other Facebook members who had agreed to "friend" Nik, and thus had expressly agreed to receive

communications from Nik.  Facebook then sent an email to those friends on Nik's behalf.  Power did not initiate this message.  Power did not select the recipients to whom it was sent.  And Power had no control over the content of the message or the header information.  Only Facebook did.  Facebook itself transmitted the message and the header information is accurate.

7. Power had no control over the return electronic mail address.  Only Facebook did.  And Power had no ability to include any opt-out mechanism in the message.  It was Facebook, and Facebook alone, that determined whether to include an opt-out mechanism in the message.

8. Like Facebook, Power also has not received a single complaint from a Facebook user about any of the events in Facebook's complaint.  No one complained to Power about the emails referenced in ¶ 92 of Facebook's complaint.  Nor has anyone complained to Power about any of our activities related to Facebook.  Nor has anyone claimed to have been misled by anything we did.

9. Power did not transmit any email message to any Facebook account.  Nor did Power make available any utility that would enable a user to transmit such messages.

10. Power did not access any nonpublic portion of Facebook's website.  Power merely offered users a different and potentially superior browser through which they could access their Facebook accounts to copy, update, and/or port their own "User Content."  And users did so by entering their own valid usernames and passwords, which Power never copied or stored for any purpose.  Furthermore, Power did not obtain any software, data, or other content of value from Facebook.  The only data accessed through Power's utilities were user's own "User Content," over which Facebook has disclaimed any ownership.

11.  At some time during December 2008, Facebook began blocking one of the IP addresses Power had used.  Power did not undertake any effort to circumvent that block, and did not provide users with any tools designed to circumvent it.  Nevertheless, Facebook's IP block was ineffective because it blocked only one outdated IP address Power had used, and did not block other IPs that Power was using in the normal course of business.  After the blocking, Power undertook efforts to implement Facebook Connect as Facebook had requested.

DECLARATION OF STEVE VACHANI
CASE NO. 5:08-CV-05780

2

12. When negotiations with Facebook over the implementation of Facebook Connect broke down, Power turned off our Facebook integration completely. We did not circumvent any technical barriers. And we voluntarily turned off the integration even though Facebook's IP blocking attack was partial, incomplete, and ineffective.

13. The only intended use and the only actual use of the Power browser was to display the user's own Facebook account and to enable the user to copy and/or update the user's own "User Content." We had no scheme to defraud, deceive or extort anyone. Nor could the Power browser be used for such a scheme. Nor, to my knowledge, was the Power browser used for such a scheme.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed at Rio de Janeiro, Brazil this 6th day of May, 2011.

*[signature]*

Steve Vachani