1   I. NEEL CHATTERJEE (STATE BAR NO. 173985)
    nchatterjee@orrick.com
2   THERESA A. SUTTON (STATE BAR NO. 211857)
    tsutton@orrick.com
3   MONTE M.F. COOPER (STATE BAR NO. 196746)
    mcooper@orrick.com
4   MORVARID METANAT (STATE BAR NO. 268228)
    mmetanat@orrick.com
5   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
6   Menlo Park, CA  94025
    Telephone:    650-614-7400
7   Facsimile:    650-614-7401

8   Attorneys for Plaintiff
    FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., | Case No.  5:08-cv-05780 JW (HRL) |
| Plaintiff, | **JOINT STATEMENT PER JULY 14, 2011 COURT ORDER ON DISCOVERY DISPUTE JOINT REPORT #1 (DKT. NO. 113)** |
| v. | |
| POWER VENTURES, INC. a Cayman Island Corporation; STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, DOES 2-25, inclusive, | Judge:     Hon. James Ware<br>Courtroom: 8, 4th Floor |
| Defendants. | |

**REDACTED**

**I.      INTRODUCTION**

Plaintiff Facebook, Inc. ("Facebook") and Defendants Power Ventures, Inc. ("Power") submit this Joint Statement pursuant to the Court's July 14, 2011 Order Re. Discovery Referral (Dkt. No. 115). On July 7, 2011, the parties had, in accordance with Magistrate Judge Lloyd's June 3, 2011 Standing Order re Civil Discovery Disputes, filed and submitted the attached "Discovery Dispute Joint Report #1" (Dkt. No. 113). Declaration of Morvarid Metanat ("Metanat Decl."), Ex. 1. The attached Discovery Dispute Joint Report #1 relates to Power's refusal to produce source code in response to Facebook's Request for Production of Documents No. 3. Pursuant to Paragraph 2(E) of Magistrate Judge Lloyd's June 3, 2011 Standing Order re Civil Discovery Disputes, the submission by the parties of the attached Discovery Dispute Joint Report #1 had the same effect as the complete briefing by the parties of a Motion to Compel brought by Facebook.

In compliance with this Court's July 14 order, the parties hereby summarize the discovery dispute that was taken under submission by Magistrate Judge Lloyd. Should the Court prefer that the Discovery Dispute Joint Report #1 be re-filed and briefed as a formal noticed Motion to Compel, the parties are prepared to comply with such a request.

**II.     SUMMARY OF "DISCOVERY DISPUTE JOINT REPORT #1"**

**A.     FACEBOOK'S SUMMARY OF WHY IT SHOULD RECEIVE POWER'S SOURCE CODE**

**1.      Factual Background**

On December 30, 2008, Facebook filed suit against Power Ventures and Steve Vachani asserting claims for: (1) Violations of the CAN-SPAM Act (15 U.S.C. § 7701, et seq.); (2) Violations of the Computer Fraud and Abuse Act (18 U.S.C. § 1030) (the "CFAA"); (3) Violations of California Penal Code Section 502; (4) Copyright Infringement; (5) Violation of the Digital Millennium Copyright Act; (6) Trademark Infringement; (7) Trademark Infringement under California Law; and (8) Unlawful, Unfair, and Fraudulent Competition Under California Bus. & Prof. Code § 17200). The parties stipulated to the dismissal of counts 4 through 8 on

February 17, 2011.  The remaining claims center around Power's unlawful access of the Facebook website via automated software through specially designed "PowerBrowser" and "PowerScript" software applications, Power's gathering in violation of Facebook's Terms of Service of Facebook user profile information such as "Friends lists," account information, photographs, etc., for use on its website www.power.com, and Power's subsequent unauthorized solicitation of Facebook users by use of its PowerScript automated scripts and applications to join and use the website  www.power.com.  Power has not produced any technical information about its allegations.

On October 22, 2010, Facebook served Power with its First Set of Requests for Production and Interrogatories.  Attached as Exhibit A to the Discovery Dispute Joint Report is a true and correct copy of Facebook's First Set of Requests for Production of Documents.  Request No. 3 calls for the production of:

> A copy of ALL versions of COMPUTER CODE (including, without limitation, source code, object code, scripts OR ALL executable files) YOU used, OR use to copy, extract, download, access OR retrieve data OR information from the FACEBOOK WEBSITE.

The Request would require Power to produce all of the software and source code relevant to its PowerScript, PowerBrowser, and related applications. To date, Facebook has not received any such data.

Power responded to Facebook's document requests on December 15, 2010.  Attached as Exhibit B to the Discovery Dispute Joint Report #1 is a true and correct copy of Defendant Power Ventures, Inc.'s Responses to Facebook, Inc.'s First Set of Requests for Production.

Rather than producing the raw computer source code or software associated with PowerScript and PowerBrowser applications, Power produced a June 2007 PowerScript Training document and a "PowerScript Documentation Developer Manual."  Both documents are essentially high level architectural documents designed to explain how PowerScript can be used to further create software for use by Power.  They both date from **before** Power even developed the software that it used to access and download information from the Facebook website, and offer virtually no information how such data acquisition was accomplished or used by Power.

1  The word "Facebook" does not once appear in either document.  This instructional manual did
2  little more than explain to a user how to write PowerScript code.
3       On May 17, 2010, Facebook therefore initiated the meet and confer process required to
4  bring a Motion to Compel by sending a letter to Power's counsel, L. Timothy Fisher.  In that
5  letter, Facebook requested that Power produce its actual source code for PowerScript and related
6  applications.  Power continued to refuse on the grounds that it believes the source code is
7  unnecessary and duplicative of two general PowerScript documents Power produced.  Facebook
8  again responded by explaining why the high-level PowerScript documents do not indicate how
9  the Power.com website actually functioned, or how it was used to access and download
10 information from Facebook.  As Facebook noted in its June 9, 2011 letter to Power:

> Based on Power's current production of documents, Facebook cannot determine exactly what source-code documentation will be necessary to prove its claims.  However, Facebook's investigation suggests that Power.com may have been built in part using server-side scripting languages like Microsoft's Active Server Pages ("ASP") or PHP.  At a minimum, then, Power must produce, for example and without limitation any ASP or PHP code used to copy, extract, download, access, or retrieve data or information from the Facebook website.

16 Metanat Decl., Ex. 2.  Power did not in response offer any explanations for why it believed the
17 two high-level instructional documents showed how information actually had been downloaded
18 using PowerScript from Facebook, what attributes and variables were used to associate
19 downloaded Facebook information with the information Power stored about its own users, how
20 the PowerScript software interacted with Facebook and could be used to initiate events (such as
21 Group Events) to solicit Facebook users to join Power, what commands were used by Power to
22 obtain information from and/or to send communications to Facebook users, what database files
23 were used in Power's own database reflecting who were Facebook users, how Facebook user
24 profile information was parsed and reformatted on the website www.power.com, or similar
25 important critical technical details.
26     On June 22, 2011, Facebook's lead counsel, Neel Chatterjee, met in person with
27 Mr. Fisher, to discuss the outstanding discovery disputes, as required by Magistrate Judge
28 Lloyd's June 3, 2011 Standing Order.  Mr. Fisher had no authority to resolve any of the issues

1  raised, despite having received numerous communications detailing them prior to the meeting.

2  Instead, Mr. Fisher indicated he had to confer with his client, in violation of the Magistrate

3  Judge's Standing Order requiring that lead counsel be "accompanied by anyone else whose

4  presence is needed to fully explore resolution." Facebook immediately followed up the in-person

5  conference with a summary of Facebook's proposals. Nine days later, and after repeated requests

6  for a response, on July 1, 2011, Power rejected all of Facebook's proposed solutions. This

7  prompted the parties on July 11, 2011 to file the attached Discovery Dispute Joint Report #1.

8  Meanwhile, on May 9, 2011, Power moved for Summary Judgment on Facebook's three

9  remaining claims under CAN-SPAM, the Computer Fraud and Abuse Act, and California Penal

10 Code § 502(c). *See* Dkt. No. 98. On July 6, 2011, citing the need for Power's source code in

11 order to adequately respond to that Motion, Facebook therefore moved to enlarge the time for

12 meeting all deadlines in the Case Management Order, and for responding to the motion for

13 summary judgment. *See* Dkt. No. 111. As Facebook noted, "Power's failure to provide

14 Facebook with the discovery it seeks, especially its refusal to produce Power's source code, or to

15 engage in any meaningful discussions to resolve issues, prevents Facebook from adequately

16 investigating its claims and arguments in opposition to Defendants' Motion for Summary

17 Judgment." *Id.* at 5.

18 Power opposed Facebook's request for a continuance, but in doing so did not deny that

19 Facebook needed the source code to respond to the pending motion for summary judgment. Dkt.

20 No. 114, at 4. On July 14, this Court granted Facebook's motion in its Order Granting Motion to

21 Enlarge Time (Dkt. No. 116), and found "good cause" to extend all existing discovery and pre-

22 trial deadlines. The Court specifically noted that "[i]n their Opposition, Defendants do not

23 contend that they have produced source code or other documents requested by Plaintiff." Dkt.

24 No. 116, at 2. Facebook has also learned that the production of the "PowerScript" documentation

25 to date is insufficient and that no effort has been made to search for the relevant documentation.

26 On July 20, 2011, Facebook took the deposition of Power's Chief Executive Officer, Steve

27 Vachani. Mr. Vachani performed searches for responsive documents at Power. Mr. Vachani

28 fully admitted he was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and has never written

software for Power or any other companies he has worked at.  Metanat Decl., Ex. 3 at at 12:24-13:15; 14:1-5.  Mr. Vachani admitted that while the purpose of certain commands used by Power in its PowerScript software were generally described in the instructional documents produced by Power, the mechanism by which Facebook data was actually accessed by Power, all comments made by Power's software engineers concerning such processes, and all attributes and variables related to such Facebook data stored by Power such as usage figures, actually were reflected in the code and its own non-transparent MSQL database.  *Id.* at 85:25-88:25.  Further, Mr. Vachani conceded that many command PowerScript functions particularly associated with Facebook are not simply reflected in the high-level documents that the company produced.  For instance, the manner in which the data associated with photos of Facebook users downloaded to the Power site was parsed and reformatted on www.power.com was ▓▓▓▓▓▓▓ and not reflected in any of the commands set for in the documents produced by Power.  *Id.* at 126:7-130:1.

Likewise, Mr. Vachani admitted he himself had no personal knowledge how the PowerScript software application that Power used to connect to Facebook and promote its site to Facebook users –even functioned, despite the fact this is one of the acts that is at the very heart of the remaining claims and which is the subject of Power's Motion for Summary Judgment.  He also conceded that Power had made no effort to find the software or other documents reflecting such technical details.

Mr. Vachani testified:

[redacted]

*Id.* at 267:22-268:19.  Mr. Vachani, the person charged with handling the discovery in this case,

had no idea whether anyone actually searched for this highly relevant code.  Nonetheless, Power seeks to foreclose the discovery.

### 2. Facebook's Position As To Why Source Code Production Should Be Compelled:

Power's source code, including its PowerScript and PowerBrowser applications as well as MSQL database, and how they functioned vis-à-vis Facebook, is a central issue in this case and, thus, highly relevant.  Parties may obtain discovery about any nonprivileged matter that is relevant to any party's claim or defense.  Fed. R.Civ.P. 26(b)(1). "Relevance under Rule 26(b)(1) is construed more broadly for discovery than for trial." *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211 (Fed.Cir.1987). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

Despite the code's relevancy to Facebook's claims, Power refuses to produce it.  Instead, as part of its meager production of thirteen (13) total documents, Power produced two documents (a manual and a training presentation) that pre-date the development of the software designed to access Facebook, and that give little indication as to how Power.com actually functioned.  To overcome the absence of technical details, Power offered Mr. Vachani's deposition to **orally** explain how the code works, even though Mr. Vachani is not himself a programmer and, as a co-defendant, is a highly interested and biased witness.  Facebook is entitled to the best evidence available: the source code itself.  Moreover, Mr. Vachani's deposition  only underscored that he did not know how PowerScript functions for many critical features, and highlighted why Facebook needs that code to evaluate how it was actually implemented at a functional level.  *See*, *e.g.*, Metanat Decl., Ex. 3 at 126:7-130:1; 266:22-268:21.

First, the documents Power produced, a PowerScript Developer Manual and PowerScript Training presentation, appear to instruct developers on how to use PowerScript to extract data from HTML documents.  These documents are instructional materials.  They have little to do with what Power actually did.  For example, these documents do not include all of the code, all of the relevant code, or provide any information about how Power actually used the PowerScript tool to

- 6 -

misappropriate information from the Facebook website. The two documents simply offer high level definitions of functions that the PowerScript code can perform, and what attributes and variables it may store. As such, the documents function much like how a dictionary does. Yet, merely because an author knows what words she can use to write a book does not mean she will know how to use them to write "War and Peace."

Facebook seeks all versions of the code (which are stored in Power's source control), including code designed to access and run Facebook's "Event Invite" service. The information gleaned from the source control is critical to establishing Power's exact conduct in initiating the transmission of these Invites, the process by which Power initiated the transmission of these Invites, and the relevant timeframe when Power engaged in such conduct. The code will also reveal if Power kept count of the number of Invites sent, which is important for statutory damages under the CAN-SPAM Act. All of these facts are critical to Facebook's claims under the CAN-SPAM Act, the Computer Fraud and Abuse Act, and California Penal Code Section 502. The code is a unique, verifiable source for this information.

Second, Power's offer to have defendant Steven Vachani—who admitted he is not a programmer—as a witness to answer questions about how PowerScript and PowerBrowser code works is an insufficient substitute for actual production – a fact which was borne out when he was deposed. While Facebook was able to question Mr. Vachani at his deposition about some operations of the power.com website that produced self-serving oral descriptions of functionality, Facebook also remains entitled to an expert analysis of the code and the ability to independently corroborate Mr. Vachani's testimony. Further, Facebook is entitled to independently take the Rule 30(b)(6) deposition of Power Ventures, and to identify topics specifically tailored to the operation of the code itself. As noted in the Discovery Dispute Joint Report #1, Facebook should not be required to attempt to ferret out answers from a co-defendant—who has everything to gain from being evasive and who is not a programmer himself—to determine how the power.com site operated, especially when it has not had access to the code and, therefore, no basis from which to formulate questions.

Power's source code also will be essential to oppose defendants' recently filed Motion for

Summary Judgment on these claims. In their Motion, defendants argue that:

> 1) Power did not initiate the transmission of email messages in violation of the CAN-SPAM Act.

Facebook's expert will need access to Power's source code to analyze and report on how Power, through its code, initiated the transmission of email messages in violation of the CAN-SPAM Act. Defendants also argue that:

> 2) Facebook's claims pursuant to the CFAA and California Penal Code 502 fail because Power "did not circumvent any technical barriers," in accessing or providing its users with the tools to access the Facebook website.

The source code will reveal the exact process by which Power accessed or allowed others to access the Facebook website and services (such as sending email to users)—evidence that cannot be deduced from Power's produced PowerScript documents.

      To the extent Power argues that Craig Clark's testimony supports Power's Motion for Summary Judgment, these assertions are not appropriate for consideration at this time. Instead, Power's argument will be resolved through the summary judgment. Moreover, Power fails to recognize that Mr. Clark's testimony was in his individual capacity—not a representative 30(b)(6) witness for Facebook. Notably, Mr. Clark was not a Facebook employee at the time of Power's alleged acts and his personal knowledge of the facts surrounding this litigation is limited.

### 3. **Facebook's Proposed Resolution:**

      Facebook respectfully requests an Order requiring defendants to allow Facebook access to Power's source control (which includes, but is not limited to, the repository of all copies of the code, as well as time and date stamps), or to authorize Facebook to obtain an image of the source control at Facebook's expense, not to exceed $1500. If no source control exists, Facebook requests that it be permitted to inspect all Power custodians of code to locate all versions of code.

### B. POWER'S SUMMARY OF WHY PRODUCTION OF SOURCE CODE SHOULD NOT BE COMPELLED

#### 1. Factual Background

On December 30, 2008, Facebook filed suit against Power Ventures and Steve Vachani asserting claims for: (1) Violations of the Can-Spam Act (15 U.S.C. § 7701, et seq.); (2) Violations of the Computer Fraud and Abuse Act (18 U.S.C. § 1030) (the "CFAA"); (3) Violations of California Penal Code Section 502; (4) Copyright Infringement; (5) Violation of the Digital Millennium Copyright Act; (6) Trademark Infringement; (7) Trademark Infringement under California Law; and (8) Unlawful, Unfair, and Fraudulent Competition Under California Bus. & Prof. Code § 17200).

Facebook stipulated to the dismissal of counts 4 through 8 during the February 17, 2011 deposition of Facebook's in-house counsel, Craig Clark.  During that same deposition, Mr. Clark testified that Facebook has no documents concerning (1) "any injury that Facebook suffered as a result of the events" described in the complaint; (2) "any expenditure that Facebook made as a result of the events" described in the complaint; and (3) "any complaints Facebook users made as a result of the events" described in the complaint.

> Q: So you're not aware of any documents that are responsive to any of these three categories?
>
> A: As I sit here today, I'm not aware of any specific documents.

Clark Dep. at 118:20-23.

During his deposition, Mr. Clark also confirmed that Facebook is unable to identify anyone who was misled by anything Power did:

> Q: Can you tell me the name of anyone that was misled by this message?
>
> A: I can't.

Clark Dep. at 58:5-7.

On May 9, 2011, Power moved for Summary Judgment on  Facebook's three remaining claims, citing the foregoing testimony, and Facebook's lack of any evidence that it suffered any

1   injury, made any expenditure, or that any user complained about, or was misled by, anything

2   Power did.  Dkt. No. 98.

3       On October 22, 2010, Facebook served Power with its First Set of Requests for

4   Production and Interrogatories.  Request No. 3 calls for the production of:

> A copy of ALL versions of COMPUTER CODE (including, without limitation, source code, object code, scripts OR ALL executable files) YOU used, OR use to copy, extract, download, access OR retrieve data OR information from the FACEBOOK WEBSITE.

8       Power responded to Facebook's document requests on December 15, 2010.  Rather than

9   producing the voluminous raw computer source code, Power produced its June 2007 PowerScript

10  Training document, and its PowerScript Documentation Developer Manual.   For more than six

11  months, Facebook made no effort to follow up on its request for source code.  It was not until

12  May 17, 2010, eight days after Power moved for summary judgment, that  Facebook initiated the

13  meet and confer process by sending a letter to Power's counsel, L. Timothy Fisher.  In that letter,

14  Facebook requested that Power produce its code.  Power continued to refuse on the ground that it

15  believes the source code is irrelevant to the three claims that remain at issue, and is also

16  unnecessary and duplicative of two PowerScipt documents Power produced.  Facebook

17  responded that the PowerScript documents do not indicate how the Power.com website actually

18  functioned.

19      On June 22, 2011, Facebook's lead counsel, Neel Chatterjee, met in person with

20  Mr. Fisher, to discuss the outstanding discovery disputes, as required under this Court's Standing

21  Order.  During the meeting, Mr. Chatterjee proposed for the first time that Facebook would agree

22  to enter into a stipulation in lieu of producing the source code.  Mr. Chatterjee stated that he

23  would have his associate Morvarid Metanat send a proposed stipulation later that day.  Following

24  the meeting, Ms. Metanat sent an e-mail to Mr. Fisher setting forth the following proposed

25  stipulation:

> (a)  Power developed and/or used source code to access the Facebook website through a Facebook user's account upon that user's assent;
>
> (b)   Power learned that following Facebook's cease and desist

letters to Power, Facebook implemented technical measures to block Power and its users from accessing the Facebook website;

(c) Following Facebook's implementation of technical measures blocking Power and its users from accessing Facebook's website and the receipt of the cease and desist letter, Power implemented new measures designed to circumvent Facebook's blocking technology and was successful in circumventing the blocking technology;

(d) Power used an automated tool to send Power's launch promotion invites to Facebook's users;

(e) Power's automated tool tallied the number of Power users that participated in the launch promotion and launch promotion invites that were distributed; and

(f) The number of Facebook users that were sent invitations through the launch promotion was _____

Defendants refused to agree to the stipulation as it did not accurately reflect the facts of the case.[1] *See, e.g.*, 5/9/11 Vachani Declaration, Dkt. No. 98-2, at 1-2 ("Power did not send the email messages referenced in the complaint. Facebook did. . . . All of the content in these email messages that Facebook alleges to be misleading and false was written and appended to the message by Facebook itself.") and ("At some time during December 2008, Facebook began blocking one of the IP addresses Power had used. Power did not undertake any effort to circumvent that block, and did not provide users with any tools designed to circumvent it.")

On July 1, 2011, Power proposed that instead of producing its source code, it would offer defendant Steve Vachani to testify at a deposition about how the Power.com website actually functioned and to answer questions about the source code. Facebook refused to agree to that proposal.

**2. Power's Position As to Why Source Code Production Should Not Be Compelled**

To the extent Facebook seeks source code to determine who initiated the transmission of the email messages referenced in the complaint and how many messages were sent, Facebook's own source code would provide that information. Indeed, Facebook's in-house counsel, Craig

---

[1] Contrary to Facebook's assertion, Mr. Fisher had full authority to agree to a resolution of the dispute. In the extensive meet and confer exchanges prior to the June 22 meeting, Facebook's counsel never mentioned any stipulation. In addition, Facebook did not specify the terms of the proposed stipulation until after the June 22 meeting.

1   Clark, has already testified at deposition that the email messages were "auto-generated" by
2   Facebook's system:

3       Q:    It would have been auto-generated by whom?

4       MR. CHATTERJEE:  Vague.

5       THE WITNESS:  By the system that was called to send out the invitation.

6       MR. BURSOR:  Q.  What system is that?

7       A:    That would probably be Facebook's system.

Clark Dep. at 98:18-99:25; *see also id*. at 101:7-102:20 (describing the event-creation process).

Power's source code is also irrelevant to the issue of whether Power attempted to circumvent the technical barriers implemented by Facebook.  The only technical barrier that Facebook implemented was IP blocking, which has been thoroughly described in prior submissions.  Mr. Vachani has already testified by declaration that "[a]t some time during December 2008 Facebook began blocking one of the IP addresses Power had used." 5/9/11 Vachani Decl., Dkt. 98-2, at ¶ 11.  "Power did not undertake any effort to circumvent that block, and did not provide users with any tools designed to circumvent it."  *Id*.  "Nevertheless, Facebook's IP block was ineffective because it blocked only one outdated IP address Power had used, and did not block other IPs that Power was using in the normal course of business."  *Id*.  "After the IP blocking, Power undertook efforts to implement Facebook Connect as Facebook had requested."  *Id*.  "When negotiations with Facebook over the implementation of Facebook Connect broke down, Power turned off our Facebook integration completely.  We did not circumvent any technical barriers.  And we voluntarily turned off the integration even though Facebook's IP blocking attack was partial, incomplete, and ineffective."  *Id.* at ¶ 12.

Neither the raw source code, ASP code, or PHP code has any affect on the IP address or the efficacy of Facebook's failed attempt at IP blocking.  IP blocking has no relationship to the means by which Power's source code, ASP code, or PHP code operated to display or extract content from a website.

1    The PowerScript documentation that Power produced on February 3, 2011, bearing bates
2    numbers Power 2011.02.03.000004 through 067 includes 63 pages of information explaining
3    exactly how Power.com functioned, including exactly how it extracts data from any HTML
4    document. It describes the script structure, context, attributes, rules variable utilization, and every
5    aspect of the process in detail. If the purpose of the request is to find information about how
6    "Power.com actually functioned," these documents provide that information better than raw
7    source code would. In fact, Facebook conceded during the meet and confer process that it
8    "cannot determine exactly what source-code documentation will be necessary to prove its
9    claims."

### 3.     Power's Proposed Resolution:

Power should not be ordered to produce its raw source code. Power has already produced documentation showing how the website functioned, and Power has also produced its CEO Steve Vachani to testify at a deposition where Facebook was able to ask questions regarding the way Power.com actually functioned.

Dated: July 29, 2011                ORRICK, HERRINGTON & SUTCLIFFE LLP


                                    /s/ Morvarid Metanat
                                    MORVARID METANAT
                                    Attorneys for Plaintiff
                                    FACEBOOK, INC.


Dated: July 29, 2011                BURSOR & FISHER


                                    /s/ Timothy Fisher
                                    TIMOTHY FISHER
                                    Attorneys for Defendants
                                    POWER VENTURES and STEVE VACHANI

- 13 -                                     JOINT STATEMENT
                                           5:08-CV-05780 JW (HRL)

1  **Filer's Attestation:** Pursuant to General Order No. 45, §X(B), I attest under penalty of perjury that concurrence in the filing of the document has been obtained from its signatory.

2

3  Dated: July 29, 2011                                    Respectfully submitted,

4

5                                                                    /s/ Morvarid Metanat
                                                                      MORVARID METANAT

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28