I. NEEL CHATTERJEE (STATE BAR NO. 173985)
nchatterjee@orrick.com
MONTE M.F. COOPER (STATE BAR NO. 196746)
mcooper@orrick.com
THERESA A. SUTTON (STATE BAR NO. 211857)
tsutton@orrick.com
MORVARID METANAT (STATE BAR NO. 268228)
mmetanat@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:     650-614-7400
Facsimile:     650-614-7401

Attorneys for Plaintiff
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., <br><br> Plaintiff, <br><br> v. <br><br> POWER VENTURES, INC. a Cayman Island Corporation; STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, DOES 2-25, inclusive, <br><br> Defendants. | Case No.  5:08-cv-05780 JW <br><br> **FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL POWER VENTURES, INC. TO PRODUCE DOCUMENTS** <br><br> Date:         N/.A (*See* Dkt. No. 122) <br> Time:         N/A (*See* Dkt. No. 122) <br> Judge:        Hon. James Ware <br> Courtroom: 8, 4th Floor |

REDACTED

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 2
II. FACTUAL BACKGROUND ......................................................................................... 3
    A. Procedural Background and Allegations Against Power ................................... 3
    B. Facebook's Efforts To Obtain Relevant Information From Power..................... 5
    C. Facebook's Efforts To Resolve The Dispute ...................................................... 7
    D. This Court Extends Pre-Trial Deadlines Because Power Refused To Produce Code, and Power's CEO Admitted the Code Included Information Not Available Elsewhere..................................................................................... 8
III. ANALYSIS ................................................................................................................... 10
    A. Power Should Be Ordered To Produce Documents Response To Facebook's Document Requests ........................................................................ 10
    B. Facebook Is Entitled To The Requested Discovery Under The Federal Rules.................................................................................................................. 14
IV. CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Cryptography Research, Inc. v. Visa Int'l Serv. Ass'n*,
  Case No. C 04-4143 ................................................................................................ 15

*Displaylink Corp. v. Magic Control Tech. Corp.*,
  No. C07-01998 RMW (HRL), 2008 U.S. Dist. LEXIS 111401 (N.D. Cal. July 23, 2008) ................................................................................................................. 15

*Dynamic Microprocessor Assocs. v. EKD Computer Sales*,
  919 F. Supp. 101 (E.D.N.Y 1997) ............................................................................ 15

*In re Google Litig.*,
  No. C 08-03172, 2011 U.S. Dist. LEXIS 9924 (N.D. Cal. Jan. 27, 2011) ................. 10, 14, 16

*Metavante Corp., v. Emigrant Sav. Bank*,
  No. 05-CV-1221, 2008 U.S. Dist. LEXIS 89584 (E.D. Wis., Oct. 24, 2008) ........................ 14

*Microsoft Corp. v. Multi-Tech Sys.*,
  No. 00-1412 2001 U.S. Dist. LEXIS 23155 (D. Minn., Dec. 14, 2001) .............................. 15

*Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*,
  813 F.2d 1207 (Fed. Cir. 1987) ................................................................................ 10

**STATUTES**

15 U.S.C. § 7701, *et seq.* ................................................................................................. 3

18 U.S.C. § 1030 ............................................................................................................ 3

California Bus. & Prof. Code § 17200 ........................................................................... 3

California Penal Code Section 502 ................................................................. 2, 3, 8, 10, 12, 13

CAN-SPAM Act ............................................................................................... 2, 3, 7, 8, 10, 12, 13

Computer Fraud and Abuse Act ...................................................................... 2, 3, 8, 10, 12, 13

**OTHER AUTHORITIES**

Civil L.R. 37-1 ............................................................................................................. 1, 7

Civil L.R. 37-2 ................................................................................................................ 1

Fed. R. Civ. P. 26(b)(1) ................................................................................................. 10

Fed. R. Civ. P. 26(b)(2) ................................................................................................. 14

Fed. R. Civ. P. 26(b)(2)(B) ................................................................................................ 14

Fed. R. Civ. P. 26, 34, and 37 ............................................................................................. 1

1   TO POWER VENTURES, INC. AND ITS ATTORNEYS OF RECORD:

2   Please take notice that pursuant to the Court's August 3, 2011 Order (Dkt. No. 122),
3   Facebook hereby moves to compel Defendant Power Ventures, Inc. to produce all source code
4   and associated documentation related to the website www.power.com that (1) was used to access
5   or connect with the website www.facebook.com, (2) was used to collect, obtain and/or download
6   information and/or data (including Facebook user data, Facebook images, "Friends lists," email
7   addresses, and any other information regarding Facebook users and usage) from the Facebook
8   website, (3) was used to "scrape" or "crawl" the Facebook website to locate information or data
9   to download to www.power.com;  (4) was used by Power to generate IP addresses, such as IP
10  addresses associated with proxy servers, that were used to communicate with Facebook, (5) that
11  was used to store data and content within Power's own database(s), such as Facebook user
12  information, Facebook images, etc. that had been downloaded from Facebook's website, and (6)
13  was used to parse and generate images of Facebook content on the website www.power.com.
14  The source code sought by this motion includes at least Power's PowerScript and PowerBrowser
15  applications as well as MSSQL database, Power.com website source code, website sitemap,
16  scripts, build files, readme files, tutorial examples, functional specifications and diagrams,
17  architecture specifications and diagrams, system specifications and diagrams, website
18  specifications and diagrams, server file system and database security documentation.

19  Pursuant to Local Rule 37-1, Facebook certifies that Facebook has made a reasonable
20  effort to meet and confer regarding this dispute.  Facebook was unable to resolve the deficiencies
21  with Power's discovery responses and production.   Facebook's motion is made on the grounds
22  that Power's source code is relevant to Facebook's claims in this litigation, cannot be obtained
23  from any source other than Power, and any burden or expense on Power does not outweigh the
24  likely benefit to Facebook of obtaining such discovery.  This Motion is based on Federal Rules of
25  Civil Procedure 26, 34, and 37, this Notice, the accompanying Memorandum of Points and
26  Authorities, the Declarations of Morvarid Metanat and Lawrence Melling, Facebook's Statement
27  pursuant to Civil Local Rule 37-2, the pleadings and records on file in this action, and on such
28  additional argument and evidence as may be requested by the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Facebook seeks an order compelling Power Ventures, Inc. to produce all source code and associated documentation which it used to (a) access Facebook in violation of Facebook's Terms of Service, (b) crawl the Facebook website and acquire Facebook user information and related data for commercial purposes, (c) download acquired Facebook data to Power's own website www.power.com, (d) use downloaded user data to display Facebook information on Power's website without Facebook's permission, and (e) to employ automated scripts to initiate unauthorized communications with Facebook users soliciting them to join Power.  All of this source code was used by Power to improperly connect to the Facebook website without Facebook's permission to further Power's own commercial purposes.  The source code includes at least Power's PowerScript and PowerBrowser applications as well as MSSQL database, Power.com website (*i.e.*, html) source code, website sitemap, scripts, build files, readme files, tutorial examples, functional specifications and diagrams, architecture specifications and diagrams, system specifications and diagrams, website specifications and diagrams, server file system and database security documentation.

This Court already has ruled that there is "good cause" for Power to produce the relevant source code.  *See* Dkt. No. 116.  That is because this source code underlies all of Facebook's claims against Power for violations of the CAN-SPAM Act, the Computer Fraud and Abuse Act, and California Penal Code Section 502.  The data is the best evidence of how Power initiated unauthorized access to the Facebook website, acquired, downloaded and displayed Facebook user information on Power's own website, and then "spammed" Facebook users with invitations to join Facebook.  The source code also is relevant to showing how Power circumvented Facebook's efforts to block access from Power once Facebook detected Power's unauthorized activities.  No basis whatsoever exists for Power to withhold what this Court itself implicitly has acknowledged may be the most relevant evidence in the case.  Power should be ordered to produce all its source code.

## II. FACTUAL BACKGROUND

### A. Procedural Background and Allegations Against Power

On December 30, 2008, Facebook filed suit against Power Ventures and Steve Vachani asserting claims for: (1) Violations of the CAN-SPAM Act (15 U.S.C. § 7701, *et seq.*); (2) Violations of the Computer Fraud and Abuse Act (18 U.S.C. § 1030) (the "CFAA"); (3) Violations of California Penal Code Section 502; (4) Copyright Infringement; (5) Violation of the Digital Millennium Copyright Act; (6) Trademark Infringement; (7) Trademark Infringement under California Law; and (8) Unlawful, Unfair, and Fraudulent Competition Under California Bus. & Prof. Code § 17200.  On February 17, 2011, the parties stipulated to the dismissal of counts 4 through 8.

As set forth in the First Amended Complaint (Dkt. No. 9), and in this Court's prior Orders denying Power's Motion to Dismiss and Motion for Summary Judgment (Dkt. Nos. 38, 89), Facebook's remaining claims for violations of the CAN-SPAM Act, the CFAA, and California Penal Code Section 502 stem from Power's campaign in December 2008 to use its website www.power.com and associated "PowerBrowser" and "PowerScripts" automated applications to access the Facebook website in violation of Facebook's Terms of Use in order to download user information and to send commercial messages to Facebook users soliciting them to join Power. *See generally* Dkt. No. 9 at ¶¶ 20-31, 45-86.  When Facebook tried to stop Power, Power worked around Facebook's technical barriers. *Id.* at ¶¶ 63-64.  When Facebook asked Power to confirm that it would not access the website without authorization, Power would not give assurances. *Id.* at ¶¶ 57-62.  Ultimately, each of these claims is rooted in how Power used its own software to interact with Facebook without Facebook's authorization.

An example of how Power displayed and used on its own website content that it had, without authorization, downloaded from Facebook's website can be seen from the following screenshot taken from Power's webpage in or about December 2008:



Declaration of Morvarid Metanat ("Metanat Decl.") Ex 1. As can be seen, Power displayed Facebook content (including Facebook user images) on its website using its "core" software technology that it called "PowerBrowser" and "PowerScript, as well as html coding. *See id.* Ex. 2 (Dep. of S. Vachani), at 49:15-50:14; 258:25-259:9; 264:2-265:20. Among such content, reflected by the image of the user "Carlos" under the heading "My Friends," (above) Power, without Facebook's authorization, displayed Facebook user profile images, along with the Facebook trademark, that it had lifted from the Facebook website using automated scripts, such as the one it labeled internally PowerScript. *Id.* Ex. 1. *See also* Ex. 2 at 125:22-129:4; 158:14-25; 279:16-280:19. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* Ex. 2 at 49:15-50:14; 125:22-129:4; 258:25-259:9; 264:2-265:20.

1   Likewise, as reflected by the button titled "Launch Promotion" with the tagline "First 100
2   people who Bring 100 new Friends to Power.com Earn $100," Power launched a commercial
3   solicitation marketing scheme from its website aimed at Facebook users. *Id.* Ex. 1. *See also id.*
4   Ex. 2 at 182:16-184:14. Using this promotion, Power's software ████████████████
5   ████████████████████████████████████████████████████████████████████████████████
6   ████████████ designed to solicit Facebook users via automated email notifications to join
7   Power. *Id.* Ex. 2 at 182:16-186:6; 189:10-191:8; 195:23-197:13; 203:19-206:22; 212:19-213:4;
8   254:2-15; 256:8-257:10; 257:22-267:22; 273:6-274:10. The only source of documentation for
9   this application is the software itself, including the MSSQL database. *Id.* at 186:3-6; 219:15-
10  221;13; 266:22-267:22. Moreover, the creation of Events was not the only way that Power used
11  its software to solicit Facebook users through misleading emails to join Facebook's website, as
12  Power also inserted content into Status Updates and messaging that also could produce such
13  communications. *Id.* at 207:9-209:15; *see also id.* Exs. 3, 4.

**B.   Facebook's Efforts To Obtain Relevant Information From Power**

15  In an effort to understand the functionality of Power's software and how it interacted with
16  Facebook, on October 22, 2010, Facebook served Power with its First Set of Requests for
17  Production to Power Ventures, Inc. Metanat Decl., Ex. 5. Request No. 3 therein calls for the
18  production of:

19  > A copy of ALL versions of COMPUTER CODE (including,
20  > without limitation, source code, object code, scripts OR ALL
21  > executable files) YOU used, OR use to copy, extract, download,
    > access OR retrieve data OR information from the FACEBOOK
    > WEBSITE.

22  *Id*. at 5. The relevant source code subject to this motion includes at least Power's PowerScript
23  and PowerBrowser applications as well as MSSQL database, Power.com website source code,
24  website sitemap, scripts, build files, readme files, tutorial examples, functional specifications and
25  diagrams, architecture specifications and diagrams, system specifications and diagrams, website
26  specifications and diagrams, server file system and database security documentation.
27  To date, Facebook has not received any such code or related data. Power responded to
28  Facebook's document requests on December 15, 2010. Metanat Decl., Ex. 6. Instead of

1   producing code, Power produced a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
2   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* Exs. 7 and 8.  These two documents each
3   pre-date Power's development of the applications designed to access and download content from
4   Facebook.  *Id. See also id.* Ex. 2, at 91:15-92:18; 229:13-230:13.

5   Neither of the ▇▇▇▇▇▇ documents discusses "PowerBrowser," or even references
6   Facebook. *See id.* Exs. 7, 8.  Instead, as Facebook's expert has confirmed, the two documents
7   are essentially reference manual documents ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
8   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Declaration of Larry Melling ("Melling Decl.") ¶¶ 2, 14, 17.
9   They lack any high-level architectural explanation of the PowerScript system and provide no
10  information on the implementation of the Facebook connection or any description of creating and
11  displaying power.com webpages from the information gathered by a PowerScript application. *Id.*
12  ¶¶ 17-18.  The documents also lack any information about how the system interfaces with email
13  servers, databases, and the file system other than the syntax of the connection command.  *Id.* ¶17.
14  The documents also offer no information about data or file system security for the Power.com
15  website.  *Id.*  They offer virtually no information about how such data acquisition was
16  accomplished or used by Power.  *Id.* ¶¶ 18-23.

17  These documents do little more than ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
18  ▇▇ and offer no information about how Power.com connected with Facebook, what data could
19  be transferred, what Facebook functions were supported, and how those functions were
20  implemented.  *Id.* ¶¶ 18-23.  It is impossible to determine how the Facebook interface
21  functionality that is shown in the numerous screenshots of the Power.com website was developed,
22  what information was used dynamically from Facebook, and what information was transferred to
23  Power.com from Facebook.  *Id.*¶ 19

24  Facebook and its experts thus require the website source code including any scripts, both
25  server-side (runs on Power.com server) and client side (runs on the user's computer), all
26  PowerScript application source code written or used for gathering Facebook content or executing
27  Facebook functions, the database or databases used by the website and/or by PowerScript,
28  documentation on the email service or services used by PowerScript, files written or read by the

1   PowerScript programs, the source code used to compile, interpret, and execute PowerScript
2   scripts, and the source code for the spider or spiders used by PowerScript. *Id.* ¶ 20  In addition,
3   Facebook and its experts still need all available support materials for the Facebook development,
4   Power.com website, and PowerScript system such as readme files, tutorial examples, architectural
5   diagrams and definitions, system specifications and diagrams, build files, scripts, and server file
6   system specifications, diagrams, and security documents. *Id.*  Because the functionality evolved
7   over a period of several months, all versions of the requested information should be included
8   whether in version controlled form or copies or backups on digital media, including code
9   designed to access and run Facebook's "Event Invite" service. *id.* ¶ 21.  The information gleaned
10  from the different versions is critical to establishing Power's exact conduct in initiating the
11  transmission of these Invites, the process by which Power initiated the transmission of these
12  Invites, and the relevant timeframe when Power engaged in such conduct.  *Id.*  The code will also
13  reveal if Power kept count of the number of Invites sent, which is important for statutory damages
14  under the CAN-SPAM Act. *Id.*

### C. Facebook's Efforts To Resolve The Dispute

Given the inadequacy of Power's response, Facebook as part of the meet-and-confer process required by Local Civil Rule 37-1 requested that Power produce its actual source code for PowerScript and related applications.  As Facebook noted in a June 9, 2011 letter to Power:

> Based on Power's current production of documents, Facebook cannot determine exactly what source-code documentation will be necessary to prove its claims.  However, Facebook's investigation suggests that Power.com may have been built in part using server-side scripting languages like Microsoft's Active Server Pages ("ASP") or PHP.  At a minimum, then, Power must produce, for example and without limitation any ASP or PHP code used to copy, extract, download, access, or retrieve data or information from the Facebook website.

*Id.*, Ex. 9.[1]  Power did not, in response, offer any explanations for why it believed the two  documents showed how information actually had been downloaded using

---

[1] In a Joint Statement filed with this Court on July 29, 2011, Power egregiously misquoted the first sentence of this letter to suggest Facebook has admitted it "cannot determine exactly what source-code documentation will be necessary to prove its claims." *See* Dkt. No. 119, at 13. To the contrary, as reflected in this Motion and a review of the entire passage from the June 9, 2011 letter, Facebook knows what source code it needs – Power simply refuses to produce it.

-7-   FACEBOOK INC.'S MOTION TO COMPEL DISCOVERY
5:08-CV-05780 JW

PowerScript from Facebook, what attributes and variables were used to associate downloaded Facebook information with the information Power stored about its own users, how the PowerScript software interacted with Facebook and could be used to initiate events (such as Group Events) to solicit Facebook users to join Power, what commands were used by Power to obtain information from and/or to send communications to Facebook users, what database files were used in Power's own database reflecting who were Facebook users, how Facebook user profile information was parsed and reformatted on the website www.power.com, or similar important critical technical details. Power is either withholding the code and documentation without good cause, or has engaged in spoliation to prevent its recovery.

### D. This Court Extends Pre-Trial Deadlines Because Power Refused To Produce Code, and Power's CEO Admitted the Code Included Information Not Available Elsewhere

Meanwhile, on May 9, 2011, Power moved for Summary Judgment on Facebook's three remaining claims under CAN-SPAM, the Computer Fraud and Abuse Act, and California Penal Code § 502(c). *See* Dkt. No. 98. On July 6, 2011, citing the need for Power's source code in order to adequately respond to that Motion, Facebook moved to enlarge the time for meeting all deadlines in the Case Management Order, and for responding to the motion for summary judgment. See Dkt. No. 111. As Facebook noted, "Power's failure to provide Facebook with the discovery it seeks, especially its refusal to produce Power's source code, or to engage in any meaningful discussions to resolve issues, prevents Facebook from adequately investigating its claims and arguments in opposition to Defendants' Motion for Summary Judgment." *Id*. at 5.

Power opposed Facebook's request for a continuance, but in doing so did not deny that Facebook needed the source code to respond to the pending motion for summary judgment. Dkt. No. 114, at 4. On July 14, this Court granted Facebook's motion in its Order Granting Motion to Enlarge Time (Dkt. No. 116), and found "good cause" to extend all existing discovery and pre-trial deadlines. The Court specifically noted that "[i]n their Opposition, Defendants do not contend that they have produced source code or other documents requested by Plaintiff." Dkt. No. 116, at 2.

Facebook later confirmed that the production of the "PowerScript" documentation to date

1  is insufficient to respond to the motion for summary judgment, and that no effort has been made
2  by Power to search for the relevant documentation. On July 20, 2011, Facebook took the
3  deposition of Power's Chief Executive Officer, Steve Vachani. Mr. Vachani was responsible for
4  performing searches for responsive documents at Power, including source code and associated
5  documentation.
6  During his deposition, Mr. Vachani admitted he was ███████████████
7  ████████████████████████████████████████████████████████
8  ██████████████ Metanat Decl., Ex. 2 at 12:24-13:15; 14:1-5. ████████████
9  ████████████████████████████████████████████████████████
10 ████████████████████████████████████████████████████████
11 ████████████████████████████████████████████████████████
12 ████████████████████████████████████████████████████████
13 ████████████████████████████████████████████. *Id.* at 85:25-
14 88:25. Further, Mr. Vachani conceded ████████████████████████
15 ████████████████████████████████████████████████████████
16 ██████ For instance, Mr. Vachani suggested ████████████████████
17 ████████████████████████████████████████████████████████
18 ████████████████████████████████████████████████████████
19 ████████████████ *Id.* at 126:7-130:1.
20 Likewise, Mr. Vachani admitted ████████████████████████
21 ████████████████████████████████████████████████████████
22 ████████████████████ despite the fact this is one of the acts that is at the very heart of
23 the remaining claims and which is the subject of Power's Motion for Summary Judgment. *Id.* at
24 182;16-186:6; 189:10-191:8; 195:23-197:13; 203:19-206:22; 209:11-15; 212:19-213:4; 254:2-
25 15; 256:8-257:10; 257:22-267:22; 273:6-274:10. Indeed, he even conceded ████████
26 ████████████████████████████████████████████████████ *Id.* at
27 267:22-268:19. Mr. Vachani, the person charged with handling the discovery in this case, ████
28 ████████████████████████████████████████. *Id.* at 219:15-221;19;

267:22-268:19.  Nonetheless, Power seeks to foreclose the discovery on how this software actually functioned.  Such a position is unwarranted.

## III.  ANALYSIS

### A.  Power Should Be Ordered To Produce Documents Response To Facebook's Document Requests.

Power's source code, including its PowerScript and PowerBrowser applications, MSSQL database, Power.com website source code, website sitemap, scripts, build files, readme files, tutorial examples, functional specifications and diagrams, architecture specifications and diagrams, system specifications and diagrams, website specifications and diagrams, server file system and database security documentation, and how they functioned vis-à-vis Facebook, is a central issue in this case and, thus, highly relevant.  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . [and] [f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1).  "Relevance under Rule 26(b)(1) is construed more broadly for discovery than for trial." *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed.R.Civ.P. 26(b)(1). Power's source code is relevant to its automated methods of accessing and scraping user information data from the Facebook website, and using that information to "spam" through solicitations Facebook users to join Power's own website.  Power should be required to produce its code and associated documentation, given that these activities are critical to Facebook's CAN-SPAM, CFAA, and California Penal Code § 502 claims.  *See In re Google Litig*., No. C 08-03172, 2011 U.S. Dist. LEXIS 9924, at * 20-22 (N.D. Cal. Jan. 27, 2011) (Plaintiffs' motion to compel source code granted where source code was relevant and material to plaintiff's claims and there was no evidence that production would unduly burden the defendant).

Despite the code's relevancy to Facebook's claims, and despite the fact that the Court already has suggested the code is relevant and needs to be produced (*see* Dkt. No. 116), Power still refuses to produce it.  Instead, as part of its meager production of 13 total documents, Power

1  produced two documents (███████████████████████) that pre-date the development of
2  the software designed to access Facebook, and that give little indication as to how Power.com
3  actually functioned.  To overcome the absence of technical details, Power offered Mr. Vachani's
4  deposition to orally explain how the code works, even though Mr. Vachani is not himself a
5  programmer and, as a co-defendant, is a highly interested and biased witness.  Facebook is
6  entitled to the best evidence available: the source code itself.  Moreover, Mr. Vachani's
7  deposition only underscored that he did not know how PowerScript functions for many critical
8  features, and highlighted why Facebook needs that code to evaluate how it was actually
9  implemented at a functional level.  *See, e.g.*, Metanat Decl., Ex. 2 at 126:7-130:1; 219:15-221;19;
10 267:22-268:19  266:22-268:21.

11       First, the documents Power produced, a ████████████████████████████████
12 ████████████████████████████████████████████████████████████████████████████
13 ████████████████████████████████████████████ They do not provide any
14 information on what Power actually did in the Facebook connection/interface.  Melling Decl. ¶¶
15 17-23.  For example, these documents do not include any relevant code, any relevant functional
16 specification, any relevant webpage sources, or provide any information about how Power
17 actually used the PowerScript tool to obtain information from the Facebook website.  *Id.* ¶¶ 17-
18 18.  The two documents ████████████████████████████████████████████████
19 ████████████████████████████████████ As such, the documents function
20 much like how a dictionary does.  *Id.*  Yet, merely because an author knows what words she can
21 use to write a book does not mean she will know how to use them to write "War and Peace."  It
22 also is important to note that these documents offer no information on how to use a PowerScript
23 application to generate actual web pages for display, including but not limited to documenting the
24 ██████ functionality asserted in Mr. Vachani's deposition.  *See, e.g., id*. Ex. 2, at 99:14-25;
25 100:1-2.  *See also* Melling Decl. ¶ 18.
26       Facebook seeks all versions of the code, scripts, webpages, and database (which are stored
27 in Power's source control or copies or backups on digital media), including code designed to
28 access and run Facebook's "Event Invite" service.  The information gleaned from the source

control is critical to establishing Power's exact conduct in initiating the transmission of these Invites, the process by which Power initiated the transmission of these Invites, and the relevant timeframe when Power engaged in such conduct – all of which functions are relevant to Facebook's remaining claims under the CAN-SPAM Act, the Computer Fraud and Abuse Act, and California Penal Code Section 502.  The code also will reveal if Power kept count of the number of Invites sent, which is important for statutory damages under the CAN-SPAM Act. Moreover, the code will by Power's own admission include highly relevant "comments" by the programmers concerning the software's functionality that are not available from any other source. Metanat Decl. Ex. 2, at 130:19-131:9.  The code is a unique and verifiable source for information relevant to the facts of this case.

Second, Power's offer to have defendant Steven Vachani—who admitted ▮▮▮▮▮ ▮▮▮▮▮▮▮—as a witness to answer questions about how PowerScript and PowerBrowser code works is an insufficient substitute for actual source code production – a fact which was borne out when he was deposed.  While Facebook was able to question Mr. Vachani at his deposition about some operations of the power.com website that produced self-serving oral descriptions of functionality, Facebook also remains entitled to an expert analysis of the code and the ability to independently corroborate or debunk Mr. Vachani's testimony.  Further, Facebook is entitled to independently take the Rule 30(b)(6) deposition of Power Ventures, and to identify topics specifically tailored to the operation of the code itself.  Facebook should not be required to attempt to ferret out answers from a defendant—who has everything to gain from being evasive and who is not a programmer himself—to determine how the power.com site operated, especially when it has not had access to the code and, therefore, no basis from which to formulate questions.

Third, as intimated by the Court's July 14, 2011 Order granting for "good cause" Facebook's motion to continue the then-pending scheduling deadlines (Dkt. No. 116) based on the fact Facebook had shown a need for the source code and related documentation, Power's source code also will be essential to oppose defendants' Motion for Summary Judgment.  In their Motion, defendants argue that:

> 1) Power did not initiate the transmission of email messages in

1            violation of the CAN-SPAM Act.

Facebook's expert will need access to Power's source code to analyze and report on how Power, through its code, initiated the transmission of email messages in violation of the CAN-SPAM Act. *See* Melling Decl. ¶¶ 20-23. Indeed, the information about the source code ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* Ex. 2 at 182;16-186:6; 189:10-191:8; 195:23-197:13; 203:19-206:22; 212:19-213:4; 254:2-15; 256:8-257:10; 257:22-267:22; 273:6-274:10. *See also* Melling Decl. ¶¶ 17-23. The only source of documentation for this application is the software itself, including the MSSQL database and the comments associated with the source code. Metanat Decl. Ex. 2, at 130:15-131:9; 186:3-6; 195:23-196:9; 266:22-267:22.

       In their Summary Judgment Motion Defendants also argue that:

> 2) Facebook's claims pursuant to the CFAA and California Penal Code 502 fail because Power "did not circumvent any technical barriers," in accessing or providing its users with the tools to access the Facebook website.

However, the source code may reveal the exact process by which Power through identifiable servers (or proxy servers) accessed or allowed others to access the Facebook website and services even when blocked—evidence that cannot be deduced from Power's produced PowerScript documents. Melling Decl. ¶¶ 17-23. Again, there is no denying the code's relevance.

       Facebook anticipates that Power will argue that deposition testimony from Facebook IP attorney Craig Clark relating to how Facebook notifications were emailed when Group Events were created, which it also claims supports Power's Motion for Summary Judgment, renders the Power software irrelevant to this litigation. This position is utterly baseless, is self-serving, and is contradicted by the evidence proving that Power's software ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ *Id.* Ex. 2 at 182;16-186:6; 189:10-191:8; 254:2-15; 256:8-257:10; 209:11-15. 257:22-267:22; 273:6-274:10. More to the point, though, Power's self-serving characterization of the facts surrounding how it communicated with Facebook does not preclude an investigation by

-13-   FACEBOOK INC.'S MOTION TO COMPEL DISCOVERY
5:08-CV-05780 JW

1  Facebook into the functionality of the software itself to ascertain whether such characterization is
2  accurate.  Instead, Power's argument will be resolved through its Motion for Summary Judgment
3  after the relevant discovery it is withholding is reviewed.  In fact, Mr. Clark's testimony was in
4  his individual capacity—not a representative 30(b)(6) witness for Facebook.  Mr. Clark was not
5  even a Facebook employee at the time of Power's alleged acts and his personal knowledge of the
6  facts surrounding this litigation is limited.  The Power source code, by contrast, is highly relevant.

### B. Facebook Is Entitled To The Requested Discovery Under The Federal Rules.

8  To prevail on a motion to compel, Facebook must "show how the proportionality and
9  other requirements of FRCivP 26(b)(2) are satisfied."  Civil L.R. 37-2.  Federal Rule of Civil
10 Procedure 26(b)(2) authorizes the Court to limit the "frequency or extent of discovery otherwise
11 allowed by these rules or by local rules if it determines that: (i) the discovery sought is
12 unreasonably cumulative or duplicative, or can be obtained from some other source that is more
13 convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample
14 opportunity to obtain the information by discovery in the action; and (iii) the burden or expense
15 of the proposed discovery outweighs its likely benefit, considering the needs of the case, the
16 amount in controversy, the parties' resources, the importance of the issues at stake in the action,
17 and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(B).
18 Power's production should not be limited under this "proportionality" test, as the balance weighs
19 in Facebook's favor.

20 First, the discovery is not unreasonably cumulative or duplicative, nor can it be obtained
21 from another source.  *See In re Google Litig.*, 2011 U.S. Dist. LEXIS 9924, at *20-22.  As
22 Facebook's expert notes, Power's source code cannot be obtained from other sources and thus is
23 not duplicative of any discovery taken in this case.  Melling Decl. ¶¶ 17-23.  Moreover, the
24 source code is uniquely within Power's possession, custody and control.  If Facebook were
25 prevented from obtaining Power's source code, it would be unable to adequately prepare its case.
26 The source is relevant to Facebook's claims and, thus, discovery is appropriate.  *Cf. Metavante*
27 *Corp., v. Emigrant Sav. Bank*, No. 05-CV-1221, 2008 U.S. Dist. LEXIS 89584, *6-*7 (E.D. Wis.,
28 Oct. 24, 2008) (motion to compel source code granted where court found code was relevant, or

1 may lead to admissible evidence and protective order addresses any confidentiality concern);
2 *Dynamic Microprocessor Assocs. v. EKD Computer Sales*, 919 F. Supp. 101 (E.D.N.Y 1997)
3 (motion to compel production of computer source codes granted pursuant to a protective order
4 where code was relevant, necessary, and non-privileged.); *Microsoft Corp. v. Multi-Tech Sys.*,
5 No. 00-1412 (ADM/RLE) 2001 U.S. Dist. LEXIS 23155, *25-26 (D. Minn., Dec. 14, 2001)
6 (motion to compel source code granted where the code was "the 'best , objective indication[] of
7 how the . . . products actually operate,'" and the "code is a 'critical piece of information to
8 [moving parties'] experts").

9 Second, Facebook has not had a sufficient opportunity to obtain the source code by
10 discovery. Power has unilaterally and improperly limited the scope of its production in response
11 to Facebook's first set of requests. *See Cryptography Research, Inc. v. Visa Int'l Serv. Ass'n*,
12 Case No. C 04-4143 JW(HRL), 2005 U.S. Dist. LEXIS 37013, at *2 (N.D. Cal. Jul. 27 2005)
13 (ordering production of "enough documentation to sufficiently show the operation or elements"
14 of accused software). Indeed, source code is not the type to be gleaned from other sources, such
15 as depositions or interrogatories. *See* Melling Decl. ¶¶ 20-23. Consequently, Facebook's ability
16 to prepare for trial will be handicapped absent production of Power's source code.

17 Third, in contrast to the prejudice Facebook will suffer in the absence of a production,
18 Power will suffer no burden or expense in producing its source code. Power asserted numerous,
19 boilerplate objections, contending that the code is irrelevant and highly confidential. Power's
20 code, which establishes how Power accessed and scraped Facebook's website, is highly relevant.
21 *Displaylink Corp. v. Magic Control Tech. Corp.*, No. C07-01998 RMW (HRL), 2008 U.S. Dist.
22 LEXIS 111401, at *4-5 (N.D. Cal. July 23, 2008) (ordering production of source code where "this
23 court finds the requested source code is relevant or reasonably calculated to lead to the discovery
24 of admissible evidence"). Moreover, Power's concern regarding confidentiality is moot: the
25 Court entered a Stipulated Protective Order on February 4, 2011, which governs the use and
26 disclosure of Power's code and sufficiently protects it. Power bears the burden to substantiate
27 any alleged undue or unreasonable burden. *Id.* at *5. So far, it has not done so.

28

Finally, the likely benefit of the discovery substantially outweighs the burden or expense. Power cannot establish that the production of source code will cause it undue burden or expense. *In re Google Litig.*, 2011 U.S. Dist. LEXIS 9924, at * 20-22. For these reasons, there is good cause to order the production of Power's source code in response to Facebook's first set of document requests.

## IV.   CONCLUSION

For the foregoing reasons, Facebook requests that the Court grant its Motion to Compel and order Power to produce documents in response to Requests for Production No. 3.

Dated: August 10, 2011                              ORRICK, HERRINGTON & SUTCLIFFE LLP


                                                    */s/ Monte M. F. Cooper /s/*
                                                    MONTE M.F. COOPER
                                                    Attorneys for Plaintiff
                                                    FACEBOOK, INC.