1  I. NEEL CHATTERJEE (STATE BAR NO. 173985)
   nchatterjee@orrick.com
2  MONTE M.F. COOPER (STATE BAR NO. 196746)
   mcooper@orrick.com
3  THERESA A. SUTTON (STATE BAR NO. 211857)
   tsutton@orrick.com
4  MORVARID METANAT (STATE BAR NO. 268228)
   mmetanat@orrick.com
5  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
6  Menlo Park, CA  94025
   Telephone:      650-614-7400
7  Facsimile:       650-614-7401

8  Attorneys for Plaintiff
   FACEBOOK, INC.

9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                     SAN FRANCISCO DIVISION
12

13
   FACEBOOK, INC.,                         Case No.  5:08-cv-05780 JW
14
                    Plaintiff,             **FACEBOOK, INC.'S NOTICE OF**
15                                         **MOTION AND MOTION TO**
           v.                              **COMPEL DEFENDANTS TO**
16                                         **PERFORM THOROUGH SEARCH**
   POWER VENTURES, INC. a Cayman Island    **FOR RESPONSIVE DOCUMENTS**
17 Corporation; STEVE VACHANI, an          **AND FOR PRODUCTION THEREOF**
   individual; DOE 1, d/b/a POWER.COM,
18 DOES 2-25, inclusive,                   Date:         October 24, 2011
                                           Time:         9:00 A.M.
19                 Defendants.             Judge:        Hon. James Ware
                                           Courtroom:  15, 18th Floor
20
                              REDACTED
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 3

II.     BACKGROUND .................................................................................................. 4

    A.     Facts Surrounding Power Ventures' Corporate Structure and Regular Use of Emails ..................................................................................................... 4

    B.     Facebook Propounds Requests for Production of Documents and Things ............ 7

    C.     Power Failed to Perform An Adequate Search for Responsive Documents .......... 9

III.    ARGUMENT ..................................................................................................... 12

    A.     Power Should Be Compelled To Produce All Responsive Documents and Things After Performing A Thorough Search ..................................................... 13

    B.     If Power Persists In Arguing It Performed A Thorough Search For Responsive Documents, It Should Be Compelled To Identify Its Sources And Methodology ............................................................................................. 16

IV.     CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*,
   244 F.R.D. 614 (D. Colo. 2007)............................................................................. 13, 15

*Cambridge Elec. Corp. v. MGA Elec., Inc.*,
   227 F.R.D. 313 (C.D. Cal. 2004) ................................................................................. 12

*Facebook, Inc. v. ConnectU LLC.*,
   No. C 07-01389 RS (N.D. Cal. Dec. 12, 2007) ........................................................... 17

*Genentech, Inc. v. The Trustees of the Univ. of Penn.*,
   Case No. C-10-02037 LHK (PSG), 2011 WL 2443669 (N.D. Cal. Jun. 16, 2011)............... 13

*Jacobson v. Starbucks Coffee Co.*,
   Case No. 05-1338-JTM, 2006 WL 3146349 (D. Kan. Oct. 31, 2006)................................... 13

*Mikron Indust. v. Hurd Windows & Doors, Inc.*,
   No. C07-532RSL, 2008 WL 1805727 (W.D. Wash. Apr. 21, 2008)..................................... 16

*Mullins v. Prudential Ins. Co. of Am.*,
   267 F.R.D. 504 (W.D. Ky. 2010)................................................................................. 12

*National Ass'n of Radiation Survivors v. Turnage*,
   115 F.R.D. 543 (N.D. Cal. 1987)................................................................................. 12

*Qualcomm, Inc. v. Broadcom Corp.*,
   2008 WL 66932 (S.D. Cal. Jan. 7, 2008)..................................................................... 14

*Rainbow Pioneer No. 44-18-04-A v. Hawaii-Nevada Investment Corp.*,
   711 F.2d 902 (9th Cir. 1983)....................................................................................... 12

*Sofaer Global Hedge Fund v. Brightpoint, Inc.*,
   Case No. 1:09-CV-01191-TWP-DML, 2010 WL 4701419 (S.D. Ind. Nov. 12, 2010) ... 13, 14

*State Farm Mutual Auto. Ins. Co. v. New Horizon, Inc.*,
   250 F.R.D. 203 (E.D. Pa. 2008)................................................................................... 15

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
   250 F.R.D. 251 (D.Md. May 29, 2008) ................................................................... 16, 17

*Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*,
   No. 05-1516-RSWL, 2007 U.S. Dist. LEXIS 72953 (C.D. Cal. Sep. 18, 2007) ................... 16

*Wollam v. Wright Medical Group, Inc.*,
   No. 10-cv-03104-DME-BNB, 2011 U.S. Dist. LEXIS 56649 (D. Colo., May 18, 2011)...... 12

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

STATUTES

4

18 U.S.C. § 1030 ..................................................................................................................... 4

5

California Penal Code Section 502 ......................................................................................... 4

6

California Penal Code § 502(c) ............................................................................................... 3

7

CAN-SPAM Act, the Computer Fraud and Abuse Act ........................................................ 3

8

CAN-SPAM Act (15 U.S.C. § 7701, *et seq.*).......................................................................... 4

9

OTHER AUTHORITIES

10

Civil L.R. 37 ............................................................................................................................ 1

11

Civil L.R. 37-1 ........................................................................................................................ 1

12

Civil L.R. 37-1(a) ................................................................................................................... 2

13

Civil L.R. 37-2 ..................................................................................................................... 1, 7

14

Fed. R. Civ. P. 26 ......................................................................................................... 1, 4, 12, 13

15

Fed. R. Civ. P. 26(b)(5) ......................................................................................................... 16

16

Fed. R. Civ. P. 33 .................................................................................................................... 1

17

Fed. R. Civ. P. 33(d) .................................................................................................... 8, 12, 16

18

Fed. R. Civ. P. 34 ........................................................................................................ 1, 4, 12, 13

19

Fed. R. Civ. P. 37(a)(1) ........................................................................................................... 2

20

21

22

23

24

25

26

27

28

1    TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on October 17, 2011, at 9:00 A.M., or as soon thereafter as

3    the matter may be heard in the above entitled Court located at 450 Golden Gate Avenue,

4    San Francisco, California 94102, Plaintiff Facebook, Inc., will and hereby does move this Court

5    for an order compelling Defendants Power Ventures, Inc. and Steve Vachani to perform a

6    thorough search of documents and things responsive to Facebook's First and Second Sets of

7    Requests for Production on Power, and its First Set of Requests for Production served on

8    Vachani, and order defendants to produce them immediately.  Plaintiff further requests that Power

9    Ventures, Inc. supplement its Interrogatory responses accordingly.

10    Pursuant to Local Rule 37-1, Facebook hereby certifies that the parties have made a

11    reasonable effort to meet and confer regarding these discovery disputes.  Despite the parties' good

12    faith efforts, they were unable to resolve their differences.

13    Facebook's motion is made on the grounds that Power and Vachani failed to perform a

14    reasonable and diligent search for documents and things responsive to Facebook's document

15    requests and interrogatories.  At his deposition, Vachani admitted that his search and collection of

16    responsive materials fell far short of fulfilling his and Power's obligations under Rules 33 and 34.

17    This Motion is based on Federal Rules of Civil Procedure 26, 33, 34, and 37, this Notice, the

18    accompanying Memorandum of Points and Authorities, the Declaration of Theresa A. Sutton,

19    Facebook's Statement pursuant to Civil Local Rule 37-2, the pleadings and records on file in this

20    action, and on such additional argument and evidence as may be presented at the hearing on this

21    Motion.

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATION PURSUANT TO</u>**

**<u>FED. R. CIV.P. 37(a)(1) & N.D. CAL. CIV. L.R. 37-1(a)</u>**

      Counsel for Facebook hereby certifies pursuant to Fed. R. Civ. P. 37(a)(1) and Civ. L.R. 37-1(a) that it has satisfied its meet and confer obligations with counsel for defendants concerning their inadequate search, collection and production of documents responsive to Facebook's First and Second Sets of Requests for Production.  Despite Facebook's efforts to resolve defendants' deficiencies, however, defendants persist in refusing to perform a thorough search and produce all responsive documents and things.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.     INTRODUCTION

3      Facebook seeks an order compelling defendants Power Ventures, Inc. and Steve Vachani

4   to:  (i) perform a thorough search of all repositories for information using a proper search and

5   collection protocol; (ii) produce all materials relevant to Facebook's discovery requests;

6   (iii) supplement all discovery responses accordingly; and (iv) provide a declaration stating how

7   defendants performed the requisite search, including identifying the sources searched, who

8   conducted the search, and specifying what was the search methodology.  To date, in response to

9   numerous discovery requests in this case involving claims for violation of the CAN-SPAM Act,

10   the Computer Fraud and Abuse Act, and violations of California Penal Code § 502(c), defendants

11   have not produced a single email from any time prior to ████████████  despite the fact all

12   development of software used to unlawfully connect the website www.power.com with

13   Facebook, all evaluations of the value and feasibility of Power's connecting its website to

14   Facebook, and all evaluations of Facebook's Terms of Use, occurred prior to that date.  In fact,

15   Power has produced only 13 documents total, ██████████████████████████

16   ████████████████████████████████████████████████████

17   ██████████████████████████. This meager production comes from a

18   ████████████████████████████████████████████

19   ████████████████████████████████████

20   ████████████

21      Power's CEO Steve Vachani, a named defendant and interested party, fully admits that he

22   alone was responsible for the unsupervised search for responsive documents, and that he only

23   took a few hours to search his own emails while asking some former employees to send him

24   anything else they thought might be responsive.  Given the complexity of the software technology

25   involved, Power's size, the importance to the company of the integration of its website with

26   Facebook, and the realities of modern commercial practice, it simply defies credibility that there

27   are only 13 responsive and relevant documents associated with the underlying events, and only 10

28

1   emails.  Vachani's efforts to search for documents clearly fell below what is required by Rules

2   26, 33 and 34, and were neither reasonable nor diligent.

3        Given the deficiencies in defendants' production, the Court should grant Facebook's

4   Motion to Compel.

5   **II.    BACKGROUND**

6        In this action, Facebook asserts claims against defendants Power Ventures, Inc. and

7   Steve Vachani for: (1) Violations of the CAN-SPAM Act (15 U.S.C. § 7701, *et seq.*); (2)

8   Violations of the Computer Fraud and Abuse Act (18 U.S.C. § 1030); and (3) Violations of

9   California Penal Code Section 502.  As set forth in the First Amended Complaint (Dkt. No. 9),

10  and in this Court's prior Orders denying Power's Motion to Dismiss and Motion for Summary

11  Judgment (Dkt. Nos. 38, 89), Facebook's claims stem from Power's campaign in December 2008

12  to use its competitive social network website www.power.com and associated automated scripts

13  and applications to access the Facebook website in violation of Facebook's Terms of Use.  Power

14  used its software to download Facebook user information for use on the Power website, and to

15  send commercial messages to Facebook users soliciting them to join Power.  *See generally* Dkt.

16  No. 9 at ¶¶ 20-31, 45-86.  When Facebook tried to stop Power, Power worked around Facebook's

17  technical barriers.  *Id.* at ¶¶ 63-64.  Subsequently, Facebook and Power exchanged numerous

18  emails regarding Power's conduct.  *See* Declaration of Theresa A. Sutton in Support of Motion to

19  Compel ("Sutton Decl."), Exs. A-D.  When Facebook asked Power to confirm that it would not

20  access the website without authorization, Power would not give assurances.  *Id.* at ¶¶ 57-62.

21        As this Court has noted in its Orders, many of the facts surrounding Power's improper

22  activities vis-à-vis Facebook are admitted, including the fact that it is "undisputed" that

23  "Facebook suffered some damage or loss as a result of Power's actions."  *See* Dkt. no. 89, at 6-7.

24  Those same undisputed facts reflect that Power has failed to produce thousands of relevant

25  documents, particularly emails.

26        **A.    Facts Surrounding Power Ventures' Corporate Structure and Regular Use of**

27               **Emails**

28  ███████████████████████████████████████████████████

Sutton Decl. Ex. E (Vachani Tr.), at 50:4-14; 53:17-55:19.[1]

*Id.* at 21:5-22:12.  The company received at least $6,000,000 in investments from sources like the venture capital fund Draper Fisher Jurvetson.  *See* Sutton Decl. Ex. F (December 1, 2008 NY Times article).

Sutton Decl. Ex. E, at 22:13-24; 134:22-135:10.

*Id.* at 22:15-19; 232:15-25;  298:25-299:8.

*Id.* at 25:17-18; 300:1-15.

*Id.* at 25:19-25.

*Id.* at 270:14-17.

*Id* at 48:12-25; 245:6-246:12.

*Id.* at 36:16-19.

*Id.* at 229:13-230:13.

*Id.* at 91:7-92:18; 171:19-172:5.  Power launched its connection

---

[1] Facebook deposed defendant and Power CEO Steve Vachani on July 20, 2011, in his individual capacity.  References to "Sutton Decl. Ex. E" are to that deposition.

1   to Facebook on or about December 1, 2008.  *See* Dkt. 41 ¶49 (Power's Answer to the FAC).

2   ██████████████████████████████████████████████████████████████████████

3   ███████████████████ *Id.* at 37:5-38:4; 39:19-40:17. ██████████████████

4   ████████████████████████████ *Id.* at 38:5-39:4. ████████████████████

5   ████████████████████████████████████████████████████████████████

6   ██████████████████████████████████████████████████████████████████

7   ██████████████████████████████████████████████████████████████████

8   ██████████████████████████████████████████████████████████████████████

9   *Id.* at 155:9-21; 290:15-291:20; 300:16-301:16. ████████████████████ *Id.* at

10  293:25-294:6.[2]

11  ████████████████████████████████████████████████████████████

12  ██████████████████████████████████████████████████████████████████████

13  ██████████████████████████████ *Id.* at 182:16-183: 24. █████████████

14  ██████████████████████████████████████████████████████████

15  ██████████████████████████████████████████████████████████████

16  ██████████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████

18  ███████ *Id.* at 205:12-206:10; 256:8-257:10; 257:22-258:11; 258:25-259:19. ███████

19  ██████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████

21  ██████████████████████████████████████ *Id.* at 57:7-58:25. ███████

22  ██████████████████████████████████████████████████████████████

23  █████████████████ *Id.* at 59:1-60:8.

24  ██████████████████████████████████████████████████ *Id.* at 298:1-2.

25  ████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████ *Id.* at 136:3-

27  [2] ████████████████████████

28  ███████████████████████████████████████████ *Id.* at 284:15-285:6.

1    11; 335:11-337:21. █████████████████████████████████████████

2    ████████████████████████ *Id.* at 141:13-142:10. █████████████

3    ████████████████████████ *Id.* at 62:6-12. ██████████████████████

4    ████████████████████████ *Id.* at 297:8-13.

5    █████████████████████████████████████████ *Id.* at

6    142:11-143:10. █████████████████████████████████████ *Id.*

7    at 61:18-62:5. ██████████████████████████████████████████████

8    *Id.* 298:17-24.[3] ████████████████████████████████████████

9    ████████████████████████████████████████████████████

10   ████████████████████████ *Id.* at 271:9-15.

11        **B.      Facebook Propounds Requests for Production of Documents and Things.**

12        On October 22, 2010, Facebook served Power with its First Set of Requests for

13   Production, and Facebook's First Set of Interrogatories.  *See* Sutton Decl. Exs. G & I.[4]  The

14   requests for production were designed to elicit information about a host of issues relevant to this

15   lawsuit, such as:  Power's "Launch Promotion," (Ex. G at Nos. 12, 29, 30, 31), communications

16   to users encouraging them to participate in the Launch Promotion (*id.* at Nos. 13, 14, 15, 16, 17,

17   30, 31); the Power registration process (*id.* at Nos. 33); Power's use of servers and IP addresses to

18   access the Facebook website (*id.* at Nos. 8, 28); Power's access to and extraction and/or storage

19   of Facebook user information (*id.* Nos. 2-9, 43, 44, 45); and Power's communications with

20   Facebook and its users *Id.* at Nos. 1, 13-20, 42.

21        Facebook's Interrogatories mirrored the requests for production, and requested

22   information about the process by which Power and its users accessed the Facebook website (*id.*

23   Ex. I at Nos. 1, 2, 3, 18); Power's integration with Facebook (*id.* at Nos. 13, 15); statements made

---

[3] Facebook anticipates that the failure by Power to instruct its employees not to destroy documentation may become the subject of a spoliation motion.
[4] The present motion is directed to the question whether defendants conducted a reasonable search for responsive and relevant documents, particularly emails, which they already have agreed to produce, rather than whether defendants should be compelled to produce documents they object to producing.  Accordingly, in order to simplify this brief, Facebook requests that the Court waive the literal requirements of Local Civil Rule 37-2, and permit it to quote exemplary document requests and responses, rather than all of them.  All requests and responses are set forth as Exhibits H & J to the Sutton Declaration.

1   in documents Power emails (*id.* at No. 14); and Power's registration process (*id.* No. 17).

2        On June 3, 2011, Facebook served Power with an additional 39 document requests, each

3   of which likewise sought production of documents and communications.  *Id.*, Ex. K.  This Second

4   Set sought production of communications regarding Power's unlawful access to Facebook (*id.* at

5   Nos. 68-73); documents related to the founding, operation and funding of Power Ventures (*id.* at

6   Nos. 57, 58, 61, 67, 86, 87); documents related to Power's interaction with Facebook (*id.* at Nos.

7   74-85); advertising and marketing materials (*id.* at Nos. 55, 56); Power's document retention and

8   collection policies and methodologies (*id.* at No. 51-54); and documents that summarize, describe

9   or relate to documents Power produced in February 2011.  *Id.* at Nos. 62-66, 88, 89.

10        Also on June 2, 2011, Facebook served Vachani with a First Set of Requests for

11   Production.  Sutton Decl., Ex. M.  These requests sought production of documents related to

12   Power's earlier production (*id.* at Nos. 2-5, 15-18, 24), Power's Launch Promotion (*id.* at Nos. 1,

13   21, 23), Power's PowerScript software (*id.* at Nos. 2-4), Power's data extraction from Facebook

14   (*id.* at Nos. 24), communications between Vachani and others regarding Facebook (*id.* at Nos. 6-

15   10, 12), Power's integration with and access to Facebook (*id.* at Nos. 13, 14, 19, 20), Power's

16   servers (*id.* at Nos. 19), and Vachani's knowledge of Facebook's efforts to block power.com's

17   unlawful access to Facebook.  *Id.* at Nos. 22.

18        In response to virtually all of Facebook's Requests for Production, Power and Vachani

19   promised to "conduct a reasonable search for documents responsive to this request."  Sutton

20   Decl., Exs. H, L & N.  Each set of Responses was signed and certified by Power's counsel,

21   L. Timothy Fisher.  *Id*.  Likewise, Power responded to many of Facebook's Interrogatories by

22   citation to Fed. R. Civ. P. 33(d), and incorporated its production of "business records."  *See*

23   Sutton Decl. Ex. J (Power's Responses to Interrogatories Nos. 1-4, 13-15 & 17-18).  Vachani

24   verified these Interrogatories.  *Id.*

25        On February 3, 2011, Power produced a total of **13** documents in response to Facebook's

26   First Set of Requests for Production and First Set of Interrogatories.  Power has not produced a

27   single document in response to Facebook's Second Set of Requests for Production.  Nor has

28

1    Vachani produced anything in response to Facebook's document requests.[5]

2         Notably, three of the 13 documents produced are duplicative of others in Power's

3    production, and one was a copy of Facebook's own original cease and desist letter.  Power,

4    therefore, produced a total of 9 unique and internally generated documents.  All of the emails

5    produced are dated December 1, 2008 or later, and none reflects development of the code used to

6    unlawfully integrate Power with Facebook.

7         When Facebook sought to resolve the apparent deficiencies in Power's document

8    production, Mr. Fisher wrote that Power "identified and produced all responsive documents that

9    were located after a diligent search, with the exception of raw computer source code [and that]

10   [n]o documents other than raw source code were withheld."  Sutton Decl. Ex. O.

11        **C.    Power Failed to Perform An Adequate Search for Responsive Documents**

12        The paltry size of Power's production, itself, suggests that defendants did not comply with

13   their discovery obligations.  This fact is borne out by Vachani's admissions as to how his search

14   for documents actually was conducted in response to Facebook's requests.

15        In that regard, ████████████████████████████████████████████

16   ████████████████████████████████████████████████████████  Sutton Decl.

17   Ex. E, at 132:17-133:2;  136:12-137:24. ███████████████████████

18   ████████████████████████████████████████████████  *Id.* at

19   143:25-144:8. ████████████████████████████████████████

20   ████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████  *Id.* at

23   136:12-137:8; 137:20-24;  139:16-142:10.  Vachani's and Power's methodology for responding

24   to document requests fell well below what is required by the Federal Rules.

25        For instance, █████████████████████████████████████████

26   ████████████████████████████████████████████████  *Id.* at 137:25-

27   138:12; 140:5-24; 333:7-12. ██████████████████████████████

28   ─────────────────────
     [5] Facebook deposed Vachani on his efforts to search for and collect responsive documents.

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ██████████ *Id.* at 144:12-23; 143:11-24; 136:12-18; 296:2-8.  Moreover, ██████████

4 ████████████████████████████████████████████████████████

5 ███████████████████████████████████████████████ *Id.* at

6 61:18-62:5; 297:8-13.  Instead, ████████████████████████████

7 ██████████████████████████████████████████

8 ████████████████████████████████████████████████████

9 ████████████████████████ *Id.* 297:16-19.  ██████████████████

10 ████████████████████████████████████████████████████

11 ████████████████████████████████████████████████ *Id.* at

12 293:5-295:22.  ███████████████████████████████████████████

13 ███████████████████████████████████████████ *id.* at 298:3-12.

14     Yet, Vachani's ████████████████████████████ is belied by the fact that

15 virtually all of the emails Power actually produced ████████████████████████

16 ████████████████████████████████████████████████████████

17 ██████████████████████████ Moreover, Facebook has identified numerous emails

18 exchanged between Power and Facebook, prior to the initiation of this lawsuit that Power did not

19 produce (but should have had its search and collection been complete and thorough).  These

20 emails include, among other things, discussions regarding Power's unauthorized access to the

21 Facebook website and services and Power's promises to integrate power.com through authorized

22 means using Facebook Connect.  Sutton Decl. Exs. A-D. Power has failed to produce most of

23 these emails, despite the fact that Facebook's document requests sought such information, and

24 notwithstanding the fact that, if Vachani is to be believed, they should have been located using his

25 own alleged search methodology.  Vachani's claim that he performed a diligent search simply is

26 not credible.

27     ████████████████████████████████████████████████

28 ████████████████████████████████████████████████████████



1

2

3

4   *Id.* at 333:2-334:3; 336:8-15; 337:1-21; 141:13-25; 341:7-342:3; 343:19-344:10; 141:5-9.

5

6

7   *Id.* at 337:1-16; 338:25-339:2.

8

9   *Id.* at 139:16-140:4.  Instead, Vachani

10  admitted that he                                                    . *Id.*

11  at 142:1-10.  Indeed, as for the other former employees,

12

13  *Id.* at 141:13-25; 341:20-342:3;

14  343:19-344:10.

15

16  *Id.* at 270:3-24; 268:1-3;

17  141:15-25.

18

19

20

21  *Id.* at 268:16-19.  Later he

22  testified,

23

24       at 268:20-269:7.

25  *Id.* at 269:8-24.

26                           [6] *Id.* at 266:22-267:6.

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [6] On August 18, 2011, the Court granted Facebook's Motion to Compel Power to "produce all
28  source code and associated documentation related to the website www.power.com."  Dkt. No.
    127.

1    **III.    ARGUMENT**

2            Defendants' methodology for searching for documents responsive to Facbeook's

3    discovery requests falls well short of what is required by the Federal Rules, and must be rectified.

4    "Rules 26 and 34, Fed. R. Civ. P., require [ ] defendants and their counsel to conduct ***a thorough***

5    ***search*** of the [ ] defendants' records; to locate all responsive documents in their possession,

6    custody, and control, and to either produce those documents or identify them on an appropriate

7    privilege log." *Wollam v. Wright Medical Group, Inc*., No. 10-cv-03104-DME-BNB, 2011 U.S.

8    Dist. LEXIS 56649, *13-*15 (D. Colo., May 18, 2011) (emphasis added).  Such a thorough

9    search requires, "at a minimum, a reasonable procedure to distribute discovery requests to all

10   employees and agents of the defendant potentially possessing responsive information, and to

11   account for the collection and subsequent production of the information to plaintiffs." *National*

12   *Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556 (N.D. Cal. 1987).  Defendants

13   failed to conduct a thorough search or to attempt to distribute Facebook's discovery requests to

14   current and former employees or agents of Power.

15           To the extent Power is relying on Fed. R. Civ. P. 33(d) to respond to interrogatories, it

16   also must: (1) specify the records that must be reviewed, in sufficient detail to enable Facebook to

17   locate and identify them as readily as Power could; and (2) give Facebook a reasonable

18   opportunity to examine and audit the records and to make copies, compilations, abstracts, or

19   summaries.  Fed. R. Civ. P. 33(d); *Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504 (W.D.

20   Ky. 2010) citing *Cambridge Elec. Corp. v. MGA Elec., Inc*., 227 F.R.D. 313, 322-23 (C.D. Cal.

21   2004) ("A party who seeks to rely upon the Rule must not only certify that the answer may be

22   found in the records referenced by it, but also 'must specify where in the records the answers

23   [can] be found'");  citing *Rainbow Pioneer No. 44-18-04-A v. Hawaii-Nevada Investment Corp*.,

24   711 F.2d 902, 906 (9th Cir. 1983)).  Again, Power's responses fall far short of this standard.

25   Inasmuch as defendants failed to conduct a proper search for documents, the Court should compel

26   defendants to:  (i) perform a thorough search of all repositories for relevant information using a

27   proper search and collection protocol; (ii) produce all materials relevant to Facebook's discovery

28   requests;  (iii) supplement both document and interrogatory responses accordingly; and (iv)

provide a declaration stating how they performed the requisite search, including identifying the

sources searched, who conducted the search, and specifying what was the search methodology

**A.      Power Should Be Compelled To Produce All Responsive Documents and Things After Performing A Thorough Search**

Power's representations that it "identified and produced all responsive documents that were located after a diligent search, with the exception of raw computer source code [and that] [n]o documents other than raw source code were withheld[,]" are belied by Vachani's admissions: Defendants did not perform an adequate search and, thus, many responsive documents have not been produced.  Defendants' meager production, coupled with Vachani's admissions, demonstrate that neither Power nor Vachani performed the "thorough search" required by the Federal Rules.  Fed. R. Civ. P. 26, 34.  A supplemental search thus is warranted.

Other courts have ordered parties to perform a supplemental search when the receiving party showed that the initial search was inadequate.  For instance, in *Genentech, Inc. v. The Trustees of the Univ. of Penn.*, Case No. C-10-02037 LHK (PSG), 2011 WL 2443669 (N.D. Cal. Jun. 16, 2011), this Court ordered Genentech to "perform a reasonable search" after the defendant demonstrated that Genentech had not already done so.  *Id.* at *3; *see also Sofaer Global Hedge Fund v. Brightpoint, Inc.*, Case No. 1:09-CV-01191-TWP-DML, 2010 WL 4701419, *5 (S.D. Ind. Nov. 12, 2010) (finding original search inadequate and ordering production of "all documents"); *Jacobson v. Starbucks Coffee Co.*, Case No. 05-1338-JTM, 2006 WL 3146349, *2 (D. Kan. Oct. 31, 2006) (finding defendant's search for documents responsive to plaintiff's requests "highly suspect" and ordering responding party to submit to and pay for 30(b)(6) deposition on defendant's efforts to locate responsive documents).  Such relief is warranted here as well.

First of all, Power's search methodology, collection and production suggest that defendants' counsel was not involved in the process, though they should have been.  *See Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 630 (D. Colo. 2007) (finding counsel "failed in many respects to discharge their obligations to coordinate and oversee discovery").  As the Courts have recognized:

[F]or the current 'good faith' discovery system to function in the electronic age, attorneys and clients must work together to ensure that both understand how and where electronic documents, records and emails are maintained and to determine how best to locate, review, and produce responsive documents. ***Attorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search***.

*Qualcomm, Inc. v. Broadcom Corp.*, 2008 WL 66932 *9 (S.D. Cal. Jan. 7, 2008) (citing Advisory Committee Notes to the 1983 Amendments to Fed. R. Civ. P. 26(g); emphasis added); *see also Sofaer Global Hedge Fund*, 2010 WL 4701419 at *5 (finding that "allowing Mr. Sofaer to control and conduct the search for all responsive documents, was also not substantially justified" and counsel should have recognized that "a more substantial effort must be made to search. . .").  At a minimum, therefore, defendants' counsel should independently verify that all relevant sources, particularly emails, were thoroughly searched by defendants, and should not merely rely upon Vachani's assurances who, among other problems, is an interested party.

Moreover, defendants' search methodology must be further remedied to ensure all relevant documents are identified and produced, rather than those that Vachani, without supervision, unilaterally elected to search and produce.  Vachani who, by his own account, was ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████ *Id*. ███████████████████████ ██████████████████████████████████████████████████████████  This is evidenced by Power's failure to produce relevant email communications between Facebook and Power that occurred prior to this litigation.  *See* Sutton Decl. Exs. A-D.

Defendants also must ensure documents from all relevant employees are identified and produced.  Despite having had upwards of ████████████████████████████ ██████████████████████████████████████████████ Yet, importantly, ███████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ *Id*. Ex. E, at 62:6-12;  333:2-334:3;  336:8-15;  337:1-21;  141:13-25;  341:7-342:3;

1    343:19-344:10. ████████████████████████████████████████

2    ████████████████ *Id.* at 62:18-63:5. ██████████████████████

3    ██████████████████████████████████████████████████

4    ████████████████████████████████████████████████████

5    ████████████████████ *Id.* at 270:3-24; 268:1-3. █████████████

6    ██████████████████████████████████████████████████

7    ████████████████████████████████████ *Id.* at 141:13-142:10;

8    341:22-342:3; 343:19-344:10.  This baseless assumption by itself warrants a supplemental search.

9        A supplemental search likewise is warranted because ████████████████

10    ██████████████████████████████████████████████, even though

11    Request No. 3 calls for the production of source code.  As a result, he testified, ███████

12    █████████████████ *Id.* at 259:4-19. ██████████████████

13    ████████████████████████████████████████████

14    ██████████████████████████████████████████████████

15    ██████████████████████████████████████████████████

16    ██████████████████████████████████████████████

17    ██████████████████████████████████████████████████

18    ██████████████████████████████████████████████████

19    ██████████████████████████████████████████

20    ██████████████████████████████████████████

21    ██████████████████████████████████ *See id.* at 298:3-12.

22        Under the circumstances, Power thus should be required, with counsel's supervision,[7] to

23    perform a thorough search of each email account of all potentially relevant custodians, and all

24    shared electronic storage devices used by Power and its employees.  *See Mikron Indust. v. Hurd*

25    ───────────────────
[7] An attorney's "signature certifies that the lawyer has made a reasonable effort to assure that the

26    client has provided all the information and documents available to him that are responsive to the discovery demand."  *State Farm Mutual Auto. Ins. Co. v. New Horizon, Inc*., 250 F.R.D. 203, 220

27    (E.D. Pa. 2008)."Counsel retains an ongoing responsibility to take appropriate measures to ensure that the client has provided all available information and documents which are responsive to

28    discovery requests."  *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc*., 244 F.R.D. 614, 630 (D. Colo. 2007).

1   *Windows & Doors, Inc.*, No. C07-532RSL, 2008 WL 1805727, at \*2 (W.D. Wash. Apr. 21, 2008)

2   (ordering re-search of network and servers where defendant directed its employees to search, but

3   had "not demonstrated any search efforts beyond that limited inquiry").  Power also should be

4   compelled to make a diligent effort to ascertain whether any former Power employees retained

5   any hard copy materials that are responsive to Facebook's document requests.  Power should not

6   be ███████████████████████████████████████████████

7   ███████████████████████████████████████████████

8   ████████████████████████   *See Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*, No. 05-

9   1516-RSWL (SHx), 2007 U.S. Dist. LEXIS 72953, \*24 (C.D. Cal. Sep. 18, 2007) (finding that

10  while the producing party is "not obligated to *produce* identical copies of the same document" it

11  is not excused from "*collect*[ing] all responsive documents so that it can determine whether

12  documents are . . . *identical*") (emphases in original).  Given the small volume of materials

13  produced to-date under such a search strategy, it is clear that searching some but not all accounts

14  is insufficient and should not be repeated.

15       Once Power has located all documents and things responsive to Facebook's First and

16  Second Sets of Requests for Production and the interrogatories for which it agreed to produce

17  pursuant to Rule 33(d), it should produce all non-privileged materials and identify, pursuant to

18  Rule 33(d), which documents it is relying on to respond to Facebook's interrogatories.  Further, to

19  the extent Power or Vachani withholds any documents on the ground that they are protected by

20  the attorney-client privilege or work product doctrine, they must promptly serve a privilege log

21  that complies with Fed. R. Civ. P. 26(b)(5).

22  **B.     If Power Persists In Arguing It Performed A Thorough Search For**
23  **Responsive Documents, It Should Be Compelled To Identify Its Sources And**
    **Methodology**

24       When a party's search methodology is questioned, "the party selecting methodology must

25  be prepared to explain the rationale for the method chosen to the court, demonstrate that it is

26  appropriate for the task, and show that it was properly implemented."  *Victor Stanley, Inc. v.*

27  *Creative Pipe, Inc.*, 250 F.R.D. 251, 262 (D.Md. May 29, 2008).  Like the *Victor Stanley*

28  defendant, Vachani "neither identified the keywords selected nor the qualifications of the persons

- 16 -

who selected them to design a proper search . . . ." *Id.* Vachani, like the *Victor Stanley* defendant, "failed to demonstrate that there was quality-assurance testing. . . ." *Id.* In fact, Vachani admitted that he ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

Sutton Decl. Ex. E, at 141:2-9. Now that Facebook is challenging Power's and Vachani's production (or lack thereof), they bear the "burden of explaining what they had done and why it was sufficient." *Victory Stanley,* 250 F.R.D. at 262. In light of Vachani's testimony of what was the methodology employed, and further given the dearth of documents produced, it is unlikely that defendants can justify their production efforts.

Under similar circumstances in *Facebook, Inc. v. ConnectU LLC.*, No. C 07-01389 RS (N.D. Cal. Dec. 12, 2007), the Honorable Richard Seeborg required one of the defendants to either provide all information responsive to interrogatories or provide a "verified declaration" in the event the defendant's "computer records do not contain additional responsive information." *Id*. Ex. P, at fn. 4. Consistent with Judge Seeborg's approach, Facebook respectfully requests that if Power persists in its assertion that it performed an adequate search and found no additional responsive documents, it should be required to file a declaration specifying the sources it searched, its search methodology, and the reasons for the absence of responsive documents and things.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Facebook respectfully requests that the Court order Power to perform a thorough search of its records to locate all responsive documents in its possession, custody and control, and to either produce those documents or identify them on an appropriate privilege log. Alternatively, Power should be ordered to provide a declaration detailing 1) the sources searched, 2) the methodology used for such search(es), and 3) the reason for the absence of responsive materials.

/ / /

/ / /

1    Dated:  August 22, 2011                    ORRICK, HERRINGTON & SUTCLIFFE LLP

2

3                                                      */s/ Monte M.F. Cooper*

4                                                   Monte M.F. Cooper
                                                   Attorneys for Plaintiff
5                                                   FACEBOOK, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 18 -