I. NEEL CHATTERJEE (STATE BAR NO. 173985)
nchatterjee@orrick.com
MONTE M.F. COOPER (STATE BAR NO. 196746)
mcooper@orrick.com
THERESA A. SUTTON (STATE BAR NO. 211857)
tsutton@orrick.com
MORVARID METANAT (STATE BAR NO. 268228)
mmetanat@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:       650-614-7400
Facsimile:        650-614-7401

Attorneys for Plaintiff
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>             Plaintiff,<br><br>    v.<br><br>POWER VENTURES, INC. a Cayman Island Corporation; STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, DOES 2-25, inclusive,<br><br>             Defendants. | Case No.  5:08-cv-05780 JW<br><br>**FACEBOOK INC.'S NOTICE OF MOTION AND MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND DISCOVERY RESPONSES FROM DEFENDANT POWER VENTURES, INC.**<br><br>Date:        October 24, 2011<br>Time:       9:00 A.M.<br>Judge:     Hon. James Ware<br>Courtroom:  15, 18th Floor |

[REDACTED]

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................ 1

II.  BACKGROUND ......................................................................................................... 2

    A.   Facebook's Allegations Against Power, and Power's Admissions Concerning Its Wrongful Conduct ........................................................... 2

    B.   Power's Failure To Produce Relevant Documents ................................. 4

    C.   Power's Failure To Adequately Respond To Facebook's Interrogatories ............ 7

    D.   Production of Relevant Power Documents by Third Parties ............................. 11

III. ANALYSIS ............................................................................................................. 13

    A.   Power Should Be Ordered To Produce Documents Responsive To Facebook's Document Requests ....................................................... 13

        1.   The Requested Discovery Is Relevant to Facebook's Claims ................. 13

    B.   Power Should Be Compelled To Supplement Its Interrogatory Responses.......... 14

    C.   Good Cause Exists To Compel The Production Of The Requested Documents And Responses To The Interrogatories.............................. 17

IV.  CONCLUSION......................................................................................................... 17

1

2

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

3

CASES

4

*Adams v. Murakami,*
    54 Cal. 3d 105 (1991) .......................................................................................................... 14

5

6

*Davis v. Fendler,*
    650 F.2d 1154 (9th Cir. 1981).............................................................................................. 14

7

*Eureka Fin. Corp. v. Hartford Accident and Indem. Co.,*
    136 F.R.D. 179 (E.D. Cal. 1991) ......................................................................................... 14

8

9

*General Dynamics, Corp. v. Selb Mfg. Co.,*
    481 F.2d 1204 (8th Cir. 1973).............................................................................................. 15

10

*In re Sulphuric Acid Antitrust Litigation,*
    231 F.R.D. 320 (N.D. Ill. 2005) ........................................................................................... 16

11

12

STATUTES

13

California Penal Code Section 502 ........................................................................................ 2, 16

14

CAN-SPAM Act (15 U.S.C. § 7701, *et seq*.)........................................................................ 1, 2

15

California Penal Code 502 ......................................................................................................... 2

16

Computer Fraud and Abuse Act (18 U.S.C. § 1030) ................................................................. 2

17

OTHER AUTHORITIES

18

19

Civil Rule 37-1 ......................................................................................................................... 11

20

Fed. R. Civ. P. 26(b)(5).......................................................................................................... 14

21

Fed. R. Civ. P. 33 ................................................................................................................... 14

22

Fed. R. Civ. P. 33(d) .......................................................................................................... passim

23

Fed. R. Civ. P. 33(d)(1)......................................................................................................... 15

24

Federal Rule of Civil Procedure 26(b)(1) .............................................................................. 13

25

26

27

28

1    TO POWER VENTURES, INC. AND ITS ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on October 24, 2011 at 9:00 A.M. or as soon thereafter as

3    the matter may be heard in the above entitled Court located at 450 Golden Gate Avenue,

4    San Francisco, California 94102, Plaintiff Facebook, Inc., will and hereby does move pursuant to

5    Fed. R. Civ. P. 26(b)(1) and 37(a) and Civ. L.R. 37-2 for an order compelling defendant Power

6    Ventures, Inc. to produce documents in response to Facebook's First and Second Sets of Requests

7    for Production of Documents, and to respond to Facebook's First Set of Interrogatories.

8    Pursuant to Local Rule 37-1, Facebook hereby certifies that the parties have made a

9    reasonable effort to meet and confer regarding these discovery disputes.  Despite the parties' good

10   faith efforts, they were unable to resolve their differences.

11   Facebook's motion is made on the grounds that the information responsive to Facebook's

12   requests for production and interrogatories is relevant to Facebook's claims in this litigation, is

13   not unreasonably cumulative or duplicative, cannot be obtained from any source other than

14   Power, and any burden or expense on Power does not outweigh the discovery's likely benefit to

15   Facebook.  This Motion is based on this notice, the accompanying memorandum of points and

16   authorities, the accompanying Declaration of Monte Cooper ("Cooper Decl."), the pleadings and

17   papers on file in this action, and such other evidence and argument as may be presented at the

18   hearing on the Motion.

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATION PURSUANT TO</u>**

**<u>FED. R. CIV.P. 37(a)(1) and CIV. L.R. 37-1(a)</u>**

Counsel for Facebook hereby certifies pursuant to Fed. R. Civ. P. 37(a)(1) and Civ. L.R. 37-1(a) that it has satisfied its meet and confer obligations with counsel for defendants concerning their inadequate search, collection and production of documents responsive to Facebook's First and Second Sets of Requests for Production, and their inadequate responses to Facebook's First Set of Interrogatories.  Despite Facebook's efforts to resolve defendants' deficiencies, however, defendants persist in refusing to perform a thorough search and produce all responsive documents and things, or to provide complete Interrogatory responses.

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3      This is the third motion to compel that Facebook has had to bring in this case, which

4    involves allegations that Defendants Power Ventures, Inc. and Steve Vachani violated the CAN-

5    SPAM Act, the Computer Fraud and Abuse Act, and California Penal Code 502.  Facebook once

6    again seeks an order compelling Power to produce highly relevant documents that are being

7    withheld without justification, and to respond properly to interrogatories that are aimed at gaining

8    information about the key liability issues in this case.

9      Specifically, having already successfully moved to compel highly relevant source code

10   that Power withheld without cause for months,[1] and having further recently moved to compel

11   Power to make an adequate search of its emails and other records for responsive information,[2]

12   Facebook now is forced to seek an Order compelling Power to produce missing documents, and

13   to provide complete responses to interrogatories that seek information concerning (a) Power's

14   unauthorized access of the Facebook website in order to obtain and download Facebook user

15   data; (b) Power's circumvention of technical blocks implemented by Facebook, such as

16   Facebook's blocks of Power's IP addresses; and (c) Power's profits and advertising revenue

17   generated in conjunction with its unauthorized access of Facebook's website.

18     Power, without cause, refuses to provide the highly relevant information and documents

19   sought by these requests.  Yet, the discovery is neither unduly burdensome nor expensive for

20   Power to obtain, and is directly relevant to the issues raised in the case –including the issues

21   raised in Power's currently pending motion for summary judgment.[3]  Moreover, highly relevant

22   Power documents recently produced by third parties prove that Power has not made a good faith

23   effort to locate relevant information from its own resources.  Power should be ordered to produce

24   the requested documents, and answer (or supplement) its interrogatory responses.

25

26   _____

27   [1] *See* Dkt. No. 127 (Order dated August 18, 2011)
     [2] *See* Dkt. No. 129 (Motion to Compel currently set for hearing on October 24, 2011).

28   [3] Dkt. No. 98 (Motion for Summary Judgment currently scheduled for hearing on  October 31, 2011).

FACEBOOK'S MOTION TO COMPEL PRODUCTION AND
RESPONSES FROM POWER VENTURES, INC.
5:08-CV-05780 JW

1

**II.      BACKGROUND**

2

3

        **A.      Facebook's Allegations Against Power, and Power's Admissions Concerning Its Wrongful Conduct.**

4

        Facebook operates one of the most popular social networking websites on the Internet that

5

connects people with their friends, family and coworkers.  Dkt. No. 9 at ¶ 1.  As of December

6

2008, Facebook had more than 132 million active users worldwide.  *Id.*

7

        On December 30, 2008, Facebook filed suit against Defendants Power Ventures, Inc. and

8

Steve Vachani asserting, among other claims, violations of the CAN-SPAM Act (15 U.S.C.

9

§ 7701, *et seq*.); the Computer Fraud and Abuse Act (18 U.S.C. § 1030); and California Penal

10

Code Section 502.  These claims stem from Power's December 2008 campaign to use its website

11

www.power.com to access the Facebook website in violation of Facebook's Terms of Use, to

12

then crawl, scrape and download Facebook user information for display on Power's own website,

13

www.power.com, and to then send commercial messages to Facebook users soliciting them to

14

join Power.  *See generally* Dkt. No. 9 at ¶¶ 20-31, 45-86.  Power has admitted many of the facts

15

underlying this dispute, and as a result the Court already has ruled that it is "undisputed" that

16

"Facebook suffered some damage or loss as a result of Power's actions."  *See* Dkt. No. 89, at 6-7.

17

        For instance, the parties in their pleadings agree that Power employs its own browser,

18

which aggregates information from multiple social network websites, to permit its users "to enter

19

their account information to access the Facebook site through Power.com."  Dkt. No. 54 at ¶ 18;

20

*see also id.* at ¶¶ 45, 50.  ███████████████████████████████████████

21

████████████████████████████████████████████████████████████

22

████████████████████                Cooper Decl. Ex. 1(Vachani Tr.), at  222:13-19; 240:2-11.  *Id.* Ex. 2 ("[i]n

23

some instances, users can read and respond to a message received at one of [the social

24

networking] sites without actually visiting the site.").  Power is able to divert Facebook user

25

traffic to Power's website and generate revenue in this way because, as Power concedes, it has

26

"developed computer software and other automated devices and programs to access and obtain

27

information" from the Facebook website for aggregating services.  Dkt. No. 54 at ¶ 74.  This

28

means of "accessing" and "obtaining information" is commonly known as "scraping," a well-

recognized form of cyber-attack on the Internet involving the trespass to a computer server.

Power further has admitted that it copied and stored all the Facebook data files necessary to display the Facebook website through the Power browser.  *Id.* ¶ 75.  Power even concedes that it "provided users with tools necessary to access Facebook through Power.com."  *Id.* ¶ 64.  Power also concedes that "[a]t no time have Defendants received permission from Facebook to represent that solicitation of Facebook username and passwords was authorized or endorsed by Facebook."  *Id.* ¶ 53.

Further, it is undisputed that on December 1, 2008, Facebook notified Power's CEO Defendant Steve Vachani that "Power.com's access of Facebook's website and servers was unauthorized and violated Facebook's rights, including Facebook's trademark, copyrights, and business expectations with its users."  Dkt. No. 9 at ¶ 57;  Dkt. No. 54 at ¶ 57.  Vachani immediately wrote an email to Power's technical team that ████████████████████████ ████████████████████████ Cooper Decl. Ex. 3 (Dec. 1, 2008 email from Steve Vachani to Eric Santos).  Meanwhile, though, Power also expressed its agreement to abide by Facebook's Terms and "integrate Power.com with Facebook Connect," a set of Application Programming Interfaces ("APIs") from Facebook that enable Facebook members to log onto third-party websites, applications, mobile devices and gaming systems with their Facebook identity.  Dkt No. 54 at ¶ 58.  However, it is undisputed that after Facebook notified Power that its access of the Facebook website was not permitted by Facebook, Power continued to allow its users to use Power's website to access the Facebook website rather than switching to Facebook Connect.  Cooper Decl. Ex. 4 (Power's Responses to Facebook's Request for Admission), Admission Nos. 12-13.  Power also continued to store Facebook user login information, and continued to take, copy and make use of Facebook's user data without Facebook's permission.  *Id.* Admission Nos. 15, 18, 21-22, 37, 51.  In fact, despite promising to delete friend information and switch to Facebook Connect, Power to date has never deleted any of the user login information or data it scraped and downloaded from the Facebook website.  *Id.* Admission Nos. 52, 54-56.

It likewise is undisputed that "Facebook implemented technical measures to block users from accessing Facebook through Power.com."  Dkt. No. 54 at ¶ 63.  *See also* Cooper Decl. Ex.

1    D Admission No 24.  Yet, despite these blocking efforts, Power admits that it subsequently

2    "provided [its] users with tools necessary to access Facebook through Power.com."  Dkt. No. 54

3    at ¶ 64.  Indeed, Vachani has fully admitted that ███████████████████████████████████

4    ████████████████████████████████████████████████████████████████████████████████████

5    ███████████████████████      *See* Cooper Decl. Ex. 1  at 107:4-12;  327:9-16.  Vachani

6    further has conceded that when Facebook attempted to block Power from unauthorized access,

7    ████████████████████████████████████████████████████████████████████████████████████

8    ████████████████████    *Id.* at 327:9-328:16.  However, notwithstanding these other admissions, in a

9    Declaration from Vachani in support of their pending Motion for Summary Judgment, defendants

10   now contend that Facebook's block was ineffective because it only blocked one "outdated IP

11   address Power had used, and did not block others that Power was using in the normal course of

12   business."  Dkt. No. 98-2, ¶ 11.  Power does not identify what "outdated" IP address it is referring

13   to, or what were the others that it claims it was using instead.  *Id.*

14          **B.       Power's Failure To Produce Relevant Documents.**

15          Facebook has sought, through written discovery, to obtain relevant information related to

16   the admitted events, including seeking documents establishing how Power employed proxy

17   servers to circumvent Facebook's block, what harm Power caused Facebook through its unlawful

18   actions in accessing, scraping and downloading information from the Facebook website, and what

19   revenue Power obtained as a result of its actions, including diverting users from Facebook to

20   Power, where they would view Power's advertisers rather than Facebook's.  To that end,

21   Facebook served Power with its First Set of Requests for Production (Nos. 1-50) on October 22,

22   2010.  Cooper Decl., Ex. 5.  On June 3, 2011, Facebook served Power with its Second Set of

23   Requests for Production (Nos. 51-89).  Cooper Decl., Ex. 6.

24          Among Facebook's requests it asked that Power produce, *inter alia*, the documents and

25   things related to Power's activities related to its efforts to circumvent Facebook's block of

26   Power's IP addresses and its use of proxy servers.  Significantly, Power concedes that the ██

27   ████████████████████████████████████████████████████████████████████████████████████

28   Cooper Decl. Ex. 1, at 107:4-12; 330:1-331:14.  The relevant requests seeking this and related

documentation read as follows:

**REQUEST FOR PRODUCTION NO. 8:**

ALL COMMUNICATIONS AND DOCUMENTS concerning or that RELATE TO the use of ANY server, including proxy server, to access the FACEBOOK WEBSITE.

**REQUEST FOR PRODUCTION NO. 21:**

ALL DOCUMENTS that RELATE TO YOUR knowledge of technical measures to block OR in ANY way inhibit YOU OR POWER USERS from accessing the FACEBOOK WEBSITE, including, but not limited to, ANY blocks to YOUR IP address.

**REQUEST FOR PRODUCTION NO. 22:**

ALL DOCUMENTS that RELATE TO YOUR access to the FACEBOOK WEBSITE following FACEBOOK's implementation of ANY technical measures to block such access, including, but not limited to, ANY blocks to YOUR IP address, including how such access was achieved.

**REQUEST FOR PRODUCTION NO. 23:**

ALL DOCUMENTS that RELATE TO YOUR providing POWER USERS with the means to access the FACEBOOK WEBSITE following FACEBOOK's implementation of ANY technical measures to block such access, including, but not limited to, blocks of YOUR IP address(es), including how such access was achieved.

**REQUEST FOR PRODUCTION NO. 24:**

ALL DOCUMENTS that RELATE TO YOUR access to the FACEBOOK WEBSITE subsequent to your knowledge OR awareness that YOU did not have FACEBOOK's permission to access the FACEBOOK WEBSITE.

**REQUEST FOR PRODUCTION NO. 25:**

ALL DOCUMENTS that RELATE TO YOUR providing POWER USERS with the means to access the FACEBOOK WEBSITE subsequent to your knowledge OR awareness that YOU did not have FACEBOOK's permission to access the FACEBOOK WEBSITE.

**REQUEST FOR PRODUCTION NO. 26:**

ALL DOCUMENTS that RELATE TO the occurrences between January 1, 2007 AND the present date, where YOU accessed the FACEBOOK WEBSITE to send, OR to encourage POWER USERS to send messages to FACEBOOK USERS.

**REQUEST FOR PRODUCTION NO. 27:**

ALL COMMUNICATIONS AND DOCUMENTS concerning OR that RELATE TO ANY IP addresses used by YOU.

/ / /

/ / /

**REQUEST FOR PRODUCTION NO. 28**:

ALL COMMUNICATIONS AND DOCUMENTS concerning OR that RELATE TO ANY AND all IP addresses from which YOU accessed or provided POWER USERS the means for accessing the FACEBOOK WEBSITE.

**REQUEST FOR PRODUCTION NO. 36**:

ALL DOCUMENTS reflecting, associated with, OR that RELATE TO ANY of YOUR responses to FACEBOOK's concurrently-served First Set of Interrogatories to Defendant Power Ventures, Inc.

**REQUEST FOR PRODUCTION NO. 65**:

ALL DOCUMENTS that summarize, describe, refer to, OR relate to Steve Vachani's statement that POWER "need[ed] to be prepared for Facebook to try to 'block" Power.com, as written in Steve Vachani's December 1, 2008 email to Felipe Herrera and Eric Santos, produced at POWER 2011.02.03 000089-90.

**REQUEST FOR PRODUCTION NO. 66**:

ALL DOCUMENTS that summarize, describe, refer to, OR relate to the statement in Steve Vachani's May 6, 2011 Declaration that "Facebook's IP blocking attack was partial, incomplete, and ineffective."

*Id*. at Exs. 5 & 6.   Power responded to all of these Requests by promising to "conduct a reasonable search for documents responsive to this request."  *Id*. Ex. 7 & 8.

Facebook also served requests that sought the documentation concerning the amount of revenue Power generated, including revenue generated as a result of its use of advertisements that its users would view by accessing Facebook through the Power website.  Those requests read as follows.

**REQUEST FOR PRODUCTION NO. 40**:

DOCUMENTS sufficient to show POWER's monthly AND annual revenue.

**REQUEST FOR PRODUCTION NO. 41:**

DOCUMENTS sufficient to show POWER's monthly AND annual income.

**REQUEST FOR PRODUCTION NO. 56**:

ALL DOCUMENTS AND COMMUNICATIONS that summarize, describe, refer to, relate to, OR constitute ANY contract(s) or agreement(s) between POWER and third-party advertisers.

*Id*. Exs. 5 & 6.   In response to Facebook's Request Nos. 40, 41 and 56, Power wrote that it will

1   not produce documents.  Specifically, Power objects that Request Nos. 40 and 41 are "not

2   relevant" and "not calculated to lead to the discovery of admissible evidence." *Id.* Ex. 7.  With

3   respect to Request No. 56, Power objects that this Request is "vague, ambiguous, overbroad and

4   unduly burdensome, not relevant to the subject matter of this action and not calculated to lead to

5   the discovery of admissible evidence," and  "calls for documents protected from disclosure by the

6   attorney-client privilege and work product doctrine." *Id.* Ex. 8.

7        On February 3, 2011, Power produced a total of 13 documents in response to Facebook's

8   First Set of Requests for Production.[4]  Of these 13 documents, three are duplicates and, two of the

9   others are a PowerScript Training document and a "PowerScript Documentation Developer

10  Manual,"  which only describe "high level" features of Power's PowerScript software.   *See* Dkt.

11  No. 124-11, at ¶¶ 17-23.[5]   None of the 13 documents in any way relates to proxy addresses, IP

12  addresses used by Power, or advertising and other revenue generated by Power.  In fact, Power

13  apparently produced no documents whatsoever in response to Requests Nos. 8, 21-28, 36, 40-41,

14  56 or 66.

15       After lengthy motion practice which resulted in it being compelled to do so, Power on

16  August 23, 2011 for the first time made its source code available for inspection.  However, as of

17  September 6, 2011, Facebook still has not received hard copies of the code, and Power has not

18  identified how (if at all) the code is responsive to any of the requests subject to this motion.  *Id.*

19  Ex. 9 (9/6/11 email from M. Metanat to T. Fisher).

20       **C.        Power's Failure To Adequately Respond To Facebook's Interrogatories.**

21       On October 22, 2010, Facebook also served Power with its First Set of Interrogatories.  *Id.*

22  Ex. 10.  These Interrogatories, like the Requests for Production, address a variety of subjects

23  relevant to Facebook's claims against Power, including the process by which Power accessed (or

24  allowed others to access) the Facebook website, Power's efforts to integrate power.com with

25  Facebook, and Power's maintenance and/or use of the information and data obtained from the

26  _____

[4] Power has yet to produce documents in response to Facebook's Second Set of Requests for
Production, or to supplement its previous production. Cooper Decl. ¶ 7.  It served its objections

27  on July 5, 2011.

[5] Dkt. No. 124-11 is the redacted copy of a Declaration of Larry Melling.  The un-redacted copy

28  was filed under seal.  *See* Dkt. No.127.

Facebook website.  On December 15, 2010, Power responded to Facebook's Interrogatories, but with incomplete information.  *Id.* Ex. 11.  Specifically, Interrogatories Numbers 1-3, 7, 13-15, and 19, and Power's responses to those Interrogatories, read as follows:

**INTERROGATORY NO. 1**:

Describe in detail AND IDENTIFY the process by which POWER accesses OR accessed the FACEBOOK WEBSITE.

**RESPONSE TO INTERROGATORY NO. 1**:

Power objects that this interrogatory is vague and ambiguous, overly broad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, pursuant to Fed. R. Civ. P. 33(d), Power refers to its business records including its June 2007 PowerScript Training document, and its PowerScript Documentation Developer Manual.  These business records contain highly confidential, proprietary trade secrets, and will be produced upon entry of an appropriate protective order.

**INTERROGATORY NO. 2**:

Describe in detail AND IDENTIFY the process by which POWER provides OR provided POWER USERS with access to the FACEBOOK WEBSITE.

**RESPONSE TO INTERROGATORY NO. 2**:

See response to Interrogatory No. 1.

**INTERROGATORY NO. 3**:

Describe in detail AND IDENTIFY ANY AND ALL software, i.e., computer code, programs, tools, scripts OR automated devices, YOU use OR used to access OR provide POWER USERS with the means to access, the FACEBOOK WEBSITE to copy, download, extract, OR retrieve information from the FACEBOOK WEBSITE, including, but not limited to, the processes OR procedures by which that software was developed, including how it was tested and on what code its functionality was tested.

**RESPONSE TO INTERROGATORY NO. 3**:

See response to Interrogatory No. 1.

**INTERROGATORY NO. 7**:

Describe in detail and IDENTIFY the process by which YOU continued to access, OR provide POWER USERS' with the means to access, the FACEBOOK WEBSITE following FACEBOOK's IP blocking, including, but not limited to the POWER employee(s) OR director(s) responsible for that process OR decision.

/ / /

/ / /

1

**RESPONSE TO INTERROGATORY NO. 7**:

2

3

4

5

6

7

Power objects that this interrogatory is vague and ambiguous, overly broad, unduly burdensome, and seeks information that is not within Power's possession, custody or control.  Subject to and without waiving those objections, Power had implemented an industry standard practice to refresh, randomize, and rotate IP addresses.  Power's IP addresses were regularly updated for all Power users on all social networks.  These processes for updating IPs are commonplace industry standard practices which Power had implemented prior to the dispute with Facebook.  Power did not change its process for providing users with access to their Facebook accounts in response to any attempted "IP blocking" by Facebook.  The person responsible for Power's conduct in this regard was its CEO, Steven Vachani.

**INTERROGATORY NO. 13**:

8

9

Explain in detail what actions, if any, YOU took to integrate the POWER WEBSITE with FACEBOOK Connect.

10

**RESPONSE TO INTERROGATORY NO. 13**:

11

12

13

14

Pursuant to Fed. R. Civ. P. 33(d), Power refers to its business records including its email correspondence concerning these issues, which will be produced upon entry of an appropriate protective order.  Power's team worked relentlessly and diligently to integrate Facebook Connect and explicitly communicated these efforts to Facebook.  In December 2008 and January 2009, it was Power's highest priority to innovate and launch Facebook connect through Power.com.

**INTERROGATORY NO. 14**:

15

16

17

Describe in detail YOUR "detailed product plan" regarding the "reintegration of Facebook with Facebook connect," referenced in YOUR December 17, 2008 e-mail to FACEBOOK's legal counsel. Dkt. No. 56 at Ex. A.

**RESPONSE TO INTERROGATORY NO. 14**:

18

19

20

Pursuant to Fed. R. Civ. P. 33(d), Power refers to its business records including its email correspondence concerning these issues, which will be produced upon entry of an appropriate protective order.

**INTERROGATORY NO. 15**:

21

22

23

IDENTIFY ALL facts in support of YOUR contention that POWER had "concerns" regarding the integration of the POWER WEBSITE with FACEBOOK Connect on the schedule requested by FACEBOOK, as asserted in POWER's Answer and Counterclaim to FACEBOOK. Dkt. No. 41 at ¶ 60.

24

**RESPONSE TO INTERROGATORY NO. 15**:

25

26

Pursuant to Fed. R. Civ. P. 33(d), Power refers to its business records including its email correspondence concerning these issues, which will be produced upon entry of an appropriate protective order.

27

/ / /

28

/ / /

**INTERROGATORY NO. 19**:

IDENTIFY AND describe in detail how YOU saved, maintained, OR stored FACEBOOK user login information OR DATA obtained from the FACEBOOK WEBSITE OR servers, including the systems on which such DATA OR information is OR was stored, the location of such systems, the security protocols on those systems, whether such DATA remains on those systems, AND the dates and reasons why YOU have deleted OR purged this DATA OR information from YOUR storage systems.

**RESPONSE TO INTERROGATORY NO. 19**:

Power objects that this interrogatory is vague and ambiguous, overly broad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is not within Power's possession, custody or control. Subject to and without waiving these objections, Power states that prior to accessing or storing any user's data, Power first obtains full permission from each user to access their personal data. Power respects and honors the trust that Power users have placed in Power to securely access and store their date [sic]. Power responsibly and securely stores its users' data, and Power has never had a security breach. Unless a user requests that his or her data be deleted, Power does not delete users' data. Power has a responsibility to preserve and store this data for the user, and Power respects and honors that responsibility. Power does not delete data that users have expect [sic] us to store and to maintain for them, just as Yahoo, Gmail and Facebook, for example, do not delete data that their users expect them to store and maintain.

*See Id.* Exs. 10 & 11. As is self-evident, Power provided insufficient, and/or partial responses to the propounded Interrogatories. *Id.*

To the extent that Power directs Facebook to "refer to its business records" pursuant to Fed. R. Civ. P. 33(d) in its responses to Interrogatories Nos. 1-3, which cover how Power accessed Facebook and downloaded data from the site, Power's meager 13 documents do not include any responsive information. By way of example, the PowerScript Training document, and Power's PowerScript Documentation Developer Manual cited in each of Power's responses to Interrogatories Nos. 1-3, include no references or details whatsoever to the process by which Power actually accessed the Facebook website. *See* Dkt. No. 124-11, at ¶¶ 17-23. Nor has Power subsequently supplemented the responses to identify where, if at all, its belatedly produced source code includes the routines that are responsive to these Interrogatories, particularly those requested in interrogatory No. 3.

Likewise, Power improperly relies upon Rule 33(d) and the 10 emails it produced to respond to Interrogatories Nos. 13-15 concerning various actions related to integration of Power with Facebook Connect. Yet, the generically cited emails do not include any details about how

- 10 -

1   Power integrated Facebook Connect, what was its "detailed product plan" it claimed to have

2   developed, or its concerns about the use of that feature.  *See* Cooper Decl. Exs. 3, 12-20.

3       Similarly, Power's response to Interrogatory No. 7, which inquires about the methods by

4   which Power circumvented Facebook's block, evasively answers that "Power had implemented

5   an industry standard practice to refresh, randomize, and rotate IP addresses," and also that

6   "Power's IP addresses were regularly updated for all Power users on all social networks."  Yet,

7   Power makes no effort to explain what was the "industry standard practice" it refers to, what IP

8   addresses it is referencing, or how the IP addresses supposedly were updated, even though that is

9   precisely the information requested by the Interrogatory.  Power's response to Interrogatory No.

10  19, which asks for the technical details of how and where Power stored Facebook data and user

11  information, also does not provide the information requested.  Instead, Power's response to

12  Interrogatory No. 19 offers a self-serving characterization of how Power ensured security.

13      On their face, each of Power's responses to these Interrogatories is evasive, incomplete,

14  and non-responsive.

15              **D.        Production of Relevant Power Documents by Third Parties**

16      It now also is evident that Power did not search its documents for responsive materials or

17  information.  On May 12, 2011 and May 17, 2011, as part of the meet-and-confer process

18  required by Local Civil Rule 37-1, Facebook sent Power two letters enumerating the deficiencies

19  with Power's Interrogatory Responses and Power's production of documents, respectively.  *See*

20  Cooper Decl., Ex. 21 & 22.  In response, Power did little, if anything, to supplement its responses.

21  With regard to its production, Power simply responded that it had "identified and produced all

22  responsive documents that were located after a diligent search, with the exception of raw

23  computer source code [and that] [n]o documents other than raw source code were withheld."  *Id.*

24  Ex. 23.

25      However, recent productions by third parties in response to subpoenas prove that Power

26  did not, in fact, conduct a diligent search, and that it has access to responsive documents and

27  information which it is withholding.  For instance, on September 2, 2011 Ed Niehaus, Power's

28  former Director of Marketing and Global Communications, produced 631 pages of documents in

1    response to a Facebook subpoena that included, *inter alia*:  (1) Power's internal business plan ██

2    ████████████████████████████████████████████████████████████████████

3    (Niehaus 0056-64); (2) internal notes from discussions in November 2008 about Power's planned

4    launch, ████████████████████████████████████████████████

5    ███████████████████████ (Niehaus 0078-81); (3) previously unproduced and

6    supposedly non-existent emails from Vachani from November 2008 discussing the launch of

7    power.com's service, ██████████████████████████████████████

8    ████████████ (Niehaus 0089-93); (4) an evaluation of Facebook's legal claims against Power,

9    ████████████████████████████████████████ (Niehaus 0229-30); (5)

10   functional demonstrations of Power's integration of Facebook user data and of features scraped

11   from the Facebook website (Niehaus 0545-557); and (6) PowerPoint presentations describing

12   Power's various features, █████████████████████ (Niehaus 0610-631).  Cooper

13   Decl. Exs. 24-29.  Likewise, Leigh Power, the individual who leased the domain

14   www.power.com to Power, on August 29, 2011 produced 1047 pages of previously unproduced

15   documents that included, among many other relevant documents, his own emails from 2008

16   discussing with Power's former Corporate and Legal Director Felipe Herrera the launch of the

17   Power website, and its financing.  *Id.* Exs. 30, 31 (8/29/08 & 9/25/08 emails).

18        Notably, Power has taken the position in its other papers that it searched for all of these

19   documents in Vachani's emails using keywords like "Facebook," and that they simply do not

20   exist – ostensibly because Facebook supposedly was a minor issue to Power.  *See* Dkt No. 136, at

21   3-9.  The fact that some of the recently produced emails discussing Power's launch are from

22   Vachani himself, and include the word "Facebook" within the content of the emails, proves the

23   falsity of Power's assertion that it conducted a diligent search.  *See Id.* Ex. 26  (Niehaus 0089-93).

24   The volume of documents produced by the third parties, which dwarfs Power's own production,

25   further undermines Power's arguments.

26   / / /

27   / / /

28   / / /

III.   **ANALYSIS**

A.   **Power Should Be Ordered To Produce Documents Responsive To Facebook's Document Requests.**

1.   **The Requested Discovery Is Relevant to Facebook's Claims**

The Court should compel Power to perform a diligent search for documents responsive to Request for Production Nos. 8, 21-28, 36, 40-41, 56, and 65-66, and to produce them.  The recent independent production by third parties of large volumes of heretofore unproduced Power documents responsive to Facebook's requests proves that Power has not conducted a diligent search for highly relevant documents.  This is simply untenable.

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . [and] [f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  Fed. R. Civ. P. 26(b)(1).  Information related to Power's access of Facebook's website, and use of IP addresses and proxy servers (Request Nos. 8, 21, 22, 23, 24, 25, 26, 27, 28, 36, 65, & 66) clearly satisfies the Rule 26(b) standard.  That documentation is critical to determining how and by what means Power gained unauthorized access to the Facebook website, and how Power later circumvented Facebook's technical measures implemented to block Power's access. ██████████████████████████████████████ Cooper Decl. Ex. 1, at 107:4-12; 330:1-331:14.  Indeed, ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ *Id.* at 327:9-328:16.  Yet, Power has produced no documentation what so ever in response to any of these requests.  The fact that third parties have produced documents discussing Facebook's functionality and showing how Power incorporated such functionality reflects that Power possesses, and should be able to produce, its own documents responsive to the requests.

Facebook's request for Power's agreements with third party advertisers also is relevant to Facebook's claims and also should be produced.  *See* Cooper Decl. Ex. 6, Request No. 56. Facebook displays its own advertisements on a Facebook user's home page (the default page

1   when a user signs into their Facebook account) as well as a user's profile page.  However, Power

2   ███████████████████████████████████████████████████████████

3   ███████████████████████████████████████████████████████  *Id.* Ex. 1

4   at  222:13-19; 240:2-11.  Instead, Power benefits ██████████████████

5   ████████████  *Id.*  Power's agreements with third-party advertisers thus are highly relevant,

6   because they help establish damages for one kind of harm to Facebook – namely, Power's unjust

7   enrichment as a result of Power's unauthorized access to Facebook's website and services.

8   Power's advertising agreements thus should be produced.[6]

9         Request Nos. 40 and 41 seek documents related Power's financial data, and again easily

10   satisfy the Rule 26(b) relevance standard.  Facebook is entitled to present evidence of Power's

11   financial condition at trial for purposes of an assessment of damages, including punitive damages.

12   *See Adams v. Murakami*, 54 Cal. 3d 105, 119 (1991).  For instance, the court "cannot make a

13   fully informed determination of whether an award of punitive damages is excessive unless the

14   record contains evidence of the defendant's financial condition."  *Id.* at 110.  (*citing* BAJI No.

15   14.71 (7th ed. 1986 bound vol.) p. 205).  The withheld documents should be produced for that

16   reason alone.  Moreover, the revenue figures reflected in the withheld documents may have been

17   derived from advertisers whose advertisements were shown by Power to its users in lieu of

18   Facebook's own advertisements.  Thus, the documentation, like that with Request No. 56, is

19   potentially relevant to establishing damages from Power's unjust enrichment. Information

20   concerning Power's revenues and financial condition should be produced.

21         **B.      Power Should Be Compelled To Supplement Its Interrogatory Responses.**

22         Power's responses to Interrogatories Nos. 1-3, 7, 13-15, and 19 are obviously deficient,

23   and must be supplemented pursuant to Fed. R. Civ. P. 33.  The information sought goes to the

---

25   [6]To the extent that Power claims that documents responsive to Facebook's Request for Production
26   No. 56 are privileged, Power waived such claims by asserting a non-specific privilege objection.
    *See Eureka Fin. Corp. v. Hartford Accident and Indem. Co.*, 136 F.R.D. 179, 183 (E.D. Cal.
    1991) ("several courts hold that a non-specific objection is improper and by itself serves as a
27   waiver of the privilege asserted"); *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir.
    1981)(explaining that a blanket privilege objection is improper).  Moreover, Power has failed to
28   produce a privilege log, as required by Fed. R. Civ. P. 26(b)(5).

1    heart of Facebook's claims, such as how Power gained unlawful access to the Facebook website,

2    how Power used and stored the information it obtained from Facebook, how Power was able to

3    circumvent Facebook's block of Power's IP address, and how Power later attempted to abide by

4    Facebook's demands to integrate its own website with that of Facebook using Facebook Connect.

5    The Interrogatories thus all request highly relevant information.  Yet, while Power has a duty to

6    conduct a good faith investigation of the sources reasonably available to it, it has not done so.

7    *See General Dynamics, Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1210 (8th Cir. 1973).  Instead,

8    Power's answers are intentionally evasive, vague, and incomplete.

9        For instance, to the extent that Power responds to Facebook's Interrogatory requests by

10   generically referring to its document production pursuant to Rule 33(d), Power's responses are

11   clearly unsatisfactory.  *See* Cooper Decl., Ex. 11 (Response Nos. 1, 2, 3, 13, 14, 15).  Power is

12   required to "specify[] the records that must be reviewed, ***in sufficient detail to enable the***

13   ***interrogating party to locate and identify them*** as readily as the responding party could."  Fed. R.

14   Civ. P. 33(d)(1) (emphasis added).   Here, Power's cursory responses fail to provide Facebook

15   with sufficient detail to enable it to locate and identify the information it seeks. For instance, in

16   response to Interrogatories Nos. 1-3, which relate to how Power accessed the Facebook website,

17   Power directs Facebook to two documents concerning its PowerScript software that do not even

18   mention Facebook, let alone provide the requested information.  *See* Dkt. No. 124, at ¶¶ 17-23.

19   Nor has Power attempted to remedy this deficiency by identifying where in its source code the

20   relevant information would exist, as is specifically requested by Interrogatory No. 3.  On top of

21   that problem, the recent production of Power's own documents by third parties, which include

22   discussions of Power's features, underscore that the two PowerScript documents produced by

23   Power are not themselves in any way exhaustive of relevant "business records."

24       Likewise, Power's responses to Interrogatory Nos. 13, 14, and 15 are facially deficient.

25   Those Interrogatories relate to Power's purported attempts to integrate the Power website using

26   Facebook Connect.  As asserted in its Answer to Facebook's First Amended Complaint, Power

27   contends that its conduct was lawful because it was "justified under the circumstances."  *See* Dkt.

28   No. 41, at ¶ 165.  Facebook anticipates that Power will argue that its conduct was warranted due

1    to its purported efforts, and alleged inability, to use Facebook Connect to provide its services.

2    This information, therefore, is necessary to defend against such assertions.

3          However, in responding to Interrogatory Nos. 13-15, Power again simply relies upon

4    Rule 33(d), and "refers to business records including its email correspondence concerning these

5    issues . . . ."  Such a response offers none of the required "detailed specification of the records

6    [that would] permit [Facebook] to find the document as readily as can [Power]."  *In re Sulphuric*

7    *Acid Antitrust Litigation*, 231 F.R.D. 320, 325-26 (N.D. Ill. 2005).  The identified emails do not

8    provide the information sought by the Interrogatories, and in fact offer no details at all.  *See*

9    Cooper Decl. Exs. 3, 12-20. Further, the recent unexplained production by third parties of emails

10   from Power officials like Vachani discussing Facebook prove that Power has not even attempted

11   to locate all documents or business records that would be properly cited via Rule 33(d), as it has

12   elsewhere claimed it has done.  *See* Dkt No. 136, at 3-9.

13         Similarly, Power's deliberately vague and evasive response to Facebook's Interrogatory

14   No. 7 also is improper.  Power vaguely indicates that "Power's IP addresses were regularly

15   updated for all Power users on all social networks," and that "[t]hese processes for updating IPs

16   are commonplace industry standard practice which Power had implemented prior to the dispute

17   with Facebook."  At no point, however, does Power specify what these "commonplace industry

18   standards" entail, or how it supposedly regularly updated its IP addresses.  This information may

19   be critical in showing that Power circumvented Facebook's implemented technical blocks in

20   violation of Facebook's claims under the CFAA and California Penal Code Section 502.  In

21   effect, Power does not respond with the information the Interrogatory calls for.  Moreover, Power

22   ████████████████████████████████, so it should be able to identify how that was

23   accomplished.  Cooper Decl. Ex. 1, at 107:4-12; 330:1-331:14.

24         Finally, Interrogatory No. 19 seeks information relating to the storage of data or

25   information obtained from the Facebook website.  This information is crucial to ascertaining

26   Power's document preservation efforts, the extent of Power's use of information obtained from

27   Facebook, and the volume of traffic by Power users when accessing Facebook.  Power's response

28   to this Request may be of the utmost significance in light of the fact that Power claims it has

1 ███████████████████████████████████████████████████████

2 ████████  *Id.* Ex. 1 at 298:17-24; 271:21-272:5.  Yet, Power's response to Interrogatory No.

3 19 is largely non-responsive and irrelevant, and does not actually provide the information

4 requested.  Power fails to provide any information regarding the technical process implemented in

5 saving, maintaining, or storing Facebook users' login information or data from Facebook's

6 computer networks.  Nor does Power provide information regarding the system for storing such

7 information, including the location of such systems or any security protocols. Supplementation is

8 required.

9    **C.    Good Cause Exists To Compel The Production Of The Requested Documents
10          And Responses To The Interrogatories.**

11         Good cause exists to compel the production of the requested documents, because there is

12 no other method by which Facebook may obtain the requested documents and information.   It is

13 undisputed that the information sought by Facebook's document requests and interrogatories is

14 both relevant and necessary to Facebook's litigation of its claims against Power.   Moreover,

15 Power's Motion for Summary Judgment on Facebook's claims makes the need for these

16 documents and information even more pressing.  Facebook requires the requested discovery to

17 conduct a complete analysis of its claims against Power and to provide support for its Opposition

18 to Power's Motion for Summary Judgment currently pending before the Court. *See* Dkt. No. 98.

19         Power has failed to provide any satisfactory reason to justify withholding the materials

20 and information requested by Facebook.  Indeed, Power indicated that it would "conduct a

21 reasonable search" for the requested production.  Notably, Power has failed to provide any basis

22 for withholding the requested discovery.  Therefore, Power should be required to produce the

23 requested documents and supplement its interrogatory responses.

24 **IV.    CONCLUSION**

25         For the foregoing reasons, Facebook requests that the Court grant its Motion to Compel

26 and order Power to produce documents in response to Requests for Production Nos. 8, 21, 22, 23,

27 24, 25, 26, 27, 28, 36, 40, 41, 56, 65, & 66 and supplement its responses to Interrogatory Nos. 1,

28 2, 3, 7, 13, 14, 15, and 19.

1

Dated:  September 7, 2011                    ORRICK, HERRINGTON & SUTCLIFFE LLP

2

3                                            /s/ Morvarid Metanat
                                            _____
                                                MORVARID METANAT
4                                               Attorneys for Plaintiff
                                                FACEBOOK, INC.
5

6

7    OHS WEST:261274846.6

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28