I. NEEL CHATTERJEE (STATE BAR NO. 173985)
nchatterjee@orrick.com
MONTE M.F. COOPER (STATE BAR NO. 196746)
mcooper@orrick.com
THERESA A. SUTTON (STATE BAR NO. 211857)
tsutton@orrick.com
MORVARID METANAT (STATE BAR NO. 268228)
mmetanat@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:    650-614-7400
Facsimile:    650-614-7401

Attorneys for Plaintiff
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>POWER VENTURES, INC. a Cayman Island Corporation; STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, DOES 2-25, inclusive,<br><br>　　　　Defendants. | Case No.  5:08-cv-05780 JW<br><br>**FACEBOOK INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL DEFENDANTS TO PERFORM THOROUGH SEARCH FOR RESPONSIVE DOCUMENTS AND FOR PRODUCTION THEREOF**<br><br>Date:　　　October 24, 2011<br>Time:　　　9:00 A.M.<br>Judge:　　 Hon. James Ware<br>Courtroom: 15, 18th Floor |

REDACTED

## I. INTRODUCTION

Faced with concrete evidence that they never conducted a reasonable search for documents when responding to Facebook's discovery requests, Defendants make three baseless arguments in defense of their inadequate search methodology:

- Defendants claim that Facebook's motion to compel is untimely, even though it was filed months before the discovery cut-off and the deadline for bringing such a motion set forth in Civ. L.R. 37-3, and just weeks after the July 20, 2011 deposition of Defendant Steve Vachani first exposed the problems in their collection efforts;
- Defendants argue, contrary to the law, that it was reasonable to allow Vachani to conduct the search for documents with virtually no supervision by counsel, and no assurances of how the review occurred; and
- Defendants argue that they eventually produced only 13 total documents because Facebook supposedly was an extremely small portion of Power's business.

Facebook's motion is not untimely as a matter of law, and Defendants' positions are belied by the fact that, in the three weeks since Facebook filed its motion, third-parties produced more than 1700 pages of missing Power documents. Many of the newly produced documents were authored by Vachani and discuss Facebook. They are precisely the kinds of documents Defendants insist in their Opposition papers "simply do not exist."

Given the inadequacies exposed by Vachani's deposition, and the enormous production of supposedly non-existent documents by third parties, the Court should grant Facebook's motion to compel. Defendants should be ordered to (a) perform a thorough search for all information using a proper search and collection protocol; (ii) produce all materials relevant to Facebook's discovery requests; (iii) supplement all prior discovery responses; and (iv) provide a declaration stating how Defendants performed the requisite search.

## II. ARGUMENT

Facebook's motion to compel is timely. Moreover, a large volume of Defendants' own documents produced by third parties in August and September 2011 proves that Defendants did

1  not undertake an adequate search when responding to Facebook's discovery requests. The Court
2  therefore should order Defendants to supplement their responses and provide a detailed
3  description of their search methodology.

4      **A.**    <u>**Facebook's Motion To Compel Is Timely.**</u>

5      Defendants initially argue that Facebook waived its right both to compel a further
6  production of documents and receive a detailed description of the search methodology they
7  employed, because Facebook waited approximately six months to seek relief after Defendants
8  originally produced their first (and only) 13 documents. *See* Opp'n (Dkt. No. 136) at 1-2. This
9  position is frivolous for a number of reasons.

10      First, Defendants do not deny that Facebook moved to compel just one month after it
11  deposed Vachani on July 20, 2011. As Facebook noted in its motion, because it had been
12  repeatedly told before July 20 that all responsive documents to both its first and second sets of
13  Requests for Production had been produced, Facebook could not know that others did, in fact,
14  exist until Vachani's testimony proved that Defendants had not been diligent in searching for
15  responsive information. *See* Mot. (Dkt. No. 129) at 5 n.1 & 9-11. Clearly, a motion to compel
16  brought within a month of when the party first learned of the facts proving that earlier discovery
17  responses were incomplete and inadequate is "timely." *See Petroleum Ins. Agency, Inc. v.*
18  *Hartford Accident & Indemn. Co.*, 106 F.R.D. 59, 63 (1985) (no waiver of objection to
19  nonproduction of documents when party seeking them was unaware of their existence; counsel is
20  entitled to rely upon the prior representations of counsel that all responsive documents were being
21  produced); *see also F.D.I.C. v. Garner*, 126 F.3d 1138, 1146 (9th Cir. 1997) (motion to compel
22  brought two years after FDIC served administrative subpoenas seeking information from
23  defendants was not untimely, in part because appellants failed to cooperate and ignored all
24  requests to comply with the subpoenas).

25      Moreover, at the time Facebook moved to compel, the deadline for completing discovery
26  in this case was November 28, 2011. Dkt. No. 116. That deadline has now been further extended
27  to January 20, 2012. Dkt. No. 142. That means, pursuant to Civ. L.R. 37-3, the present motion
28  would be timely even if it were brought on **<u>January 27, 2012</u>**, more than five months after its

1  actual filing date.  As other courts have recognized, "A motion to compel filed **during the**
2  **discovery period** would rarely be considered untimely."  *Gault v. Nabisco Biscuit Co.*, 184
3  F.R.D. 620, 622 (D. Nev. 1999) (emphasis added).  *See also Kendrick v. Heckler*, 778 F.2d 253,
4  258 (5th Cir. 1985) (motion to compel that was "filed within the discovery cut-off fixed by the
5  district court" was not untimely); *Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 70-71 (M.D.N.C. 1986)
6  (same).  Indeed, the fact that Facebook's motion to compel is brought months before the close of
7  discovery is what distinguishes this case from virtually all of the situations discussed in
8  Defendants' own cited authority, where waivers were held to have occurred.  *See* Opp'n at 2
9  (citing cases).[1]

10  Finally, Facebook did not unjustifiably wait months after receiving Defendants' responses
11  to move to compel, as Defendants argue.  *See* Opp'n at 2.  Defendants did not even produce any
12  documents responsive to Facebook's First Set of Document Requests and First Set of
13  Interrogatories until February 4, 2011, because they insisted that the Court first needed to enter a
14  Protective Order.  *See* Mot. at 8-9.  After February 4, the parties engaged in extensive discussions
15  about document production in which Facebook was assured as late as May 31, 2011 that "no
16  documents other than raw source code were withheld."  *See* Mot. Ex. O.  Defendants then served
17  responses to Facebook's Second Set of Document Requests on July 5, 2004.  *Id.* Exs. L, N.  To
18  date, Defendants have failed to produce any documents in response to these requests, presumably
19  because it is their contention that additional documents do not exist.  Given that Defendants and
20  their counsel represented for months that they had made a diligent search for documents, only to
21  have Vachani reveal at his deposition that was not the case, there was no unwarranted delay by

---

[1] *Cf. Murta Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 242 F.R.D. 470, 475-76 (N.D. Ill. 2007 (motion to compel brought seven weeks before discovery deadline was not denied as untimely) *with Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1044-45 (S.D. Iowa 2010) (motion to compel was untimely when filed 11 days before the close of discovery and fifteen months after receipt of Defendants responses, following a previous extension of the discovery deadline); *Everett v. Aldi, Inc.*, No. 1:07-cv-275, 2009 WL 940379, at *2 (N.D. Ind. Apr. 6, 2009) (motion to compel was untimely when filed 1 day before the close of discovery and seven months following service of the requests, and after two extensions of the discovery deadline); *Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Serv. N.A. L.L.C.*, No. 03 C 760, 2004 WL 3021842, at *4 (N.D. Ill. Dec. 30, 2004) (denying motion to compel filed four days from the close of discovery and 13 months after receipt of Defendants' responses, where there was no effort by Plaintiffs to meet-and-confer pursuant to Fed. R. Civ. P. 37(a)(2)(B)).

1    Facebook in seeking relief.  A motion to compel is not untimely when its filing has been delayed
2    by earlier good faith efforts to secure the information through negotiations, or from other sources
3    such as depositions.  *Kendrick*, 778 F.2d at 258; *Riley v. United Air Lines, Inc.*, 32 F.R.D. 230,
4    232-33 (S.D.N.Y. 1962).  Facebook's motion is timely as a matter of law.

   **B.   Production Of Defendants' Emails By Third Parties Proves That Defendants Failed To Perform A Thorough Search**

7    Defendants have not shown why they should not be ordered to conduct a further search of
8    their corporate sources and repositories for additional missing responsive materials generated by
9    Power and its employees from 2006-2009, supplement their earlier responses to reflect the
10   information in the missing documents, and provide a detailed description of their search protocol.
11   Such relief is appropriate when the moving party shows that an initial search was inadequate.
12   *Genentech, Inc. v. The Trustees of the Univ. of Penn.,* Case No. C-10-02037 LHK (PSG), 2011
13   WL 2443669, at *3 (N.D. Cal. Jun. 16, 2011),  *Sofaer Global Hedge Fund v. Brightpoint, Inc.*,
14   Case No. 1:09-CV-01191-TWP-DML, 2010 WL 4701419, *5 (S.D. Ind. Nov. 12, 2010);
15   *Jacobson v. Starbucks Coffee Co.*, Case No. 05-1338-JTM, 2006 WL 3146349, *2 (D. Kan. Oct.
16   31, 2006).

17   In its Motion to Compel, Facebook described in detail: (a) the sources for emails and other
18   documents that Vachani admitted existed at Power Ventures but which he did not consult when
19   searching for documents; (2) the cursory manner in which Vachani admitted he reviewed his own
20   emails for a few hours with no supervision from his own attorneys while asking for voluntary
21   assistance from some other former Power employees to send him other documents they might
22   think were helpful; and (3) the sources of information, including un-produced emails from
23   Vachani himself, which proved that he had not conducted the search he claimed.  *See* Mot. at 4-7
24   & 9-11.  In response, Defendants do not deny that counsel did not supervise Vachani when he
25   conducted his search, or that Facebook has produced emails from Vachani which should have
26   been located had he conducted the search in the manner he claimed he did.  Nonetheless,
27   Defendants continue to argue that Vachani's search was reasonable, and that no other responsive
28   documents exist.  Both arguments are baseless.

1   Despite the fact that at the time it filed its motion, Facebook already could identify
2   missing documents authored by Vachani that he never produced (Dkt. No. 129, Exs. A-D),
3   Defendants staunchly insist that there is no remaining "treasure trove" of unproduced documents.
4   Opp'n at 9.  According to Defendants, "[t]he documents Facebook seeks simply do not exist" –
5   ostensibly because Facebook was never a "core component" of Power's business.  *Id.* at 1, 9.
6   These representations now can be proven to be false, thanks to the honesty of former Power
7   employees who, unlike Vachani, apparently conducted diligent searches of their records in
8   response to subpoenas and were able to locate the supposedly non-existent materials.
9   On September 1, 2011, five days before Defendants made the representations in their
10  Opposition brief that no further responsive documents exist beyond those produced in February,
11  2011, Defendants' former Director of Marketing and Global Communications, Ed Niehaus,
12  produced 631 pages of email and other business documentation in response to a Facebook
13  subpoena.  *See* Declaration of Morvarid Metanat ("Metanat Decl.") Exs. Q, R (8/19/11 subpoena
14  to Niehaus; 9/1/11 letter from T. Fisher to M. Metanat).  Mr. Niehaus' production includes many
15  highly relevant documents generated by Power discussing Facebook, including the following,
16  previously unproduced and supposedly non-existent:   (1) ████████████████████
17  ████████████████████████████████████████████████████████
18  ████████████████████ (Niehaus 0089-93); (2) ████████████
19  ████████████████████████████████████████████████████████
20  ████████████████████ (Niehaus 00001-2); (3) ████████████
21  ████████████████████████████████████████████████████████
22  (Niehaus 0056-64); (4) ████████████████████████████████
23  ████████████████████████████████████████████████████████
24  ████████████████████████ (Niehaus 0078-81); (5) ████████
25  ████████████████████████████████████████████████████████
26  ████████ (Niehaus 0229-30); (6) ████████████████████████
27  ████████████████████████████████ (Niehaus 0545-557); and
28  (7) ████████████████████████████████████████████████████

1   ▓▓▓▓ (Niehaus 0610-631).  Metanat Decl. Exs. S-Y.  The magnitude of this production, and
2   the fact that it includes numerous discussions of Facebook, wholly undercuts Defendants'
3   arguments that additional documents do not exist beyond what they previously produced, because
4   supposedly "Facebook integration was not necessary to achieve Power's vision."  Opp'n at 9.
5   　　　　Indeed, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
6   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
7   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is particularly instructive as to why the Court
8   cannot credit Vachani's representations of how diligently he conducted his search.  *See* Metanat
9   Decl., Ex. S (Niehaus 0089-93).  That email uses all **three** of Vachani's personal email
10  accounts—his ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ email addresses.  *See id.* at Niehaus
11  0089.  It also includes a heretofore unproduced November 24 email in which Vachani copied
12  Power's Chief Technology Officer Eric Santos – the same individual Defendants claim also was
13  asked to independently search for responsive emails and documents.  *Id.*  *See also* Opp'n at 6-8.
14  The discussions in the emails center on the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ which gave rise
15  to this lawsuit, and in the course of that discussion ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
16  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
17  ▓▓▓▓▓▓▓▓  Metanat Decl. Ex. S. at Niehaus at 0090.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
18  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
19  ▓▓▓▓ but did not need to have ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  *Id.* at Niehaus
20  0091.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
21  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  *Id.*
22  　　　　Given the fact that the November 25 email is authored by Vachani, uses all three of his
23  email accounts, copies those he claims he instructed to search for documents, concerns the events
24  that led to this lawsuit, and even uses multiple times the keyword "Facebook" he claims he
25  employed when searching for relevant documents, if Vachani is to be believed, this is precisely
26  one of the emails his search would have located if it had existed.  *See* Opp'n 3-6.  Yet, this email
27  inexplicably was not produced by Defendants – and they offer no explanation why.
28  　　　　Niehaus' production, in addition to undermining Vachani's arguments that he searched all

1  of his emails, also discredits Defendants' justification that Facebook integration was not a critical
2  part of Power's business model, and therefore other documents than those they produced on
3  February simply do not exist.  Opp'n at 1, 8-9.  To the contrary, the Power documents produced
4  by Mr. Niehaus show that as early as the ████████████████████████████████████████
5  ████████████████████████████████████████████████████████████████████████████
6  ██████████  Metanat Decl. Ex. T at Niehaus 00001.  Indeed, Mr. Niehaus' production shows
7  that use of a ████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████ *Id.*.  Yet, Power did
9  not produce a single email or other document, other than two technical documents discussing
10 PowerScript applications (but not Facebook), dated before December 1, 2011.  Power does not
11 explain the discrepancy between its claims of having employed a "systematic" search which
12 produced exactly 13 documents, and Mr. Niehaus' robust production of 631 pages.  Either Power
13 improperly destroyed relevant evidence or it did not, as it argues, perform an adequate search for
14 responsive materials.  For these reasons alone, Facebook's motion should be granted.
15         Mr. Niehaus' production was not the only production that undercuts Defendants'
16 arguments that Vachani searched and produced all documents.  On August 29, 2011, Facebook
17 received a separate 1047 page production from Leigh Power, the individual who leased the
18 domain www.power.com to Power.  *See Id*. Exs. Z, AA (8/4/11 subpoena; 8/29/11 letter from
19 Leigh Power).  Among many other relevant and previously unproduced documents were emails
20 from 2008 between Mr. Power and Defendants' former Director of Corporate and Legal Affairs
21 Felipe Herrera discussing the launch of the Power website, and Power's financing.  *Id* Exs. BB,
22 CC (LP 00437 & LP 00438).  Yet, Mr. Herrera was another of the individuals Vachani claimed
23 he asked to produce documents.  *See* Mot., Ex. E at 337:1-16; 338:25-339:2.  Again, Defendants
24 offer no explanation for why they failed to locate or produce these supposedly non-existent
25 documents in conjunction with their own ostensible "diligent search" for responsive information.
26         Finally, Defendants' argument that the documents that Facebook seeks to have produced
27 "do not exist" simply does not add up in light of the third party productions.  Vachani testified
28 that Power never purged their systems, and he produced every email he found that contained, for

1 example, the term "Facebook" in it.  *See* Opp'n at 10.  Despite this testimony, the term

2 "Facebook" does not even appear in some of Defendants' 13 produced documents, whereas the

3 term can be found more than 40 times in the first 50 pages of Mr. Niehaus' 631-page production

4 alone.  Indeed, the sheer volume of Mr. Niehaus' and Mr. Power's combined production, when

5 compared to Defendants' own meager disclosure, suggests something went awry in Defendants'

6 "systematic" efforts.  Facebook is entitled to relief.

### C. Defendants Offer No Excuse For Why Counsel Did Not Supervise Defendants' Document Search, Or Precisely How It Was Conducted.

9     Facebook also is entitled to an order compelling another search for documents by

10 Defendants because they do not deny that Defendants' attorneys were not involved in the earlier

11 search process, as they should have been.  "Attorneys must take responsibility for ensuring that

12 their clients conduct a comprehensive and appropriate document search."  *Qualcomm, Inc. v.*

13 *Broadcom Corp.*, No. 05 cv 1958-B (BLM), 2008 WL 66932, *9 (S.D. Cal. Jan. 7, 2008) (citing

14 Advisory Committee Notes to the 1983 Amendments to Fed. R. Civ. P. 26(g)).  *See also Cache*

15 *La Poudre Feeds, LLC v. Land O'Lakes, Inc*., 244 F.R.D. 614, 629 (D. Colo. 2007).  If the law

16 were otherwise, interested parties like Vachani being sued for significant damages could

17 potentially shield themselves from liability by simply claiming to all concerned, including their

18 own attorneys, that they searched for the relevant information, with no guarantees that they

19 actually had done so.  It is the attorneys' role in identifying potentially relevant documents and

20 reviewing them for relevance that guarantees otherwise.

21     Here, however, Facebook specifically noted in its motion that it is undisputed that

22 Defendants' attorneys had no role in supervising Defendants document and email collection

23 efforts.  *See* Mot. at 13-14.  It is telling that Defendants' Opposition does not deny this fact.

24 Given this silent admission, it is clear that supplementation with additional assurances from

25 counsel that a proper search was conducted is warranted.  *Victor Stanley, Inc. v. Creative Pipe,*

26 *Inc.*, 250 F.R.D. 251, 262 (D.Md. May 29, 2008).  As noted in Facebook's Opening Brief, under

27 similar circumstances to those in this case, the court in *Facebook, Inc. v. ConnectU LLC.*, No. C

28 07-01389 RS, (N.D. Cal.), required one of the defendants to either provide all information

responsive to interrogatories or provide a "verified declaration" in the event the defendant's "computer records do not contain additional responsive information." Mot., Ex. P. Here, the recent independent production by third parties of supposedly non-existent Power documents makes the need for such a verified declaration even more paramount.

Given that Defendants persist in their assertion that they performed an adequate search and found no additional responsive documents or other information, even while third parties continue to produce large volumes of documents that Defendants deny ever existed, Defendants should be required to file a declaration specifying the sources they searched, their search methodology, and the reasons for the absence of responsive documents and things (including why they continue to be produced by others).

### III. CONCLUSION

For the foregoing reasons, Facebook respectfully requests that the Court order Defendants to perform a thorough search of their records to locate all responsive documents in their possession, custody and control, and to either produce those documents or identify them on an appropriate privilege log. Defendants also should be ordered to provide a declaration detailing 1) the sources searched, 2) the methodology used for such search(es), and 3) the reason for the absence of responsive materials.

Date:  September 13, 2011                          ORRICK, HERRINGTON & SUTCLIFFE LLP

/s/ *Morvarid Metanat* /s/
Morvarid Metanat
Attorneys for Plaintiff
FACEBOOK, INC.