BURSOR & FISHER, P.A.
L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
2121 North California Blvd., Suite 1010
Walnut Creek, CA  94596
Telephone: (925) 482-1515
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
          swestcot@bursor.com

BURSOR & FISHER, P.A.
Scott A. Bursor (State Bar No. 276006)
369 Lexington Avenue, 10th Floor
New York, NY  10017
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik (State Bar No. 077785)
Michael S. Strimling (State Bar No. 96135)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA  94598
Telephone:  (925) 945-0200
Facsimile:  (925) 945-8792
E-Mail: aplutzik@bramsonplutzik.com
          mstrimling@bramsonplutzik.com

Attorneys for Defendants Power
Ventures, Inc. and Steve Vachani

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC., <br><br>                                  Plaintiff, <br><br> -against- <br><br> POWER VENTURES, INC. d/b/a POWER.COM, a California corporation; POWER VENTURES, INC. a Cayman Island Corporation, STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, an individual and/or business entity of unknown nature; DOES 2 through 25, inclusive, individuals and/or business entities of unknown nature, <br><br>                                 Defendants. | Case No. 5:08-CV-05780 JW <br><br> **DEFENDANT POWER VENTURES, INC.'S OPPOSITION TO FACEBOOK, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DISCOVERY RESPONSES** <br><br> Date: October 24, 2011 <br> Time: 9:00 a.m. <br> Courtroom 15, 18th Floor <br> Judge James Ware |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...........................................................................................................1

II.     ARGUMENT ................................................................................................................1

        A.      Power Has Already Produced the Documents and Information
                Facebook Seeks ................................................................................................1

        B.      The Documents and Information Facebook Requests Are Irrelevant
                Because They Are Completely Unrelated to Facebook's Remaining
                Claims...............................................................................................................3

        C.      Facebook Has Waived Its Right To Compel Production Of
                Documents Because Its Motion Is Untimely .............................................6

III.    CONCLUSION ...........................................................................................................7

## I.      **INTRODUCTION**

After doing virtually nothing in this case for six months, Facebook has filed three motions to compel since August 10.  This motion, however, has severe deficiencies.  *First*, Facebook already has the bulk of the information sought by this motion.  Power has already produced its voluminous source code as well as numerous other documents regarding how Power functions.  *See* 8/31/11 Joint Stipulation, Dkt. No. 134, at 1.  Moreover, on July 20, Facebook deposed Power's sole employee and CEO, Steve Vachani, and Mr. Vachani testified at length about the how Power accessed Facebook's website.

*Second*, the documents Facebook seeks are largely irrelevant to Facebook's remaining claims.  Specifically, in this motion, Facebook seeks technical and financial documents, but none of those documents establish any of the elements of Facebook's claims or that it was damaged in any way by Power's actions.

*Finally,* the motion is untimely.  By the time the Court considers this motion, it will have been over a year since Facebook propounded its discovery requests and more than ten months since Power served its responses.  Facebook makes no effort to explain why it has taken so long to raise these issues with Power and the Court.  The Court should deny Facebook's motion to compel.

## II.     **ARGUMENT**

### A.      **Power Has Already Produced the Documents and Information Facebook Seeks**

In its motion, Facebook asks the Court to order defendants to provide information regarding (a) the technical means by which Power accessed Facebook's website, (b) technical information on Power's proxy servers, including a list of exact IP addresses, and (c) Power's financial statements.  Facebook's Motion to Compel at 1, 5-6, 8-10.  Facebook, however, fails to tell the Court that it already possesses the bulk of this information.

*First,* Facebook seeks information regarding the technical means by which Power accessed Facebook's website.  Power has already produced its source code, the core of its business.  The source code as well as the other documents Power has produced in this case, such as the PowerScript Training documents and PowerScript Documentation Developer Manual, show

1    precisely how Power accessed Facebook's website.  Those documents constitute the best possible

2    information Power has to understand how it accessed Facebook's website.  Declaration of Steve

3    Vachani at ¶2.  In fact, Facebook's expert Lawrence Melling has spent more than seven full days

4    examining Power's source code beginning on August 23, 2011.  Declaration of L. Timothy Fisher

5    at ¶ 2.  Power also provided more than 1700 pages of the code to Facebook and its expert for their

6    review pursuant to Section 8(d) of the Protective Order on September 14, 2011.[1]  *Id.* at ¶ 3.

7    Moreover, during his deposition, Mr. Vachani testified at length about the process by which Power

8    accessed Facebook's website.  Declaration of Steve Vachani at ¶ 3.  Facebook already has detailed,

9    technical information regarding Power and should not be required to produce additional duplicative

10   information.

11        In addition, Facebook already has uncontroverted evidence that Power accessed its website

12   through proxy servers.  Therefore, it is unnecessary for Power to produce additional technical

13   information, such as a list of its IP addresses, and Facebook makes no effort to explain why it is

14   necessary for it to have the actual IP addresses and how that information is relevant to its claims.

15   In its motion, Facebook demonstrates its familiarity with Power's proxy system.  Facebook writes

16   that "Power employs 'hundreds maybe even more IP addresses,' including IP addresses associated

17   with proxy servers which were used to run the power.com website and which were used even when

18   Facebook sought to block Power."  Facebook's Motion to Compel at 13 (citing Cooper Decl. Ex. 1,

19   at 107:4-12; 330:1-331:14).  Referring to Mr. Vachani's deposition, Facebook writes, "Vachani has

20   fully admitted that the company employed a large range of IP addresses to communicate with the

21   Facebook website . . . Power continued to access the Facebook website by using a 'bank' of IP

22   addresses associated with proxy servers . . . ."  *Id.* at 2.  Facebook can establish that Power

23   accessed its website through its proxy servers.  These facts are uncontested, and Facebook

24   demonstrates that it is already familiar with the facts.  It is unnecessary for Power to produce

25   additional documents on these issues.

26

27   [1]        The 1700 pages of the source code provided by Power to Facebook pursuant to Section 8(d)
     of the Protective Order are merely the excerpts of the code requested by Facebook's expert.  The
28   complete source code is far more voluminous.

1    Finally, Facebook also seeks Power's financial information, but makes no effort to explain
2  how that information is remotely relevant to its remaining claims in this case.  Moreover, Mr.
3  Vachani already gave detailed testimony regarding the financial state of his company.  During his
4  deposition, Mr. Vachani explained that Power is no longer operational and acknowledged that he is
5  its sole employee.  *See* Facebook's Second Motion to Compel, Dkt. No. 129, at 5.

6    Additionally, Mr. Vachani specifically described the portion of Power's revenues it
7  received from Facebook operations.  Mr. Vachani testified that "well over 90 percent of our users
8  were Orkut users."  *See* Power's Opposition to Facebook's Second Motion to Compel, Dkt. No.
9  136, at 8.  In addition, "probably 99 percent of [2008 revenue] was generated from Orkut."  *Id.*  A
10  possible reason for these numbers is that the vast majority of Power's users were from India and
11  Brazil.  As Mr. Vachani indicated, "[W]e knew that over 90 percent or more [of our users] were
12  coming from India and Brazil."  *Id.* at 9.  Furthermore, Facebook operations provided almost no
13  revenue to Power.  In 2008, Power only received $1,000 to $2,000 from Facebook, "and that's
14  probably overestimating of total revenues that might have been generated from Facebook because
15  it was such a small amount."  *Id.*  This is the exact information Facebook seeks in its motion to
16  compel: "Power's profits and advertising revenue generated in conjunction with its unauthorized
17  access of Facebook's website."  Facebook's Motion to Compel at 1.

18    Facebook already possesses much of the information it seeks in this motion to compel.
19  Facebook has Power's source code and the deposition testimony of Power's sole employee and
20  CEO.  These sources reveal the manner in which Power accessed Facebook, how Power accessed
21  Facebook's proxy servers, the financial state of Power, and the portion of revenues Power derived
22  from Facebook operations.  The Court should not require Power to produce any additional
23  information.

**B.    The Documents and Information Facebook Requests Are
       Irrelevant Because They Are Completely Unrelated to
       Facebook's Remaining Claims**

26    Facebook's three remaining claims in this case are for alleged violations of the CAN-
27  SPAM Act, Computer Fraud and Abuse Act, and California Penal Code § 502.  *See* Dkt. No. 98 at

28

1   1.  The documents and information sought by Facebook, however, are largely irrelevant to its

2   remaining claims.[2]

3          *First*, under the CAN-SPAM Act, Facebook alleges that Power initiated an email with false

4   and misleading header information, a misleading "from" line, and a non-functioning return address.

5   *See* Facebook's First Amended Complaint, Dkt. No. 9, at 15-16.  It is undisputed, however, that

6   Facebook – not Power – initiated these messages and that the email headers were accurate.  *See*

7   Defendants' Motion for Summary Judgment, Dkt. No. 98, at 5-9, 12-14 (citing to the deposition of

8   Facebook's litigation counsel Craig Clark in which Mr. Clark admitted that he was not aware of

9   any instance where an email from an outside source was transmitted to a Facebook user's account

10  and that only Facebook or a Facebook user can transmit email messages to Facebook accounts).

11  Furthermore, the documents and information sought by Facebook are completely unrelated to

12  whether Facebook suffered any damages due to these messages, which it did not.  *See id.* at 10-11

13  (citing to testimony of Craig Clark in which Mr. Clark admitted that Facebook has no evidence that

14  it suffered any damage or loss).  Therefore, the information sought by Facebook's discovery

15  requests is entirely irrelevant to Facebook's CAN-SPAM Act claim.

16         *Second*, the information sought by Facebook is also irrelevant to its claim under the

17  Computer Fraud and Abuse Act ("CFAA").  In that cause of action, Facebook alleges that Power

18  accessed Facebook's systems in an unauthorized manner.  *See* Facebook's First Amended

19  Complaint, Dkt. No. 9, at 17-18.  However, a CFAA claim requires proof of the intent to defraud

20  and the taking of something of value.  *See* 18 U.S.C. § 1030(a)(4).  The documents and information

21  sought by Facebook have nothing to do with either aspect of the CFAA claim.  In fact, it is

22  undisputed that Power had no intent to defraud and that Power did not take anything of value from

23  Facebook's servers.  *See* Defendants' Motion for Summary Judgment, Dkt. No. 98, at 16-19.

24  Moreover, the information sought by Facebook is technical in nature and is not remotely probative

25  of intent, nor could it possibly establish whether Power took anything of value from Facebook.

26

27  [2]      At the time Facebook served the document requests and interrogatories at issue, it asserted
    eight claims against defendants.  In February, 2011, however, Facebook voluntarily dismissed five
28  of its claims.  *See* 2/18/11 Stipulation of Dismissal, Dkt. No. 97.

1   *Third*, to establish its claim under California Penal Code § 502, Facebook must demonstrate

2 that Power accessed Facebook's servers "without permission" and that Facebook suffered damages

3 as a result. California Penal Code § 502(c)(1)-(4) and (7).  This Court already ruled that, "Power

4 did not act 'without permission' within the meaning of Section 502 when Facebook account

5 holders utilized the Power website . . ." *See* 7/20/10 Order, Dkt. No. 89, at 18.  Nevertheless, the

6 Court held open the possibility that Facebook could establish that Power acted "without

7 permission" by providing its users with tools "designed to circumvent the technical barriers that

8 Facebook put in place to block Power's access to the Facebook website." *Id.* at 19.  But Facebook

9 already has information regarding how Power accessed its website.  Power has produced its source

10 code, and Facebook questioned Mr. Vachani regarding these technical issues at his July 20, 2011

11 deposition.  In fact, during his deposition, Mr. Vachani testified at length about the process by

12 which Power accessed Facebook's website.  Vachani Decl. ¶ 3.  Mr. Vachani also explained in his

13 declaration in support of Power's summary judgment motion that Power had multiple servers with

14 multiple IP addresses, and that Facebook only blocked one outdated IP.  *See* Exh. 1 to the 9/7/11

15 Declaration of Monte Cooper, Dkt. No. 140, at 327:9-16 ("Power.com has hundreds of IP

16 addresses . . . "); *see also* 5/9/11 Declaration of Steve Vachani in Support of Defendants' Motion

17 for Summary Judgment, Dkt. No. 98-2, at ¶¶ 11-12.  The block was "partial, incomplete, and

18 ineffective," and Power made no special efforts to bypass this IP block.  5/9/11 Declaration of

19 Steve Vachani in Support of Defendants' Motion for Summary Judgment, Dkt. No. 98-2, at ¶¶ 11-

20 12.

21   In addition to their inability to prove that Power acted "without permission," Facebook has

22 no evidence of any damages suffered as a result of Power's actions.  In fact, this Court found that

23 any evidence of damages "is likely to be in Facebook's possession and not Power's" *See* 7/20/10

24 Order, Dkt. No. 89, at 7-8.  Facebook's current requests are immaterial to their §502 claim and

25 involve issues Facebook has already explored in detail.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.  Facebook Has Waived Its Right To Compel Production Of Documents Because Its Motion Is Untimely

Motions to compel production of documents must be timely.  When the motion is untimely, "Failure to timely file a motion to compel will be construed as a waiver . . . ."  *Johnson v. Dovey*, 2011 WL 802035, at *6 (E.D. Cal. Feb. 11, 2011).

It is within the Court's "broad discretion" to determine the timeliness of a motion to compel document production.  *Aristocrat Tech. v. Int'l Game Tech.*, 2009 WL 3573327, at *1 (N.D. Cal. Oct. 30, 2009) (stating that in the context of deciding motions to compel, district courts have "broad discretion" over discovery matters).  This is a fact-intensive inquiry.  *See, e.g., Murata Mfg. Co. v. Bel Fuse, Inc.*, 242 F.R.D. 470, 475 (N.D. Ill. 2007) ("[The timeliness of motions to compel] must necessarily be found in the entire complex of circumstances that gave rise to the motion, and what is untimely in one case may not be in another.").  Motions brought months after the initial discovery request are often untimely.  *See, e.g., Haviland v. Catholic Health Initiatives-Iowa Corp.*, 692 F. Supp.2d 1040, 1044-45 (S.D. Iowa 2010) (finding a motion untimely where fifteen months lapsed between the initial production of documents and the filing of a motion); *Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Services North America, L.L.C.*, 2004 WL 3021842, at *4 (N.D. Ill. Dec. 30, 2004) (finding a motion untimely where it was brought near the end of discovery, and the parties failed to make "a good faith effort to resolve discovery disputes before filing a motion to compel"); *Everett v. Aldi, Inc.*, 2009 WL 940379, at *2 (N.D. Ind. Apr. 6, 2009) (finding a motion untimely where the moving party provided "no new explanations for the delay, simply citing a litany of ongoing problems with communication and cooperation . . . .").

District courts consider several guidelines to make their determination, such as "(i) how long was the delay; (ii) was there an explanation for it; and (iii) what happened during the delay." *Everett*, 2009 WL 940379, at *2.  Applying these guidelines, Facebook's motion is untimely.  By the time this motion is heard by the Court on October 24, it will have been an entire year since Facebook served its interrogatories and document requests on Power on October 22, 2010 and more than ten months since Power responded on December 15, 2010.  Facebook has also failed to offer any explanation for the delay in raising these issues with the Court.  In fact, Facebook did not

1   even begin to meet and confer with Power about the responses until six months after Power served

2   its responses and waited almost another four months to file its motion to compel.

3          Ultimately, Facebook has waived its right to relief and cannot explain why it needed over

4   half a year to determine that it was unsatisfied with Power's original responses.

5   **III.    <u>CONCLUSION</u>**

6          For the reasons set forth above, defendant Power respectfully requests that the Court deny

7   Facebook's motion to compel.

8   Dated:  September 21, 2011                    BURSOR & FISHER, P.A.

9

10                                              By_____/s/_____
                                                      L. Timothy Fisher
11
                                                L. Timothy Fisher (State Bar No. 191626)
12                                              Sarah N. Westcot (State Bar No. 264916)
                                                2121 North California Blvd., Suite 1010
13                                              Walnut Creek, CA  94596
                                                Telephone:  (925) 482-1515
14                                              Facsimile:  (925) 407-2700
                                                E-Mail:  ltfisher@bursor.com
15                                                      swestcot@bursor.com

16                                              BURSOR & FISHER, P.A.
                                                Scott A. Bursor (State Bar No. 276006)
17                                              369 Lexington Avenue, 10th Floor
                                                New York, NY  10017
18                                              Telephone:  (212) 989-9113
                                                Facsimile:   (212) 989-9163
19                                              E-Mail:  scott@bursor.com

20                                              BRAMSON, PLUTZIK, MAHLER &
                                                BIRKHAEUSER, LLP
21                                              Alan R. Plutzik (State Bar No. 77785)
                                                Michael S. Strimling (State Bar No. 96135)
22                                              2125 Oak Grove Road, Suite 120
                                                Walnut Creek, CA  94598
23                                              Telephone:  (925) 945-0200
                                                Facsimile:  (925) 945-8792
24                                              E-Mail: aplutzik@bramsonplutzik.com
                                                      mstrimling@bramsonplutzik.com
25
                                                *Attorneys for Defendants Power*
26                                              *Ventures, Inc. and Steve Vachani*

27

28