1   I. NEEL CHATTERJEE (STATE BAR NO. 173985)
    nchatterjee@orrick.com
2   MONTE M.F. COOPER (STATE BAR NO. 196746)
    mcooper@orrick.com
3   THERESA A. SUTTON (STATE BAR NO. 211857)
    tsutton@orrick.com
4   MORVARID METANAT (STATE BAR NO. 268228)
    mmetanat@orrick.com
5   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
6   Menlo Park, California  94025
    Telephone:    650-614-7400
7   Facsimile:    650-614-7401

8   Attorneys for Plaintiff
    FACEBOOK, INC.
9

10                   UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13

14  FACEBOOK, INC.,                          Case No. 5:08-cv-05780-JW

15            Plaintiff,                      **REPLY MEMORANDUM IN SUPPORT**
                                              **OF FACEBOOK'S MOTION TO**
16        v.                                  **COMPEL THE PRODUCTION OF**
                                              **DOCUMENTS AND DISCOVERY**
17  POWER VENTURES, INC., a Cayman Island     **RESPONSES FROM DEFENDANT**
    corporation; STEVE VACHANI, an individual; **POWER VENTURES, INC.**
18  DOE 1, d/b/a POWER.COM, DOES 2-25,
    inclusive,                                Date:        October 24, 2011
19                                            Time:        9:00 a.m.
              Defendants.                     Judge:       Hon. James Ware
20                                            Courtroom:   15, 18th Floor

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
 SUTCLIFFE LLP
 ATTORNEYS AT LAW
  SILICON VALLEY

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ..................................................................................................... 2

　　A.   Power's Failure To Address Recent Third Party Productions Underscores The Deficiencies In Its Own Production ................................................................. 2

　　B.   Power Failed To Address Its Erroneous Reliance of Fed.R.Civ.P. 33(d) ............... 4

　　C.   Power Has Not Already Produced All Of The Documents Facebook Seeks .......... 5

　　D.   Faceback Has Shown How The Documents Are Relevant ................................... 8

　　E.   Facebook Did Not Waive Its Right To Move To Compel ................................... 9

III.   CONCLUSION ................................................................................................. 11

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

REPLY MEMO. ISO FACEBOOK'S MTC THE PROD.
OF DOCUMENTS AND DISCOVERY RESPONES
CASE NO. 5:08-CV-05780-JW

1

2

**TABLE OF AUTHORITIES**

**Page(s)**

3   CASES

4   *Byrnes v. Jetnet Corp.*,
5        111 F.R.D. 68 (M.D.N.C. 1986) ........................................................................................ 10

6   *F.D.I.C. v. Garner*,
        126 F.3d 1138 (9th Cir. 1997) ......................................................................................... 10

7   *Facebook, Inc. v. Maxbounty, Inc.*,
8        274 F.R.D. 279 (N.D. Cal. 2011) ...................................................................................... 2

9   *Financial Bldg. Consultants, Inc. v. Am. Druggists, Ins. Co.*,
        91 F.R.D. 59 (N.D. Ga. 1981) ........................................................................................... 8
10

11  *Gault v. Nabisco Biscuit Co.*,
        184 F.R.D. 620 (D. Nev. 1999) ....................................................................................... 10

12  *Govas v. Chalmers*,
13       965 F.2d 298 (7th Cir. 1992) ............................................................................................. 5

14  *Kendrick v. Heckler*,
        778 F.2d 253 (5th Cir. 1985) ..................................................................................... 10, 11
15

16  *Multiven, Inc. v. Cisco Systems, Inc.,*
        725 F. Supp. 2d ............................................................................................................ 8, 9

17  *Oppenheimer Fund, Inc. v. Sanders*,
18       437 U.S. 340 (1978) .......................................................................................................... 6

19  *Petroleum Ins. Agency, Inc. v. Hartford Accident & Indemn. Co.*,
        106 F.R.D. 59 (1985) ....................................................................................................... 10
20

21  *Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Inv. Corp.*,
        711 F.2d 902 (9th Cir. 1983) ............................................................................................. 4

22  *Riley v. United Air Lines, Inc.*,
23       32 F.R.D. 230 (S.D.N.Y. 1962) ....................................................................................... 11

24  STATUTES

25  Fed. R. Civ. P. 26(b) ......................................................................................................... 7, 9

26  Fed. R. Civ. P. 26(b)(1) ........................................................................................................ 6

27  Fed. R. Civ. P. 33(d)(1) ......................................................................................................... 4

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-ii-

REPLY MEMO. ISO FACEBOOK'S MTC THE PROD.
OF DOCUMENTS AND DISCOVERY RESPONES
CASE NO. 5:08-CV-05780-JW

**TABLE OF AUTHORITIES**

**Page(s)**

**OTHER AUTHORITIES**

CAN-SPAM Act, the Computer Fraud and Abuse Act,
   and California Penal Code § 502(c) .......................................................................... 1, 6, 8, 9

7 James W. Moore, *Moore's Federal Practice* § 34.02[5][b][i] (3d ed. 2011) ............................. 7

## I.      INTRODUCTION

Facebook's Motion to Compel the Production of Documents and Discovery Responses from Defendant Power Ventures, Inc. should be granted for each of the following reasons:

1. Third party witnesses have now produced nearly 2400 pages of highly relevant documents that Power has not produced, and which Power denies even exist;

2. Power has not produced a single document in response to Request Nos. 8, 21-28, 36, 40-41, 56, or 66, even though third parties have done so;

3. Power's responses to Interrogatory Nos. 1-3 and 13-15 improperly cite Rule 33(d) without specification of documents, and leave Facebook to guess which production documents Power claims are responsive to the interrogatories;

4. Power does not provide responsive information to Interrogatories Nos. 7 or 19, even though each Interrogatory requests information crucial to Facebook's remaining claims for violations of the CAN-SPAM Act, the Computer Fraud and Abuse Act, and California Penal Code § 502(c).

Instead of addressing these critical problems with its discovery responses, Power, in a cursory Opposition Brief, argues (a) that it already produced "the bulk" of everything Facebook seeks through its production of source code, and via self-serving deposition testimony of co-defendant Steve Vachani (Dkt. No. 149, at 1-3); (b) that the documents are "largely" irrelevant because it contends the only information that matters in this case is that which it has cited in its pending motion for summary judgment (*id.* at 4-5);  and (c) that Facebook's motion is untimely, and that it waived its right to compel production (*id.* at 6-7).  Power's arguments are baseless.

The documents and information which should be produced are highly relevant.  Power's production of source code is incomplete, and in any event does not provide the information sought through the motion to compel.  Likewise, Vachani's self-serving testimony cannot substitute for missing relevant documents.  Because the motion to compel also is timely, the Court should compel Power to produce documents responsive to Requests for Production Nos. 8, 21-28, 36, 40-41, 56, and 65-66, and also order Power to supplement its responses to Interrogatories Nos. 1-3, 7, 13-15, and 19.

/ /

/ /

/ /

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-1-

REPLY MEMO. ISO FACEBOOK'S MTC THE PROD.
OF DOCUMENTS AND DISCOVERY RESPONES
CASE NO. 5:08-CV-05780-JW

## II.   **ARGUMENT**

### A.   **Power's Failure To Address Recent Third Party Productions Underscores The Deficiencies In Its Own Production**

In its opening papers, Facebook highlighted the absurdity of Power's assertion that it has satisfied its discovery obligations by producing only 13 documents and source code in response to 89 document requests, when two third-party witnesses produced in excess of 1,000 pages of highly relevant documents originally generated by Power.[1] *See* Dkt. No. 138, ("Mot.") at 11-12. In its Opposition, Power does not acknowledge these third party productions, deny they are relevant to Facebook's document requests, or explain why Power has not, itself, produced any of these materials.  Power's silence concerning these problems, by itself, establishes that Facebook is entitled to relief.

First, the mere discrepancy between Power's production of 13 documents (totaling 90 pages) and the production from third parties totaling 2400 pages, suggests that Power could not possibly have produced all of the responsive and relevant materials Facebook seeks.  For instance, Interrogatory No. 1 asks Power to provide details regarding "the process by which [it] accesses [or] accessed" the Facebook website.  Mot. at 8, 15.  Such information clearly is relevant to Facebook's CAN-SPAM claims, since it seeks information about what efforts Power took to obtain user information from Facebook's own system in order to later send Facebook users commercial solicitations via electronic mail inviting them to join Power's own website. *See Facebook, Inc. v. Maxbounty, Inc.*, 274 F.R.D. 279, 283-84 (N.D. Cal. 2011) (noting that a third party's sending of messages to Facebook via use of Facebook's users' "walls," "news feeds," and other systems could be actionable under CAN-SPAM, since "these transmissions require at least some routing activity on part of Facebook").  Yet, citing Fed. R. Civ. P. 33(d), Power evasively responds by directing Facebook to Power's "business records including its June 2007

---

[1] Since Facebook filed its Motion to Compel, it has received additional responsive materials from third parties.  In total, these third parties have produced nearly 2,400 pages consisting of more than 500 documents.  Power's own production does not include the overwhelming majority of these documents, though Vachani testified that Power never purged its files.  Declaration of Morvarid Metanat in Support of Reply Memorandum re Motion to Compel ("Metanat Decl."), Ex. 30 at 142:11-143:10.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

REPLY MEMO. ISO FACEBOOK'S MTC THE PROD.
OF DOCUMENTS AND DISCOVERY RESPONES
CASE NO. 5:08-CV-05780-JW

1   PowerScript Training document, and its PowerScript Documentation Developer manual." *See*

2   Mot. at 8 (quoting Power's response to Interrogatory No. 1).  This response is useles, as the two

3   specific documents Power identifies do not discuss how Power actually accessed the Facebook

4   website (or even mention Facebook at all). *See id.* at 10.  Nor does Power make any effort to

5   identify what other "business records" it is referring to. *Id.*

6          In contrast, **third-party witnesses** (all former Power employees) have produced hundreds

7   of documents, such as a "Power Technology Overview," a Power Script Documentation

8   Developer manual that includes revisions not reflected in the copy produced by Power, and an

9   email copying Mr. Vachani and other Power employees containing an evaluation of Facebook

10  Connect, that provide information that is clearly responsive to Interrogatory No. 1 (not to mention

11  other discovery requests). *See*, *e.g.*, Metanat Decl. Exs. 31-37.  Not one of these documents has

12  been independently produced by Power itself, and their recent production by the third parties

13  belies Power's assertion that Facebook has all of the documents it seeks. *See* Opp'n at 1-3.

14  Indeed, their mere existence completely undermines Power's argument set forth in other

15  pleadings that such documents "simply do not exist."  Dkt. No. 136, at 1.

16         Nor does Power's separate production of source code or its production of Mr. Vacahni for

17  a deposition alleviate its responsibility to search for and produce other responsive documents.

18  For one thing, as of September 28, 2011, Power still has not produced all of the critical databases

19  necessary for Facebook's expert to understand and evaluate how Power used its software to

20  access Facebook and to send Facebook users electronic mail messages, even though Facebook

21  has repeatedly brought this deficiency to Power's attention. *See* Metanat Decl. Exs. 38, 39.  Nor

22  could the source code possibly include all of the information sought by the Requests for

23  Production or Interrogatories, because some of them seek information about **why** Power used

24  certain technical mechanisms, such as new IP addresses, to access Faebook, not merely how

25  Power employed such procedures. *See*, *e.g.*, Dkt. No. 140, Ex. 5 (Request Nos. 21, 24).   Further,

26  Power has never remotely attempted to supplement its Interrogatory Responses like Interrogatory

27  No. 3 to specify which routines in the PowerScript software performed the actions specified in

28  Facebook's discovery requests. *See id.* Ex. 11 (quoting Power's Response to Interrogatory No.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 3 -

REPLY MEMO. ISO FACEBOOK'S MTC THE PROD.
OF DOCUMENTS AND DISCOVERY RESPONES
CASE NO. 5:08-CV-05780-JW

1   3).  Mr. Vachani's deposition testimony cannot somehow satisfy Facebook's requests for such

2   information, as Power suggests, because he admitted he was not a programmer, and had no

3   personal knowledge of the how the PowerScript code actually functioned to send Facebook users

4   the relevant solicitations to join Power.  Metanat Decl. Ex. 30 at 12:24-13:15; 14:1-5; 182:16-

5   186:6;  189:10-191:10;  195:3-197:13; 203:19-206:22; 209:11-15; 212:19-213:4; 254:2-15;

6   256:8-257:10; 257:22-267:22; 273:6-274:10.

7          Simply stated, Facebook has not received the documents and information it seeks and is

8   entitled to receive.  Given the ability of third parties to locate crucial missing documentation,

9   Power has offered no valid excuse for why it should not be ordered to produce its own missing

10  documents, or to provide the missing information from its Interrogatory responses.

11          **B.      Power Failed To Address Its Erroneous Reliance of Fed.R.Civ.P. 33(d)**

12          Power also should be compelled to supplement its responses to Interrogatory Nos. 1-3 and

13  13-15 to the extent such responses evasively and improperly cite to Fed. R. Civ. P. 33(d).  In its

14  motion, Facebook pointed out that Power's citation to its unspecified business records does "not

15  provide the information sought by the Interrogatories, and in fact offer[s] no details at all."  Mot.

16  at 16. *See also Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Inv. Corp.*, 711 F.2d 902, 906

17  (9th Cir.  1983) (generic references via former Rule 33(c) (now Rule 33(d)) to production of

18  "partnership books of account, banking accounts, records, computer printouts, ledgers and other

19  documents" was not a proper use of the option to produce business records).

20          In response, Power does not deny – or even address – its failure to comply with Rule

21  33(d).  That fact alone establishes that Facebook is entitled to relief.  *Rainbow Pioneer No. 44-18-*

22  *04A,* 711 F.2d at 906.  Moreover, the relatively vast production by four third-party witnesses

23  underscores just how problematic Power's use of Rule 33(d) is.  Nothing Power produced

24  provides information responsive to Interrogatories Nos. 1-3 or 13-15, and Facebook is left to

25  guess which "business records" Power is purporting to rely on.  *See* Mot. at 16 (citing [2]Cooper

26  Decl. Exs. 3, 12-20).  The Rule itself prohibits such generic citation.  *See* Fed. R. Civ. P. 33(d)(1)

27  (requiring the citation to business records to contain "sufficient detail to enable the interrogating

28  ─────────────────
    [2] References to "Cooper Decl." can be found at Docket No. 140.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

1    party to locate and identify them as readily as the responding party could").

2        Importantly, given the disparity between Power's production and that of its former

3    employees, Facebook has no guarantee that it even has the correct business records from which to

4    obtain the complete responses to which it is entitled.  This too reflects supplementation is

5    required.  It is well-settled that the use of Rule 33(d) is improper when the answer cannot actually

6    be ascertained from the records offered, which clearly is the case here since third parties are

7    producing business records that supposedly do not even exist and are more informative than those

8    which Power has offered.  *See*, *e.g.*, *Govas v. Chalmers*, 965 F.2d 298, 302 (7th Cir. 1992)

9    (plaintiffs failed to label or organize nearly 9000 documents they jointly produced so as to

10   disclose which plaintiff had originally received documents, and because this information was

11   important to issues and not apparent from the face of the documents, plaintiffs had exclusive

12   access to information and could not rely on option to produce).

13       **C.    Power Has Not Already Produced All Of The Documents Facebook Seeks**

14       Power also nonsensically argues that Facebook "already possess much of the information

15   is seeks in this motion to compel."  Opp'n at 3.  Yet, in its opening brief, Facebook identified

16   specific types of documents that Power failed to produce and described their relevance to

17   Facebook's claims.  See, *e.g.*, Mot. at 13-14.  For instance, Facebook seeks an order compelling

18   production of "[i]nformation related to Power's access of Facebook's website, and use of IP

19   addresses and proxy servers."  Mot. at 13.  This information is critical to determining how and by

20   what means Power gained unauthorized access to the Facebook website, and how Power later

21   circumvented Facebook's technical measures implemented to block Power's access.  Inasmuch as

22   this Court has ruled that "to the extent that Power circumvented Facebook's technical barriers,

23   Power may be held liable for violation of [California Penal Code] Section 502," there can be no

24   argument that the request seeks highly relevant information directly related to at least one of the

25   claims at issue.  *See*  Dkt. No. 89, at 18.

26       However, Power without explanation continues to refuse to provide such information,

27   even though it admits it documented the requested IP address information.  Mot. at 13 (citing

28   Cooper Decl. Ex. 1, at 107:4-12; 330:1-331:14).  Instead, Power re-characterizes Facebook's

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 5 -

1   requests as simply calling for "(a) technical means by which Power accessed Facebook's website;

2   [and] (b) technical information on Power's proxy servers, including a list of exact IP addresses."

3   Opp'n at 1. Power then concludes that it has produced "the bulk" of information that Facebook

4   seeks via its production of the 13 documents and source code. *Id.* Setting aside the obvious

5   problem that the recent third party productions prove Power has not actually produced the "bulk"

6   of its own responsive documents or information, Power does not explain why it does not need to

7   produce any other responsive materials that explain precisely how and when it used proxy servers

8   to change its website's IP addresses to avoid Facebook's efforts to block Power's access of

9   Facebook's own website. To the extent relevant documents exist, Power must produce them.

10  Fed. R. Civ. P. 26(b)(1). It may not unilaterally self-select responsive documents and withhold

11  the rest. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (the concept of

12  relevance is to be construed broadly to encompass any matter that bears on, or reasonably could

13  lead to other matters that bear on, any issue that is or may be in the case).

14          Power's related argument that it already produced its source code and that the code shows

15  "precisely how Power accessed Facebook's website" also fails to provide a defense to its non-

16  production of other relevant information. Opp'n at 1-2. As noted, although Power has produced

17  some code, it refuses to produce critical evidence contained in one or more code databases,

18  despite this Court's August 2011 Order requiring such production (Dkt. No. 127), and Facebook's

19  repeated requests for such documentation and information. Metanat Decl. Exs. 38-39. Indeed,

20  Power is withholding, at least, (1) the Power database used in conjunction with Power's access of

21  the Facebook website and spamming of its users; and (2) the missing Power database with the

22  local developer's name "Power" that also was used in conjunction with these activities. *Id.*

23  Without access to these databases, therefore, Facebook is being deprived of its ability to fully

24  analyze how Power accessed the Facebook website, sent solicitations to Facebook users to join

25  Power, and circumvented Facebook's security measures – all central issues in this case and

26  relevant to its remaining CAN-SPAM, CFAA and Penal Code § 502(c) claims. *See* Cooper Decl.

27  Ex. 5 at Nos. 8, 21-28, 65-66; Ex. 10 at Nos. 1-3, 7. These missing components also are relevant

28  to Power's responses to Interrogatories Nos. 7 and 19, which seek information on the technical

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 6 -

REPLY MEMO. ISO FACEBOOK'S MTC THE PROD.
OF DOCUMENTS AND DISCOVERY RESPONES
CASE NO. 5:08-CV-05780-JW

1    process Power implemented to access Facebook and avoid Facebook's blocks, as well as and save

2    Facebook user data on Power's servers.  Cooper Decl. Ex. 10.  None of this information has been

3    offered to Facebook to date, despite its importance and clear relevance.

4         Power also incorrectly argues that Facebook "has uncontroverted evidence that Power

5    accessed its website through proxy servers" and, thus, it is "unnecessary for Power to produce

6    additional technical information, such as a list of its IP addresses."  Opp'n at 2.  Tellingly, Power

7    does not argue that the information is irrelevant.  In fact, Power merely admits that it used proxy

8    servers to access Facebook after Facebook blocked it from further connection to the Facebook

9    website, but does clarify when or how it actually used them to circumvent Facebook's block –

10   presumably because such information undermines its arguments.  *See id.*  How Power used its

11   proxies, what IP addresses it used as part of this practice, and when it used them, is the

12   information that Facebook is seeking – not just confirmation that Power employed proxy servers.

13   Facebook is entitled to all relevant evidence, not just the subset Power unilaterally decided to

14   provide.  Fed. R. Civ. P. 26(b).

15        Finally, Power also argues that Facebook has not explained why it is entitled to financial

16   or advertising information as requested by Request for Production Nos. 40, 41 and 56.  Opp'n at

17   3.  To the contrary, in its opening papers Facebook described precisely how financial data

18   regarding Power's advertisements will establish how Power has been unjustly enriched and,

19   further, how Power's financial condition is relevant to the calculation of punitive damages.  Mot.

20   at 13-14; Cooper Decl. Exs. 5 at Nos. 40-41, and 6 at No. 56.  In response, Power claims only that

21   Vachani's testimony on these subjects was enough to satisfy its production obligations (Opp'n at

22   2), and that Facebook has no evidence of damages.  Opp'n at 5.  The revenue documents

23   Facebook seeks are the best evidence of both issues, and "Rule 34 has long permitted a party to

24   obtain documents or other intangible things from another party without taking a deposition."  7

25   James W. Moore, *Moore's Federal Practice* § 34.02[5][b][i] (3d ed. 2011).  *See also* Mot. at 13-

26   14.  Facebook should not be required to rely on Vachani's self-serving testimony.  It is entitled to

27   view the raw evidence that supports its damages arguments.  Fed. R. Civ. P. 26(b).

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 7 -

**D.** **Facebook Has Shown How The Documents Are Relevant**

Power separately argues that it should not be compelled to produce additional materials because the information sought is "largely" irrelevant, ostensibly because Facebook dismissed some of its claims. Opp'n at 4, fn 2. As already noted, the requests and interrogatories for which Facebook seeks production all relate to the remaining CAN-SPAM, CFAA and Penal Code § 502(c) claims, and not those that have been dismissed. Thus, all of the information sought is highly relevant. Mot. at 13-14.

Power also self-servingly and incorrectly argues that the documents sought are not related to Facebook's CAN-SPAM claim, because Power argues that Facebook, rather than Power, initiated Event invitations that resulted in commercial solicitations of Facebook users to join Power. Opp'n at 4. It is enough to note that Power's own arguments as to what the evidence shows is hardly a legitimate basis to deny production of relevant documents. *Cf. Financial Bldg. Consultants, Inc. v. Am. Druggists, Ins. Co.*, 91 F.R.D. 59, 61 (N.D. Ga. 1981) ("what is relevant during pretrial discovery and what is admissible during trial are two different things, the former being broader than the latter"). In fact, **how** Power accessed the site is relevant to Facebook's ability to establish who actually initiated the Facebook Events causing emails to be sent to Facebook's users to invite them to join Power. Mot. at 13. Rather than produce the best evidence of how Power's website operated, Power points to defendant Vachani's self-serving testimony about how the site worked. Opp'n at 2, 5. In fact, Vachani admitted in his deposition that he is not competent to testify about the technical operations of the Power website. *See* Metanat Decl. Ex. 30 at 12:24-13:15; 14:1-5; 182:16-186:6; 189:10-191:10; 195:3-197:13; 203:19-206:22; 209:11-15; 212:19-213:4; 254:2-15; 256:8-257:10; 257:22-267:22; 273:6-274:10. Facebook should not be limited to Vachani's testimony to prove its CAN-SPAM claim.

Power further argues that the information sought also does not support Facebook's CFAA claim, because the CFAA requires an intent to defraud. Opp'n at 4. Under the CFAA, fraud "simply means wrongdoing and does not require proof of common law fraud." *Multiven, Inc. v. Cisco Systems, Inc.,* 725 F. Supp. 2d at 892 (*citing Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc*., 556 F.Supp.2d 1122, 1131 (E.D.Cal. 2008)). Power's actions

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

REPLY MEMO. ISO FACEBOOK'S MTC THE PROD.
OF DOCUMENTS AND DISCOVERY RESPONES
CASE NO. 5:08-CV-05780-JW

1    demonstrate a culpable state of mind, as it knew its conduct was "wrongful." *Multiven*, 725

2    F.Supp.2d at 892.  Dkt. No 54.¶¶ 29-30; Cooper Decl. Ex. 1 at 274:13-275:16; 276:7-13; 279:16-

3    280:24.  Thus, evidence of Power's efforts to circumvent Facebook's security measures is directly

4    relevant to its CFAA claim.  Cooper Decl. Ex. 5 at Nos. 8, 21-28, 65-66; Ex. 10 at Nos. 1-3, 7.

5    That is precisely the information that Facebook seeks in the requests subject to this motion.

6         For this same reason, the information Facebook seeks to support its CFAA claim also

7    supports the Section 502(c) claim.  Namely, Power accessed Facebook user information without

8    permission.  Mot. at 13.  In an effort to avoid that fact, Power selectively quotes this Court's

9    July 20, 2010 Order to suggest the Court already has found that Power had not acted "without

10    permission."  Opp'n at 5.  In fact, the Court found that "accessing or using a computer, computer

11    network, or website in a manner that overcomes technical or code-based barriers is 'without

12    permission' and may subject a user to liability under Section 502."  Dkt. No. 89 at 18:15-17.  As

13    noted, this information is precisely the type of responsive information Power is refusing to

14    produce.  For example, Requests 22- 24 call for information related to Power's access to the

15    Facebook website after Facebook implemented technical measures to block such access.  Cooper

16    Decl. Ex. 5.  Interrogatory No. 7 seeks similar information, calling for a description of the process

17    by which Power continued to access the Facebook website following Facebook's IP blocking

18    measures.  Cooper Decl. Ex. 10.  Power's acknowledgement of its use of proxies is insufficient,

19    as it does not explain why or when they changed IP addresses *after* they became aware they had

20    been blocked by Facebook.  Power must be compelled to provide all relevant data concerning

21    how it accessed Facebook after Facebook blocked Power.  Fed. R. Civ. P. 26(b).

22    **E.**    **Facebook Did Not Waive Its Right To Move To Compel**

23         Power half-heartedly argues that Facebook waived its right to seek an order compelling

24    production and supplemental interrogatory responses, because its motion supposedly is untimely.

25    Opp'n at 6-7.  This argument also is frivolous.

26    / /

27    / /

28    / /

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

REPLY MEMO. ISO FACEBOOK'S MTC THE PROD.
OF DOCUMENTS AND DISCOVERY RESPONES
CASE NO. 5:08-CV-05780-JW

1    Power does not deny that Facebook moved to compel less than two months after it

2 deposed Vachani on July 20, 2011.[3]  As Facebook previously noted, because it had been

3 repeatedly told before July 20 that all responsive documents to both its first and second sets of

4 Requests for Production had been produced, Facebook could not know that others did, in fact,

5 exist until Vachani's testimony proved that Power had not been diligent in searching for

6 responsive information.  See Mot. (Dkt. No. 129) at 5 n.1 & 9-11.  Clearly, a motion to compel

7 brought within two months of when the party first learned of the facts proving that earlier

8 discovery  responses were incomplete and inadequate is "timely."  *See Petroleum Ins. Agency,*

9 *Inc. v. Hartford Accident & Indemn. Co.*, 106 F.R.D. 59, 63 (1985) (no waiver of objection to

10 nonproduction of documents when party seeking them was unaware of their existence; counsel is

11 entitled to rely upon the prior representations of counsel that all responsive documents were being

12 produced); *F.D.I.C. v. Garner*, 126 F.3d 1138, 1146 (9th Cir. 1997) (motion to compel  brought

13 two years after FDIC served administrative subpoenas seeking information from  defendants was

14 not untimely, in part because appellants failed to cooperate and ignored all  requests to comply

15 with the subpoenas).

16    Moreover, at the time Facebook moved to compel, the deadline for completing discovery

17 in this case was **November 28, 2011**.  Dkt. No. 116.  That deadline has now been further

18 extended to January 20, 2012.  Dkt. No. 142.  That means, pursuant to Civ. L.R. 37-3, the present

19 motion would be timely even if it were brought on January 27, 2012, nearly five months after its

20 actual filing date.  As other courts have recognized, "A motion to compel filed during the

21 discovery period would rarely be considered untimely."  *Gault v. Nabisco Biscuit Co.*, 184 F.R.D.

22 620, 622 (D. Nev. 1999).  *See also Kendrick v. Heckler*, 778 F.2d 253, 258 (5th Cir. 1985)

23 (motion to compel that was "filed within the discovery cut-off fixed by the district court" was not

24 untimely); *Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 70-71 (M.D.N.C. 1986) (same).  Indeed, the

25 fact that Facebook's motion to compel is brought months before the close of discovery is what

26 / /

27

28
_____
[3] Power also ignores that at least some of the discovery subject to Facebook's motion (*i.e*., its
Second Set of Requests for Production, Nos. 51-89) was served on June 3, 2011.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

REPLY MEMO. ISO FACEBOOK'S MTC THE PROD.
OF DOCUMENTS AND DISCOVERY RESPONES
CASE NO. 5:08-CV-05780-JW

1   distinguishes this case from virtually all of the situations discussed in Power's own cited

2   authority, where waivers were held to have occurred.  See Opp'n at 6-7 (citing cases).

3       Finally, Facebook did not unjustifiably wait months after receiving Power's responses to

4   move to compel, as Power argues.  See Opp'n at 7.  Power did not even produce any documents

5   responsive to Facebook's First Set of Document Requests and First Set of Interrogatories until

6   February 3, 2011, because it insisted that the Court first needed to enter a Protective Order.

7   Metanat Decl. Ex. 40 (*See*  Response No. 3)  After February 3, the parties engaged in extensive

8   discussions about document production in which Facebook was assured as late as May 31, 2011

9   that "no documents other than raw source code were withheld."  Metanat Decl. Ex. 41.  Power

10  then served responses to Facebook's Second Set of Document Requests on July 5, 2004.  Metanat

11  Decl. Exs. 42, 43.  To date, Power has failed to produce any documents in response to these

12  requests.  Given that Power and its counsel represented for months that they had made a diligent

13  search for documents, only to have Vachani reveal at his deposition that was not the case, there

14  was no unwarranted delay by Facebook in seeking relief.  A motion to compel is not untimely

15  when its filing has been delayed by earlier good faith efforts to secure the information through

16  negotiations, or from other sources such as depositions.  *Kendrick* ,778 F.2d at 258; *Riley v.*

17  *United Air Lines, Inc*., 32 F.R.D. 230, 232-33 (S.D.N.Y. 1962).  Facebook's motion is timely as a

18  matter of law.

19  **III.**   **CONCLUSION**

20      For *the* foregoing reasons, and those set forth in its opening papers, Facebook requests

21  that the Court grant its Motion to Compel and order Power to produce documents in response to

22  Requests for Production Nos. 8, 21, 22, 23, 24, 25, 26, 27, 28, 36, 40, 41, 56, 65, & 66 and

23  supplement its responses to Interrogatory Nos. 1, 2, 3, 7, 13, 14, 15, and 19.

24  Dated: September 28, 2011                          Orrick, Herrington & Sutcliffe LLP

25

26                                          By:   _/s/ Monte M.F. Cooper_
                                                  MONTE M.F. COOPER
27                                                Attorneys for Plaintiff
                                                  FACEBOOK, INC.
28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 11 -

REPLY MEMO. ISO FACEBOOK'S MTC THE PROD.
OF DOCUMENTS AND DISCOVERY RESPONES
CASE NO. 5:08-CV-05780-JW