BURSOR & FISHER, P.A.
L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
        swestcot@bursor.com

BURSOR & FISHER, P.A.
Scott A. Bursor (State Bar No. 276006)
369 Lexington Avenue, 10th Floor
New York, NY  10017
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik (State Bar No. 077785)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA  94598
Telephone:  (925) 945-0200
Facsimile:  (925) 945-8792
E-Mails: aplutzik@bramsonplutzik.com

Attorneys for Defendants Power
Ventures, Inc. and Steve Vachani

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC.,<br><br>                                         Plaintiff,<br><br>-against-<br><br>POWER VENTURES, INC. d/b/a POWER.COM, a California corporation; POWER VENTURES, INC. a Cayman Island Corporation, STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, an individual and/or business entity of unknown nature; DOES 2 through 25, inclusive, individuals and/or business entities of unknown nature,<br><br>                                         Defendants. | Case No. 5:08-cv-05780 JW<br><br>**DECLARATION OF L. TIMOTHY FISHER IN SUPPORT OF DEFENDANTS' OPPOSITIONS TO FACEBOOK'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON COUNT 1 (CAN-SPAM ACT, 15 U.S.C § 7704) AND UNDER CALIFORNIA PENAL CODE § 502 AND THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030**<br><br>Date: January 23, 2012<br>Time: 9:00 a.m.<br>Courtroom 9 – 19th Floor<br>Chief Judge James Ware |

I, L. Timothy Fisher, declare as follows:

1.      I am a partner at Bursor & Fisher, P.A., counsel of record for Defendants Power Ventures, Inc. ("Power") and Steve Vachani (collectively, "Defendants").  I am an attorney at law licensed to practice in the State of California, and I am a member of the bar of this Court.  I make this declaration in support of defendants' oppositions to Facebook's motions for partial summary judgment.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently thereto.

2.      Attached hereto as Exhibit A are true and correct copies of excerpts from the February 17, 2011 transcript of the deposition of Facebook's in-house counsel Craig Clark.

3.      Attached hereto as Exhibit B are true and correct copies of excerpts from the September 29, 2011 transcript of the deposition of Rob Pollock.

4.      Attached hereto as Exhibit C is a true and correct copy of Facebook, Inc.'s Objections and Response to Defendants' Requests for Production Set One, dated December 15, 2010.  In response to Defendants' document requests, Facebook has not produced any documents showing that it was injured by any of the events described in its First Amended Complaint.

5.      Attached hereto as Exhibit D is a true and correct copy of Facebook, Inc.'s Objections and Responses to Defendants' Interrogatories, Set One, dated December 15, 2010.

6.      Attached hereto as Exhibit E are true and correct copies of excerpts from the July 20, 2011 transcript of the deposition of Steven Vachani.

7.      Attached hereto as Exhibit F are true and correct copies of excerpts of Defendant Power Ventures, Inc.'s Supplemental Responses To Facebook, Inc.'s Interrogatories Nos. 1, 2, 3, 7, 13, 14, 15, 19, 20 and 21, dated November 18, 2011.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on December 2, 2011 at Walnut Creek, California.

_____
                                L. Timothy Fisher

# EXHIBIT A

# In The Matter Of:

*FACEBOOK, INC.*
*v.*
*POWER VENTURES, INC. d/b/a POWER.COM*

_____

## *CRAIG CLARK - Vol. 1*
### *February 17, 2011*

_____

# *CONFIDENTIAL*

**MERRILL CORPORATION**
LegaLink, Inc.

225 Varick Street
10th Floor
New York, NY 10014
Phone: 212.557.7400
Fax: 212.692.9171

CONFIDENTIAL
CRAIG CLARK - 2/17/2011

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION
--oOo--

FACEBOOK, INC., a Delaware           )
corporation,                         )
                                     )
          Plaintiff,                 )
                                     )   Case No.
     vs.                             )   C-08-05780-FJ
                                     )
POWER VENTURES, INC. d/b/a           )
POWER.COM, a California              )
corporation; POWER VENTURES,         )
INC., a Cayman Island                )
Corporation; STEVEN VACHANI, an      )
individual; DOE 1, d/b/a             )
POWER.COM, an individual and/or      )
business entity of unknown           )
nature; DOES 2 through 25,           )
inclusive, individuals and/or        )
business entities of unknown         )
nature,                              )
                                     )
          Defendants.                )
_____)

CONFIDENTIAL DEPOSITION OF
CRAIG CLARK
_____
Thursday, February 17, 2011
Volume 1  (Pages 1 - 135)

REPORTED BY:  ANA M. DUB, RMR, CRR, CSR 7445
(03-433213)

51

CONFIDENTIAL
CRAIG CLARK - 2/17/2011

| | | |
|---|---|---|
| 1 | testimony. | 10:04:18 |
| 2 | THE WITNESS:  I remember -- | 10:04:18 |
| 3 | MR. BURSOR:  In terms of documents. | 10:04:18 |
| 4 | MR. CHATTERJEE:  Okay. | 10:04:19 |
| 5 | THE WITNESS:  I remember looking at | 10:04:20 |
| 6 | e-mails. | 10:04:21 |
| 7 | MR. BURSOR:  Q.  What factual information | 10:04:25 |
| 8 | did you garner from the e-mails you looked at? | 10:04:27 |
| 9 | A.   Background details on the investigation of | 10:04:29 |
| 10 | Power.com's activities:  scraping, spamming. | 10:04:31 |
| 11 | Q.   Anything else? | 10:04:46 |
| 12 | A.   Not that I recall. | 10:04:47 |
| 13 | Q.   In the course of your work verifying these | 10:04:51 |
| 14 | interrogatory responses, did you review any | 10:04:58 |
| 15 | documents related to customers -- users of Facebook | 10:05:05 |
| 16 | complaining about Power's activities? | 10:05:09 |
| 17 | A.   I did not. | 10:05:12 |
| 18 | Q.   Have you ever seen a document concerning a | 10:05:15 |
| 19 | Facebook user complaining about something that Power | 10:05:17 |
| 20 | did on Facebook? | 10:05:20 |
| 21 | A.   I don't believe so. | 10:05:25 |
| 22 | Q.   Have you ever had a conversation with | 10:05:25 |
| 23 | anyone inside Facebook about a Facebook user | 10:05:26 |
| 24 | complaining about something that Power did on | 10:05:32 |
| 25 | Facebook? | 10:05:35 |

58

CONFIDENTIAL
CRAIG CLARK - 2/17/2011

```
 1        Q.    How do you know that?                    10:10:38
 2        A.    Because of the message itself.  The      10:10:38
 3   message was not -- was initiated by Power and says  10:10:41
 4   that it comes from Facebook.                         10:10:48
 5        Q.    Can you tell me the name of anyone that  10:10:53
 6   was misled by this message?                          10:10:54
 7        A.    I can't.                                   10:10:57
 8        Q.    Have you ever seen a document referring to 10:10:58
 9   anyone being misled by this message?                 10:11:00
10        A.    Yes.                                       10:11:03
11        Q.    What was that document?                    10:11:04
12        A.    This document.                             10:11:05
13        Q.    The Amended Complaint written by           10:11:06
14   Facebook's lawyers?                                   10:11:08
15        A.    That's -- that's one document.             10:11:09
16        Q.    Okay.  That's one.  Are there any others? 10:11:11
17        A.    Yes.  The e-mail message itself would be  10:11:14
18   an example of a message that is misleading.          10:11:19
19        Q.    Are you aware of any document that could  10:11:22
20   be used to provide the name of anyone who was        10:11:26
21   supposedly misled by this message?                   10:11:29
22              MR. CHATTERJEE:  Vague.                    10:11:33
23              THE WITNESS:  I believe that anyone who   10:11:35
24   received this message would have been misled.        10:11:37
25              MR. BURSOR:  Q.  So just from the fact    10:11:39
```

CONFIDENTIAL
CRAIG CLARK - 2/17/2011

| | | |
|---|---|---|
| 1 | Q.   Okay.  Isn't it true that the one-and-only | 10:20:55 |
| 2 | party with any control over the content of that | 10:21:01 |
| 3 | header -- you refer to that as a header; right? | 10:21:05 |
| 4 | MR. CHATTERJEE:  Vague. | 10:21:09 |
| 5 | MR. BURSOR:  Q.  When you said "header" | 10:21:10 |
| 6 | earlier today, this is what you were talking about; | 10:21:11 |
| 7 | right? | 10:21:13 |
| 8 | A.   I was talking to all the information that | 10:21:13 |
| 9 | is not the body of the message. | 10:21:15 |
| 10 | Q.   All right.  So let me focus in on just the | 10:21:17 |
| 11 | "from" line.  Okay?  The one-and-only party that has | 10:21:19 |
| 12 | any control over the content of that line is | 10:21:23 |
| 13 | Facebook itself; isn't that true? | 10:21:26 |
| 14 | MR. CHATTERJEE:  Speculation. | 10:21:29 |
| 15 | THE WITNESS:  As I said, I'm not sure.  I | 10:21:30 |
| 16 | believe so, but I'm not sure. | 10:21:33 |
| 17 | MR. BURSOR:  Q.  If Power wanted to change | 10:21:37 |
| 18 | that line just to say "From:  Power," they have no | 10:21:38 |
| 19 | ability to do that; isn't that true? | 10:21:43 |
| 20 | MR. CHATTERJEE:  Speculation. | 10:21:46 |
| 21 | THE WITNESS:  I don't believe they would. | 10:21:48 |
| 22 | MR. BURSOR:  Q.  There's no one at Power | 10:21:50 |
| 23 | that wrote "From:  Facebook <eventmaster . . . ." | 10:21:51 |
| 24 | and the rest of that line; right?  That drafting did | 10:21:56 |
| 25 | not come from anyone at Power? | 10:21:59 |

CONFIDENTIAL
CRAIG CLARK - 2/17/2011

| | | |
|---|---|---|
| 1 | MR. CHATTERJEE:  Speculation. | 10:22:02 |
| 2 | THE WITNESS:  I don't believe anybody | 10:22:03 |
| 3 | would draft this.  This would be an automated part | 10:22:03 |
| 4 | of the e-mail creation that would occur when | 10:22:06 |
| 5 | somebody initiated the transmission of a message. | 10:22:09 |
| 6 | Right.  So, I mean, there's nobody sitting | 10:22:15 |
| 7 | there typing the "from" line. | 10:22:17 |
| 8 | MR. BURSOR:  Q.  Right. | 10:22:21 |
| 9 | A.    That would be part of how e-mail works. | 10:22:22 |
| 10 | Q.    That "from" line was automatically | 10:22:32 |
| 11 | generated by Facebook's computers; right? | 10:22:34 |
| 12 | MR. CHATTERJEE:  Speculation. | 10:22:38 |
| 13 | THE WITNESS:  That's pretty -- excuse me. | 10:22:40 |
| 14 | That's pretty -- I'm sorry. | 10:22:47 |
| 15 | Can you repeat the -- can you read back | 10:22:48 |
| 16 | the question? | 10:22:50 |
| 17 | (Record read as follows: | 10:22:50 |
| 18 | "QUESTION:  That 'from' line was | 10:22:55 |
| 19 | automatically generated by Facebook's | 10:22:55 |
| 20 | computers; right?") | 10:22:55 |
| 21 | THE WITNESS:  Automatically generated by | 10:22:56 |
| 22 | Facebook's computers or their systems, based on a | 10:23:00 |
| 23 | prompt from somebody outside.  Right?  Could be a | 10:23:07 |
| 24 | user.  Could be whoever -- whoever's creating the | 10:23:13 |
| 25 | event. | 10:23:15 |

74

CONFIDENTIAL
CRAIG CLARK - 2/17/2011

| | | |
|---|---|---|
| 1 | MR. BURSOR:  Yeah, yeah. | 10:26:27 |
| 2 | THE WITNESS:  Is that -- let's proceed. | 10:26:27 |
| 3 | MR. BURSOR:  Q.  All right.  So you recall | 10:26:28 |
| 4 | saying more than ten times today that Power | 10:26:29 |
| 5 | initiated this message; right? | 10:26:31 |
| 6 | A.   I don't recall how many times it was, but | 10:26:33 |
| 7 | yes, Power initiated this message. | 10:26:35 |
| 8 | Q.   That's part of your story; right? | 10:26:37 |
| 9 | A.   Does that -- | 10:26:41 |
| 10 | MR. CHATTERJEE:  Objection; argumentative. | 10:26:42 |
| 11 | Do you have a question that's actually | 10:26:43 |
| 12 | going to factual knowledge, Scott? | 10:26:44 |
| 13 | MR. BURSOR:  Q.  You see "Subject:  Nik"? | 10:26:47 |
| 14 | You see that? | 10:26:49 |
| 15 | A.   I see it. | 10:26:50 |
| 16 | Q.   And then do you see in the body of the | 10:26:51 |
| 17 | message it says "Nik invited you"? | 10:26:52 |
| 18 | A.   Mm-hmm, yes. | 10:26:54 |
| 19 | Q.   Who's Nik? | 10:26:57 |
| 20 | A.   I don't know who Nik is. | 10:27:00 |
| 21 | Q.   Did Nik initiate this message? | 10:27:02 |
| 22 | MR. CHATTERJEE:  Speculation. | 10:27:04 |
| 23 | THE WITNESS:  I don't know who Nik is, so | 10:27:05 |
| 24 | I don't know if Nik initiated this message. | 10:27:07 |
| 25 | But my understanding is this was initiated | 10:27:09 |

CONFIDENTIAL
CRAIG CLARK - 2/17/2011

| | | |
|---|---|---|
| 1 | on behalf of a user named Nik through Power. | 10:27:13 |
| 2 | MR. BURSOR:  Q.  What's the basis for that | 10:27:17 |
| 3 | understanding? | 10:27:18 |
| 4 | A.   The -- | 10:27:20 |
| 5 | MR. CHATTERJEE:  Attorney-client | 10:27:21 |
| 6 | privilege.  Instruction not to answer. | 10:27:21 |
| 7 | MR. BURSOR:  Q.  Did you rely on that | 10:27:28 |
| 8 | understanding when you signed the verification to | 10:27:29 |
| 9 | the interrogatory responses? | 10:27:31 |
| 10 | A.   What understanding? | 10:27:35 |
| 11 | Q.   The understanding you just testified to, | 10:27:38 |
| 12 | that Power initiated this message. | 10:27:40 |
| 13 | A.   Yes.  That, I believe, underpins | 10:27:43 |
| 14 | everything.  Power initiated the message based on | 10:27:46 |
| 15 | the way it was -- contact importing and scraping -- | 10:27:49 |
| 16 | (Court reporter clarifies.) | 10:27:59 |
| 17 | THE WITNESS:  Contact importing and | 10:27:59 |
| 18 | logging into Facebook on behalf of other people | 10:27:59 |
| 19 | without permission. | 10:28:03 |
| 20 | MR. BURSOR:  Q.  Without whose permission? | 10:28:05 |
| 21 | A.   Without Facebook's permission. | 10:28:08 |
| 22 | Q.   Did they have Nik's permission? | 10:28:09 |
| 23 | A.   Without the user's permission. | 10:28:10 |
| 24 | Q.   Did they have Nik's permission? | 10:28:12 |
| 25 | A.   I don't know who Nik is.  I don't believe | 10:28:14 |

CONFIDENTIAL
CRAIG CLARK - 2/17/2011

| 1 | were soliciting people's log-in information and, in | 10:37:15 |
| 2 | this instance, offering monetary compensation to | 10:37:19 |
| 3 | send invites to get people to sign up for Power. | 10:37:23 |
| 4 | Q.    And where did you get that information | 10:37:30 |
| 5 | from? | 10:37:31 |
| 6 | A.    My knowledge at the company working in a | 10:37:33 |
| 7 | legal role. | 10:37:36 |
| 8 | Q.    So that part's not privileged? | 10:37:37 |
| 9 | A.    I don't know what "that part" is that | 10:37:42 |
| 10 | you're referring to. | 10:37:44 |
| 11 | This message is not privileged. | 10:37:49 |
| 12 | Q.    You see at the bottom of the page where it | 10:37:59 |
| 13 | says "Thanks, The Facebook Team"? | 10:38:01 |
| 14 | A.    Mm-hmm. | 10:38:04 |
| 15 | Q.    Yes? | 10:38:04 |
| 16 | A.    Yes. | 10:38:05 |
| 17 | Q.    Who wrote that? | 10:38:05 |
| 18 | MR. CHATTERJEE:  Speculation. | 10:38:07 |
| 19 | THE WITNESS:  I don't know. | 10:38:10 |
| 20 | MR. BURSOR:  Q.  Didn't Facebook itself | 10:38:11 |
| 21 | write that? | 10:38:13 |
| 22 | MR. CHATTERJEE:  Same objections. | 10:38:14 |
| 23 | THE WITNESS:  I don't know. | 10:38:15 |
| 24 | MR. BURSOR:  Q.  Isn't it true that | 10:38:15 |
| 25 | Facebook appends that very same text to every e-mail | 10:38:17 |

88

CONFIDENTIAL
CRAIG CLARK - 2/17/2011

| | | |
|---|---|---|
| 1 | communication it sends after an event is created? | 10:38:20 |
| 2 | MR. CHATTERJEE:  Same objection. | 10:38:24 |
| 3 | Speculation. | 10:38:25 |
| 4 | THE WITNESS:  I don't know. | 10:38:26 |
| 5 | MR. BURSOR:  Q.  Do you think it's | 10:38:26 |
| 6 | misleading for Facebook to do that if Facebook is | 10:38:27 |
| 7 | not, in fact, the initiator of the message? | 10:38:30 |
| 8 | MR. CHATTERJEE:  Form. | 10:38:34 |
| 9 | THE WITNESS:  Could you break that down? | 10:38:38 |
| 10 | MR. BURSOR:  Q.  Sure.  Facebook put that | 10:38:39 |
| 11 | text in the message? | 10:38:40 |
| 12 | A.  I don't -- | 10:38:42 |
| 13 | Q.  You understand that; right? | 10:38:42 |
| 14 | A.  I don't know. | 10:38:43 |
| 15 | Q.  Well, let me ask you to assume that that's | 10:38:43 |
| 16 | true.  Do you think that's misleading? | 10:38:46 |
| 17 | MR. CHATTERJEE:  Incomplete hypothetical. | 10:38:48 |
| 18 | THE WITNESS:  Are you asking me -- | 10:38:50 |
| 19 | MR. BURSOR:  Q.  Let me ask you a more | 10:38:54 |
| 20 | specific question. | 10:38:55 |
| 21 | A.  Great. | 10:38:56 |
| 22 | Q.  You created an event on Facebook; right? | 10:38:56 |
| 23 | A.  I have created an event on Facebook. | 10:38:59 |
| 24 | Q.  How many events have you created? | 10:39:01 |
| 25 | A.  I don't know. | 10:39:03 |

98

| | | |
|---|---|---|
| 1 | of this message? | 10:45:57 |
| 2 | A.   I don't recall. | 10:45:58 |
| 3 | Q.   You didn't even bother to look for that | 10:45:59 |
| 4 | before you signed the verification? | 10:46:02 |
| 5 | MR. CHATTERJEE:  Argumentative. | 10:46:02 |
| 6 | THE WITNESS:  That's not what I said.  I | 10:46:03 |
| 7 | said I don't recall. | 10:46:04 |
| 8 | MR. BURSOR:  Q.  So it's possible you | 10:46:06 |
| 9 | looked at it? | 10:46:07 |
| 10 | A.   I don't recall looking at it. | 10:46:08 |
| 11 | Q.   So you don't know what's behind the | 10:46:11 |
| 12 | redaction there? | 10:46:13 |
| 13 | A.   I do not recall. | 10:46:15 |
| 14 | Q.   So do you see where it says -- so it's not | 10:46:18 |
| 15 | Power that redacted it; right? | 10:46:20 |
| 16 | A.   I don't recall.  But given that this is | 10:46:24 |
| 17 | our complaint, I assume we made the redactions. | 10:46:26 |
| 18 | Q.   So you see where it says "Nik invited you | 10:46:31 |
| 19 | to the event"?  See that? | 10:46:33 |
| 20 | A.   I see where it says: | 10:46:34 |
| 21 | "Nik [Redacted] invited you | 10:46:36 |
| 22 | to the event" -- | 10:46:39 |
| 23 | Q.   Okay. | 10:46:40 |
| 24 | A.   -- "'Bring -- | 10:46:41 |
| 25 | Q.   No.  I'm only asking -- | 10:46:42 |

99

CONFIDENTIAL
CRAIG CLARK - 2/17/2011

| | | |
|---|---|---|
| 1 | A.    "100 friends" -- | 10:46:43 |
| 2 | Q.    -- you about that part. | 10:46:43 |
| 3 |         "Nik . . . invited you to the | 10:46:44 |
| 4 | event" -- | 10:46:45 |
| 5 |         "Nik [Redacted] invited you | 10:46:46 |
| 6 | to the event . . . ." | 10:46:48 |
| 7 | Can you focus in on that? | 10:46:48 |
| 8 | A.    I can focus in on that, yes. | 10:46:50 |
| 9 | Q.    Who wrote that? | 10:46:51 |
| 10 |         MR. CHATTERJEE:  Speculation. | 10:46:52 |
| 11 |         THE WITNESS:  I don't recall -- or I don't | 10:46:54 |
| 12 | know. | 10:46:55 |
| 13 |         MR. BURSOR:  Q.  Who would know the answer | 10:47:08 |
| 14 | to that? | 10:47:11 |
| 15 |     A.    Again, I believe the header information, | 10:47:12 |
| 16 | as with other elements of this message, would have | 10:47:15 |
| 17 | been auto-generated.  So as far as "write this," I | 10:47:18 |
| 18 | don't know would write this. | 10:47:23 |
| 19 | Q.    It would have been auto-generated by whom? | 10:47:26 |
| 20 | A.    By the -- | 10:47:32 |
| 21 |         MR. CHATTERJEE:  Vague. | 10:47:33 |
| 22 |         THE WITNESS:  By the system that was | 10:47:34 |
| 23 | called to send out the invitation. | 10:47:37 |
| 24 |         MR. BURSOR:  Q.  What system is that? | 10:47:40 |
| 25 | A.    That would probably be Facebook's system. | 10:47:41 |

CONFIDENTIAL
CRAIG CLARK - 2/17/2011

1    THE WITNESS:  I don't believe so.                  10:57:40

2    MR. BURSOR:  Q.  All right.  So do you             10:57:44

3  want to change the answer you just gave two seconds  10:57:44

4  ago?                                                 10:57:47

5    A.   That's -- I don't see how my two answers      10:57:49

6  are connected.  Your questions were different.       10:57:53

7    Q.   So you have to be a Facebook user to          10:58:00

8  create an event; right?                              10:58:01

9    A.   As far as I know --                           10:58:04

10    MR. CHATTERJEE:  Speculation, vague.              10:58:04

11    THE WITNESS:  As far as I know, to create        10:58:06

12  a Facebook event, you have to be a Facebook user.   10:58:08

13    MR. BURSOR:  Q.  And the e-mail in               10:58:10

14  paragraph 70 was generated as the result of the     10:58:12

15  creation of a Facebook event?                        10:58:14

16    A.   Yes, that appears to be the case.            10:58:17

17    Q.   And the user that created that event was     10:58:18

18  someone named Nik?                                  10:58:22

19    MR. CHATTERJEE:  Speculation.                    10:58:25

20    THE WITNESS:  I don't know.                       10:58:27

21    MR. BURSOR:  Q.  You don't know?                 10:58:31

22    A.   It would appear, based on this e-mail,       10:58:32

23  that it was created by somebody named Nik.          10:58:33

24    Q.   And in order to invite people to an event,   10:58:38

25  they have to have previously friended you on        10:58:43

| | | |
|---|---|---|
| 1 | Facebook; right? | 10:58:46 |
| 2 | MR. CHATTERJEE:  Asked and answered. | 10:58:47 |
| 3 | THE WITNESS:  Yeah, I'm not sure. | 10:58:48 |
| 4 | MR. BURSOR:  Q.  So, what is it that | 10:58:49 |
| 5 | you're not sure about? | 10:58:57 |
| 6 | A.   Well, I'm not sure -- I'm not sure. | 10:58:59 |
| 7 | Q.   If you're not Nik's friend, Nik can't | 10:59:06 |
| 8 | invite you to this event; isn't that right? | 10:59:08 |
| 9 | MR. CHATTERJEE:  Argumentative and | 10:59:11 |
| 10 | speculation. | 10:59:12 |
| 11 | THE WITNESS:  I don't know.  I believe | 10:59:13 |
| 12 | that's true, but I don't know for sure. | 10:59:13 |
| 13 | MR. BURSOR:  Q.  And the only people who | 10:59:15 |
| 14 | are Nik's friends are people who have consented to | 10:59:18 |
| 15 | be Nik's friends; right? | 10:59:21 |
| 16 | MR. CHATTERJEE:  Speculation. | 10:59:25 |
| 17 | THE WITNESS:  If someone is your Facebook | 10:59:29 |
| 18 | friend, then either they would have to confirm you | 10:59:33 |
| 19 | as a friend or you would have to confirm them as a | 10:59:36 |
| 20 | friend. | 10:59:38 |
| 21 | MR. BURSOR:  Q.  And you're not alleging | 10:59:40 |
| 22 | that Power did anything to interfere with that; | 10:59:42 |
| 23 | right? | 10:59:44 |
| 24 | MR. CHATTERJEE:  I'm not -- I'm not even | 10:59:46 |
| 25 | sure -- are you asking about his personal knowledge? | 10:59:48 |

CONFIDENTIAL
CRAIG CLARK - 2/17/2011

| | | |
|---|---|---|
| 1 | language about compensatory damages aside, just are | 11:16:28 |
| 2 | you aware of any economic loss that Facebook has | 11:16:31 |
| 3 | suffered as a result of the actions of Power? | 11:16:35 |
| 4 | MR. CHATTERJEE:  Same instruction. | 11:16:39 |
| 5 | If you have personal knowledge of it, you | 11:16:41 |
| 6 | can go ahead and answer; but if it's privileged | 11:16:43 |
| 7 | information, you shouldn't. | 11:16:46 |
| 8 | THE WITNESS:  Yeah, I don't think I can | 11:16:50 |
| 9 | answer that without getting into attorney-client | 11:16:51 |
| 10 | privilege. | 11:16:53 |
| 11 | MR. BURSOR:  Q.  Do you have any personal | 11:16:55 |
| 12 | knowledge of such a loss? | 11:16:56 |
| 13 | A.   Same answer. | 11:16:59 |
| 14 | Q.   Can you identify anything that Power did | 11:17:26 |
| 15 | that caused Facebook to lose money? | 11:17:27 |
| 16 | A.   Same answer. | 11:17:33 |
| 17 | Q.   You can't answer? | 11:17:33 |
| 18 | A.   I can't answer that. | 11:17:34 |
| 19 | MR. BURSOR:  Let me ask the court reporter | 11:17:56 |
| 20 | to mark as Exhibit 1-4 a single-page document.  It's | 11:17:57 |
| 21 | Defendant's First Request for Production Pursuant to | 11:18:00 |
| 22 | Federal Rule of Civil Procedure 34.  It's dated | 11:18:03 |
| 23 | October 8th, 2010. | 11:18:07 |
| 24 | (Whereupon, Defendants' Exhibit 1-4 was | 11:18:32 |
| 25 | marked for identification.) | 11:18:32 |

| | | |
|---|---|---|
| 1 | MR. BURSOR:  Q.  Mr. Clark, you have | 11:18:34 |
| 2 | Exhibit 1-4? | 11:18:34 |
| 3 | A.   I do. | 11:18:36 |
| 4 | Q.   Have you seen that before? | 11:18:37 |
| 5 | A.   Not that I recall. | 11:18:39 |
| 6 | Q.   You know what a document request is; | 11:18:46 |
| 7 | right? | 11:18:47 |
| 8 | A.   I do. | 11:18:47 |
| 9 | Q.   Now, I already asked you about No. 3 | 11:18:48 |
| 10 | because earlier today I asked you if you were aware | 11:18:50 |
| 11 | of any documents concerning any complaints made by | 11:18:52 |
| 12 | Facebook users and you told me you were not. | 11:18:57 |
| 13 | Do you remember that? | 11:18:59 |
| 14 | A.   I did. | 11:19:00 |
| 15 | Q.   So I want to ask the same question about | 11:19:01 |
| 16 | Item 1. | 11:19:03 |
| 17 | A.   Excuse me. | 11:19:08 |
| 18 | Q.   Are you aware of any document concerning | 11:19:08 |
| 19 | any injury that Facebook suffered as a result of the | 11:19:12 |
| 20 | events described in the First Amended Complaint? | 11:19:14 |
| 21 | Just the existence of a document. | 11:19:16 |
| 22 | A.   I don't know. | 11:19:23 |
| 23 | Q.   As you sit here today, you couldn't | 11:19:25 |
| 24 | identify any document that would relate to that? | 11:19:26 |
| 25 | A.   No, I don't believe I can. | 11:19:33 |

121

CONFIDENTIAL
CRAIG CLARK - 2/17/2011

| | | |
|---|---|---|
| 1 | it was the easiest. | 11:22:10 |
| 2 | A.   Right. | 11:22:11 |
| 3 | Q.   All right.  You testified that you weren't | 11:22:11 |
| 4 | aware -- | 11:22:12 |
| 5 | A.   But -- okay.  Go ahead. | 11:22:13 |
| 6 | Q.   You see 3 asks for any complaints Facebook | 11:22:14 |
| 7 | users made as a result of the events described in | 11:22:18 |
| 8 | Facebook's First Amended Complaint?  You see that? | 11:22:20 |
| 9 | A.   I see that. | 11:22:22 |
| 10 | Q.   But you've never seen any documents like | 11:22:23 |
| 11 | that; right? | 11:22:25 |
| 12 | MR. CHATTERJEE:  Overly broad, vague. | 11:22:29 |
| 13 | THE WITNESS:  Again, there are documents | 11:22:30 |
| 14 | I've seen that may be responsive to this category. | 11:22:34 |
| 15 | If you're asking if I've seen any specific | 11:22:36 |
| 16 | complaints about Power.com, I have not. | 11:22:38 |
| 17 | MR. BURSOR:  Q.  Have you seen general | 11:22:42 |
| 18 | complaints about Power.com? | 11:22:44 |
| 19 | A.   No. | 11:22:46 |
| 20 | Q.   All right.  So you haven't seen any | 11:22:49 |
| 21 | specific complaints and you haven't seen any general | 11:22:51 |
| 22 | complaints.  What kind of complaints have you seen? | 11:22:53 |
| 23 | A.   I've not seen any complaints regarding | 11:22:56 |
| 24 | Power.com based on my preparation for this | 11:23:02 |
| 25 | deposition or otherwise. | 11:23:07 |

# EXHIBIT B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

FACEBOOK, INC.,             )
                                )
                                )

            Plaintiff,    )
                                )

vs.                      )  No.  5:08-cv-05780 JW
                                )

POWER VENTURES, INC., a   )
Cayman Island            )
corporation; STEVE       )
VACHANI, an individual;  )
DOE 1, d/b/a POWER.COM,   )
DOES 2-25 inclusive,     )
                                )

           Defendants.   )
                                )
                                )
                                )

VIDEOTAPED DEPOSITION OF

ROB POLLOCK

Held at the Law Offices of Bursor & Fisher

2121 N. California, Walnut Creek, California

Thursday, September 29, 2011, 9:58 a.m.

REPORTED BY:  ELAINA BULDA-JONES, RPR, CSR #11720

1   originated them.

2   BY MS. METANAT:

3       Q.   And so these -- are you aware that

4   these -- that Facebook at some point blocked Power

5   from -- or blocked the -- blocked invites --

6   Facebook invites from being sent using the term

7   "Power.com"?

8       A.   I'm aware that there was a discussion over

9   the origination of the invites.  But my

10  understanding was, is that the invites were

11  originated by Facebook and Facebook users.

12      Q.   And where did you get this understanding

13  from?

14      A.   Same place, in postdiscussions with

15  counsel, court appearances.

16      Q.   Did you ever discuss this issue with Steve

17  Vachani?

18      A.   Well, again, when all this happened with

19  Vachani -- well, yeah, I think -- the information I

20  got from Steve on this was that those were

21  Facebook-originated invites.

22      Q.   And what did -- did -- other than that did

23  Steve say anything else about the invites?

24      A.   No, I don't recall.

25      Q.   Did you discuss this issue with the board?

# EXHIBIT C

1    I. NEEL CHATTERJEE (STATE BAR NO. 173985)
     nchatterjee@orrick.com
2    JULIO C. AVALOS (STATE BAR NO. 255350)
     javalos@orrick.com
3    ORRICK, HERRINGTON & SUTCLIFFE LLP
     1000 Marsh Road
4    Menlo Park, CA  94025
     Telephone:    +1-650-614-7400
5    Facsimile:    +1-650-614-7401

6    THOMAS GRAY (STATE BAR NO. 191411)
     tgray@orrick.com
7    Orrick, Herrington & Sutcliffe LLP
     4 Park Plaza, Suite 1600
8    Irvine, CA  92614-2558
     Telephone:    +1-949-567-6700
9    Facsimile:    +1-949-567-6710

10   Attorneys for Plaintiff
     FACEBOOK, INC.

11                        UNITED STATES DISTRICT COURT

12                      NORTHERN DISTRICT OF CALIFORNIA

13                             SAN JOSE DIVISION

14

15   FACEBOOK, INC.,                         Case No.  5:08-cv-05780 JW (HRL)

16                 Plaintiff,                 **FACEBOOK, INC.'S OBJECTIONS**
                                              **AND RESPONSE TO DEFENDANTS'**
17          v.                                **REQUESTS FOR PRODUCTION,**
                                              **SET ONE**
18   POWER VENTURES, INC. a Cayman Island
19   Corporation; STEVE VACHANI, an
     individual; DOE 1, d/b/a POWER.COM,
20   DOES 2-25, inclusive,

21                 Defendants.

22

23

24

25

26

27

28

OHS West:261052298.2

1    Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Facebook, Inc.

2    ("Facebook") hereby responds to Power Ventures, Inc.'s and Steve Vachani's (collectively,

3    "Defendants")Request For Production, Set One as follows:

## GENERAL OBJECTIONS

5    In addition to any specific objections which may be made on an individual basis below,

6    Facebook objects generally to each of the requests as follows:

7    1.    Facebook objects to each Request to the extent it calls for information protected

8    from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other

9    applicable privilege, doctrine or protection.  To the extent Facebook produces any information

10   subject to the attorney-client privilege, the attorney work-product doctrine, or other applicable

11   privilege, doctrine or protection, such disclosure is inadvertent and does not constitute a general

12   waiver of the privilege, doctrine or protection.  Nothing contained herein is intended to be or

13   should be construed as a waiver of the attorney-client privilege, the attorney work-product

14   doctrine, or any other applicable privilege, protection or doctrine.

15   2.    Facebook objects to each Request to the extent it seeks legal conclusions.

16   Production of, or failure to produce any information, is not to be construed to endorse or reject

17   any legal conclusions.

18   3.    Facebook objects to each Request to the extent it is vague or ambiguous.

19   4.    Facebook objects to each Request to the extent it is not sufficiently limited in time

20   and/or subject matter, and is therefore overly broad, unduly burdensome, oppressive and will

21   cause undue hardship to Facebook.

22   5.    Facebook objects to all Requests as overly broad and unduly burdensome to the

23   extent they seek, individually or collectively, information that is not relevant to any claim or

24   defense of the case and that does not appear reasonably calculated to lead to the discovery of

25   admissible evidence in contravention of Rule 26(b)(1) of the Federal Rules of Civil Procedure.

26   6.    Facebook objects to all Requests insofar as they purport to call for information that

27   is outside the possession, custody or control of Facebook or to seek information on matters not

28

FACEBOOK, INC.'S OBJECTIONS AND RESPONSE
TO DEFENDANTS' REQUESTS FOR PRODUCTION,
SET ONE

1   known or reasonably available to Facebook, on the grounds that such discovery requests are

2   overly broad, unduly burdensome, oppressive and will cause undue hardship to Facebook.

3         7.    Facebook objects to each Request to the extent it seeks information that is a matter

4   of public record.  Facebook also objects to each Request to the extent the burden or expense of

5   discovery sought outweighs its likely benefit.

6         8.    Facebook objects to each Request to the extent it seeks information that may

7   encompass the proprietary information, trade secrets or other confidential commercial or business

8   information of Facebook and no protective order has been entered.

9   **SPECIFIC OBJECTIONS**

10   **REQUEST FOR PRODUCTION NO. 1:**

11       Please produce all documents, all electronically stored information, and all tangible things

12   concerning any injury that Facebook suffered as a result of the events described in Facebook's

13   First Amended Complaint.

14   **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

15       Facebook incorporates by reference its General Objections as if fully set forth herein.

16   Facebook further objects to the use of the terms "injury," "suffered," and "events" as vague,

17   overly broad and unduly burdensome.  Facebook also objects to the Request to the extent it seeks

18   information protected from discovery by the attorney-client privilege, the attorney work-product

19   doctrine, or any other applicable privilege, protection or doctrine.  Facebook objects to the

20   Request to the extent it seeks Facebook's proprietary information, trade secrets or other

21   confidential commercial or business information and no protective order has been entered.

22   Facebook objects to the Request to the extent it calls for a legal conclusion or expert testimony to

23   determine the meaning of "injury."  Facebook also objects to this Request on the basis that it is

24   premature and that discovery is ongoing.  Facebook reserves its right to supplement its Response

25   to this Request and to produce documents as they are discovered.  Subject to, and without

26   waiving the foregoing objections, Facebook responds that it will produce any non-privileged and

27   responsive documents, if any, upon the entry of an appropriate protective order.

28

OHS West:261052298.2           - 2 -      FACEBOOK, INC.'S OBJECTIONS AND RESPONSE
TO DEFENDANTS' REQUESTS FOR PRODUCTION,
SET ONE

1   **REQUEST FOR PRODUCTION NO. 2:**

2          Please produce all documents, all electronically stored information, and all tangible things

3   concerning any expenditure that Facebook made as a result of the events described in Facebook's

4   First Amended Complaint.

5   **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

6          Facebook incorporates by reference its General Objections as if fully set forth herein.

7   Facebook objects to the use of the term "events" and the phrase "as a result of" as vague, overly

8   broad and unduly burdensome.  Facebook objects to the Request to the extent it seeks information

9   protected from discovery by the attorney-client privilege, the attorney work-product doctrine, or

10  any other applicable privilege, protection or doctrine.  Facebook objects to the Request to the

11  extent it seeks Facebook's proprietary information, trade secrets or other confidential commercial

12  or business information and no protective order has been entered.  Facebook also objects to this

13  Request on the basis that it is premature and that discovery remains ongoing.  Facebook expressly

14  reserves its right to supplement this response and to produce documents as they are discovered.

15  Subject to, and without waiving the foregoing objections, Facebook responds that it will produce

16  any non-privileged and responsive documents, if any, upon the entry of an appropriate protective

17  order.

18  **REQUEST FOR PRODUCTION NO. 3:**

19         Please produce all documents, all electronically stored information, and all tangible things

20  concerning any complaints Facebook users made as a result of the events described in Facebook's

21  First Amended Complaint.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

23         Facebook incorporates by reference its General Objections as if fully set forth herein.

24  Facebook objects to the use of the term "events" and the phrase "as a result of" as vague, overly

25  broad and unduly burdensome.  Facebook objects to the term "complaints" as vague and

26  ambiguous.  Facebook further objects to this Request on the basis that it seeks discovery that is

27  neither relevant to a claim or defense of a party nor reasonably calculated to lead to discovery of

28  admissible evidence.  Facebook also objects to the Request to the extent it seeks information

FACEBOOK, INC.'S OBJECTIONS AND RESPONSE
TO DEFENDANTS' REQUESTS FOR PRODUCTION,
SET ONE

1   protected from discovery by the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et.*

2   *seq.* ("ECPA"), or any other applicable privilege, protection or doctrine.  Facebook further objects

3   to the Request to the extent it seeks documents outside Facebook's possession, custody or control.

4   Facebook objects to the Request to the extent it seeks Facebook's proprietary information, trade

5   secrets or other confidential commercial or business information and no protective order has been

6   entered.  Facebook also objects to this Request on the basis that it is premature and that discovery

7   remains  ongoing.  Facebook expressly reserves its right to supplement its response to this

8   Request and to produce documents as they are discovered.  Subject to, and without waiving the

9   foregoing objections, Facebook responds that it will produce any non-privileged and responsive

10  documents, if any, upon the entry of an appropriate protective order.

11

12  Dated: December 15, 2010                    ORRICK, HERRINGTON & SUTCLIFFE LLP

13

14  _____

15                                              I. NEEL CHATTERJEE
                                                Attorneys for Plaintiff
16                                              FACEBOOK, INC.

17

18

19

20

21

22

23

24

25

26

27

28

FACEBOOK, INC.'S OBJECTIONS AND RESPONSE
TO DEFENDANTS' REQUESTS FOR PRODUCTION,
SET ONE

# EXHIBIT D

1  I. NEEL CHATTERJEE (STATE BAR NO. 173985)
   nchatterjee@orrick.com
2  JULIO C. AVALOS (STATE BAR NO. 255350)
   javalos@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
4  Menlo Park, CA  94025
   Telephone:     +1-650-614-7400
5  Facsimile:     +1-650-614-7401

6  THOMAS GRAY (STATE BAR NO. 191411)
   tgray@orrick.com
7  Orrick, Herrington & Sutcliffe LLP
   4 Park Plaza, Suite 1600
8  Irvine, CA  92614-2558
   Telephone:     +1-949-567-6700
9  Facsimile:     +1-949-567-6710

10 Attorneys for Plaintiff
   FACEBOOK, INC.

11

12                    UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                        SAN JOSE DIVISION

15

16 FACEBOOK, INC.,                        Case No.  5:08-cv-05780 JW (HRL)

17            Plaintiff,                   **FACEBOOK, INC.'S OBJECTIONS
                                           AND RESPONSES TO
18      v.                                 DEFENDANTS'
                                           INTERROGATORIES, SET ONE**
19 POWER VENTURES, INC. a Cayman Island
   Corporation; STEVE VACHANI, an
20 individual; DOE 1, d/b/a POWER.COM,
   DOES 2-25, inclusive,

21            Defendants.

22

23

24

25

26

27

28

OHS West:261055372.4

1    Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Facebook, Inc.

2    ("Facebook") hereby responds to Power Ventures, Inc.'s and Steve Vachani's (collectively,

3    "Defendants") Interrogatories, Set One as follows:

4                                    **GENERAL OBJECTIONS**

5    In addition to any specific objections which may be made on an individual basis below,

6    Facebook objects generally to each of the interrogatories as follows:

7    1.    Facebook objects to each Interrogatory to the extent it calls for information

8    protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the

9    consulting expert exemption from discovery or any other applicable privilege, doctrine or

10   protection.  To the extent Facebook provides any information subject to the attorney-client

11   privilege, the attorney work-product doctrine, or other applicable privilege, doctrine or protection,

12   such disclosure is inadvertent and does not constitute a general waiver of the privilege, doctrine

13   or protection.  Nothing contained herein is intended to be or should be construed as a waiver of

14   the attorney-client privilege, the attorney work-product doctrine, or any other applicable

15   privilege, protection or doctrine.

16   2.    Facebook objects to each Interrogatory to the extent it seeks legal conclusions.

17   3.    Facebook objects to each Interrogatory to the extent it is vague or ambiguous.

18   4.    Facebook objects to each Interrogatory to the extent it is not sufficiently limited in

19   time and/or subject matter, and is therefore overly broad, unduly burdensome, oppressive and will

20   cause undue hardship to Facebook.

21   5.    Facebook objects to all Interrogatories as overly broad and unduly burdensome to

22   the extent they seek, individually or collectively, information that is not relevant to any claim or

23   defense of the case and that does not appear reasonably calculated to lead to the discovery of

24   admissible evidence in contravention of Rule 26(b)(1) of the Federal Rules of Civil Procedure.

25   6.    Facebook objects to all Interrogatories insofar as they purport to call for

26   information that is outside the possession, custody or control of Facebook or to seek information

27   on matters not known or reasonably available to Facebook, on the grounds that such discovery

28   requests are overly broad, unduly burdensome, oppressive and will cause undue hardship to

1  Facebook.  Facebook also objects to all of Defendants' Interrogatories to the extent that they seek

2  information in the possession of Defendants and/or a third party.

3          7.       Facebook objects to each Interrogatory to the extent it seeks information that is a

4  matter of public record.  Facebook also objects to each Interrogatory to the extent the burden or

5  expense of discovery sought outweighs its likely benefit.

6          8.       Facebook objects to each Interrogatory to the extent it seeks information that may

7  encompass the proprietary information, trade secrets or other confidential commercial or business

8  information of Facebook and no protective order has been entered in this action.

9          9.       By responding to any of Defendants' Interrogatories or providing any information

10  herewith, Facebook does not waive and expressly preserves the objections set forth herein and

11  does not concede the relevancy or admissibility of the response.

12          10.      Facebook objects to any and all of Defendants' Interrogatories to the extent they

13  seek information that may be derived or ascertained from the documents produced by Facebook

14  and the burden of deriving or ascertaining the answer is substantially the same for Defendants.

15  *See generally* Fed. R. Civ. P. 33(d).

16          11.      Facebook reserves the right to supplement or amend these objections and

17  responses upon, among other things:  further investigation; discovery of additional facts;

18  discovery of persons with knowledge or relevant information; or developments in this action or

19  any other proceeding.

20                              **SPECIFIC OBJECTIONS**

21  **INTERROGATORY NO. 1:**

22          Please identify anyone that was misled by the messages referenced in ¶92 of your First

23  Amended Complaint.

24  **RESPONSE TO INTERROGATORY NO. 1:**

25          Facebook incorporates by reference its General Objections as if fully set forth herein.

26  Facebook objects to the use of the terms "anyone" and "misled" as vague, overly broad and

27  unduly burdensome.  Facebook also objects to this Interrogatory to the extent it seeks information

28  protected from discovery by the attorney-client privilege, the attorney work-product doctrine, or

1  any other applicable privilege, protection or doctrine.  Facebook objects to this Interrogatory to

2  the extent it seeks information protected from disclosure by the Electronic Communications

3  Privacy Act, 18 U.S.C. § 2510 *et. seq.* ("ECPA").  Facebook also objects to this Interrogatory on

4  the basis that it is premature and that discovery is ongoing.  Facebook expressly reserves its right

5  to supplement its response as information is discovered.  Facebook notes that information

6  responsive to this Interrogatory, to the extent such information exists, would likely be confidential

7  and could not be produced prior to the entry of an appropriate protective order in this action.

8  Subject to and without waiving its objections, Facebook responds as follows: Facebook users who

9  either opened or read the misleading message sent by Defendants and/or Facebook users who

10  used Defendants' unauthorized systems to access Facebook.

12  **INTERROGATORY NO. 2:**

13      Where has the copyrighted work that you claim has been infringed appeared on the

14  Facebook website?  Please provide the URL and the specific material on the page that you claim

15  has been infringed.

16  **RESPONSE TO INTERROGATORY NO. 2:**

17      Facebook incorporates by reference its General Objections as if fully set forth herein.

18  Facebook objects to the use of the terms "copyrighted work" and "appeared" as vague, overly

19  broad and unduly burdensome.  Facebook also objects to the Interrogatory to the extent it seeks

20  information protected from discovery by the attorney-client privilege, the attorney work-product

21  doctrine, or any other applicable privilege, protection or doctrine.  Facebook objects to this

22  Interrogatory to the extent it seeks Facebook's proprietary information, trade secrets or other

23  confidential commercial or business information and no protective order has been entered in this

24  action.  Facebook objects to this Interrogatory to the extent it calls for a legal conclusion or expert

25  testimony to determine what has been "infringed."  Facebook also objects to this Interrogatory on

26  the basis that it is premature and that discovery is ongoing.  Facebook expressly reserves its right

27  to supplement its response as information is discovered.

28

1   **INTERROGATORY NO. 3:**

2        Where has the infringing content appeared on our site? Please provide the URL and the

3   specific material on the page that you are referring to.

4   **RESPONSE TO INTERROGATORY NO. 3:**

5        Facebook incorporates by reference its General Objections as if fully set forth herein.

6   Facebook objects to the use of the terms "infringing content," "appeared," "our" and "site" as

7   vague, overly broad and unduly burdensome.  Facebook also objects to this Interrogatory to the

8   extent it seeks information protected from discovery by the attorney-client privilege, the attorney

9   work-product doctrine, or any other applicable privilege, protection or doctrine.  Facebook

10  objects to this Interrogatory to the extent it calls for a legal conclusion or expert testimony to

11  determine the meaning of "infringing content" and "appeared."  Facebook objects and notes that

12  discovery in this matter is still ongoing and that this request is objectionable as premature.

13  Indeed, no discovery has yet been received from Defendants.  Accordingly, Facebook is not yet in

14  possession of all evidence responsive to this Interrogatory.  Facebook expressly reserves its right

15  to supplement its response to this Interrogatory once all such discovery is received from

16  Defendants.

17

18  **INTERROGATORY NO. 4:**

19       Where has the Facebook trademark appeared on our site? Please provide the URL and the

20  specific material on the page that you are referring to.

21  **RESPONSE TO INTERROGATORY NO. 4:**

22       Facebook incorporates by reference its General Objections as if fully set forth herein.

23  Facebook objects to the use of the terms "Facebook trademark," "appeared," "our" and "site" as

24  vague, overly broad and unduly burdensome.  Facebook also objects to this Interrogatory to the

25  extent it seeks information protected from discovery by the attorney-client privilege, the attorney

26  work-product doctrine, or any other applicable privilege, protection or doctrine.  Facebook also

27  objects to this Interrogatory on the basis that it is premature and that information requested is in

28  Defendants' possession.  Relatedly, Facebook objects and notes that discovery in this matter is

1  still ongoing. Indeed, no discovery has yet been received from Defendants. Accordingly,

2  Facebook is not yet in possession of all evidence and/or information responsive to this

3  Interrogatory. Facebook expressly reserves its right to supplement its response to this

4  Interrogatory.

5      Subject to and without waiving the foregoing objections, Facebook responds that one of

6  its trademarks appeared on at least the following URLs:

7      http://www.power.com/Pub/Login.aspx?ReturnUrl=%2fpriv%2fpower%2fhome.aspx

8      http://www.power.com/priv/power/home.aspx

9      http://power.com/pub/login.aspx

10      http://static.power.com/images/PressKit/Login_EN.jpg?v=327

11      http://static.power.com/images/PressKit/Mensagem_EN.jpg?v=327

12

13  **INTERROGATORY NO. 5:**

14      Please identify anyone that has experienced any form of "customer confusion," "mistake,"

15  or "deception" caused by a Facebook trademark that appeared on our site.

16  **RESPONSE TO INTERROGATORY NO. 5:**

17      Facebook incorporates by reference its General Objections as if fully set forth herein.

18  Facebook objects to the use of the terms "anyone," "experienced," "any form," "caused,"

19  "appeared," "our" and "site" as vague, overly broad and unduly burdensome. Facebook also

20  objects to this Interrogatory to the extent it seeks information protected from discovery by the

21  attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege,

22  protection or doctrine. Facebook objects to this Interrogatory to the extent it seeks information

23  protected from disclosure by the ECPA. Facebook also objects to this Interrogatory on the basis

24  that it is premature and that discovery is ongoing. Facebook reserves its right to supplement its

25  response as information is discovered. Facebook notes that information responsive to this

26  Interrogatory, to the extent such information exists, would likely be confidential and could not be

27  produced prior to the entry of an appropriate protective order in this action. Subject to and

28  without waiving its objections, Facebook responds as follows: Facebook users who used

Defendants' unauthorized systems to access Facebook and/or who viewed Facebook's name, logo or other trademarks on any Power website, e-mail or other Power document or communication.

Dated: December 15, 2010

ORRICK, HERRINGTON & SUTCLIFFE LLP

_____

I. NEEL CHATTERJEE
Attorneys for Plaintiff
FACEBOOK, INC.

1

**VERIFICATION**

2

3       I, Craig Clark, certify and declare that I have read the foregoing Interrogatory Responses

4   ("Responses") know their contents. I am an agent of Facebook, Inc. ("Facebook") a party to this

action. I am authorized to make this verification for Facebook and, on its behalf, I make this

5

verification. I am informed and believe and on that ground allege that the matters stated in the

6

Responses are true.

7

        I declare under penalty of perjury under the laws of the State of California that the

8

foregoing is true and correct to the best of my knowledge.

9

        Executed this 15th day of December, 2010 at Palo Alto, California.

10

11

12

13                                                              CRAIG CLARK

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DECLARATION OF SERVICE**

2

   I am more than eighteen years old and not a party to this action.  My business

3

address is Orrick, Herrington & Sutcliffe LLP, 1000 Marsh Road, Menlo Park, CA 94025.  On

4

December 15, 2010, I served the following document(s):

5

   **FACEBOOK, INC.'S OBJECTIONS AND RESPONSE TO DEFENDANTS'**
   **INTERROGATORIES, SET ONE**

6

7

   on the interested parties in this action by placing true and correct copies thereof in

8

sealed envelopes addressed as follows:

9

Scott A. Bursor *(admitted pro hac vice)*
**LAW OFFICES OF SCOTT A. BURSOR**
369 Lexington Avenue

10

10th Floor
New York, NY 10017-6531

11

Tel: 212-989-9113
Fax: 212-989-9163

12

scott@bursor.com

13

14

Alan R Plutzik
aplutzik@bramsonplutzik.com

15

Michael S. Strimling
mstrimling@bransonplutzik.com

16

Lawrence Timothy Fisher
ltfisher@bramsonplutzik.com

17

**BRAMSON, PLUTZIK, MAHLER &**
**BIRKHAEUSER LLP**

18

2125 Oak Grove Road
Suite 120

19

Walnut Creek, CA 94598
Tel: (925) 945-0200

20

Fax: 925-945-8792

**COUNSEL FOR DEFENDANTS**
**POWER VENTURES, INC.**
**A CAYMAN ISLAND CORPORATION**
**AND**
**STEVEN VACHANI**

21

   I deposited such envelopes with postage thereon fully prepaid in the United States

22

mail at a facility regularly maintained by the United States Postal Service at Menlo Park,

23

California on the date indicated above.

24

   I declare under penalty of perjury that the foregoing is true and correct.

25

   Executed on December 15, 2010, at Menlo Park, California.

26

27

Elizabeth Kim

28

# EXHIBIT E

1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


| | | |
|---|---|---|
| FACEBOOK, INC. | : | |
|       Plaintiff, | : | |
| | : | |
|    v. | : | |
| | | |
| POWER VENTURES, INC. d/b/a | : | |
| POWER.COM, a California | : | |
| corporation; POWER | : | Case No. |
| VENTURES, INC. a Cayman | : | 5:08-CV-05780 |
| Island Corporation, STEVE | : | JW (HRL) |
| VACHANI, an individual; | : | |
| DOE 1, d/b/a POWER.COM, an | : | |
| individual and/or business | : | |
| entity of unknown nature; | : | |
| DOES 2 through 25, | : | |
| inclusive, individuals | : | |
| and/or business entities | : | |
| of unknown nature, | : | |
|       Defendants. | : | |

_____

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1            Videotaped Deposition of STEVEN VACHANI

2    taken on behalf of the Plaintiff at the offices of

3    BURSOR & FISHER, P.A., 369 Lexington Avenue, New

4    York, New York, on Wednesday, July 20, 2011,

5    commencing at 9:47 in the forenoon before PATRICIA

6    MULLIGAN CARRUTHERS, a Certified Court Reporter and

7    Notary Public of the State of New Jersey and Notary

8    Public of the State of New York.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

184

1    you would be invited to ask your friends to join                02:37
2    power.com?                                                       02:37
3            A.        No.  You would have the option to             02:37
4    invite your friends to join just like you have the              02:37
5    option on Facebook to invite your friends to join               02:37
6    Facebook and every other site on the Internet, and              02:37
7    if they did, if they reach a hundred friends that               02:37
8    joined, they would earn $100.                                   02:37
9            Q.        And if you accepted the feature               02:37
10   that came up saying would you -- it said something              02:37
11   like, "Would you like to invite your friends to                 02:37
12   Power"?                                                          02:37
13           A.        Yes.                                          02:37
14           Q.        If you hit "yes" or "I agree" --              02:37
15           A.        Yes.                                          02:37
16           Q.        -- how -- what -- what                        02:37
17   automation would occur at that point?                           02:37
18           A.        So first of all, you have to                  02:37
19   remember that 99 percent of our users were not --               02:38
20   were not using -- were not using Facebook.  They                02:38
21   were users on other sites, so we actually -- I                  02:38
22   guess you could say we were actually a big source               02:38
23   of providing users to Facebook in Brazil.  In fact,             02:38
24   as -- I guess you could say it was a gift, but we               02:38
25   -- we brought a large amount of Orkut users to                  02:38

1    Facebook, so that's where a lot of our promotions                02:38

2    were -- Because our users already, as you know,                  02:38

3    have -- Prior to having Facebook, we had millions                02:38

4    of users who have hundreds of friends already in                02:38

5    the system, and that represented 99 percent of our              02:38

6    contacts in our system.  Facebook was a very small              02:38

7    part of this world.  At that time, obviously it's a             02:38

8    much larger site today but in our world, in our                 02:38

9    growth it was -- it was introduced later.  So we                02:38

10   were encouraging our friends -- our users to go and             02:38

11   register at Facebook and become Facebook users.                 02:38

12   Because in our -- in our view, the more social                  02:38

13   networks that users were using, the more value it               02:39

14   would be to, you know, to aggregate different                   02:39

15   sites.  So we encouraged users to sign up for                   02:39

16   Facebook.  In fact, we're giving free marketing to              02:39

17   Facebook.  So to answer your question, a lot of                 02:39

18   these users -- You could see all your friends from             02:39

19   all your sites and say, "Hey.  Join Facebook when              02:39

20   you're at Facebook."  That was a big part of our                02:39

21   promotions.  That was the largest part of our                   02:39

22   promotions.  And then, of course, if they have                  02:39

23   friends that are already using Facebook -- Facebook            02:39

24   and they wanted to invite their friends to come use           02:39

25   Power, that's the smaller part.  But the biggest               02:39

275

1    Conditions previously.                                    04:44

2          Q.        As of December 1st, 2008, had you        04:44

3    read the Terms and Conditions that were available        04:44

4    on the Facebook Web site?                                 04:44

5          A.        I didn't read it all a hundred            04:44

6    percent, but we had read -- people in our company         04:44

7    had read it.                                              04:44

8          Q.        So who in your company had read it        04:44

9    -- if anybody?                                            04:44

10         A.        It would have been myself -- I            04:44

11   believe -- I do remember reading it.  Filipe would        04:44

12   have also read it.                                        04:44

13         Q.        Mr. Herrera?                              04:44

14         A.        Yes.  I would have asked was there        04:44

15   anything relevant in the terms.  He would have been       04:44

16   the person I talked to.                                   04:44

17         Q.        Could you turn to Page 4?                 04:44

18         A.        Sure.                                     04:44

19                   MR. BURSOR:  Are you using the            04:44

20   page numbers at the top?                                  04:44

21                   MR. COOPER:  Yes.  I'm sorry if           04:44

22   that wasn't clear.                                        04:44

23         Q.        Mr. Vachani, your counsel made a          04:44

24   good point.  I'm referring to the page numbers in         04:45

25   the upper right-hand corner.  You see the one that        04:45

1    says Page 415?                                              04:45
2          A.       Yes.                                         04:45
3          Q.       Can you read the first bullet                04:45
4    point to yourself and tell me when you've finished?         04:45
5          A.       The first bullet point?  Yes.                04:45
6                   Okay.                                        04:45
7          Q.       As of December 1st, 2008, do you             04:45
8    know one way or another whether anybody at Power            04:45
9    had read that particular provision in the Facebook          04:45
10   Terms of Service?                                           04:45
11         A.       Yes.                                         04:45
12         Q.       Had you read it?                             04:45
13         A.       Yes.                                         04:45
14         Q.       All right.  Did you have an                  04:45
15   understanding whether power.com enabled users to            04:46
16   registered users to violate the Terms of Service?          04:46
17         A.       I don't understand how a message             04:46
18   that a user wants to send to another friend --              04:46
19   First of all, it's an unsolicited message; and             04:46
20   second, I don't understand what this Terms and              04:46
21   Conditions has anything to do with -- with -- I             04:46
22   don't understand how the relevance to the                   04:46
23   questions.                                                  04:46
24         Q.       Did you have an understanding                04:46
25   whether or not power.com to enabled its registered          04:46

280

| | | |
|---|---|---|
| 1 | the question read back and then just answer the | 04:50 |
| 2 | question. | 04:50 |
| 3 | A.      So what's the question? | 04:50 |
| 4 | (Whereupon, the last question is | 04:50 |
| 5 | read back by the reporter.) | 04:50 |
| 6 | MR. BURSOR:  Is the question: | 04:50 |
| 7 | Does he see that in the agreement? | 04:50 |
| 8 | MR. COOPER:  Yeah, that's all I | |
| 9 | asked. | |
| 10 | MR. BURSOR:  Yeah, so do you see | |
| 11 | that -- do you see that -- | 04:50 |
| 12 | A.      I see that in the agreement. | 04:50 |
| 13 | MR. BURSOR:  Yeah, so then you've | 04:50 |
| 14 | answered the question. | 04:50 |
| 15 | A.      Okay.  Yeah, I see that in your | 04:50 |
| 16 | agreement. | 04:50 |
| 17 | Q.      Have you read that language as of | 04:50 |
| 18 | December 1st, 2008? | 04:50 |
| 19 | A.      Yes.  I had read it many times. | 04:50 |
| 20 | Q.      Had anybody else at power.com read | 04:50 |
| 21 | that language as of December 1st, 2008? | 04:50 |
| 22 | A.      I don't know if they read it.  It | 04:50 |
| 23 | was my job to read it and I think Filipe probably | 04:51 |
| 24 | read it.  Those are the two people that I know. | 04:51 |
| 25 | Q.      As of December 1st, 2008, had you | 04:51 |

313

| | | |
|---|---|---|
| 1 | remember any substantial conversation. | 05:38 |
| 2 | Q.      All right.  Do you know -- The | 05:38 |
| 3 | second sentence of Exhibit 109 says, "Eric we need | 05:38 |
| 4 | to be prepare for Facebook to try and to block us | 05:38 |
| 5 | and the turn this into a national battle that gets | 05:38 |
| 6 | us huge attention"? | 05:39 |
| 7 | A.      Yes. | 05:39 |
| 8 | Q.      Why did you think Facebook was | 05:39 |
| 9 | going to block you? | 05:39 |
| 10 | A.      Obviously, they sent this letter | 05:39 |
| 11 | to us saying very clearly it was -- I thought it | 05:39 |
| 12 | was absurd, but that -- nonetheless that they were | 05:39 |
| 13 | trying to do this, but it was clear that that's | 05:39 |
| 14 | what they would do. | 05:39 |
| 15 | Q.      By what the way, do you remember | 05:39 |
| 16 | the name of the Facebook individual that Nevo | 05:39 |
| 17 | suggested you talk to? | 05:39 |
| 18 | A.      I do not recall it right mow. | 05:39 |
| 19 | Q.      Do you know if it was the same Sam | 05:39 |
| 20 | O'Rourke? | 05:39 |
| 21 | A.      That name sounds familiar, but I | 05:39 |
| 22 | don't -- I know I've heard that name. | 05:39 |
| 23 | Q.      Why did you -- The third sentence | 05:39 |
| 24 | says, "We need to address the scraping argument and | 05:39 |
| 25 | the soliciting log in credentials"? | 05:39 |

# EXHIBIT F

BURSOR & FISHER, P.A.
L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
          swestcot@bursor.com

BURSOR & FISHER, P.A.
Scott A. Bursor (State Bar No. 276006)
369 Lexington Avenue, 10th Floor
New York, NY  10017
Telephone:  (212) 989-9113
Facsimile:   (212) 989-9163
E-Mail: scott@bursor.com

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik (State Bar No. 077785)
Michael S. Strimling (State Bar No. 96135)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA  94598
Telephone:  (925) 945-0200
Facsimile:   (925) 945-8792
E-Mails: aplutzik@bramsonplutzik.com
          mstrimling@bramsonplutzik.com

Attorneys for Defendants Power
Ventures, Inc. and Steve Vachani

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC.,<br><br>                                        Plaintiff,<br><br>-against-<br><br>POWER VENTURES, INC. d/b/a POWER.COM, a California corporation; POWER VENTURES, INC. a Cayman Island Corporation, STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, an individual and/or business entity of unknown nature; DOES 2 through 25, inclusive, individuals and/or business entities of unknown nature,<br><br>                                        Defendants. | Case No. 5:08-CV-05780 JW<br><br>**DEFENDANT POWER VENTURES, INC.'S SUPPLEMENTAL RESPONSES TO FACEBOOK, INC.'S INTERROGATORIES NOS. 1, 2, 3, 7, 13, 14, 15, 19, 20 AND 21** |

1    ANY AND ALL of the other IP addresses used by POWER "in the normal course of business"

2    referenced in Paragraph 11 of the Declaration of Steve Vachani in Support of Defendants' Motion

3    for Summary Judgment (Dkt. No. 98-2) filed May 9, 2011.

4    **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 20:**

5         Power hereby incorporates the General Objections above as if fully stated herein.  Power

6    objects that this interrogatory is vague and ambiguous, overly broad, unduly burdensome, and

7    seeks information that is irrelevant and not reasonably calculated to lead to the discovery of

8    admissible evidence.

9         Subject to and without waiving these objections, pursuant to Fed. R. Civ. P. 33(d), Power

10   refers to the SVN, produced on 10/24/11.  Particularly, Power refers to the documents located at

11   "docs / Tecnologia / Hardware / Servidores."  These documents identify the servers Power used in

12   its operations, including information on each server's hardware, which components of Power's

13   software each server ran, the private intranet IP address of each server, the public Internet IP

14   address of each server, the subdomain of each server, and several diagrams detailing how the

15   servers were connected to the Internet as a whole.

16   **INTERROGATORY NO. 21:**

17        Describe in detail YOUR efforts from December 1, 2008 through the date of YOUR

18   response to preserve ANY AND ALL documents, computer code, correspondence, emails or

19   content from electronic or digital media (including ANY AND ALL corrupted or deleted content)

20   concerning FACEBOOK, the subject matter of FACEBOOK's Cease and Desist Letter dated

21   December 1, 2008 (Power 2011.02.03.00001-3), and/or this litigation, including, but not limited to,

22   IDENTIFYING ANY AND ALL instructions by date that YOU made to POWER employees and

23   agents to preserve such documents, computer code, correspondence, emails, or content from

24   electronic or digital media.

25   **SUPPLEMENTAL RESPONSE TO INTEROGATORY 21:**

26        Power hereby incorporates the General Objections above as if fully stated herein.  Power

27   objects that this interrogatory is vague and ambiguous, overly broad, unduly burdensome, and

28

DEFENDANT POWER VENTURES, INC.'S SUPPLEMENTAL RESPONSES TO FACEBOOK, INC.'S
INTERROGATORIES NOS. 1, 2, 3, 7, 13, 14, 15, 19, 20 AND 21
CASE NO. 5:08-CV-05780 JW

7

1  seeks information that is irrelevant and not reasonably calculated to lead to the discovery of

2  admissible evidence.

3  As a matter of business practice, Power does not delete or destroy any documents related to

4  any aspect of its business. See Vachani Dep. at 271:9-272:5, 296:9-298:16. Power ceased its daily

5  operations on April 2011. Nonetheless, Power preserved its files by transferring them to an online

6  backup. This online backup contains Power's databases and subversion repository, which includes

7  a large organizational chart of Power's divisions and employees, presentations given at board

8  meetings, several dozen PowerPoint presentations for investment funds and advertisers, banner ads

9  and commercials, information on Power's business model, a PowerPoint presentation for each

10  major component of Power's software (PowerFriends, PowerMessenger, Orkut connectivity,

11  MySpace connectivity), internal documentation for each component of Power's software,

12  information on stock option programs, brainstorming for new software development, plans for

13  growth and expansion, "break even" revenue requirements, marketing materials, hardware and

14  software specifications for Power's servers, network diagrams, and segments of source code.

15  Nearly every file was transferred to the online backup. However, one database file,

16  Power_Logger, was too large to feasibly be transferred. This file was over 100 GB, and it did not

17  contain critical user data, such as profiles, personal information settings, or passwords. Instead, it

18  logged the activities of Power's servers. For this reason, Power necessarily omitted Power_Logger

19  from the backup.

20  Dated: November 18, 2011                    BURSOR & FISHER, P.A.

21

22                                              By:

23                                                     L. Timothy Fisher

24                                              L. Timothy Fisher (State Bar No. 191626)
                                                Sarah N. Westcot (State Bar No. 264916)
25                                              1990 North California Blvd., Suite 940
                                                Walnut Creek, CA 94596
26                                              Telephone: (925) 300-4455
                                                Facsimile: (925) 407-2700
27                                              E-Mail: ltfisher@bursor.com
                                                         swestcot@bursor.com
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BURSOR & FISHER, P.A.
Scott A. Bursor (State Bar No. 276006)
369 Lexington Avenue, 10th Floor
New York, NY  10017
Telephone:  (212) 989-9113
Facsimile:   (212) 989-9163
E-Mail:  scott@bursor.com

BRAMSON, PLUTZIK, MAHLER &
BIRKHAEUSER, LLP
Alan R. Plutzik (State Bar No. 77785)
Michael S. Strimling (State Bar No. 96135)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA  94598
Telephone:  (925) 945-0200
Facsimile:   (925) 945-8792
E-Mail: aplutzik@bramsonplutzik.com
            mstrimling@bramsonplutzik.com

Attorneys for Defendants Power
Ventures, Inc. and Steve Vachani

DEFENDANT POWER VENTURES, INC.'S SUPPLEMENTAL RESPONSES TO FACEBOOK, INC.'S
INTERROGATORIES NOS. 1, 2, 3, 7, 13, 14, 15, 19, 20 AND 21
CASE NO. 5:08-CV-05780 JW

9

**VERIFICATION**

I, Steve Vachani, declare that:

I am a defendant in the above-captioned action.  I have read DEFENDANT POWER

VENTURES, INC.'S SUPPLEMENTAL RESPONSES TO FACEBOOK, INC.'S

INTERROGATORIES NOS. 1, 2, 3, 7, 13, 14, 15, 19, 20 AND 21, and know the contents thereof.

The responses are true of my own knowledge except as to the matters therein stated on information

and belief and as to those matters I believe them to be true.

I declare under penalty of perjury under the law of the United States of America that the

foregoing is true and correct.

Executed in San Francisco, CA on November 18th, 2011.

_____
Steve Vachani