| | |
|---|---|
| 1 | BURSOR & FISHER, P.A. |
| 2 | L. Timothy Fisher (State Bar No. 191626)<br>Sarah N. Westcot (State Bar No. 264916) |
| 3 | 1990 North California Blvd., Suite 940<br>Walnut Creek, CA  94596 |
| 4 | Telephone: (925) 300-4455<br>Facsimile:  (925) 407-2700 |
| 5 | E-Mail: ltfisher@bursor.com<br>         swestcot@bursor.com |
| 6 | BURSOR & FISHER, P.A. |
| 7 | Scott A. Bursor (State Bar No. 276006)<br>369 Lexington Avenue, 10th Floor |
| 8 | New York, NY  10017<br>Telephone:  (212) 989-9113 |
| 9 | Facsimile:   (212) 989-9163<br>E-Mail: scott@bursor.com |
| 10 | BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP |
| 11 | Alan R. Plutzik (State Bar No. 077785)<br>2125 Oak Grove Road, Suite 120 |
| 12 | Walnut Creek, CA  94598<br>Telephone:  (925) 945-0200 |
| 13 | Facsimile:   (925) 945-8792<br>E-Mails: aplutzik@bramsonplutzik.com |
| 14 | Attorneys for Defendants Power<br>Ventures, Inc. and Steve Vachani |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC.,<br><br>                              Plaintiff,<br><br>-against-<br><br>POWER VENTURES, INC. d/b/a POWER.COM, a California corporation; POWER VENTURES, INC. a Cayman Island Corporation, STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, an individual and/or business entity of unknown nature; DOES 2 through 25, inclusive, individuals and/or business entities of unknown nature,<br><br>                              Defendants. | Case No. 5:08-CV-05780 JW<br><br>**DECLARATION OF STEVE VACHANI IN SUPPORT OF DEFENDANTS' OPPOSITION TO FACEBOOK'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON COUNT 1 (CAN-SPAM ACT, 15 U.S.C § 7704) AND UNDER CALIFORNIA PENAL CODE § 502 AND THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030**<br><br>Date: January 23, 2012<br>Time: 9:00 a.m.<br>Courtroom 9 – 19th Floor<br>Chief Judge James Ware |

DECLARATION OF STEVE VACHANI
CASE NO. 5:08-CV-05780 JW

I, Steve Vachani, declare:

1. I am the CEO of Power.com ("Power"). I make this declaration in support of Defendants' opposition to Facebook's Motion for Partial Summary Judgment on Count I (CAN-SPAM Act, 15 U.S.C § 7704). I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify to the truth thereof.

**A.     Power's Origins, The Facebook Dispute, And Power.com's Demise**

2. Beginning in 2006, defendant Power operated a website known as Power.com, which allowed users to access various social networking websites (*e.g.* MySpace and Orkut) in one place.

3. Specifically, Power created a browser that allowed users to login and access all of their various social networking accounts at once. Users could update their photos, messages, music, and videos, and these updates would be portable across various social networking sites.

4. For approximately two months from December 2008 through January 2009, Power offered Facebook users the ability to connect to Facebook through Power's browser.

5. Power ran a contest from December 2008 through January 2009 to promote the launch of its Facebook support (the "Launch Promotion"). The Launch Promotion offered $100 to the first 100 people who referred 100 new Power.com users.

6. To participate, Power users would see a button on the Power.com website stating, "First 100 people who bring 100 new friends to Power.com win $100. Join now!" There was a checkbox that said, "Share with friends through events." Power users were then presented with the options "Yes, I do!" or "No, thanks."

7. If the box authorizing the event was checked and Power users clicked "Yes, I do!," the user's friends were then invited to attend the launch promotion event.

8. If a Power user chose not to participate, he or she had four opportunities to decline: by ignoring the Launch Promotion notice, by unchecking the box authorizing the creation of a Facebook event, by clicking "No, thanks," or by clicking the "X" in the corner of the Launch Promotion to close the offer.

9. If a Facebook user authorized PowerScript to create the event, Facebook then automatically sent an email notification to everyone who was invited to the Launch Promotion event, which Facebook does whenever a Facebook user is invited to an event.

10. In late December 2008, Facebook attempted to prevent Power's users from accessing Facebook through Power.com by blocking one IP ("Internet Protocol") address utilized by Power. An IP address is simply a numeric label that is assigned to devices participating in a computer network, including web servers and other types of computers. For example, the IP address for the Facebook.com web server is 66.220.149.11 as of November 26, 2011.

11. Power did not undertake any effort to circumvent that block, and did not provide users with any tools designed to circumvent it. Nevertheless, Facebook's IP block was ineffective because it blocked only one outdated IP address Power had used, and did not block other IPs that Power was using in the normal course of business.

12. After it became aware of the attempted IP blocking, Power undertook efforts to implement Facebook Connect as Facebook had requested. Facebook Connect is a platform designed by Facebook that allows third party websites to connect to Facebook.

13. Negotiations between Power and Facebook over the implementation of Facebook Connect broke down, and Power voluntarily shut down its Facebook integration completely in early 2009. Power did not circumvent any technical barriers and turned off the Facebook integration even though Facebook's IP blocking attack was partial, incomplete, and ineffective.

14. Power never made any additional attempts to connect to Facebook in any way.

15. Power shut down the Power.com website in April, 2011.

**B.     Facebook's Event Creation Process**

16. Facebook allows its users to create "events" and invite their friends to attend.

17. The screen captures in our accompanying memorandum of law are true and correct representations of the screens used in Facebook's event creation process.

18. I understand that Facebook claims that Power sent 60,627 messages to Facebook users. That is not true. Power did not send a single one of those messages. Facebook sent all 60,627 of those messages. The messages came from Facebook's servers and identify Facebook as

the party who sent the email. The return address is Facebook's address. Facebook determines the address that appears in the "From:" field. Facebook also adds the closing signature from "The Facebook Team." Neither Power nor its users have any control over these elements of the email message. All of the content in these email messages that Facebook alleges to be misleading and false was written and appended to the message by Facebook. Facebook appends that very same text to every email communication it sends after an event is created.

19. The specific email referenced in Facebook's complaint was generated by Facebook as a result of a Facebook user named 'Nik' creating an event and selecting the friends to invite. It was Nik, not Power, that logged on to Facebook and created the event. It was Nik, not Power, that chose the friends he wished to invite. Nik could only send the invitation to other Facebook members who had agreed to 'friend' Nik, and thus had expressly agreed to receive communications from Nik. Facebook then sent an email to those friends on Nik's behalf. Power did not initiate this message. Power did not select the recipients to whom it was sent. And Power had no control over the content of the message or the header information. Only Facebook did. Power did not transmit any email message to any Facebook account. Nor did Power make available any utility that would enable a user to transmit such messages.

20. The header information on the emails at issue in this case was accurate and showed that Facebook had sent the messages. Power had no control over them. They were auto-generated by Facebook and Power could not have changed them if it wanted to.

21. Like Facebook, Power also has not received a single complaint from a Facebook user about any of the events described in Facebook's complaint. No one complained to Power about the email referenced in ¶ 92 of Facebook's complaint. Nor has anyone complained to Power about any of our activities related to Facebook. Nor has anyone claimed to have been misled by anything we did.

22. Power did not access any nonpublic portion of Facebook's website. Power merely offered users a different and potentially superior browser through which they could access their Facebook accounts to copy, update, and/or port their own "User Content." And users did so by entering their own valid usernames and passwords, which Power never copied or stored for any

1 purpose. Power did not obtain any software, data, or other content of value from Facebook. The
2 only data accessed through Power's utilities were user's own "User Content," over which
3 Facebook has disclaimed any ownership.

4     23. The only intended use and the only actual use of the Power browser was to display
5 the user's own Facebook account and to enable the user to copy and/or update the user's own
6 "User Content." We had no scheme to defraud, deceive, or extort anyone. Nor could the Power
7 browser be used for such a scheme. Nor, to my knowledge, was the Power browser used for such a
8 scheme.

9     I declare under the penalty of perjury under the laws of the State of California that the
10 foregoing is true and correct, and that this Declaration was executed at Rio de Janeiro, Brazil this
11 2nd day of December, 2011.

                                                    Steve Vachani