1   I. NEEL CHATTERJEE (STATE BAR NO. 173985)
    nchatterjee@orrick.com
2   MONTE M.F. COOPER (STATE BAR NO. 196746)
    mcooper@orrick.com
3   THERESA A. SUTTON (STATE BAR NO. 211857)
    tsutton@orrick.com
4   MORVARID METANAT (STATE BAR NO. 268228)
    mmetanat@orrick.com
5   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
6   Menlo Park, California  94025
    Telephone:     650-614-7400
7   Facsimile:     650-614-7401

8   Attorneys for Plaintiff
    FACEBOOK, INC.

9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13

14  FACEBOOK, INC.,                          Case No. 5:08-cv-05780 JW

15              Plaintiff,                    **NOTICE OF MOTION AND MOTION
                                              FOR PARTIAL SUMMARY
16          v.                                JUDGMENT ON COUNT 1;
                                              MEMORANDUM OF POINTS AND
17  POWER VENTURES, INC., a Cayman Island     AUTHORITIES IN SUPPORT
    corporation; STEVE VACHANI, an individual; THEREOF**
18  DOE 1, d/b/a POWER.COM, DOES 2-25,
    inclusive,                                Date:      December 19, 2011
19                                            Time:      9:00 A.M.
              Defendants.                     Dept:      Courtroom 9, 19th Floor
20                                            Judge:     Honorable James Ware

21

22              **CONFIDENTIAL – FILED UNDER SEAL**

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

OHSWEST:261400533.4

MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 2

II.    RELEVANT FACTS ............................................................................................ 2

    A.  Facebook ................................................................................................... 2

    B.  Facebook protects its user experience by combating spam ...................... 3

    C.  Power Ventures and Steve Vachani ......................................................... 4

    D.  Defendants' Unlawful Actions to Send Spam to Facebook Users........................ 4

    E.  Defendants Circumvented Technical Measures Designed to Prevent Their Attack and Ignored Legal Demands........................................................ 8

III.   ARGUMENT ....................................................................................................... 9

    A.  Summary Judgment Standard ................................................................... 9

        1.  Facebook Was Adversely Affected As A Result Of Defendants' Spamming ................................................................... 9

        2.  Defendants' Conduct Violated 15 U.S.C 7704(a)(1)(A) ........................ 12

            a.  Defendants "Initiated" The Transmission Of Electronic Mail Messages ................................................ 12

            b.  Defendants' Messages Were "Commercial Electronic Mail Messages." ................................................. 14

            c.  Defendants Messages Had Materially False And Misleading Headers.................................................. 15

        3.  Trebling Of Damages Is Warranted ........................................ 16

            a.  Defendants Knowingly And Willfully Violated The Act ............ 16

            b.  Defendants' Directory Harvesting Is Also An Aggravated Violation................................................. 17

        4.  Defendant Vachani Is Independently Liable Under The CAN-SPAM Act ......................................................... 18

IV.    CONCLUSION .................................................................................................. 18

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- i -

MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

1

## TABLE OF AUTHORITIES

Page

2

3    **CASES**

4    *Aitken v. Commc'ns Workers of America*,

5       496 F. Supp. 2d 653 (E.D. Va. 2007)...................................................................... 14, 15

6    *Asis Internet Servs. v. Rausch*,
        No. 08-03186 EDL, 2010 WL 1838752 (N.D. Cal. May 3, 2010) ....................................... 10
7
     *Celotex Corp. v. Catrett*,
8       477 U.S. 317 (1986) ......................................................................................................... 9

9    *Facebook, Inc. v. ConnectU LLC*,
        489 F. Supp. 2d 1087 (N.D. Cal. 2007) ............................................................................ 10
10
     *Facebook, Inc. v. Fisher*,
11      No. C09-05842 JF (PSG), 2011 WL 250395 (N.D. Cal. Jan. 26, 2011) .............................. 10

12   *Facebook, Inc. v. MaxBounty, Inc.*,
        274 F.R.D. at 283-84 (N.D. Cal. 2011).......................................................................... 10, 14
13
     *Facebook, Inc. v. MaxBounty, Inc.*,
14      No. 5:10-cv-04712-JF (HRL), 2011 WL 4346514 (N.D. Cal. Sep. 14, 2011) ..................... 13

15   *Facebook, Inc. v. Wallace*,
        No. C-09-00798-JF, 2009 WL 840391 (N.D. Cal. March 24, 2009)............................... 11, 12
16
     *FTC v. Phoenix Avatar, LLC*,
17      No. 04C2897, 2004 U.S. Dist. LEXIS 14717 (N.D. Ill., July 30, 3004) .............................. 13

18   *Gordon v. Virtumendo, Inc.*,
        575 F.3d 1040 (9th Cir. 2009)................................................................................. 9, 10, 15
19
     *MySpace, Inc. v. Wallace*,
20      498 F. Supp. 2d 1293 ............................................................................................ 11, 12, 14

21   *Optinrealbig.com, LLC v. Ironport Sys., Inc.*,
        323 F. Supp. 2d 1037 (N.D. Cal. 2004) .............................................................................. 12
22
     *The Committee for Idaho's High Desert, Inc. v. Yost*,
23      92 F.3d 814 (9th Cir. 1996)............................................................................................... 18

24   *Transgo, Inc. v. Ajac Trans. Parts Corp.*,
        768 F.2d 1001 (9th Cir. 1985)........................................................................................... 18
25

26   **STATUTES**

27
     15 U.S.C. 7701(b)(2) and (b)(3)........................................................................................... 15
28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- ii -

MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

**TABLE OF CONTENTS**
(continued)

**Page**

15 U.S.C 7704(a)(1)(A) ................................................................................ 12

15 U.S.C. § 7702(2)(A) ................................................................................ 14

15 U.S.C. § 7702(6) ..................................................................................... 15

15 U.S.C. § 7702(9) ..................................................................................... 12

15 U.S.C. § 7702(12) ................................................................................... 13

15 U.S.C. § 7704(a) ..................................................................................... 12

15 U.S.C. § 7704(a)(1) ........................................................................... 12, 16

15 U.S.C. § 7704(a)(1)(A) ............................................................................ 12

15 U.S.C. § 7704(a)(5)(A) ............................................................................ 14

15 U.S.C. § 7704(b) ................................................................................. 9, 17

15 U.S.C. § 7704(b)(1)(A) ........................................................................... 17

15 U.S.C. § 7706(g) ...................................................................................... 9

15 U.S.C. § 7706(g)(3)(A) ............................................................................ 16

CAN-SPAM Act ............................................................................................ 4

Computer Fraud and Abuse Act .................................................................... 4

California Penal Code Section 502 ................................................................. 4

**OTHER AUTHORITIES**

16 C.F.R. 316.3(a)(1) ................................................................................... 14

Federal Rule of Civil Procedure 56(c) ........................................................... 9

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

## NOTICE OF MOTION AND MOTION

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3

  PLEASE TAKE NOTICE that on December 19, 2011 at 9:00 A.M. or as soon thereafter as

4

the matter may be heard, in the courtroom of the Honorable James Ware, United States District

5

Court, 450 Golden Gate Avenue, San Francisco, California 94102, Facebook, Inc. will move the

6

Court for Partial Summary Judgment on Facebook's First Count against Defendants Power

7

Ventures, Inc. and Steven Vachani, under the CAN-SPAM Act (15 U.S.C. Section 7704 *et seq.*).

8

This motion is based on the Notice of Motion and Motion, the supporting Memorandum of Points

9

and Authorities, the declarations filed in support thereof, all pleadings on file in this action, oral

10

argument of counsel, and any other matter that may be submitted at the hearing.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-1-

MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

OHSWEST:261400533.4

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.   INTRODUCTION

3    Facebook, Inc. ("Facebook") requests that this Court find defendants Power Ventures and

4    Steve Vachani (collectively, "Defendants") liable for violating the CAN-SPAM Act in the

5    amount of ███████. The following facts regarding Defendants' liability are beyond dispute:

6         1.  Defendants drafted commercial messages to send through Facebook.

7         2.  Defendants harvested their users' "friends" lists from Facebook through
              automated computer scripts.
8
9         3.  Defendants sent the commercial messages through their users' accounts to the
              users' Facebook friends.

10        4.  Defendants did not disclose that they initiated the transmission of these
              messages.
11
12        5.  Defendants paid their users if their Facebook friends joined the Power website.
              By Defendants' estimates, it paid 30-40 users.

13        6.  Defendants sent at least ██████ messages to Facebook users.  Defendants
              destroyed the files with the actual logs of the total numbers after this lawsuit
14            was filed.

15        7.  Facebook dedicated considerable resources to combat Defendants' spam
              attacks.
16

17   Under these undisputed facts, partial summary judgment finding Defendants liable in the

18   amount of $████████████████ to users obtained through "automated

19   harvesting" is warranted.

20   ### II.   RELEVANT FACTS

21        ### A.   Facebook

22   ████████████████████████████

23   ███████████. Declaration of Ryan McGeehan in Support of Facebook's Motion for

24   Partial Summary Judgment ("McGeehan Decl."), ¶ 2. ████████████████

25   ████████████████ *Id.*; *see also* Declaration of Monte Cooper in Support of

26   Facebook's Motion for Partial Summary Judgment ("Cooper Decl.") Ex. 1. ██████████

27   ████████████████████████████████████

28   ████████████████████████████

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 2 -

MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

OHSWEST:261400533.4

1   ███████████████. McGeehan Decl. ¶ 3. ███████████████████████

2   ████████████ *Id.* ████████████████████████████████████████

3   ████████████ *Id.* █████████████████████████████████████

4   ███████████████████████ *Id.* ████████████████████████

5   ████████████████████████████████████████████████████████

6   ████████████████ *Id.*

**B.    Facebook protects its user experience by combating spam.**

8   ████████████████████████████████████████ McGeehan Decl. ¶ 4.

10  ████████████████████████████████████████████████████████

11  ████████████████████████ *Id.* ██████████████████████

12  ████████████████████████████████████. *Id.* █

13  ████████████████████████████████████████████████████████

14  ████████████████████████ *Id.* ████████████████████

15  ████████████████████████████████ *Id.*, ¶ 5. ██████████

16  ████████████████████████████████████████████████

17  ███████████████████ *Id.* █████████████████████

18  ████████████████████████████████████████████

19  ██████████████████ *Id.*, ¶ 4.

20  ██████████████████████████████████████████████

21  ████████████████████████ *Id.*, ¶¶ 6a-6d. ████████████

22  ████████████████████████ *Id.*, ¶ 6a.  S █████████████

23  ████████████████████████████████████████████████

24  ████████████████████████ *Id.* ██████████████████

25  ████████████████████████████████████████████

26  ██████████ *Id.*

27  ████████████████████████████████████████████

28  ██████████████. *Id.*, ¶ 6b. ██████████████████████

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

OHSWEST:261400533.4



1 ███████████████████████████████████████

2 ██████████████ *Id.* ██████████████████████

3 █████████████████████████████████████. *Id.*, ¶ 6c.

4 ████████████████████████████████████

5 ██████████████████ *Id.* ████████████████████

6 ████████████████ *Id.* ████████████████████

7 ███████████████████ *Id.*, & Ex. 1

8 Facebook also uses legal measures to protect its user experience. █████████████

9 ████████████████████████████████████████████

10 ███████████████████████████████. *Id.*, ¶ 6d. █████████████

11 ██████████████████████████████████████

12 █████████████████████████████████████

13 ████████████████████████████████████

14 ██████ *Id.*, ¶ 6d. █████████████████████████████

15 ██████████████████████████████████████████.

16 *Id.*, ¶ 6b.

17 **C.     Power Ventures and Steve Vachani**

18 From 2008 through 2010 Defendants operated a website located at www.power.com.

19 Cooper Decl. Ex. 2 at 21:15-23. ██████████████████████

20 █████████████████████████████████████████

21 ████████████████ Cooper Decl. Exs. 3 and 4; Dkt. No. 54 ¶¶ 18, 41, 45, 50.  During

22 all relevant times, Vachani was the Chief Executive Officer of Power Ventures, and is the

23 architect of the technology and marketing schemes at issue in this case.  *Id.* at Ex 2 at 15:18-24;

24 181:21-183:9;  Ex 5 at Response to Interrogatory Nos. 8-10, 16.

25 **D.     Defendants' Unlawful Actions to Send Spam to Facebook Users**

26 Defendants sought to grow the Power.com user base on Facebook's back.  They designed

27 a scheme to harvest user information (including friends' lists), gain access to Facebook users'

28 accounts and then access those accounts to send promotional commercial messaging through

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 4 -

MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

OHSWEST:261400533.4

Facebook's systems.  Defendants studied Facebook's terms, ignored the authorized approach that millions of website operators use to integrate with Facebook, and improperly accessed Facebook users' accounts to promote their commercial service.  Cooper Decl. Ex. 2 at 276:7-13; 286:14-21; 290:15-291:1.

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬  Cooper Decl. Ex. 2 at 181:21-186:2; 205:12-206:22; 207:9-208:14; 205:9-15; Ex. 6 at Responses to Requests for Admissions Nos. 42-44, 50;  Declaration of Larry Melling in Support of Facebook's Motion for Partial Summary Judgment ("Melling Decl.") ¶¶ 3, 17-23. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬[1]  shown below:



Cooper Decl. Ex. 7; Melling Decl. ¶¶ 3, 21-23. ▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬   Melling Decl. ¶¶ 21-23.  Users were never told, for example, that Power would harvest their friends' list from the user's Facebook profile.

---

[1] Cooper Decl. Ex. 2 at 197:4-8.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 5 -

MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

OHSWEST:261400533.4

The undisclosed technology duped users into providing Defendants with total access to their Facebook user's accounts.  Once in, Defendants deployed the  PowerScript software and:

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

.[4]  Melling Decl. ¶¶ 3, 17-35. ██████████████████████████████

███████████████████████████████████████████ *Id.* ¶ 3;  McGeehan

Decl. ¶¶ 8-9. ████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████ Melling Decl. ¶¶ 3, 19-23. ████████████████████

█████████████████████████████████████████████ Cooper Decl. Ex. 2 at 181:21-186:2; 197:9-12; 199:10-15; 203:19-204:7; 205:12-206:22; 207:9-208:14; 212:19-213:4; 256:8-257;10; 257:22-258:11; 259:20-260;1; 261:23-262:5; 263:14-264:12; 266:7-21; 273:6-274:10; Melling Decl. ¶¶ 21-30.  Defendants' promotional "Event" invitations sent to Facebook users soliciting them to join power.com included the following text, which Vachani conceived and drafted:

███████████████████████████████████████████████

███████████████████████████████████████████████.

*Id.*, ¶ 22.  These Event invitations misleadingly suggest that the Facebook user is the sender of the message, not Defendants.  In fact, the users did not have the opportunity to view or edit the content of these messages prior to their transmission. █████████████████████████



---

[2] Cooper Decl. Ex. 6 at Power's Responses to Requests for Admissions Nos. 15, 22; Ex. 2 at 191:5-192:18.
[3] Cooper Decl. Ex. 6 at Power's Responses to Requests for Admissions Nos. 18, 22, 37; Ex. 2 at 182:16-186:2; 191:5-192:18.
[4] Cooper Decl. Ex. 2 at 199:10-15; 203:4-18.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

OHSWEST:261400533.4

MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

1    ████████████████████████████████████████ Melling Decl. ¶¶ 3, 19-23.

2    Defendants' PowerScript software also initiated and sent an additional electronic message

3    to the Facebook user's friends notifying them of the "Event."  These messages read as follows:



Dkt. Nos. 9 at ¶ 70, 54 at ¶ 70.[5]

This message, authored by Power and generated by Power's Powerscript software is also

materially misleading. ████████████████████████████████████████████.

Cooper Decl. Ex.. 2 at 256:8-257:10; 266:7-21; Melling Decl. ¶¶ 21-23.  Nowhere in the

message, however, is Power identified as the initiator or source of the message.  The message

offers no vehicle to contact Power and ask for it to stop sending additional messages.  Cooper

Decl. Ex. 6 at Power's Responses to Requests for Admissions No. 50. Second, the email message

itself identifies Power as a "host" of a "reunion event" and provides a time frame for the Event.

Dkt. Nos. 9 at ¶ 70, 54 at ¶ 70.  Power was "hosting" nothing and the time frame identified for the

_____

[5] ██████████████████████████████████████████████.  Melling
Decl. ¶¶ 3, 19-23.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

OHSWEST:261400533.4

- 7 -

MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

1    Event was meaningless.

2    ████████████████████████████████████████████████████████████████

3    ███████████████████████████████████████████████████ Cooper Decl.

4    Ex. 2, at 197:9-12; 203:19-204:7; 212:19-213:4; 256:8-257;10; 257:22-258:11; 259:20-260:1;

5    261:23-262:5; 263:14-264:12; 266:7-21; 273:6-274:10; Melling Decl. ¶ 3;  McGeehan Decl. ¶¶ 7-

6    9. ██████████████████████████████████████████████████████████████████

7    ███████████████████████████ McGeehan Decl. ¶ 12; Cooper Decl. Ex. 2 at

8    182:16-186:2; 199:10-15.  Defendants paid approximately 30 to 40 Power users related to its

9    "Launch Promotion."  Cooper Decl. Ex. 2 at 189:5-6. ██████████████████

10   █████████████████ McGeehan Decl. ¶ 7-9.

11          **E.     Defendants Circumvented Technical Measures Designed to Prevent Their**
12          **Attack and Ignored Legal Demands**

13   ██████████████████████████████████████████████████████████████████

14   ██████████████████ McGeehan Decl. ¶¶ 7-9. █████████████████████████

15   ██████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████ *Id.* ███████

17   ██████████████████████████████████████████████████████████████████

18   █████████████████████████████. *Id.* at ¶ 11 .  Facebook's outside counsel sent

19   Power a cease and desist letter.  Cooper Decl. Ex. 6, Power's Responses to Requests for

20   Admissions Nos. 1-10; Ex. 5 at Power's Response to Interrogatory No. 6.  Nonetheless,

21   Defendants refused to cease their activities despite repeated promises to do so.  Declaration of

22   Joseph Cutler in Support of Facebook's Motion for Partial Summary Judgment ("Cutler Decl."),

23   ¶ 9.

24   ██████████████████████████████████████████████████████████████████

25   ███████████████████████████████████████████████████████████

26   ███████████████. McGeehan Decl. ¶ 13. █████████████████████████

27   █████████████████████████████████████████████████████████████

28   ██████████████████████████████████████████████████████████████████

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

OHSWEST:261400533.4

- 8 -                        MOTION FOR PARTIAL SUMMARY JUDGMENT
                            CASE NO. 5:08-CV-05780 JW

1   ████████. *Id.* ¶ 14. ████████████████████████████████

2   ████████████████████████████████████████. Cooper Decl. Ex. 8. ████████

3   ████████████████████████████████████████████████████

4   ████████████████████████████████████████████████.

5   Cutler Decl. ¶ 15.

6   **III.     ARGUMENT**

7          **A.     Summary Judgment Standard.**

8          Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "there

9   is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

10  matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Once the moving party

11  demonstrates that there is no genuine issue of material fact, the nonmoving party must designate

12  "specific facts showing that there is a genuine issue for trial."  *Id.* There is no genuine issue of

13  material fact if "the evidence [ ] is of insufficient caliber or quantity to allow a rational finder of

14  fact" to find for the nonmoving party.  *Id.* at 324.

15                 **1.     Facebook Was Adversely Affected As A Result Of Defendants'**
                          **Spamming.**
16
17         An internet access service provider that is adversely affected under 15 U.S.C. § 7704(b)

18  may pursue a civil action seeking statutory damages.  *See* 15 U.S.C. § 7706(g).  Defendants

19  concede that Facebook is an internet access service provider.  Dkt. No. 98 at 13:15-16.  In their

20  Motion for Summary Judgment, they claim that Facebook cannot show it was adversely affected.

21  *Id*. at 15-18.

22         Contrary to Defendants' challenge, this Court already has found that "the undisputed facts

23  demonstrate that Facebook has suffered some damage or loss attempting to block Power's access

24  to the Facebook website."  Dkt. No. 89 at 8.  The Court's prior finding is supported by governing

25  case law.  While "each and every harm that might satisfy the CAN-SPAM Act's standing

26  requirement," has not been enumerated by the statute, "the harms redressible . . . must parallel the

27  limited private right of action and therefore should reflect those types of harms uniquely

28  encountered by IAS [Internet Access Service] providers."  *Gordon v. Virtumendo, Inc.*, 575 F.3d

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

OHSWEST:261400533.4

- 9 -

MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

1040, 1053 (9th Cir. 2009).  Where a plaintiff is an internet access service provider, like Facebook, "adequate harm might be presumed because any reasonable person would agree that such entities dedicate considerable resources to and incur significant financial costs in dealing with the spam." *Id.* at 1055.  Indeed,  the "threshold of standing should not pose a high bar for legitimate service operations . . . [such as] well-recognized ISPs or plainly legitimate Internet access services providers [like Facebook]."  *Id.  See also Facebook, Inc. v. MaxBounty, Inc.*, 274 F.R.D., 279 at 283-84 (N.D. Cal. 2011) (finding that spam transmissions "require at least some routing activity on [the] part of Facebook"); *Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087, 1094 (N.D. Cal. 2007) (finding that Facebook was an IAS for purposes of the CAN-SPAM Act).

The undisputed evidence also shows that Facebook has been "adversely affected" under the CAN-SPAM Act and supports this Court's previous findings.  To establish adverse affects, a plaintiff need only demonstrate "'that the identified concerns are linked in some meaningful way to unwanted spam and, in turn, represent actual harm.  The e-mails at issue in a particular case must . . . contribute to a larger, collective spam problem that caused ISP-type harms.'" *Asis Internet Servs. v. Rausch*, No. 08-03186 EDL, 2010 WL 1838752 at *4 (N.D. Cal. May 3, 2010) (quoting *Gordon*, 575 F.3d at 1054).  Courts have found these harms to include:

> (1) the cost of investing in new equipment to increase capacity and customer service personnel to deal with increased subscriber complaints;
>
> (2) maintaining email filtering systems and other anti-spam technology on their networks to reduce the deluge of spam; and
>
> (3) network crashes, higher bandwidth utilization, and increased costs for hardware and software upgrades, network expansion, and additional personnel.

*Asis Internet Servs.* 2010 WL 1838752, at*3.  *See also Facebook, Inc. v. Fisher*, No. C09-05842 JF (PSG), 2011 WL 250395, at *3 (N.D. Cal. Jan. 26, 2011) (finding that Facebook established harm for purposes of the CAN-SPAM Act through a combination of evidence of complaints by Facebook users, and proof that Facebook "has expended large financial and professional resources to upgrade its security measures").

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

OHSWEST:261400533.4

- 10 -

MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

1    Facebook more than meets the low threshold of the CAN-SPAM Act. █████████

2    ████████████████████████████████████████████████████████████

3    ███████████████████████████████████████████ McGeehan Decl. ¶¶ 6a-6d.

4    ████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████

7    ███████████████ (*id.* at ¶¶ 5, 10-11); ███████████████████████████

8    ████████████████ █████████████████████████████████████████████

9    █████████████████ . *Id.* ¶¶ 10-11. █████████████████████████████

10   █████████████████████████████████████████ . *Id.* ¶ 12. ████████████

11   ███████████████████████████ .[6] *Id.* ████████████████████████████

12   █████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████

14   ███████████████████ *Id.* ¶¶ 12-17. ██████████████████████████████

15   ██████████████████████████████████████ *Id.* ¶¶ 13-17. ███████████

16   ██████████████████████████████████ *Id.* ¶¶ 17. ████████████████████

17   ████████████████████████████████████████████████████████████

18   ████████████████████████████████████ *Id.* ¶ 11; *see also* Cutler Decl. ¶¶ 2-3. ████

19   ████████████████████████████████████████████████████████ Cutler

20   Decl., ¶ 15.

21       In addition to monetary harm and the diversion of human resources aimed at addressing

22   Defendants' attacks, Facebook suffered damage to its reputation and goodwill to the extent users

23   attributed to Facebook an inability to prevent such activity.  *See MySpace, Inc. v. Wallace*, 498 F.

24   Supp. 2d 1293, at 1305 ((C.D. Cal. 2007) irreparable harm proven by the potential for

25   reputational injury); *Facebook, Inc. v. Wallace*, No. C-09-00798-JF, 2009 WL 840391, at *2

26   (N.D. Cal. March 24, 2009) (same).  Given the content of the messages—including Defendants'

27   _____
     [6] ████████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████ Cooper Decl.
     Ex. 9 compare with Ex. 6 at Power's Responses to Requests for Admissions Nos. 54-56.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

OHSWEST:261400533.4                          - 11 -                    MOTION FOR PARTIAL SUMMARY JUDGMENT
                                                                       CASE NO. 5:08-CV-05780 JW



failure to identify themselves as the procurers and initiators of the messages—Facebook users receiving them likely associated Defendants' advertisements with Facebook, thereby harming its goodwill with its users.  Such "[h]arm to business goodwill and reputation is unquantifiable and considered irreparable.  *Myspace, Inc. v. Wallace*, 498 F. Supp. 2d 1293 at 1305; *see also Optinrealbig.com, LLC v. Ironport Sys., Inc*., 323 F. Supp. 2d 1037, 1050 (N.D. Cal. 2004) ("Damage to a business' goodwill is typically an irreparable injury because it is difficult to calculate.")

## 2. <u>Defendants' Conduct Violated 15 U.S.C 7704(a)(1)(A).</u>

Pursuant to the CAN-SPAM Act, "it is unlawful for any person to initiate the transmission, to a protected computer, of a commercial electronic mail message . . . that contains, or is accompanied by, header information that is materially false or materially misleading." 15 U.S.C. § 7704(a)(1).  Here, Defendants initiated at least 60,627 messages that contained materially misleading header information and failed to disclose that Defendants had paid for their initiation.  Under Section 7704(a)(1), Defendants are liable.

### a. <u>Defendants "Initiated" The Transmission Of Electronic Mail Messages.</u>

Defendants initiated the transmission of commercial electronic messages to Facebook users in violation of the CAN-SPAM Act.  15 U.S.C. § 7704(a); *see also* 15 U.S.C. § 7704(a)(1)(A).  The CAN-SPAM Act defines "initiate," as:

> The term "initiate," when used with respect to a commercial electronic mail message, means to originate or transmit such message **or to procure the origination or transmission of such message**, but shall not include actions that constitute routine conveyance of such message.  For purposes of this paragraph, more than one person may be considered to have initiated a message.

15 U.S.C. § 7702(9) (emphasis added).  Here, Defendants initiated the transmission of the Event-related messages when they obtained users' login credentials, accessed those users' accounts, harvested contact information, and used the PowerScript software to create the Events and generate the messages.  The Facebook users did not create the Events or the content.

Additionally, Defendants are liable for initiation for the messages because of the monetary incentive they offered. their users to recruit Facebook users.  "The term 'procure,' when used

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

OHSWEST:261400533.4

- 12 -

MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

1    with respect to the initiation of a commercial electronic message, means intentionally to pay or

2    provide other consideration to, or induce, another person to initiate such a message on one's

3    behalf." 15 U.S.C. § 7702(12).  As this Court recently recognized, a party can "initiate"

4    commercial email messages for purposes of the CAN-SPAM Act when it induces third parties to

5    send misleading communications.  *See Facebook, Inc. v. MaxBounty, Inc.,* No. 5:10-cv-04712-JF

6    (HRL), 2011 WL 4346514, at *5 (N.D. Cal. Sep. 14, 2011) (finding CAN-SPAM Act violations

7    cognizable on allegations that "[defendant] initiated the messages by inducing Facebook users to

8    execute malicious computer code that causes messages to be sent automatically to all of their

9    Facebook 'friends'"); *see also* 15 U.S.C. § 7702(12); *see also FTC v. Phoenix Avatar, LLC*, No.

10   04C2897, 2004 U.S. Dist. LEXIS 14717, *39-40 (N.D. Ill., July 30, 3004) (one who "procures

11   the origination" of offending spam can be liable for "initiating transmission.").  Likewise, where

12   an entity offers to "pay or provide other consideration, or induce, another person to initiate" the

13   transmission of a commercial message, the entity will be deemed to have procured the

14   commercial message in violation of the CAN-SPAM Act.  *See* 15 U.S.C. § 7702(12); *see* Federal

15   Register, Vol. 73, No. 99, at p. 29672 (stating that if a seller "'induces' the forwarding of [a]

16   message—such as by offering payment in exchange for generating traffic to a website—it will be

17   an 'initiator,' and thus also the 'sender,' of the forwarded message").  Cooper Ex. 10.

18   ████████████████████████████████████████████████████████████████

19   ████████████████████.  *See* Dkt. Nos. 9 at ¶¶ 65, 70, 72; 54 ¶¶  65, 70, 72.  Cooper Ex. 2 at

20   197:9-12; 203:19-204:7; 212:19-213:4; 256:8-257:10; 257:22-258:11; 259:20-260:1; 261:23-

21   262:5; 263:14-264:12; 266:7-21; 273:6-274:10.  As part of their Launch Promotion, Defendants

22   presented Power users with a button on the Power.com website which, once clicked, executed the

23   PowerScript software to automatically create an electronic mail message.  *Id.*, at 183:15-184:17.

24   ████████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████

26   ████████████████████ Cooper Decl. Ex. 2 at 197:9-12; 203:19-204:7; 212:19-213:4; 256:8-

27   257:10; 257:22-258:11; 259:20-260:1; 261:23-262:5; 263:14-264:12; 266:7-21; 273:6-274:10;

28   Melling Decl. ¶¶ 3, 17-24. ████████████████████████████████████

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

OHSWEST:261400533.4

- 13 -

MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

1  ███████████████████████████████████████████

2  ████████████████████████████  Cooper Decl. Ex. 2 at 181:21-186:2; 197:9-12;

3  203:19-204:7; 205:12-206:22; 207:9-208:14; 212:19-213:4; 256:8-257:10; 257:22-258:11;

4  259:20-260;1; 261:23-262:5; 263:14-264:12; 266:7-21; 273:6-274:10.  ███████████████

5  ████████████████████████████████████████████

6  █████████████████  *See Id.* at 197:9-12; 203:19-204:7; 212:19-213:4; 256:8-257:10;

7  257:22-258:11; 259:20-260:1; 261:23-262:5; 263:14-264:12; 266:7-21; 273:6-274:10.  Power

8  admits it ultimately paid 30 to 40 Power users.  *Id.* at 189:5-6

### b.   **Defendants' Messages Were "Commercial Electronic Mail Messages."**

Defendants' messages were commercial.  The CAN-SPAM Act defines a "commercial electronic mail message" as:

> any electronic mail message the primary purpose of which is the commercial advertisement or promotion of a commercial product or service (including content on an Internet website operated for a commercial purpose).

15 U.S.C. § 7702(2)(A); *see also* 16 C.F.R. 316.3(a)(1).  Commercial electronic mail messages include messages "that may not themselves appear commercial, but that promote a 'commercial service' such as an 'Internet website operated for a commercial purpose.'"  15 U.S.C. § 7704(a)(5)(A); *see also Myspace, Inc.* 498 F. Supp. 2d 1293, at 1303; *Aitken v. Commc'ns Workers of America*, 496 F. Supp. 2d 653, 662 (E.D. Va. 2007).[7]

The communications constitute commercial messages under CAN-SPAM.  15 U.S.C. § 7702(2)(A).  First, there can be little dispute that the invitations were electronic mail messages.

█████████████████████████████████████████████

████████████████  Cooper Decl. Ex. 2 at 197:9-12; 203:19-204:7; 212:19-213:4; 256:8-257:10;

257:22-258:11; 259:20-260:1; 261:23-262:5; 263:14-264:12; 266:7-21; 273:6-274:10; McGeehan

Decl. ¶¶8-9; Melling Decl. ¶¶ 3, 17-30.  These invitations were sent to a user's friends and

---

[7] It is not necessary that the commercial messages be classic emails sent to a user's email address, as this Court has held that electronic social network messages transmitted to a Facebook user's "wall," "news feed," "home page," and inbox also are commercial electronic messages for purposes of 15 U.S.C. § 7702(2)(A) of the CAN-SPAM Act.  *See MaxBounty, Inc.*, 274 F.R.D.  at 282-84.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 14 -

MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

OHSWEST:261400533.4

constitute an electronic mail message.  15 U.S.C. § 7702(6).  Second, the invitations were purely commercial in nature.  The sole purpose of the messages was to advertise Power.com, a commercial service.  Dkt. No. 54 at ¶ 70.

### c.    Defendants Messages Had Materially False And Misleading Headers.

The headers on Defendants' Event notification messages were materially misleading, thereby violating the CAN-SPAM Act.  The CAN-SPAM Act requires that senders of commercial electronic mail not mislead recipients as to the source of such messages. 15 U.S.C. 7701(b)(2) and (b)(3).  Headers that impair a recipient's ability to identify, locate, or respond to the person who initiated the message are misleading because they provide no way for a user to request that the sender stop all future commercial messages.  *See Gordon,* 573 F.3d at 1064.  Where, as here, a spammer makes it appear in the header or subject line that the message originates from a friend, the message appears to have more credibility and therefore is more likely to trick an objective recipient into believing the message is legitimate.  *See Aitken,* 496 F. Supp. 2d at 667 (finding "a message concerning working conditions or benefits at Verizon might have more credibility coming from a putative Verizon manager than an outsider. Thus, the misleading header information may have affected an objective recipient's opinion of the value of joining CWA [the subject matter of the commercial electronic message]").

The PowerScript application, through its various methods of causing electronic mail messages to be sent to Facebook users as part of the Power spam campaign, misleadingly suggested that the Launch Promotion messages were initiated and sent by Facebook users, when in fact, Defendants initiated and sent them.  Dkt. No. 54 at ¶ 70.  Specifically, these messages were sent by Power through Facebook's messaging tools, including: 1) ██████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████.  Melling Decl., ¶¶ 3, 17-30;  McGeehan Decl. ¶¶ 8-9, 12.  With all three methods, Defendants' automated software inserted misleading information regarding who initiated the transmission of the messages.  Nowhere in the Event

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

OHSWEST:261400533.4

1  creation or invitation process did Defendants say that Power, not the user or Facebook, initiated

2  the transmission or was paying the user for sending the message.  *See* Cooper Decl., Ex. 6 at

3  Power Venture's Response to Request for Admission No. 50.  In fact, the user was not notified at

4  all as to what Power was doing.

5          **3.**       **Trebling Of Damages Is Warranted**

6              **a.**     **Defendants Knowingly And Willfully Violated The Act**

7         The Court should award treble damages for Defendants' knowing and willful violation of

8  Section 7704(a)(1).  *See* 15 U.S.C. § 7706(g)(3)(A).  Defendants knowingly and willfully violated

9  the Act when they ████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████.  Cooper Decl.  Ex. 2  at

11  181:21-186:2, 197:9-12; 203:19-204:7;  205:12-206:22, 207:9-208:14;  212:19-213:4;  256:8-

12  257:10;  257:22-258:11; 259:20-260;1;  261:23-262:5;  263:14-264:12;  266:7-21; 273:6-274:10;

13  Melling Decl. ¶¶ 3, 11, 19. ████████████████████████████████████████████████████

14  ██████████████████████████████████. McGeehan Decl. ¶¶ 11,13. ███████████████

15  ████████████████████████████████████████████████████████████████████

16  ██████ *Id.* ¶¶ 12,13.  Indeed, Vachani even warned his coworkers that they should be prepared

17  for Facebook to block Defendants' efforts.  Cooper Decl. Ex. 11.  ██████████████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████████████

20                 McGeehan Decl. ¶ 14. ████████████████████████████████

21  ████████████████████████████████████████████████████████████████████████

22  █████████████████████████████████ Cooper Decl., Ex. 9.  This evidence was

23  destroyed after litigation commenced.

24         Defendants' violations of the CAN-SPAM Act were knowing and willful, thereby

25  supporting an award of treble damages.  Defendants initiated at least 60,627 electronic mail

26  messages.  While Defendants undoubtedly sent considerably more messages, they have destroyed

27  the evidence that would show the total number thus further supporting trebling when they had a

28  duty to preserve.  When each known violation of $100 is trebled Defendants should be liable to

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

OHSWEST:261400533.4

- 16 -

MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

1    Facebook for at least ███████.

2                    **b.**     **Defendants' Directory Harvesting Is Also An Aggravated**
3                              **Violation**

4            The Court should award treble damages where, as here, Defendants' unlawful activity

5    included one or more of the aggravated violations in § 7704(b), such as directory harvesting.

6    Directory harvesting constitutes an "aggravated violation" where:

7               the electronic mail address of the recipient was obtained using an
                automated means from an Internet website or proprietary online
8               service operated by another person, and such website or online
                service included, at the time the address was obtained, a notice
9               stating that the operator of such website or online service will not
                give, sell, or otherwise transfer addresses maintained by such
10              website or online service to any other party for the purposes of
                initiating, or enabling others to initiate, electronic mail messages[.]

11   15 U.S.C. § 7704(b)(1)(A). █████████████████████████████

12   ████████████████████████████████████████████████████

13   ████████████████████████████████

14   ███████████████████████████████████████

15   ███████████████████████████████████████ Melling Decl. ¶ 19.

16   ████████████████████████████████████████████

17   ██████. *Id.* ███████████████████████████████

18   ██████████████████████████████████████

19   ████████████████████ *Id.*  Defendants admit they used the harvested addressing

20   information from Facebook to send their messages.  Cooper Decl. Ex. 6 at Power's Responses to

21   Requests for Admissions Nos. 15, 18, 22, 37, 43-44, 50, 54-56;  Ex. 2 at 182:16-186:2; 191:5-

22   192:18; 197:4-8; 199:10-15; 203:4-18. ███████████████████, (McGeehan

23   Decl. ¶ 7) ████████████████████████████ *See* McGeehan Decl. Ex. 1.

24           Defendants' automatic harvesting of affected users' Facebook friends' user IDs to carry

25   out Power's spam attack on Facebook is exactly the type of conduct that supports an award of

26   treble damages.

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

OHSWEST:261400533.4

- 17 -

MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

4.      **Defendant Vachani Is Independently Liable Under The CAN-SPAM Act.**

Vachani is equally liable with his company, Power Ventures.  "'[A] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf.'"  *The Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996) (quoting *Transgo, Inc. v. Ajac Trans. Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985)).  Nobody disputes that Vachani participated in, authorized and directed Power's spamming activity. Vachani admits the Launch Promotion was his idea, and that he was responsible for it.  Cooper Decl. Ex. 2 at 181:21-183:9; Ex. 5, Power's Response to Interrogatories Nos. 8-10, 16. Defendants further admit that Vachani is "the Power employee or director responsible for creating the e-mail messages sent to Facebook Users asking Facebook users to use the Power website to access the Facebook website."  *Id.* Ex. 5 at Power's Response to Interrogatory No. 9.  Defendants also admit that Vachani was the "employee or director responsible for developing the technology to allow Power or Power users to access the Facebook website."  *Id.* at Power's Response to Interrogatory No. 8.

IV.      **CONCLUSION**

For the foregoing reasons, Facebook respectfully requests that the Court grant its Motion for Partial Summary Judgment and find Defendants liable under the CAN-SPAM Act and award damages of ▮.

Dated: November 14, 2011          ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____*/s/ I. Neel Chatterjee /s/*_____
I Neel Chatterjee
Attorneys for Plaintiff
FACEBOOK, INC.