1  I. NEEL CHATTERJEE (STATE BAR NO. 173985)
   nchatterjee@orrick.com
2  MONTE M.F. COOPER (STATE BAR NO. 196746)
   mcooper@orrick.com
3  THERESA A. SUTTON (STATE BAR NO. 211857)
   tsutton@orrick.com
4  MORVARID METANAT (STATE BAR NO. 268228)
   mmetanat@orrick.com
5  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
6  Menlo Park, CA  94025
   Telephone:     650-614-7400
7  Facsimile:     650-614-7401

8  Attorneys for Plaintiff
   FACEBOOK, INC.

9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                SAN FRANCISCO DIVISION

13

14  FACEBOOK, INC.,                    Case No.   5:08-cv-05780 JW (JCS)

15          Plaintiffs,               **FACEBOOK, INC.'S OBJECTIONS
                                      TO EVIDENCE SUBMITTED IN
16      v.                            SUPPORT OF DEFENDANTS'
                                      OPPOSITION TO FACEBOOK'S
17  POWER VENTURES, INC. a Cayman Island   MOTIONS FOR PARTIAL
    Corporation,; STEVE VACHANI, an   SUMMARY JUDGMENT ON COUNT
18  individual; DOE 1, d/b/a POWER.COM,   1 (CAN-SPAM ACT, 15 U.S.C. § 7704)
    DOES 2-25, inclusive,             AND UNDER CALIFORNIA PENAL
19                                    CODE § 502 AND THE COMPUTER
            Defendants.               FRAUD AND ABUSE ACT, 18 U.S.C. §
20                                    1030**

21                                    Dept:       Courtroom 9, 19th Floor
                                      Judge:      Hon. Chief Judge James Ware
22

23                       **FILED UNDER SEAL**

24

25

26

27

28

1    Plaintiff Facebook, Inc. ("Facebook") hereby objects to the evidence submitted in Support

2    of Defendants Power Ventures, Inc.'s and Steve Vachani's Opposition to Facebook's Motions for

3    Partial Summary Judgment on Count 1 (CAN-SPAM Act, 15 U.S.C. § 7704) and Under

4    California Penal Code § 502 and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 as

5    follows:

6         1.   Facebook objects under Federal Rules of Evidence 401, 402, 602 and 701 to

7    paragraphs 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 18, 19, 20, 21, 22, and 23 of the Vachani

8    Declaration on the grounds that the testimony lacks foundation and constitutes improper and

9    irrelevant opinions, conclusions, and speculation rather than factual averments.

10        2.   Facebook objects under Federal Rules of Evidence 401, 402, and 602 to

11   Defendants' references to Craig Clark's deposition testimony in support of their Opposition to

12   Facebook's Motions for Partial Summary Judgment on the grounds that Mr. Clark has no

13   personal knowledge of the underlying facts of this litigation.

14   **I.    <u>APPLICABLE RULES OF EVIDENCE</u>**

15        Federal Rule of Evidence 701 provides that "[i]f a witness is not testifying as an expert,

16   testimony in the form of an opinion is limited to one that is (a) rationally based on the witness's

17   perception, (b) helpful to a clearly understanding of the witness's testimony or the determination

18   of a fact in issue, and (c) not based on a scientific, technical or other specialized knowledge

19   within the scope of Rule 702."  Fed. R. Evid. 701; *see also Christiansen v. Nat'l Savings and*

20   *Trust Co.*, 683 F.2d 520, 529 (D.C. Cir. 1982) (inadmissibility of conclusion that defendants held

21   a "fiduciary" relationship to plaintiffs).  Here, Defendants offer objectionable testimony in

22   Vachani's Declaration.

23        Vachani also lacks personal knowledge of many of the matters he testifies to, including

24   the functionality of Defendants' source code used to access the Facebook website and services.

25   "A witness may testify to a matter only if evidence is introduced sufficient to support a finding

26   that the witness has personal knowledge of the matter.  Fed. R. of Evid. 602.  *See also Nat'l Steel*

27   *Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997) (affirming district court's

28   exclusion of evidence due to a lack of personal knowledge in a summary judgment proceeding);

1   *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995) (declarations by counsel in a

2   summary judgment proceeding were entitled to no weight where counsel lacked personal

3   knowledge).

4        Federal Rule of Evidence 401 defines "[r]elevant evidence" as "it has any tendency to

5   make a fact more or less probable than it would be without the evidence; and the fact is of

6   consequence in determining the action."  Evidence which is not relevant is not admissible.  Fed.

7   R. Evid. 402.

8   **II.**     **<u>OBJECTIONS TO THE VACHANI DECLARATION</u>**

9        Facebook objects to paragraphs 7-14 and 16-23 of the Vachani Declaration on the grounds

10  that Vachani lacks personal knowledge of the facts testified to, the testimony lacks foundation,

11  and constitutes improper and irrelevant opinions, conclusions, and speculation rather than factual

12  averments.  Fed. R. Evid. 602 & 701; *see also Campell v. EQT Prod. Co.,* No. 10-151-GFVT,

13  2011 U.S. Dist. LEXIS 88624, *16 (E.D. Ky., Aug. 8 2011) (internal citations omitted) ("general

14  denials and factual allegations not based on personal knowledge are insufficient to avoid

15  summary judgment);  *see also Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (internal

16  citations omitted) ("conclusory and self-serving affidavits are not sufficient" to defeat summary

17  judgment); *see also WNS Holdings, LLC v. United Parcel Service, Inc.,* No. 08-cv-275-bbc, 2009

18  U.S. Dist. LEXIS 59829, *11 (W.D. Wis. Jul. 14, 2009) (disregarding portions of lay witness's

19  testimony where the testimony required specialized knowledge and witness had not been

20  disclosed as an expert witness); *Nichols v. Johnson*, No. 00C7785, 2002 U.S. Dist. LEXIS 7745,

21  *11 (N.D. Ill. April 30, 2002) (noting that Rule 701's requirement that lay opinion testimony not

22  be "based on scientific, technical or other specialized knowledge within the scope of Rule 702" is

23  there to "insure[] that a party will not evade the expert witness disclosure requirements . . . by

24  simply calling an expert witness in the guise of a lay person.").[1]

25

26  ─────────────────

27  [1] For brevity, Facebook offers examples of the objectionable evidence submitted in support of
Defendants' Oppositions to Facebook's Motions for Partial Summary Judgment.  Attached hereto
as Appendix A is a chart listing Facebook's specific objections to Vachani's Declaration and

28  citations to the deposition testimony of Craig Clark.

A.     **Vachani Is Not A Qualified Expert And Thus Cannot Offer Expert Testimony.**

Defendants have not offered Power's CEO, Steve Vachani, as an expert witness in this matter.   Despite their failure to do so, Defendants offer into evidence Vachani's Declaration, which includes numerous assertions that require an expert's analysis of Defendants' source code and the manner in which it interacted with the Facebook website.  This is improper.  For example, in paragraph 10 of his Declaration, Vachani asserts:

> In late December 2008, Facebook attempted to prevent Power's users from accessing Facebook through Power.com by blocking one IP ("Internet Protocol") address utilized by Power.  An IP address is simply a numeric label that is assigned to devices participating in a computer network, including web servers and other types of computers.  For example, the IP address of the Facebook.com web server is 66.220.149.11 as of November 26, 2011.

*See* Appendix A at No. 4.  In Paragraph 11, Vachani states that "Facebook's IP block was ineffective because it blocked only one outdated IP address Power had used, and did not block other IPs that Power was using in a normal course of business"  *See id*. at No. 5.  Vachani's testimony in paragraphs 7-9 and 13 fare little better.  *See id*. at Nos. 1-3, 7.  These paragraphs include Vachani's opinions regarding Power's connection to the Facebook website after Facebook had implemented its blocks connected to the Facebook website.  Vachani lacks the required technical expertise to make such assertions.  Defendants have failed to provide a sufficient foundation for Vachani's averments.  Indeed, Mr. Vachani admitted that he is "not a skilled [computer] programmer by profession" and that he has no personal knowledge about how PowerScript software Defendants used to connect to the Facebook website even functioned.  *See* the 12/2/11 Declaration of Theresa A. Sutton in Support of Facebook's Opp'n to Defs,' Mot, for Summ. J., Ex. 1 at 12:24-13:15; 14:1-5; 182:16-186:6; 189:10-191:8; 195:23-197:13; 203:19-206:22; 209:11-15; 212:19-213:4; 254:2-15; 256:8-257:10; 257:22-267:22; 273:6-274:10.

B.     **Vachani Is Not An Attorney And Is Not Qualified To Render Legal Opinions.**

Vachani's declaration also includes impermissible legal conclusions, which must be disregarded.  Vachani is not a licensed attorney and is not qualified to render the conclusions he does.  For example, his statements regarding who "initiated" or "sent" the messages at issue

1   constitute legal conclusions and are, thus, impermissible lay opinion testimony.  *See* 15 U.S.C.

2   § 7704(a)(1); Appendix A at Nos. 1-4, 8-10, & 12-15.

3       **C.      Vachani's Testimony Is Not Helpful To A Clear Understanding Of Testimony**
        **Or Determinant Of Fact In Issue And Is Thereby Irrelevant.**

4

5       The vast majority of Vachani's declaration is not helpful to a clear understanding of any

6   testimony or determination of any facts in issue.  For example, in paragraph 21, Vachani asserts

7   that "[l]ike Facebook, Power also has not received a single complaint from a Facebook user about

8   any of the vents described in Facebook's complaint."  This statement is unhelpful for a number of

9   reasons.  Appendix A at No. 14.  First, Defendants have not provided any foundation for

10  Vachani's assertion that Facebook has not received a "single complaint" from Facebook users.

11  Vachani does not have personal knowledge of whether Facebook received any complaints.

12  Conclusory, self serving statements in affidavits and declarations may be disregarded when those

13  statements are "lacking detailed facts and any supporting evidence."  *Fed. Trade Comm'n v.*

14  *Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997); *see Villiarimo v. Aloha Island*

15  *Air, Inc.*, 281 F.3d 1054 & n.5, 1061 (9th Cir. 2002) (finding that declaration testimony that was

16  "uncorroborated and self-serving" and included facts beyond the declarant's personal knowledge

17  and "provide[d] no indications how she [knew] [the averments] to be true," did not create a

18  genuine issue of material fact.).  Second, this statement is irrelevant.  The issue is whether the

19  commercial messages are misleading, not whether Facebook or Power received any actual

20  complaints regarding the events described in Facebook's complaint.  Vachani's statements have

21  no bearing on Facebook's claims against Power and will not assist in the determination of any

22  issues in this matter.

23      Paragraph 18 is similarly deficient.  Vachani states that "All of the content in these email

24  messages that Facebook alleges to be misleading and false was written and appended to the

25  message by Facebook itself."  *See* Appendix A at No. 11.  Not only is Vachani unqualified to

26  make such statements, Vachani's testimony is misleading.  Misleading, conclusory allegations

27  with no factual support are improper and should not be considered by the Court.  *Whitlock v.*

28  *Pepsi Americas*, 681 F. Supp. 2d 1123, 1125 (N.D. Cal. 2010).  Facebook does not contend that

the misleading portions of Defendants' Launch Promotion messages are limited to just the "From:" field and closing signature, but rather, that the messages in their entirety are misleading. The messages appear to be generated by Facebook users when, in reality, Power induces its users to send messages to Facebook users by offering them monetary incentives and then uses its automated software to generate and transmit these messages through the Facebook system and servers. *See* 11/14/11 Mot. for Partial Summ. J on Count 1 at 13:18-14:8. Therefore, the fact that the "from" field and signature were automatically appended to the messages by Facebook's systems after Power had initiated the transmission of these messages is irrelevant and unhelpful.

Vachani's opinions constitute impermissible lay opinion testimony. His declaration is rife with inaccuracies, legal conclusions, and self-serving, unsupported and irrelevant averments. Vachani's testimony should not be considered.

## III. OBJECTIONS TO DEFENDANTS' RELIANCE ON THE DEPOSITION TESTIMONY OF CRAIG CLARK.[2]

Defendants' reliance on the deposition testimony of Craig Clark, a Facebook employee, also is improper. *See* Appendix A at Nos. 17-24. As an initial matter, Mr. Clark was not deposed as Facebook's 30(b)(6) witness, but rather, in his individual capacity. 12/2/11 Declaration of Theresa A. Sutton in Support of Facebook's Opposition to Defendants' Motion for Summary Judgment, Ex. 3 at 7:5-6; 81:8-18; 85:22-86:1; 107:11-12. Of particular significance is the fact that Mr. Clark was not even a Facebook employee during the time the underlying events of this litigation occurred. *Id*. at 7:5-6. For example, Mr. Clark does not have personal knowledge of the process by which Power generated and transmitted its Launch Promotion Invitation messages to Facebook users. *Id*. at 68:10-69:25. Nor does Mr. Clark have any personal knowledge of the particular injuries and losses suffered by Facebook as a result of Defendants' conduct. *Id*. at 116:14-18. Mr. Clark's personal knowledge regarding Defendants' actions, and the subsequent actions taken by Facebook as a result of such actions, is understandably limited and not relevant

---

[2] For brevity, Facebook offers examples of the Defendants' objections to Defendants' references to Craig Clark's deposition testimony. A complete list of Facebook's objections to Mr. Clark's testimony is included in Appendix A, attached hereto. In addition, the relevant portions of Mr. Clark's deposition testimony are attached as Ex. 3 to the Decl. of Theresa A. Sutton in Support of Facebook's Opp'n to Defs. Mot. for Summ. J.

1   to Facebook's claims against Defendants.

2   **IV.**      **CONCLUSION**

3            For the foregoing reasons, Facebook objects to paragraphs 7, 8, 9, 10, 11, 12, 13, 14, 16,

4   17, 18, 19, 20, 21, 22, and 23 of Vachani's Declaration in Support of Defendants Power Ventures,

5   Inc.'s and Steve Vachani's Opposition to Facebook's Motions for Partial Summary Judgment on

6   Count 1 (CAN-SPAM Act, 15 U.S.C. § 7704) and Under California Penal Code Section 502 and

7   the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and to Defendants' reliance on the

8   deposition testimony of Craig Clark in Support thereof as referenced in Appendix A, and

9   respectfully requests that the Court disregard them.

10

11   Dated: December 12, 2011                    ORRICK, HERRINGTON & SUTCLIFFE LLP

12

13                                              /s/*Morvarid Metanat* /s/
                                              _____
14                                                **Morvarid Metanat**
                                                 Attorneys for Plaintiff
15                                                  FACEBOOK, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

## APPENDIX A
### Facebook, Inc.'s Evidentiary Objections to Defendants' Evidence in Support of Defendants' Motion of Summary Judgment

| No. | Evidence Objected To | Objections |
|-----|----------------------|------------|
| 1. | **Paragraph 7 of the Vachani Declaration**<br><br>"If the box authorizing the event was checked and Power users clicked 'Yes, I do!,' the user's friends were then invited to attend the launch promotion event." | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br><br>The process by which the relevant event invitations were transmitted to Facebook users is contained in Defendants' and Facebook's source code and requires expert analysis. Vachani does not have the required technical background to make such assertions. In addition, Defendants have failed to provide proper foundation for, and Vachani does not have personal knowledge of, the internal workings of the Facebook system to make averments regarding the Facebook's processes. Therefore, his testimony regarding this matter is irrelevant.<br><br>**F.R.E. §§ 401-402, 602 & 701.** |
| 2. | **Paragraph 8 of the Vachani Declaration**<br><br>"If a Power user chose not to participate, he or she had four opportunities to decline: by ignoring the Launch Promotion notice, by unchecking the box authorizing the creation of a Facebook event, by clicking 'No, thanks,' or by clicking the 'X' in the corner of the Launch Promotion to close the offer." | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br><br>The process by which the relevant event invitations were transmitted to Facebook users is contained in Defendants' and Facebook's source code and requires expert analysis. Vachani does not have the required technical background to make such assertions. In addition, Defendants have failed to provide proper foundation for, and Vachani does not have personal knowledge of, the internal workings of the Facebook system to make averments regarding the Facebook's processes. Therefore, his testimony regarding this matter is irrelevant.<br><br>**F.R.E. §§ 401-402, 602 & 701.** |

| No. | Evidence Objected To | Objections |
|---|---|---|
| 3. | **Paragraph 9 of the Vachani Declaration**<br><br>"If a Facebook user authorized PowerScript to create the event, Facebook then automatically sent an email notification to everyone who was invited to the Launch Promotion event, which Facebook does whenever a Facebook user is invited to an event." | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br><br>The process by which the relevant event invitations were transmitted to Facebook users is contained in Defendants' and Facebook's source code and requires expert analysis. Vachani does not have the required technical background to make such assertions. In addition, Defendants have failed to provide proper foundation for Vachani's knowledge of, the internal workings of the Facebook system to make averments regarding the Facebook's processes. Indeed, Vachani has no personal knowledge regarding this issue. Therefore, his testimony regarding this matter is irrelevant.<br><br>**Legal Conclusion.**<br><br>Whether Facebook or Defendants sent the message at issue is a legal conclusion to be determined by the Court. *Evangelista v. Inlandboatmen's Union of the Pacific*, 777 F.2d 1390, 1398 n.3 (9th Cir. 1985) (lay witness may not testify as to a legal conclusion).<br><br>**F.R.E. §§ 401-402, 602 & 701.** |
| 4. | **Paragraph 10 of the Vachani Declaration**<br><br>"In late December 2008, Facebook attempted to prevent Power's users from accessing Facebook through Power.com by blocking one IP ('Internet Protocol') address utilized by Power. An IP address is simply a numeric label that is assigned to devices participating in a computer network, including web servers and other types of computers. For example, the IP address for the Facebook.com web server is 66.220.149.11 as of November 26, 2011." | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br><br>The process by which Power connected to the Facebook website after Facebook implemented technical blocks is contained in Defendants' source code and requires expert analysis. Vachani does not have the required technical background to make assertions regarding Power's ability to connect to the Facebook website after Facebook implemented its blocks against Power. Nor has been deemed an expert on IP addresses. Moreover, Vachani's testimony regarding Facebook's IP address lacks foundation and personal knowledge. Therefore, his testimony regarding this matter is irrelevant.<br><br>**F.R.E. §§ 401-402, 602 & 701.** |

| No. | Evidence Objected To | Objections |
|---|---|---|
| 5. | **Paragraph 11 of the Vachani Declaration**<br><br>"Power did not undertake any effort to circumvent that block, and did not provide users with any tools designed to circumvent it. Nevertheless, Facebook's IP block was ineffective because it blocked only one outdated IP address Power had used, and did not block other IPs that Power was using in the normal course of business." | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation.**<br><br>The process by which Power connected to the Facebook website after Facebook implemented technical blocks is contained in Defendants' source code and requires expert analysis.  Vachani does not have the required technical background to make assertions regarding Power's ability to connect to the Facebook website after Facebook implemented its blocks against Power.  Therefore, his testimony regarding this matter is irrelevant.<br><br>Moreover, Vachani's testimony is misleading.  Vachani's Declaration is carefully worded in an attempt to get around the Court's previous finding that circumvention of Facebook's technical blocking measures could result in Defendants' liability.  Specifically, Vachani asserts that "Power did not undertake any effort to circumvent that block, and did not provide users with any tools designed to circumvent it."  12/02/11 Vachani Decl., at ¶ 11.  Defendants did not make any effort to circumvent Facebook's blocks at that time, however, only because their circumvention measures had already been written into the PowerScript and no further efforts were required for them to continue to access the Facebook website.  *See* 11/14/11 Declaration of Lawrence Melling in Support of Facebook's Opposition to Defendants' Motion for Summary Judgment ("Melling Decl."), ¶¶ 34-42.<br><br>**F.R.E. §§ 401-402, 602 & 701.** |

| No. | Evidence Objected To | Objections |
|---|---|---|
| 6. | **Paragraph 12 of the Vachani Declaration**<br><br>"After it became aware of the attempted IP blocking, Power undertook efforts to implement Facebook Connect as Facebook had requested. Facebook Connect is a platform designed by Facebook that allows third party websites to connect to Facebook." | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br><br>The process by which Power connected to the Facebook website after Facebook implemented technical blocks is contained in Defendants' source code and requires expert analysis.  Vachani does not have the required technical background to make assertions regarding Power's ability to connect to the Facebook website after Facebook implemented its blocks against Power.  Therefore, Vachani's testimony regarding this issue is irrelevant.<br><br>**F.R.E. §§ 401-402, 602 & 701.** |
| 7. | **Paragraph 13 of the Vachani Declaration**<br><br>"Negotiations between Power and Facebook over the implementation of Facebook Connect broke down, and Power voluntarily shut down its Facebook integration completely in early 2009. Power did not circumvent any technical barriers and turned off the Facebook integration even though Facebook's IP blocking attack was partial, incomplete, and ineffective." | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br><br>The process by which Power connected to the Facebook website after Facebook implemented technical blocks is contained in Defendants' source code and requires expert analysis.  Vachani does not have the required technical background to make assertions regarding Power's ability to connect to the Facebook website after Facebook implemented its blocks against Power.<br><br>Moreover, Vachani's testimony is erroneous and misleading.  Defendants turned off the "integration" with Facebook only after circumventing Facebook's blocks numerous times.  *See* Melling Decl., ¶¶ 34-42; 11/14/11 Declaration of Joseph Cutler in Support of Facebook's Mot. for Partial Summ. J. on Count 1 ("Cutler Decl."), Ex. C at 3.<br><br>**Legal Conclusion.**<br><br>Whether Defendants circumvented Facebook's technical blocks is a legal conclusion to be determined by the Court. *Evangelista*, 777 F.2d at 1398 n.3 (lay witness may not testify as to a legal conclusion).<br><br>**F.R.E. §§ 401-402, 602 & 701.** |

| No. | Evidence Objected To | Objections |
|---|---|---|
| 8. | **Paragraph 14 of the Vachani Declaration**<br><br>"Power never made any additional attempts to connect to Facebook in any way." | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br><br>The process by which Power connected to the Facebook website after Facebook implemented technical blocks is contained in Defendants' source code and requires expert analysis.  Vachani does not have the required technical background to make assertions regarding Power's ability to connect to the Facebook website after Facebook implemented its blocks against Power.<br><br>Defendants circumvented multiple blocks implemented by Facebook.  *See* Melling Decl., ¶¶ 34-42; Cutler Decl. Ex. C at 3.<br><br>**Legal Conclusion.**<br><br>Whether Defendants circumvented Facebook's technical blocks is a legal conclusion to be determined by the Court. *Evangelista*, 777 F.2d at 1398 n.3 (lay witness may not testify as to a legal conclusion).<br><br>**F.R.E. §§ 401-402, 602 & 701.** |
| 9. | **Paragraph 16 of the Vachani Declaration**<br><br>"Facebook allows its users to create 'events' and invite their friends to attend." | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br><br>Not only does Vachani have failed to provide proper foundation for, and Vachani does not have personal knowledge of, the internal workings of the Facebook system to make averments regarding the Facebook's processes.  Therefore, his testimony regarding this matter is irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |

| No. | Evidence Objected To | Objections |
|-----|----------------------|------------|
| **10.** | **Paragraph 17 of the Vachani Declaration**<br><br>"The screen captures in our accompanying memorandum of law are true and correct representations of the screens used in Facebook's event creation process." | **Lacks Authentication/Lack of Personal Knowledge/Lack of Foundation;**<br><br>Vachani's conclusory statement is insufficient to authenticate the screen captures included in Defendants' Motion for Summary Judgment.  Vachani's testimony lacks foundation and personal knowledge and is thereby irrelevant and cannot be used to authenticate the screen captures referenced.<br><br>**F.R.E. §§  401-402, 602 & 901.** |

| No. | Evidence Objected To | Objections |
|---|---|---|
| 11. | **Paragraph 18 of the Vachani Declaration**<br><br>"I understand that Facebook claims that Power sent 60,627 messages to Facebook users. That is not true. Power did not send a single one of those messages. Facebook sent all 60,627 of those messages. The messages came from Facebook's servers and identify Facebook as the party who sent the email. The return address is Facebook's address. Facebook determines the address that appears in the 'From:' field. Facebook also adds the closing signature from 'The Facebook Team.' Neither Power nor its users have any control over these elements of the email message. All of the content in these email messages that Facebook alleges to be misleading and false was written and appended to the message by Facebook. Facebook appends that very same text to every email communication it sends after an event is created." | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br><br>The process by which the relevant messages were transmitted to Facebook users is contained in Defendants' and Facebook's source code and requires expert analysis.  Vachani does not have the required technical background to make such assertions.  Therefore, his testimony regarding this matter is irrelevant.<br><br>Moreover, this testimony is misleading. First, it is not Facebook's contention that the misleading portions of Defendants' Launch Promotion messages are limited to just the "From:" field and closing signature, but rather, that the messages in their entirety are misleading because the messages appear to be generated by Facebook users when, in reality, Power induces its users, and uses its automated software to, generate and transmit these messages through the Facebook system and servers.  Therefore, the fact that the "from" field and signature were automatically appended to the messages by Facebook's systems *after* Power had initiated the transmission of these messages is irrelevant.<br><br>Conveniently left out of Vachani's testimony is the fact that Defendants offered Power users monetary incentives to initiate the transmission of the referenced emails to Facebook, conduct that is in violation of the CAN-SPAM Act.  11/14/11 Mot. Partial Summ. J. on Count 1 13:18-14:8.<br><br>**Legal Conclusion.**<br><br>Whether Facebook or Defendants sent the message at issue is a legal conclusion to be determined by the Court.  *Evangelista*, 777 F.2d at 1398 n.3 (lay witness may not testify as to a legal conclusion).<br><br>**F.R.E. §§ 401-402, 602 & 701.** |

| No. | Evidence Objected To | Objections |
|---|---|---|
| 12. | **Paragraph 19 of the Vachani Declaration**<br><br>"The specific email referenced in Facebook's complaint was generated by Facebook as a result of a Facebook user named 'Nik' creating an event and selecting the friends to invite. It was Nik, not Power, that logged on to Facebook and created the event. It was Nik, not Power, that chose the friends he wished to invite. Nik could only send the invitation to other Facebook members who had agreed to 'friend' Nik, and thus had expressly agreed to receive communications from Nik. Facebook then sent an email to those friends on Nik's behalf. Power did not initiate this message. Power did not select the recipients to whom it was sent. And Power had no control over the content of the message or the header information. Only Facebook did. Power did not transmit any email message to any Facebook account. Nor did Power make available any utility that would enable a user to transmit such messages." | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br><br>The process by which the relevant messages were generated and transmitted to Facebook users is contained in Defendants' and Facebook's source code and requires expert analysis. Vachani does not have the required technical background to make such assertions. Therefore, his testimony regarding this matter is irrelevant.<br><br>This testimony is also misleading. Conveniently left out of Vachani's testimony is the fact that Defendants offered Power users monetary incentives to initiate the transmission of the referenced emails to Facebook, conduct that is in violation of the CAN-SPAM Act. 11/14/11 Mot. Partial Summ. J. on Count 1 13:18-14:8.<br><br>**Legal Conclusion**.<br><br>Whether Facebook or Defendants transmitted the referenced emails is a legal conclusion to be determined by the Court. *Evangelista*, 777 F.2d at 1398 n.3 (lay witness may not testify as to a legal conclusion).<br><br>**F.R.E. §§ 401-402, 602 & 701.** |

| No. | Evidence Objected To | Objections |
|---|---|---|
| 13. | **Paragraph 20 of the Vachani Declaration**<br><br>"The header information on the emails at issue in this case was accurate and showed that Facebook had sent the messages. Power had no control over them. They were auto-generated by Facebook and Power could not have changed them if it wanted to." | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br><br>The process by which the relevant messages were generated and transmitted to Facebook users is contained in Defendants' and Facebook's source code and requires expert analysis. Vachani does not have the required technical background to make such assertions. Therefore, his testimony regarding this matter is irrelevant.<br><br>**Mischaracterization of Facts:**<br><br>As admitted by Defendants, Power is responsible for drafting the content of the emails and messages at issue and had complete control over what was included in the message, including information sufficient to provide the recipient with a method to opt out of receiving any further messages initiated by Power. Sutton Decl., Ex. 1, 209:5-10; 213:5-9.<br><br>**F.R.E. §§ 401-402, 602 & 701.** |
| 14. | **Paragraph 21 of the Vachani Declaration**<br><br>"Like Facebook, Power also has not received a single complaint from a Facebook user about any of the events described in Facebook's complaint. No one complained to Power about the email referenced in ¶ 92 of Facebook's complaint. Nor has anyone complained to Power about any of our activities related to Facebook. Nor has anyone claimed to have been misled by anything we did." | **Speculation/Lacks Foundation/Relevance.**<br><br>Defendants have failed to provide foundation for Vachani's personal knowledge of whether Faecbook received any complaints from Facebook users regarding the events described in the Complaint.<br><br>Moreover, whether Power received any complaints from Facebook users regarding any of the events in Facebook's complaint is irrelevant to Facebook's claims against Power. Similarly, whether anyone complained to Power about any of Defendants' activities related to Facebook has no bearing on Facebook's claims against Defendants. Finally, whether any individuals were actually misled by Defendants' conduct is also irrelevant to Facebook's claims against Defendants.<br><br>**F.R.E. §§ 401-402, 602 & 701.** |

| No. | Evidence Objected To | Objections |
|---|---|---|
| 15. | **Paragraph 22 of the Vachani Declaration**<br><br>"Power did not access any nonpublic portion of Facebook's website. Power merely offered users a different and potentially superior browser through which they could access their Facebook accounts to copy, update, and/or port their own 'User Content.' And users did so by entering their own valid usernames and passwords, which Power never copied or stored for any purpose. Power did not obtain any software, data, or other content of value from Facebook. The only data accessed through Power's utilities were user's own 'User Content,' over which Facebook has disclaimed any ownership." | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br><br>The process by which Power connected to the Facebook website is contained in Defendants' source code and requires expert analysis. Vachani does not have the required technical background to make such assertions. Therefore, his testimony regarding this matter is irrelevant.<br><br>Facebook also objects to the statement "And users did so by entering their own valid usernames and passwords, which Power never copied or stored for any purpose," in that it is contradicted by Power's Responses to Facebook's First Set of Requests for Admission on Power (certified by Steve Vachani himself), where Power admits to storing "Facebook user login information, including, but not limited to, user login names, email addresses or passwords." *See* Sutton Decl., Ex. 4 at Request No. 15; *see also id.* at Request No. 51 (Power admits that between January 1, 2008 and present date, they "stored, saved, or otherwise retained Facebook user log-in information, such as user names and/or passwords.").<br><br>**Legal Conclusion.**<br><br>Whether Defendants obtained anything from value from the Facebook website is a legal conclusion to be determined by the Court. *Evangelista*, 777 F.2d at 1398 n.3 (lay witness may not testify as to a legal conclusion).<br><br>**F.R.E. §§ 401-402, 602 & 701.** |

| No. | Evidence Objected To | Objections |
|-----|---------------------|------------|
| 16. | **Paragraph 23 of the Vachani Declaration**<br><br>"The only intended use and the only actual use of the Power browser was to display the user's own Facebook account and to enable the user to copy and/or update the user's own 'User Content.' We had no scheme to defraud, deceive, or extort anyone. Nor could the Power browser be used for such a scheme. Nor, to my knowledge, was the Power browser used for such a scheme." | **Speculation/Lacks Foundation/Relevance.**<br><br>Vachani's testimony that the Power browser could not be used in a "scheme to defraud, deceive or extort anyone" is mere speculation.<br><br>Moreover, whether Defendants had a "scheme to defraud, deceive or extort anyone," is not the relevant inquiry. Rather, Section 1030(a)(4) of the Computer Fraud and Abuse Act requires that a Defendant to knowingly and with an "intent to defraud" access a Plaintiff's computers without, or in excess of, authorization. Courts have held that for the purposes of the CFAA, fraud "simply means wrongdoing." *Multiven, Inc. v. Cisco Systems, Inc*., 725 F. Supp. 2d 877, 892 (N.D. Cal. 2010);<br><br>**Legal Conclusion**.<br><br>Whether Defendants had an intent to defraud (under the Computer Fraud and Abuse Act) is a legal conclusion to be determined by the Court. *Evangelista*, 777 F.2d at 1398 n.3 (lay witness may not testify as to a legal conclusion).<br><br>Vachani reaches improper legal conclusion by assuming the meaning of "without authorization" and incorrectly identifies whose "authorization" is needed.<br><br>**F.R.E. §§ 401-402, 602 & 701.** |

| No. | EVIDENCE OBJECTED TO | OBJECTIONS |
|---|---|---|
| 17. | **Clark Deposition, Page 58, lines 5-7**<br><br> Q. Can you tell me the name of anyone that was misled by this message?<br> A. I can't. | **Lack of Personal Knowledge/Lack of Foundation/Relevance.**<br><br>Facebook objects to Defendants' reliance on this portion of Mr. Clark's deposition testimony.  Mr. Clark was deposed in his individual capacity, not as Facebook's 30(b)(6) designee and he was not employed at Facebook when the operative events in this action occurred.  He has no personal knowledge regarding who was misled by Defendants' Launch Promotion messages, and therefore cannot assert any factual evidence related to such.  Mr. Clark's testimony on this issue is without proper foundation and should be disregarded as irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |

| No. | EVIDENCE OBJECTED TO | OBJECTIONS |
|---|---|---|
| 18. | **Clark Deposition, Pages 68-69, lines 10-25, respectively**<br><br>Q. All right. So let me focus in on just the "from" line. Okay? The one-and-only party that has any control over the content of that line is Facebook itself; isn't that true?<br>MR. CHATTERJEE: Speculation.<br>THE WITNESS: As I said, I'm not sure. I believe so, but I'm not sure.<br>MR. BURSOR: Q. If Power wanted to change that line just to say "From: Power," they have no ability to do that; isn't that true?<br>MR. CHATTERJEE: Speculation.<br>THE WITNESS: I don't believe they would.<br>MR. BURSOR: Q. There's no one at Power that wrote "From: Facebook <eventmaster . . . ." and the rest of that line; right? That drafting did not come from anyone at Power?<br>MR. CHATTERJEE: Speculation.<br>THE WITNESS: I don't believe anybody would draft this. This would be an automated part of the e-mail creation that would occur when somebody initiated the transmission of a message. Right. So, I mean, there's nobody sitting there typing the "from" line.<br>MR. BURSOR: Q. Right.<br>A. That would be part of how e-mail works.<br>Q. That "from" line was automatically generated by Facebook's computers; right?<br>MR. CHATTERJEE: Speculation.<br>THE WITNESS: That's pretty -- excuse me.  That's pretty -- I'm sorry.  Can you repeat the -- can you read back the question? (Record read as follows: "QUESTION: That 'from' line was automatically generated by Facebook's computers; right?")<br>THE WITNESS: Automatically generated by Facebook's computers or their systems, based on a prompt from somebody outside. Right? Could be a user. Could be whoever – whoever's creating the event. | **Lack of Personal Knowledge/Lack of Foundation/Relevance.**<br><br>Facebook objects to Defendants' reliance on this portion of Mr. Clark's deposition testimony.  Mr. Clark was deposed in his individual capacity, not as Facebook's 30(b)(6) designee and he was not employed at Facebook when the operative events in this action occurred.  He has no personal knowledge regarding the specific process by which Defendants' Launch Promotion Invitations were generated and transmitted to Facebook users and therefore cannot assert any factual evidence related to such. Mr. Clark's testimony on this issue is without proper foundation and should be disregarded as irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |

13

| No. | Evidence Objected To | Objections |
|---|---|---|
| 19. | **Clark Deposition, Pages 74-75, lines 16-6, respectively**<br><br>Q. And then do you see in the body of the message it says "Nik invited you"?<br>A. Mm-hmm, yes.<br>Q. Who's Nik?<br>A. I don't know who Nik is.<br>Q. Did Nik initiate this message?<br>MR. CHATTERJEE: Speculation.<br>THE WITNESS: I don't know who Nik is, so I don't know if Nik initiated this message. But my understanding is this was initiated on behalf of a user named Nik through Power.<br>MR. BURSOR: Q. What's the basis for that understanding?<br>A. The --<br>MR. CHATTERJEE: Attorney-client privilege. Instruction not to answer. | **Lack of Personal Knowledge/Lack of Foundation/Relevance.**<br><br>Facebook objects to Defendants' reliance on this portion of Mr. Clark's deposition testimony.  Mr. Clark was deposed in his individual capacity, not as Facebook's 30(b)(6) designee and he was not employed at Facebook when the operative events in this action occurred.  He has no personal knowledge regarding the message referenced by Defendants' nor the specific process by which Defendants' Launch Promotion Invitations were generated and transmitted to Facebook users and therefore cannot assert any factual evidence related to such.  Mr. Clark's testimony on this issue is without proper foundation and should be disregarded as irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |
| 20. | **Clark Deposition, Pages 87-88, lines 12-4, respectively**<br><br>Q. You see at the bottom of the page where it says "Thanks, The Facebook Team"?<br>A. Mm-hmm.<br>Q. Yes?<br>A. Yes.<br>Q. Who wrote that?<br>MR. CHATTERJEE: Speculation.<br>THE WITNESS: I don't know.<br>MR. BURSOR: Q. Didn't Facebook itself write that?<br>MR. CHATTERJEE: Same objections.<br>THE WITNESS: I don't know.<br>MR. BURSOR: Q. Isn't it true that Facebook appends that very same text to every e-mail communication it sends after an event is created?<br>MR. CHATTERJEE: Same objection. Speculation.<br>THE WITNESS: I don't know. | **Lack of Personal Knowledge/Lack of Foundation/Relevance.**<br><br>Facebook objects to Defendants' reliance on this portion of Mr. Clark's deposition testimony.  Mr. Clark was deposed in his individual capacity, not as Facebook's 30(b)(6) designee and he was not employed at Facebook when the operative events in this action occurred.  He has no personal knowledge regarding the message referenced by Defendants' nor the specific process by which Defendants' Launch Promotion Invitations were generated and transmitted to Facebook users and therefore cannot assert any factual evidence related to such.  Mr. Clark's testimony on this issue is without proper foundation and should be disregarded as irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |

| No. | Evidence Objected To | Objections |
|---|---|---|
| 21. | **Clark Deposition, Pages 98-99, lines 18-25, respectively**<br><br>Q. So you see where it says "Nik invited you to the event"? See that?<br>A. I see where it says: "Nik [Redacted] invited you to the event" --<br>Q. Okay.<br>A. -- "'Bring --<br>Q. No. I'm only asking --<br>A. "100 friends" --<br>Q. -- you about that part. "Nik . . . invited you to the event" -- "Nik [Redacted] invited you to the event . . . ." Can you focus in on that?<br>A. I can focus in on that, yes.<br>Q. Who wrote that?<br>MR. CHATTERJEE: Speculation.<br>THE WITNESS: I don't recall -- or I don't know.<br>MR. BURSOR: Q. Who would know the answer to that?<br>A. Again, I believe the header information, as with other elements of this message, would have been auto-generated. So as far as "write this," I don't know would write this.<br>Q. It would have been auto-generated by whom?<br>A. By the --<br>MR. CHATTERJEE: Vague.<br>THE WITNESS: By the system that was called to send out the invitation.<br>MR. BURSOR: Q. What system is that?<br>A. That would probably be Facebook's system. | **Lack of Personal Knowledge/Lack of Foundation/Relevance.**<br><br>Facebook objects to Defendants' reliance on this portion of Mr. Clark's deposition testimony.  Mr. Clark was deposed in his individual capacity, not as Facebook's 30(b)(6) designee and he was not employed at Facebook when the operative events in this action occurred.  He has no personal knowledge regarding the message referenced by Defendants' nor the specific process by which Defendants' Launch Promotion Invitations were generated and transmitted to Facebook users and therefore cannot assert any factual evidence related to such.  Mr. Clark's testimony on this issue is without proper foundation and should be disregarded as irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |

| No. | Evidence Objected To | Objections |
|-----|----------------------|------------|
| 22. | **Clark Deposition, Page 121, lines 6-25**<br><br>Q. You see 3 asks for any complaints Facebook users made as a result of the events described in Facebook's First Amended Complaint? You see that?<br>A. I see that.<br>Q. But you've never seen any documents like<br>that; right?<br>MR. CHATTERJEE: Overly broad, vague.<br>THE WITNESS: Again, there are documents I've seen that may be responsive to this category. If you're asking if I've seen any specific complaints about Power.com, I have not.<br>MR. BURSOR: Q. Have you seen general complaints about Power.com?<br>A. No.<br>Q. All right. So you haven't seen any specific complaints and you haven't seen any general complaints. What kind of complaints have you seen?<br>A. I've not seen any complaints regarding Power.com based on my preparation for this deposition or otherwise. | **Lack of Personal Knowledge/Lack of Foundation/Relevance.**<br><br>Facebook objects to Defendants' reliance on this portion of Mr. Clark's deposition testimony. Mr. Clark was deposed in his individual capacity, not as Facebook's 30(b)(6) designee and he was not employed at Facebook when the operative events in this action occurred. He has no personal knowledge of complaints received by Facebook from its users regarding Defendants' conduct, and therefore cannot assert any factual evidence related to such. Mr. Clark's testimony on this issue is without proper foundation and should be disregarded as irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |
| 23. | **Clark Deposition, Page 116, lines 14-18**<br><br>Q. Can you identify anything that Power did that caused Facebook to lose money?<br>A. Same answer.<br>Q. You can't answer?<br>A. I can't answer that. | **Lack of Personal Knowledge/Lack of Foundation/Relevance.**<br><br>Facebook objects to Defendants' reliance on this portion of Mr. Clark's deposition testimony. Mr. Clark was deposed in his individual capacity, not as Facebook's 30(b)(6) designee and he was not employed at Facebook when the operative events in this action occurred. He has no personal knowledge of the losses incurred by Facebook as a result of Power's conduct, and therefore cannot assert any factual evidence related to such. Mr. Clark's testimony on this issue is without proper foundation and should be disregarded as irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |

| No. | Evidence Objected To | Objections |
|-----|----------------------|------------|
| 24. | **Clark Deposition, Page 117, lines 18-25**<br><br>Q. Are you aware of any document concerning any injury that Facebook suffered as a result of the events described in the First Amended Complaint? Just the existence of a document.<br>A. I don't know.<br>Q. As you sit here today, you couldn't identify any document that would relate to that?<br>A. No, I don't believe I can. | **Lack of Personal Knowledge/Lack of Foundation/Relevance.**<br><br>Facebook objects to Defendants' reliance on this portion of Mr. Clark's deposition testimony.  Mr. Clark was deposed in his individual capacity, not as Facebook's 30(b)(6) designee and he was not employed at Facebook when the operative events in this action occurred.  He has no personal knowledge of the injuries suffered by Facebook as a result of the events described in Facebook's First Amended Complaint, and therefore cannot assert any factual evidence related to such.  Mr. Clark's testimony on this issue is without proper foundation and should be disregarded as irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |