1   I. NEEL CHATTERJEE (STATE BAR NO. 173985)
nchatterjee@orrick.com
2   MONTE M.F. COOPER (STATE BAR NO. 196746)
mcooper@orrick.com
3   THERESA A. SUTTON (STATE BAR NO. 211857)
tsutton@orrick.com
4   MORVARID METANAT (STATE BAR NO. 268228)
mmetanat@orrick.com
5   ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
6   Menlo Park, CA  94025
Telephone:     650-614-7400
7   Facsimile:     650-614-7401

8   Attorneys for Plaintiff
FACEBOOK, INC.

9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                     SAN FRANCISCO DIVISION

13

14   FACEBOOK, INC.,                          Case No.   5:08-cv-05780 JW (JCS)

15              Plaintiffs,                   **FACEBOOK, INC.'S OBJECTIONS
                                             TO EVIDENCE SUBMITTED BY
16        v.                                 DEFENDANTS IN SUPPORT OF
                                             DEFENDANTS' MOTION FOR
17   POWER VENTURES, INC. a Cayman Island    SUMMARY JUDGMENT**
     Corporation,; STEVE VACHANI, an
18   individual; DOE 1, d/b/a POWER.COM,     Dept:        Courtroom 9, 19th Floor
     DOES 2-25, inclusive,                   Judge:       Hon. Chief Judge James Ware
19
20              Defendants.

21

22                        **FILED UNDER SEAL**

23

24

25

26

27

28

1  Plaintiff Facebook, Inc. hereby objects to the Declaration of Steve Vachani in Support of

2  Defendants Power Ventures, Inc. and Steve Vachani Motion for Summary Judgment (Dkt. No.

3  98), and Defendants' reliance on the Deposition testimony of a Facebook employee, Craig Clark,

4  in Defendants' Motion for Summary Judgment as follows:

5  1.  Facebook objects under Federal Rules of Evidence 401, 402, 602 and 701 to

6  paragraphs 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13 of the Vachani Declaration on the grounds that

7  the testimony lacks foundation and constitutes improper and irrelevant opinions, conclusions, and

8  speculation rather than factual averments.

9  2.  Facebook objects under Federal Rules of Evidence 401, 402, and 602 to

10  Defendants' references to Craig Clark's deposition testimony in support of their Summary

11  Judgment Motion on the grounds that Mr. Clark has no personal knowledge of the underlying

12  facts of this litigation.

13  **I.**  **APPLICABLE RULES OF EVIDENCE**

14  Federal Rule of Evidence 701 provides that "[i]f the witness is not testifying as an expert,

15  the witness' testimony in the form of opinions or inferences is limited to those opinions or

16  inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear

17  understanding of the witness' testimony or the determination of a fact in issue, and (c) not based

18  on a scientific, technical or other specialized knowledge within the scope of Rule 702." Fed. R.

19  Evid. 701; *see also Christiansen v. Nat'l Savings and Trust Co.*, 683 F.2d 520, 529 (D.C. Cir.

20  1982) (inadmissibility of conclusion that defendants held a "fiduciary" relationship to plaintiffs).

21  Here, Defendants offer objectionable testimony in Vachani's Declaration.

22  "A witness may not testify to a matter unless evidence is introduced sufficient to support a

23  finding that the witness has personal knowledge of the matter. Fed. R. of Evid. 602. *See also*

24  *Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997) (affirming district

25  court's exclusion of evidence due to a lack of personal knowledge in a summary judgment

26  proceeding); *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995) (declarations by

27  counsel in a summary judgment proceeding were entitled to no weight where counsel lacked

28  personal knowledge). Here, Defendants cannot show that Mr. Clark has any personal knowledge

1  regarding the underlying facts of this litigation.  Nor are they unable to show that Mr. Vachani

2  has personal knowledge regarding the functionality of Defendants' source code used to access the

3  Facebook website and services.

4  Federal Rule of Evidence 401 defines "[r]elevant evidence" as "evidence having any

5  tendency to make the existence of any fact that is of consequence to the determination of the

6  action more probable or less probable than it would be without the evidence."  Evidence which is

7  not relevant is not admissible.  Fed. R. Evid. 402.

8  ## II.   OBJECTIONS TO THE VACHANI DECLARATION

9  Facebook objects to paragraphs 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13 of the Vachani

10  Declaration on the grounds that the testimony lacks foundation and constitutes improper opinions,

11  conclusions, and speculation rather than factual averments.  Fed. R. Evid. 602 & 701; *see also*

12  *WNS Holdings, LLC v. United Parcel Service, Inc.,* No. 08-cv-275-bbc, 2009 U.S. Dist. LEXIS

13  59829, *11 (W.D. Wis. Jul. 14, 2009) (disregarding portions of lay witness's testimony where the

14  testimony required specialized knowledge and witness had not been disclosed as an expert

15  witness); *Nichols v. Johnson*, No. 00C7785, 2002 U.S. Dist. LEXIS 7745, *11 (N.D. Ill. April 30,

16  2002) (noting that Rule 701's requirement that lay opinion testimony not be "based on scientific,

17  technical or other specialized knowledge within the scope of Rule 702" is there to "insure[] that a

18  party will not evade the expert witness disclosure requirements . . . by simply calling an expert

19  witness in the guise of a lay person.").[1]

20  ### A.   Vachani Is Not A Qualified Expert And Thus Cannot Offer Expert Testimony.

21

22  Steve Vachani is Power Ventures' CEO and has not been offered as an expert witness.

23  Yet, Vachani makes several averments requiring an expert's analysis of Defendants' source code

24  and the manner in which it interacted with the Facebook website.  For example, in paragraph 3 of

25  his declaration, Vachani asserts that Facebook "initiated" the transmission of "email invitations

26  . . . through the event creation process."  *See* Appendix A at 1.  In paragraph 4, Vachani states

27  ---

28  [1] For brevity, Facebook offers examples of the objectionable testimony in Vachani's Declaration. Attached hereto as Appendix A is a chart listing Facebook's specific objections to Vachani's Declaration.

that "Power did not send the email messages referenced in the complaint." *See id*. at 2.

Vachani's testimony in paragraphs 11 and 12 fare little better. *See id*. at 7. These paragraphs

largely comprise Vachani's opinions regarding Power's connection to the Facebook website after

Facebook had implemented its blocks connected to the Facebook website. Vachani lacks the

required technical expertise to make such assertions. Indeed, Mr. Vachani admitted that he is

"not a skilled [computer] programmer by profession" and that he has no personal knowledge

about how PowerScript software Defendants used to connect to the Facebook website even

functioned. *See* the Declaration of Theresa A. Sutton in Support of Facebook's Opposition to

Defendants' Motion for Summary Judgment, Ex. 1 at 12:24-13:15; 14:1-5; 182;16-186:6; 189:10-

191:8; 195:23-197:13; 203:19-206:22; 209:11-15; 212:19-213:4; 254:2-15; 256:8-257:10;

257:22-267:22; 273:6-274:10.

### B.   Vachani Is Not An Attorney And Is Not Qualified To Render Legal Opinions.

Vachani's declaration also includes impermissible legal conclusions, which must be

disregarded. Vachani is not a licensed attorney and is not qualified to render the conclusions he

does. For example, his statements regarding who "initiated" or "sent" the messages at issue

constitute legal conclusions and are, thus, impermissible lay opinion testimony. *See* 15 U.S.C.

§ 7704(a)(1).

### C.   Vachani's Testimony Is Not Helpful To A Clear Understanding Of Testimony Or Determinant Of Fact In Issue And Is Thereby Irrelevant.

The vast majority of Vachani's declaration is not helpful to a clear understanding of any

testimony or determination of any facts in issue. For example, in paragraph 5, Vachani states that

"All of the content in these email messages that Facebook alleges to be misleading and false was

written and appended to the message by Facebook itself." *See* Appendix A at No. 4. Not only is

Vachani unqualified to make such statements, Vachani's testimony is misleading. Misleading,

conclusory allegations with no factual support are improper and should not be considered by the

Court. *Whitlock v. Pepsi Americas*, 681 F. Supp. 2d 1123, 1125 (N.D. Cal. 2010). Facebook

does not contend that the misleading portions of Defendants' Launch Promotion messages are

limited to just the "From:" field and closing signature, but rather, that the messages in their

entirety are misleading.  The messages appear to be generated by Facebook users when, in reality, Power induces its users to send messages to Facebook users by offering them monetary incentives and then uses its automated software to generate and transmit these messages through the Facebook system and servers.  *See* 11/14/11 Mot. for Partial Summ. J on Count 1 at 13:27-14:8.  Therefore, the fact that the "from" field and signature were automatically appended to the messages by Facebook's systems after Power had initiated the transmission of these messages is irrelevant and unhelpful.

In paragraph 8, Vachani declares that no one has "complained to Power about any of [their] activities related to Facebook.  Nor has anyone claimed to have been misled by anything [Defendants] did."  *See id*. at 5.  Whether anyone complained to Power or claims to have been misled are irrelevant to Facebook's claims against Power.  Indeed, the issue is whether the commercial messages are misleading.  Thus, Vachani's testimony on this subject has no bearing on the case and will not assist in the determination of any issues in this matter.

Vachani's opinions constitute impermissible lay opinion testimony.  His declaration is rife with inaccuracies, legal conclusions, and self-serving, unsupported and irrelevant averments.  Vachani's testimony should not be considered.

## III.   OBJECTIONS TO DEFENDANTS' RELIANCE ON THE DEPOSITION TESTIMONY OF CRAIG CLARK.[2]

Defendants' reliance on the deposition testimony of Craig Clark, a Facebook employee, also is improper.  As an initial matter, Mr. Clark was not deposed as Facebook's 30(b)(6) witness, but rather, in his individual capacity.  Sutton Decl., Ex. 3 at 7:5-6; 81:8-18; 85:22-86:1; 107:11-12.  Of particular significance is the fact that Mr. Clark was not even a Facebook employee during the time the underlying events of this litigation occurred.  *Id*. at 7:5-6.  For example, Mr. Clark does not have personal knowledge of the process by which Power generated and transmitted its Launch Promotion Invitation messages to Facebook users.  *Id*. at 68:10-69:25;

---

[2] For brevity, Facebook offers examples of the Defendants' objections to Defendants' references to Craig Clark's deposition testimony.  A complete list of Facebook's objections to Mr. Clark's testimony is included in Appendix A, attached hereto.  In addition, the relevant portions of Mr. Clark's deposition testimony are attached as Ex. 3 to the Declaration of Theresa A. Sutton in Support of Facebook's Opposition to Defendants' Motion for Summary Judgment ("Sutton Decl.").

1    cited in Def. MSJ.  Nor does Mr. Clark have any personal knowledge of the particular injuries

2    and losses suffered by Facebook as a result of Defendants' conduct.  *Id.* at 116:14-18.  Mr.

3    Clark's personal knowledge regarding Defendants' actions, and the subsequent actions taken by

4    Facebook as a result of such actions, is understandably limited and not relevant to Facebook's

5    claims against Defendants.

6    **IV.    <u>CONCLUSION</u>**

7         For the foregoing reasons, Facebook objects to paragraphs 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12,

8    and 13 of Vachani's Declaration and to Defendants' reliance on the deposition testimony of Craig

9    Clark in Support of their Motion for Summary Judgment, as referenced in Appendix A, and

10   respectfully requests that the Court disregard them.

11

12   Dated: December 2, 2011                    ORRICK, HERRINGTON & SUTCLIFFE LLP

13

14                                   /s/*Morvarid Metanat* /s/
                                     **Morvarid Metanat**
15                                   Attorneys for Plaintiff
                                     FACEBOOK, INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

## APPENDIX A
### Facebook, Inc.'s Evidentiary Objections to Defendants' Evidence in Support of Defendants' Motion of Summary Judgment

| No. | Evidence Objected To | Objections |
|-----|---------------------|------------|
| 1. | **Paragraph 2 of the Vachani Declaration**<br>"Power did not send the email messages referenced in the compliant.  Facebook sent those messages." | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br>The process by which the relevant messages were transmitted to Facebook users is contained in Defendants' and Facebook's source code and requires expert analysis.  Vachani does not have the required technical background to make such assertions.  Therefore, his testimony regarding this matter is irrelevant.<br><br>**Legal Conclusion.**<br>Whether Facebook or Defendants sent the message at issue is a legal conclusion to be determined by the Court.  *Evangelista v. Inlandboatmen's Union of the Pacific*, 777 F.2d 1390, 1398 n.3 (9th Cir. 1985) (lay witness may not testify as to a legal conclusion).<br><br>**F.R.E. §§ 401-402, 602 & 701.** |

| No. | Evidence Objected To | Objections |
|---|---|---|
| 2. | **Paragraph 3 of the Vachani Declaration**<br>Statements regarding who initiated the transmission of the unsolicited commercial messages to Facebook users. | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br><br>The process by which the relevant messages were transmitted to Facebook users is contained in Defendants' and Facebook's source code and requires expert analysis.  Vachani does not have the required technical background to make such assertions.  Therefore, his testimony regarding this matter is irrelevant.<br><br>**Legal Conclusion.**<br><br>Whether Facebook or Defendants sent the message at issue is a legal conclusion to be determined by the Court.  *Evangelista v. Inlandboatmen's Union of the Pacific*, 777 F.2d 1390, 1398 n.3 (9th Cir. 1985) (lay witness may not testify as to a legal conclusion).<br><br>**F.R.E. §§ 401-402, 602 & 701.** |
| 3. | **Paragraph 4 of the Vachani Declaration**<br>"Power did not send the email messages referenced in the complaint.  Facebook did.  Facebook solely determined the content of the 'From:' field, and it supplied the closing signature from 'The Facebook Team.'  Neither the user nor Power has any control over these elements of the email message" | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br><br>The process by which the relevant messages were generated and transmitted to Facebook users is contained in Defendants' and Facebook's source code and requires expert analysis.  Vachani does not have the required technical background to make such assertions.  Therefore, his testimony regarding this matter is irrelevant.<br><br>**Legal Conclusion.**<br><br>Whether Facebook or Defendants sent the message at issue is a legal conclusion to be determined by the Court.  *Evangelista v. Inlandboatmen's Union of the Pacific*, 777 F.2d 1390, 1398 n.3 (9th Cir. 1985) (lay witness may not testify as to a legal conclusion).<br><br>**F.R.E. §§ 401-402, 602 & 701.** |

| NO. | EVIDENCE OBJECTED TO | OBJECTIONS |
|-----|----------------------|------------|
| 4. | **Paragraph 5 of the Vachani Declaration**<br><br>"All of the content in these email messages that Facebook alleges to be misleading and false was written and appended to the message by Facebook itself.  In fact, Facebook appends that very same text to every email communication it sends after an event is created.  Even if the 'From:' field and closing signature were misleading in any way, Power had no control over them." | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br><br>The process by which the relevant messages were generated and transmitted to Facebook users is contained in Defendants' and Facebook's source code and requires expert analysis.  Vachani does not have the required technical background to make such assertions.<br><br>Moreover, this testimony is misleading.  First, it is not Facebook's contention that the misleading portions of Defendants' Launch Promotion messages are limited to just the "From:" field and closing signature, but rather, that the messages in their entirety are misleading because the messages appear to be generated by Facebook users when, in reality, Power induces its users, and uses its automated software to, generate and transmit these messages through the Facebook system and servers.  Therefore, the fact that the "from" field and signature were automatically appended to the messages by Facebook's systems *after* Power had initiated the transmission of these messages is irrelevant.<br><br>In addition, the actual content of the Event Invitation (which Defendants admit to drafting), identifies Power as a "host" of a reunion event" and provides a time frame for the Event.  Dkt. Nos. 9 at ¶ 70, 54 at ¶ 70; Declaration of Theresa A. Sutton in Support of Facebook's Opposition to Defendants' Motion for Summary Judgment ("Sutton Decl."), Ex. 2, 209:5-7; 213:5-10.  Power was "hosting" nothing and the time frame identified for the Event was meaningless.  Therefore, the actual content of the message itself is also misleading.<br><br>**F.R.E. §§ 401-402, 602 & 701.** |

| No. | Evidence Objected To | Objections |
|-----|----------------------|------------|
| 5. | **Paragraph 6 of the Vachani Declaration**<br><br>"The specific email referenced in the complaint was generated by Facebook as a result of a Facebook user named 'Nik' creating an event and selecting the friends to invite.  It was Nik not Power, that logged on to Facebook and created the event.  It was Nik, not Power, that chose the friends he wished to invite.  Nik could only send the invitation to other Facebook members who had agreed to 'friend' Nik, and thus had expressly agreed to receive communications from Nik.  Facebook then sent an email to those friends on Nik's behalf.  Power did not initiate this message.  Power did not select the recipients to whom it was sent.  And Power had no control over the content of the message and the header information. " | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br><br>The process by which the relevant messages were generated and transmitted to Facebook users is contained in Defendants' and Facebook's source code and requires expert analysis.  Vachani does not have the required technical background to make such assertions.  Therefore, his testimony regarding this matter is irrelevant.<br><br>This testimony is also misleading.  Conveniently left out of Vachani's testimony is the fact that Defendants offered Power users monetary incentives to initiate the transmission of the referenced emails to Facebook, conduct that is in violation of the CAN-SPAM Act.  11/14/11 Mot. Partial Summ. J. on Count 1 13:1814:8.<br><br>**Legal Conclusion**.<br><br>Whether Facebook or Defendants transmitted the referenced emails is a legal conclusion to be determined by the Court.  *Evangelista v. Inlandboatmen's Union of the Pacific*, 777 F.2d 1390, 1398 n.3 (9th Cir. 1985) (lay witness may not testify as to a legal conclusion).<br><br>**F.R.E. §§ 401-402, 602 & 701.** |

| No. | Evidence Objected To | Objections |
|---|---|---|
| 6. | **Paragraph 7 of the Vachani Declaration**<br><br>"Power had no control over the return electronic mail address.  Only Facebook did.  And Power had no ability to include any opt-out mechanism in the message.  It was Facebook, and Facebook alone, that determined whether to include an opt-out mechanism in the message." | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br><br>The process by which the relevant messages were generated and transmitted to Facebook users is contained in Defendants' and Facebook's source code and requires expert analysis.  Vachani does not have the required technical background to make such assertions.  Therefore, his testimony regarding this matter is irrelevant.<br><br>**Mischaracterization of Facts:**<br><br>As admitted by Defendants, Power is responsible for drafting this content and had complete control over what was included in the message, including information sufficient to provide the recipient with a method to opt out of receiving any further messages initiated by Power.  Sutton Decl., Ex. 2, 209:5-10; 213:5-9.<br><br>**F.R.E. §§ 401-402, 602 & 701.** |
| 7. | **Paragraph 8 of the Vachani Declaration**<br><br>"Like Facebook, Power also has not received a single complaint from a Facebook user about any of the events in Facebook's complaint.  No one complained to Power about the emails referenced in ¶ 92 of Facebook's complaint.  Nor has anyone complained to Power about any of our activities related to Facebook.  Nor has anyone claimed to have been misled by anything we did." | **Relevance**.<br><br>Whether Power received any complaints from Facebook users regarding any of the events in Facebook's complaint is irrelevant to Facebook's claims against Power.  Similarly, whether anyone complained to Power about any of Defendants' activities related to Facebook has no bearing on Facebook's claims against Defendants.  Finally, whether any individuals were actually misled by Defendants' conduct is also irrelevant to Facebook's claims against Defendants.<br><br>**F.R.E. §§ 401-402** |

| No. | Evidence Objected To | Objections |
|---|---|---|
| 8. | **Paragraph 9 of the Vachani Declaration**<br><br>"Power did not transmit any email message to any Facebook account.  Nor did Power make available any utility that would enable a user to transmit such messages." | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br><br>The process by which the relevant messages were transmitted to Facebook users is contained in Defendants' and Facebook's source code and requires expert analysis.  Vachani does not have the required technical background to make such assertions.  Therefore, his testimony regarding this matter is irrelevant.<br><br>Moreover, this testimony is misleading.  Facebook claims that Power "initiated" and "procured" the transmission of these email messages to Facebook users—not merely that Power "transmitted" them. 11/14/11 Mot. Partial Summ. J. on Count 1, 12:8:8.<br><br>**Legal Conclusion.**<br><br>Whether Facebook or Defendants transmitted the messages at issue is a legal conclusion to be determined by the Court.  *Evangelista v. Inlandboatmen's Union of the Pacific*, 777 F.2d 1390, 1398 n.3 (9th Cir. 1985) (lay witness may not testify as to a legal conclusion).<br><br>**F.R.E. §§ 401-402, 602 & 701.** |

| No. | Evidence Objected To | Objections |
|-----|----------------------|------------|
| 9. | **Paragraph 10 of the Vachani Declaration**<br><br>"Power did not access any nonpublic portion of Facebook's website.  Power merely offered users a different and potentially superior browser through which they could access their Facebook accounts to copy, update, and/or port their own 'User Content.'  And users did so by entering their own valid usernames and passwords, which Power never copied or stored for any purpose.  Furthermore, Power did not obtain any software, data, or other content of value from Facebook.  The only data accessed through Power's utilities were user's own 'User Content,' over which Facebook has disclaimed any ownership." | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br><br>The process by which Power connected to the Facebook website is contained in Defendants' source code and requires expert analysis.  Vachani does not have the required technical background to make such assertions.  Therefore, his testimony regarding this matter is irrelevant.<br><br>Facebook also objects to the statement "And users did so by entering their own valid usernames and passwords, which Power never copied or stored for any purpose," in that it is contradicted by Power's Responses to Facebook's First Set of Requests for Admission on Power (certified by Steve Vachani himself), where Power admits to storing "Facebook user login information, including, but not limited to, user login names, email addresses or passwords."  *See* Sutton Decl., Ex. 4 at Request No. 15; *see also id.* at Request No. 51 (Power admits that between January 1, 2008 and present date, they "stored, saved, or otherwise retained Facebook user log-in information, such as user names and/or passwords.").<br><br>**Legal Conclusion**.<br><br>Whether Defendants obtained anything from value from the Facebook website is a legal conclusion to be determined by the Court.  *Evangelista v. Inlandboatmen's Union of the Pacific*, 777 F.2d 1390, 1398 n.3 (9th Cir. 1985) (lay witness may not testify as to a legal conclusion).<br><br>**F.R.E. §§ 401-402, 602 & 701.** |

| No. | Evidence Objected To | Objections |
|-----|----------------------|------------|
| 10. | **Paragraph 11 of the Vachani Declaration**<br><br>"At some time during December 2008, Facebook began blocking one of the IP addresses Power had used.  Power did not undertake any effort to circumvent that block, and did not provide users with any tools designed to circumvent it. Nevertheless, Facebook's IP block was ineffective because it blocked only one outdated IP address Power had used, and did not block other IPs that Power was using in the normal course of business. After the blocking, Power undertook efforts to implement Facebook Connect as Facebook had requested." | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation.**<br><br>The process by which Power connected to the Facebook website after Facebook implemented technical blocks is contained in Defendants' source code and requires expert analysis.  Vachani does not have the required technical background to make assertions regarding Power's ability to connect to the Facebook website after Facebook implemented its blocks against Power.  Therefore, his testimony regarding this matter is irrelevant.<br><br>Moreover, Vachani's testimony is misleading.  Vachani's Declaration is carefully worded in an attempt to get around the Court's previous finding that circumvention of Facebook's technical blocking measures could result in Defendants' liability.  Specifically, Vachani asserts that "At some time during December 2008, Facebook began blocking one of the IP addresses Power had used. Power did not undertake any effort to circumvent that block, and did not provide users with any tools designed to circumvent it."  Vachani Decl., at ¶ 11. Defendants did not make any effort to circumvent Facebook's blocks at that time, however, only because their circumvention measures had already been written into the PowerScript and no further efforts were required for them to continue to access the Facebook website. *See* Declaration of Lawrence Melling in Support of Facebook's Opposition to Defendants' Motion for Summary Judgment ¶¶ 34-42.<br><br>**F.R.E. §§ 401-402, 602 & 701.** |

| No. | Evidence Objected To | Objections |
|---|---|---|
| 11. | **Paragraph 12 of the Vachani Declaration**<br><br>"We did not circumvent any technical barriers.  And we voluntarily turned off the integration even though Facebook's IP blocking attack was partial, incomplete, and ineffective." | **Improper Expert Testimony/Lacks Foundation/Lacks Personal Knowledge/Speculation/Relevance.**<br><br>The process by which Power connected to the Facebook website after Facebook implemented technical blocks is contained in Defendants' source code and requires expert analysis.  Vachani does not have the required technical background to make assertions regarding Power's ability to connect to the Facebook website after Facebook implemented its blocks against Power.<br><br>Moreover, Vachani's testimony is erroneous and misleading.  Defendants turned off the "integration" with Facebook only after circumventing Facebook's blocks numerous times.  *See* Melling Decl., ¶¶ 34-42; Declaration of Joseph Cutler in Support of Facebook's Mot. for Partial Summ. J. on Count 1 ("Cutler Decl."), Ex. C at 3.<br><br>**Legal Conclusion.**<br><br>Whether Defendants circumvented Facebook's technical blocks is a legal conclusion to be determined by the Court. *Evangelista v. Inlandboatmen's Union of the Pacific*, 777 F.2d 1390, 1398 n.3 (9th Cir. 1985) (lay witness may not testify as to a legal conclusion).<br><br>**F.R.E. §§ 401-402, 602 & 701.** |

| No. | Evidence Objected To | Objections |
|-----|----------------------|------------|
| 12. | **Paragraph 13 of the Vachani Declaration**<br><br>"The only intended use and the only actual use of the Power browser was to display the user's own Facebook account and to enable the user to copy and/or update the user's own "User Content." We had no scheme to defraud, deceive or extort anyone. Nor could the Power browser be used for such a scheme. Nor, to my knowledge, was the Power browser used for such a scheme." | **Speculation/Lacks Foundation/Relevance.**<br><br>Vachani's testimony that the Power browser could not be used in a "scheme to defraud, deceive or extort anyone" is mere speculation.<br><br>Moreover, whether Defendants had a "scheme to defraud, deceive or extort anyone," is not the relevant inquiry. Rather, Section 1030(a)(4) of the Computer Fraud and Abuse Act requires that a Defendant to knowingly and with an "intent to defraud" access a Plaintiff's computers without, or in excess of, authorization. Courts have held that for the purposes of the CFAA, fraud "simply means wrongdoing." *Multiven, Inc. v. Cisco Systems, Inc.*, 725 F. Supp. 2d 877, 892 (N.D. Cal. 2010);<br><br>**Legal Conclusion**.<br><br>Whether Defendants had an intent to defraud (under the Computer Fraud and Abuse Act) is a legal conclusion to be determined by the Court. *Evangelista v. Inlandboatmen's Union of the Pacific*, 777 F.2d 1390, 1398 n.3 (9th Cir. 1985) (lay witness may not testify as to a legal conclusion).<br><br>Vachani reaches improper legal conclusion by assuming the meaning of "without authorization" and incorrectly identifies whose "authorization" is needed.<br><br>**F.R.E. §§ 401-402, 602 & 701.** |

| No. | Evidence Objected To | Objections |
|-----|----------------------|------------|
| 13. | **Clark Deposition, Page 118, lines 20-23**<br><br>Q. So you're not aware of any documents that<br> are responsive to any of these three categories?<br> A. As I sit here today, I'm not aware of any<br>specific documents. | **Lack of Personal Knowledge/Lack of Foundation/Relevance.**<br><br>Facebook objects to Defendants' reliance on this portion of Mr. Clark's deposition testimony.  Mr. Clark was deposed in his individual capacity, not as Facebook's 30(b)(6) designee and he was not employed at Facebook when the operative events in this action occurred.  He has no personal knowledge of the expenditures made by Facebook as a result of the events described in Facebook's First Amended Complaint, and therefore cannot assert any factual evidence related to such.  Mr. Clark's testimony on this issue is without proper foundation and should be disregarded as irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |
| 14. | **Clark Deposition, Page 58, lines 5-7**<br><br> Q. Can you tell me the name of anyone that<br>was misled by this message?<br> A. I can't. | **Lack of Personal Knowledge/Lack of Foundation/Relevance.**<br><br>Facebook objects to Defendants' reliance on this portion of Mr. Clark's deposition testimony.  Mr. Clark was deposed in his individual capacity, not as Facebook's 30(b)(6) designee and he was not employed at Facebook when the operative events in this action occurred.  He has no personal knowledge regarding who was misled by Defendants' Launch Promotion messages, and therefore cannot assert any factual evidence related to such.  Mr. Clark's testimony on this issue is without proper foundation and should be disregarded as irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |

| No. | Evidence Objected To | Objections |
|---|---|---|
| **15.** | **Clark Deposition, Pages 68-69, lines 10-25, respectively**<br><br>Q. All right. So let me focus in on just the "from" line. Okay? The one-and-only party that has any control over the content of that line is Facebook itself; isn't that true?<br>MR. CHATTERJEE: Speculation.<br>THE WITNESS: As I said, I'm not sure. I believe so, but I'm not sure.<br>MR. BURSOR: Q. If Power wanted to change<br>that line just to say "From: Power," they have no ability to do that; isn't that true?<br>MR. CHATTERJEE: Speculation.<br>THE WITNESS: I don't believe they would.<br>MR. BURSOR: Q. There's no one at Power that wrote "From: Facebook <eventmaster . . . ." and the rest of that line; right? That drafting did not come from anyone at Power?<br>MR. CHATTERJEE: Speculation.<br>THE WITNESS: I don't believe anybody would draft this. This would be an automated part of the e-mail creation that would occur when somebody initiated the transmission of a message. Right. So, I mean, there's nobody sitting there typing the "from" line.<br>MR. BURSOR: Q. Right.<br>A. That would be part of how e-mail works.<br>Q. That "from" line was automatically generated by Facebook's computers; right?<br>MR. CHATTERJEE: Speculation.<br>THE WITNESS: That's pretty -- excuse me.<br>That's pretty -- I'm sorry.<br>Can you repeat the -- can you read back the question?<br>(Record read as follows:<br>"QUESTION: That 'from' line was automatically generated by Facebook's computers; right?")<br>THE WITNESS: Automatically generated by<br>Facebook's computers or their systems, based on a prompt from somebody outside. Right? Could be a user. Could be whoever -- whoever's creating the event. | **Lack of Personal Knowledge/Lack of Foundation/Relevance.**<br><br>Facebook objects to Defendants' reliance on this portion of Mr. Clark's deposition testimony.  Mr. Clark was deposed in his individual capacity, not as Facebook's 30(b)(6) designee and he was not employed at Facebook when the operative events in this action occurred.  He has no personal knowledge regarding the specific process by which Defendants' Launch Promotion Invitations were generated and transmitted to Facebook users and therefore cannot assert any factual evidence related to such.  Mr. Clark's testimony on this issue is without proper foundation and should be disregarded as irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |

| No. | EVIDENCE OBJECTED TO | OBJECTIONS |
|---|---|---|
| 16 | **Clark Deposition, Pages 74-75, lines 16-6, respectively**<br><br>Q. And then do you see in the body of the message it says "Nik invited you"?<br>A. Mm-hmm, yes.<br>Q. Who's Nik?<br>A. I don't know who Nik is.<br>Q. Did Nik initiate this message?<br>MR. CHATTERJEE: Speculation.<br>THE WITNESS: I don't know who Nik is, so<br>I don't know if Nik initiated this message.<br>But my understanding is this was initiated on behalf of a user named Nik through Power.<br>MR. BURSOR: Q. What's the basis for that understanding?<br>A. The --<br>MR. CHATTERJEE: Attorney-client privilege. Instruction not to answer. | **Lack of Personal Knowledge/Lack of Foundation/Relevance.**<br><br>Facebook objects to Defendants' reliance on this portion of Mr. Clark's deposition testimony.  Mr. Clark was deposed in his individual capacity, not as Facebook's 30(b)(6) designee and he was not employed at Facebook when the operative events in this action occurred.  He has no personal knowledge regarding the message referenced by Defendants' nor the specific process by which Defendants' Launch Promotion Invitations were generated and transmitted to Facebook users and therefore cannot assert any factual evidence related to such.  Mr. Clark's testimony on this issue is without proper foundation and should be disregarded as irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |
| 17. | **Clark Deposition, Pages 87-88, lines 12-4, respectively**<br><br>Q. You see at the bottom of the page where it<br>says "Thanks, The Facebook Team"?<br>A. Mm-hmm.<br>Q. Yes?<br>A. Yes.<br>Q. Who wrote that?<br>MR. CHATTERJEE: Speculation.<br>THE WITNESS: I don't know.<br>MR. BURSOR: Q. Didn't Facebook itself write that?<br>MR. CHATTERJEE: Same objections.<br>THE WITNESS: I don't know.<br>MR. BURSOR: Q. Isn't it true that Facebook appends that very same text to every e-mail communication it sends after an event is created?<br>MR. CHATTERJEE: Same objection. Speculation.<br>THE WITNESS: I don't know. | **Lack of Personal Knowledge/Lack of Foundation/Relevance.**<br><br>Facebook objects to Defendants' reliance on this portion of Mr. Clark's deposition testimony.  Mr. Clark was deposed in his individual capacity, not as Facebook's 30(b)(6) designee and he was not employed at Facebook when the operative events in this action occurred.  He has no personal knowledge regarding the message referenced by Defendants' nor the specific process by which Defendants' Launch Promotion Invitations were generated and transmitted to Facebook users and therefore cannot assert any factual evidence related to such.  Mr. Clark's testimony on this issue is without proper foundation and should be disregarded as irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |

| NO. | EVIDENCE OBJECTED TO | OBJECTIONS |
|-----|----------------------|------------|
| 18. | **Clark Deposition, Pages 98-99, lines 18-25, respectively**<br><br>Q. So you see where it says "Nik invited you<br>to the event"? See that?<br>A. I see where it says:<br>"Nik [Redacted] invited you<br>to the event" --<br>Q. Okay.<br>A. -- "'Bring --<br>Q. No. I'm only asking --<br>A. "100 friends" --<br>Q. -- you about that part. "Nik . . . invited you to the event" -- "Nik [Redacted] invited you<br>to the event . . . ." Can you focus in on that?<br>A. I can focus in on that, yes.<br>Q. Who wrote that?<br>MR. CHATTERJEE: Speculation.<br>THE WITNESS: I don't recall -- or I don't know.<br>MR. BURSOR: Q. Who would know the answer to that?<br>A. Again, I believe the header information, as with other elements of this message, would have been auto-generated. So as far as "write this," I don't know would write this.<br>Q. It would have been auto-generated by whom?<br>A. By the --<br>MR. CHATTERJEE: Vague.<br>THE WITNESS: By the system that was called to send out the invitation.<br>MR. BURSOR: Q. What system is that?<br>A. That would probably be Facebook's system. | **Lack of Personal Knowledge/Lack of Foundation/Relevance.**<br><br>Facebook objects to Defendants' reliance on this portion of Mr. Clark's deposition testimony.  Mr. Clark was deposed in his individual capacity, not as Facebook's 30(b)(6) designee and he was not employed at Facebook when the operative events in this action occurred.  He has no personal knowledge regarding the message referenced by Defendants' nor the specific process by which Defendants' Launch Promotion Invitations were generated and transmitted to Facebook users and therefore cannot assert any factual evidence related to such.  Mr. Clark's testimony on this issue is without proper foundation and should be disregarded as irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |

| No. | Evidence Objected To | Objections |
|---|---|---|
| 19. | **Clark Deposition, Page 51, lines 18-21**<br><br>Q. Have you ever seen a document concerning a Facebook user complaining about something that Power did on Facebook?<br>A. I don't believe so. | **Lack of Personal Knowledge/Lack of Foundation/Relevance.**<br><br>Facebook objects to Defendants' reliance on this portion of Mr. Clark's deposition testimony.  Mr. Clark was deposed in his individual capacity, not as Facebook's 30(b)(6) designee and he was not employed at Facebook when the operative events in this action occurred.  He has no personal knowledge of complaints received by Facebook from its users regarding Defendants' conduct, and therefore cannot assert any factual evidence related to such. Mr. Clark's testimony on this issue is without proper foundation and should be disregarded as irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |
| 20. | **Clark Deposition, Page 121, lines 6-25**<br><br>Q. You see 3 asks for any complaints Facebook users made as a result of the events described in Facebook's First Amended Complaint? You see that?<br>A. I see that.<br>Q. But you've never seen any documents like<br>that; right?<br>MR. CHATTERJEE: Overly broad, vague.<br>THE WITNESS: Again, there are documents<br>I've seen that may be responsive to this category. If you're asking if I've seen any specific complaints about Power.com, I have not.<br>MR. BURSOR: Q. Have you seen general complaints about Power.com?<br>A. No.<br>Q. All right. So you haven't seen any specific complaints and you haven't seen any general complaints. What kind of complaints have you seen?<br>A. I've not seen any complaints regarding Power.com based on my preparation for this<br>deposition or otherwise. | **Lack of Personal Knowledge/Lack of Foundation/Relevance.**<br><br>Facebook objects to Defendants' reliance on this portion of Mr. Clark's deposition testimony.  Mr. Clark was deposed in his individual capacity, not as Facebook's 30(b)(6) designee and he was not employed at Facebook when the operative events in this action occurred.  He has no personal knowledge of complaints received by Facebook from its users regarding Defendants' conduct, and therefore cannot assert any factual evidence related to such. Mr. Clark's testimony on this issue is without proper foundation and should be disregarded as irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |

| NO. | EVIDENCE OBJECTED TO | OBJECTIONS |
|-----|----------------------|------------|
| 21. | **Clark Deposition, Page 116, lines 14-18**<br><br>Q. Can you identify anything that Power did<br>that caused Facebook to lose money?<br>A. Same answer.<br>Q. You can't answer?<br>A. I can't answer that. | **Lack of Personal Knowledge/Lack of Foundation/Relevance.**<br><br>Facebook objects to Defendants' reliance on this portion of Mr. Clark's deposition testimony.  Mr. Clark was deposed in his individual capacity, not as Facebook's 30(b)(6) designee and he was not employed at Facebook when the operative events in this action occurred.  He has no personal knowledge of the losses incurred by Facebook as a result of Power's conduct, and therefore cannot assert any factual evidence related to such.  Mr. Clark's testimony on this issue is without proper foundation and should be disregarded as irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |
| 22. | **Clark Deposition, Page 117, lines 18-25**<br><br>Q. Are you aware of any document concerning<br>any injury that Facebook suffered as a result of the events described in the First Amended Complaint? Just the existence of a document.<br>A. I don't know.<br>Q. As you sit here today, you couldn't identify any document that would relate to that?<br>A. No, I don't believe I can. | **Lack of Personal Knowledge/Lack of Foundation/Relevance.**<br><br>Facebook objects to Defendants' reliance on this portion of Mr. Clark's deposition testimony.  Mr. Clark was deposed in his individual capacity, not as Facebook's 30(b)(6) designee and he was not employed at Facebook when the operative events in this action occurred.  He has no personal knowledge of the injuries suffered by Facebook as a result of the events described in Facebook's First Amended Complaint, and therefore cannot assert any factual evidence related to such.  Mr. Clark's testimony on this issue is without proper foundation and should be disregarded as irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |

| No. | Evidence Objected To | Objections |
|-----|---------------------|------------|
| 23. | **Clark Deposition, Page 23, lines 11-17**<br><br>Q. All right. Sitting here today, is it true that Facebook users may be contacted only by<br>Facebook or other registered Facebook users?<br>A. I think that you need to read this paragraph in the context with the other paragraphs.  But if you're talking about users of the site being contacted through the site, then yes. | **Lack of Personal Knowledge/Lack of Foundation/Relevance.**<br><br>Facebook objects to Defendants' reliance on this portion of Mr. Clark's deposition testimony.  Mr. Clark was deposed in his individual capacity, not as Facebook's 30(b)(6) designee and he was not employed at Facebook when the operative events in this action occurred.  Defendants have not provided a foundation for Mr. Clark's knowledge regarding the methods by which Facebook users may be contacted. Mr. Clark's testimony on this issue is without proper foundation and should be disregarded as irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |
| 24. | **Clark Deposition, Page 26, lines 2-12**<br><br>[ ]So far as you're aware, there have been no<br>instances where an e-mail from an outside source was transmitted to a user's Facebook account?<br>MR. CHATTERJEE: Lacks foundation, calls<br>for speculation.<br>THE WITNESS: I don't know.<br>MR. BURSOR: Q. Okay. Sitting here today, can you identify any instance when that has happened?<br>MR. CHATTERJEE: Same objections.<br>THE WITNESS: I cannot. | **Lack of Personal Knowledge/Lack of Foundation/Relevance.**<br><br>Facebook objects to Defendants' reliance on this portion of Mr. Clark's deposition testimony.  Mr. Clark was deposed in his individual capacity, not as Facebook's 30(b)(6) designee and he was not employed at Facebook when the operative events in this action occurred.  Defendants have not provided a foundation for Mr. Clark's knowledge regarding the transmission of messages to Facebook users' accounts. Mr. Clark's testimony on this issue is without proper foundation and should be disregarded as irrelevant.<br><br>**F.R.E. §§ 401-402, 602.** |

17

I. NEEL CHATTERJEE (STATE BAR NO. 173985)
nchatterjee@orrick.com
MONTE M.F. COOPER (STATE BAR NO. 196746)
mcooper@orrick.com
THERESA A. SUTTON (STATE BAR NO. 211857)
tsutton@orrick.com
MORVARID METANAT (STATE BAR NO. 268228)
mmetanat@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:     650-614-7400
Facsimile:      650-614-7401

Attorneys for Plaintiff
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FACEBOOK, INC., | Case No.   5:08-cv-05780 JW |
| Plaintiffs, | **[PROPOSED] ORDER GRANTING FACEBOOK, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY DEFENDANTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| POWER VENTURES, INC. a Cayman Island Corporation,; STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, DOES 2-25, inclusive, | |
| Defendants. | Dept:    Courtroom 9, 19th Floor<br>Judge:   Hon. Chief Judge James Ware |

The Court, having considered Facebook, Inc.'s Evidentiary Objections to Evidence Submitted by Defendants in Support of Defendants' Motion for Summary Judgment, and the records and papers on file in this action, hereby orders as follows:

Paragraphs 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13 of the Declaration of Steve Vachani in Support of Defendants' Motion for Summary Judgment, and references to the testimony of Craig Clark, shall be excluded for purposes of summary judgment.  Citations and references thereto in Defendants' summary judgment briefing are stricken from the record, and the assertions they allegedly support shall be disregarded.

**IT IS SO ORDERED**.

Dated:

_____
Honorable James Ware
Chief Judge
Northern District of California