BURSOR & FISHER, P.A.
L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
          swestcot@bursor.com

BURSOR & FISHER, P.A.
Scott A. Bursor (State Bar No. 276006)
369 Lexington Avenue, 10th Floor
New York, NY  10017
Telephone:  (212) 989-9113
Facsimile:   (212) 989-9163
E-Mail: scott@bursor.com

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik (State Bar No. 077785)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA  94598
Telephone:  (925) 945-0200
Facsimile:   (925) 945-8792
E-Mails: aplutzik@bramsonplutzik.com

Attorneys for Defendants Power
Ventures, Inc. and Steve Vachani

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC.,<br><br>                                      Plaintiff,<br><br>-against-<br><br>POWER VENTURES, INC. d/b/a POWER.COM, a California corporation; POWER VENTURES, INC. a Cayman Island Corporation, STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, an individual and/or business entity of unknown nature; DOES 2 through 25, inclusive, individuals and/or business entities of unknown nature,<br><br>                                      Defendants. | Case No. 5:08-CV-05780 JW<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FACEBOOK'S MOTION FOR PARTIAL SUMMARY JUDGMENT UNDER CALIFORNIA PENAL CODE § 502 AND THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030**<br><br>Date: January 23, 2012<br>Time: 9:00 a.m.<br>Courtroom 9 – 19th Floor<br>Chief Judge James Ware |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

**PAGE(S)**

I.  INTRODUCTION ....................................................................................................... 1

II.  THE RULE 56 SUMMARY JUDGMENT STANDARD ...................................... 2

III.  THE CFAA AND CALIFORNIA PENAL CODE § 502 ...................................... 3

IV.  THE COURT SHOULD DENY FACEBOOK'S MOTION FOR
    SUMMARY JUDGMENT ON ITS CFAA CLAIM ............................................. 4

    A.  Facebook Has Not Offered Any Evidence That Power Obtained Any
        Information Or Anything Of Value From Facebook's Computers ........................... 4

    B.  Power Did Not Access Facebook's Website Without Authorization ....................... 5

    C.  Power Had No Intent To Defraud ......................................................................... 8

    D.  Facebook Has Failed To Demonstrate That It Was Damaged By
        Power's Actions .................................................................................................... 10

V.  THE COURT SHOULD DENY FACEBOOK'S MOTION FOR
    SUMMARY JUDGMENT ON ITS PENAL CODE § 502 CLAIM ................................. 12

VI.  CONCLUSION ...................................................................................................... 12

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FACEBOOK'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

i

1

## TABLE OF AUTHORITIES

2

**PAGE(S)**

3

**CASES**

4

*Eastman Kodak Co. v. Image Technical Services, Inc.*,
   504 U.S. 451 (1992). ...................................................................................................... 2

5

*Fonteno v. Upjohn*,
   780 F.2d 1190 (5th Cir. 1986) ...................................................................................... 2

6

7

*LVRC Holding LLC v. Brekka*,
   581 F.3d 1127 (9th Cir. 2009) ...................................................................................... 3

8

*Multiven, Inc. v. Cisco Systems, Inc.*,
   725 F.Supp.2d 887 (N.D. Cal. 2010)......................................................................... 3, 8

9

*Nelson v. City of Davis*,
   571 F.3d 924, 928 (9th Cir. 2009) ................................................................................ 2

10

11

*Nissan Fire & Marine Ins. Co. v. Fritz*,
   210 F.3d 1099 (9th Cir. 2000) ...................................................................................... 2

12

*P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*,
   428 F.3d 504 (3d Cir. 2007). ................................................................................. 3, 4, 8

13

14

*Provenz v. Miller*,
   102 F.3d 1478 (9th Cir. 1996) ...................................................................................... 9

15

*T. W. Electrical Services, Inc. v. Pacific Electrical Contractors Ass'n*,
   809 F.2d 626 (9th Cir. 1987) ........................................................................................ 2

16

*U.S. v. Diebold*,
   369 U.S. 654 (1962). ..................................................................................................... 2

17

18

*United States v. Perry*,
   431 F.2d 1020 (9th Cir. 1970) ...................................................................................... 2

19

**STATUTES**

20

18 U.S.C. § 1030 ....................................................................................................... Passim

21

Fed. R. Civ. P. 56(c) ........................................................................................................ 2

22

Penal Code § 502 ...................................................................................................... Passim

23

**TREATISES**

24

10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure*
   § 2727 (3d ed. 1998).................................................................................................... 2

25

26

27

28

1    Defendants Power Ventures, Inc. ("Power") and Steve Vachani respectfully submit this

2    memorandum of points and authorities in opposition to Facebook's Motion for Partial Summary

3    Judgment Under California Penal Code § 502 and the Computer Fraud and Abuse Act, 18 U.S.C. §

4    1030.

5    **I.    INTRODUCTION**

6    Facebook moves for summary judgment as to its claims under Penal Code § 502[1] and the

7    Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA").  The Court must deny the

8    motion as to the CFAA claim because Facebook has not even attempted to show that Power

9    obtained information or anything of value from Facebook.  *See* 18 U.S.C. § 1030(a)(2)(C) and

10   (a)(4) (requiring proof that the defendant obtained "information" or "anything of value" to

11   establish liability under the CFAA).

12   Even if Facebook could prove that Power had obtained something from Facebook's

13   computers, it cannot prevail on its claims under the CFAA or Penal Code § 502.  Facebook has not

14   shown that Power accessed Facebook's computers without authorization, nor can it prove that

15   Power had any intent to defraud Facebook.  In truth, Power had no intent to defraud Facebook in

16   any way and was working to create a mutually-beneficial partnership with Facebook.

17   Facebook has also failed to demonstrate that it was harmed in any way by Power activities.

18   Facebook's motion vaguely refers to "spam," "security vulnerabilities," and "misappropriated"

19   content without offering evidence of any real harm.  The Court should deny Facebook's motion.[2]

20

21

22

---

[1]    This is the second motion for summary judgment that Facebook has filed on its claim under Section 502.  *See* Dkt. No. 56 (Facebook's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) or, in the Alternative, Partial Summary Judgment of Liability Under California Penal Code § 502).  The Court denied its earlier motion on July 20, 2010.  Dkt. No. 89.

[2]    In the first sentence of its motion, Facebook quotes an email from Power's former CEO Rob Pollock to Power's board of directors summarizing a conversation he had with one of Power's lawyers.  By disclosing this email, Facebook tramples the attorney-client privilege.  Moreover, Facebook has also taken the email out of context and claimed that Mr. Pollock believed Facebook would obtain summary judgment, when in fact the email merely states that Power's counsel stated that there was some risk that Facebook could obtain summary judgment and that was a reason to seek resolution of this case.  Metanat Decl Exh. 1.

## II.      THE RULE 56 SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz*, 210 F.3d 1099, 1102 (9th Cir. 2000) (*citing* 10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2727 (3d ed. 1998)).

To meet its burden of production, Facebook must produce evidence of every factual element of its claim and must also demonstrate that there is no genuine issue as to any of those facts. *See Fonteno v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (holding when a plaintiff moves for summary judgment on an issue upon which he bears the burden of proof, "he must establish beyond peradventure all of the essential elements of the claim to warrant judgment in his favor").  The court must accept all of the nonmoving party's direct evidence as true. *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 457, 112 S.Ct. 2072, 2077 (1992).  The "district court has the responsibility to construe all facts in the light most favorable to the non-moving party." *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009).  All ambiguities or questions of credibility are to be resolved against the moving party.  *U.S. v. Diebold*, 369 U.S. 654 (1962).  "[I]f a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *T. W. Electrical Services, Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  Even where the underlying facts are undisputed, "[s]ummary judgment should not be granted where contradictory inferences may be drawn from undisputed evidentiary facts." *United States v. Perry*, 431 F.2d 1020, 1022 (9th Cir. 1970).

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything . . . [and] may defeat the motion for summary judgment without producing anything." *Nissan Fire*, 210 F.3d at 1102.  If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id.*

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FACEBOOK'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

2

III.     THE CFAA AND CALIFORNIA PENAL CODE § 502

The CFAA is primarily a criminal statute, criminalizing and penalizing unauthorized access to computers.  *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 510 (3d Cir. 2007).  The majority of CFAA cases involve "classic" hacking activities. *Id.*; *see also LVRC Holding LLC v. Brekka*, 581 F.3d 1127, 1130 (9th 2009) ("The act was originally designed to target hackers who accessed computers to steal information or to disrupt or destroy computer functionality as well as criminals who possessed the capacity to 'access and control high technology processes vital to our everyday lives.'").

Facebook claims that defendants violated two provisions of the CFAA.  First, Facebook relies on 18 U.S.C. § 1030(a)(2)(C), which prohibits a party from intentionally accessing a computer "without authorization" and thereby obtaining "information from any protected computer."  Facebook also cites 18 U.S.C. § 1030(a)(4), which prohibits a party from accessing a "protected computer" "without authorization" with "intent to defraud" and "by means of such conduct furthers the intended fraud and obtains anything of value."  *See also P.C. Yonkers, Inc.*, 428 F.3d at 508 ("A claim under CFAA § 1030(a)(4) has four elements: (1) defendant has accessed a 'protected computer;' (2) has done so without authorization or by exceeding such authorization as was granted; (3) has done so 'knowingly' and with 'intent to defraud;' and (4) as a result has 'further[ed] the intended fraud and obtain[ed] anything of value.'").

Penal Code § 502 is California's corollary to the CFAA.  *Multiven, Inc. v. Cisco Systems, Inc.*, 725 F.Supp.2d 887, 895 (N.D. Cal. 2010).  It was enacted to expand the degree of protection to individuals, businesses and government agencies from "tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems."  Penal Code § 502(a).  As the Court held in its July 20, 2010 order, each of the subsections of Penal Code § 502 that potentially apply in this case require that defendants' actions be taken "without permission." 7/20/10 Order at 9.  Individuals may only be subjected to liability for acting "without permission" under the statute if they "access[] or us[e] a computer, computer network, or website in a manner that overcomes technical or code-based barriers.  *Id.* at 18.  Facebook also bears the burden to prove that it suffered "damage or loss" because of defendants' actions.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FACEBOOK'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.   THE COURT SHOULD DENY FACEBOOK'S MOTION FOR SUMMARY JUDGMENT ON ITS CFAA CLAIM

### A.   Facebook Has Not Offered Any Evidence That Power Obtained Any Information Or Anything Of Value From Facebook's Computers

Facebook cannot establish that defendants are liable under the CFAA because Facebook has failed to demonstrate that Power obtained information or anything of value from its computers. Both provisions of the CFAA cited by Facebook require it to prove that defendants obtained information or something of value from Facebook's website.  *See* 18 U.S.C. § 1030(a)(2)(C) (requiring proof that the defendant obtained "information from any protected computer") and 1030(a)(4) (requiring proof that the defendant obtained "anything of value").

In *P.C. Yonkers, Inc.*, the Third Circuit Court of Appeals affirmed the denial of a request for an injunction under the CFAA because the plaintiffs failed to show that anything was taken as a result of the unauthorized access.  428 F.3d at 509.  The court stated, "It is clear that PC plaintiffs do not know, have not shown, and cannot show, what information, if any, was taken."  *Id.* at 509. The *P.C. Yonkers* court further held that a court may not infer intent or the obtaining of valuable information from the mere fact that unauthorized access has been shown.  *Id.*  ("That information was taken does not flow from mere access.").

In its entire brief, Facebook fails to identify anything that defendants obtained from their supposed unauthorized access of Facebook's computers.  That is fatal to Facebook's CFAA claim. The website at issue here was public and was accessed by authorized users entering their own valid account usernames and passwords.  *See* Vachani Decl. ¶ 22 ("Power did not access any nonpublic portion of Facebook's website.  Power merely offered users a different and potentially superior browser through which they could access their Facebook accounts to copy, update, and/or port their own 'User Content.'  And users did so by entering their own valid usernames and passwords, which Power never copied or stored for any purpose.").  Furthermore, "Power did not obtain any software, data, or other content of value from Facebook.  The only data accessed through Power's utilities were user's own 'User Content,' over which Facebook has disclaimed any ownership." *Id.*

On reply, Facebook may attempt to argue that Power obtained login information or friends' lists, but that information was given to Power with the express permission of its users. That information is also not owned by Facebook, nor does it have any value to Facebook. *See* McGeehan Decl. Exh. 1 at 5 (Facebook's terms of service stating that "Facebook does not assert any ownership over your User Content" and "you retain full ownership of all your User Content and any intellectual property rights or other proprietary rights associated with your User Content").

### B.   Power Did Not Access Facebook's Website Without Authorization

Facebook argues that this Court has already "found unauthorized access" because it concluded that Power's activities violated Facebook's terms of use. Facebook's Motion at 4. That argument is incorrect. In fact, the Court declared that "interpreting the statutory phrase 'without permission' in a manner that imposes liability for a violation of a term of use or receipt of a cease and desist letter would *create a constitutionally untenable situation in which criminal penalties could be meted out on the basis of violating vague or ambiguous terms of use*." 7/20/10 Order at 17 (emphasis added). The Court ruled that "a user of internet services *does not* access or use a computer, computer network, or website without permission simply because that user violated a contractual term of use." *Id.* at 18 (emphasis added).[3]

---

[3]   Facebook's motion repeatedly mentions that Power violated Facebook's Terms of Service and attempts to prove what defendants knew about Facebook's Terms of Service. *See* Facebook's Motion at 4-5 ("Defendants were fully aware that accessing Facebook with automated scripts violated Facebook's terms of use. Before accessing Facebook, Defendants studied Facebook's Terms of Service."). That entire discussion is irrelevant and unnecessary in light of this Court's ruling that defendants cannot be found to have violated the CFAA or Penal Code § 502 based solely on violation of Facebook's Terms of Service. *See* 7/20/10 Order at 17-18. Regardless, Facebook cannot prove that defendants had any real knowledge even if the Terms of Service were relevant. In fact, Mr. Vachani had not fully read it. Vachani Dep. at 275:5-6, Exh. E to the Fisher Decl. ("I didn't read it all a hundred percent. . . ."). Mr. Vachani also explained that he would have simply asked the company's lawyer about it. *Id.* at 275:8-16 ("[My lawyer] Filipe [Herrera] would have also read it . . . I would have asked was there anything relevant in the terms. He would have been the person I talked to."). Mr. Vachani was also unable to identify anyone at Power who read key passages about Facebook's rules on automated scripts, other than himself or his lawyer. *Id.* at 280:22-24. In fact, Mr. Vachani repeatedly emphasized that he did not understand how the Terms of Service was even relevant to Power's business. *Id.* at 276:14-23 ("Q. All right. Did you have an understanding whether power.com enabled users to registered users to violate the Terms of Service? A. I don't understand how a message that a user wants to send to another friend . . . I don't understand what this Terms and Conditions has anything to do with -- with – I don't understand how the relevance to the questions.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Court went on to conclude that "Power did not act 'without permission' within the meaning of Section 502 when Facebook account holders utilized the Power website to access and manipulate their user content on the Facebook website, even if such action would violate Facebook's Terms of Use." *Id.* The Court, however, held open the possibility that Facebook could establish that Power acted "without permission" by providing its users with tools "designed to circumvent the technical barriers that Facebook put in place to block Power's access to the Facebook website." *Id.* at 19.

Facebook contends that Power knowingly "implemented circumvention technologies to access Facebook" (*see* Facebook's Motion at 5), but Mr. Vachani's declaration directly refutes that theory. According to Mr. Vachani, "[i]n late December 2008, Facebook attempted to prevent Power's users from accessing Facebook through Power.com by blocking one IP ('Internet Protocol') address utilized by Power." Vachani Decl. ¶ 10. "Power did not undertake any effort to circumvent that block, and did not provide users with any tools designed to circumvent it." *Id.* at ¶ 11. "Facebook's IP block was ineffective because it blocked only one outdated IP address Power had used, and did not block other IPs that Power was using in the normal course of business." *Id.* "After it became aware of the attempted IP blocking, Power undertook efforts to implement Facebook Connect as Facebook had requested." *Id.* at ¶ 12; *see also* Avalos Decl. Exh. 1 (Docket 57-1) (December 2008 correspondence concerning the parties' negotiations over the implementation of Facebook Connect, and Power's diligent efforts to do so). Negotiations between Power and Facebook over the implementation of Facebook Connect broke down, and Power voluntarily shut down its Facebook integration completely in early 2009. Vachani Decl. ¶ 13. "Power did not circumvent any technical barriers and voluntarily turned off the Facebook integration even though Facebook's IP blocking attack was partial, incomplete, and ineffective." *Id.*

Facebook tries to create the impress that Power sought to circumvent Facebook's technical blocks by referring to a December 18 email from Mr. Vachani in which he referred to the "amazon solution" to supposedly evade the IP blocking. Facebook carefully avoids quoting the remainder of

Mr. Vachani's email, which clearly demonstrates that Power sought to work with Facebook and had no desire to circumvent Facebook's blocks.  Here is the entire email from Mr. Vachani:

> Ok.  Hopefully Facebook will give us an extension to keep Facebook working while we work on this new solution.  I will need to present a presentation to Facebook with our product plan on this.  *Hopefully we will be able to keep the site working while we do this and keep improving Facebook.*

> Also, during this time, we can make sure that our Amazon solution is working to distribute IP's through Amazon and other places.

Metanat Decl. Exh. 7 (emphasis added).

Other parts of the same email chain further show that Power wanted to work with Facebook and was not attempting to do anything nefarious.  For example, on December 17, 2008, Mr. Vachani wrote:

> In the short term, *let[']s be Facebook's most INNOVATIVE partner* and then when we are ready, I will request for them to give us more flexibility and allow us to create extensions to Facebook connect.

> …

> Maybe we can still use the Power Proxy if Facebook allows us to stay logged in.  Let's try to see if we can use the proxy.

> I realize that this is a big change, but it is important that we try our best.  Diplomatically, this will allow us to have more flexibility to try new things with Facebook.

> Facebook has given us a deadline to have EVERYTHING installed and working by next week.  We need to complete everything by December 24th.

> Let me be clear.  THIS IS VERY URGENT.

> . . .

> Eric, please study Facebook connect carefully and please look at Joost, Digsby, and other Facebook connect partners to see how they have implemented.  *More importantly, lets' [sic] try to be Facebook's most innovative partner so they will then work with us on new ideas.*

*Id.* (emphasis added).  Power was not trying to circumvent Facebook's technical blocks.  Power wanted to work with Facebook and be Facebook's "partner."

1       In fact, Power was actively working with Facebook to develop its Facebook Connect

2   infrastructure.[4]   In its brief, Facebook misquotes a December 18, 2008 email from Power's former

3   Chief Technology Officer, Eric Santos.  Facebook's Motion at 6.  Mr. Santos wrote, "Remember

4   that the number 1 priority is the correction of bugs and the **improvement of the infrastructure**

5   (including being ready for blocks)."  Metanat Decl. Exh. 7 (emphasis added).  But Mr. Santos was

6   not referring to a secret plan to bypass the IP block, as Facebook asserts.  Facebook's Motion at 6.

7   The day before, Mr. Santos circulated Power's plan to "**Develop infrastructure** to access

8   Facebook Connect," as Facebook itself had requested.  Metanat Decl. Exh. 7 (emphasis added).

9   Therefore, Mr. Santos meant that the "number 1 priority" was the development of the Facebook

10   Connect infrastructure.  *Id.*  He then wrote that the "Number 2 [priority] is the improvement of the

11   campaign and communication [with Facebook] to maximize the action."  *Id.*  He even devoted full-

12   time staff to develop Facebook Connect integration.  *Id.*  Still, Power was concerned that the

13   project was behind schedule and that Facebook would block their users.  *Id.*  For this reason, Mr.

14   Vachani wrote that he planned to "return to Facebook and make a presentation with our product

15   plan and implementation and ask them if they can give us an extra week."  *Id.*  Power spent those

16   weeks working to complete Facebook Connect integration so the company would be ready if

17   Facebook cut off access.  Facebook has failed to prove that Power circumvented its technical

18   blocks or in any way accessed Facebook "without permission" under the CFAA.

19       **C.**    **Power Had No Intent To Defraud**

20       Even if Facebook could show that Power's access was unauthorized – and there is no

21   evidence that it was – Facebook cannot infer Power's intent to defraud based on that finding alone.

22   *Multiven, Inc.*, 725 F. Supp.2d at 892 ("[A] plaintiff cannot prove 'intent to defraud' by merely

23   showing that an unauthorized access has taken place.").  Intent is an independent element of

24   Facebook's claims, and evidence of unauthorized access alone is insufficient.  In *P.C. Yonkers,*

25   *Inc.*, the Third Circuit addressed this very point:

26

27   [4]     Facebook Connect is a platform designed by Facebook that allows third party websites to
    connect to Facebook.  *See* Vachani Decl. at ¶ 12.

28

> [T]he elements of the claims asserted are part of a ***plaintiff's*** burden . . . Access could be accidental, and, even if access were purposeful and unauthorized, information could be viewed but not used or taken.  Furthermore, ***without a showing of some taking, or use, of information, it is difficult to prove intent to defraud***, and indeed, the PC plaintiffs have not shown that they can do so.

428 F.3d at 509 (first emphasis in original, second emphasis added); *see also Provenz v. Miller*, 102 F.3d 1478, 1489 (9th Cir. 1996) ("Cases where intent is a primary issue generally are inappropriate for summary judgment unless all reasonable inferences that could be drawn from the evidence defeat the plaintiff's claims.")  Facebook must produce actual evidence of intent, not mere inferences from unauthorized access.

Nothing in Facebook's brief supports the finding that Power intended to *defraud* Facebook or its users, only that Power intended to *access* Facebook.  Tellingly, the evidence Facebook offers shows that Power and Mr. Vachani believed they offered a legitimate tool to access Facebook, that Power users were in complete control of their actions, and that their partnership was beneficial to Facebook.  Mr. Vachani said the dispute with Facebook over Power's access was "absurd." Vachani Dep. at 313:10-12, Exh. E to the Fisher Decl.  Mr. Vachani also explained that Power provided a significant benefit to Facebook.  Many of Power's users were from networks other than Facebook (*e.g.* MySpace and Orkut), and Power's cross-network platform would introduce new users to Facebook.  *Id.* at 184:19-185:1 ("99 percent of our users were not -- were not using -- were not using Facebook.  They were users on other sites, so we actually -- I guess you could say we were actually a big source of providing users to Facebook in Brazil.  In fact, as -- I guess you could say it was a gift, but we -- we brought a large amount of Orkut users to Facebook.").

Furthermore, Power and Mr. Vachani viewed Facebook as a valuable partner.  They consistently tried to keep an open dialogue.  When Facebook Connect integration fell behind schedule, Mr. Vachani requested that his team "provide me a Power point showing visually how everything will work with this new version. I will take this to Facebook to show them our progress and work for them to provide additional time."  Metanat Decl. Exh. 7.  Mr. Vachani even specified that "We will need to follow Facebook connects policies regarding displaying their logo on our site."  *Id.*  Mr. Santos described Power's number two priority as "the improvement of the

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FACEBOOK'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

9

1    [Facebook Connect] campaign and communication [with Facebook] to maximize the action." *Id.*

2    Facebook was a potential business partner to Power, not a target of fraud. Power intended to work

3    with Facebook, not steal their users.

4            And Mr. Vachani's declaration similarly shows that Power had no intent to defraud

5    Facebook:

6               The only intended use and the only actual use of the Power browser
                was to display the user's own Facebook account and to enable the
7               user to copy and/or update the user's own "User Content." We had
                no scheme to defraud, deceive or extort anyone. Nor could the
8               Power browser be used for such a scheme. Nor, to my knowledge,
                was the Power browser used for such a scheme.
9
10   Vachani Decl. ¶ 23. Facebook's inability to muster a single document evidencing anyone who

11   claims to have been misled, or to name a single person who was misled, or who complained about

     anything Power did, further confirms that there is no evidence that Power intended to defraud, or
12
     committed any act to further such fraud.
13
           **D.      Facebook Has Failed To Demonstrate That It Was Damaged By**
14                   **Power's Actions**

15           Prior to filing its summary judgment motion, Facebook was unable to produce any

16   document evidencing any loss to, or expenditure by, Facebook. *See* Fisher Exh. C and ¶ 4 ("In

17   response to Defendants' document requests, Facebook has not produced any documents showing

18   that it was injured by any of the events described in its First Amended Complaint."). Mr. Clark

19   then admitted that Facebook has no evidence that it suffered any damage or loss:

20               Q:    Can you identify anything that Power did that caused
                       Facebook to lose money?
21
                 A:    Same answer.
22
                 Q:    You can't answer?
23
                 A:    I can't answer that.
24
     Clark Dep. at 116:14-18, Fisher Decl. Exh. A.
25
                 Q:    Are you aware of any document concerning any injury that
26                     Facebook suffered as a result of the events described in the
                       First Amended Complaint? Just the existence of a document.
27
                 A:    I don't know.
28

1

> Q:      As you sit here today, you couldn't identify any document
>         that would relate to that?

2

> A:      No, I don't believe I can.

3

*Id.* at 117:18-25.

4

Despite its discovery responses and Mr. Clark's deposition testimony, Facebook now

5

argues that it has suffered significant damages, claiming that Power "introduced security

6

vulnerabilities and spam to Facebook's network and servers, misappropriated protected content,

7

and forced Facebook to take costly measures in response to such attacks."  Facebook's Motion at 3.

8

Facebook makes no effort to quantify any real harm it suffered.  For instance, Facebook fails to

9

identify what harm resulted from the supposed "security vulnerabilities" that Power created.  In

10

fact, Facebook does not demonstrate any harm to its data, software, or computers.  It makes no

11

effort to specify what harm came to it as a result of the purported "spam," which was actually sent

12

by Facebook,[5] and is apparently quite common on the Facebook network. ███████████████

13

████████████████████████████████████████████████████████

14

████████████████████████  Nor does Facebook identify anything that Power

15

misappropriated from Facebook's network.  That's because Power didn't take anything that

16

belonged to Facebook.  *See supra* Section IV.A. ███████████████████████████

17

████████████████████████████████████████████████████████

18

████████████████████████████████  Nowhere in its

19

motion does Facebook actually identify how its "goodwill" has been harmed nor does it explain

20

how it was harmed by the supposed violation of its Terms of Use.

21

The only cost explicitly identified in Facebook's motion is the money it paid its lawyer to

22

investigate Power and to file this lawsuit.  *See* Cutler Decl. at ¶¶ 3-15.  Facebook, however, cites

23

no authority for the recovery of such fees under the CFAA.

24

25

26

---

27

[5]      *See* Section V.A of Defendants' Memorandum of Points and Authorities in Opposition to Facebook's Motion for Partial Summary Judgment on Count 1 (CAN-SPAM Act, 15 U.S.C. § 7704).  ("[N]either Power nor Vachani initiated any of the 60,627 messages referenced in Facebook's motion.  In fact, Facebook initiated each and every one of those messages.").

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FACEBOOK'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

11

1

**V.   THE COURT SHOULD DENY FACEBOOK'S MOTION FOR SUMMARY JUDGMENT ON ITS PENAL CODE § 502 CLAIM**

2

3         Facebook also moves for summary judgment as to its claim under Penal Code § 502 on the

4    same grounds as its claim under the CFAA.  As with its CFAA claim, Facebook has failed to show

5    that Power accessed Facebook's website "without permission."  *See supra* Section IV.B.  Facebook

6    has also failed to establish any harm to its network or data from any of Power's activities.  And

7    Facebook has failed to establish that Power intended to defraud Facebook.  The Court should deny

8    Facebook's motion for summary judgment on its Section 502 claim.

**VI.   CONCLUSION**

9

10         Facebook has failed to satisfy its burden to establish every factual element of its claims

11   under the CFAA or Penal Code § 502.  In fact, Facebook is unable to demonstrate that defendants

12   have caused any harm to it in any way.  The Court should deny Facebook's motion for summary

13   judgment on its claims under the CFAA and Penal Code § 502.

14   Dated:  December 2, 2011                    BURSOR & FISHER, P.A.

15

16                                              By:_____/s/_____
                                                        L. Timothy Fisher

17

18                                              BURSOR & FISHER, P.A.
                                                L. Timothy Fisher (State Bar No. 191626)
19                                              Sarah N. Westcot (State Bar No. 264916)
                                                1990 North California Blvd., Suite 940
20                                              Walnut Creek, CA  94596
                                                Telephone:  (925) 300-4455
21                                              Facsimile:  (925) 407-2700
                                                E-Mail:  ltfisher@bursor.com
22                                                       swestcot@bursor.com

23                                              BURSOR & FISHER, P.A.
                                                Scott A. Bursor (State Bar No. 276006)
24                                              369 Lexington Avenue, 10th Floor
                                                New York, NY  10017
25                                              Telephone:  (212) 989-9113
                                                Facsimile:  (212) 989-9163
26                                              E-Mail:  scott@bursor.com

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRAMSON, PLUTZIK, MAHLER &
BIRKHAEUSER, LLP
Alan R. Plutzik (State Bar No. 77785)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA  94598
Telephone:  (925) 945-0200
Facsimile:   (925) 945-8792
E-Mail: aplutzik@bramsonplutzik.com

Attorneys for Defendants Power
Ventures, Inc. and Steve Vachani