1   BURSOR & FISHER, P.A.
    L. Timothy Fisher (State Bar No. 191626)
2   1990 North California Blvd., Suite 940
    Walnut Creek, CA 94596
3   Telephone: (925) 300-4455
    Facsimile: (925) 407-2700
4   E-Mail: ltfisher@bursor.com

5   BURSOR & FISHER, P.A.
    Scott A. Bursor (State Bar No. 276006)
6   369 Lexington Avenue, 10th Floor
    New York, NY 10017
7   Telephone: (212) 989-9113
    Facsimile: (212) 989-9163
8   E-Mail: scott@bursor.com

9   BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
    Alan R. Plutzik (State Bar No. 077785)
10  2125 Oak Grove Road, Suite 120
    Walnut Creek, CA 94598
11  Telephone: (925) 945-0200
    Facsimile: (925) 945-8792
12  E-Mails: aplutzik@bramsonplutzik.com

13  *Attorneys for Defendants Power
    Ventures, Inc. and Steve Vachani*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FACEBOOK, INC., <br><br> Plaintiff, <br><br> -against- <br><br> POWER VENTURES, INC. d/b/a POWER.COM, a California corporation; POWER VENTURES, INC. a Cayman Island Corporation, STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, an individual and/or business entity of unknown nature; DOES 2 through 25, inclusive, individuals and/or business entities of unknown nature, <br><br> Defendants. | Case No. 5:08-cv-05780 JW <br><br> **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> Date: January 23, 2012 <br> Time: 9:00 a.m. <br> Courtroom 9 – 19th Floor <br> Chief Judge James Ware <br><br> **<u>REDACTED VERSION</u>** |

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:08-CV-05780 JW

## I. INTRODUCTION

Facebook's opposition to defendants' motion for summary judgment is filled with lots of conclusory statements but very few facts. Facebook fails to rebut any of the three dispositive facts set forth in defendants' opening brief. *See* Defendants' Opening Brief at 4-11. It has not offered any evidence that Power, not Facebook, initiated the email messages at issue in this case. Nor has it shown that anyone was misled by anything Power did. Finally, Facebook has failed to prove that it was harmed in any way. The Court should grant defendants' motion for summary judgment.[1]

## II. THE COURT SHOULD GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Facebook Concedes That Defendants Did Not Make Any Effort To Circumvent Facebook's Blocks And Have Not Therefore Violated Penal Code § 502

In the July 20, 2010 order, this Court held that the only ground for holding Power liable for violating Section 502 would be if Facebook could prove that Power "circumvented Facebook's technical barriers." 7/20/10 Order (Dkt. No. 89) at 18. Facebook argues that "extensive evidence exists that Defendants developed and employed circumvention technologies." Facebook's Opposition at 3.

Facebook's circumvention theory fails because it never actually blocked Power. Facebook attempted an IP block in December 2008, but it was completely ineffective because it only blocked "one outdated IP address Power had used[] and did not block other IPs that Power was using in the normal course of business." See 5/9/11 Vachani Decl. at ¶ 11. Since Facebook's block was so ineffective, Power did not have to take any steps to respond to it, nor did they attempt to circumvent it in any way. There never was a block, only an inadequate attempt at a block. 5/9/11 Vachani Decl. at ¶ 11. ("At some time during December 2008, Facebook began blocking one of the IP addresses Power had used. Power did not undertake any effort to circumvent that block, and did not provide user with any tools designed to circumvent it.").

Facebook fails to identify anything that Power did *in response* to Facebook's attempted block. In fact, Facebook has conceded that "***Defendants did not make any effort to circumvent***

---

[1] Defendants hereby incorporate by reference the briefs and declarations they submitted in opposition to Facebook's motions for summary judgment.

1  *Facebook's blocks at that time*."  Facebook's Opposition at 2, fn. 1 (emphasis added).  That
2  concession is fatal to Facebook's Section 502 claim.
3     Facebook primarily relies upon the declaration of its expert, Lawrence Melling, to support
4  its contention that Power circumvented its blocks.  Facebook's Motion at 2-5.  Mr. Melling
5  identifies portions of the source code that allowed Power to periodically check if each server could
6  establish a connection, and he hastily concludes that Power *specifically intended* for this software
7  to circumvent Facebook's attempted block.  Melling Decl. at ¶¶ 36-40.  But Facebook conceded
8  that this code was written *prior* to the IP block.  Facebook's Opposition at 2, fn. 1 (explaining that
9  Defendants did not make any effort to circumvent Facebook's blocks because "their circumvention
10 measures *had already been written into the PowerScript* and no further efforts were required for
11 them to continue to access the Facebook website") (emphasis added).  Mr. Melling does not
12 identify any code Power wrote to *respond* to Facebook's attempted block.  Furthermore, Mr.
13 Melling's discussion of Power's code is out of context.  He fails to fully specify when, where, and
14 how Power actually executed these routines or whether Power had similar code for other social
15 networking sites (*e.g.* MySpace and Orkut).  He also fails to offer any opinion regarding whether
16 this functionality -- the ability to replace blocked servers -- is common in the technology industry.
17 *Id.*  Mr. Melling's declaration has little relevance.  It is consistent with the evidence showing that
18 (i) Power established Facebook connectivity, (ii) Facebook made an ineffective attempt to block
19 Power, and (iii) Power did not attempt to circumvent this failed block.
20    Power cannot be liable under Section 502 because this Court's prior ruling only permits
21 liability for actions taken in response to "technical barriers" imposed by Facebook.  Indeed, the
22 Court specifically held that liability can only be shown where a person applies "the technical skill
23 necessary *to overcome such a barrier*."  7/20/10 Order at 18 (emphasis added).  Facebook has
24 failed to identify that there even was a barrier or that Power did anything to circumvent or
25 overcome the attempted blocking.
26    **B.**  **The Court Should Strike Facebook's Evidentiary Objections**
27    Facebook also has filed evidentiary objections to Mr. Vachani's declaration.  Facebook's
28 evidentiary objections violate Local Rule 7-3(a), which requires that, "The opposition [to a motion]

1 may include a proposed order, affidavits or declarations, as well as a brief or memorandum under
2 Civil L.R. 7-4.  ***Any evidentiary and procedural objections to the motion must be contained***
3 ***within the brief or memorandum***."  Civil L.R. 7-3(a) (emphasis added).

4     This is not a harmless error.  Together, Facebook's objections and brief exceed the Court's
5 25-page limit.  Civil L.R. 7-3(a).  In fact, Facebook's evidentiary objections are 25 pages alone.
6 The evidentiary objections are therefore improper, and the Court should strike them from the
7 record.

8     Even aside from its failure to comply with the Court's rules, Facebook's objections are not
9 well taken.  Facebook contends that Mr. Vachani's statements "requir[e] an expert's analysis."
10 Facebook's Objections to Evidence at 2-3.  But Mr. Vachani's testimony concerns facts directly
11 within the scope of his personal knowledge.  *See* Fed. R. Evid. 602 ("A witness may testify to a
12 matter only if evidence in introduced sufficient to support a finding that the witness has personal
13 knowledge of the matter.  Evidence to prove personal knowledge may consist of the witness's own
14 testimony.").  This knowledge is based upon his experience as Power's CEO.  *See* 5/9/11 Vachani
15 Decl. at ¶ 1 ("I am CEO of Power.com . . . I have personal knowledge of the facts stated herein,
16 and, if called as a witness, I could and would competently testify to the truth thereof.").  Moreover,
17 in its CAN-SPAM motion for summary judgment, Facebook states that "[n]obody disputes that
18 Vachani *participated in, authorized and directed Power's spamming activity*."  Facebook's CAN-
19 SPAM MSJ at 18 (emphasis added).  According to Facebook, Mr. Vachani has sufficient
20 knowledge and involvement to be held personally liable for Power's actions, but he cannot submit
21 a declaration describing exactly what Power did.  Mr. Vachani's testimony is non-technical and is
22 limited to a straightforward explanation of Power's browser and business model.  There is
23 absolutely no need for expert testimony on any issue raised by any of the summary judgment
24 motions.[2]

---

25 [2] Facebook states that Mr. Vachani's declaration should be disregarded because it assumes
that "only user authorization to access the Facebook website was needed" and that "this Court
26 already recognized that Facebook must give authorization."  Facebook's Opposition at 4.  That
statement is incorrect.  This Court has made no such holding.  In fact, the Court explicitly rejected
27 Facebook's argument that Power can be held liable under the CFAA or Penal Code § 502 for
accessing Facebook in violation of Facebook's terms of service.  *See* 7/20/11 Order (Dkt. No. 89)
28 at 18 ("[T]he Court finds that a user of internet services does not access or use a computer,

Next, Facebook contends that Mr. Vachani's testimony is "not helpful to a clear understanding of any testimony or determination of any facts in issue."  Facebook's Objections to Evidence at 3-4.   But Facebook itself has relied on Mr. Vachani's testimony and analysis.  Facebook asked Mr. Vachani about these very same facts during his deposition, and Facebook is currently seeking a second deposition of Mr. Vachani.  *See* Fisher Reply Decl. Exh. A at 98:16-99:10 (discussing how Power users authorized their actions on Facebook through Power's browser), 103:1-104:23 (explaining how Power users logged into Facebook through Power.com), 192:1-18 (describing method by which Facebook users created events for the launch promotion), 206:4-22 (discussing how Power users authorized the creation of launch promotion events), 273:6-274:10 (explaining how Facebook sends email notifications after a Power user authorized the creation of an event), 327:9-328:22 (describing why Facebook's IP block did not work and why Power did not need to take any extra measures to circumvent it) and ¶ 3 ("Facebook has requested a second deposition of Mr. Vachani.").

Finally, Facebook contends that Craig Clark, its employee and in house counsel, lacked personal knowledge of statements cited by defendants from his deposition.  Facebook's Objections to Evidence at 4-5.  But Mr. Clark verified Facebook's first set of interrogatory responses.  *See* 5/9/11 Fisher Decl. Exh. E.  In those responses, Mr. Clark stated under the penalty of perjury that he was "an agent of Facebook, Inc." and "authorized to make this verification for Facebook."  *Id.* at 7.  He also swore that "the matters stated in the Responses are true."  *Id.*  In those responses verified by Mr. Clark, Facebook was unable to identify any specific person misled by any of the messages referenced in Facebook's complaint.  *Id.* at 2-3.  Moreover, Mr. Clark's deposition testimony is entirely consistent with Facebook's discovery responses in which it failed to produce even a single document showing any injury whatsoever from anything Power has ever done.  *See* 5/9/11 Fisher Decl. Exh. B and ¶ 2 ("Facebook's response to the document requests included objections, assertions of privilege, and a statement that responsive documents would be produced

---

computer network, or website without permission simply because that user violated a contractual term of use.").  This Court has never held that Power needed Facebook's permission to access its website.

upon entry of a protective order. However, even after the protective order was executed and then entered by the Court, Facebook produced nothing.").

### C.     Defendants Have Not Violated The CFAA

Facebook cannot establish that defendants are liable under the CFAA because Facebook has failed to demonstrate that Power obtained information or anything of value from its computers. Both provisions of the CFAA cited by Facebook require it to prove that defendants obtained information or something of value from Facebook's website. *See* 18 U.S.C. § 1030(a)(2)(C) (requiring proof that the defendant obtained "information from any protected computer") and 1030(a)(4) (requiring proof that the defendant obtained "anything of value").

In *P.C. Yonkers, Inc.*, the Third Circuit Court of Appeals affirmed the denial of a request for an injunction under the CFAA because the plaintiffs failed to show that anything was taken as a result of the unauthorized access. 428 F.3d at 509. The court stated, "It is clear that PC plaintiffs do not know, have not shown, and cannot show, what information, if any, was taken." *Id.* at 509. The *P.C. Yonkers* court further held that a court may not infer intent or the obtaining of valuable information from the mere fact that unauthorized access has been shown. *Id.* ("That information was taken does not flow from mere access.").

Facebook fails to identify anything that defendants obtained from their supposed unauthorized access of Facebook's computers. The website at issue here was public and was accessed by authorized users entering their own valid account usernames and passwords. *See* 5/9/11 Vachani Decl. ¶ 10 ("Power did not access any nonpublic portion of Facebook's website. Power merely offered users a different and potentially superior browser through which they could access their Facebook accounts to copy, update, and/or port their own 'User Content.' And users did so by entering their own valid usernames and passwords, which Power never copied or stored for any purpose."). Furthermore, "Power did not obtain any software, data, or other content of value from Facebook. The only data accessed through Power's utilities were user's own 'User Content,' over which Facebook has disclaimed any ownership." *Id.*; *see also* McGeehan Decl. Exh. 1 at 5 (Facebook's terms of service stating that "Facebook does not assert any ownership over

your User Content" and "you retain full ownership of all your User Content and any intellectual property rights or other proprietary rights associated with your User Content").

Facebook also seeks to eliminate the intent requirement from the CFAA. In effect, Facebook argues that the CFAA is a strict liability statute and that defendants violated the CFAA merely be accessing Facebook's website. Facebook's Opposition at 5. This Court specifically rejected that argument in *Multiven, Inc. v. Cisco Systems, Inc.*, 725 F.Supp.2d 887, 892 (N.D. Cal. 2010). The Court held that "a plaintiff cannot prove 'intent to defraud' by merely showing that an unauthorized access has taken place." *Id.*; *see also P.C. Yonkers, Inc.* 428 F.3d at 509 ("Furthermore, without a showing of some taking, or use, of information, it is difficult to prove intent to defraud.").

Here Facebook has completely failed to demonstrate that Power intended to defraud Facebook or its users. In fact, the evidence shows that Power and Mr. Vachani believed they offered a legitimate tool to access Facebook, that Power users were in complete control of their actions, and that their partnership was beneficial to Facebook. In fact, many of Power's users were from networks other than Facebook (*e.g.* MySpace and Orkut), and Power's cross-network platform would introduce new users to Facebook. *See* Fisher Reply Decl. Exh. A at 184:19-185:1, ("99 percent of our users were not -- were not using -- were not using Facebook. They were users on other sites, so we actually -- I guess you could say we were actually a big source of providing users to Facebook in Brazil. In fact, as -- I guess you could say it was a gift, but we -- we brought a large amount of Orkut users to Facebook.").

Furthermore, Power and Mr. Vachani viewed Facebook as a valuable partner. They consistently tried to keep an open dialogue. When Facebook Connect integration fell behind schedule, Mr. Vachani requested that his team "provide me a Power point showing visually how everything will work with this new version. I will take this to Facebook to show them our progress and work for them to provide additional time." 11/17/11 Metanat Decl. Exh. 7. Mr. Vachani even specified that "We will need to follow Facebook connects policies regarding displaying their logo on our site." *Id*. Mr. Santos described Power's number two priority as "the improvement of the [Facebook Connect] campaign and communication [with Facebook] to maximize the action." *Id*.

1  Facebook was a potential business partner to Power, not a target of fraud.  Power intended to work

2  with Facebook, not steal their users.

3        And Mr. Vachani's declaration similarly shows that Power had no intent to defraud

4  Facebook:

5      The only intended use and the only actual use of the Power browser was to display the user's own Facebook account and to enable the

6      user to copy and/or update the user's own "User Content."  We had no scheme to defraud, deceive or extort anyone.  Nor could the

7      Power browser be used for such a scheme.  Nor, to my knowledge, was the Power browser used for such a scheme.

8  5/9/11 Vachani Decl. at ¶ 13.  Facebook's inability to muster a single document evidencing anyone

9  who claims to have been misled, or to name a single person who was misled, or who complained

10  about anything Power did, further confirms that there is no evidence that Power intended to

11  defraud, or committed any act to further such fraud.

12        **D.**      **Facebook Has Not Been Harmed By Anything Defendants Have Done**

13        Prior to filing its summary judgment motions, Facebook failed to produce a single shred of

14  evidence that it had been harmed by Power.  *See* Defendants' Opening Brief at 10-11, 18-20.  Now,

15  Facebook argues that it has suffered significant damages, claiming that Power "introduced security

16  vulnerabilities and spam to Facebook's network and servers, misappropriated protected content,

17  and forced Facebook to take costly measures in response to such attacks."  Facebook's CFAA

18  Motion for Summary Judgment at 3.  Facebook makes no effort to quantify any real harm it

19  suffered.  For instance, Facebook fails to identify what harm resulted from the supposed "security

20  vulnerabilities" that Power created.  In fact, Facebook does not demonstrate any harm to its data,

21  software, or computers.  It makes no effort to specify what harm came to it as a result of the

22  purported "spam," which was actually sent by Facebook, and is apparently quite common on the

23  Facebook network.  McGeehan Decl. at ¶ 5 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

24  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Nor does

25  Facebook identify anything that Power misappropriated from Facebook's network.  That's because

26  Power didn't take anything that belonged to Facebook. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

27  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

28  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Nowhere in its

1   motion does Facebook actually identify how its "goodwill" has been harmed nor does it explain
2   how it was harmed by the alleged violation of its Terms of Use.
3         The only cost explicitly identified in Facebook's motion is the money it paid its lawyer to
4   investigate Power and to file this lawsuit.  *See* Cutler Decl. at ¶¶ 3-15.  Facebook, however, cites
5   no authority for the recovery of such fees under the CFAA.
6         **E.**      **Defendants Have Not Violated The CAN-SPAM Act**
7         Finally, Facebook has failed to rebut the evidence defendants offered in support of their
8   motion showing that Facebook, not Power, sent the emails messages at issue in this case.  The
9   messages came from Facebook's servers and identify Facebook as the party who sent the email.
10  Facebook even concedes that "***Facebook's automated processes generated those***
11  ***communications***."  Facebook's Opposition at 7 (emphasis added).  How can Power be liable under
12  the CAN-SPAM Act if Facebook admits it sent the email messages?  In fact, Power had no
13  capability to send those messages and had no knowledge which Facebook users created the events
14  that led to the dissemination of the messages at issue.
15        Facebook also repeats the argument from its summary judgment motion that defendants are
16  liable under the CAN-SPAM Act because they "paid *their users* to send unsolicited commercial
17  messages through Facebook's system and servers."  Facebook's Opposition at 7, fn. 5 (emphasis in
18  the original).  That argument flatly contradicts Facebook's claim that Power sent the messages.
19  Moreover, the evidence shows that Power only paid about 30 users in connection with the launch
20  promotion and there is nothing in the record to indicate that those users sent the 60,627 email
21  messages that Facebook contends were sent.  *See* Fisher Reply Decl. Exh. A at 189:21-190:6.
22        Finally, Facebook makes no effort in its opposition brief to show how it was "adversely
23  affected" in any way by the emails at issue in this case.  In its motion for summary judgment on the
24  CAN-SPAM claim, Facebook claims significant adverse effects including time spent by its
25  engineers and lawyers as well as damage to Facebook's reputation and goodwill.  Facebook's
26  CAN-SPAM Motion at 11.  None of these "harms" are redressable under the CAN-SPAM Act and
27  clearly fall with the category of the "negligible burdens typically borne by an [ISP] in the ordinary
28  course of business.  *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 54 (9th Cir. 2009); *see also*

Defendants' Motion for Summary Judgment at 15-16.  The Court should grant defendants' motion for summary judgment.

Dated:  December 12, 2011

Respectfully submitted,

BURSOR & FISHER, P.A.

By:  _____/s/ L. Timothy Fisher_____

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail:  ltfisher@bursor.com

BURSOR & FISHER, P.A.
Scott A. Bursor (State Bar No. 276006)
369 Lexington Avenue, 10th Floor
New York, NY  10017-6531
Telephone:  (212) 989-9113
Facsimile:   (212) 989-9163
E-Mail:  scott@bursor.com

BRAMSON PLUTZIK MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik (State Bar No. 77785)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA  94598
Telephone:  (925) 945-0200
Facsimile:  (925) 945-8792
E-Mail: aplutzik@bramsonplutzik.com

*Attorneys for Defendants Power Ventures, Inc. and Steve Vachani*