1 | I. NEEL CHATTERJEE (STATE BAR NO. 173985)
nchatterjee@orrick.com
2 | MONTE COOPER
mcooper@orrick.com
3 | THERESA A. SUTTON (STATE BAR NO. 211857)
tsutton@orrick.com
4 | MORVARID METANAT (STATE BAR NO. 268228)
mmetanat@orrick.com
5 | ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
6 | Menlo Park, California  94025
Telephone:    650-614-7400
7 | Facsimile:    650-614-7401

8 | Attorneys for Defendant
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FACEBOOK, INC., | Case No. 5:08-cv-05780-JW (JCS) |
| Plaintiff, | **FACEBOOK, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT 1** |
| v. | |
| POWER VENTURES, INC. a Cayman Island corporation, STEVE VACHANI, an individual; DOE 1, s/b/a POWER.COM, DOES 2-25, inclusive, | Date:    January 23, 2012
Time:    9:00 A.M.
Dept:    Courtroom 9, 19th Floor
Judge:   Hon. Chief Judge James Ware |
| Defendants. | |

**FILED UNDER SEAL**

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

FACEBOOK'S REPLY ISO MOT. FOR
PARTIAL SUMM. J. RE CAN-SPAM
5:08-CV-05780-JW (JCS)

## I. INTRODUCTION

Defendants violated 15 U.S.C. section 7704(a)(1). In its opening papers, Facebook demonstrated that Defendants violated the CAN-SPAM Act ("the Act") by creating and initiating the transmission of at least 60,627 Facebook Event invitations with false and misleading header information. Defendants proffer no conflicting evidence. Instead, they argue that they could not have initiated the email notifications generated *after* they created the Events and selected the invitation recipients, because they did not control Facebook's internal messaging systems. In so doing, Defendants ignore the legal definition of "initiator" under the Act. Defendants also ignore that their Event invitations qualify as unlawful messages under the Act. Because Defendants' arguments rest on faulty legal premises, summary judgment on Facebook's CAN-SPAM claim is appropriate.

## II. ARGUMENT

Pursuant to the CAN-SPAM Act, "[i]t is unlawful for any person to initiate the transmission, to a protected computer, of a commercial electronic mail message . . . that contains, or is accompanied by, header information that is materially false or materially misleading." 15 U.S.C. § 7704(a)(1). As discussed below, Defendants failed to create a genuine issue of material fact that their Event invitations are prohibited by section 7704(a)(1).

### A. Defendants Do Not Address Event Creation As An Independent Form Of SPAM

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████. Nowhere in their Opposition do Defendants refute the evidence or Facebook's argument that the Defendants initiated the Event invitations containing false or misleading header information. On that basis alone, summary judgment is warranted.

### B. Defendants Have Not Identified A Factual Dispute About The Harm Facebook Suffered

Facebook was adversely affected by Defendants' actions. Rather than challenge the evidence, Defendants incorrectly argue that the type of harm Facebook suffered cannot be used to

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-1-

FACEBOOK'S REPLY ISO MOT. FOR
PARTIAL SUMM. J. RE CAN-SPAM
5:08-CV-05780-JW (JCS)

1  support its CAN-SPAM claim.  Defs.' Opp'n to Facebook's Mot. for Partial Summ. J. on CAN-
2  SPAM ("Defendants' Opp.") at 15:10-25.  The undisputed evidence shows precisely the type of
3  harm contemplated by the law.  In its opening papers, Facebook detailed the time and resources it
4  dedicated to combating Defendants' harvesting and spam campaign.  11/14/11 Mot. for Partial
5  Summ. J. on CAN-SPAM at 11:1-12:7; 11/14/11 Decl. of Ryan McGeehan in Support of Mot. for
6  Partial Summ. J. on CAN-SPAM ("McGeehan Decl.") at ¶¶ 6(a)-(d); 10-17;  11/14/11 Decl. of
7  Joseph Cutler in Support of Mot. for Partial Summ. J. on CAN-SPAM at ¶¶ 6-15.  This type of
8  trouble and expense qualifies as the type of harm that "adversely affects" under the Act.  *See*
9  *MySpace v. Wallace*, No. CV-07-1929ABCAGRX, 2007 WL 2188109 *2 (C.D. Cal. Jul. 20,
10 2007) (stating time, money, resources used to stop harm is sufficient to satisfy "adversely
11 affected" standard).

12 Defendants rely exclusively upon the Deposition of Craig Clark, a Facebook employee,
13 when he testified that he was not aware "of any document concerning any injury that Facebook
14 suffered."  Defendants' Opp. at 14:13-17.  His lack of knowledge "of any document" is
15 unsurprising.  Mr. Clark started working at Facebook after the events underlying this dispute.
16 12/2/11 Decl. of Theresa A. Sutton in Support of Facebook's Opp'n to Defendants' Mot. for
17 Summ. J. ("Sutton Decl."), Ex. 3 at 7:5-6; 81:8-18.  Further, Mr. Clark was deposed only in his
18 individual capacity because he had verified certain interrogatory responses.  Decl. of I. Neel
19 Chatterjee in Support of Facebook's Reply Mem. ("Chatterjee Decl.") Ex. 5.  None of those
20 interrogatories sought information about the harm Facebook suffered as a result of Defendants'
21 spamming activities.  *Id*. Ex. 6.

22
23     C.    **Defendants Do Not Identify A Factual Dispute As To Their Liability Under 15 USC 7704(a)(1)(A)**

24 Defendants next argue that they did not initiate "email messages" and did not procure
25 anyone to send the "email messages."  Defs.' Opp. at 5:15-11:18.  Defendants' argument rests on
26 an erroneous legal interpretation of the word "initiate."
27 The Act has a clear and unambiguous definition of the phrase "initiate":
28

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 2 -

FACEBOOK'S REPLY ISO MOT. FOR
PARTIAL SUMM. J. RE CAN-SPAM
5:08-CV-05780-JW (JCS)

> The term "initiate," when used with respect to a commercial electronic mail message, means to originate or transmit such message or to procure the origination or transmission of such message, but shall not include actions that constitute routine conveyance of such message. For purposes of this paragraph, more than one person may be considered to have initiated a message.

15 U.S.C. § 7702(9).  The undisputed evidence shows that Defendants initiated the commercial messages. Specifically, Facebook has established that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.  11/14/11 Mot. for Partial Summ. J. on CAN-SPAM at 12:16-14:8.  Facebook also has demonstrated that Defendants offered money to their users to invite Facebook users to join power.com.  Defendants do not dispute any of these facts.

### 1. Defendants Concede They Initiated Transmission of Electronic Mail Messages

Rather than challenge Facebook's evidence related to Event creation and the sending of Event invitations directly on Facebook, Defendants misleadingly focus the Court on the email messages depicted in the First Amended Complaint.  They then argue that those emails were "initiated" by Facebook. However, Defendants *caused* the messages to be sent.  The email messages simply would not have been sent but for Defendants' actions.  Specifically, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Melling Declaration at ¶¶ 17-35.  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.  *Id.* ¶¶ 22-26.

Once again, Defendants return to Mr. Clark to try to disclaim their responsibility.  The entirety of the excerpt from Mr. Clark's deposition to which Defendants cite shows nothing more than that the Facebook system generated email notifications in response to Defendants' creation and transmission, through their software application, of the Event invitations.  Defs.' Opp. at 8:13-10:21.  Defendants' recitation of Mr. Clark's testimony does not create a factual dispute, but instead demonstrates Defendants' liability set forth in Facebook's moving papers: the email notification is "[a]utomatically generated by Facebook's computers or their systems, based on a

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 3 -

FACEBOOK'S REPLY ISO MOT. FOR
PARTIAL SUMM. J. re CAN-SPAM
5:08-cv-05780-JW (JCS)

prompt from somebody outside. . . . whoever's creating the event," which in this case is Defendants.  11/14/11 Mot. for Partial Summ. J. on CAN-SPAM at 15:19-28 citing Melling Declaration ¶¶ 3, 17-30; *see also* Defendants' Opp. at 9:1-4.

### 2.  Defendants Procured Initiation Of Transmission By Offering Its Users Monetary Incentives

Defendants incorrectly argue that they are not liable under a "procurement theory" because Power did not pay *Facebook* to transmit any email.  Defendants' Opp. at 11:16-17.  Defendants again misread the law and attempt to bury the point:  Their Launch Promotion was designed to pay *Power users* to implement their software, which automatically created and sent commercial messages to Facebook users encouraging them to join power.com.  Even Vachani admitted that Defendants offered to pay (and, indeed, paid) their users to solicit Facebook users to join power.com.  11/14/11 Mot. for Partial Summ. J. on CAN-SPAM at 13:18-14:2; *see also* Dkt. Nos. 9 at ¶¶ 65, 70, 72; 54 ¶¶ 65, 70, 72; 11/14/11 Decl. of Monte M.F. Cooper in Support of Mot. for Partial Summ. J. on CAN-SPAM ("Cooper Decl.") Ex. 2 at 197:9-12; 203:19-204:7; 212:19-213:4; 256:8-257:10; 257:22-258:11; 259:20-260:1; 261:23-262:5; 263:14-264:12; 266:7-21; 273:6-274:10.  Defendants' refusal to acknowledge the basis of Facebook's motion does not create a factual issue.  Rather, it demonstrates that Defendants cannot dispute that they violated the Act.

### 3.  Defendants Do Not Dispute That The Messages Were Commercial Electronic Mail Messages

Defendants do not dispute, and thus admit, that the Event invitation and subsequent emails are commercial messages under the Act.  15 U.S.C. §7702(2)(A); 11/14/11 Mot. for Partial Summ. J. on CAN-SPAM at 14:10-15:3.

### 4.  Defendants Do Not Identify A Factual Dispute About Whether Their Messages Contained False And Misleading Headers

No factual dispute exists as to whether the Event invitation headers were false and misleading.  Facebook has demonstrated that Defendants' ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1  [redacted]

2  11/14/11 Mot. for Partial Summ. J. on CAN-SPAM at 15:19-22; Melling Decl. at ¶¶ 3, 17-30.

3  Defendants do not dispute this fact. Instead, Defendants recognized the problem, as demonstrated

4  by previously withheld documents. In discussing the Launch Promotion Felipe Herrera, a Power

5  employee, told Mr. Vachani, "Jesus Christ, man . . . I had no idea we were sending these

6  messages and signing 'The Facebook Team.'" He then continued, "Granted that signing someone

7  else's name in a commercial email is just obvious to any layman that it is fraud. People don't

8  need to be lawyers to know that it is wrong, so I don't understand why we did this . . . ."

9  Chatterjee Decl., Ex. 7.

10      Despite Power's own statements, Defendants now erroneously argue that their messages

11  were not misleading because they received no complaints, and Mr. Clark could identify none.

12  Defendants' Opp. at 12:16-13:23. It is enough that the header is, in fact, false and misleading

13  because it appears to have originated with the Facebook user, when it was actually created and

14  transmitted by Defendants. *See Aitken v. Commc'ns Workers of America*, 496 F. Supp. 2d 653,

15  667 (E.D. Va. 2007) (finding header information that appears to originate from a manager rather

16  than an "outsider" misleading because it could have more credibility and, therefore, affect an

17  objective recipient's opinion about the message); *see* 15 U.S.C. §§ 7702(8); 7704(a)(1)(C).

18  Mr. Herrera's email recognizes, and Defendants cannot dispute, this fact. Indeed, Defendants do

19  not dispute this fact.

20      **D.    Defendants Do Not Dispute That They Knowingly And Willfully Violated The Act**

21

22      Defendants incorrectly argue that Facebook seeks treble damages because they [redacted]

23  [redacted] Defs.' Opp. at 16:1-4. In its motion, Facebook

24  explained that [redacted]

25  [redacted]

26  [redacted] 11/14/11

27  Mot. for Partial Summ. J. on CAN-SPAM at 16:8-13 (italics in original). Facebook's motion

28  describes in detail how Defendants' circumvention processes constitute knowing, willful and

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 5 -

FACEBOOK'S REPLY ISO MOT. FOR
PARTIAL SUMM. J. RE CAN-SPAM
5:08-CV-05780-JW (JCS)

1  aggravated violations of the Act. *Id.* at 16:24-17:1. Defendants offer no facts in response.

2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 17:3-26. Instead, they argue that they "did not harvest login

4  data for the purpose of sending unsolicited commercial messages." Defs.' Opp. at 16:26. Their

5  assertion lacks any evidentiary support. Indeed, Defendants admit they used the harvested

6  addressing information from Facebook to send their messages. Cooper Decl. Ex. 6 at Power's

7  Responses to Requests for Admissions Nos. 15, 18, 22, 37, 43-44, 50, 54-56; Ex. 2 at 182:16-

8  186:2; 191:5-192:18; 197:4-8; 199:10-15; 203:4-18; *see also* 11/14/11 Mot. for Partial Summ. J.

9  on CAN-SPAM at 17:11-20 citing Melling Decl. ¶ 19. Defendants do not proffer any

10 contradictory evidence and do not explain why they now depart from their own prior discovery

11 responses.

12    Defendants seek to avoid treble damages by offering the self-serving conclusion that the

13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Defs.' Opp. at 16:8-15.

15 Notably, Defendants do not dispute that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17 ▮▮▮▮▮ Melling Decl. ¶ 33. The latter information, of course, is highly critical to Facebook's

18 ability to establish damages based on "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Because Defendants were, at best, reckless in permitting this

20 information to be destroyed, Facebook's ability to prove damages now is inhibited.

21/22  **E.    Vachani Does Not Dispute That He Is Independently Liable Under The CAN-SPAM Act**

23    As with many of Facebook's other arguments, Defendants concede – by failing to address

24 – that Vachani is individually liable under the CAN-SPAM Act. 11/14/11 Mot. for Partial Summ.

25 J. on CAN-SPAM at 18:2-16.

26 **III.   CONCLUSION**

27    For the reasons stated above, as well as in Facebook's opening brief and supporting

28 declarations, Facebook respectfully requests that the Court grant its Motion for Partial Summary

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 6 -

FACEBOOK'S REPLY ISO MOT. FOR
PARTIAL SUMM. J. RE CAN-SPAM
5:08-cv-05780-JW (JCS)

Judgment on Count 1.

Dated: December 12, 2011

Orrick, Herrington & Sutcliffe LLP

By: /s/
I. NEEL CHATTERJEE
Attorneys for Defendant
Defendant

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 7 -

FACEBOOK'S REPLY ISO MOT. FOR
PARTIAL SUMM. J. RE CAN-SPAM
5:08-CV-05780-JW (JCS)