

**ORRICK, HERRINGTON & SUTCLIFFE** LLP
1000 MARSH ROAD
MENLO PARK, CALIFORNIA 94025

*tel* +1-650-614-7400
*fax* +1-650-614-7401
**WWW.ORRICK.COM**

Metanat Morvarid
(650) 614-7344
mmorvarid@orrick.com

Via Electronic Filing

January 26, 2012

Hon. Joseph C. Spero
United States Magistrate Judge
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102
Re:     Facebook, Inc. v. Power Ventures, Inc., et al., Case No. 5:08-cv-05780 (JW)

Dear Magistrate Judge Spero:

         Plaintiff Facebook, Inc. ("Facebook") hereby moves this Court for an Order pursuant to Fed. R. Civ. P. 37 compelling Defendant Power Ventures, Inc. ("Power") to comply with Federal Rule of Civil Procedure 30(b)(6) and to furnish a witness who will provide informed, responsive, and factual answers on the topics noticed in Facebook's Second Amended Notice of Deposition of Defendant Power.  To the extent that Power re-designates Steve Vachani ("Vachani")to testify to all of the noticed subjects, Facebook requests that this further deposition be supervised by the Court or a Special Master, and occur at Defendants' expense.  Defendants oppose Facebook's request.

         Fact discovery concluded on January 20, 2012.  However, prior to that deadline the parties met and conferred pursuant to the Federal Rules and the Court's Standing Order on Discovery Disputes.  The parties failed to reach resolution and, accordingly, submit this joint letter brief.  Facebook attaches the Declaration of Morvarid Metanat ("Metanat Decl.") in support of its arguments, and Defendants attach the Declaration of L Timothy Fisher ("Fisher Decl.") in support of their positions.

**I.      Facebook's Position Regarding A Further Supervised Rule 30(b)(6) Deposition Of Power.**

         This case involves allegations that Power and its CEO, Vachani, violated the CAN-SPAM Act, the Computer Fraud and Abuse Act, and California Penal Code Section 502 when they used their social aggregation website www.power.com to secretly spider, scrape and download user information and other web content from Plaintiff's popular website www.facebook.com, while also



ORRICK

HON. JOSEPH C. SPERO
JANUARY 26, 2012
Page 2

spamming Facebook users with more than 60,000 solicitations to join Power.[1]  Facebook deposed Power pursuant to Fed. R. Civ. P. 30(b)(6) on a number of topics related to these allegations on January 9, 2012.  *See* Metanat Decl. Ex. 1.  However, during the deposition, it became apparent that Power failed to produce a knowledgeable witness as required by the Federal Rules.  Power's designee on virtually all of the topics, Steve Vachani, spent only one hour preparing for the deposition, and was unprepared to answer the majority of the questions posed to him related to the noticed topics.

Both the topics set forth in Facebook's Rule 30(b)(6) Notice and the questions asked of Power by Facebook's counsel Neel Chatterjee during the deposition were directed to the heart of Facebook's claims against Defendants.  The topics and questions sought information concerning the functionality of Defendants' source code, as well as the process by which power.com accessed the Facebook website in the wake of Facebook's attempts to block Defendants' continued access.  *See* Metanat Decl. Ex. 1, Topic Nos. 1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 14, 16, 35, 36, & 39.  However, Vachani repeatedly evaded answering and/or refused to answer counsel's questions.  Due to the fact that he did not prepare for the deposition, Vachani also was unable to provide knowledgeable responses to many other questions aimed at factual issues uniquely in the control of Power.

It is evident that at the January 9, 2012 Rule 30(b)(6) deposition, Power failed to fulfill its obligations to provide testimony as to "matters known or reasonably available to the organization."  Power's misconduct was so pervasive that incorporating every example into the main text of this motion would overwhelm the Court (and exceed the page limit).  Thus, Facebook presents herein several representative instances of the different types of misconduct, and respectfully refer the Court to the annotated list of the deposition excerpts that support this motion.  *See* Metanat Decl., Ex. 2.  As these examples reflect, it is imperative that Power, at its own expense, be ordered to attend another Rule 30(b)(6) deposition, with the deposition to be supervised by either this Court or a Special Master.

### A.     Power's Witness Was Not Prepared To Testify On The Rule 30(b)(6) Topics.

Rule 30(b)(6) "is designed to ensure efficient discovery with corporate entities."  *Pioneer Drive, LLC v. Nissan Diesel Am., Inc.*, 262 F.R.D. 552, 558 (D. Mont. 2010).  Power's duty to present and prepare Vachani goes beyond matters personally known to Vachani or to matters in which he was personally involved.  *Id.*  Rather, Power was required to "prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources."  *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006).  Indeed, Power was required to

---

[1] Facebook and the Defendants have cross-moved for summary judgment on each of these claims.  Chief Judge Ware held a hearing on the pending motions on January 23, 2012, and took the matter under advisement.  *See* Dkt. No. 253.

FILED UNDER SEAL



ORRICK

HON. JOSEPH C. SPERO
JANUARY 26, 2012
Page 3

prepare Vachani so that he could "give complete, knowledgeable and binding answers on behalf of the corporation." *Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989).  Power flaunted all of these requirements, which is sanctionable under Rule 37(d).  *Pioneer Drive, LLC*, 262 F.R.D. at 559-60

Here, Vachani admitted that he spent only one hour preparing for the Rule 30(b)(6) deposition with counsel, and limited his review of documents to a quick perusal of two earlier depositions in the case.  Metanat Decl. Ex. 2, at 14:20-16:10; 17:3-18:6.  As a result, Vachani was unable to testify to a number of Topics that had been clearly delineated in Facebook's Rule 30(b)(6) Notice.  For instance, Vachani was unable to testify to questions regarding the functionality of Power's source code, including the tracking of the number of Event invitations it sent to Facebook users soliciting them to join Power (*see* Metanat Decl., Ex. 1 at Topic Nos. 1, 2, 3, 4, 5, 6, 7, 10, 13, 14, 16, 35, 36, & 39).  The following colloquy is representative of Vachani's lack of knowledge:[2]

> Q.  . . . there was some information you were tracking.  Was there any particular reason that –Power was not tracking event initiations that were or notifications that were sent?
>
> A.  Event creations, I—I—I don't know the answer . . . .
>
> . . .
>
> Q.  Do you have any knowledge as you sit here today how many Facebook users received status updates that discussed the hundred by hundred by hundred promotion?
>
> A.  I don't right—I don't have that information right now.
>
> Q.  Okay.  If that information did exist at Power, where would it exist?
>
> A. Where would it have existed?  I'd have –I'd need to get clarification on that.  I can—on that specific question I—I could—I could inquire and—and ask if we haven't already covered that in the past.

Metanat Decl., Ex. 2 at 64:9-14; 71:23-72:9.

---

[2] Power did not object to any of the Topics that Facebook noticed for the Rule 30(b)(6) deposition. Accordingly, it may not now "attempt to excuse its inadequate preparation … by pointing to problems it now sees in the Notice."  *Pioneer Drive, LLC*, 262 F.R.D. at 559.

FILED UNDER SEAL



ORRICK

HON. JOSEPH C. SPERO
JANUARY 26, 2012
Page 4

> Q.  . . .So to the extent that the information existed-- . . . --and was
> actually tracked, it would be reflected in – in the code.  There would
> be code functionality that would enable it and then there would
> actually be data in the database that was actually tracked, right?
>
> . . .
>
> Q: Can you tell me what that was called or what the file name of it
> was?
>
> A.  I—the file name you guys have—have reviewed everything that
> was there.  So you—you guys have probably—your guys probably
> have better knowledge of that than I do personally.  I mean, because
> you guys—probably the most—recently analyzed it the most.

*Id.*, at 73:19-20; 73:22-74:1; 74:7-14.  Indeed, as these examples reflect, Vachani repeatedly admitted that he was unfamiliar with the functionality of Power's source code, and could offer no technical details about how it was used to interact with Facebook.  *See, e.g., id.*, Ex. 2 at 75:17-23; 84:12-20; 85:12-86:2; 86:4-20; 171:5-24; 172:11-18; 172:20-173:8; 285:2-9; 285:24-286:14; 287:17-21.

Inasmuch as Vachani did not prepare for the deposition, and could not offer responses to numerous questions based on his admitted lack of knowledge, Power essentially failed to produce a witness for the deposition.  Such conduct is sanctionable under Rule 37(d).  *Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1997) (if a corporation produces a designee who "is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then appearance is, for all practical purposes, no appearance at all"); *Alexander v. F.B.I.*, 186 F.R.D. 148, 151 (D.D.C. 1999) ("the deponent has a duty of being knowledgeable on the subject matter identified as the area of inquiry"); *Protective Nat. Ins. v. Commonwealth Ins.*, 137 F.R.D. 267, 283 (D.Neb. 1989) (ordering that 30(b)(6) deposition be reconvened and that defendants designate a witness who can recite the facts upon which defendants' allegations are based).

Moreover, Vachani admits that he did not even try to consult with other former Power employees in preparing for the 30(b)(6) deposition.  Metanat Decl., Ex. 2 at 17:3-18:6.  This includes Power's Chief Technology Officer — Eric Santos who, according to Vachani himself, "played a crucial role in building the Power technology" and who he has been in regular contact with throughout the litigation.  *Id.*, at 204:15-16.  Such willful ignorance flaunts Vachani's obligation to "review all matters known or reasonably available to [Power] in preparation for the Rule 30(b)(6) deposition."  *See Calzaturficio S.C.A.R.P.A S.P.A. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 36 (D. Mass.



ORRICK

HON. JOSEPH C. SPERO
JANUARY 26, 2012
Page 5

2001).  Accordingly, Facebook should receive an order compelling a supervised re-deposition of Power at Power's expense.  *Id.* at 41; *Pioneer Drive, LLC*, 262 F.R.D. at 560-61.

     **B.**    <u>**Power's Witness Gave Evasive and Non-Responsive Replies to Questions.**</u>

     In addition to Vachani's lack of preparation as Power's 30(b)(6) designee, much of Vachani's testimony in response to Facebook's questions was intentionally evasive and nonresponsive.  *See, e.g.*, Metanat Decl., Ex. 2 at 289:8-15.  Such behavior is independently sanctionable, inasmuch as "[c]orporations, partnerships, and joint ventures have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and *unevasively* answer questions about the designated subject matter." *Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 639 (D.Kan. 1999) (emphasis added).

     For instance, when Vachani was asked why Power employed rotating IP proxy servers and whether they were used to circumvent Facebook's blocks of further access by Power to Facebook's website, Vachani would not provide responsive answers to Facebook's questions.  *See* Metanat Decl.., Ex. 2 at 111:11-112:6; 112:8-114:20; 114:23-115:10; 115:12; 115:14; 145:8-15; 145:18-23; 145:25-148:12; 148:14; 148:16-149:1; 149:4; 149:6-10; 149:13-153:22.  Vachani was similarly evasive when asked about why Power's own Terms of Service proscribed the same kind of conduct that Power now claims it was permitted to aim at Facebook.  *Id.* at  228:14-231:18; 231:20; 231:23-25; 233:7-9; 233:12; 233:14-234:4; 234:8-11; 234:15-236:9; 236:12-16; 237:6-13; 239:20-240:4; 240:7-15; 240:18-241:15; 241:18-242:3; 242:5-13.  In some instances, Vachani would merely read a previously submitted declaration in response to the question posed—even though the question posed was different than the subject of the declaration.  *Id.*, 149:13-153:22.  Vachani also repeatedly asserted that he had already answered the question, though he had not, and refused to provide any further response.  *See id.*; *see also id.* at 228:14-231:18; 231:20; 231:23-25; 234:15-236:9.  As these representative examples demonstrate, Power's evasive conduct was independently sanctionable.

     **C.**    <u>**A Judicially Supervised Re-Deposition of Power Is Warranted.**</u>

     Given Power's failure to offer a prepared Rule 30(b)(6)witness, and further given Vachani's repeated resort to evasive answers at the earlier deposition, Facebook respectfully requests the Court not only to order a further Rule 30(b)(6) deposition at Power's expense, but also that it be judicially supervised.  *Cf. Pioneer Drive, LLC*, 262 F.R.D. at 560-61 (awarding plaintiff costs and attorneys fees, and requiring defendants to file in advance of a further Rule 30(b)(6) deposition a statement reflecting what they did to prepare to testify about each noticed subject);  *Southern Cal. Stroke Rehab. Associates, Inc. v. Nautilus*, No. 09-CV-744 JLS (AJB), 2010 WL 2998839, *1-3 (S.D. Cal. 2010) (awarding costs and attorneys fees where corporation produced an unprepared Rule 30(b)(6) designee). As experienced during the January 9, 2012 deposition, Vachani's refusal to respond to clear and straightforward questions significantly delays the deposition process and hinders



**ORRICK**

HON. JOSEPH C. SPERO
JANUARY 26, 2012
Page 6

Facebook's ability to acquire relevant and critical evidence.  Power's suggestion that a second-day deposition is unnecessary because Vachani was previously deposed in his individual capacity does not sufficiently address the deficiencies in Vachani's 30(b)(6) testimony.  A Rule 30(b)(6) witness binds the company with admissions made during its deposition.  *Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F.Supp.2d 82, 95 (D.D.C. 1998).  No number of depositions of Vachani in his individual capacity can provide such binding testimony.  Accordingly, Facebook should be entitled the supervised, re-deposition of Power.

**II.     Position Of Defendants Power Ventures, Inc. And Steve Vachani.**

Facebook seeks a Fed. R. Civ. P. 37 Order compelling a judicially supervised re-deposition of Steve Vachani.  Facebook goes so far as to assert that by presenting Mr. Vachani – who is the founder and CEO of Power and its only remaining employee – at deposition on January 9, 2012, Power "essentially failed to produce a witness for the deposition."  This is a somewhat bizarre claim, given that the deposition lasted for nearly nine hours and resulted in a 392-page transcript – a remarkable amount of dialogue for an allegedly absent witness.  Moreover, this is the second time that Mr. Vachani has been deposed in the case.  He was deposed in his individual capacity on July 20, 2011.  That deposition lasted for nearly nine hours as well.  Copies of the full transcripts of both of Mr. Vachani's depositions are attached as Exhibits A and B to the Fisher Decl.

Mr. Vachani, as indicated above, is the founder and CEO of Power.  He travelled from Brazil to California expressly for the January 9, 2012 deposition.  Mr. Vachani has more knowledge about Power than any other conceivable witness.  He knows everything about Power's operations, was its chief executive officer in December of 2008 when the dispute with Facebook began, and has been intimately involved in every aspect of that dispute since.  Because of his unique knowledge of the company, he did not need to speak with anyone or extensively review any materials to prepare for the deposition.  He reviewed the subjects in the deposition notice and was sufficiently familiar with them to testify.  See 1/9/12 Transcript at 14:19.  Mr. Vachani also testified that he read his July 20, 2011 deposition as well as excerpts of the depositions of Rob Pollock and Zak Mandhro as part of his preparation for the January 9 deposition.  *Id.* at 11:4-7 and 14:24-15:22.  Further, Power made it clear to Facebook that it was prepared to continue the deposition on the next day, January 10, if Facebook so desired.  Facebook declined to do so.  *Id.* at 356:7.

A Fed. R. Civ. P. 30(b)(6) deposition, "often referred to as person most knowledgeable or persons most qualified deposition... is directed at the entity itself, obligating the entity to produce the most qualified person or persons to testify on its behalf."  *Med. Sales and Consulting Group v. Plus Orthopedics USA, Inc.*, 2011 WL 1898600 at *2 (S.D. Cal. May 19, 2011) (*citing Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 798 (9th Cir. 2003)) (internal quotation marks omitted).  Here, Facebook cannot and does not contend that Mr. Vachani is not the person most qualified to testify on Power's behalf.  In fact, Mr. Vachani is the only person who could testify on Power's behalf.

FILED UNDER SEAL



**ORRICK**

HON. JOSEPH C. SPERO
JANUARY 26, 2012
Page 7

Rather, Facebook claims that Mr. Vachani was not properly prepared to testify about the company that he himself created and has run since its inception.

However, "designation as a Rule 30(b)(6) deponent does not require [a deponent] to conduct detailed independent investigations beyond what is reasonably known to the company.  That, in essence, would be to investigate Plaintiff's case for him." *Banks v. Office of the Senate Sergeant-At-Arms*, 241 F.R.D. 370, 375 (D.D.C. 2007).  Similarly, a 30(b)(6) deponent is not required to have "encyclopedic knowledge of all of the areas covered in the deposition" and a "rule of reason must apply." *Covad Comm'n Co. v. Revonent, Inc.*, 267 F.R.D. 14, 25 (D.D.C. 2010) (citing Banks).  In *Anderson v. Discovery Communications, LLC*, 2011 WL 4526019 (D. Md. Sept. 29, 2011), a Maryland district court judge rejected precisely the argument Facebook is making here.  In that case, the plaintiff claimed that the testimony of a 30(b)(6) witness "was so unhelpful and so unresponsive to the areas of inquiry that the deponent effectively fail[ed] to appear for her deposition." *Id.* at *4 (internal quotation marks omitted).  The court rejected the plaintiff's request for sanctions, noting that "[a]lthough at times the deponent was unable to provide dates and could not remember all of the reasons for Anderson's termination, the Court notes that this is not a situation in which the deponent claimed to have no knowledge at all about any topic. . . . In the deposition at issue, the Court does not find that Williams-Fauntroy's responses to any of the topics upon which she was questioned were so unresponsive and inadequate as to render discovery sanctions proper." *Id.*

Power was and is a very small company, and Mr. Vachani, as founder and CEO, is in a unique position to testify as to what is reasonably known to the company.  If Mr. Vachani does not recall certain file names or technical details of coding created more than four years ago, it is reasonable to assume that no one does.  Similarly, it would be impossible for any 30(b)(6) witness to anticipate every question that a deposing party might ask or to retain every scrap of information that might be discussed during a 9 hour deposition.  In considering Facebook's allegations regarding Mr. Vachani's supposed lack of preparedness, it is worth noting that their 12-page Notice of Deposition contained a schedule of 43 separate deposition topics, many of which related to highly technical details regarding source codes and programming.  *See* Facebook's Rule 30(b)(6) Notice, attached as Exhibit 1 to the Metanat Decl.   In a Rule 30(b)(6) context, "there exists no obligation to produce witnesses who know every single fact surrounding a matter." *Dairyland Power Coop. v. United States*, 79 Fed. Cl. 709, 715 (2007)

Simply because a witness states that he does not recall certain information does not mean that he was not prepared to be deposed.  In fact, the transcripts of Mr. Vachani's depositions amply demonstrate his vast knowledge about Power and its operations and that he was prepared for the January 9 deposition.  "Once[Vachani] spoke of what he personally knew and what others did or might know, he fulfilled his responsibility for purposes of binding [Power] through Rule 30(b)(6) deposition testimony." *Banks* at 375

FILED UNDER SEAL



# ORRICK

HON. JOSEPH C. SPERO
JANUARY 26, 2012
Page 8

The January 9 deposition may have been frustrating for both sides; depositions often are. Ultimately, however, the fact that Facebook is unsatisfied with Mr. Vachani's testimony does not justify an order compelling a judicially supervised re-deposition.  For the foregoing reasons, Power and Steve Vachani respectfully oppose Facebook's request that the Court compel a supervised re-deposition of Mr. Vachani, which would serve only to provide Facebook with another bite at the apple, at Defendants' expense.


Respectfully submitted,


_____/s/ Morvarid Metanat_____          _____/s/ L. Timothy Fisher_____

Morvarid Metanat                                        L. Timothy Fisher



**Filer's Attestation:**  Pursuant to General Order No. 45, §X(B), I attest under penalty of perjury that concurrence in the filing of the document has been obtained from its signatory.

Dated: January 26, 2012                    Respectfully submitted,

_____/s/ Morvarid Metanat_____
                                                          Morvarid Metanat


FILED UNDER SEAL