

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 MARSH ROAD
MENLO PARK, CALIFORNIA 94025

tel +1-650-614-7400
fax +1-650-614-7401
WWW.ORRICK.COM

Morvarid Metanat
(650) 614-7344
mmetanat@orrick.com

January 26, 2012

**VIA ELECTRONIC FILING**

Hon. Joseph C. Spero
United States Magistrate Judge
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   Facebook, Inc. v. Power Ventures, Inc., et al., Case No. 5:08-cv-05780 (JW)

Dear Magistrate Judge Spero:

Plaintiff Facebook, Inc. ("Facebook") hereby moves this Court for an Order compelling Defendants to produce all company emails of Defendant Power Ventures, Inc. ("Power") which were not copied to Defendant Steve Vachani ("Vachani"). Facebook also requests that Power be made available for a further deposition regarding these emails at Defendants' expense. Defendants oppose Facebook's request.

Discovery in this case closed on January 20, 2011. However, pursuant to the Court's Standing Order on Discovery Issues, the parties met and conferred prior to the close of discovery in an effort to resolve this dispute. The parties failed to reach a complete resolution and now request that the Court issue an Order resolving the present discovery issue. Facebook and Defendants attach hereto Declarations from Monte Cooper ("Cooper Decl.") and Timothy Fisher ("Fisher Decl.") in support of their respective positions.

## I.   Facebook's Position on the Discovery Dispute Regarding Missing Emails from Power Employees.

This case involves allegations that Defendants violated the CAN-SPAM Act, the Computer Fraud and Abuse Act ("CFAA"), and California Penal Code Section 502. Facebook's claims arise from Defendants' actions in December of 2008 in surreptitiously scraping, downloading, and storing Facebook user data, and then using that data as part of a "Power 100 Launch Promotion" to spam



Hon. Joseph C. Spero
January 26, 2012
Page 2

thousands of Facebook users with electronic mail messages inviting them to join Defendants' own competitive website.[1]

Facebook has repeatedly been forced to seek relief from the Court by requesting the Court to compel Defendants to abide by their discovery obligations. *See* Dkt. Nos. 127 & 166. At the time Facebook filed suit, Power had 100 employees, most of whom resided in Brazil. Cooper Decl. Ex. 1 at 25:17-25; 27:4-11; 134:22-25; 232:22-25.[2] Remarkably, though, Defendants elected not to put in place any kind of litigation hold requiring that these Power employees preserve their relevant documents, including their email communications concerning the Power 100 campaign. *Id.* at 271:9-272:5; Ex. 2 at 168:17-22. It is that failure which lies at the root of Facebook's repeated need to seek the Court's intervention, including with respect to the present motion.

    A.    **Relevant Intra-Company Emails by Former Power Employees Should Have Been Preserved.**

Discovery in this case began in the fall of 2010, when Facebook served Defendants with a First Set of Requests for Production. *See* Cooper Decl. Ex. 3. Among Facebook's requests were several that covered communications between Power employees related to how the company accessed the Facebook website, and what was discussed concerning the Power 100 Launch Promotion. *See, e.g., id.* Request Nos. 1-2, 6-8, 12-14, 18-25, 27-29, 31, 42, and 44-49. However, initially Defendants responded by producing only 13 documents and virtually no source code. Defendants' intransigence with respect to discovery thereafter precipitated months of motion practice. *See, e.g.* Dkt. Nos. 124, 129 & 139. In each instance, Facebook prevailed and received relief. Dkt. Nos. 127 & 166.

Most recently, Facebook on November 4, 2011 successfully compelled Vachani to produce relevant emails from his personal Yahoo! email account, and an ASA hard drive. Dkt. No. 166. At the time, Defendants swore to the Court that no other locations existed where responsive documents were stored. Cooper Decl. Ex. 4, at 7:8-8:22. At the same time, however Defendants also testified that all emails from Power employees should have been backed up by the company's servers hosted by iWeb.com and amazon.com, rather than deleted. Ex. 1 at 61:25-63:2. In particular, in July of 2011 Vachani testified as follows:

---

[1] Facebook and the Defendants have cross-moved for summary judgment on each of these claims. Chief Judge Ware held a hearing on the pending motions on January 23, 2012, and took the matter under advisement. *See* Dkt. No. 253.

[2] Facebook has filed a separate Joint Letter addressing the problems arising from the fact that these employees all were subsequently laid off by Power, and cannot now under Brazilian law be compelled by a United States Court to produce documents or testify at trial or depositions.

Case 5:08-cv-05780-LHK   Document 269   Filed 02/10/12   Page 3 of 8



ORRICK

Hon. Joseph C. Spero
January 26, 2012
Page 3

> Q. Were the E mails sent intra-- intra, I-N-T-R-A company so that they only went to other employees in the company?
>
> A. They would go to -- It was not -- It would go to whoever was copied on the E mail.
>
> Q. Were those E mails backed up anywhere?
>
> A. I believe they were backed up on our servers.
>
> Q. Okay. And those are the servers that were hosted by IWEB and Amazon.com?
>
> A. That's correct.
>
> Q. And is that backup information still available to you through your site that you're currently hosting on a monthly basis?
>
> A. Everything was instructed to be copied there, and so I'm assuming that it's all there. I haven't looked at it individually personally, but I made a backup of everything.

*Id.* at 62:13-63:6. Facebook subsequently learned that despite this representation, Defendants did not as promised produce all emails in their custody and control and stored on the backup server.[3]

**B.   No Power Emails from Anyone Other than Vachani Were Searched or Produced.**

---

[3] Indeed, at the very last second, Defendants have produced what they describe as a "Microsoft Exchange File that may be a backup of Power's email server." Cooper Decl., Ex. 5. Defendants did not previously produce this source of evidence. Facebook received this Exchange File on January 26, 2012 and has not yet been able to confirm its contents. However, Facebook has determined that the Microsoft Exchange File contains 76,457 files, 5,752 folders, and 74.6 Gigabytes of data. Facebook anticipates that much of this material will be in Portuguese and will require translation. When asked about the contents of the recent production, Defendants' counsel indicated he was unable to open the file and could not verify its contents. *See* Cooper Decl., Exs. 6 & 7. The gravity of Defendants' failure to timely produce this source of evidence likely warrants further sanctions than the relief requested herein.



Hon. Joseph C. Spero
January 26, 2012
Page 4

      A review of Vachani's emails from his Yahoo! account reflects that he only produced his own personal emails, not the emails from other employees that he previously testified were backed up by the iWeb and amazon.com servers. This fact was brought to his attention during a Rule 30(b)(6) deposition of Power held on January 9, 2012, in which Vachani was Power's designee for all topics. At that time, Vachani for the very first time acknowledged that emails between Power employees other than those which he had forwarded to his personal Yahoo! email account had been not been searched or produced, despite his prior representations that all emails had been backed up by Power's servers and that the only sources for such materials were his own email account and the ASA Drive. Cooper Decl. Ex. 2 at 165:9-166:15; 170:24-171:21. According to Vachani, while emails between company employees were backed up and were the property of Power, everyone had different ways of accessing the emails through Power and therefore there was no way to know where any of the actual documents resided. *Id.* at 171:15-174:8.

      Defendants' position as stated at their recent Rule 30(b)(6) deposition is nonsensical. For one thing, Power has produced an architectural diagram for the Power.com system that ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Cooper Decl. Ex. 8, Figure 2. More to the point, though, Defendants' position that they know the emails were backed up somewhere conflicts with Vachani's representations to the Court on November 4 that the ASA Drive and his own email account were the only remaining sources for Power documentation. Cooper Decl. Ex. 4, at 7:8-8:22. The missing emails also clearly exist, as Vachani recently confirmed, and should be produced.

### **C.**     **Power Should be Compelled to Produce Emails from Former Power Employees on Which Vachani was not Copied**

      Even though discovery closed on January 20, 2012, Defendants should be compelled to produce the numerous missing emails from former Power employees which were not copied to Vachani. It was only after Facebook rapidly reviewed the more than 300,000 emails Vachani produced from his personal Yahoo! account, and then took Power's Rule 30(b)(6) deposition on January 9, 2012, that Facebook confirmed Power made no effort to locate or produce any of these missing emails from other company employees.

      With 100 employees, it is obvious that Vachani, Power's CEO, was not the only individual who sent or received relevant communications concerning such subjects as the Power 100 Campaign.[4] Yet, Facebook did not know for certain until January 9, 2012 that Defendants made no

---

[4] Facebook has identified through various sources a handful of such emails on which Vachani was not copied, and they underscore that these emails are highly relevant. For instance, a December 26, 2008 email from a Power employee named Elmo Cruz to various Power engineers is the only email



Hon. Joseph C. Spero
January 26, 2012
Page 5

effort whatsoever to locate or produce any documents from these other individuals. "Rules 26 and 34, Fed. R. Civ. P., require [ ] defendants and their counsel to conduct a thorough search of the [ ] defendants' records; to locate all responsive documents in their possession, custody, and control, and to either produce those documents or identify them on an appropriate privilege log." *Wollam v. Wright Medical Group, Inc.*, No. 10-cv-03104-DME-BNB, 2011 U.S. Dist. LEXIS 56649, at *13-*15 (D. Colo., May 18, 2011). Such a thorough search requires, "at a minimum, a reasonable procedure to distribute discovery requests to all employees and agents of the defendant potentially possessing responsive information, and to account for the collection and subsequent production of the information to plaintiffs." *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556 (N.D. Cal. 1987).

When a party's search methodology is questioned, "the party selecting the methodology must be prepared to explain the rationale for the method chosen to the court, demonstrate that it is appropriate for the task, and show that it was properly implemented." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 262 (D.Md. 2008). Now that Facebook is challenging Defendants' lack of production of emails they contend were saved by the Power's email server, Defendants bear the "burden of explaining what they had done and why it was sufficient." *Id.* As of right now, Defendants have offered no explanation for the omission of these emails.

D.     **Defendants Should Bear The Costs Of A Further Deposition.**

Insofar as Defendants produce former employees' emails not previously produced, Power should be required to appear for a further deposition regarding these emails at its own expense. Facebook will suffer significant prejudice if it is not afforded the opportunity to question Power regarding these emails that may contain critical evidence in support of Facebook's claims. *Kim v. Interdent Inc.,* No. C08-5565SI, 2010 U.S. Dist. LEXIS 56121, at *2 (N.D. Cal. May 18, 2010) (granting defendants' motion to compel further deposition of plaintiff where plaintiff's delayed production proceeded defendants' deposition of plaintiff); *see also The Sunrider Corp. v. Bountiful Biotech Corp.*, No. SACV 08-1339 DOC (AJWx), 2010 U.S. Dist. LEXIS 117346, at *22 (C.D. Cal. Oct. 8, 2010) (finding that plaintiffs were prejudiced by being forced to conduct deposition without key documents when defendant failed to produce documents until all discovery deadlines had passed). Moreover, given Power's late production of these documents, Power should bear the costs associated with a further deposition. *See Keithley v. Homestore.com, Inc.*, No. C-03-04447 SI (EDL), 2009 U.S. Dist. LEXIS 2720, at *20-21 & 28 (N.D. Cal. Jan. 7, 2009) (defendants entitled to costs associated with the re-deposition of witnesses due to plaintiff's late production of documents).

---

produced to date reflecting the number of logins to the Power website by Facebook users during the month of December 2008. *See* Ex. 9.



Hon. Joseph C. Spero
January 26, 2012
Page 6

Accordingly, to the extent the missing emails were preserved and can be produced from Power's backup email server, or from the former employees themselves, the missing emails should be produced. To the extent that Power produces these emails, Facebook should be entitled to take a further deposition of Power regarding these untimely produced emails at Defendants' expense. If the emails were not preserved, Defendants should acknowledge as much and explain why they were deleted.

## II.   Position of Defendants Power Ventures, Inc. and Steve Vachani

Facebook seeks the production of Power's internal emails between its employees that did not include its CEO Steve Vachani. To date, Defendants have produced more than 300,000 of Mr. Vachani's emails, and Facebook has obtained hundreds of emails from Rob Pollock, Ed Niehaus, and Zak Mandhro, three other Power executives.

Following the 30(b)(6) deposition of Steve Vachani on January 9, 2012 Facebook's counsel inquired about Power's email server and whether its contents had been produced. During defendants' subsequent investigation, a file labeled "backup_exchange.rar" was located. The contents of this file is unknown, but based on the name of the file, defendants believe it may be a backup of Power's Microsoft Exchange email server. This file had previously been stored on Power's online backup known as the AsaDrive.[5] In late October 2011, Power was preparing to produce the contents of the AsaDrive to Facebook.[6] During this process, five files, including

---

[5]   Defendant Power ceased operations in April, 2011. At that time, it transferred its files to AsaDrive, an online backup service.

[6]   The production of the documents on AsaDrive was part of the massive production defendants have made in this case. Power produced its source code for inspection on August 25, 2011. On September 14, 2011, Power also produced more than 1,700 printed pages of the source code to Facebook and its expert. Dkt. No. 149 at 2.
Power also produced the contents of its AsaDrive, on October 24 and November 9, 2011. In total, the backup server contains 120 gigabytes of data and 69 large database files. *Id.* It also contains subversion repository ("SVN") files, which contain additional source code and a number of additional documents including a large org chart of Power's divisions and employees, approximately 50 PowerPoint presentations for investment funds and advertisers, banner ads and commercials, copious information on Power's business model, comparisons to competitors (like Google), a PowerPoint presentation for most major component of Power's software (PowerFriends, PowerMessenger, Orkut connectivity, MySpace connectivity), internal documentation for each major component of Power's software, information on stock option programs, working drafts and brainstorming on new software development, plans for growth and

...
...



Hon. Joseph C. Spero
January 26, 2012
Page 7

"backup_exchange.rar," could not be opened. These files were removed from the AsaDrive for further analysis to determine if their contents could be verified. Upon discovering that these files had not been included in the November 2011 production, defendants immediately copied the "backup_exchange.rar" file and the other four files to a portable drive and sent it via Federal Express to Facebook's counsel on January 25. The omission of the "backup_exchange.rar" file in Power's previous production was unintentional and inadvertent.

Assuming that backup_exchange.rar contains a backup of Power's employee emails, defendants propose that Facebook review the file and determine if they need an additional deposition. If Facebook believes such a deposition is necessary after reviewing the file, defendants will coordinate with Facebook to schedule that deposition.

Power believes that such a deposition is probably unnecessary as Mr. Vachani was copied on virtually all important communications and 300,000 of Mr. Vachani's emails were produced on November 9. Mr. Vachani is Power's founder and CEO and has been personally involved in all of Power's operations including the Facebook integration that occurred in December, 2008 that gave rise to this litigation. Mr. Vachani has repeatedly testified that Power employees copied him on important email communications. 7/20/11 Vachani Dep., Exh. A to the Fisher Decl., at 296:14-15 ("Any document that was sent electronically is still in my E mailbox"); *id.* at 297:16-21 ("I personally, whenever somebody wanted me to review something, I would get it in my E mailbox because I just preferred that, so I would always request that to be sent to my E mail. So if, there was anything related to Facebook or these other issues, it would have been in my E mailbox."); *id.* at 298:6-8 ("Every document that I've ever reviewed that I can -- To the best of my knowledge, was usually E mailed to me . . ."); Dkt. No. 136 at 4-5 ("Mr. Vachani clearly indicated on several occasions that his Yahoo account contained the vast majority (if not all) of his work-related emails . . . . Emails were the preferred method of office communication, and Mr. Vachani knew he was copied on important matters.").

Respectfully submitted,

| _____/s/ *Morvarid Metanat*_____ | _____/s/ *L. Timothy Fisher*_____ |
|---|---|
| Morvarid Metanat | L. Timothy Fisher |

---

expansion, "break even" revenue requirements, and marketing materials (lists of prominent blogs and outreach programs).



Hon. Joseph C. Spero
January 26, 2012
Page 8

      **Filer's Attestation:**  Pursuant to General Order No. 45, §X(B), I attest under penalty of perjury that concurrence in the filing of the document has been obtained from its signatory.

Dated: January 26, 2012                    Respectfully submitted,

                                                */s/ Morvarid Metanat*
                                                   Morvarid Metanat