I. NEEL CHATTERJEE (STATE BAR NO. 173985)
nchatterjee@orrick.com
MONTE M.F. COOPER (STATE BAR NO. 196746)
mcooper@orrick.com
THERESA A. SUTTON (STATE BAR NO. 211857)
tsutton@orrick.comI.
MORVARID METANAT (STATE BAR NO. 268228)
mmetanat@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California  94025
Telephone:     650-614-7400
Facsimile:     650-614-7401

Attorneys for Plaintiff
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>Plaintiff,<br><br>v.<br><br>POWER VENTURES, INC., a Cayman Island corporation; STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, DOES 2-25, inclusive,<br><br>Defendants. | Case No. 5:08-cv-05780 JW (JCS)<br><br>**FACEBOOK, INC.'S SUPPLEMENTAL BRIEF REGARDING DAMAGES AND LIABILITY OF DEFENDANT STEVE VACHANI**<br><br>Dept:        Courtroom 9, 19th Floor<br>Judge:  Hon. Chief Judge James Ware |

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

FACEBOOK'S SUPP. BRIEFING RE DAMAGES AND
VACHANI'S INDIVIDUAL LIABILITY
CASE NO. 5:08-CV-05780 JW

1

**TABLE OF CONTENTS**

2

Page

3   I.      INTRODUCTION ................................................................................................ 1

4   II.     FACEBOOK SHOULD BE AWARDED $18,238,643 .................................... 1

5           A.      Maximum Damages Should Be Applied................................................. 1

6                   1.      Defendants Acted With Culpable Intent ...................................... 2

                    2.      Defendants Destroyed Evidence Of The Number of Deceptive
7                           Messages Sent .............................................................................. 4

8           B.      Facebook Is Entitled To Aggravated Damages....................................... 6

9                           a.      Defendants Engaged In Directory Harvesting ............... 7

                            b.      Defendants Knowingly And Willfully Sent Deceptive
10                                  Messages To Facebook Users ........................................ 8

11          C.      Facebook Is Entitled To Compensatory And Punitive Damages For
                    Defendants' Violations of Section 502 And CFAA................................. 9

12                  1.      Compensatory Damages Should Be Awarded Under Both
                            Computer Trespass Statutes ......................................................... 9

13                  2.      Punitive Damages Should Be Awarded Under California Penal
                            Code Section 502 ....................................................................... 10

14  III.    VACHANI IS PERSONALLY LIABLE ......................................................... 14

    IV.     CONCLUSION................................................................................................ 17

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- i -

FACEBOOK'S SUPP. BRIEFING RE DAMAGES AND
VACHANI'S INDIVIDUAL LIABILITY
CASE NO. 5:08-CV-05780 JW

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Asis Inst. Svcs. v. Rausch*,
   No. 08-03186 EDL, 2010 U.S. Dist. LEXIS 42952 ...................................................... 7

5

*BMW of N. Am. v. Gore*,
   517 U.S. 559 (1996) ...................................................................................................... 11

6

7

*Davis v. Metro Productions*, *Inc.*,
   885 F.2d 515 (9th Cir. 1989) ................................................................................... 14, 16

8

*F.T.C. v. Phoenix Avatar, L.L.C.*,
   No. 04 C 2897, 2004 WL 1746698 ........................................................................ 14, 15

9

10

*F.T.C. v. Sili Neutraceauticals, L.L.C.*,
   No. 07 C 4541, 2008 WL 474116 (N.D. Ill. Jan. 23, 2008) ..................................... 14, 15

11

*Facebook, Inc. v. Fisher*,
   No.C09-05842 JF (PSG), 2011 WL 250395 (N.D. Cal. Jan. 26, 2011) ................. 2, 9, 15

12

13

*Facebook, Inc. v. Guerbuez*,
   No. C08-03889 (Cooper Decl. Ex. 1), slip op ............................................................... 3

14

*Facebook, Inc. v. Guerbuez*,
   No. C08-03889, 2008 U.S. Dist. LEXIS 108921 (N.D. Cal. Nov. 21, 2008) .................... 2

15

16

*Facebook, Inc. v. Wallace*,
   No. C09-798 JF (RS), 2009 WL 3617789 (N.D. Cal. Oct. 29, 2009) ............................. 2

17

*FTC v. Flora*,
   No. SACV11-00299-AG-(JEMx), 2011 WL 4888823 (C.D. Cal. Aug. 16, 2011) ................. 1

18

19

*Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*,
   556 F. Supp. 2d 1122 (E.D. Cal. 2008) ...................................................................... 15

20

21

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
   No. C07-03952 JW, 2010 WL 5598337 (N.D. Cal., March 19, 2010) ............................ 14

22

23

*MySpace, Inc. v. Wallace*,
   No. CV 07-1929-ABC (AGR), 2008 WL 1766714 (C.D. Cal. May 29, 2008) .................. 2, 3

24

*Notrica v. State Compensation Ins. Fund*,
   70 Cal. App. 4th 911 (1999) ....................................................................................... 13

25

26

*Omni Innovations, LLC v. Impulse Marketing Group*,
   No. C06-1469MJP, 2007 U.S. Dist. LEXIS 51867 (W.D. Wash. July 18, 2007) .................. 15

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-ii-    FACEBOOK'S SUPP. BRIEFING RE DAMAGES AND VACHANI'S
INDIVIDUAL LIABILITY
CASE NO. 5:08-CV-05780 JW

1

2

**TABLE OF AUTHORITIES**
(Continued)

**Page**

3

4

*Tagged, Inc. v. Does 1 Through 10,*
   No. C 09-01713 WHA, 2010 WL 370331 (N.D. Cal. Jan 25, 2010)................................. 10, 15

5

*The Committee for Idaho's High Desert, Inc. v. Yost,*
   92 F.3d 814, 823 (9th Cir. 1996)............................................................................................ 1

6

7

*Yahoo! v. XYZ Companies,*
   No. 08 Civ. 4581 (LTS)(THK), 2011 WL 6072263 (S.D.N.Y. Dec. 5, 2011) ........................ 2

8

**STATUTES**

9

15 U.S.C. § 7704(a)(1) ............................................................................................................ 2

10

15 U.S.C. § 7704(a)(1)(A) ....................................................................................................... 2

11

15 U.S.C. § 7704(b) ................................................................................................................. 7

12

15 U.S.C. § 7706(f)(3)(C) ..................................................................................................... 6, 9

13

15 U.S.C. § 7706(g)(1) .............................................................................................. 1, 9, 10, 17

14

15 U.S.C. § 7706(g)(3)(i) ......................................................................................................... 2

15

15 U.S.C. § 7706(g)(4) ............................................................................................................. 1

16

18 U.S.C. § 1030(g) ................................................................................................... 1, 9, 10, 17

17

18 U.S.C. § 2030(e)(11) ........................................................................................................... 9

18

Cal. Civil Code § 3294 ...................................................................................................... 10, 13

19

Cal. Civil Code § 3294(a) .................................................................................................. 10, 11

20

Cal. Civil Code § 3294(c)(3) .............................................................................................. 10, 13

21

Penal Code Section 502 ................................................................................................... passim

22

Cal. Penal Code § 502(c)(4) .................................................................................................... 10

23

Cal. Penal Code § 502(e)(1) ...................................................................................... 1, 9, 10, 17

24

Cal. Penal Code § 502(e)(2) ..................................................................................................... 1

25

26

**OTHER AUTHORITIES**

27

Sen. Rep. No. 108-102 ............................................................................................................. 2

28

- iii -

I.    **INTRODUCTION**

On February 16, 2012, this Court granted Facebook, Inc.'s Motions for Summary Judgment on all counts, leaving the following issues to be briefed and decided:  (1) the amount of damages Facebook should receive in light of the Court's Order; and (2) the individual liability of defendant Steve Vachani.  Dkt. No. 275 at 19.

Facebook is entitled to the maximum statutory damages under the CAN-SPAM Act, as well as compensatory and punitive damages and injunctive relief, for Power's and Vachani's violations of CAN-SPAM, CFAA, and Penal Code Section 502.  Moreover, Vachani is individually liable for such damages as a result of his personal involvement in – indeed, direction of – the wrongful acts giving rise to liability.  Accordingly, the Court should find both Power and Vachani liable for $18,238,643 in damages, declare that Facebook is entitled to injunctive relief against both parties enjoining them each from engaging in further violations of the statutes and Facebook's Terms of Use, and order an award of any punitive damage the Court finds appropriate.   Thereafter, Facebook will submit a proposed form for the Judgment and Permanent Injunction.[1]

II.   **FACEBOOK SHOULD BE AWARDED $18,238,643.**

A.    **Maximum Damages Should Be Applied.**

The Court has broad discretion to determine an appropriate damages award under the CAN-SPAM Act.  A provider of internet access services is entitled to up to $100 per each

---

[1] Facebook already is entitled to injunctive relief enjoining Power and Vachani from further violations of the CAN-SPAM Act, CFAA and Penal Code Section 502  as a result of their adjudicated violations of  those statutes.  *See* 18 U.S.C. § 1030(g); 15 U.S.C. § 7706(g)(1); Cal. Penal Code § 502(e)(1).  *Cf. FTC v. Flora*, No. SACV11-00299-AG-(JEMx), 2011 WL 4888823 (C.D. Cal. Aug. 16, 2011) (Court enters  detailed permanent injunction against defendant found to violate CAN-SPAM Act, including imposing monitoring, reporting, and record-keeping requirements, as well as precluding future entities under the control of the defendant from engaging in conduct violating the statute).  Facebook asks that the Court permit Facebook to submit its proposed permanent injunction and any application for attorneys once the Court resolves the two issues of "the amount of damages" and Vachani's individual liability. Dkt. No. 275, at 19.  Likewise, Facebook is entitled to to file a separate application for its attorneys' fees and costs as a result of the Court's ruling that Power and Vachani are liable for violations of the CAN-SPAM Act, and California Penal Code Section 502.  15 U.S.C. § 7706(g)(4); Cal. Penal Code § 502(e)(2).

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-1-

FACEBOOK'S SUPP. BRIEFING RE DAMAGES AND
VACHANI'S INDIVIDUAL LIABILITY
CASE NO. 5:08-CV-05780 JW

1    message sent in violation of the CAN-SPAM Act.  *See* 15 U.S.C. § 7706(g)(3)(i).[2]  Under the

2    facts of this case, Facebook is entitled to receive the maximum statutory award of $100 for each

3    of the spam messages that Defendants caused to be sent to Facebook users, and to thereby recover

4    at least $18,188,100.

5            Courts look to the nature of the defendant's activity to decide whether to award the

6    maximum amount.  *See e.g. Facebook, Inc. v. Wallace*, No. C09-798 JF (RS), 2009 WL 3617789

7    (N.D. Cal. Oct. 29, 2009); *Facebook, Inc. v. Fisher*, No.C09-05842 JF (PSG), 2011 WL 250395

8    (N.D. Cal. Jan. 26, 2011); *Yahoo! v. XYZ Companies*, No. 08 Civ. 4581 (LTS)(THK), 2011 WL

9    6072263 (S.D.N.Y. Dec. 5, 2011);  *MySpace, Inc. v. Wallace*, No. CV 07-1929-ABC (AGR),

10   2008 WL 1766714 (C.D. Cal. May 29, 2008); *Facebook, Inc. v. Guerbuez*, No. C08-03889, 2008

11   U.S. Dist. LEXIS 108921 (N.D. Cal. Nov. 21, 2008).[3]

12           Here, Defendants initiated ***at least*** 60,627 unlawful messages to Facebook's users.[4]  Three

13   facts warrant the imposition of the maximum statutory award in this case:  1) Defendants used

14   cash payments to induce third parties to send deceptive electronic messages, 2) Defendants relied

15   upon automated harvesting of personal information to create lists that they used to further their

16   campaigns, and 3) Defendants destroyed evidence necessary to establish exactly how many

17   messages, above the 60,627, they initiated.

18                    1.    **Defendants Acted With Culpable Intent.**

19           This Court has already determined that Defendants are liable for violating 15 U.S.C. §

20   7704(a)(1) because they initiated "a minimum of 60,000 instances of spamming."  Dkt. No. 275,

21   at 9.  Defendants' behavior runs afoul of a core purpose of 15 U.S.C. § 7704(a)(1)(A), which

22   Congress enacted "to eliminate the use of inaccurate originating email addresses that disguise the

23   identities of the senders," (Sen. Rep. No. 108-102, at 17 (2003)) and warrants the imposition of

24   _____

25   [2] Under the statute, each message is considered a separate violation.  *Id*.
     [3] A copy of the November 21, 2008 *Guerbuez* order concerning CAN-SPAM liability is attached

26   to the Declaration of Monte Cooper in Support of Facebook, Inc.'s Supplemental Brief Regarding
     Damages and Liability of Defendant Steve Vachani ("Cooper Decl.") as Exhibit (" Ex.") 1

27   (11/21/08 *Guerbuez* Order).
     [4] Declaration of Ryan McGeehan in Support of Facebook's Motion for Partial Summary

28   Judgment  on Count 1 Under the CAN-SPAM Act ("McGeehan Decl.") ¶ 12 Dkt. No. 213-4.  *See also* Dkt. No. 275, at 9.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 2 -

FACEBOOK'S SUPP. BRIEFING RE DAMAGES AND
VACHANI'S INDIVIDUAL LIABILITY
CASE NO. 5:08-CV-05780 JW

1    the maximum statutory penalty.

2          The maximum statutory penalty is reserved for egregious spamming activity, such as

3    Defendants' deceptive use of monetary payments to enable them to conceal their identity,

4    compromise user data, and send commercial email under the guise of friendly invitations.  *See*

5    *MySpace, Inc. v. Wallace*, 2008 WL 1766714, at *5 (MySpace awarded $223 million in statutory

6    damages against a defendant who had sent nearly 400,000 messages and posted comments from

7    "hijacked" user accounts); *Facebook, Inc. v. Guerbuez*, No. C08-03889 (Cooper Decl. Ex. 1), slip

8    op. at 1 (ultimately awarding Facebook approximately 897 million dollars for aggravated

9    violations of the CAN-SPAM Act).

10         In this case, Defendants' actions were egregious.  Defendants designed their spamming

11   campaign to ensure that it would continue notwithstanding any actions Facebook took to stop it.

12   Dkt. 275 at 15-17.  *See also* Cooper Decl. Ex. 2 (3/7/12 Power Depo. Tr.) at 146:16-148: 15;  Ex.

13   3 (12/1/08 email from S. Vachani to F. Herrera);  Ex. 4 (12/2/08 email from S. Vachani to E.

14   Santos).[5]  Defendants established their website link to Facebook in secret, and designed their

15   system to purposefully circumvent Facebook security measures.  Cooper Decl. Ex. 2 (3/7/12

16   Power Depo. Tr.) at 146:16-148: 15;  Ex. 5 (12/29/08 email chain from A. Fernandes to E. Cruz;

17   Ex. 6( 1/3/09 email from F. Herrera to S. Vachani);  Ex. 7 (1/4/09 email from S. Vachani to M.

18   Ross);  Ex. 8 (12/1/08 Power Press Release).   They tailored their campaign to maximize the

19   number of Facebook users who would be solicited to join Power, and offered monetary payment

20   for access to their accounts.  Dkt. 275 at 2-3, 10-12.  *See also* Cooper Decl. Ex. 9 (11/26//08

21   email from E. Santos to B. Carvalho).   Once they had access, they created messages promoting

22   their service and ran a script that sent those messages to the users' friends.  Dkt. 275 at 2-3, 10-

23   12.  These messages originated from the affected Facebook user accounts, and were sent through

24   Facebook's servers.  *Id.* at 2-3, 10-14.   As the Court found, Defendants "created a software

25   program specifically designed to" disguise Defendants' access.  *Id.* at 11.

26

27

28   _____
[5] Certified translations are provided with emails and other exhibits written in Portuguese.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 3 -

FACEBOOK'S SUPP. BRIEFING RE DAMAGES AND
VACHANI'S INDIVIDUAL LIABILITY
CASE NO. 5:08-CV-05780 JW

2. **Defendants Destroyed Evidence Of The Number of Deceptive Messages Sent.**

Defendants' destruction of critical evidence related to their spamming activities also supports imposition of the maximum penalty. ██████████████████████████ ████████████████████████████████████████████████ ██████████████████████████ Cooper Decl. Ex. 10 (12/14/2008 email from B. Carvalho to S. Vachani, with attached estatisticas.xlsx spreadsheet).  The same documents reflect that as of December 11, 2008, ████████████████████████████████ ██████████████████████████████████████████████████████ ██████ *Id.*  Other Power documentation reflects that as of ███████████████ ██████████████████████████████████████████ █████████████████████████████ Cooper Decl. Ex. 11 (12/26/08 email chain from E. Santos to S. Vachani, with E. Cruz statistics).  If each of these Facebook users participated in the Power 100 campaign resulting in Power sending invitations to 100 of their friends, Power would have sent 4,341,200 spam messages – far more than the 60,627 confirmed messages sent by Power.  In fact, in March of 2009, after this lawsuit was filed, ████████████████████ ████████████████████████████████████████████████████ Cooper Decl.  Ex. 12 (7/20/11 Vachani Depo. Tr.) at 190:10-191:4);  Ex. 13 (3/29/09 email from E. Santos to S. Vachani re Campaign winners).

Significantly, though, Defendants admit after this lawsuit was filed in December of 2008, they never instructed Power's employees to maintain or preserve any potentially relevant documents related to their activities with Facebook, including database information associated with the Power 100 Campaign. *See* Cooper Decl. Ex. 12 (7/20/11 Vachani Depo. Tr.) at 271:9-272:5;  Ex. 14 (1/9/12 Power Depo. Tr.) at 168:11-22.  As a result, whatever information Power was using to track activity related to the Power 100 Campaign and to determine how many invitations were sent by its PowerScript software has been lost, to the severe prejudice of Facebook.

Specifically, in the fall of 2011, Facebook's source code expert determined that either an

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

1　██████████████████████████████████████████████████

2　████████████████████████████████

3　███████████████████████ Dkt. No. 217, Melling Decl. at ¶¶ 31-33.

4　For instance, Facebook's expert determined that the ████████████████████

5　█████████████████████████████████████

6　████████████████████████████████████████

7　███████████████████████████ *Id*. at ¶¶ 33-34.  D██████████

8　██████████████████████████████████████████████

9　█████████████████████████████████████████████

10　███████████████ *Id*. at ¶ 32.  Likewise, all of the logs in the Power_Logger database

11　from December of 2008 had been deleted – despite their obvious relevance to this case.  *Id*. at ¶

12　34. ██████████████████████████████████████

13　███████████████████████████████████████

14　█████████████████████████████████ Cooper Decl.

15　Ex. 14 (1/9/12 Power Depo. Tr.) at 79:14-21;  79:19-23;  83:20-84:17;  Ex. 15 (4/24/11 Email

16　string from E. Santos to S. Vachani).

17　　　　In that regard, Facebook learned through discovery that in April of 2011, Defendants

18　deleted the ████████████████ effectively depriving Facebook of the ability to fully

19　evaluate and document the extent of Defendants' intrusions and use of Facebook's systems

20　between December 1, 2008 and December 30, 2008 as part of the Power 100 Campaign, or

21　determine what means Defendants' used to mask that activity.  Although it is undisputed such

22　information existed at least in March of 2009, whatever data was used internally by Power to

23　determine the number of daily invitations sent and initiated by the PowerScript software as part of

24　the Power 100 campaign has been lost.  Defendants' failure to preserve the relevant information

25　from either the ██████████████████████ is particularly egregious.  Not only

26　would that database information have shown that the combined number of illegal messages

27　actually sent by Power using its PowerScript software likely significantly exceeds the 60,627

28　confirmed messages sent solely in conjunction with Facebook Events (*see* McGeehan Decl. at

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 5 -

FACEBOOK'S SUPP. BRIEFING RE DAMAGES AND
VACHANI'S INDIVIDUAL LIABILITY
CASE NO. 5:08-CV-05780 JW

¶12;  Dkt. No. 217, Melling Decl. at ¶¶ 33-34), but Facebook has evidence showing ███████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████ Cooper Decl. Ex. 16 (11/24/10 email chain from B. Carvalho to S.

Vachani).

        As Power's Chief of Legal Operations noted to Defendant Vachani in a January 3, 2009

email discussing the company's potential liability to Facebook owing for such CAN-SPAM

violations, ███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ Cooper Decl. Ex. 17 (1/3/09

email between F. Herrera and S. Vachani).

        Despite Defendants' destruction of evidence, Facebook has established that Defendants

initiated at least 60,627 messages through Facebook's systems in connection with one of their

campaigns.  McGeehan Decl. at ¶ 12. Defendants concede they initiated at least that many.

Cooper Decl. Ex. 18 (2/24/12 Hg. Tr.) at 6:7-20.  Because there are likely tens of thousands of

additional messages that Defendants littered through Facebook that cannot be accounted for in the

damages calculation thanks to Defendants' spoliation of the relevant database information,

Facebook submits that the Court should apply the maximum statutory amount of $100 for each

message established on the evidence available.

        **B.      Facebook Is Entitled To Aggravated Damages.**

        In addition to awarding the maximum statutory amount, the Court should treble damages

against Defendants.  A court may treble damages where (1) the court determines that the

defendant committed the violation willfully and knowingly; or (2) the defendant's unlawful

activity included one or more of the aggravated violations in §7704(b), such as directory

harvesting.  15 U.S.C. § 7706(f)(3)(C).  Directory harvesting constitutes an "aggravated

violation" where:

                        the electronic mail address of the recipient was obtained using an
                        automated means from an Internet website or proprietary online
                        service operated by another person, and such website or online

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 6 -

FACEBOOK'S SUPP. BRIEFING RE DAMAGES AND
VACHANI'S INDIVIDUAL LIABILITY
CASE NO. 5:08-CV-05780 JW

> service included, at the time the address was obtained, a notice stating that the operator of such website or online service will not give, sell, or otherwise transfer addresses maintained by such website or online service to any other party for the purposes of initiating, or enabling others to initiate, electronic mail messages[.]

15 U.S.C. § 7704(b)(1)(i).  Defendants conduct falls within the purview of these provisions.

### a.   Defendants Engaged In Directory Harvesting.

Defendants' conduct warrants aggravated damages because Defendants engaged in automatic directory harvesting. *Asis Inst. Svcs. v. Rausch*, No. 08-03186 EDL, 2010 U.S. Dist. LEXIS 42952, *25-28 (N.D. Cal., May 3, 2010 (awarding trebled damages under the CAN-SPAM Act where Defendants used directory harvesting to obtain Plaintiff's users' email addresses in order to spam them and where the Plaintiffs terms of use prohibited such activity). There is no dispute that, consistent with Section 7704(b), Facebook's Terms of Use available from its website and in effect on December 1, 2008 prohibited parties like Power from "harvest[ing] or collect[ing] email addresses or other contact information of other users from the Service or Site by electronic or other means for the purposes of sending unsolicited emails or other unsolicited communications."  Cooper Decl. Ex. 19 (Facebook's Terms of Use).  Likewise, there is no dispute that Defendants engaged in automatic directory harvesting as defined by the CAN-SPAM Act, and Power's Director of Legal Operations fully admitted in a December 4, 2008 internal email discussing Facebook's original Cease and Desist Letter that ██████████ ████████████████████████████████████████  Cooper Decl. Ex. 20 (12/4/08 email from F. Herrera to S. Vachani).

Specifically, Defendants used the credentials of affected users to gain access to all their friends' contact details and to send messages to those contacts.  For example, one of Defendants' automated scripts, ████████████████████████████████████████████████ ████████████████████████████████████████████ Melling Decl. ¶ 19. ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████ *Id.* ████████████████████████

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

1    ██████████████████████████████████ Cooper Decl. Ex. 21 at Power's Responses to

2    Facebook's First Set Requests for Admissions Nos. 15, 18, 22, 37, 43-44, 50, 54-56; Ex. 12

3    (7/20/11 Vachani Depo. Tr.) at 182:16-186:2; 191:5-192:18; 197:4-8; 199:10-15; 203:4-18.

4              **b.    Defendants Knowingly And Willfully Sent Deceptive Messages
                       To Facebook Users.**

5         It is difficult to imagine a situation where the knowing and willful intent to pollute a

6    provider's network could be better demonstrated.  As established in Facebook's Motion for

7    Summary Judgment (Dkt. No. 213), Defendants knowingly and willfully transmitted spam

8    messages to Facebook users via software specifically designed to harvest addressing information.

9    *See* Cooper Decl. Ex. 12 (7/20/11 Depo. Tr.)  at 181:21-186:2, 197:9-12; 203:19-204:7; 205:12-

10   206:22, 207:9-208:14; 212:19-213:4; 256:8-257:10; 257:22-258:11; 259:20-260;1; 261:23-262:5;

11   263:14-264:12; 266:7-21; 273:6-274:10; Melling Decl. ¶¶ 3, 11, 19. ████████████████████

12   ███████████████████████████████████████████████████████████████████████████████

13   ███████████████████████████████████████████████████████████████████████████████

14   ███████████████████████████████████████████ Cooper Decl.  Ex. 14 (1/9/12 Power

15   Depo. Tr.) at 121:24-122:1; 122:19-20; 125:4-23; 126:1-23; 236:7-9; 239:20-24; 249:12-16;

16   279:24-280:4; 346:7-11. ████████████████████████████████████████████████████████

17   ███████████████████████████████████████████████████████████████████████████████

18   ███████████████████████████████████████████ Dkt. No. 217, Melling Decl. ¶¶

19   11, 13;  Cooper Decl. Ex. 22 at Supplemental Response to Interrogatory No. 7;  Ex. 23 (12/1/08

20   Cease and Desist Letter);  Ex. 20 (12/4/08 email from F. Herrera to S. Vachani);  Ex. 17 (1/3/09

21   email from F. Herrera to S. Vachani). ████████████████████████████████████████████

22   █████████████████████████████████ Cooper Decl. Ex. 24 (POWER

23   2011.02.03.0000089).  They later made repeated modifications to their server systems to address

24   Facebook's blocks, even though they were aware that Facebook objected to their activities.

25   Cooper Decl. Ex. 5 (12/29/08 email chain from A. Fernandes to E. Cruz).  They also elected not

26   to seek the advice of counsel as to whether their conduct violated CAN-SPAM and other laws,

27   even though their Director of Legal Operations repeatedly urged them to do so.  Cooper Decl. Ex.

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 8 -

FACEBOOK'S SUPP. BRIEFING RE DAMAGES AND
VACHANI'S INDIVIDUAL LIABILITY
CASE NO. 5:08-CV-05780 JW

1   20 (12/4/08 email from F. Herrera to S. Vachani); Ex. 17 (1/3/09 email chain from F. Herrera to

2   S. Vachani);  Ex. 2 (3/7/12 Power Depo. Tr. at 101:20-102:19).

3        Accordingly, the Court should exercise its discretion to treble the statutory damages award

4   against Defendants under 15 U.S.C.§ 7706(f)(3)(C), and award Facebook at least $18,188,100 in

5   damages under the CAN-SPAM Act.[6]

6        **C.**   **Facebook Is Entitled To Compensatory And Punitive Damages For**
          **Defendants' Violations of Section 502 And CFAA.**

7

8             1.   **Compensatory Damages Should Be Awarded Under Both Computer**
                   **Trespass Statutes.**

9

10       As the Court held, Facebook "provided uncontradicted evidence of the costs [,well in

11   excess of the $5000 CFAA threshold,] of attempting to thwart Defendants' unauthorized access

     into its network."  Dkt. No. 275 at 18.  These damages include the costs associated with
12
     "responding to the offense, conducting a damage assessment, and restoring the data, program,
13
     system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or
14
     other consequential damages incurred because of interruption of service."  Dkt. No. 275 at 18
15
     citing 18 U.S.C. § 2030(e)(11).
16
         California Penal Code Section 502 specifies that "the owner or lessee of the computer,
17
     computer system, computer network . . . who suffers damage or loss by reason of a violation of
18
     any of the provisions' of subdivision (c)" may seek compensatory damages.  Cal. Penal Code §
19
     502(e)(1).  Compensatory damages include "any expenditure reasonably and necessarily incurred
20
     by" Facebook verify the damage occasioned by Defendants' violations.  *Id.*  Under the CFAA,
21
     Facebook is entitled to "compensatory damages and injunctive relief or other equitable relief."
22
     18 U.S.C. § 1030(g).
23

24   _____

25       [6] As noted, Facebook  pursuant to 15 U.S.C. § 7706((g)(1) also is entitled to have the Court
     declare that it should received a permanent injunction enjoining Power and Vachani from further
26   violations of the CAN-SPAM Act and Facebook's Terms of Use.  *Cf. Facebook, Inc. v. Fisher,*
     2011 WL 250395 at *3 (entering permanent injunction against Defendants under both the CAN-
27   SPAM Act and CFAA whereby the Defendants were "permanently enjoined from accessing and
     abusing Facebook services").

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY                    - 9 -                    FACEBOOK'S SUPP. BRIEFING RE DAMAGES AND
                                                          VACHANI'S INDIVIDUAL LIABILITY
                                                          CASE NO. 5:08-CV-05780 JW

1    Facebook has established through undisputed testimony from both fact and expert

2    witnesses that it expended at least ███████ for, among other things, internal and external

3    investigations and implementing technical measures. *See* Cooper Decl. Ex. 25 (Expert Report of

4    Richard Ostiller) at 3-4; *see also* McGeehan Decl., ¶¶ 7-18; Cutler Decl., ¶ 15.  As this Court

5    noted, "Defendants do not dispute the accuracy or veracity of [the] evidence of [Facebook's]

6    expenditures."  Dkt. No. 275 at 8.  Facebook should be entitled to recover its expenditures, as

7    detailed in the Expert Report of Richard Ostiller.[7]  Cooper Decl. Ex. 25, at 3-4.[8]

8            2.    **Punitive Damages Should Be Awarded Under California Penal Code Section 502.**

9

10   Facebook is entitled to punitive damages.  Cal. Penal Code § 502(c)(4) citing Cal. Civil

11   Code § 3294.  California Civil Code Section 3294 authorizes punitive damages where "the

12   defendant has been guilty of oppression, fraud, or malice."  Cal. Civil Code § 3294(a).  In the

13   case of "fraud," punitive damages may be based on the "intentional misrepresentation, deceit, or

14   concealment of a material fact known to the defendant with the intention on the part of the

15   defendant of thereby depriving a person of property or legal rights or otherwise causing injury."

16   Cal. Civil Code § 3294(c)(3).  Such awards are expressly "for the sake of example and by way of

17   punishing the defendant."  Cal. Civil Code § 3294(a).  In light of Defendants' activities, punitive

     damages are warranted.

18           The undisputed evidence shows that Defendants sought to conceal their efforts to access

19   Facebook's servers and scrape user data.  Dkt. No. 275 at 16 ("we also need to do some planning

20   to make sure that we do it in a way where we are not really detected. . . . .").  And, as this Court

21

22   ─────────────────────
     [7] Facebook served Mr. Ostiller's expert report on Defendants on December 19, 2011, pursuant to
23   this Court's Scheduling Order.  Defendants did not serve a rebuttal report or file a Motion
     challenging Mr. Ostiller's findings.  Thus, they are uncontradicted.

24   [8] As with its claims under the CAN-SPAM Act, Facebook  pursuant to 18 U.S.C. § 1030(g);
     15 U.S.C. § 7706(g)(1) and Penal Code § 502(e)(1) is entitled to have the Court declare that it
25   should received a permanent injunction enjoining Power and Vachani from further violations of
     the CAN-SPAM Act and Facebook's Terms of Use. *See Tagged, Inc. v. Does 1 Through 10*, No.
26   C 09-01713 WHA, 2010 WL 370331, at *12 (N.D. Cal. Jan 25, 2010) (entering permanent
     injunction against defendant under both the CFAA and Penal Code Section 502, where defendant
27   had been shown "to circumvent plaintiff's security measures").

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 10 -

FACEBOOK'S SUPP. BRIEFING RE DAMAGES AND
VACHANI'S INDIVIDUAL LIABILITY
CASE NO. 5:08-CV-05780 JW

1    found, Defendants' activities caused Facebook injury.  *Id.* at 14.  These facts support a punitive

2    award.  *Cf. BMW of N. Am. v. Gore*, 517 U.S. 559, 579 (1996) (suggesting that evidence of

3    "deliberate false statements, acts of affirmative misconduct, or concealment of evidence of

4    improper motive" can support an award of punitive damages)

5         In addition to Defendants' attempts to conceal their activity so as to go undetected,

6    Defendants' post-litigation efforts to hide evidence of their wrongdoing further supports a

7    punitive damages award.  For the better part of a year, Defendants refused to produce relevant

8    documents and repeatedly misrepresented the status of their document production.  Defendants

9    filed papers with this Court adamantly denying any relevant documents, beyond the 13 that they

10   produced in February 2011, existed.   After numerous motions to compel were granted by the

11   Court (*see* Dkt Nos. 127, 166), Defendants produced more than 300,000 emails in November

12   2011.  Then, after discovery closed in January 2012, and despite the Court's earlier order that

13   they produce all responsive documents, Defendants produced an additional 75,457 files on

14   January 25, 2012.[9]  Given the volume of this newly-produced data, it was not until after

15   Facebook's motion for summary judgment was granted that Facebook uncovered in Defendants'

16   production hundreds of documents highly relevant to Facebook's claims.  Indeed, some of the

17   documents, which had not previously been produced, essentially admitted liability.  *See*, *e.g.*,

18   Cooper Decl. Exs. 4, 20, 26, 5, 17 (12/2/08 email chain from S. Vachani to E. Santos;  12/4/08

19   email from F. Herrera to S. Vachani;  12/16/08 email from D. Delgado to E. Santos; 12/29/08

20   email chain from A. Fernandes to E. Cruz;  1/3/09 email chain from F. Herrera to S. Vachani).

21   *See also* Cooper Decl. Exs. 27-29 FBPOWER434-436; 437-439; 499-501; Ex. 30 (12/12/08 email

22   from J. Shapiro to S. Vachani), Ex. 31 (8/11/05 Chat conversation, S. Vachani email), Ex. 32

23   (9/12/05 P. King email to S. Vachani), Ex. 33 (11/09/06 email from E. Santos to Kiran

24   Inampudi).

25        Among the 74.6 gigabytes of recently produced documents is an email chain that included

26   _____

27   [9] The late production of this and other emails resulted in Magistrate Judge Spero entering
     sanctions against Defendants, which included their paying Facebook's costs and attorneys fee for
28   appearing at a Court-ordered  deposition of Defendant Power held on March 7, 2012.  *See* Dkt.
     No. 282.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 11 -

FACEBOOK'S SUPP. BRIEFING RE DAMAGES AND
VACHANI'S INDIVIDUAL LIABILITY
CASE NO. 5:08-CV-05780 JW

1   Vachani where Defendants' ████████████████████████████████████████████

2   ████████████████████████████████████████████████████████████

3   ███████████████████████████████████   Cooper Decl. Ex. 5 (12/29/08 email chain from A.

4   Fernandes to E. Cruz).   ███████████████████████████████████████

5   ████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████

10   █████████████████████   *Id.*   Clearly, the email chain was relevant to Facebook's Penal Code Section

11   502 and CFAA claims.

12         This new email chain also raises serious concerns about the candor of Defendant Vachani,

13   who in two separate Declarations filed in conjunction with the parties' summary judgment papers

14   averred that "At some time during December of 2008 Facebook began blocking **one** of the IP

15   addresses Power had used," but "**Power did not undertake any effort to circumvent that**

16   **block**, and did not provide users with tools designed to circumvent it."  Dkt. No.98-2, ¶11

17   (emphasis added); Dkt. No. 189, ¶¶10- 11.  When confronted with the email chain, which showed

18   Power's ██████████████████████████████████████████████

19   ████████████████████████████████████████████████████

20   ████████████████████████████████████████████████

21   ████████████████████████████████   Decl. Ex. 2 (3/7/12 Power Depo. Tr. at 161:21-

22   162:3.  *See also id.* at 153:15-161;20;  164:12-165:4.  Vachani also could not offer any

23   explanation why the email chain had never previously been produced in the litigation, given that

24   he himself was copied on it and at earlier depositions he swore he had produced all documents

25   related to Facebook's blocking of the Power website.  Cooper Decl. Ex. 2 (3/7/12 Power Depo.

26   Tr. at 158:3-159:21).  Such inexplicable lack of candor by Defendants about a core issue of the

27   underlying claims is the quintessential example of litigation misconduct and the "intentional

28   misrepresentation, deceit, or concealment of a material fact known to the defendant with the

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 12 -

FACEBOOK'S SUPP. BRIEFING RE DAMAGES AND
VACHANI'S INDIVIDUAL LIABILITY
CASE NO. 5:08-CV-05780 JW

1   intention on the part of the defendant of thereby depriving a person of property or legal rights or

2   otherwise causing injury."  Cal. Civil Code § 3294(c)(3).  *Cf. Notrica v. State Compensation Ins.*

3   *Fund*, 70 Cal. App. 4th 911, 947-48 (1999) ("All that is required [to support a finding of fraud

4   within the meaning of California Civil Code Section 3294] is that the fraud must equate to the

5   conduct which gives rise to liability – in this case bad faith").

6          Another one of the recently produced emails that also underscores why punitive damages

7   are warranted is dated December 2, 2008—the day after receiving Facebook's cease and desist

8   letter—in which Power's Chief Technology Officer Eric Santos told Vachani that he ▮▮▮▮▮

9   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Cooper Decl. Ex. 4 (12/2/08 email chain from

10  S. Vachani to E. Santos).  In response, Vachani states, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮▮▮▮  *Id.*  Later, in another of the recently produced emails, ▮▮▮▮

12  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Cooper

13  Decl. Ex. 26 (12/16/08 email chain from D. Delgado to E. Santos).[10]  Clearly, all of these emails

14  again were highly relevant to Facebook's claims, and both collectively and individually utterly

15  refute Defendants' arguments that they made no effort to circumvent Facebook's technical

16  measures after (1) notice that their activity was prohibited and (2) after technical measures were

17  in place.  Yet, as noted, Defendants have been unable or unwilling to explain why they were not

18  located or produced long before January 25, 2012.  Cooper Decl. Ex. 2 (3/7/12 Power Depo. Tr.

19  at 158:3-159:21).

20         As a result of Defendants' ongoing concealment, Facebook was prevented from using

21  highly relevant evidence to further establish the full extent of Defendants' liability.  Defendants'

22  ongoing deceptive activity is precisely the type of egregious behavior that warrants punitive

23  damages.  For these reasons, Facebook is entitled to recoup the actual and punitive damages

24  arising from Defendants' unlawful access of the Facebook website.  Facebook leaves it to the

25  Court's discretion as to the appropriate amount of punitive damages.

26  _____

27  [10] Facebook has not yet received the certified translation for this email.  However, Vachani, who
    is fluent in Portuguese, himself admitted Facebook's understanding of its content was accurate.
    Cooper Decl. Ex. 2 (3/7/12 Power Depo Tr.) at 178:2-20, 180:1-20.

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 13 -

FACEBOOK'S SUPP. BRIEFING RE DAMAGES AND
VACHANI'S INDIVIDUAL LIABILITY
CASE NO. 5:08-CV-05780 JW

### III.   **VACHANI IS PERSONALLY LIABLE.**

As discussed in Facebook's summary judgment briefing (Dkt. No. 213), Defendant Vachani, is equally liable with Power Ventures because he directed and authorized all of the activity giving rise to liability to a degree that reflects far more than his supervisory role of the company as CEO.  *See*, *e.g.*, Dkt. 213, at 22.  The evidence establishes Vachani's personal involvement in authorizing, directing, and participating in Power's unlawful activities.  Defendants have never contested this fact.  In fact, Defendants admit in pleadings with this Court that Mr. Vachani  "has ***been personally involved*** in all of Power's operations including the Facebook integration that occurred in December, 2008 that gave rise to this litigation."  Dkt. 269 at 7 (emphasis added).

As this Court and others have recognized, "a corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf.'"  *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, No. C07-03952 JW, 2010 WL 5598337, *14-15 (N.D. Cal., March 19, 2010) (finding an individual liable along with his corporations where he was the "general manager and sole owner of the corporate Defendants," and "had nearly complete control over Defendants' operations") citing *The Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996).  *See also F.T.C. v. Sili Neutraceauticals, L.L.C.*, No. 07 C 4541, 2008 WL 474116, *3 (N.D. Ill. Jan. 23, 2008) (finding that an officer of defendant corporation who formulated, directed, controlled and participated in the acts or practices giving rise to CAN-SPAM liability by the corporation was individually liable under CAN-SPAM for such acts); *F.T.C. v. Phoenix Avatar, L.L.C.*, No. 04 C 2897, 2004 WL 1746698, *12-13 (N.D. Ill. Jul. 30, 2004 (same).

"Cases which have found personal liability on the part of the corporate officers have typically involved instances where the defendant was the "guiding spirit" behind the wrongful conduct, . . . or the "central figure" in the challenged corporate activity."  *Louis Vuitton,* 2010 WL 5598337 at * 14 citing *Davis v. Metro Productions*, *Inc.*, 885 F.2d 515, 523 n. 10 (9th Cir. 1989).  Here, it is readily apparent that Vachani was the "central figure" in Power's unlawful access to

Orrick, Herrington & Sutcliffe LLP
Attorneys at Law
Silicon Valley

- 14 -

Facebook's Supp. Briefing Re Damages and Vachani's Individual Liability
Case No. 5:08-CV-05780 JW

1    and use of the Facebook website and should be held individually liable.

2         This proposition regarding individual liability by corporate officers for directing or

3    authorizing unlawful Internet activities has been applied repeatedly in the CAN-SPAM, CFAA,

4    and California Penal Code Section 502 context.  *See, e.g. F.T.C. v. Sili Neutraceuticals, L.L.C.*,

5    2008 WL 474116 at *3 (corporate officer was individually liable for corporation's CAN-SPAM

6    violations);  *F.T.C. v. Phoenix Avatar, L.L.C.*, No. 04 C 2897, 2004 WL 1746698, at *12-13

7    (finding likelihood of success on CAN-SPAM Act claim against corporate officers for

8    corporation's CAN-SPAM violations);  *Hanger Prosthetics & Orthotics, Inc. v. Capstone*

9    *Orthopedic, Inc*., 556 F. Supp. 2d 1122, 1134-35 (E.D. Cal. 2008) (denying motion for summary

10   judgment on CFAA and Penal Code Section 502 claims against CEO where CEO owned 1/3 of

11   the co-defendant company, had significant responsibilities at the company, and where a

12   reasonable jury could infer that CEO authorized, directed, or participated in the unlawful acts);

13   *Omni Innovations, LLC v. Impulse Marketing Group*, No. C06-1469MJP, 2007 U.S. Dist. LEXIS

14   51867, *3-7 (W.D. Wash. July 18, 2007) (finding CAN-SPAM Act claim sufficiently pled against

15   owner of defendant corporation where owner was an officer, director, and majority shareholder of

16   the corporation and complaint alleged that owner had "assisted" in transmitting spam messages).

17   *See also Tagged, Inc. v. Does 1 through 10*, No. C09-01713 WHA, 2010 WL 370331 (N.D. Cal.,

18   Jan. 25, 2010) (finding that Plaintiff properly stated a claim against both website and website

19   operator under the CAN-SPAM Act and CFAA); *Facebook, Inc. v. Fishe*r, No. C09-5842 JF

20   (PSG), 2011 WL 250395 (N.D. Cal. Jan. 26, 2011) (same).

21        The undisputed facts, including Vachani's own admissions about his deeply personal role

22   in controlling and directing the company's activities aimed at Facebook, firmly establish

23   Vachani's individual liability.  Vachani fully admits he was at all times ▮▮▮▮▮▮▮▮▮▮▮

24   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ including with respect to the activities of the

25   Power 100 Campaign underlying Facebook's CAN-SPAM claims. Cooper Decl. Ex. 2 (3/7/12

26   Power Depo. Tr.) at 229:10-230:7.  He admits that the Power 100 Campaign was his own idea,

27   and that he was responsible for its implementation. Dkt. 275, at 10-11; Dkt. 232, Ex. 2 at 181:21-

28   183:9;  *id.* Ex. 5, Power's Response to Interrogatories Nos. 8-10, 16;   Cooper  Decl. Exs. 26

1   (12/16/08 Santos email chain with 12/2/08 Vachani email).  He also admits ████████

2   ███████████████████████████████████████████████████████████

3   ███████████████████████████████████████████████████████████████

4   ███████████████████████████████████████████████████████████████

5   ████████████████████████████  *Id.* (3/7/12 Power Depo Tran.) at 143:1-22;

6   144:18-24; 159:22-161:3.  *See also* Cooper Decl. Ex. 34 (12/26/08 email from S. Vachani to E.

7   Santos re response to J. Cutler);  Ex. 14 (1/9/12 Power Depo. Tr.) at 241:12-15; 241:20-242:3;

8   242:5-13;  Ex. 12 (7/20/11 Vachani Depo. Tr.) at 353:16-355:11;  Ex. 22 at Power's

9   Supplemental Response to Interrogatory No. 7;  Ex. 4 (12/2/08 email from Vachani to Santos).

10   Defendants further admit that Vachani was the Power employee or director responsible for

11   creating the offending messages giving rise to CAN-SPAM liability. Dkt. 232, Ex. 5 at Power's

12   Response to Interrogatory No. 9.  Defendants separately admit that Vachani developed the

13   technology at issue.  Dkt. 232 at Power's Response to Interrogatory No. 8.  Vachani himself

14   admits that he directed and controlled each of the company decisions to circumvent Facebook's

15   multiple blocks of Power's IP addresses which form the basis of the Court's rulings on

16   Defendants' under the CFAA and Penal Code Section 502.  Cooper Decl. Ex. 2 (3/7/12 Power

17   Depo. Tr.) at 141:22-142:21; 230:23-231:4.  In that role, Vachani specifically instructed Power

18   employees to prepare for and circumvent the blocks that he correctly anticipated Facebook would

19   implement, Dkt. 236, Ex. 6;  Cooper Decl. Ex. 4 (12/2/08 email chain between S. Vachani & E.

20   Santos).

21       After Facebook filed this lawsuit, Vachani also was the person who personally decided

22   that Power would not implement a litigation hold preserving any potentially relevant

23   documentation, and who later specifically authorized Power employees in April of 2011 to delete

24   the company's database information reflecting how many electronic spam mail messages it

25   initiated and/or sent to Facebook.  Cooper. Decl. Ex. 14 (1/9/12 Power Depo. Tr.) at 83:23-84:11;

26   Ex. 35 (11/9/11 email from T Fisher to M. Cooper); Ex. 36 (Ex. 193 from 1/9/12 Power Depo.

27   Tr.).

28       As in *Davis v. Metro Productions*, *Inc* it is readily apparent that Vachani was the "central

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 16 -

FACEBOOK'S SUPP. BRIEFING RE DAMAGES AND
VACHANI'S INDIVIDUAL LIABILITY
CASE NO. 5:08-CV-05780 JW

figure" in Power's unlawful access to and use of the Facebook website, and that he should be held individually liable for the documented violations of the CAN-SPAM Act, the CFAA, and Penal Code Section 502 that he personally caused to occur.

## IV.  **CONCLUSION**

For these reasons, Facebook requests that Vachani be held jointly and severally liable with Power and that Facebook be awarded $18,188,100 in damages for violating the CAN-SPAM Act, ███████ for their violations of CFAA and Penal Code Section 502, that the Court declare that Facebook is entitled to injunctive relief, and any other further relief (such as punitive damages) deemed appropriate by the Court for the sake of example or punishing Defendants.  Facebook further requests pursuant to 18 U.S.C. § 1030(g), 15 U.S.C. § 7706(g)(1), and California Penal Code § 502(e)(1) that following resolution of the two issues addressed in this Brief that the Court permit Facebook to submit a proposed Judgment and Permanent Injunction which will require Power and Vachani (and any related entities or companies under their control) to abide by Facebook's Terms of Use and to refrain from future violations of the relevant statutes.

Dated: March 30, 2012                    ORRICK, HERRINGTON & SUTCLIFFE LLP


                                         By:  _____/s/ I. Neel Chatterjee /s/_____
                                                      I. Neel Chatterjee
                                                    Attorneys for Plaintiff
                                                      FACEBOOK, INC.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 17 -

FACEBOOK'S SUPP. BRIEFING RE DAMAGES AND
VACHANI'S INDIVIDUAL LIABILITY
CASE NO. 5:08-CV-05780 JW