# EXHIBIT 20

| | |
|---|---|
| From: | Felipe Herrera |
| To: | SteveVachaniMail |
| Cc: | Eric.santos |
| Subject: | STEVE, PLEASE READ UNTIL THE END AND RESPOND QUICKLY |
| Date: | Thursday, December 04, 2008 11:52:05 AM |
| Importance: | High |

CEASE AND DESIST LETTER FROM FACEBOOK

Steve,

The letter from Facebook's lawyers claims the following:

1) We are scraping content from their website;

2) We are directly violating their TOS, which prohibits the following:

- Soliciting of Facebook's user login information;
- Using a person's Facebook account without Facebook's authorization;
- Using automated scripts to collect information from their site;
- Sending spam;
- Using Facebook's site for commercial purposes;
- Incorporating Facebook's site in another database



3) According to the letter, we are in violation of at least 5 Federal laws, in addition to state laws prohibiting "interferance with Facebook's business expectations and interests.";

4) We are using Facebook's logo without their authorization, which may cause users to believe we are somehow affiliated with Facebook;

5) We are violating users' privacy;

6) Facebook has an open platform that allows third parties to develop applications that integrate with Facebook, subject to their TOS. They have "Facebook Connect", which allows Facebook users to connect their Facebook identity, friends and privacy to any site. They say we can use these resourses to integrate with Facebook in an authorized manner;

They had given us a deadline of Wednesday, December 3rd, 2008, to answer. I did not have time to look at this until today, so we would have missed the deadline by a day. However, they sent us a direct email today saying we have until Friday, December 5th, 2008, to respond given they had previously notified Leigh instead of us.

In our written response, they want us to:

a) Cease and desist in soliciting Facebook user login information;

b) Cease adn desist om sending unsolicited commercial messages to Facebook users;

c) Remove the compatibility with Facebook from our site;

d) Remove references to Facebook from our site and other promotional material;

e) Cease using or displaying Facebook's trademark on our website;

f) Promisse that in the future we will strictly comply with Facebook's TOS.

In light of the above, please see my comments below:

1) I agree that what we are doing may be considered web scraping according to the definition below:

**Web scraping** (sometimes called **harvesting**) generically describes any of various means to extract content from a website over HTTP for the purpose of transforming that content into another format suitable for use in another context."

If it is indeed considered to be web scraping, we can be liable for "**trespass to chattels**". In order to success in this claim, they must demonstrate that we intentionally and without authorization interfered with their possessory interest in the computer system and that the <u>our unauthorized use caused damage to the plaintiff</u>.

Their main challenge would be proving the damage to their site, but I can think of a few ways they can try to prove this. The main problem here I believe is the loss of traffic and consequent loss of revenues on their site. They could also lose positions in alexa.com.

I remember in the past we did not use to change these site's advertising, but I took a quick look at our site and compared with Facebook's site and saw that we are in fact showing only our ads and not theirs. Can we stop doing this and at least show both their and our ads??

2) They seem to be correct in relation to the following prohibited activities:

- Using a person's Facebook account without Facebook's authorization;
- Using automated scripts to collect information from their site;
- Incorporating Facebook's site in another database.
- Using Facebook's site for commercial purposes;

However, we can probably contend that we do not perform any of the following activites:

- Soliciting of Facebook's user login information [since it is the user's choice to give us their information];
- Sending spam [since we only send emails to people's friends and we comply with email regulations, providing an unsubscribe button, etc.];

3) As I said, we would need the legal advice from a U.S. attorney on the matter given that these are U.S. statutes. I suggest contacting Cooley Godward LLP since they are one of the top firms in the U.S. for Internet related matters. Simon Olson highly recommended them and I believe he used to work for them in San Francisco.

From my quick research, I believe we may also be accused of violating the safe harbor provisions of the DMCA in addition of all of the laws mentioned in their letter (including the CA Penal Code).

4) We should DEFINITELY remove other websites' trademarks or request their authorization to use them. I remember when we had the problem with Google's watchdog (RCA RYotta) last year we inserted text on the start page of powerscrap.com saying exclicitly that we are not affiliated to any of those sites. I am not sure why this was not done for power.com, but we should definitely put this disclaimer back up and make it very visible to avoid problems;

5) We can probably dismiss the claim of violating user's privacy (or at least defend ourselves) by saying they agreed to our TOS and were informed of everything;

6) We should definitely have someone (maybe Bruno) take a look at this "Facebook Connect" and other platforms they talk about in the letter and see if there is a way to keep doing what we are doing in an authorized manner. If there is a way of complying with their rules without compromising our Power Login or virality too much (without including additional pages), we should do it!

Guys, it is extremely important that we answer them quickly, so I need your imput ASAP. Please let me know if you agree with my comments above or if you have any additional ideas or suggestions on how to respond to this. If we do not respond quickly they can sue us and this can turn into something much more serious. Perhaps we can avoid it.

Thanks,
Felipe.