1   I. NEEL CHATTERJEE (STATE BAR NO. 173985)
    nchatterjee@orrick.com
2   MONTE F. COOPER (STATE BAR NO. 196746)
    mcooper@orrick.com
3   MORVARID METANAT (STATE BAR NO. 268228)
    mmetanat@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
5   Menlo Park, CA  94025
    Telephone:    +1-650-614-7400
6   Facsimile:    +1-650-614-7401

7   FREDERICK D. HOLDEN, JR. (Calif. Bar No. 61526)
    ORRICK, HERRINGTON & SUTCLIFFE LLP
8   The Orrick Building
    405 Howard Street
9   San Francisco, California  94105-2669
    Telephone:    (415) 773-5985
10  Facsimile:    (415) 773-5759

11  Attorneys for Plaintiff
    FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., | Case No.  5:08-cv-05780 LHK |
| Plaintiff, | **FACEBOOK, INC.'S CASE MANAGEMENT STATEMENT** |
| v. | |
| POWER VENTURES, INC. a Cayman Island Corporation; STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, DOES 2-25, inclusive, | Date:       May 1, 2013<br>Time:       2:00 P.M.<br>Judge:      Hon. Lucy J. Koh<br>Courtroom: 8, 4th Floor |
| Defendants. | |

This Court has set a further Case Management Conference for May 1, 2013. Plaintiff Facebook, Inc. ("Facebook") hereby submits this Case Management Statement.[1]

## I.  JURISDICTION AND SERVICE

All parties have been served. The parties agree that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Facebook has asserted claims against Defendants alleging violations of the CAN-SPAM Act, 15 U.S.C. §2701 *et. seq.*, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et. seq.* ("CFAA"), and California Penal Code § 502(c). Venue is proper under 28 U.S.C. §1391(b).

## II.  FACTS

### A.  Facebook's Position

This case was previously before Chief Judge Ware. This case was almost fully resolved until Defendants filed for bankruptcy the day before Chief Judge Ware retired. Chief Judge Ware had granted summary judgment in favor of plaintiff Facebook and had requested supplemental briefing on the amount of damages and the personal liability of Steve Vachani. Those two issues were fully briefed and submitted at the time of Chief Judge Ware's retirement. The only remaining issues are (1) Mr. Vachani's personal liability, (2) the amount of damages, and (3) any other relief, such as injunctive relief. Plaintiff Facebook, Inc. ("Facebook") submits that this Court can review the previous submissions, Chief Judge Ware's summary judgment order, and award Facebook the appropriate relief forthwith.

#### 1.  **The Court Previously Found Liability.**

Chief Judge Ware already entered an Order dated February 16, 2012 (Dkt. No. 275), granting Facebook summary judgment of liability on each of its claims alleging violations of the CAN-SPAM Act, the CFAA, and California Penal Code § 502(c) by both Defendant Power Ventures, Inc. ("Power") and Steve Vachani ("Vachani") (collectively "Defendants"). As the

---

[1] Although requested by Facebook to provide their own position statements so that this Case Management Statement would be filed as a Joint Case Management Statement, Defendants Power Ventures, Inc. and Steve Vachani declined to do so. Counsel for Power Ventures, Inc., who was provided a copy of Facebook's position in advance of the Court's filing deadline, instead informed counsel for Facebook on August 28,, 2013 that it would provide its own Case Management Statement.

Court ruled, the overwhelming and undisputed evidence proved that Defendants developed a software program that permitted Defendants to gain unauthorized access of the Facebook website in order to crawl, scrape and download Facebook user information for display on the Power website. *See*, *e.g.*, Dkt. No. 275, at 10-11, 15-17. Power and Vachani then used the user information unlawfully collected from the Facebook website to send tens of thousands of unsolicited commercial electronic messages with misleading headers to Facebook users urging them to join Power's own competitive website, www.power.com. *Id.* at 10-11. While spamming the Facebook users with these messages, Defendants also repeatedly and intentionally used specialized software to circumvent Facebook attempts to block Defendants' access to the Facebook website in a game of "cat and mouse." *Id.* at 15-17. The unlawful conduct only stopped when Facebook filed this lawsuit. *Id.* at 7-8. Inasmuch as the Court determined that the undisputed evidence proved that Defendants' conduct violated each of the CAN-SPAM Act, the CFAA, and California Penal Code § 502(c), the Court ruled that the only issues remaining in this action were: (1) the amount of damages to be paid to Facebook, and (2) the individual liability of Defendant Vachani, Power's CEO. *See* Dkt. No. 275 at 19.

Facebook subsequently filed a Supplemental Brief Regarding Damages and Liability of Defendant Steve Vachani ("Supplemental Brief"). Dkt. Nos. 292, 299, 300.[2] As set forth in detail in Facebook's Supplemental Brief, Facebook is entitled to the maximum statutory damages under the CAN-SPAM Act, as well as compensatory and punitive damages for both Power's and Vachani's violations of the CFAA and California Penal Code Section 502. Dkt. No. 300. Specifically, Facebook contends that Defendants initiated at least 60,627 spam messages though Facebook's systems in connection with their ulawful campaigns, and that the maximum statutory damages of $100 per message should be awarded, amounting to at least $18,188,100. Dkt. No. 300, at 1-7. Defendants engaged in the following activities that warrant the maximum damages:

Defendants' knowingly and willfully designed a spamming campaign that circumvented Facebook's attempts to stop it;

---

[2] Dkt. No. 300 is the under seal version of Facebook's Supplemental Brief. Dkt. Nos. 292 and 299 are redacted versions of the brief.

1  Defendants destroyed evidence concerning the number of spam messages sent to Facebook users *after* this litigation had commenced, and with no attempt to implement a litigation hold;

Defendants used automatic directory harvesting to obtain Facebook users' contact information used to send messages to those contacts in violation of Facebook's terms of use; and

Defendants' attempted to conceal their unlawful activity so as to go undetected—both pre and post litigation.

*See id.* In addition, Facebook is entitled to at least $80,543 in damages for internal and external investigations related to Defendants' conduct and the implementation of technical measures to restrict Defendants' access. *Id.* at 9-13. Defendant Vachani should be held personally liable under the CAN-SPAM Act, CFAA, and California Penal Code 502(c) because it is undisputed that he personally directed and authorized all of the activity giving rise to liability—in a manner that exceeds a merely supervisory role as CEO of Power. *Id.* at 14-17. *See also* Dkt. No. 275, at 14-17. It is undisputed that Vachani controlled and personally directed Power's activities as they related to Facebook, including Power's unauthorized access to the Facebook website and spamming campaign. Dkt. No. 300, at 14-17. Facebook further noted that it is entitled by statute to receive permanent injunctive relief, and an award attorneys fees, as a result of the Court's findings of liability under the CAN-SPAM Act, the CFAA, and California Penal Code § 502(c). *See* Dkt. No. 300, at 1, fn. 1; *id.* at 9, fn. 6; *id.* at 10, fn. 8.

### 2. **Defendants Are Liable for Sanctions Awarded by Magistrate Judge Spero.**

Separate from the award of damages associated with the summary judgment ruling, Facebook also is entitled for fees and costs associated with the Court ordered renewed 30(b)(6) deposition of Defendant Power. *See* Dkt. Nos. 279, 282. On March 1, 2012, Magistrate Judge Spero entered an Order in which he concluded that Power not only produced a Rule 30(b)(6) witness who was insufficiently prepared for a critical Rule 30(b)(6) deposition, but also that Defendants had without justification withheld 74.6 gigabytes of emails and data relating to Power's interaction with Facebook which had previously been ordered to be produced before the

close of discovery. Dkt No. 282, at 1-2; Dkt. No. 300, at 11-13. All of this data – which included emails from or copied to Defendant Vachani discussing what actions Power should take to ensure that Facebook's blocks of Power's website would be ineffective, was produced following the close of discovery, and also following the completion of the summary judgment motions. *See* Dkt. No. 300, at 11-13. Accordingly, the Court not only ordered that Power submit to a renewed Rule 30(b)(6) deposition, but also ordered that Power "shall pay reasonable costs, including attorneys fees, for the renewed 30(b)(6) deposition." Dkt. No. 282, at 1-2. Power's renewed deposition was taken on March 7, 2012, for which Facebook incurred approximately $23,000 in fees and $5,000 in costs. Despite numerous requests by Facebook for compensation as part of required informal pre-motion meet-and confer discussions, Defendants have not indicated what is objectionable about the requested amount, and have not reimbursed Facebook for any of these costs and fees.

### 3. **Power Is in Default, and Default Judgment Should Enter Against the Defendant.**

On June 4, 2012, Defendants' former counsel moved to withdraw from representation of the Defendants. *See* Dkt. No. 302. On July 2, the Court granted the motion, and ordered Defendant Power, a corporate entity that is not entitled to appear as a *pro se* party, to identify substitute counsel by July 17. 2012. *Id.* at 2. After no new counsel made an appearance on behalf of Power, the Court entered an Order on July 31, 2012 ordering Power to appear and show cause on August 6, 2012, why its answer should not be stricken and default entered against the company. Dkt. No. 311, at 2. After Power again failed to identify counsel by the deadline set by the Court, Facebook at the August 6, 2012 hearing orally moved for default judgment, and Chief Judge Ware on August 8, 2012 thereafter entered a written Order striking Power's answer, and entering default against the company. Dkt. No. 313. Power finally identified new counsel, and was granted leave to reconsider that Order, and on August 23, 2012 moved to set it aside. Dkt. No. 321. Facebook opposed, and on August 27, 2012 again cross-moved for the entry of default judgment against Power for the amount of $18,238,643.00, while also agreeing to waive any exemplary damages to which it might otherwise be entitled. Dkt. No. 322.

### 4. **Defendants' Abuse of the Bankruptcy System to Delay Entry of Judgment.**

On August 27, 2012, just hours after Facebook cross-moved for default judgment, and only a few days before Chief Judge Ware was scheduled to retire, Power and Vachani filed in the Bankruptcy Court of the Northern District of California voluntary petitions for relief under chapters 11 and 13, respectively, of the U.S. Bankruptcy Code. Power's chapter 11 bankruptcy action was filed in the San Francisco division of the Bankruptcy Court, and Vachani's chapter 13 bankruptcy action was filed in the Oakland division. These petitions resulted in an automatic stay of the District Court action and effectively prevented Chief Judge Ware from entering what was an imminent ruling on damages.

On November 27, 2012, on the motion of the U.S. Department of Justice on behalf of August B. Landis, Acting United States Trustee, which motion was formally joined in by Facebook and opposed by Power, U.S. Bankruptcy Judge Thomas E. Carlson dismissed Power's chapter 11 case, for cause. Judge Carlson concluded that, in light of the record in this District Court case, it appeared that Facebook's claim against Power would be sufficiently large to make it impossible for Power ever to obtain confirmation of a plan of reorganization, over Facebook's objection. Judge Carlson did not reach any of the several other grounds alleged for dismissal.

Upon the dismissal of the Power chapter 11 case, the automatic stay in that case terminated. *See* 11 U.S.C. § 362(c)(1)(B). Power's case has not been reinstated.

Meanwhile, on October 18, 2012, Vachani filed in the Bankruptcy Court a motion requesting that U.S. Bankruptcy Judge Roger L. Efremsky determine the validity and amount of the claims asserted by Facebook against Vachani in this District Court action. On December 13, 2012, Judge Efremsky concluded that those claims should be resolved by the District Court and denied Vachani's motion. As a result, on February 13, 2013, Bankruptcy Judge Efremsky granted the motion of Facebook for relief from the automatic stay in Vachani's chapter 13 case. By the time of the hearing on that motion, Vachani had consented to the relief sought and approved the form and substance of the Order (the "Stay Relief Order").

By the Stay Relief Order, Facebook is permitted to take all steps needed to cause this

1   District Court case to be reopened and completed, except that enforcement of any money
2   judgment against Vachani must be effected through Vachani's chapter 13 case, as long as
3   Vachani's bankruptcy case remains pending and the Bankruptcy Court has not afforded Facebook
4   further relief.  Martha Bronitsky, as Chapter 13 Trustee, and Facebook have moved to dismiss
5   Vachani's chapter 13 case.  A separate, narrowly-based motion to dismiss by the Chapter 13
6   Trustee was granted, and, on Vachani's motion, the case was recently reinstated.  The initial and
7   broad motions to dismiss by both the Chapter 13 Trustee and Facebook, based on numerous
8   grounds, including the bad faith apparent from the timing of the petition initiating the bankruptcy,
9   remain pending, however.

10       Among the grounds asserted and remaining before the Bankruptcy Court, for dismissal of
11   the chapter 13 case, is that Vachani is not eligible to be a debtor under chapter 13.  Bankruptcy
12   Code § 109(e) specifies that a chapter 13 debtor must have "regular income" (which Facebook
13   disputes) and has "noncontingent, liquidated, unsecured debts of less than $360,475," among
14   other requirements.  11 U.S.C. § 109(e).  Decisions of the U.S. Court of Appeals for the Ninth
15   Circuit and other courts in this Circuit have established that simply disputing a claim makes it
16   neither contingent nor unliquidated.  The test for whether a disputed claim should be counted as
17   within the dollar limit is whether the debt was "readily determinable" when the bankruptcy
18   petition was filed.  That phrase has been interpreted to mean that no further extensive, contested,
19   evidentiary hearing is required.  *See*, *In re Wenberg,* 94 B.R. 631, 634 (9th Cir. BAP 1988), *aff'd*
20   902 F.2d 768 (9th Cir. 1990); *In re Slack*, 187 F.3d 1070, 1074 (9th Cir. 1999); *In re Nicholes*, 184
21   B.R. 82, 89 (9th Cir. BAP 1995).

22       In light of then Chief Judge Ware's order, soon before the bankruptcy petitions were filed,
23   that the validity and amount of Facebook's claim were under submission, that *no* further hearing
24   would be held, and that the Court was ready to "bring this case to a close," and the only reason
25   that a ruling was not issued was the defendants' filing bankruptcy petitions, it is Facebook's
26   contention *in Vachani's chapter 13 case* that the amount of damages and sanctions this Court
27   awards to Facebook will fall within the test for eligibility for chapter 13 relief.  Facebook is not,
28   of course, requesting that this Court make any ruling directly on Vachani's eligibility for relief

1  under chapter 13.

2  **B.    Defendants' Position**

3  Defendants declined to inform Facebook what were their positions, and instead indicated
4  that they would prepare their own Case Management Statement.

5  **III.   LEGAL ISSUES**

6  **A.    Facebook's Position**

7  The only legal issues remaining in this action are the following:

8      1.   Should Steve Vachani be held personally liable under the CAN-SPAM Act,
9           CFAA, and California Penal Code Section 502?

10     2.   What amount of damages should be awarded to Facebook for Defendants'
11          violations of the CAN-SPAM Act, CFAA and California Penal Code
12          Section 502?

13     3.   What amount of costs and attorneys fees should be awarded to Facebook as
14          sanctions for Defendants' discovery abuse?

15     4.   Should default judgment be entered against Defendant Power Ventures
16          and, if so, in what amount?

17     5.   What other remedies, including injunctive relief and statutory attorneys
18          fees, are available to Facebook?

19  **B.    Defendants' Position**

20  Defendants declined to inform Facebook what were their positions, and instead indicated
21  that they would prepare their own Case Management Statement.

22  **IV.   MOTIONS**

23  **A.    Pending Motions**

24  The following motions, or outstanding issues associated with motions, were pending
25  before the Court as of August 27, 2012, when Defendants filed for bankruptcy, and/or have been
26  filed by the parties since the bankruptcy stays were lifted:

27     1.   What amount of damages is Facebook entitled to receive as a result of its
28          being granted summary judgment of liability on the CAN-SPAM, CFAA,

|    |    |    |
|---:|---:|----|
| 1  |    | and Penal Code § 502(c) claims?  This issue was the subject of |
| 2  |    | supplemental briefing, as ordered by the Court.  Dkt. No., 275, at 19.  *See* |
| 3  |    | *also* Dkt. Nos. 292, 299, 300.  Defendants filed an under seal version of |
| 4  |    | their Supplemental Brief on March 30, 2013, which has not been assigned |
| 5  |    | a Docket Number. |
| 6  | 2. | Is Defendant Steve Vachani individually liable for the damages to be |
| 7  |    | awarded to Facebook?  This issue was the subject of supplemental briefing, |
| 8  |    | as ordered by the Court.  Dkt. No., 275, at 19.  *See also* Dkt. Nos. 292, 299, |
| 9  |    | 300, 317.  Defendants filed an under seal version of their Supplemental |
| 10 |    | Brief addressing this issue on behalf of Vachani on March 30, 2013, which |
| 11 |    | has not been assigned a Docket Number.  Vachani was permitted to file a |
| 12 |    | further supplemental brief, which he did by submission of a *pro se* brief on |
| 13 |    | August 15, 2012.  Dkt. No. 317. |
| 14 | 3. | What amount of sanctions in the form of costs and attorneys fees should be |
| 15 |    | awarded to Facebook as a result of Defendants' discovery abuse?  The |
| 16 |    | Court already has determined that Facebook is entitled to such costs and |
| 17 |    | attorneys fees.  *See* Dkt. Nos. 279, 282.  The Court at a hearing held on |
| 18 |    | February 24, 2012 required Facebook first to meet-and-confer with |
| 19 |    | Defendants to attempt to stipulate to the amount of such sanctions.  *See* |
| 20 |    | 2/24/12 Hg. Tr., at 8:3-8.  The meet-and-confer process ceased when |
| 21 |    | Defendants filed for bankruptcy.  Facebook is prepared to submit a motion |
| 22 |    | or declaration in support of the amount it believes should be awarded. |
| 23 | 4. | Defendant Power's Motion to Set Aside Default.  Dkt Nos. 321-322. |
| 24 | 5. | Facebook's Cross-Motion for Entry of Default Judgment Against |
| 25 |    | Defendant Power.  Dkt. No. 322. |
| 26 | 6. | Defendant Vachani's *pro se* Motion for Clarification re Status of Liability. |
| 27 |    | Dkt. No. 332.  Facebook anticipates filing an Opposition to Vachani's |
| 28 |    | "motion" on or before August 29, 2013. |

### B. Anticipated Motions

#### 1. Facebook's Position.

Pending an order on its Supplemental Brief (Dkt. No. 300) and/or a motion quantifying the amount of costs and attorneys fees to be awarded the company due to Defendants' discovery abuse, Facebook does not anticipate filing any additional motions.

#### 2. Defendants' Position.

Defendants declined to inform Facebook what were their positions, and instead indicated that they would prepare their own Case Management Statement.

## V. AMENDMENT OF PLEADINGS

The case is now fully at issue.

## VI. EVIDENCE PRESERVATION

### A. Facebook's Position

Facebook has taken appropriate measures to preserve relevant evidence. Facebook has reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and that parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

As detailed in Facebook's Supplemental Brief, unlike Facebook, Defendants have failed to preserve, and in fact have destroyed after the initiation of this litigation, critical evidence relating to their spamming activities. *See* Dkt. 300 at 4-6. Given the destruction of key evidence, Facebook submits that the Court should apply the maximum statutory damages against Defendants.

### B. Defendants' Position

Defendants declined to inform Facebook what were their positions, and instead indicated that they would prepare their own Case Management Statement.

## VII. INITIAL DISCLOSURES

Facebook served its initial disclosures on Defendants on July 29, 2011. Facebook served

1   its supplemental and second supplemental initial disclosures on Defendants on October 14, 2011

2   and January 13, 2012, respectively. Defendants served their initial disclosures on Facebook on

3   August 15, 2011. To date, Defendants have not supplemented the initial disclosures.

4   **VIII.   DISCOVERY**

5   Discovery closed on January 20, 2012. The parties agree that no additional discovery is

6   necessary at this time.

7   **IX.   CLASS ACTIONS**

8   This is not a class action case.

9   **X.   RELATED CASES**

10  Vachani's bankruptcy proceeding in the United States Bankruptcy Court for the Northern

11  District of California, Case No. 12-47150 RLE 13, is related to this matter.

12  **XI.   RELIEF**

13  Facebook prays for injunctive relief and the monetary damages set forth in its

14  Supplemental Brief (Dkt. No. 300). The bases for Plaintiff's request for monetary damages

15  include compensatory, statutory, and punitive damages as permitted by law. Facebook also seeks

16  its attorneys' fees.

17  **XII.   SETTLEMENT AND ADR**

18  The parties engaged in an ADR mediation session on December 14, 2009. The session

19  was facilitated by mediator Daralyn Durie, who has filed papers with the Court indicating that the

20  ADR process is not yet complete and that further facilitated discussions are expected. *See* Dkt.

21  No. 59. To date, the parties have engaged in numerous settlement discussions, but have been

22  unable to reach resolution. The latest of these settlement discussions was on or around April 26,

23  2013.

24  **XIII.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

25  The parties have not consented to a magistrate judge.

26  **XIV.   OTHER REFERENCES**

27      **A.   Facebook's Position**

28  Facebook does not believe any additional references are necessary at this time.

### B. Power's Position

Defendants declined to inform Facebook what were their positions, and instead indicated that they would prepare their own Case Management Statement.

## XV. NARROWING OF ISSUES

Facebook does not believe that the remaining issues can be narrowed at this time, inasmuch as liability already has been established.

## XVI. EXPEDITED TRIAL PROCEDURES

An expedited schedule is not necessary in this case.

## XVII. SCHEDULING

Facebook suggests that the Court schedule a supplemental case management conference, pending the Court's ruling on Facebook's Supplemental Brief.

## XVIII. TRIAL

Facebook has requested a jury trial, although the only issues now remaining for trial relate to the amount of damages, and whether exemplary damages are warranted. Facebook anticipates that a damages trial will last approximately 3 to 5 days.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES AND PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

## XX. OTHER MATTERS

None.

Dated: April 29, 2010

I. NEEL CHATTERJEE
FREDERICK D. HOLDEN, JR.
MONTE M.F. COOPER
MORVARID METANAT
Orrick, Herrington & Sutcliffe LLP

*/s/ Monte M.F. Cooper*
MONTE M.F. COOPER
Attorneys for Plaintiff
FACEBOOK, INC.