Amy Sommer Anderson (STATE BAR NO. 282634)
anderson@aroplex.com
Aroplex Legal Services & the Law Practice of Amy Sommer Anderson
156 2nd Street
San Francisco, California 94105
Telephone:    415-529-5148
Facsimile:    415-520-0606
Attorney for Defendant
POWER VENTURES, INC.

STEVEN VACHANI (*pro se*)
2425B Channing, #216
Berkeley, CA 94704
Telephone: (917) 267-8823

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FACEBOOK, INC., <br><br> Plaintiff, <br><br> v. <br><br> POWER VENTURES, INC., a Cayman Island corporation and d//b/a POWER.COM, a California corporation; STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, DOES 2-25, inclusive, <br><br> Defendants. | Case No. 5:08-CV-05780 LHK <br><br> **DEFENDANTS' CASE MANAGEMENT STATEMENT** <br><br>  Date:        May 1, 2013 <br> Time:       2:00 P.M. <br> Judge:      Hon. Lucy J. Koh <br> Courtroom: 8, 4th Floor |

This Court has set a Case Management Conference for May 1, 2013. In light of opposing parties' vastly differing positions on all but a few administrative points, Power Ventures, Inc. and *pro se* defendant Steven Vachani hereby submit this Defendants' Case Management Statement.

**I.    JURISDICTION AND SERVICE**

All parties have been served. This Court has subject matter jurisdiction pursuant to 28

U.S.C. §§ 1331 and 1367. Facebook has asserted claims against Defendants alleging violations of the CAN-SPAM Act, 15 U.S.C. §2701 *et. seq.*, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et. seq.* ("CFAA"), and California Penal Code § 502(c). Venue is proper under 28 U.S.C. §1391(b).

## II. FACTS

In December 2008, Plaintiff Facebook, Inc. ("Facebook") filed in the Northern District Federal court of California a complaint against joint defendants Power Ventures, Inc. ("Power") and Power's CEO, Vachani (Dkt. No. 9), for, among other things, violations of the CAN-SPAM Act, CFAA, and California Penal Code § 502. The actions underlying the tort claims consisted of approximately 60,627 emails sent through the Facebook server via a Power.com "event" creation to Facebook users by Facebook users. Upon learning that "event" invitations for the Power contest were being sent through its servers, Facebook took measures to intercept and control this activity. Not a single user complaint was received by Facebook in response to the Power campaign event emails.

After three years of litigation, summary judgment was awarded on Plaintiff's motion in February 2012 (Dkt. No. 275), erroneously finding no possibility of doubt that Defendant Power committed acts sufficiently violative of the CAN-SPAM Act, CFAA, and California Penal Code § 502. At that time, the Court reserved for determination on the separate issues of (1) Defendant Vachani's personal liability for the acts of the corporate defendant, and (2) damages. In support of their relative positions, the Plaintiff and the collective Defendants each submitted a brief on both remaining issues in March 2012. (Dkt. Nos. 288 and 299). In mid-August 2012, Defendant Vachani was permitted to submit, and so submitted, a supplemental brief on the issue of his personal liability for the adjudged actions of the corporation. (Dkt. No. 317).

In late August, both defendants filed for bankruptcy. As such, a stay was automatically

imposed in the case at issue, and the Court ordered administrative closure until such time as the bankruptcy proceedings are resolved. (Dkt. No. 325).

In its brief on damages and personal liability (Dkt. No. 299), Facebook claims entitlement to $80,543 for Power's violation of CFAA and CA Penal Code § 502 and $18,188,100 for Power's violation of the CAN-SPAM Act. Private claims under the CAN-SPAM Act are of a statutory and punitive nature. (See 15 U.S.C. § 7706(g)). Facebook reaches the $18,188,100 value by claiming the statutory *maximum* penalty of $100 for each of the 60,627 emails and punitive treble damages, totaling $18,188,100. Facebook's claim for actual damages is $80,543, which consists of approximately $5,500 for the time spent by a Facebook employee to investigate and/or address possible security matters associated with the Power campaign emails[1] and approximately $75,000 for legal services performed by Facebook's counsel at Perkins Coie.

### A.    Background of CAN-SPAM Claim

Power Ventures, Inc. ran a social network aggregation website - then located at www.power.com - which enabled users to access their various social network account information and communication tools from a single user account on www.power.com. In late 2008, Power added Facebook to its social network collection and ran a launch campaign – "Bring 100 Friends, Win 100 Bucks! – using a monetary incentive to encourage users to invite their Facebook friends to create a www.power.com account. The contest information was posted on a Facebook event page, and users of both www.facebook.com and www.power.com could invite their friends to view the contest event information by selecting which friends would receive the invite. When the invitations were submitted, notification was sent to each selected friend via whichever notification method each www.facebook.com user designated in his or her

---

[1] *Facebook*, Declaration of Ryan McGeehan in Support of Facebook's Motion for Partial Summary Judgment on Count 1 under the CAN-SPAM Act, Dkt. No. 213-4. FILED UNDER SEAL. The value of a few days' of an employee's time—an employee whose job is to conduct the activities for which damages are claimed—is closer to $1,500 than the $5,500 claimed by Facebook.

www.facebook.com notification settings. In other words, invited friends who opted to receive email notifications from www.facebook.com when their friends sent communications received said invitation to view the contest event via email.

Facebook's CAN-SPAM claim is based on their assertion that over 60,000 of these "unsolicited" emails were sent to www.facebook.com users and, despite receiving no complaints from these users, purport these email to be in violation of the Federal CAN-SPAM Act since the header information in the emails, which is automatically and exclusively controlled by Facebook, misleads the recipient as to the sender or initiator of the email. In fact, the mere reference of www.power.com in the email message and the fact that Power's campaign was targeted at recruiting new users to its website is inherently straightforward and in no way "materially misleading" as required under the statute. Thus, Facebook's CAN-SPAM claim must fail under the black letters of the statute, as well as under the guidelines for such analysis clearly set out in Omega World Travel v. Mummagraphics, Inc., 469 F.3d 348 (4th Cir., 2006) .

Even if Facebook is awarded damages lass than the amount sought, the Summary Judgment alone sends the message that the Court supports Facebook picking and choosing who can use its service – irrespective of compliance with their terms of use – by suing under the CAN-SPAM Act for an amount that would put most small businesses under. Arguably, such activity amounts to censorship and, undoubtedly, is one large step closer to court-sanctioned anti-competitive activity.

Irrespective of whether Power complied with Facebook's terms of use, as this is in no way relevant to any element of their CAN-SPAM claim, and ignoring the fact that Power worked diligently with Facebook for weeks following Facebook's initial, unofficial complaint to bring their program in compliance with Facebook's terms of use, the issue remains whether Facebook

can and should be allowed to prevail on a CAN-SPAM claim where there were no complaints, no misleading messages, and arguably no actual damages.

It is inconceivable as to why Facebook would fight so hard to send a message to its users and advertisers that Facebook, at its discretion, can sue and prevail on a claim for $300 per message against anyone who writes content or funds a contest or offers a deal interesting enough for users to share it with their Facebook friends via the mechanism Facebook created for precisely that purpose. The potential withholding of advertisers and users surely is not worth the efforts Facebook expended to put one, small competitor out of business, but the defendants' trust the Court will be less shortsighted in its ultimate ruling on this case.

**B.     Facebook's Standing to Raise Claims**

Facebook achieved standing to exercise a private right of action under each statute by misrepresenting and mischaracterizing discretionary expenditures as "investigation costs." Not only did Facebook claim actual damages of $5,543 for three to four days of an engineer's time in "investigating" the emails, Facebook claims to meet the $5,000 damages requirement for standing in its attorney fees alone, coloring them as investigation costs unique to internet service providers.

First, the $5,543 claim is for the engineer's time is undoubtedly exaggerated on its basis of approximately three to four days of Facebook employee McGeehan's engineering time (See Dkt. No. 275). Defendants contend that the actual cost associated with this inconvenience is closer to $1,500, assuming a $120,000 per annum salary, and even then Facebook claims that McGeehan performed the "investigation" on his own time.

The other costs claimed by Facebook—$75,000 in legal fees associated with investigating Power and filing the lawsuit (*Id.*)—are not covered under the CFAA or CA Penal Code § 502. Nothing in the statutes or legislative history indicates that costs associated with investigating legal claims are meant to be factored into this damages calculation, an argument—among many

others—carefully articulated in the amicus brief prepared and submitted by the Electronic Frontiers Foundation. (Dkt. No. 206-2). Through review of the pleadings and briefs on damages and liability, as well as the EFF amicus brief, the Court will clearly appreciate the large magnitude of variation between previous cases relating to the CAN-SPAM act that have been fully adjudicated and conclude here there was no ill-intent, no harm done, no user accounts compromised, and no documented damages to support a claim under any of the statutes at issue.

### C. Facebook's Vexatious Interference in Defendants 'Bankruptcy Cases

Commencing on 27 August 2012 (the "Petition Date"), Power filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") and Vachani filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.

#### 1. Initial Inference

In both bankruptcy cases, Facebook argued for dismissal, purporting that the filings contravened the purposes of the Bankruptcy Code under its good faith requirements. It is well established that it is not necessarily "bad faith" for debtors to file for bankruptcy to avail themselves of certain Code provisions. Significantly, it is largely due to multiple years of Facebook litigation that Power finds itself in the position of filing for bankruptcy in order to salvage its assets and have a chance at rebuilding, but that is where the association ends. The timing of the filing was due to 1) the impracticality of waiting any longer to start rebuilding on its innovation infrastructure, and 2) a deal with former investors involving an intellectual property sale that allowed Power to remove over $6 million in debt and approximately $7.7 million in liquidation preferences. Power waited until the end of the two-year anniversary from this sale to further avoid any potential objections within the two-year statute of limitations. Filing of this petition is not in sync with the timing of Facebook Action's summary judgment, because it would be then filed several months earlier. At the time of Power's Chapter 11 filing, Vachani opted to

file for Chapter 13, as waiting until after a judgment, if any and if it were large enough, would disqualify him from Chapter 13 protections due to the debt limit.

Further, Facebook repeatedly and consistently argued to both bankruptcy courts that the present civil matter had been decided as to liability of *both* defendants. (*See* Vachani's Motion for Clarification re Status of Liability, Dkt. No. 322). It is one thing for Facebook to argue entitlement to a claim for sanctions even though the amount has yet to be determined, or for damages on the three counts even though that amount has yet to be determined as well, but it is wholly unconscionable for Facebook to deliberately and repeatedly mischaracterize the status of the District Court's judgment in an effort to interfere with Vachani's ability to seek the financial protections afforded by the Court. Vachani's bankruptcy filing in no way deprived Facebook the opportunity to pursue their purported claim, and, more significantly, it in no way deprived Facebook the opportunity to represent itself fairly before the Court and argue its position honestly.

### 2. Facebook's Claim

Facebook was given notice on the day of the bankruptcy filing. Facebook had every opportunity to file their claim for an amount that they had already decided, but they declined to do so until more than a month after joining and staunchly opposing the Chapter 13 case, which demonstrates their primary goal of interfering with defendants' ability to rightfully receive the assistance of the Court. When they ultimately did file their claim for $18M+, they supported their claim by attempted to further mislead the court into believing that defendant Vachani's liability had already been determined (*In re Vachani*, Claim 8).

### 3. Objection Based on Debt Limit

Facebook only recently argued, despite ample opportunity to raise potential grounds for dismissal and absent a change in facts, that the Chapter 13 case should be dismissed as ineligible

under Bankruptcy Code § 109(e) on the ground that Vachani's unsecured debt exceeds the statutory maximum for a Chapter 13 bankruptcy action. As the predominant claim for unsecured debt in the matter is Facebook's claim for $18,238,643 (Claim #8; total claim less $20,000 for the further contested unliquidated sanctions award), and since this claim is based on a speculative damages award that not only remains *unliquidated* with respect to both the corporate defendant and Vachani, the individual defendant, in the Civil Case but also *contingent* with respect to Vachani's liability on all counts, it cannot have been included in the debt tally at the time of filing nor can it be included now given no change in circumstances and no means of ready determination since the damages assessment requires several factual analyses. Thus, the Chapter 13 court now requires clarification as to whether Facebook's claim was contingent at the time of filing.

### D. Vachani's Liability

The only matter determined by Judge Ware was that the actions—actions made by persons within the company, acting for the company and within the scope of their directorship and/or employment by the company—constitute a basis for Summary Judgment on the three counts. There was no finding that Vachani performed actions as an individual outside the scope of his position as CEO of the corporate defendant. There are no cases remotely related to the present facts wherein an individual representative was found liable for the CAN-SPAM violations of the company. There were no additional counts alleged against him. Further, as Power did not commit acts in violation of the CAN-SPAM Act, its representative cannot be held liable for the same alleged violation.

### E. Damages

As Power did not violate the CAM-SPAM Act and Facebook does not have standing to bring the private actions at issue, damages cannot and should not be established against the

defendants. Facebook appears to be following its own pattern of pursuing valueless actions against companies that have already agreed not to—and have, in fact, ceased to—perform the offending activity. In the civil case at issue, the only associated damages, if any, were at Facebook's own unnecessarily reactionary instigation. Indeed, Power made good faith attempts to negotiate an amicable resolution upon Facebook's discovery of Power's contest emails.

In fact, Facebook's propensity to litigate claims under these Acts is well established. (See, e.g., *Facebook v. Wallace*, No. C-09-00798 JF, 2009 (where defendants who were known scam artists sent spam messages to Facebook users' message walls aimed at deceiving recipients into visiting defendants' phishing sites; case terminated in default judgment); *Facebook v. MaxBounty*, No. 5:10-cv-04712 LHK, 2011 (N.D. Cal. Nov. 14, 2011) (where defendants facilitated Facebook user traffic to defendants' contracting sites by providing technical assistance in creating fake Facebook campaigns; case terminated in settlement); *Facebook v. Fisher*, No. C-09-5842 JF (PSG) (where defendants sent more than 7.2 million spam messages to Facebook users after obtaining information for at least 116,000 Facebook accounts without consent; case terminated in settlement or default judgment as to the various defendants); *Facebook v. Guerbuez*, No. 5:08-cv-03889-JF, 2008 (N.D. Cal. Nov. 25, 2008) (where defendants sent more than 4 million sexually explicit spam messages from members' profiles; case terminated in default judgment); *Facebook v. AdScend*, No. 5:12-cv-00414 LHK, 2012 (N.D. Cal. Apr. 25, 2012) (where defendants were accused of running a $20 million-a-year spam scheme that leads social-media users to advertising sites by offering fake links to salacious videos; case terminated in voluntary dismissal)). There is a private right of action to enable recovery of loss under CA Penal Code § 502 and the CFAA, but this does not permit a private company to police the field. Facebook seeks to "punish" those believed to be offenders where the penal code itself provides for such punishment, should law enforcement find it suitable. Here, no such criminal action was

initiated, and no actual damages were sustained due to Power's innocuous campaign activity.

**F. Sanctions Award for Facebook**

On 1 March 2012, the Court granted Facebook's motion for sanctions and awarded "reasonable costs, including attorney fees" for a renewed F.R.P.C. 30(b)(6) deposition. Facebook has yet to submit a motion or declaration setting forth their claimed costs and fees, and as such the Court has yet to set an award amount. Facebook has, however, claimed entitlement to an award of $20,000 total for fees and costs in their claim in Vachani's Chapter 13 case, which is, arguably, far from reasonable. Defendants believe the court should determine such "reasonable" costs and fees.

**G. The Default Order Against Power Ventures, Inc.**

Defendant Power moved this Court for reconsideration of its August 8, 2012 Order striking Power's answer and entering default with respect to codefendant Power (Dkt. No. 314). This motion wass brought primarily on the basis that a change in material fact underlying the referenced Order - specifically, retention of counsel and notice to the Court thereof – occurred between the date of the Order and the date of the motion for leave to file this motion for reconsideration.

Having retained counsel and entered notice with the Court thereof, Power is now in compliance with Local Rules requiring that corporate parties be represented by a member of the bar of this Court. The Court would be justified in vacating its August 8, 2012 Order on this basis.

**III.   LEGAL ISSUES**

At this time, it is the defendants' position that the following issues remain open:

A. Should this Court reconsider its analyses of the CAN-SPAM claim elements and Facebook's standing to bring any of the private actions at issue in its 16 February 2012 Summary Judgment?

B. Should the Court reconsider the defendants' Motion for Summary Judgment in light of its reconsideration of the Summary Judgment order?

C. If this Court affirms the Summary Judgment, should Steve Vachani be held liable and, if so, to what degree?

D. If this Court affirms the Summary Judgment, what amount of damages, if any, should be imposed against the liable defendants?

E. What amount of costs and attorneys fees should be awarded to Facebook as sanctions for the renewed deposition?

F. Should the Court vacate the default order against Power Ventures since Power is represented by counsel and, thus, in compliance with Civil L.R. 3-9(b)?

IV. MOTIONS

A.   Pending Motions

The following motions, or outstanding issues associated with motions, are presently before the Court:

1. Defendant Power's Motion for Reconsideration of Default entry. Dkt Nos. 321-322.

2. Facebook's Cross-Motion for Entry of Default Judgment Against Defendant Power. Dkt. No. 322.

3. Defendant Vachani's *pro se* Motion for Clarification re Status of Liability.  Dkt. No. 332.

4. To what amount of damages, if any, is Facebook entitled based on the Court's Order for Summary Judgment? Dkt. No. 275.

5. Is Defendant Steve Vachani individually liable for the damages to be awarded Facebook?

6. To what amount of damages is Facebook entitled based on the Court's Order for Discovery Sanctions? Dkt. No. 282.

**B.     Anticipated Motions**

At this time, defendants anticipate filing a request for interlocutory review of the Court's 16 February 2012 Summary Judgment, primarily on the bases of inconsistent and insufficient analysis of the CAN-SPAM elements as to warrant Summary Judgment on the claim and on Facebook's standing to bring these private actions in light of obviously falsified and/or deliberately mischaracterized claims for actual damages.

In the alternative, defendants will request leave to file supplemental briefs on the issues of damages and defendant Vachani's personal liability in light of Facebook's false claims and interference in the defendants' bankruptcy proceedings as they relate to the present case.

**V.     AMENDMENT OF PLEADINGS**

The case is now fully at issue.

**VI.    EVIDENCE PRESERVATION**

The defendants have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**VII.   INITIAL DISCLOSURES**

Facebook served its initial disclosures on Defendants on July 29, 2011.  Facebook served

its supplemental and second supplemental initial disclosures on Defendants on October 14, 2011 and January 13, 2012, respectively. Defendants served their initial disclosures on Facebook on August 15, 2011. To date, Defendants have not supplemented the initial disclosures.

## VIII. DISCOVERY

Discovery closed on January 20, 2012. Defendants believe no additional discovery is necessary at this time.

## IX. CLASS ACTIONS

This is not a class action case.

## X. RELATED CASES

Vachani's bankruptcy proceeding in the United States Bankruptcy Court for the Northern District of California, Case No. 12-47150 RLE 13, is related to this matter.

## XI. RELIEF

As to be detailed in a forthcoming motion, defendants seek review and reversal of the 16 February 2012 Summary Judgment (Dkt. No. 275), as well as reconsideration of defendants' Motion for Summary Judgment (Dkt. No. 98). In the alternative, defendants seek leave to file supplemental briefs on the issue of damages and defendant Vachani's personal liability.

## XII. SETTLEMENT AND ADR

The parties engaged in an ADR mediation session on December 14, 2009. The session was facilitated by mediator Daralyn Durie, who has filed papers with the Court indicating that the ADR process is not yet complete and that further facilitated discussions are expected. *See* Dkt. No. 59. To date, the parties have engaged in numerous settlement discussions, but have been unable to reach resolution. The latest of these settlement discussions was on or around April 26, 2013.

**XIII. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

The parties have not consented to a magistrate judge.

**XIV. OTHER REFERENCES**

The parties do not believe any other references are necessary.

**XV. NARROWING OF ISSUES**

Defendants do not believe that issues can be narrowed at this time.

**XVI. EXPEDITED TRIAL PROCEDURES**

An expedited schedule is not necessary in this case.

**XVII. SCHEDULING**

**XVIII. TRIAL**

**XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES AND PERSONS**

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

**XX. OTHER MATTERS**

None.

Dated: April 29, 2013        AROPLEX LEGAL SERVICES & THE LAW PRACTICE OF AMY SOMMER ANDERSON

By     /s/ Amy Sommer Anderson

AMY SOMMER ANDERSON

Amy Sommer Anderson
AROPLEX LEGAL SERVICES & THE LAW PRACTICE OF AMY SOMMER ANDERSON
156 2nd Street
San Francisco, CA 94105
Attorneys for Defendant
POWER VENTURES, INC.

1  Dated: April 29, 2013                    STEVEN VACHANI

                                            By _____/s/ Steven Vachani_____
                                                STEVEN VACHANI

                                            Steven Vachani (pro per)
                                            2425B Channing, #216
                                            Berkeley, CA  94704

DEFENDANTS' CASE MANAGEMENT STATEMENT         - 15 -              CASE NO. 5:08-CV-05780 LHK

## CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Aroplex Legal Services and the Law Practice of Amy Sommer Anderson, 156 2nd Street, San Francisco, CA 94105.

On **April 29, 2013,** I served the following document(s) by the method indicated below:

- Defendants' Case Management Statement

X   **ECF System:** By filing the document(s) listed above on the Court's Electronic Case Filing System, I am informed and believe that the documents will be electronically served on all individuals registered with such system. To my knowledge, every individual to whom notice is required is registered with this system and, thus, has been served with due notice by action of this electronic filing.

I declare under penalty of perjury under the laws of the State of California that the above statements are true and correct.

Executed April 29, 2013 at San Francisco, California.

By: /s/ Amy Sommer Anderson

Amy Sommer Anderson