# EXHIBIT A

```
                                                    Pages 1 - 16

                   UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

         BEFORE THE HONORABLE JOSEPH C. SPERO, MAGISTRATE

FACEBOOK, INC.,                    )
                                   )
          Plaintiff,               )
                                   )
  VS.                              ) NO. C 08-5780 JW (JCS)
                                   )
POWER VENTURES, INC.,              )
                                   )San Francisco, California
          Defendant.               )  Friday
                                   )  February 24, 2012
_____)  9:30 a.m.

                     TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:         Orrick, Herrington & Sutcliffe
                       1000 Marsh Road
                       Menlo Park, California  94025
                  BY:  MORVARID METANAT, ESQ.
                       MONTE COOPER ESQ.



For Defendant:         Bursor & Fisher, P.A.
                       1900 North California Boulevard
                       Suite 940
                       Walnut Creek, California 94596
                  BY:  LAWRENCE TIMOTHY FISHER, ESQ.
                       - appeared telephonically







Reported By:   Debra L. Pas, CSR 11916, CRR, RMR, RPR
               Official Reporter - US District Court
               Computerized Transcription By Eclipse
```

*Debra L. Pas, CSR, CRR, RMR, RPR*
*Official Reporter - U.S. District Court - San Francisco, California*
*(415) 431-1477*

```
 1                  P R O C E E D I N G S
 2   FEBRUARY 24, 2012                              1:36 p.m.
 3
 4          THE CLERK:  Case C08-5780, Facebook versus Power
 5   Ventures.
 6          And, Mr. Fisher, since you're appearing by phone, I
 7   do have a court reporter who is here.  Her name is Debbie Pas.
 8   So just make sure you speak up so she can get whatever your
 9   conversation is accurately on the transcript, okay?
10          MR. FISHER:  I will do that.
11          THE COURT:  Thank you.
12          Counsel, appearances, please?
13          MS. METANAT:  Good morning, your Honor.
14          MR. FISHER:  Good morning, your Honor.  Timothy
15   Fisher for defendants Power Ventures and Steven Vachani.
16          MS. METANAT:  Morvarid Metanat and my co-counsel
17   Monte Cooper for Facebook.
18          THE COURT:  Thank you, everyone.
19          So I want to go through these one by one.  As to the
20   motion to preclude witnesses at trial, that one seems to me to
21   be moot, isn't it?
22          MS. METANAT:  Your Honor, while the issue of Power's
23   liability has been decided on summary judgment, there are still
24   the issues of damages and the issue of Mr. Vachani's personal
25   liability pending before the Court.  We ask then that the
```

1  witnesses be precluded from testifying to those matters given
2  that we haven't had the ability to depose them.
3              **THE COURT:**  I see.  So, I guess the question really
4  was for the defendants as well.
5              You're not intending to call -- and I think you've
6  said as much.  There's three witnesses identified, right?
7  Santos, Herrera -- and who is the other one?
8              **MR. FISHER:**  Carvalho.
9              **MS. METANAT:**  Carvalho.
10             **THE COURT:**  Carvalho.  You're not intending to call
11 them or submit declarations on their behalfs in this litigation
12 period, right?
13             **MR. FISHER:**  No, your Honor.
14             **THE COURT:**  And so do you have any objection to the
15 Court entering an order saying you can't do that?
16             **MR. FISHER:**  No, your Honor.
17             **THE COURT:**  Okay.  So the first part is a stipulated
18 order that the defendant shall -- agrees shall not call as
19 witnesses or provide a declaration from Santos, Herrera and
20 Carvalho.
21             Okay.  The second issue is the motion to compel
22 emails that were responsive, but purportedly not produced
23 because they weren't copied to Vachani.  Though -- and to
24 provide a 30(b)6 -- continued 30(b)6 deposition with regard to
25 those additional emails.

1          Obviously, I have two or three tentative thoughts on
2    that.  My first is that there is no excuse for not producing
3    those emails.  They are responsive.  They are relevant.
4    It's -- it is not sufficient that Mr. Vachani thinks that all
5    the important emails were copied to him.
6          Number two.  They should have been produced before
7    the 30(b)6 deposition was taken.  They were called for.  There
8    is no reasonable excuse for them not being produced before the
9    30(b)6.  They now, I guess, to the extent they exist have been
10   produced.
11         **MS. METANAT:**  Your Honor, we have received a drive
12   containing emails from Power employees.  However, there are
13   still emails that appear to be missing from this production.
14   We're still -- you know, we have just now been able to process
15   them and we're still trying to figure out what happened with
16   those emails, but it appears that there are some that are still
17   missing.
18         **THE COURT:**  I don't have a record on that.  All I've
19   got is a record of you've got some of these emails, and I think
20   in light of that you're entitled now to get a renewed 30(b)6 of
21   Power to testify regarding these emails and have the defendants
22   pay for the cost, including attorney's fees, of that renewed
23   deposition because it's the defendant's fault that it has to
24   occur.  That's my tentative thought on this.
25         So I guess, do you want to say anything about that as

```
 1  counsel for the defendants?
 2          MR. FISHER:  Your Honor, we intended to produce those
 3  documents after the Court entered its earlier ruling.  We
 4  thought they had been produced and it was an inadvertent error
 5  that led to their production.
 6          We do not disagree with the Court's ruling.  We think
 7  it's unnecessary in light of Judge Ware's order granting
 8  summary judgment for the deposition to be taken of the subjects
 9  that were listed in the 30(b)6 notice have virtually all been
10  determined by the Court in Facebook's favor, and so we think
11  there is really no need for the deposition.  The issues have
12  been resolved and resolved in Facebook's favor.
13          THE COURT:  Well, there are -- there are issues
14  regarding Mr. Vachani's participation and his personal
15  liability.
16          And then, of course, the damages issue is not simple.
17  I mean, in order to figure out the damages issue, you have to
18  figure out exactly how this program operated and what happened
19  so that you can figure out and give a reasonable estimate of
20  how many times, so that's sort of thing.  Not to mention issues
21  relating to -- that might go to intentionality, which might
22  have a bearing on damages.
23          So I'm not sure why you think it's moot at this point
24  in terms of the deposition.  You know, there may be some issues
25  which, you know, I'm sure having won on them the defendants --
```

1  the plaintiffs won't voice the time that I would give them to
2  go into, but for the most part there still substantial issues
3  to be resolved; isn't that right?
4          **MR. FISHER:**  I think the issues are very narrow at
5  this point and are outside the scope of the subjects listed in
6  the 30(b)6 notice.
7          **THE COURT:**  I'm sorry.  They didn't want -- I mean, I
8  read the deposition.  They were trying to figure out how the
9  program operated, how many times it invaded Facebook's space
10 and that sort of thing.  And the knowledge of Mr. Vachani's on
11 that subject and others on that subject, those things all seem
12 relevant to damages to me.  Aren't they?
13         **MR. FISHER:**  And I think he's already testified about
14 those subjects and I think the Court has already determined the
15 number of times that emails were sent.
16         **THE COURT:**  Number of times?  The Court made a
17 finding on number of times?
18         **MR. FISHER:**  That was submitted by Mr. Mehling,
19 Facebook's expert, who determined there were 60,000 emails that
20 were sent and defendants have not disputed that.
21         **THE COURT:**  Well, that's -- that's different.  I
22 mean, they want to say it's many more than that.  That's what
23 they know from what they got.  Now they want to do an
24 investigation that they thought they should have been able to
25 do before and say, well, that -- that's the minimum number that

1  we have been able to account for, but, at least as I understand
2  the argument, there will be -- there are many more.
3              Although, I don't know.  It's hard to know where this
4  is going.  When you multiply 60,000 times statutory damages,
5  you get such a humongous number that nobody is ever going to be
6  able to pay for it, but that's not my -- certainly not my
7  bailiwick.
8              Well, you know, I mean, I certainly would restrict
9  the deposition to the issues that are remaining in the case to
10 be resolved, but I would not like to see -- and we'll set the
11 parameters for this deposition when we get to the next letter
12 or letter after that.  But I would not like to see some big
13 fight about whether or not any particular question was within
14 the scope of that restriction, because it's a difficult
15 restriction to apply given that damages in these cases and the
16 personal liability of Mr. Vachani, you know, overlap a lot of
17 the issues that -- you know, the facts regarding those issues
18 overlaps the facts of the issues on which the Court has reached
19 conclusions.  So I'm not -- I don't think it's worth getting
20 into a big fight about when we get to the deposition.
21             So I'll order the defendant -- obviously, to the
22 extent that they haven't -- to produce forthwith the responsive
23 emails that were not copied to Vachani.
24             I will order the defendant to sit for a 30(b)6 --
25 renewed 30(b)6 depo regarding the newly-produced emails limited

```
 1  to the subjects, to the issues that were still unresolved by
 2  the Court's summary judgment order.
 3            And I'll order the defendant to pay the cost, the
 4  reasonable cost, including attorney's fees, for the renewed
 5  30(b)6 depo.  And I'll just expect that to be worked out
 6  between counsel.  If it's not, you can submit a letter to me on
 7  what your reasonable costs were, et cetera, and I'll get it
 8  resolved that way.
 9            MS. METANAT:  Your Honor, if I may just for a moment?
10  We also requested that the deposition be supervised.
11            THE COURT:  We'll get to that.  That's the next
12  question.
13            MS. METANAT:  Oh.
14            THE COURT:  So you want to do the whole 30(b)6
15  deposition over and have court supervision, and that's the next
16  letter.  I want to set some parameters for how we do this, but
17  let me give you my thoughts on that motion.
18            I think it's clear from the deposition that the
19  witness did not accurately prepare for the deposition.
20  Contrary to the way counsel described it, it is not sufficient
21  that you just got somebody who you thought knew every aspect of
22  the business, because it was clear in the questioning that
23  there were aspects of the business on which and for which and
24  with respect to which the deposition was noticed that the
25  witness did not have knowledge and would have had to have asked
```

```
 1  somebody, but didn't.
 2            There is an obligation in the law, the way that the
 3  30(b)6 jurisprudence has developed over the last 15 years, to
 4  speak with including employees and former employees and provide
 5  all the information that is reasonably available.  It's clear
 6  that Mr. Vachani has been in contact with one or more former
 7  employees and, in fact, made statements during the deposition
 8  about various subjects on which he would have to make inquiry.
 9  So he was not properly prepared for the deposition.  Spending
10  an hour and just showing up just doesn't do it.  This is not
11  just a fact witness.  It's a 30(b)6 witness.  Number one.
12            Number two is, the conduct by the witness was
13  inexcusable.  He thought it was a game.  He was argumentative
14  and he was evasive.  He refused to give straightforward answers
15  to straightforward questions that were put to him.  He
16  improperly just read answers out of his declaration, and that
17  certainly was an obstruction of the deposition process.
18            So I would allow the 30(b)6 motion, the deposition to
19  be on any topic that is remaining in the case to be renewed; a
20  renewed deposition on any topic remaining in the case that's in
21  the list of topics on which the 30(b)6 was noticed, and that
22  the witness is ordered to -- of course, if there are questions
23  that you've already asked on which you've gotten a clear
24  answer, you can't ask them again.  So no repeating questions on
25  which you've got a clear answer.
```

```
 1              Hang on a second.
 2              (Brief pause.)
 3              And in terms of supervision, I'm not quite prepared
 4   on this record.  For one thing, I don't -- I don't want the
 5   parties to have to hire a special master.  Because, you know,
 6   I'm entering these orders about attorney's fees, I don't have
 7   any illusions about them actually ever getting paid.  So if we
 8   had -- if we hired a special master, that would be -- Facebook
 9   would be paying for a special master and hoping some day to
10   recover the cost.  I'm not sure I'm really interested in doing
11   that.  I don't know that I would do it now. I'm certainly not
12   interested in sitting there myself.  Not because it wouldn't be
13   a delight, but it's because -- I don't think this has gotten to
14   the point where you need that if there is sufficient
15   instruction from the Court in advance on how you want it to go
16   -- how I want it to go.
17              So let me tell you how I want it to go.  The witness
18   shall answer all the questions put to him and there shall be no
19   instructions not to answer, other than on attorney-client
20   privilege and attorney work product.
21              The witness may not read from his declaration as an
22   answer.  That's not an adequate answer.
23              The witness may not argue with the lawyer.
24              The witness shall take all reasonable steps,
25   including contacting former employees, to be prepared on all
```

```
 1  the topics that we're allowing.  Just to be clear, what we're
 2  allowing is all of the topics that are listed in the Notice of
 3  Deposition that was previously served so long as they are still
 4  at issue.
 5          Now, I'm going to put a time limit, which I think
 6  should take care of scope questions.  So in other words, I
 7  don't actually -- you know, I'm happy to have you object that
 8  it's beyond the scope of the deposition that I'm permitting on
 9  the record, but no instructions not to answer on that basis;
10  but I'm going to put a time limit and that will, hopefully,
11  encourage the plaintiffs to use their time wisely and only
12  stick to topics that are still subject to being briefed in
13  front of the Court or tried.
14          And -- okay.  And I will order -- and I think I
15  previously said that the defendants will pay the reasonable
16  costs, including attorney's fees, for the renewed 30(b)6
17  deposition.
18          So, and then we've got to figure out the when.  Did
19  you want to make any comments on those, on behalf of the
20  defendants?
21          **MR. FISHER:**  No, your Honor.  Other than, did you
22  specify a time limit?  I didn't hear that.
23          **THE COURT:**  Oh, yeah.  I think seven hours.  Seven
24  hour limit.  Yeah.
25          So now the tricky question is when.  Not that these
```

```
 1  other questions weren't tricky, but when?  We are sort of in a
 2  box here, n that you're briefing, I guess, is due March 1st.
 3             MS. METANAT:  March 2nd.
 4             THE COURT:  March 2nd.  Friday.  So a week from
 5  today?
 6             MS. METANAT:  Yes, your Honor.
 7             THE COURT:  Well, you know, I don't know -- it sort
 8  of depends on what you want to accomplish by this deposition
 9  because if you -- if I say okay, we'll have a deposition next
10  Tuesday.  All right?  You will get whatever there is that he
11  can accomplish between now and next Tuesday.  He'll have to do
12  reasonable preparation by then, but, you know, that's not like
13  a month of preparation.  That's three days or four days of
14  preparation, two of which are on weekends and basically what
15  you want to do is call the other employees and say, you know,
16  how exactly did this promise work and where is the evidence on
17  how many times it would have inquired into a Facebook data base
18  or whatever it does.  I don't know.
19             On the other hand, if what you're really after is we
20  have gone through the 75 gigabytes.  We have got 15 emails and
21  we really want to talk about those, well, that you probably can
22  do next week by Tuesday or Wednesday.  So if you want me to set
23  it next week, I will, in time for your briefing, but it has
24  consequences.
25             MS. METANAT:  Your Honor, I think we would like to
```

```
 1  schedule it for next week, if possible.
 2          MR. FISHER:  Your Honor, this is Mr. Fisher.
 3          The other issue is that Mr. Vachani lives in Brazil,
 4  and just the travel time alone would take up a lot of the time
 5  required for him to talk to other employees.
 6          MS. METANAT:  I think we're aware of his --
 7          THE COURT:  You know, that's just something that --
 8  you know, he will have a limited period of time to do the
 9  preparation.  You know, maybe he'll have a day to do the
10  preparation and that will leave whatever it yields, but I would
11  expect him to devote the day for preparation.  We shouldn't be
12  in this situation.  It's his fault that we are.
13          So today is the 24th.  If I set the deposition --
14  when did you want me to set it?  It's your brief.
15          MS. METANAT:  I think next Tuesday works for us.
16          THE COURT:  Tuesday, the 28th of February?
17          MS. METANAT:  Yes.
18          THE COURT:  Is counsel for Mr. Vachani available on
19  Tuesday, the 28th?
20          MR. FISHER:  I'm actually supposed to be in a seminar
21  that day, your Honor.  Is it possible if we could do it on
22  Wednesday and then that would give Mr. Vachani an extra day to
23  travel?
24          MS. METANAT:  We're okay with that.
25          THE COURT:  Fine.  We will do it on Wednesday the
```

```
 1  29th, 2011 -- 2012 -- excuse me, I'm having a tough time
 2  adjusting to that -- at the Orrick Menlo Park offices?  Is that
 3  where you want it?
 4             MS. METANAT:  Yes, please.
 5             THE COURT:  What time of day?  What time do you
 6  usually start?
 7             MS. METANAT:  I think 10:00 o'clock works for both
 8  parties.
 9             THE COURT:  All right.  10:00 a.m.?
10             MS. METANAT:  Yes, please.
11             THE COURT:  And since, you know, you all work 24
12  hours a day, you can go over the transcript that evening, put
13  it in a brief the next day.  When I say "you," I mean --
14             MS. METANAT:  Yes, I understand.
15             Okay.  Am I -- in terms of other issues about general
16  spoliation, I don't feel comfortable on this record making any
17  decisions about that.
18             MS. METANAT:  Your Honor, we understand that and we
19  were hoping that we could submit further briefing on that issue
20  on defendant's discovery misconduct throughout the course of
21  discovery.
22             THE COURT:  Well, maybe or maybe not.  The judge is
23  about to decide what to do with the case.  There may or may
24  not -- I mean, to the extent there is a motion to -- for some
25  broad -- I don't think it's teed up here.  I don't think you've
```

```
 1  asked for anything, so I don't think I'm denying anything
 2  actually.
 3          And I won't preclude you from filing such a motion.
 4  I think that if you really want to do a motion for any serious
 5  discovery sanctions, like default -- I mean, in this case it's
 6  all about default, right?  It's got to be that -- you've got to
 7  assume that the number of incidents of infringement of our
 8  rights is "X" or something like that.  It's not -- it's not a
 9  precluding evidence issue, I don't think.  That wouldn't do you
10  any good.
11          So I'm not sure -- so what you're asking really is
12  for a default.  And so I'll -- I'll leave it open.  If you want
13  to do that, you can do it.  You've got to do it by a regular
14  motion.  We don't do it by letter briefing.
15          You may want to talk about -- it may be more
16  appropriate since its -- I don't know whether it's more
17  appropriate to do it in front of me or Judge Ware.  That would
18  be up to you and he, and it depends on what he does in response
19  to your briefing next week; but I'll leave  it open.
20  Certainly, I won't forbid it.
21          I will say that you don't have to do joint letter
22  briefs on it because I would not expect the defendants to agree
23  to it.  If they agree to it, then the case is over anyways, but
24  you can file any motion you want.
25          **MS. METANAT:**  Thank you, your Honor.
```

```
 1              THE COURT:  Okay?  Anything else I should be taking
 2   care of?
 3              MS. METANAT:  I think we are okay.
 4              THE COURT:  Okay.  Thank you.
 5              MS. METANAT:  Thank you.
 6              MR. FISHER:  Thank you, your Honor.
 7          (Whereupon, further proceedings in the
 8           above matter were adjourned.)
 9
10                            --oo--
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**CERTIFICATE OF REPORTER**

     I, DEBRA L. PAS, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C 08-5780 JW (JCS), FACEBOOK, INC. vs POWER VENTURES, INC. were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

    The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

                        /s/ Debra L. Pas

            Debra L. Pas, CSR 11916, CRR, RMR, RPR

                Monday, February 27, 2012