1  Amy Sommer Anderson (STATE BAR NO. 282634)
   anderson@aroplex.com
2  Aroplex Law
   156 2nd Street
3  San Francisco, California  94105
   Telephone:      415-529-5148
4  Facsimile:      415-970-5016

5  Attorney for Defendant
   POWER VENTURES, INC.
6
   STEVEN VACHANI (*pro se*)
7  2425B Channing, #216
   Berkeley, CA  94704
8  Telephone: (917) 267-8823

9

10                 UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                        SAN JOSE DIVISION

13  FACEBOOK, INC.,

14            Plaintiff,                        Case No. 5:08-CV-05780 LHK

15       v.                                     **NOTICE OF MOTION AND MOTION
                                                FOR LEAVE TO FILE MOTION FOR
16  POWER VENTURES, INC., a Cayman Island       RECONSIDERATION OF COURT'S
    corporation and d//b/a POWER.COM, a         ORDER FOR SUMMARY JUDGMENT
17  California corporation; STEVE VACHANI, an    (DKT. NO. 275)**
    individual; DOE 1, d/b/a POWER.COM,
18  DOES 2-25, inclusive,                        Dept:  Courtroom 8, 4th Floor
                                                 Judge:  Hon. Judge Lucy H. Koh
19            Defendants.

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND

## MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that pursuant to Northern District of California Civil Local Rule 7- 9(b), Defendants Power Ventures, Inc. ("Power") and defendant Steven Vachani acting *pro se* ("Defendants") hereby move this Court to grant them leave to file a motion for reconsideration of Honorable Judge Ware's February 16, 2012 Order Regarding Motions for Summary Judgment. *See* Docket No. 275 (hereinafter "Order"). As per Rule 7-9, Defendants assert that for the reasons discussed below, the Order constituted "A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order," as well as conclusions of law counter to precedent controlling authorities, resulting in overly-broad application of the three criminal statutes at issue to the associated narrow private rights of action.

PLEASE TAKE FURTHER NOTICE that pursuant to Fed. R. Civ. Proc. 54(b), as well as Local Rule 7-9, this Motion is timely, as a partial summary judgment "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." *See,* Fed. R. Civ. Proc. 54(b).

## MEMORANDUM OF POINTS AND AUTHORITIES

Facebook, Inc. ("Plaintiff") brought an action against Defendants alleging violations of the Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM Act" or "the Act"), 15 U.S.C. §§ 7701 *et seq*., the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and California Penal Code § 502 ("CPC § 502"). In the interest of advancing proper adjudication of this matter while the case remains pending as to damages and the liability of the individual defendant, Defendants hereby address the errors in this Court's analysis and judgment

of the elements of these serious and seldom pleaded criminal claims in this civil context. Judicial

economy urges reconsideration based on:

1.  The Court incorrectly applied the law as it relates to private action and erred in finding the

email messages at issue were *materially misleading* in violation of the CAN-SPAM Act.

2.  The Court incorrectly and detrimentally overlooked the critical issue of data ownership in

its CFAA and CPC § 502 analyses in finding violations based on "unauthorized access" of data

that Facebook did not own.

3.  The Court incorrectly classified Plaintiff's purported damages in determining Plaintiff's

standing to bring each of the three claims at issue and erred in finding Plaintiff to have standing.

**A. THE MESSAGES AT ISSUE DO NOT VIOLATE THE CAN-SPAM ACT BECAUSE**

**THEY CLEARLY DISCLOSE DEFENDANT POWER'S INFORMATION AS TO**

**ENABLE RECIPIENTS AND ISPs TO IDENTITY AND CONTACT POWER.**

The Act provides that "header information shall be considered *materially misleading* if it

fails to identify accurately a protected computer used to initiate the message because the person

initiating the message knowingly uses another protected computer to relay or retransmit the

message *for purposes of disguising its origin*." 15 U.S.C. § 7704(a)(1)(C) (*emphasis added*). A

false or misleading statement is considered "material" if "the alteration or concealment of header

information" would *impair the ability of an IAS provider or a recipient to "identify, locate, or*

*respond* to a person who initiated the electronic mail message." *Id.* § 7704(a)(6).

Here, the presence of ample information identifying Power.com as the "host" of the

Facebook event that was forwarded by Facebook users to their friends enabled Facebook, as well

as users, to identify, locate or respond to Defendants without any delay or further investigation.

Indeed, Power's campaign was launched for the sole purpose of attracting more users to join its

social media aggregation site. Thus, it did not—and would have no reason to—disguise its

identity or origin. This fact alone distinguishes this case from each case upon which Plaintiff

bases their claims and removes the messages at issue from regulation as intended by Congress[1].

In its Order, this Court appears to make conclusive Defendant Power's liability based on

the statute's provision that *misleading header information* is *per se* violation of the Act (Dkt. No.

275 at 13:7), but it wholly fails to analyze whether such defect was *materially* misleading within

the meaning and intent of the CAN-SPAM Act. Plaintiff offers no proof that any headers have

been altered to impair a recipient's ability to identify, locate, or respond to the person who

initiated the email, and no complaints were reported by recipients. *See*, Dkt. No. 275, 8:7-12.

In determining whether a material factual dispute exists, substantive law shall identify not

only which facts are material but also which facts are critical and which are irrelevant. *Anderson

v. Liberty Lobby, Inc*., 477 U.S. 242, 248. Here, there is case law informing on the requirement

that messages at the subject of a CAN-SPAM civil action not only be misleading but, specifically,

*materially* misleading. 15 U.S.C. § 7704(a)(1) (*emphasis added*).  The Court erred when it found,

in considering the evidence in the light most favorable to the non-moving party, there was

evidence beyond a question of fact warranting summary judgment, as it did not find the messages

to be *materially misleading* within the meaning and intent of the CAN-SPAM Act.

## B. DEFENDANTS DID NOT VIOLATE THE CFAA AND CPC § 502 BECAUSE

## DEFENDANTS HAD AUTHORIZED ACCESS FROM THE DATA OWNERS.

The Court erred in considering the alleged "hacking" of Facebook's network with respect

to the CFAA and CPC § 502 (the California corollary to the CFAA[2]), which are laws ultimately

---

[1] "If the alleged inaccuracies in a message containing so many valid identifiers could be described as 'materially false or materially mis- leading,' we find it hard to imagine an inaccuracy that would not qualify as 'materially false or materially misleading.' Congress' materiality requirement would be rendered all but meaningless by such an interpretation. *Omega World Travel v. Mummagraphics*, Inc., 469 F.3d 348 (4th Cir., 2006) at 358.

[2] *See,* generally, *Multiven, Inc. v. Cisco Sys. Inc*., 725 F.Supp.2d 887, 2010 WL 2889262 (N.D. Cal., 2010).

concerned with protecting ownership of data. Defendant Power was not only expressly granted permission, but actually instructed, by each owner to access their personal information on Facebook. The question of "unauthorized access" has been a focus of this Court[3], but Plaintiff never established—and this Court has never found—that the accessed data at issue is proprietary to Plaintiff and, thus, fraudulently procured, as required under the CFAA and CPC § 502.

The relevant provision of the CFAA provides criminal penalties for anyone who: "knowingly and *with intent to defraud*, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct *furthers the intended fraud and obtains anything of value*…."18 U.S.C. § 1030(a)(4) (*emphasis added*). Section 1030(a)(4) clearly requires intent to defraud and obtain a thing of value, which cannot be established in the present case since the thing "taken" was users' personal information to which Plaintiff had no proprietary rights and, thus, was of no legal value to Plaintiff. Even if the Court finds that users' data was of some value to Plaintiff, users' lawful sharing and Defendants' subsequent access to said data posed no threat to Plaintiff's value since 1) Defendants did not destroy or otherwise impair the data in any way, and 2) Plaintiff did not have ownership, let alone exclusive ownership, to users' personal information. There may be a relevant statute under which Facebook could claim damages for unauthorized access to data it does not own, but such claims are unsupported here.

## C. PLAINTIFF DOES NOT HAVE STANDING TO BRING THESE CLAIMS BECAUSE THEY HAVE NOT SUFFERED HARM SUFFICIENT TO BRING PRIVATE ACTIONS UNDER THE CAN-SPAM ACT, CFAA OR CPC § 502.

This Court erred in finding Plaintiff has standing to bring a private action under the CAN-SPAM Act because Plaintiff did not suffer damages sufficient to grant them standing under the

---

[3] *See*, generally, Court Orders at Dkt. Nos. 89 and 275.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Act. The *Gordon* court identified relevant damages establishing standing[4], and Plaintiff suffered none of these harms. Instead, Plaintiff deliberately mischaracterized their claimed "damages" of $5,543 for 3-4 days' salary for one engineer to "investigate" the alleged spamming[5], which was clear from the messages themselves, and $75,000 in legal fees to initiate litigation, which they colored as "investigative costs" incurred by "Cutler's Firm" (better known as Perkins Coie LLP, who was Plaintiff's outside counsel at the time). Such self-imposed fees to investigate and litigate a competitor's use of their system does not qualify as "harm" under any interpretation or application of the Act.

Further, Plaintiff has not established standing under CFAA or CPC § 502 because they have not established that their network suffered disruption or slowdown[6].  To allege a loss under the CFAA, "plaintiffs must identify impairment of or damage to the computer system that was accessed without authorization." *See, AtPac, Inc.*, 730 F. Supp. 2d at 1184.  In *Farmers*, the Court confirmed that "[c]osts not related to computer impairment or computer damages are not compensable under the CFAA." *See Farmers Ins. Exch. v. Steele Ins. Agency, Inc.* (E.D. Cal., 2013) at 721. Thus, Plaintiff's claim for attorney and engineer "investigation" fees, as described above, could not be considered compensable and, thus, not confer standing under the CFAA.

## <u>CONCLUSION</u>

For the reasons presented herein, Defendants respectfully ask permission from this Court to file their motion for reconsideration of the February 16, 2012 Order for Summary Judgment.

---

[4] The costs of investing in new equipment to increase capacity, customer service personnel to address increased subscriber complaints, increased bandwidth, network crashes, and the maintenance of anti-spam and filtering technologies as the "sorts of ISP-type harms" that Congress intended to confer standing. *See, Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir., 2009) at 1053.

[5] *See*, Declaration of Ryan McGeehan, Dkt. No. 213-4.

[6] The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense… incurred *because of interruption of service* . . . ." 18 U.S.C. § 1030(e)(11) (*emphasis added*).

1

2

3     Dated: July 31, 2013              Respectfully Submitted,

4                                       AMY SOMMER ANDERSON

5                                       By      /s/

6                                       Amy Sommer Anderson
                                        Attorney for Defendant
7                                       POWER VENTURES, INC.

8     Dated: July 31, 2013              STEVEN VACHANI

9                                       By      /s/

10

11                                           Steven Vachani (pro per)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] ORDER**

Good cause appearing, Defendants' motion for leave to file a motion for reconsideration is hereby GRANTED.

**IT IS SO ORDERED.**

Dated:                                      By: _____
                                                        Honorable Lucy H. Koh
                                                    United States District Court Judge

1
2

**CERTIFICATE OF SERVICE**

        I hereby certify that this document(s) has been or will be filed through the ECF

3
4

system, and notice will be sent via the following method(s):

5
6

**X      ECF System:** By filing the document(s) listed above on the Court's Electronic Case

7

        Filing System, I am informed and believe that the documents will be electronically served

8
9

        on all individuals registered with such system. To my knowledge, every individual to

        whom notice is required is registered with this system and, thus, has been served with due

10
11

        notice by action of this electronic filing.

12
13

        I declare under penalty of perjury under the laws of the State of California that the above

14

statements are true and correct.

15

        Executed August 1, 2013 at San Francisco, California.

16
17

                                By:   ___/s/_____
                                        Amy Sommer Anderson

18
19
20
21
22
23
24
25
26
27
28