1    Amy Sommer Anderson (STATE BAR NO. 282634)
anderson@aroplex.com
2    Aroplex Legal Services & the Law Practice of Amy Sommer Anderson
3    156 2nd Street
San Francisco, California 94105
4    Telephone: 415-529-5148
Facsimile: 415-520-0606

Attorney for Defendant
POWER VENTURES, INC.

STEVEN VACHANI (*pro se*)
2425B Channing, #216
Berkeley, CA 94704
Telephone: (917) 267-8823

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>POWER VENTURES, INC., a Cayman Island corporation and d//b/a POWER.COM, a California corporation; STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, DOES 2-25, inclusive,<br><br>    Defendants. | Case No. 5:08-CV-05780 LHK<br><br>**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FACEBOOK'S REQUEST FOR INJUNCTIVE RELIEF** |

I.  **INTRODUCTION**

Defendants Power Ventures, Inc. ("Power") and Steven Vachani ("Vachani") hereby respond in opposition to Plaintiff Facebook, Inc.'s ("Facebook") Supplemental Memorandum of Points and Authorities supporting Facebook's request for injunctive relief (the "Request")[1]. To date, this Court has entered Summary Judgment in favor of Plaintiff as to Power's liability on three counts and has reserved judgment of the individual defendant's liability[2]. Pending also is Defendants' Motion for Leave to File Motion for Reconsideration of the Summary Judgment entered February 16, 2012.

Facebook now claims significant and irreparable harm, including time spent by its engineers and lawyers and damage to Facebook's reputation and goodwill. Plaintiff fails, however, to demonstrate how they were—or may be—actually harmed by Power's activities, and none of their purported "harms" are redressable under the CAN-SPAM Act, CFAA or CPC § 502. Instead of identifying how Facebook could possibly be harmed by a company they have driven out of business and an individual they have drown in debt with nearly five years of unnecessary litigation, Facebook's Request appears to rest on actions and behaviors that have no basis in fact or even in relevance to the object of their brief.

Despite their failure to define or prove sufficient damages under any of their three claims, Facebook has asked this Court for an award of damages exceeding $18M, and now Facebook seeks an injunction prohibiting defendants from: (1) sending commercial electronic communications in violation of state and federal law; (2) accessing or using Facebook's website, computers, or computer networks without Facebook's prior permission; and (3) using any data, including Facebook-user information, obtained by Defendants from Facebook's website,

---

[1] On August 1, 2013, Facebook filed a motion to seal various elements of their Supplemental Memorandum. Dkt. No. 354. As of the date of filing the instant brief, the Court has yet to rule on the pending motion to seal.

[2] Summary Judgment Order, Dkt. No. 275.

computers, or computer networks as a result of the conduct discussed in the complaint. Facebook's Supp. Memo. filed August 1, 2013.

Defendant's dispute Facebook's entitlement to injunctive relief on three primary bases: 1) Contrary to Facebook's assertion, Defendants are not in possession of any Facebook data or any user data that was not expressly granted to Power by the users themselves; 2) Power has demonstrated nothing but cooperation with Facebook's demands, and they ceased activities with Facebook altogether when Facebook decided to litigate the matter instead of continuing efforts toward amicable resolution between the parties; and 3) there exists no statutory basis for injunctive relief given, among other reasons discussed herein, that Facebook neither suffered irreparable harm nor offers suggestion of how they would be harmed absent an injunction.

## II. RELEVANT BACKGROUND

### A. Factual Summary

Power Ventures, Inc. ran a social network aggregation website that enabled users to access their various social network account information and communication tools from a single user account on www.power.com. Declaration of Steve Vachani at ¶ 2. In late 2008, Power added Facebook to its social network collection and ran a launch campaign – "Bring 100 Friends, Win 100 Bucks! – using a monetary incentive to encourage users to invite their Facebook friends to create a www.power.com account. *Id.* at ¶ 3. The contest information was posted on a Facebook event page, and users of both www.facebook.com and www.power.com could invite their friends to view the contest event information by selecting which friends would receive the invite. When the invitations were submitted, notification was sent to each selected friend in accordance with each friend's notification settings.

On December 1, 2008, Facebook sent a cease and desist letter to Power demanding, *inter alia*, that Power discontinue their integration with Facebook. Contrary to Facebook's allegation

DEFENDANTS OPPOSITION MEMORANDUM TO FACEBOOK'S REQUEST FOR INJUNCTIVE RELIEF - 3 - CASE NO. 5:08-CV-05780 LHK

that Power disregarded their notices[3], Power, through Vachani, immediately responded and established dialogue, which continued throughout December 2008. *Id*. at ¶ 6. Despite starkly disparate company goals—Power was focused on developing tools to broaden user platform options, and Facebook's terms significantly restricted users' rights—Power worked to integrate the Facebook Connect API (Application Programming Interface) within Facebook's terms. *Id*.

On December 15, 2008, Facebook expressly granted Power until December 26th to integrate the Facebook API and authorized Power to continue operating on their site with the then-current version of their software. *Id*. at ¶ 7. Power's internal records and their documented communications with Facebook during this development period unequivocally show Power and Vachani not only devoted significant time, money and personnel to bring their integration with Facebook into compliance with Facebook's terms, but also that Power and Vachani genuinely strived to work with Facebook as a partner in implementing and improving the Facebook Connect platform. *Id*. at ¶ 6. On December 18, 2008, Vachani notified Facebook that said development was proceeding but simply could not be finalized by the 26th and requested additional time to complete the Facebook-compliant integration. *Id*. Instead of responding in kind to Power and Vachani's good faith efforts to execute on a plan that had been mutually agreeable to the parties, Facebook filed this lawsuit on December 30, 2008. Upon receiving the filed complaint and Facebook's demand for immediate disassociation from Facebook's network, Power promptly responded and *immediately took their system offline per Facebook's request*. *Id*. at ¶ 8.

Upon completing the Facebook Connect version of their software toward the end of January 2009, Power relaunched on Facebook *in full compliance with Facebook's terms of use*. *Id*. at ¶ 9. Facebook approached Power, requiring consent to additional terms not standard or applicable to other Facebook Connect users or developers, so Power removed their system and

---

[3] *See*, Facebook Supp. Memo. at 2:24.

made no further attempt to connect to Facebook. *Id.* at ¶ 10. Power went out of business in April, 2011. *Id.* at ¶ 11.

By continuing to press for Power and its employee to be liable under three criminal statutes, Facebook's actions appear to be aimed not at protecting users from the sharing of their information with third parties but at ensuring Facebook's own control over—and ability to monetize—user information, even against the users themselves. Facebook's current request is merely in furtherance of the same, and the consequences of such order must not be taken lightly.

**B. Facebook Fails To Prove Actual Or Potential Harm**

In their Request, Facebook repeatedly references "immediate and irreparable harm" and "serious consequences" supposedly caused by defendants' use of Facebook during December 2008 when Power had express permission to remain integrated with Facebook's site, but they fail to define or offer any proof supporting these claims. Facebook makes no effort to quantify any real harm it suffered. Facebook is unable to identify anything that Power misappropriated from Facebook's network, as Power did not take anything that belonged to Facebook. Nowhere in Facebook's Request for injunctive relief or in any other pleadings in this case does Facebook actually identify how their "goodwill" has been harmed.

Facebook's claim for actual damages totals $80,543[4], which includes approximately $75,000 for legal services performed by Facebook's outside counsel at Perkins Coie[5] and three to four days' of one engineer's time[6]. Since litigation fees and costs do not qualify as damages for the purpose of establishing standing under any of their claims, Facebook has falsely characterized these unnecessary expenses as "investigative costs." Even in their current brief, Facebook goes so far as to claim they "hired outside counsel to *investigate into how Defendants' system worked* and

---

[4] *See, e.g.,* Facebook's Case Management Statement filed April 29, 2013, Dkt. No. 333 at 3:8.

[5] *See, e.g.,* Order for Summary Judgment entered February 16, 2012, Dkt. No. 275 at 8:1.

[6] *Id.* at 8:16.

who was behind it." Facebook Supp. Memo. at 2:22-23 (emphasis added). First, it is inconceivable that Perkins Coie provided engineering or information technology support to Facebook as to warrant a claim for damages under these particular statutes. Second, there was nothing deceptive about the messages Facebook users were sharing with their friends regarding Power's social media aggregation website, so the company and contacts "behind it" were readily ascertainable without investigation by engineers, attorneys or even Facebook users.

### C. Injunctive Relief Against Defendant Vachani Is Inappropriate

Facebook also seeks to hold defendant Steve Vachani personally liable under the CAN-SPAM Act, the CFAA and Penal Code § 502. Despite Judge Koh's clarification in open court on May 1, 2013[7], Facebook refuses to admit and, thus, continues to assert that liability has been determined as to both defendants. In determining Vachani's personal liability, the Court has been urged to recognize that there is no precedent for holding a CEO liable in this type of computer fraud and tort action where the CEO is not the exclusive owner or director or where the action was not against the interest of the public health (See, e.g., *F.T.C. v. Sili Neutraceauticals, L.L.C.*, 2008 WL 474116 at *3 (the company's sole member was individually liable for the company's CAN-SPAM violations involving misrepresentation of the nature and safety and of certain diet supplements). Facebook, itself, was unable to site a single case where a non-exclusive owner or director was actually held liable, on the merits, for any non-health related CAN-SPAM or other computer fraud-related actions of the corporation. Therefore, there is no basis to find Vachani jointly liability for the actions of Power or to subject him to any remedies afforded Facebook.

Even if Vachani is found liable for Power's actions, Facebook provides no basis for enjoining the individual defendant from any action given that Vachani never acted independently or otherwise in a personal or individual capacity while employed by Power during the period of

---

[7] *See* Minute and Case Management Statement, Dkt. No. 340.

Facebook's grievances. As described above and supported by ample, indisputable evidence on record in this matter, Vachani made every effort to communicate Power's eagerness and active development efforts to comply with Facebook's preferred specifications. Vachani Dec. at ¶ 6. When he recognized that the Power development team was unlikely to meet deadline of December 26th for full Facebook Connect integration, Vachani approached Facebook in a timely and forthright manner that demonstrates nothing other than Power and Vachani's interest in working toward a mutually beneficial resolution of the parties' initially disparate interests. *Id*. at ¶ 8. Power and Vachani's overt efforts to expeditiously and amicably resolve their conflicts with Facebook during the month prior to this lawsuit speak loudly and antithetically to Facebook's assertion that Defendants' pre-suit behavior is indicative of future violations of law.

In their Request, Facebook makes various unfounded allegations against Vachani and Power for actions that purportedly occurred after this lawsuit commenced and are unrelated to the claims of the lawsuit and, thus, could not form the basis for statutory relief. For example, Facebook claims that Vachani "caused Power employees to destroy material evidence, including data stored in Power's database reflecting how many electronic spam messages it initiated and/or sent to Facebook." Facebook Supp. Memo. at 6:4-6. In addition to making this very serious and unsupported accusation, Facebook offers no indication of what harm they believe they suffered thereby or how, if true, such behavior is indicative of future conduct of the type they ask the Court to proscribe. Indeed, any loss of Power's data during litigation was inadvertent and unforeseeable and could not have impacted Facebook's message tabulation since all messages at issue were sent *by Facebook users* through *Facebook's system*. Vachani Dec. at ¶16.

## III. <u>DISCUSSION</u>

### A. Facebook Fails To Satisfy The Requirements For A Statutory Injunction

Plaintiff claims entitlement to injunctive relief and asserts "the record demonstrates a reasonable likelihood of future violations." Facebook Supp. Memo. at 7:7-8. Defendants maintain that their actions did not violate the statutes at issue, and it is indisputable that Defendants ultimately brought their software into compliance with Facebook's standard specifications. Vachani Dec. at ¶ 9. Even if said statutory violations are assumed, however, Facebook may not receive a statutory injunction against Defendants without demonstrating the existence of some reasonable likelihood of future violations[8].

Without further explanation, Facebook falls substantially short of demonstrating likelihood of future violations by merely alleging that (1) Defendants acted with intent to violate the CAN-SPAM Act, (2) Defendants remain in possession of software that enabled the alleged violation, and (3) Defendants possess misappropriated Facebook user data[9]. This Court has not found—and the record does not show—that Defendants acted with intent to violate the CAN-SPAM Act or any other law, particularly in light of Defendants' express and obvious intent to communicate *non-deceptive* information for the purpose of attracting knowing and willing users to Power.com. Given that Power halted interaction of the original version of their software with Facebook's system in December 2008 and altogether ceased company operations in 2011, the existence of their software is inconsequential to Facebook. Further, Power's integration with Facebook Connect provides strong evidence of their interest in complying with Facebook's terms and argues against the likelihood of future "violations." To Facebook's final point, neither Power nor Vachani possesses user data that was not expressly granted to Power by the data owners, and whether any data was obtained by user misappropriation is outside the scope of the statutes at issue. Vachani Dec. at ¶ 15.

---

[8] *See, CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979).

[9] *See*, Facebook Supp. Memo. at 7:17-25.

## B. Facebook Fails To Satisfy The Requirements For Injunctive Relief Under The Four-Factor Test

Plaintiff also claims entitlement to injunctive relief under the four-factor equitable test[10] on the bases that (1) Facebook has suffered irreparable injury, (2) monetary damages are inadequate relief, (3) the balance of hardships counsel in favor of the requested relief, and (4) public interest will be served by entry of a permanent injunction. *See* Facebook's Supp. Memo. at 8:3-7. Facebook fails to satisfy even one of these factors.

### a. Facebook Did Not Suffer Irreparable Harm Due To Defendants' Actions and Has Never Offered Proof Of Alleged Irreparable Harm

Plaintiff shamelessly claims that irreparable injury was sustained in the form of harm to Facebook's goodwill and reputation, *not* because of any actual user confusion or complaint—Facebook offers proof of neither—but because users are likely to "associate Defendants' messages and advertisements with Facebook, thereby harming Facebook's goodwill with its users." *See* Facebook's Supp. Memo. at 8:22-23. Facebook's ubiquitous presence in all things digital make it inconceivable that Facebook users would assume anything particular about Defendants' relation to Facebook, especially since Defendants have gone to great lengths to comply with the same specifications as every other Facebook-integrated developer.

Indeed, fails to demonstrate how they have been adversely affected, and they are unable to produce a single example of damage to their reputation due to Power's attempted integration with their system. In fact, Power actively worked with Facebook to develop its Facebook Connect infrastructure. Power even devoted full-time staff to develop Facebook Connect integration and spent several weeks following notice of Facebook's resistance to use of their system working to complete Facebook Connect integration. Vachani Dec. at ¶ 5. Not only did Facebook authorize

---

[10] *See, e.g., eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 390 (2006).

Power to continue using their system during this period, Facebook neglects to show how such use caused—or could cause—damage to their system.

### b. Defendants' Activity Prior To Commencement of This Lawsuit Demonstrates Good Faith Collaboration With Facebook To Implement A Better System For Both Parties; Damages Were Avoidable

Contrary to the events of Plaintiff's recollection, Power responsively and actively worked with Facebook to bring their software into compliance with Facebook's specifications after receiving Facebook's first cease and desist letter. Vachani Dec. at ¶ 4. In early December 2008, Facebook and Power conferred about Power's implementation of user access to Facebook accounts. Power actively and expeditiously adapted their system to comply with Facebook's demands over the brief few weeks between receiving Facebook's cease and desist notice and the filing of Facebook's complaint. Power's demonstrated cooperation with Facebook distinctly argues against the likelihood of potential harm to Facebook due to Power's future activities.

### c. Facebook Offers No Proof Or Suggestion Of Hardship If The Requested Relief Is Not Granted

Facebook seeks to enjoin Defendants from *far more* than unlawful conduct; they seek complete discretion in controlling Defendants' Facebook-related activities. As explained, Facebook provides *no specific example of how they have been or would be harmed* if a permanent injunction is not entered against Defendants. Defendants would, however, suffer unwarranted subjection to Facebook's discretion—as opposed to black letter of the law—each time they need approval to use Facebook's social network in ways akin to billions of Facebook users everyday.

In addition to being unwarranted under Plaintiff's statutory theory, such injunction against the individual defendant threatens Vachani's employability and, thus, his livelihood entirely irrespective of whether Vachani intends to use Facebook at all. Given Facebook's demonstrated

willingness to stretch even a hint of authority in this and related matters, it is conceivable that Facebook would assert the terms of Vachani's injunction against any employer or company associated with Vachani. Given the likelihood that such injunction against Vachani would limit his employment options, their request is unwarranted, unfair and simply over-reaching.

### d. Public Interest Urges Against Such Unnecessary And Unwarranted Injunctive Relief

Power's operations were specifically geared toward the public's interest in innovation and personal data control, and Facebook fails to identify any harm or threat to the public whatsoever. Instead of protecting the public, such order would signal potential for imposition of criminal liability, damages and injunctive relief for users attempting to easily move their data out of Facebook, as well as for developers, like Power, seeking to enhance social network technology by enabling such functionality. *See, generally,* Electronic Frontier Foundation's Brief In Support of Defendants' Motion for Summary Judgment, Dkt. No. 206-2. If granted, such order would pose additional unacceptable risks for innovators and start-up companies who would be handicapped in attracting technical talent and visionaries if associated individuals are subject to the level of damages and permanent prohibitions of otherwise lawful activity as Facebook requests.

## IV. CONCLUSION

As now fully examined, Facebook's request for injunctive relief against Defendants is entirely unfounded in fact and law and, thus, must be denied.

Dated: August 15, 2013		Respectfully Submitted,

			AMY SOMMER ANDERSON

			By	/s/

			Amy Sommer Anderson
			Attorney for Defendant
			POWER VENTURES, INC.


Dated: August 15, 2013		STEVEN VACHANI

			By	/s/

			Steven Vachani (pro per)

# [PROPOSED] ORDER

The Court, after considering the filings with regard to Plaintiff's request for permanent injunctive relief, concludes that Plaintiff has not demonstrated a likelihood of future harm, threat against public interest or other cause sufficient to warrant a permanent injunction against Defendants in this matter.

Therefore, this Court hereby DENIES the Motion.

**IT IS SO ORDERED.**

Dated: _____  By: _____
Honorable Lucy H. Koh
United States District Court Judge

# CERTIFICATE OF SERVICE

I hereby certify that this document(s) has been or will be filed through the ECF system, and notice will be sent via the following method(s):

**X** **ECF System:** By filing the document(s) listed above on the Court's Electronic Case Filing System, I am informed and believe that the documents will be electronically served on all individuals registered with such system. To my knowledge, every individual to whom notice is required is registered with this system and, thus, has been served with due notice by action of this electronic filing.

I declare under penalty of perjury under the laws of the State of California that the above statements are true and correct.

Executed August 15, 2013 at San Francisco, California.

By: /s/ Amy Sommer Anderson
Amy Sommer Anderson