I. NEEL CHATTERJEE (State Bar No. 173985)
nchatterjee@orrick.com
MONTE COOPER (State Bar No. 196746)
mcooper@orrick.com
MORVARID METANAT (State Bar No. 268228)
mmetanat@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Rd.
Menlo Park, California 94025
Telephone:   650-614-7400
Facsimile:   650-614-7401

FREDERICK D. HOLDEN, JR. (State Bar No. 61526)
fholden@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, California  94105-2669
Telephone:   415-773-5958
Facsimile:   415-773-5759

Attorneys for Plaintiff
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>POWER VENTURES, INC. a Cayman Island corporation, STEVE VACHANI, an individual; DOE 1, s/b/a POWER.COM, DOES 2-25, inclusive,<br><br>　　　　Defendants. | Case No. 5:08-cv-05780-LHK (JCS)<br><br>**FACEBOOK'S REPLY IN SUPPORT OF REQUEST FOR INJUNCTIVE RELIEF**<br><br>Dept:　　Courtroom 8, 4th Floor<br>Judge:　Hon. Lucy H. Koh |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. OBJECTIONS TO VACHANI'S UNSIGNED, INCOMPETENT DECLARATION .................................................................................................................. 1

III. DISCUSSION ................................................................................................................... 3

    A. Defendants' Bad Faith Violations of Law Entitle Facebook To A Statutory Injunction ........................................................................................... 3

        1. Defendants' Violations Of Law Cause Irreparable Harm ........................... 4

        2. Defendants Concede That Monetary Damages Are Inadequate ................ 5

        3. The Record Evidence Establishes That The Balance Of Hardships Overwhelmingly Weighs In Favor Of An Injunction ............................... 6

        4. The Public Has No Interest In Promoting Defendants' Illegal Conduct ...................................................................................................... 7

    B. Vachani Is Properly Subjected To The Requested Injunction ............................. 8

        1. An Injunction Against Power Necessarily Reaches Vachani Under Rule 65 ....................................................................................................... 8

        2. Vachani Should Be Enjoined In His Individual Capacity ......................... 9

IV. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

Page

*Amazon.com, Inc. v. Powers,*
  No. C12-1911 RAJ, 2012 U.S. Dist. LEXIS 182831 (W.D. Wash., Dec. 27, 2012) ............... 4

*Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*,
  376 F.3d 8 (1st Cir. 2004) ........................................................................................................ 5

*Brock v. Big Bear Market No. 3*,
  825 F.2d 1381 (9th Cir. 1987) ............................................................................................ 3, 4

*Comedy Club, Inc. v. Improv West Assocs.*,
  553 F.3d 1277 (9th Cir. 2009) ................................................................................................ 8

*Craigslist Inc. v. 3Taps Inc.*,
  No. C 12-03816 CRB, 2013 U.S. Dist. LEXIS 116732 (N.D. Cal., Aug. 16, 2013) ....... *passim*

*Craigslist, Inc. v. Troopal Strategies, Inc.,*
  No. C 09-04741 JW, 2011 U.S. Dist. LEXIS 156825 (N.D. Cal., July 12, 2011) .................... 7

*D.R. v. Antelope Valley Union High Sch. Dist.*,
  746 F. Supp. 2d 1132 (C.D. Cal. 2010) ................................................................................... 6

*Dunlop v. Davis,*
  524 F.2d 1278, 1281 (5th Cir. 1975) ....................................................................................... 4

*eBay Inc. v. MercExchange, L.L.C.,*
  547 U.S. 388 (2006) ................................................................................................................ 6

*Facebook, Inc. v. Fisher*,
  No. C 09-05842 JF (PSG), 2011 U.S. Dist. LEXIS 9668 (N.D. Cal., Jan. 26, 2011) ............... 7

*FTC v. Amy Travel Serv., Inc.*,
  875 F.2d 564 (7th Cir. 1989) ................................................................................................... 8

*FTC v. Cyberspace.com, LLC*,
  453 F.3d 1196 (9th Cir. 2006) ............................................................................................ 9, 10

*FTC v. Flora,*
  No. SACV11-00299-AG-(JEMx), 2011 U.S. Dist. LEXIS 121712 ........................................ 7

*FTC v. Kitco of Nevada, Inc.*,
  612 F. Supp. 1282 (D. Minn. 1985) ...................................................................................... 10

*FTC v. Phoenix Avatar, LLC*,
  No. C-04-2897, 2004 U.S. Dist. LEXIS 14717 (N.D. Ill., July 30, 2004) ............................... 7

*FTC v. Sili Neutraceuticals, LLC,*
  No. C-07-4541, 2008 U.S. Dist. LEXIS 105683 (N.D. Ill., Jan. 23, 2008) .......................... 8, 9

# TABLE OF AUTHORITIES

Page

*G. & C. Merriam Co. v. Webster Dictionary Co.*,
   639 F.2d 29, 38 (1st Cir. 1980) .................................................................................................. 10

*Hehemann v. City of Cincinnati*,
   No. 93-3766, 1994 U.S. App. LEXIS 37215 (6th Cir., Dec. 21, 1994) (unpublished) ............. 8

*Hilao v. Marcos* (*In re Estate of Marcos*),
   25 F.3d 1467 (9th Cir. 1994) ...................................................................................................... 6

*Hines v. CA PUC*,
   No. C-07-4145 CW, 2009 U.S. Dist. LEXIS 20037 (N.D. Cal. Mar. 3, 2009) ........................ 1

*Hotmail Corp. v. Van$ Money Pie Inc.*,
   No. C-98-20064 JW, 1998 U.S. Dist. LEXIS 10729 (N.D. Cal., Apr. 16, 1998) ..................... 4

*Microsoft Corp. v. Neoburst.Net, LLC*,
   No. C-03-00718 RMW, 2004 U.S. Dist. LEXIS 18733 (N.D. Cal., Aug. 30, 2004) ............... 7

*Myspace, Inc. v. Wallace*,
   498 F. Supp. 2d 1293 (C.D. Cal. 2007) ..................................................................................... 5

*Optinrealbig.com, LLC v. Ironport Sys., Inc.*,
   323 F. Supp. 2d 1037 (N.D. Cal. 2004) ..................................................................................... 4

*Ortega-Peraza v. Ilchert*,
   No. C-92-4972 MHP, 1993 U.S. Dist. LEXIS 2195 (N.D. Cal., Mar. 1, 1993) ....................... 7

*Paralyzed Veterans of Am. v. McPherson*,
   No. C-06-4670 SBA, 2008 U.S. Dist. LEXIS 69542, at *37 (N.D. Cal., Sept. 9, 2008) ......... 1

*Rowland v. Chappell*,
   902 F. Supp. 2d 1296 (N.D. Cal. 2012) ..................................................................................... 1

*Saga Int'l v. John D. Brush & Co.*,
   984 F. Supp. 1283 (C.D. Cal. 1997) .................................................................................... 9, 10

*Schneider, Hill & Spangler, Inc. v. Cudmore*,
   325 F. Supp. 173 (D. Conn. 1971) ......................................................................................... 7, 8

*Solis v. United Buffet, Inc.*,
   No. 11-cv-4194 RMW, 2012 U.S. Dist. LEXIS 26413 (N.D. Cal., Feb. 29, 2012) ................. 3

*Tagged, Inc. v. Doe*,
   No. C 09-01713 WHA, 2010 U.S. Dist. LEXIS 5428 (N.D. Cal., Jan. 25, 2010) ................... 3

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

# TABLE OF AUTHORITIES

Page

**Statutes**

Cal. Penal Code § 502 ................................................................................................*passim*

CAN-SPAM Act ..........................................................................................................*passim*

Computer Fraud and Abuse Act .................................................................................*passim*

**Other Authorities**

Fed. R. Evid. 401 ................................................................................................................... 2

Fed. R. Evid. 602 ................................................................................................................... 2

Fed. R. Evid. 701, 702 .......................................................................................................... 2

Civil L.R. 5-1 ........................................................................................................................ 1

Civil L.R. 5-1(i)(3) ................................................................................................................ 1

Civil L.R. 7-5(b) ............................................................................................................ 1, 2, 3

Fed. R. 30(b)(6) ..................................................................................................................... 9

Fed. R. 65 ...................................................................................................................... 1, 8, 9

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-iv-

## I. INTRODUCTION

Defendants' opposition is based on the false premise that "[Defendants'] actions did not violate the statutes at issue." Dkt. No. 357 at 8. Liability is not the issue at this point. Pursuant to the Court's May 1, 2013 order, Facebook's entitlement to injunctive relief is the *only* remaining issue properly addressed in the parties' supplemental briefs. Dkt. No. 342 at 21. Defendants' argument about whether Vachani is properly enjoined is outside the scope of this briefing, as the issue of Vachani's liability has already been fully briefed and submitted. And in any event, whether or not Vachani is ultimately found to be individually liable, it is clear that he is a party properly enjoined under Rule 65.

The Court has already ruled that Defendants violated the CAN-SPAM Act, the Computer Fraud and Abuse Act ("CFAA"), and California Penal Code section 502. Under Ninth Circuit law, each of these statutes entails an entitlement to statutory injunctive relief, particularly where, as here, bad faith conduct has been found. Moreover, Facebook is also entitled to an injunction to prevent further irreparable harm given that monetary damages are inadequate, the balance of equities favors Facebook, and an injunction is in the public interest.

## II. OBJECTIONS TO VACHANI'S UNSIGNED, INCOMPETENT DECLARATION

The Declaration of Steven Vachani submitted in support of Defendants' opposition brief violates this Court's Local Rules and thus should not be considered at all. As an initial matter, Vachani's declaration is unsigned. Defendants' opposition documents were not filed using Vachani's ECF credentials, and Defendants failed to comply with the attestation requirements of Local Rule 5-1(i)(3). N.D. Cal. R. 5-1 (i)(3).[1]

In addition to violating Local Rule 5-1's signature requirement, Vachani's declaration also plainly violates Local Rule 7-5(b), which provides:

> [D]eclarations may contain only facts, must conform as much as possible to the requirements of Fed. R. Civ. P. 56(e), and *must avoid conclusions and argument*.

---
[1] *See, e.g., Hines v. CA PUC*, No. C-07-4145 CW, 2009 U.S. Dist. LEXIS 20037, at *7 (N.D. Cal. Mar. 3, 2009) ("Any declarations or affidavits that are unsigned will not be considered"); *Paralyzed Veterans of Am. v. McPherson*, No. C-06-4670 SBA, 2008 U.S. Dist. LEXIS 69542, at *37 (N.D. Cal., Sept. 9, 2008) (same); *see also Rowland v. Chappell*, 902 F. Supp. 2d 1296, 1336 (N.D. Cal. 2012) (rejecting pro se litigant's unsigned declaration).

> Any statement made upon information or belief must specify the basis therefor. An affidavit or declaration not in compliance with this rule may be stricken in whole or in part.

N.D. Cal. R. 7-5(b) (emphasis added).   Vachani's declaration is replete with conclusions and legal arguments that he is not competent to testify to and that are outside the scope of Vachani's personal knowledge.  For example, Vachani's declaration contains incompetent (and incorrect) legal conclusion testimony such as (1) "Power… relaunched on Facebook in full compliance with [Facebook's] terms of use;" (2) "the header information on the emails at issue in this case was accurate;" and (3) "Power did not obtain [anything]…of value from Facebook."  Dkt. No. 357-1 ¶¶ 9, 13, 15.  Statements such as these constitute impermissible lay opinion testimony that violates this Court's Local Rules and the Federal Rules of Evidence alike.  *See* Fed. R. Evid. 701, 702.

Vachani's declaration also contains conclusory statements that are devoid of foundation such as the assertions that Facebook has not received any complaints about Defendants' conduct, that "[no one] has claimed to have been misled by anything we did," and that "Facebook refused to grant a reasonable amount of additional time necessary for Power to complete their Facebook Connect integration."  Dkt. No. 357-1 ¶¶ 8, 14.  Nothing in Vachani's declaration establishes his personal knowledge regarding these statements, *see* Fed. R. Evid. 602, which are each irrelevant in any event, *see* Fed. R. Evid. 401.

The issues raised in Vachani's declaration—such as whether Defendants complied with Facebook's terms of use, whether Defendants' email header information was misleading, whether Defendants took anything of value from Facebook's network, or whether Defendants' complied with the Federal Rules concerning discovery—have already been decided.  For example, Magistrate Judge Spero recently noted that Vachani's conduct during discovery was inexcusable, evasive, and sanctionable.  Dkt. No. 356 at 2 & 7.  Vachani's declaration is simply irrelevant to Facebook's entitlement to injunctive relief; it does not tend to make any fact of consequence to the Court's injunction analysis more or less probable.  Fed. R. Evid. 401.  Defendants may not obtain reconsideration of the Court's previous findings simply by submitting an incompetent declaration.  Vachani's declaration is irrelevant, lacks foundation, asserts incompetent lay

opinion testimony, and violates the Court's local rules.  It should be stricken.  N.D. Cal. R. 7-5(b).

## III. DISCUSSION

As set forth in Facebook's Supplemental Memorandum of Points and Authorities in Support of Request for Injunctive Relief, filed on August 1, 2013, Facebook is entitled to a statutory injunction based on Defendants' established violations of the CAN-SPAM Act, the CFAA, and California Penal Code section 502.  Moreover, Facebook is also entitled to an injunction because of the irreparable nature of the harms caused by Defendants' unlawful conduct, Defendants' inability to pay monetary damages, the balance of equities between the parties, and the public's interest in enforcement of the statutes at issue.

### A. Defendants' Bad Faith Violations of Law Entitle Facebook To A Statutory Injunction.

Defendants concede that their intent is relevant to ascertaining Facebook's entitlement to a statutory injunction.  *See* Dkt. No. 357 at 8.  Bad faith conduct underlying a statutory violation weighs heavily in favor of injunctive relief under Ninth Circuit precedent.  *See, e.g., Brock v. Big Bear Market No. 3*, 825 F.2d 1381, 1383 (9th Cir. 1987) ("a finding of bad faith…weigh[s] heavily in favor of granting a prospective injunction"); *Solis v. United Buffet, Inc.*, No. 11-cv-4194 RMW, 2012 U.S. Dist. LEXIS 26413, at *13 (N.D. Cal., Feb. 29, 2012) (citing *Brock*).

This Court has already held that "Defendant Vachani's own statements provide compelling evidence that he anticipated attempts to block access by network owners and intentionally implemented a system that would be immune to such technical barriers."  Dkt. No. 275 at 17; *see id*. at 15-17 (discussing evidence of Defendants' intent to circumvent security measures and conceal their activities).

Thus, the Court's finding that Defendants undertook deliberate efforts to circumvent Facebook's security measures is sufficient to establish a reasonable likelihood of future violations for purposes of obtaining an injunction under Ninth Circuit law.  *See Tagged, Inc. v. Doe*, No. C 09-01713 WHA, 2010 U.S. Dist. LEXIS 5428, at * 33-34 (N.D. Cal., Jan. 25, 2010) (bad faith efforts to circumvent security measures suggested likelihood of future violations); *see also Craigslist Inc. v. 3Taps Inc*., No. CV 12-03816 CRB, 2013 U.S. Dist. LEXIS 116732, at *12- 14

(N.D. Cal., Aug. 16, 2013) ("3Taps had to circumvent Craigslist's IP blocking measures to continue scraping, so it indisputably knew that Craigslist did not want it accessing the website at all").

Defendants argue that their intentions were wholly innocent because (1) they never misappropriated data from Facebook; (2) their "express and obvious intent" was to communicate "non-deceptive information" through the subject emails; and (3) they fully complied with Facebook's terms of service. But the Court has already determined that the undisputed evidence establishes that Defendants *did* misappropriate Facebook data in contravention of Facebook's terms of service and *did* send numerous deceptive emails to Facebook users. Dkt. No. 275 at 14. The MSJ Order further states that Defendants *knowingly* "took, copied, or made use of data from Facebook website without Facebook's permission to do so" in violation Facebook's terms of service, California Penal Code section 502, and the CFAA. *Id.* at 14-18.

Finally, Defendants' argument that they stopped using their scraper program and stopped evading Facebook's technical measures after Facebook initiated this lawsuit does not diminish Facebook's entitlement to injunctive relief under the circumstances presented. *See Brock,* 825 F.2d at 1383 (holding that it was error for the district court to deny injunctive relief on the basis of post-lawsuit compliance) (citing *Dunlop v. Davis*, 524 F.2d 1278, 1281 (5th Cir. 1975) ("current compliance …is no bar to prospective injunctive relief, especially where compliance is achieved only by the direct scrutiny of enforcement authorities")).

### 1. Defendants' Violations Of Law Cause Irreparable Harm.

Defendants' violations of law cause irreparable harm to Facebook's goodwill because Defendants' conduct deceives Facebook users about the source of Defendants' misleading e-mails. *See Hotmail Corp. v. Van$ Money Pie Inc.*, No. C98-20064 JW, 1998 U.S. Dist. LEXIS 10729, at *20-21 (N.D. Cal., Apr. 16, 1998) (confusion and loss of goodwill caused by spam constitutes irreparable harm); *Optinrealbig.com, LLC v. Ironport Sys., Inc.*, 323 F. Supp. 2d 1037, 1050 (N.D. Cal. 2004) ("Damage to a business' goodwill is typically an irreparable injury because it is difficult to calculate."); *Amazon.com, Inc. v. Powers,* No. C12-1911RAJ, 2012 U.S. Dist. LEXIS 182831, 35 (W.D. Wash., Dec. 27, 2012) (granting injunctive relief despite lack of

direct evidence of injury to goodwill because circumstances suggested sufficient likelihood of injury to goodwill); *see also Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 17 (1st Cir. 2004) (rejecting argument that "only *direct* evidence (with no room for inference) may establish harm to goodwill"). Defendants' violations of law also injured Facebook's goodwill by tarnishing user experiences. *See Myspace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305-06 (C.D. Cal. 2007) (negative impact on user experience sufficient to establish irreparable harm).

Defendants incorrectly argue that Facebook cannot establish irreparable harm because Facebook's "ubiquitous presence in all things digital make [sic] it inconceivable" that Facebook users would be deceived by Defendants' misleading emails. Dkt. No. 357 at 9. The Court has already decided this issue against Defendants and concluded that Defendants' e-mail communications to Facebook users were "materially misleading." This holding necessarily entails a finding that Facebook users who received the subject e-mails were likely to be deceived as to the identity of the sender. Dkt. No. 275 at 12-13.

Defendants also argue that Facebook has not produced evidence that its reputation has been damaged by Defendants' conduct. However, Facebook has provided evidence establishing that deceptive spam messages (such as the e-mails sent by Defendants) detracted from Facebook user experiences and were the source of complaints by Facebook users. *See* Dkt. No. 226-2 ¶ 5. Further, as this Court found, Defendants specifically designed software capable of circumventing Facebook's security measures to send *at least* 60,000 deceptive e-mails to Facebook users, Dkt. No. 275 at 9 ("Defendants' spamming activity was ongoing, prolific, and did not stop after requests from" Facebook.); *compare Myspace,* 498 F. Supp. 2d at 1305-06.

**2.    Defendants Concede That Monetary Damages Are Inadequate.**

As explained in depth in Facebook's moving papers, monetary damages are insufficient in this case because (1) damages would not prevent the need for repetitive litigation resulting from Defendants' likely future violations of law; (2) damages cannot safeguard against use of Facebook data misappropriated by Defendants; and (3) of Defendants' lack the ability to actually satisfy any monetary judgment rendered against them. *See* Facebook's Supplemental Memorandum of Points and Authorities re: Injunctive Relief at 9-11 (filed under seal).

Defendants do not dispute these claims.  Rather, Defendants aver that "damages were avoidable" because of Defendants' purported willingness to cooperate with Facebook.  Dkt. No. 357 at 10.  The notion that Defendants cooperated with Facebook is belied by the record, which clearly demonstrates Defendants' bad faith efforts to circumvent Facebook's security measures, to conceal their unlawful conduct through use of rotating IP addresses, and to leverage Facebook's blocking efforts into media publicity.  Dkt. No. 275 at 15-18.  More importantly, Defendants' incorrect statement that damages "were avoidable" is irrelevant in any event.  The question is whether monetary damages are an adequate remedy under the circumstances; they are not.  *See eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 390 (2006) (laying out four factor test for evaluating appropriateness of injunctive relief); *see also Hilao v. Marcos* (*In re Estate of Marcos*), 25 F.3d 1467, 1480 (9th Cir. 1994) (insolvency may render monetary remedies inadequate).

### 3. The Record Evidence Establishes That The Balance Of Hardships Overwhelmingly Weighs In Favor Of An Injunction.

Facebook has established that it suffered significant harm as a result of Defendants' unlawful activities, including incurring substantial costs attempting to stop Defendants' prolific spamming campaign and injury to Facebook's goodwill.  Defendants do not dispute that the requested injunction would protect Facebook from such harms. Nor do Defendants even attempt to argue that the balance of hardships tips in their favor.

Instead, Defendants complain that the requested injunction is overbroad because it "threatens Vachani's employability."  Dkt. No. 357 at 10.  No evidence supports this supposition.  Notably, Vachani's five-page declaration in support of Defendants' Opposition says nothing about any threat to his future employment.  Defendants' assertion that the requested injunction could limit Vachani's employment options is nothing more than rank speculation, and as such, this argument cannot impact the balance of hardships calculus.  *See, e.g., D.R. v. Antelope Valley Union High Sch. Dist.*, 746 F. Supp. 2d 1132, 1149 (C.D. Cal. 2010) ("Defendant does not even mention any hardship it would suffer…other than the mere speculation…Accordingly, the Court finds that the irreparable harm to Plaintiff overwhelmingly tips the balance of hardships in favor

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 6 -

REPLY IN SUPPORT OF FACEBOOK'S REQUEST FOR
INJUNCTIVE RELIEF
5:08-cv-05780-LHK (JCS)

of Plaintiff."); *Ortega-Peraza v. Ilchert*, No. C-92-4972 MHP, 1993 U.S. Dist. LEXIS 2195, at *16 (N.D. Cal., Mar. 1, 1993) (rejecting argument that injunction would impose undue burden where argument was based on "mere speculation"); *see also Schneider, Hill & Spangler, Inc. v. Cudmore*, 325 F. Supp. 173, 177 (D. Conn. 1971) (rejecting argument "as too remote and speculative to be weighed in the balance of hardships").

Because district courts routinely afford the type of relief Facebook requests, and because there is no evidence of any hardship that will befall Defendants as a result of the requested injunction, the balance of hardships clearly weighs in Facebook's favor. *See Microsoft Corp. v. Neoburst.Net, LLC*, No. C-03-00718 RMW, 2004 U.S. Dist. LEXIS 18733, at * 2-4 (N.D. Cal., Aug. 30, 2004) (permanently enjoining defendant from violating the CAN-SPAM Act, CFAA, Cal. Penal Code § 502, or plaintiff's terms of use); *see also FTC v. Flora*, No. SACV11-00299-AG-(JEMx), 2011 U.S. Dist. LEXIS 121712, at *8-9; 13-14 (C.D. Cal., Aug. 12, 2011) (permanently enjoining violation of CAN-SPAM Act and use of customer data); *Facebook, Inc. v. Fisher*, No. C 09-05842 JF (PSG), 2011 U.S. Dist. LEXIS 9668, at * 8 (N.D. Cal., Jan. 26, 2011) (permanently enjoining defendant from "accessing and abusing Facebook services").

### 4. The Public Has No Interest In Promoting Defendants' Illegal Conduct.

There can be no serious dispute that the public's interest in the enforcement of the CFAA, CAN-SPAM Act, and California Penal Code section 502 strongly favors an injunction. *See, e.g., Craigslist, Inc. v. Troopal Strategies, Inc.*, No. C 09-04741 JW, 2011 U.S. Dist. LEXIS 156825, at *11 (N.D. Cal., July 12, 2011) (public interest weighed in favor of injunction enjoining violations of CFAA); *FTC v. Phoenix Avatar, LLC*, No. 04 C 2897, 2004 U.S. Dist. LEXIS 14717, at *42 (N.D. Ill., July 30, 2004) (finding that the "public has an important interest" in enjoining "continued violations of the law").

Defendants argue, without explanation, that an injunction would somehow deter "innovators and start-up companies." Dkt. No. 357 at 11. But the injunction Facebook requests would not deter any *lawful* conduct; Defendants are only subject to an injunction because they violated state and federal law. "[P]rohibiting people from accessing websites they have been banned from" does not threaten "ordinary behavior" on the internet. *3Taps*, 2013 U.S. Dist.

LEXIS 116732, at *16. Good faith innovators do not use "anonymous proxies to bypass an IP block set up to enforce a banning communicated via personally-addressed cease-and-desist letters." *Id*. To the extent the CFAA and CAN-SPAM Act have "impacts on innovation, competition, and the general 'openness' of the internet…it is for Congress to weigh the significance of those consequences and decide whether amendment would be prudent." *Id*. at *25. Ultimately, the "deterrent effect on others not parties to this suit is hardly a proper element" in assessing the propriety of an injunction against Defendants. *Cudmore*, 325 F. Supp. at 177.

### B. Vachani Is Properly Subjected To The Requested Injunction.

Defendants argue that an injunction prohibiting Vachani from further violations of law is "inappropriate." Dkt. No. 357 at 6. Defendants cite no authority for this proposition. In fact, the only case cited by Defendants (Dkt. No. 357 at 6) regarding the propriety of enjoining Vachani individually stands for the proposition that an individual who has "formulated, directed, controlled or participated" in statutory violations *is* properly subjected to an injunction. *FTC v. Sili Neutraceuticals, LLC,* No. 07 C 4541, 2008 U.S. Dist. LEXIS 105683, at *7 (N.D. Ill., Jan. 23, 2008) (citing *FTC v. Amy Travel Serv., Inc*., 875 F.2d 564, 573-74 (7th Cir. 1989)).[2] As Defendants' own case law makes clear, Vachani's "knowledge…is the key issue in this case." *Amy Travel Serv.,* 875 F.2d at 573. The Court has already determined that Vachani personally "anticipated attempts to block access by network owners and intentionally implemented a system that would be immune to such technical barriers" in order to gain authorized access to Facebook's network. Dkt. No. 275 at 17.

#### 1. An Injunction Against Power Necessarily Reaches Vachani Under Rule 65.

By its express terms, Federal Rule of Civil Procedure 65 "establishes that an injunction may bind not only parties to the action but also 'their officers, agents, servants, employees, and attorneys, and [upon] those persons in active concert or participation with them.'" *Comedy Club, Inc. v. Improv West Assocs*., 553 F.3d 1277, 1287 (9th Cir. 2009) (citing Fed. R. Civ. P. 65(d)).

---

[2] Superseded by statute on other grounds as stated in *Hehemann v. City of Cincinnati*, No. 93-3766, 1994 U.S. App. LEXIS 37215, at *5 (6th Cir., Dec. 21, 1994) (unpublished).

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 8 -

REPLY IN SUPPORT OF FACEBOOK'S REQUEST FOR
INJUNCTIVE RELIEF
5:08-cv-05780-LHK (JCS)

1  Here, putting aside for a moment the fact that Vachani is himself party to this action that should
2  be held individually liable for the reasons set forth in prior briefing, there can be no question that
3  Vachani is a person who may be enjoined under Rule 65 as an officer and agent of a corporate
4  entity already adjudged to have violated the CAN-SPAM Act, CFAA, and California Penal Code
5  section 502. *See id.* Thus, even if the Court does not ultimately find Vachani personally liable,
6  he is still subject to an injunction against Power because he is an officer of Power and he actively
7  participated in the conduct that this Court found violated the law. *See, e.g., Saga Int'l v. John D.*
8  *Brush & Co.*, 984 F. Supp. 1283, 1287 (C.D. Cal. 1997).

### 2. Vachani Should Be Enjoined In His Individual Capacity.

As noted in the lone case cited by Defendants, an individual who has "formulated, directed, controlled or participated" in statutory violations is properly subjected to an injunction. *Sili Neutraceuticals,* 2008 U.S. Dist. LEXIS 105683, at *7.[3] An individual is personally liable for a corporation's violations of law if the individual "participated directly in the acts or practices or had authority to control them and had actual knowledge" of such violations. *E.g., FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1202 (9th Cir. 2006) (internal quotations and citations omitted). Neither total dominance over the corporation nor unilateral action are required to invoke use a court's injunctive power over a corporate officer in her individual capacity. *See id.*

There is no serious dispute about Vachani's personal control and direction of Power's malfeasance in this case, and the issue of Vachani's personal liability has already been fully briefed. Vachani is himself a party to this litigation in his individual capacity, and undisputed evidence—including Vachani's own testimony—establishes that Vachani personally formulated, directed, and controlled violations of the CAN-SPAM Act, CFAA, and California Penal Code section 502. Indeed, Magistrate Judge Spero recently found Vachani personally liable for the payment of sanctions against Defendants for his "personal conduct" including "being unprepared, evasive and argumentative" during the Rule 30(b)(6) deposition of Defendant Power Ventures. As such, Vachani should be enjoined from further violations in his individual capacity. *See, e.g*

---

[3] The district court's analysis in *Sili Neutraceuticals* does not support Defendants' argument that injunctions may only be granted against individuals were "public health" is implicated.

1  *Cyberspace.com*, 453 F.3d at 1202.  A contrary outcome would permit Vachani to simply

2  incorporate under a new name and continue his unlawful scraping on Facebook's network.  *See*

3  *FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282, 1296 (D. Minn. 1985) ("Snelling and Farkas

4  used various corporate entities to pursue their illegitimate business activities and an injunction

5  restraining the now-defunct Kitco would have no effect. A broad injunction is necessary to

6  protect the public from further violations of the FTC Act").   Moreover, an injunction against

7  Vachani is particularly appropriate here given his control over Power's defense of the instant

8  litigation.  *See Saga Int'l*, 984 F. Supp. at 1287 (noting that person "directly involved in shaping

9  the outcome" of litigation may be subjected to injunction under the doctrine of privity) (citing *G.

10  & C. Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29, 38 (1st Cir. 1980) for the proposition

11  that even a *non-officer* who exercised control over the litigation may be bound by an injunction).

12      Defendants' argument that subjecting Vachani to the requested injunction would threaten

13  Vachani's employability lacks merit.  Facebook has already revoked Vachani's permission to

14  access Facebook's website, and thus any future access by Vachani would be unauthorized.  *See*

15  *3Taps,* 2013 U.S. Dist. LEXIS 116732, at *12- 14 (defendant's access of Craigslist's website

16  after Craigslist revoked defendant's permission was "unauthorized" for purposes of CFAA).

17  **IV.   CONCLUSION**

18      For the reasons stated, Facebook respectfully requests that the Court issue the permanent

19  injunction Facebook seeks.

21  Dated: August 22, 2013                            ORRICK, HERRINGTON & SUTCLIFFE LLP

23                                                           By:  */s/ Morvarid Metanat*

24                                                          MORVARID METANAT
                                                         Attorneys for Plaintiff
                                                         FACEBOOK, INC.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

OHSUSA:754352877.5

- 10 -

REPLY IN SUPPORT OF FACEBOOK'S REQUEST FOR INJUNCTIVE RELIEF
5:08-CV-05780-LHK (JCS)