I. NEEL CHATTERJEE (STATE BAR NO. 173985)
nchatterjee@orrick.com
MONTE COOPER (STATE BAR NO. 196746)
mcooper@orrick.com
MORVARID METANAT (STATE BAR NO. 268228)
mmetanat@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, California  94025
Telephone:   +1-650-614-7400
Facsimile:   +1-650-614-7401

FREDERICK D. HOLDEN, JR. (State Bar No. 61526)
fholden@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Rd.,
Menlo Park, California  94025
Telephone:   415-773-5958
Facsimile:   415-773-5759

Attorneys for Plaintiff
Facebook, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., <br><br> Plaintiff, <br><br> v. <br><br> POWER VENTURES, INC., a Cayman Island corporation; STEVE VACHANI, an individual; DOE 1 d/b/a POWER.COM, DOES 2-25, inclusive, <br><br> Defendants. | Case No. 5:08-cv-05780 LHK (JCS) <br><br> **FACEBOOK'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR INJUNCTIVE RELIEF** <br><br> **PUBLIC REDACTED VERSION** |

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

FACEBOOK'S SUPPLEMENTAL MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
REQUEST FOR INJUNCTIVE RE
5:08-cv-05780 LHK (JCS)

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1
II. RELEVANT FACTUAL BACKGROUND .......................................................................... 1
    A. Procedural Summary ................................................................................................ 1
    B. Defendants' Illegal Conduct and Resulting Irreparable Harm to Facebook ........... 2
    C. Defendant Vachani's Direction and Control of Power's Unlawful Conduct.......... 5
III. DISCUSSION ........................................................................................................................ 6
    A. Facebook Has Satisfied the Requirements For a Statutory Injunction ................... 6
    B. Alternatively, Facebook is Entitled to Injunctive Relief Under the Traditional Four-Factor Test ....................................................................................................... 8
        1. Facebook Suffers Irreparable Harm From Defendants' Violations of Law.................................................................................................................. 8
        2. Monetary Damages Are Not a Sufficient Remedy Under the Circumstances ........................................................................................... 9
        3. The Balance of Hardships Weighs in Favor of Injunctive Relief ............. 11
        4. An Injunction is in the Public's Interest.................................................... 12
IV. CONCLUSION.................................................................................................................... 13

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- i -

FACEBOOK'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR INJUNCTIVE RE
5:08-CV-05780 LHK (JCS)

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
   643 F.3d 1165 (9th Cir. 2010) ................................................................................................... 6

*CFTC v. Hunt*,
   591 F.2d 1211 (7th Cir. 1979) ............................................................................................ 6, 10

*Columbia Mach., Inc. v. Besser Co.*,
   2012 U.S. Dist. LEXIS 48633 (W.D. Wash. Apr. 5, 2012) ...................................................... 11

*craigslist, Inc. v. Troopal Strategies, Inc.*,
   2011 U.S. Dist. LEXIS 156825 (N.D. Cal. July 12, 2011) ....................................................... 12

*eBay Inc.v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ................................................................................................................... 8

*EF Cultural Travel BV v. Explorica, Inc.*,
   274 F.3d 577 (1st Cir. 2001) .............................................................................................. 7, 11

*Enyart v. National Conference of Bar Examiners, Inc.*,
   823 F. Supp. 2d 995 (N.D. Cal. 2011) ................................................................................. 6, 7

*Facebook, Inc. v. Fisher*,
   2011 U.S. Dist. LEXIS 9668 (N.D. Cal. Jan. 26, 2011) .................................................. 7, 9, 10, 12

*FTC v. Flora*,
   2011 U.S. Dist. LEXIS 121712 (C.D. of Cal. Aug. 12, 2011) ................................................. 12

*FTC v. Kitco of Nevada, Inc.*,
   612 F. Supp. 1282 (D. Minn. 1985) ........................................................................................ 11

*FTC v. Phoenix Avatar, LLC*,
   2004 U.S. Dist. LEXIS 14717 (N.D. Ill. 2004) ....................................................................... 12

*Golden Gate Hotel Ass'n v. City of San Francisco*,
   836 F. Supp. 707 (N.D. Cal. 1993) ........................................................................................... 9

*Hilao v. Marcos (In re Estate of Marcos)*,
   25 F.3d 1467 (9th Cir.1994) .................................................................................................... 11

*Hotmail Corp. v. Van$ Money Pie Inc.*,
   1998 U.S. Dist. LEXIS 10729 (N.D. Cal. 1998) ...................................................................... 8

*Iniestra v. Cliff Warren Investments, Inc.*,
   886 F. Supp. 2d 1161 (C.D. Cal. 2012) .................................................................................... 6

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- ii -

FACEBOOK'S SUPPLEMENTAL MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
REQUEST FOR INJUNCTIVE RE
5:08-CV-05780 LHK (JCS)

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Joshua A. v. Rocklin Unified Sch. Dist.*,
    559 F.3d 1036 (9th Cir. 2009) .................................................................................................. 6

*Liberty Media Holdings, LLC v. Vinigay.com*,
    2011 U.S. Dist. LEXIS 153615 (D. Ariz. Dec. 27, 2011) ...................................................... 11

*Microsoft Corp. v. Neoburst.Net, LLC*,
    2004 U.S. Dist. LEXIS 18733 (N.D. Cal. 2004) .................................................................... 12

*Midkiff v. Tom*,
    725 F.2d 502, 504 (9th Cir. 1984) ............................................................................................ 9

*Myspace, Inc. v. Wallace*,
    498 F. Supp. 2d 1293 (C.D. Cal. 2007) .................................................................................... 8

*Optinrealbig.com, LLC v. Ironport Sys., Inc.*,
    323 F. Supp. 2d 1037 (N.D. Cal. 2004) .................................................................................... 8

*Phillip Morris USA Inc. v. Shalabi*,
    352 F. Supp. 2d 1067 (C.D. Cal. 2004) ............................................................................ 11, 12

*Pyro Spectaculars North, Inc. v. Souza*,
    861 F. Supp. 2d 1079 (E.D. Cal. 2012) .................................................................................. 10

*Register.com, Inc. v. Verio, Inc.*,
    126 F. Supp. 2d 238 (S.D.N.Y. 2000) ................................................................................. 7, 11

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011) .............................................................................................. 11

*Silver Sage Partners, LTD v. City of Desert Hot Springs*,
    251 F.3d 814 (9th Cir. 2001) .................................................................................................... 6

*Tagged, Inc. v. Doe*,
    2010 U.S. Dist. LEXIS 5428 (N.D. Cal. Jan. 25, 2010) ........................................ 7, 9, 10, 11

*United States CFTC v. Wilson,*
    2011 U.S. Dist. LEXIS 146153 (S.D. Cal. Dec. 20, 2011) ...................................................... 6

**Statutes**

15 U.S.C. § 7706(g)(1)(A) ............................................................................................................ 7

18 U.S.C. § 1030(g) ...................................................................................................................... 7

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- iii -

FACEBOOK'S SUPPLEMENTAL MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
REQUEST FOR INJUNCTIVE RE
5:08-CV-05780 LHK (JCS)

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Cal. Pen. Code § 502 ................................................................................................................. *passim*

Cal. Pen. Code § 502(e)(1) ................................................................................................................ 7

Cal. Pen. Code § 502c ....................................................................................................................... 7

Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 ............................................ *passim*

Individuals with Disabilities Education Act ..................................................................................... 6

Non-Solicited Pornography and Marketing Act ("CAN-SPAM"),
   15 U.S.C. §§ 7701 ................................................................................................................. *passim*

Local Civil Rule 79-5(c) ................................................................................................................... 2

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- iv -

FACEBOOK'S SUPPLEMENTAL MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
REQUEST FOR INJUNCTIVE RE
5:08-CV-05780 LHK (JCS)

## I.  INTRODUCTION

This supplemental brief requests that the Court enter a permanent injunction against Defendants in this case.  This Court, in granting Facebook's summary judgment motion, determined that Defendants Power Ventures, Inc. ("Power") and Steven Vachani ("Vachani") engineered software specifically designed to circumvent Facebook, Inc.'s ("Facebook") security measures in order to access Facebook's network without authorization and unlawfully scrape user data from Facebook's system.  Power and Vachani then used this data to launch deceptive spamming campaigns.  Facebook has suffered significant adverse effects as a result of Defendants' unlawful conduct.  Dkt. No. 275 at 8:13-9:12; 19:15-20; 18:15-19:2.

Defendants remain in possession of Facebook user data and software specifically designed to assault Facebook's network.  Defendants' willingness to use nefarious means to circumvent Facebook's security measures has been established, as has Defendants' willingness to conceal its illegal activities through deceit, suppression of discovery materials, and destruction of evidence.  Under such circumstances, an injunction is warranted.  Indeed, district courts routinely grant injunctive relief in cases less egregious than this one.

In light of Defendants' conduct before and during this litigation, the irreparable and serious nature of the harm Defendants have caused, and the public's interest in preventing the type of deceptive conduct Defendants have carried out, injunctive relief is appropriate and necessary.  The core prospective relief Facebook seeks is an injunction prohibiting Defendants from: (1) sending commercial electronic communications in violation of state and federal law; (2) accessing or using Facebook's website, computers, or computer networks without Facebook's prior permission; and (3) using any data, including Facebook-user information, obtained by Defendants from Facebook's website, computers, or computer networks as a result of the conduct discussed in the complaint.  Facebook is entitled to this relief because Defendants have no legitimate interests in engaging in such activities.

## II.  RELEVANT FACTUAL BACKGROUND

### A.  Procedural Summary

On February 16, 2012, then-Chief Judge Ware entered an Order granting summary

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

FACEBOOK'S SUPPLEMENTAL MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
REQUEST FOR INJUNCTIVE RE
5:08-cv-05780 LHK (JCS)

judgment against Defendants for violations of Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, California Penal Code section 502, and the Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM Act"), 15 U.S.C. §§ 7701. Dkt. No. 275. The Court ordered supplemental briefing on (1) the amount of damages to be paid to Facebook, and (2) the individual liability of Defendant Vachani, Power's CEO. *See* Dkt. No. 275 at 19. Those two issues were fully briefed and submitted. *See* Dkt. Nos. 288[1]; 292; 299; 300; 317. Before Judge Ware could rule, Defendants each filed for bankruptcy. Power's bankruptcy petition was dismissed for cause by the Bankruptcy Court on November 27, 2012. Vachani's bankruptcy petition remains pending.

On May 1, 2013, the Court requested supplemental briefing on Facebook's entitlement to injunctive relief and the issue of Facebook's entitlement to attorneys' fees. Dkt. No. 342 at 21. Facebook believes the statutory damages in this case will fully compensate it for ascertainable damages, but a statutory damages award will not stop Vachani or Power from causing further harm. As such, Facebook waives its entitlement to attorneys' fees under the CFAA, its right to exemplary damages under Penal Code section 502, and submits the instant brief solely on the issue of entitlement to injunctive relief.

**B.   Defendants' Illegal Conduct and Resulting Irreparable Harm to Facebook**

As set forth in Judge Ware's Order (Dkt. No. 275) and Facebook's previously-filed Supplemental Brief on damages (Dkt. Nos. 299-300), Defendants engaged in conduct that produced immediate and irreparable harm to Facebook. In December 2008, Facebook determined that Power was making unauthorized use of its systems and services. *See* Dkt. No. 213-4 ¶¶ 7-9. Facebook hired outside counsel to investigate into how Defendants' system worked and who was behind it. *Id.* at ¶ 11. On multiple occasions, Facebook sent Defendants cease and desist letters. Dkt. No. 275 at 7. Defendants refused to cease their activities. *Id.* Meanwhile, Facebook implemented security measures in an effort to prevent further attacks. *Id.* at 3-9; Dkt. No. 213-4 ¶

---

[1] Because Power improperly filed its Supplemental Damages Brief without a sealing Order or the requisite Declaration to Seal pursuant to Local Civil Rule 79-5(c) or (d), Power's Supplemental Damages Brief lodged with the Court on March 30, 2012 has not been assigned a Docket Number.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 2 -

FACEBOOK'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR INJUNCTIVE RE
5:08-CV-05780 LHK (JCS)

13. Among other preventative measures, Facebook repeatedly blocked the IP addresses that Power had been using to access Facebook, only to learn that Power was attacking the site through new IP addresses in what amounted to a game of "cat and mouse." *Id.* This conduct continued until at least December 22, 2008, when Facebook discovered Defendants had yet again intentionally circumvented Facebook's IP blocks, resumed connections to Facebook through new IP addresses, and were continuing their unlawful activities. *Id.* at ¶14.

That Defendants intended to engage in unauthorized activity with serious consequences to Facebook is not disputed. This Court determined that Defendants specifically created a software program that permitted Defendants to gain unauthorized access to Facebook's website in order to crawl, scrape, and download Facebook user information. *See, e.g.*, Dkt. No. 275 at 10-11, 15-17. Defendants then used data unlawfully collected from the Facebook website to send (at least) tens of thousands of unsolicited commercial electronic messages with misleading headers to Facebook users. *Id.* at 10-11. Header information for Defendants' e-mails contained "@facebook.com" e-mail addresses because Defendants' program caused Facebook's servers to automatically send them. *Id.* at 12. The e-mail headers did not identify that the Defendants initiated the e-mail, materially misleading Facebook users in violation of the CAN-SPAM Act. *Id.* at 13. Facebook made significant expenditures in response to Defendants' specific acts. *Id.* at 9. Based on the evidence available to Facebook at the time it submitted its summary judgment motion, Defendants' conduct caused Facebook to expend at least ■■■ to safeguard Facebook's network. *Id.* at 18 (citing Dkt. No. 213-2).

Defendants acted with a culpable state of mind when they violated the law. Defendants actively undertook to conceal their unlawful activity both before and during the course of this litigation. In designing the software used to hack Facebook's network, Vachani specifically directed his staff to "make sure [to scrape Facebook user information] in a way where we are not really detected," and Defendants attempted to achieve secrecy via use of multiple IP addresses. Dkt. No. 275 at 16-17. Defendants also specifically implemented their spamming campaign in a manner that was designed to ensure that it would be able to continue regardless of any actions that Facebook took to stop it. Dkt. No. 275 at 15-17; *see also* Dkt. Nos. 299-3 at 146:16-148: 15;

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 3 -

FACEBOOK'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR INJUNCTIVE RE
5:08-CV-05780 LHK (JCS)

299-4; 299-5. For instance, even before they launched their service, Defendants established their website link to Facebook in secret, and designed their system to purposefully circumvent Facebook security measures. Dkt. Nos. 299-3 at 146:16-148: 15; 299-6; 299-7; 299-8; 299-9. Defendants sought to maximize the number of Facebook users who would be solicited to join Power, and to that end Defendants even offered monetary payments to users for access to their accounts. Dkt. No. 275 at 2-3, 10-12; *see also* Dkt. No. 299-10. As the Court previously found, Defendants "created a software program specifically designed to" disguise Defendants' access. Dkt. No. 275 at 11.

Defendants at all times knew that their conduct violated Facebook's published terms of use, and further understood that their conduct likely would necessitate that Facebook employ technical means to counter Defendants' acts. Dkt. No. 299-15 at 121:24-122:1; 122:19-20; 125:4-23; 126:1-23; 236:7-9; 239:20-24; 279:24-280:4. Armed with such knowledge, Defendants nonetheless continued to spam Facebook users even after receiving the cease and desist letters from Facebook's counsel which informed them of the unauthorized conduct. Dkt. Nos. 217 ¶¶ 11, 13; 299-23; 299-24; 299-21; 299-18. Defendants even welcomed Facebook's blocking efforts, hoping that it would gain media publicity for Power. Dkt. No. 299-25. Upon learning of the various blocks of the numerous Power IP addresses by Facebook, Defendants repeatedly modified their server systems to circumvent Facebook's actions. Dkt. No. 299-6. Defendants also consciously elected not to seek the advice of counsel as to whether their conduct violated CAN-SPAM or any other laws, even though their Director of Legal Operations repeatedly urged them to do so. Dkt. Nos. 299-21; 299-18; 299-3 at 101:20-102:19.

Defendants even continued their clandestine course of conduct throughout this litigation. After Facebook initiated this lawsuit, Defendants concealed—and in some instances, destroyed—material evidence in violation of the Federal Rules and orders of the Court. *Inter alia*, despite being ordered by Magistrate Judge Spero on November 7, 2011 to undertake an immediate, thorough search of emails and other electronic information and to produce all such documentation potentially relevant to this case (Dkt. No. 166), Defendants defied Judge Spero's discovery orders by withholding material evidence from Facebook until *after* the close of discovery and *after*

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 4 -

FACEBOOK'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR INJUNCTIVE RE
5:08-CV-05780 LHK (JCS)

briefing on the parties' summary judgment motions concluded. *See* Dkt. No. 282. This behavior resulted in Magistrate Judge Spero awarding sanctions to Facebook, which included Defendants being ordered to reappear for a Rule 30(b)(6) deposition in March of 2012, for the purpose of generating testimony that could be used to supplement the information that already had prompted Chief Judge Ware to grant summary judgment finding that Defendants had violated the CAN-SPAM Act, the CFAA, and California Penal Code Section 502. *Id.*; *see also* Dkt. No. 300 at 1-7, 10-13. Facebook ultimately proved that after this lawsuit was initiated, Defendant Vachani, personally and intentionally ordered his employees to destroy all information in the Power database that reflected how many spam emails Defendants had sent to Facebook users, thereby preventing Facebook or this Court from ever knowing the exact number of Facebook users who were spammed. Dkt. Nos. 299-13 at 271:9-272:5; 299-15 at 168:11-22.

Defendants' flagrant abuse of the discovery process makes it impossible for Facebook to ascertain the full scope of Defendants' unlawful activities, *id.,* but it is undisputed that Defendants' actions were "ongoing, prolific, and did not stop" despite multiple requests from Facebook. Dkt. No. 275 at 9.

### C.   Defendant Vachani's Direction and Control of Power's Unlawful Conduct

Vachani admitted his deep personal role in controlling and directing the company's activities aimed at Facebook. Dkt. No. 299-3 at 229:10-230:7. Defendants' campaign to spam Facebook users with unsolicited e-mails was Vachani's idea and he was responsible for its implementation. Dkt. Nos. 275 at 10-11; 229 at 181:21-183:9; 232-2 at Power's Response to Interrogatories Nos. 8-10, 16. Defendants concede that Vachani was responsible for the offending messages giving rise to CAN-SPAM liability. Dkt. No. 232-2 at Power's Response to Interrogatory No. 9. Indeed, Vachani himself admitted that he directed *and* controlled each of the company decisions to persistently circumvent Facebook's multiple blocks of Power's IP addresses. Dkt. Nos. 236-6; 299-3 at 141:22-142:21; 230:23-231:4.

Vachani's personal malfeasance continued during this litigation. For example, Vachani breached his duty to prepare for his initial Rule 30(b)(6) deposition and compounded this violation of law by refusing to answer numerous questions regarding his own actions, as well as

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 5 -

FACEBOOK'S SUPPLEMENTAL MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
REQUEST FOR INJUNCTIVE RE
5:08-CV-05780 LHK (JCS)

Power's CAN-SPAM Act liability. *See* Dkt. Nos. 265 at 1-5; 282. As Judge Spero expressly found, Vachani treated his Rule 30(b)(6) deposition like a "game" and intentionally obstructed the deposition process, requiring a second seven-hour deposition. Dkt. No. 280, Transcript of February 24, 2012 Hearing at 9; *see also* Dkt. No. 282. And, as noted, Vachani caused Power employees to destroy material evidence, including data stored in Power's database reflecting how many electronic spam mail messages it initiated and/or sent to Facebook. Dkt. Nos. 299-15 at 83:23-84:1; 299-36; 299-35. Vachani's actions, which occurred during a time when Vachani knew his conduct would be scrutinized by the Court, make clear that a damages award alone will not suffice to prevent further misconduct on his part.

## III. DISCUSSION

### A. Facebook Has Satisfied the Requirements For a Statutory Injunction

The Ninth Circuit has found that "[t]he standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." *See, e.g., Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175 (9th Cir. 2010) (citing *Silver Sage Partners, LTD v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001) and *Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1040 (9th Cir. 2009) (noting that certain injunctive relief under the "stay put" provision of the Individuals with Disabilities Education Act "requires no specific showing on the part of the moving party, and no balancing of equities by the court").

In the context of statutory injunctions in the Ninth Circuit, once a violation of the underlying statute is proven, future violations are presumed. *Silver Sage Partners, LTD v. City of Desert Hot Springs*, 251 F.3d at 826-27; *Enyart v. National Conference of Bar Examiners, Inc.*, 823 F. Supp. 2d 995, 1015 (N.D. Cal. 2011); *Iniestra v. Cliff Warren Investments, Inc.*, 886 F. Supp. 2d 1161, 1166-67 (C.D. Cal. 2012); *see also United States CFTC v. Wilson,* 2011 U.S. Dist. LEXIS 146153, 6 (S.D. Cal. Dec. 20, 2011) (where a statutory violation is proven, "the moving party need only show the existence of some reasonable likelihood of future violations" in order to receive an injunction; citing *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979)). Thus, it is common for district courts in the Ninth Circuit to grant injunctive relief under laws that

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 6 -

FACEBOOK'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR INJUNCTIVE RE
5:08-CV-05780 LHK (JCS)

provide for statutory injunctions, such as the CAN-SPAM Act, without analyzing the traditional four-factor test for injunctive relief. *See Enyart*, 823 F. Supp. at 1015; *Tagged, Inc. v. Doe*, 2010 U.S. Dist. LEXIS 5428, at * 34 (N.D. Cal. Jan. 25, 2010) (granting injunctive relief based on reasonable likelihood of future violations without analyzing traditional four-factor test); *Facebook, Inc. v. Fisher*, 2011 U.S. Dist. LEXIS 9668, at *7-8 (N.D. Cal. Jan. 26, 2011) (same).

Here, because Defendants have violated three statutes that provide for statutory injunctions—the CAN-SPAM Act, the CFAA and California Penal Code 502c—and because the record demonstrates a reasonable likelihood of future violations, Facebook is entitled to a statutory injunction. The CAN-SPAM Act specifically authorizes district courts to grant permanent injunctions to enjoin further violations by persons found liable under the Act. 15 U.S.C. § 7706(g)(1)(A); *e.g., Fisher*, 2011 U.S. Dist. LEXIS 9668, at *7-8 (granting permanent injunctive relief due to defendant's violations of the CAN-SPAM Act). Similarly, the CFAA and California Penal Code section 502 also provide for injunctive relief. 18 U.S.C. § 1030(g); Cal. Pen. Code § 502(e)(1) (owner of a computer system who suffers "damage or loss by reason of a violation of any of the provisions of subdivision (c) [of Section 502] may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief").

The record demonstrates that there is a strong likelihood that Defendants will commit future violations absent an injunction. Defendants undertook to circumvent Facebook's security measures for the express purpose of committing violations of the CAN-SPAM Act. *See, e.g.*, *Tagged, Inc*., 2010 U.S. Dist. LEXIS 5428, at *33-34 (deliberate efforts to circumvent security measures sufficient to establish likelihood of future violations). In addition, Defendants are still in possession of the software that enabled their violations of law. *See Register.com, Inc. v. Verio, Inc.*, 126 F. Supp. 2d 238, 252 (S.D.N.Y. 2000) (enjoining parties because there was a risk that future use of defendants' software robot could cause harm). Finally, there is a risk of continued violations by Defendants because they continue to possess misappropriated Facebook-user data. *See EF Cultural Travel BV v. Explorica, Inc*., 274 F.3d 577, 580, 585 (1st Cir. 2001) (upholding an injunction barring defendants from using a "scraper program" and requiring the return of all information generated through the scraper).

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 7 -

FACEBOOK'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR INJUNCTIVE RE
5:08-CV-05780 LHK (JCS)

### B. Alternatively, Facebook is Entitled to Injunctive Relief Under the Traditional Four-Factor Test

In the event the Court elects to evaluate Facebook's request under the traditional four-factor equitable test, Facebook has demonstrated that (1) it has suffered an irreparable injury, (2) monetary damages alone are inadequate relief, (3) the balance of hardships counsel in favor of the relief requested by Facebook, and (4) the public interest will be served by entry of a permanent injunction. *See, e.g., eBay Inc.v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006). Accordingly, it is entitled to a permanent injunction.

#### 1. Facebook Suffers Irreparable Harm From Defendants' Violations of Law

Defendants developed a software program that permitted Defendants to gain unauthorized access to Facebook's website in order to scrape Facebook user information. Dkt. No. 275 at 10-11, 15-17. Defendants sent a *minimum* of 60,000 deceptive spam messages, while simultaneously engaging in a "game of cat and mouse" with Facebook in which Defendants repeatedly and intentionally changed Power's IP address in order to circumvent Facebook's multiple blocks of Defendants' services. Dkt. Nos. 275 at 9; 213-4 ¶¶ 13-14. Defendants' activities caused irreparable harm in the form of, *inter alia*, injury to Facebook's goodwill and reputation. *See* Dkt. No. 213 ¶¶ 4-5, 10, 12. Defendants' "Launch Program" caused Facebook's servers to automatically send e-mails to users containing an "@facebookmail.com" address. Dkt. No. 275 at 12. These e-mails were materially misleading to Facebook users because they did not accurately identify who initiated the e-mail. Dkt. No. 275 at 13. Facebook users receiving such e-mails are likely to associate Defendants' messages and advertisements with Facebook, thereby harming Facebook's goodwill with its users. *See* Dkt. No. 213 ¶¶ 4-5, 10; *see also Hotmail Corp. v. Van$ Money Pie Inc.*, 1998 U.S. Dist. LEXIS 10729, at *20-21 (N.D. Cal. 1998) (confusion and loss of goodwill caused by spam constitutes irreparable harm); *Optinrealbig.com, LLC v. Ironport Sys., Inc.*, 323 F. Supp. 2d 1037, 1050 (N.D. Cal. 2004) ("Damage to a business' goodwill is typically an irreparable injury because it is difficult to calculate."). Moreover, deceptive spam such as the messages sent by Defendants tarnish user experiences. *See Myspace,*

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 8 -

FACEBOOK'S SUPPLEMENTAL MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
REQUEST FOR INJUNCTIVE RE
5:08-CV-05780 LHK (JCS)

*Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305-06 (C.D. Cal. 2007) (negative impact on user experience sufficient to establish irreparable harm).  Thus, the undisputed evidence establishes that Defendants' violations of law caused Facebook irreparable harm.  *See Fisher*, 2011 U.S. Dist. LEXIS 9668, at *7-8 (issuing permanent injunctive relief under similar circumstances); *Tagged, Inc.,* 2010 U.S. Dist. LEXIS 5428, at *33-34 (similar).

### 2.     Monetary Damages Are Not a Sufficient Remedy Under the Circumstances

Monetary damages are insufficient where a party is threatened with burdensome and repetitious re-litigation on the same issue.  *Golden Gate Hotel Ass'n v. City of San Francisco*, 836 F. Supp. 707, 709 (N.D. Cal. 1993) ("[I]njunction[s] are appropriate where a federal litigant has prevailed on the merits, yet is threatened with burdensome and repetitious relitigation of the same issues in a multiplicity of actions") (quoting *Midkiff v. Tom*, 725 F.2d 502, 504 (9th Cir. 1984)).  Here, Defendants' conduct before and during this litigation demonstrates a willingness to continue violating Facebook's rights that can only be abated by injunctive relief.  At a minimum, Defendants should be prevented in the future from accessing Facebook's website without Facebook's express and prior permission, and further be enjoined in the future from ever employing the Power software (or similar software) to intentionally send spam messages to Facebook users, or to circumvent technical measures and other actions taken by Facebook to block access to the Facebook website.

First, monetary remedies are insufficient to ensure that Defendants never again "intentionally implement[] a system that would be immune to [Facebook's] technical barriers," or undertake efforts to conceal unlawful conduct such as taking steps to prevent detection when spamming Facebook users.  *See* Dkt. No. 275 at 17.  In this case, even after they were made aware by Facebook that Defendants' activities were unlawful, Defendants' intentionally circumvented every attempt by Facebook to block further access by Defendants to the Facebook website. Dkt. Nos. 213-4 ¶¶ 13-14; 217 ¶¶ 11, 13; 299-23 at Supplemental Response to Interrogatory No. 7; 299-24; 299-21; 299-18; 299-25; 299-6.

Such deceptive and intentionally harmful conduct clearly warrants injunctive relief,

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 9 -

FACEBOOK'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR INJUNCTIVE RE
5:08-CV-05780 LHK (JCS)

because no amount of monetary damages will otherwise ensure that it is not repeated. *See Tagged, Inc.*, 2010 U.S. Dist. LEXIS 5428, at *33-34 ("Defendant also deliberately implemented other tactics to circumvent plaintiff's security measures…Thus, plaintiff sufficiently has demonstrated a reasonable likelihood of defendant's future violations" warranting injunctive relief). Indeed, even after receiving Facebook's cease and desist letter, Defendants intentionally continued their unlawful activity and ignored their Director of Legal Operations' repeated pleas to consult legal counsel. Dkt. No. 299 at 8; *see, e.g., Fisher*, 2011 U.S. Dist. LEXIS 9668, at *8 (awarding permanent injunction where defendants "demonstrated a willingness to continue their activities" by disregarding cease and desist letters). No amount of monetary damages can remedy Defendants' history of deliberate and intentional harm arising from their brash indifference to Facebook's rights.

Second, monetary damages are insufficient to safeguard against improper use of the Facebook-user data misappropriated by Defendants—which Defendants continue to possess. Particularly given Defendants ability to further harm Facebook's goodwill through misuse of Facebook-user data, an injunction is required to prevent further irreparable harm to Facebook. *See Pyro Spectaculars North, Inc. v. Souza*, 861 F. Supp. 2d 1079, 1092 (E.D. Cal. 2012) (granting injunctive relief where defendant still possessed plaintiff's misappropriated data and could use such data to injure plaintiff's goodwill).

Third, Defendants' flagrant abuse of the discovery process, destruction of important evidence, and open defiance of Judge Spero's discovery orders further underscore their lack of respect for the rule of law, and all but assure the need for future lawsuits absent injunctive relief. *See* Dkt. No. 347. As discussed above, even during this litigation, Defendants have flagrantly abused the discovery process, violated Court orders, and destroyed evidence of their malfeasance. Such conduct demonstrates Defendants' lack of respect for their legal obligations and evinces a serious likelihood of future violations of law absent an injunction. *See, e.g., Hunt*, 591 F.2d at 1220 (defendant's conduct, combined with continued ability to carry out violations, established sufficient likelihood of future violations to warrant injunctive relief).

Finally, monetary relief also is insufficient here in light of Defendants' judicial admissions

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 10 -

FACEBOOK'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR INJUNCTIVE RE
5:08-CV-05780 LHK (JCS)

of insolvency before the United States Bankruptcy Court. *See Hilao v. Marcos (In re Estate of Marcos)*, 25 F.3d 1467, 1480 (9th Cir.1994) (insolvency may render monetary remedies inadequate). The likelihood that Defendants will be unable to compensate Facebook for injuries caused by Defendants' violations of law weighs in favor of injunctive relief. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (defendant's inability to pay damages weighed in favor of injunction); *accord Columbia Mach., Inc. v. Besser Co.*, 2012 U.S. Dist. LEXIS 48633, at *9 (W.D. Wash. Apr. 5, 2012) (monetary damages inadequate where defendant cannot satisfy damages award); *Liberty Media Holdings, LLC v. Vinigay.com,* 2011 U.S. Dist. LEXIS 153615, at *51 (D. Ariz. Dec. 27, 2011) (similar).[2]

### 3. The Balance of Hardships Weighs in Favor of Injunctive Relief

The balance of equities greatly favors injunctive relief for Facebook. Facebook suffered significant harm as a result of Defendants' unlawful activities. Dkt. No. 275 at 8-9; 18-19. As noted in the Court's Order, Defendants' "prolific" spamming caused Facebook to expend significant resources in a game of "cat and mouse" with Defendants. Dkt. No. 275 at 9, 16. Absent an injunction, Facebook will be at risk of additional injuries and related expenditures. *See, e.g.*, *Tagged, Inc.*, 2010 U.S. Dist. LEXIS 5428, at *33-34; *see also EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 580, 585 (1st Cir. 2001) (upholding an injunction barring defendants from using a "scraper program" and requiring the return of all information generated through the scraper); *Register.com,* 126 F. Supp. 2d at 252 (enjoining parties because there was a risk that future use of defendants' software robot could cause harm).

On the other hand, Defendants would suffer no harm from an injunction prohibiting further injurious, unlawful conduct – especially since much of Defendants' conduct has been improperly aimed at undermining disclosure of their deeds through judicial remedies. *See Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1075 (C.D. Cal. 2004) (hardship attendant to

---

[2] The fact that Power may now be defunct does not diminish Facebook's entitlement to an injunction. Rather, Power's apparent insolvency creates the need for a broad injunction prohibiting Vachani from carrying out unlawful conduct through different entities. *See, e.g., FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282, 1296 (D. Minn. 1985) (noting that broad injunction was warranted where individual defendant remained capable of carrying out violations through entities other than defunct corporate entity).

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 11 -

FACEBOOK'S SUPPLEMENTAL MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
REQUEST FOR INJUNCTIVE RE
5:08-CV-05780 LHK (JCS)

1  enjoining illegal activity not cognizable).  All Facebook requests is an order requiring Defendants
2  to conform their conduct to the law and to cease accessing Facebook's services without prior
3  permission.  District courts routinely afford such relief.  *See Microsoft Corp. v. Neoburst.Net,*
4  *LLC*, 2004 U.S. Dist. LEXIS 18733, at * 2-4 (N.D. Cal. 2004) (permanently enjoining defendant
5  from violating the CAN-SPAM Act, CFAA, Cal. Penal Code § 502, or plaintiff's terms of use);
6  *see also FTC v. Flora*, 2011 U.S. Dist. LEXIS 121712, at *8-9; 13-14 (C.D. Cal. Aug. 12, 2011)
7  (permanently enjoining violation of CAN-SPAM Act and use of customer data); *Fisher*, 2011
8  U.S. Dist. LEXIS 9668, at * 8 (permanently enjoining defendant from "accessing and abusing
9  Facebook services").  Because no legitimate interest weighs against an injunction here, *see*
10 *Shalabi*, 352 F. Supp. 2d at 1075, and because Facebook seeks only to enjoin bad faith conduct
11 that causes irreparable harm, an injunction should issue, *see Neoburst.Net, LLC*, 2004 U.S. Dist.
12 LEXIS 18733, at * 2-4.

### 4. An Injunction is in the Public's Interest

14     The public's interest in the enforcement of the CFAA, CAN-SPAM Act, and California
15 Penal Code section 502 strongly favors an injunction.  *See, e.g., craigslist, Inc. v. Troopal*
16 *Strategies, Inc.,* 2011 U.S. Dist. LEXIS 156825, at *11 (N.D. Cal. July 12, 2011) (public interest
17 weighed in favor of injunction enjoining violations of CFAA); *FTC v. Phoenix Avatar, LLC*,
18 2004 U.S. Dist. LEXIS 14717, at *42 (N.D. Ill. 2004) (finding that the "public has an important
19 interest" in enjoining "continued violations of the law").  As discussed above, absent an
20 injunction, Defendants will be permitted to continue to harass Facebook and its users.  Thus, the
21 Facebook community, and the public at large, would be disserved without a permanent
22 injunction.  Defendants not only violated multiple laws, but they have demonstrated a propensity
23 to continue violating the law.
24 \ \ \
25 \ \ \
26 \ \ \
27 \ \ \
28 \ \ \

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 12 -

FACEBOOK'S SUPPLEMENTAL MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
REQUEST FOR INJUNCTIVE RE
5:08-CV-05780 LHK (JCS)

## IV. CONCLUSION

For the reasons stated, Facebook respectfully requests that the Court issue a permanent injunction enjoining Defendants from the conduct identified in the proposed order lodged concurrently herewith.

Dated: August 1, 2013

ORRICK HERRINGTON & SUTCLIFFE, LLP

By: _____
I. NEEL CHATTERJEE
Attorneys for Plaintiff
FACEBOOK, INC.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

OHSUSA:754217545.3

- 13 -

FACEBOOK'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR INJUNCTIVE RE
5:08-CV-05780 LHK (JCS)