1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

FACEBOOK, INC.,
               Plaintiff,

    v.

POWER VENTURES, INC., a Cayman Island
corporation, and STEVE VACHANI, an
individual,

              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 08-CV-5780-LHK

ORDER DENYING LEAVE TO FILE
MOTION FOR RECONSIDERATION,
FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF
LAW, AND GRANTING DAMAGES
AND PERMANENT INJUNCTIVE
RELIEF

_____

      Defendant Power Ventures, Inc. ("Power Ventures") and Defendant Steve Vachani

("Vachani") (collectively, "Defendants") request leave to file a motion for reconsideration of the

February 16, 2012 summary judgment order issued by Judge James Ware.  Plaintiff, Facebook, Inc.

moves for statutory and compensatory damages, permanent injunctive relief, and a grant of

summary judgment holding that Vachani is personally liable for violations of the Controlling the

Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM ACT"), 15 U.S.C

§ 7701; the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; and California Penal

Code § 502.  Pursuant to Civil Local Rule 7-1(b), the Court finds a hearing unnecessary for

1   resolution of these matters and accordingly VACATES the hearing and case management

2   conference set for September 26, 2013.  Having considered Defendants' papers and the record in

3   this case, Defendants' request for leave to file a motion for reconsideration is DENIED.  Plaintiff's

4   motion for statutory and compensatory damages, motion for permanent injunctive relief, and

5   motion for summary judgment on the issue of Vachani's personal liability are GRANTED.  The

6   Court proceeds to discuss each issue in turn.

7   **I.      BACKGROUND**

8           **A.      Factual Background**

9           Facebook owns and operates the eponymous social networking website located at

10  facebook.com.  First Amended Complaint ("FAC") ¶ 2.  Power Ventures is a corporation

11  incorporated in the Cayman Islands and doing business in California.  Answer ¶ 10.  It operates the

12  website www.power.com, which offers to integrate users' various social media accounts into a

13  single experience.  FAC ¶ 5; Answer ¶ 5.  Vachani is the Chief Executive Officer of power.com.

14  Answer ¶ 11.

15          Facebook brought this action against Defendants in December 2008, alleging violations of

16  the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-

17  SPAM Act"), 15 U.S.C § 7701; the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030;

18  California Penal Code § 502; and the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §

19  1201; copyright infringement under 17 U.S.C. § 101; trademark infringement under 15 U.S.C. §§

20  1114 and 1125(a) and California law; and violations of California Business and Professions Code

21  Section 17200.  ECF Nos. 1, 9.  Facebook complains that Defendants employ Facebook's

22  proprietary data without its permission by inducing Facebook users to provide their login

23  information and then using that information to "scrape" Facebook's proprietary material.  FAC ¶¶

24  49, 50, 52.  Defendants then display Facebook's material on power.com.  FAC ¶ 52.  Facebook

25  asserts that it never gave Defendants permission to use its material in this way.  FAC ¶ 54.

26          Facebook also accuses Defendants of sending unsolicited and deceptive email messages to

27  Facebook users.  FAC ¶¶ 65-69.  To launch their site, Defendants promised power.com users a

28

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

*United States District Court*
*For the Northern District of California*

chance to win $100 if they invited and signed up the most new users to Defendants' site.  FAC ¶ 65.  Defendants provided to their users a list of the users' Facebook friends from which the users could choose people to whom to send the invitation.  FAC ¶ 66.  Power.com sent unsolicited commercial emails to those friends that included on the "from" line a "@facebookmail.com" address.  FAC ¶¶ 66, 68.  The content of the message included a line that the message was from "The Facebook Team."  FAC ¶ 69, 70.  Facebook contends that it never gave permission to send these messages and that the emails were deceptive because they "do not properly identify the initiators of the messages, nor do they provide clear or conspicuous notice that the messages are advertisements for" power.com.  FAC ¶ 71.

### B.    Procedural Background

On February 18, 2011, Judge Ware granted the parties' stipulation to dismiss Facebook's DMCA claim, copyright and trademark infringement claims, and claims for violations of California Business and Professions Code Section 17200.  ECF No. 97.  On May 9, 2011, Defendants moved for summary judgment on Facebook's CFAA, Section 502, and CAN-SPAM Act claims.  ECF No. 98.  On November 17, 2011, Facebook moved for summary judgment on Facebook's § 502 and CFAA claims.  ECF No. 214 ("§ 502/CFAA Motion").  On November 18, 2011, Facebook moved for summary judgment on Facebook's CAN-SPAM Act claim.  ECF No. 215 ("CAN-SPAM Motion").  On February 16, 2012, Judge Ware issued an order denying Defendants' motion for summary judgment and granting summary judgment in Facebook's favor as to Facebook's § 502, CFAA, and CAN-SPAM Act claims.  ECF No. 275 ("February 16 order").

In the February 16 order, Judge Ware requested additional briefing regarding Vachani's individual liability and the amount of damages Facebook should receive in light of the February 16 order.  *Id.* at 19.  On March 30, 2012, Facebook filed its supplemental brief regarding damages and the liability of Vachani.  ECF No. 299 ("Facebook Damages/Liability Brief").  The same day, Defendants lodged with the court a brief regarding damages and the liability of Vachani.  ECF No. 288 ("Defendants' Damages/Liability Brief").  On August 15, 2012, Vachani also submitted a

3

United States District Court
For the Northern District of California

1    supplemental brief regarding damages and his personal liability.  ECF No. 317 ("Vachani

2    Damages/Liability Brief").

3           On June 4, 2012, the attorneys representing Vachani and Power Ventures moved to

4    withdraw as counsel.  ECF Nos. 302, 303.  On July 2, 2012, Judge Ware granted the motions to

5    withdraw.  ECF No. 306.  In the order granting the withdrawal requests, Judge Ware required

6    Vachani and Power Ventures to file Notices of Identification of Substitute Counsel no later than

7    July 17, 2012.  *Id.*  Judge Ware noted that although Vachani could proceed *pro se*, Power Ventures

8    had to be represented by a member of the bar pursuant to Civil L.R. 3-9(b).  *Id.*  Judge Ware

9    cautioned Defendants that a failure to file timely Notices of Identification of Substitute Counsel

10   may result in default of the case.  *Id.*

11          On July 19, 2012, after neither Vachani nor Power Ventures had filed a Notice of

12   Identification of Substitute Counsel, Judge Ware ordered both parties to appear on August 6, 2012

13   to respond to an Order to Show Cause regarding Defendants' failure to obtain counsel.  ECF No.

14   308.  On August 6, 2012, the parties appeared for the hearing, and on August 8, 2012, Judge Ware

15   issued an order regarding Defendants' failure to obtain counsel ("August 8 order").  ECF No. 313.

16   Because Power Ventures had failed to identify replacement counsel, Judge Ware found good cause

17   to strike Power Ventures' answer to Facebook's complaint and enter default against Power

18   Ventures.  *Id.*  Judge Ware permitted Vachani a short extension to find new counsel, which was

19   conditioned on Vachani's immediate filing of a Notice of Self-Representation.  *Id.*   The Clerk

20   entered default against Power Ventures on August 9, 2012.  ECF No. 314.

21          On August 15, 2012, new counsel filed a Notice of Appearance on behalf of Power

22   Ventures.  ECF No. 316.  That same day, Power Ventures moved for leave to file a motion for

23   reconsideration of Judge Ware's August 8 order requiring entry of default against Power Ventures.

24   ECF No. 318.  Judge Ware gave Power Ventures leave to file the motion for reconsideration on

25   August 21, 2012.  ECF No. 320.  On August 23, 2012, Power Ventures filed its motion for

26   reconsideration.  ECF No. 321.  On August 27, 2012, Facebook filed its response and

27   simultaneously requested entry of default judgment against Power Ventures.  ECF No. 322.

28
                                                    4
     Case No.: 08-CV-5780-LHK
     ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
     VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
     RELIEF

United States District Court
For the Northern District of California

1    On August 27, 2012, Defendants provided notice that both Power Ventures and Vachani

2    had filed for bankruptcy.  ECF Nos. 323, 324.  Noting that pursuant to 11 U.S.C. § 362(a)(1), a

3    voluntary petition for bankruptcy operates as an automatic stay of any judicial actions involving the

4    petitioners, Judge Ware stayed the proceedings and administratively closed the case on August 29,

5    2012.  ECF No. 325.  In the same order, Judge Ware denied as premature Power Ventures' motion

6    for reconsideration of the August 8 order requiring entry of default.  *Id.*

7    On March 20, 2013, Facebook notified the Court that the Bankruptcy Court had dismissed

8    Power Ventures' bankruptcy case and had granted Facebook's request for relief from the automatic

9    stay in Vachani's bankruptcy case.  ECF No. 327.  Facebook sought to reopen the case.  *Id.*

10   Facebook also sought reassignment to a new judge because on August 31, 2012, while the

11   automatic stay was in effect, Judge Ware resigned from the bench.  *Id.*  On April 8, 2013, the

12   undersigned judge, as the Duty Judge at the time Facebook filed its motion, granted Facebook's

13   request.  ECF No. 328.  The undersigned judge ordered that the stay be lifted, the case be reopened,

14   and the case be reassigned.  *Id.*  The case then was reassigned to the undersigned judge.  ECF No.

15   329.

16   On April 25, 2013, Vachani moved for clarification of the February 16 order regarding

17   whether Vachani's liability had been determined in the February 16 order.  ECF No. 332.  On April

18   29, 2013, Facebook filed a case management statement in which Facebook again requested that

19   default judgment be entered against Power Ventures.  ECF No. 333.  On the same day, Defendants

20   filed a consolidated case management statement in which Power Ventures again sought to set aside

21   default.  ECF No. 334.  Defendants also stated their intent to request leave to file a motion for

22   reconsideration of the February 16 order.  *Id.*  In Facebook's and Defendants' respective case

23   management statements, the parties acknowledged that Vachani's liability and the issues of

24   damages and injunctive relief still need to be addressed.  ECF No. 333, 334.

25   On May 2, 2013, following a case management conference, the Court issued a case

26   management order.  ECF No. 340.  In that order, the Court clarified that the February 16 order did

27   not decide Vachani's liability.  *Id.*  The Court granted Power Ventures' request to set aside default

28

5

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

1  and denied Facebook's request for entry of default judgment against Power Ventures. *Id.*  The

2  Court also set a briefing schedule for the damages and injunctive relief issues. *Id.* The Court set a

3  hearing date of September 26, 2013 to consider Vachani's liability, as well as the remedies issues.

4  *Id.*

5      On August 1, 2013, Power Ventures filed its request for leave to file a motion to reconsider

6  the February 16 order.  ECF No. 353.  On August 1, 2013, Facebook filed its supplemental

7  memorandum in support of its request for injunctive relief.   ECF No. 354 ("Facebook Injunction

8  Brief").  On August 15, 2013, Defendants filed a response to Facebook's request for injunctive

9  relief.  ECF No. 357 ("Defendants' Inj. Opp.")  On August 22, 2013, Facebook filed its reply.  ECF

10  No. 358 ("Facebook Injunction Reply").[1]

11  **II.    LEGAL STANDARDS**

12  **A.    Motion for Reconsideration**

13      Pursuant to Civil Local Rule 7–9, "[b]efore the entry of a judgment adjudicating all of the

14  claims and the rights and liabilities of all the parties in a case, any party may make a motion before

15  a Judge requesting that the Judge grant the party leave to file a motion for reconsideration of any

16  interlocutory order made by that Judge on any ground set forth in Civil L.R. 7–9(b).  No party may

17  notice a motion for reconsideration without first obtaining leave of Court to file the motion."  Civil

18  Local Rule 7-9(b) provides three grounds for reconsideration of an interlocutory order:

19      (1)    That at the time of the motion for leave, a material difference in fact or
20             law exists from that which was presented to the Court before entry of the
               interlocutory order for which reconsideration is sought. The party also
21             must show that in the exercise of reasonable diligence the party applying
               for reconsideration did not know such fact or law at the time of the
22             interlocutory order; or

---

[1] Vachani has appealed Magistrate Judge Joseph Spero's order granting Facebook fees and costs for Vachani's second Rule 30(b)(6) deposition, which Judge Spero granted because of Defendants' misconduct during discovery.  ECF No. 356 (Order granting fees); ECF No. 360 (Notice of Appeal by Vachani).  Vachani's appeal does not divest this Court of jurisdiction over the issues resolved in this order because the filing of a notice of appeal divests the district court of jurisdiction only over the matters appealed. *Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956 (9th Cir. 1983) ("A notice of appeal only transfers jurisdiction to the appellate court over matters contained in the appeal."); *Donovan v. Mazzola*, 761 F.2d 1411 (9th Cir. 1985) ("Appeal of one order does not necessarily deprive the district court of jurisdiction over issues not raised in that order.").

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

United States District Court
For the Northern District of California

(2)     The emergence of new material facts or a change of law occurring after
the time of such order; or

(3)     A manifest failure by the Court to consider material facts or dispositive
legal arguments which were presented to the Court before such
interlocutory order.

Rule 7-9(c) further requires that "[n]o motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." In general, motions for reconsideration should not be frequently made or freely granted. *See generally Twentieth Century– Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981).

## B.     Summary Judgment Regarding Liability of Vachani

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine disputed issues of material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative," the court may grant summary judgment. *Id.* at 249-50. (citation omitted). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006).

The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 323. It "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 310 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted).

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

United States District Court
For the Northern District of California

1    Once the moving party has satisfied its initial burden of production, the burden shifts to the

2    nonmoving party to show that there is a genuine issue of material fact. *Id.* at 1103.

3    **C.    Permanent Injunctive Relief**

4         A party seeking a permanent injunction must make a four-part showing: (1) that it has

5    suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are

6    inadequate to compensate for that injury; (3) that, considering the balance of hardships between the

7    plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not

8    be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388,

9    390 (2006).

10   **III.    ANALYSIS OF DEFENDANTS' MOTION FOR RECONSIDERATION**

11        Defendants proffer three grounds in support of their request for reconsideration, notably

12   none of which arise out of a material difference in fact or law either at the time the February 16

13   order was issued or in the intervening period.  Defendants instead assert that the February 16 order

14   represents a "manifest failure" to consider "material facts or dispositive legal arguments which

15   were presented" and that the order includes "conclusions of law counter to precedent controlling

16   authorities."  Mot. Recons. at 2.  In support of their position, Defendants argue that (1) the

17   February 16 order incorrectly applied the law by finding that the email messages were materially

18   misleading; (2) the order incorrectly considered the issue of data ownership under the CFAA and §

19   502 claims; and (3) the order incorrectly classified Facebook's damages in determining that

20   Facebook had standing to litigate its claims.  Mot. Recons. at 3.

21   **A.    Materially Misleading Emails**

22        Defendants argue that the February 16 order incorrectly applied the law by finding that the

23   email messages Defendants caused to be sent to Facebook users were materially misleading.

24   Defendants assert that the header information was not materially misleading because within the

25   body of the email, Defendants were identified and because no one complained about being misled.

26   Mot. Recons. at 3-4.

27

28

8

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

To establish liability under the CAN-SPAM Act, Facebook had to establish that Defendants' emails were materially misleading.  15 U.S.C. § 7704(a)(1).  The Act provides that "[i]t is unlawful for any person to initiate the transmission, to a protected computer of a commercial electronic mail message . . . that contains, or is accompanied by, header information that is materially false or materially misleading."  *Id.*  The Act defines "materially" "when used with respect to false or misleading header information" to include:

> the alteration or concealment of header information in a manner that would impair the ability of an Internet access service processing the message on behalf of a recipient, a person alleging a violation of this section, or a law enforcement agency to identify, locate, or respond to a person who initiated the electronic mail message or to investigate the alleged violation, or the ability of a recipient of the message to respond to a person who initiated the electronic message.

15 U.S.C. § 7704(a)(6).

Defendants' arguments fail to meet the standard for reconsideration for three reasons.  First, Defendants presented essentially the same arguments to Judge Ware in their opposition to Facebook's CAN-SPAM Motion.  ECF No. 239.  In Defendants' opposition to the CAN-SPAM Motion, Defendants asserted that the header information was not materially misleading because Facebook in fact had generated the emails and because no one complained about being misled. ECF No. 239 at 11-12.  The significant overlap in the arguments alone warrants denial of Defendants' request.  Moreover, to the extent Defendants failed to present these arguments in Defendants' opposition to Facebook's CAN-SPAM Motion, Defendants have provided no reason why they could not have done so at that time.

Second, Judge Ware considered Defendants' arguments in his order.  In the February 16 order, Judge Ware addressed whether the "from" line in the emails rendered the emails materially misleading as required under the CAN-SPAM Act.  ECF No. 275 at 13.  Judge Ware also addressed Defendants' argument that the body of the email corrected any misrepresentation in the header information.  *Id.*  Judge Ware therefore did not manifestly fail to consider Defendants' legal theories or material facts.

9

1          Third, Judge Ware's consideration of Defendants' argument was not clear error.  The

2   February 16 order correctly states that a false or misleading statement is considered material if "the

3   alteration or concealment of header information" would impair the ability of an Internet Service

4   Provider ("ISP") or the recipient of the email to "identify, locate, or respond to a person who

5   initiated the electronic mail message."  15 U.S.C. § 7704(a)(6).  The parties did not dispute that the

6   "from" line of the emails Defendants caused to be sent listed the address "@facebookmail.com."

7   ECF No. 375 at 13.  Judge Ware found that the "@facebookmail.com" failed to provide the

8   recipient with an ability to identify, locate, or respond to Defendants.  ECF No. 275 at 13.  As a

9   result, Judge Ware concluded that the headers were materially misleading as defined by the statute.

10  *Id.*  Judge Ware did not, as Defendants argue, hold that misleading header information is a per se

11  violation of the CAN-SPAM Act.

12          Defendants have failed to meet their burden for leave to request reconsideration of the

13  February 16 order on this issue.

14  **B.       Violations Under the CFAA and § 502**

15          Defendants next argue that reconsideration of the February 16 order is warranted because

16  Judge Ware failed to address whether the information Defendants took from Facebook had value.

17  Mot. Default J. at 4-5.  Defendants assert that a determination of value was necessary because

18  violations under the CFAA and § 502 require a showing that the taken information had value.  *Id.*

19  The Court first addresses Defendants' CFAA argument.

20          The CFAA prohibits several types of activities involving fraud and unauthorized access to

21  protected computers.  18 U.S.C. § 1030(a)(1)-(7).  The CFAA provides a civil cause of action for a

22  violation of any of its provisions.  Specifically, the CFAA provides that "[a]ny person who suffers

23  damage or loss by reason of a violation of this section [i.e. Section 1030] may maintain a civil

24  action against the violator to obtain compensatory damages and injunctive relief or other equitable

25  relief."  18 U.S.C. § 1030(g).

26          Notably, the CFAA defines "loss" and "damage" separately from the actions prohibited

27  under the CFAA.  *See* 18 U.S.C. § 1030(a)(1)-(7) (describing prohibited activities); § 1030(e)(8)

10

28  Case No.: 08-CV-5780-LHK
    ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
    VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
    RELIEF

1   (defining "damage"); § 1030(e)(11) (defining "loss").  The Court addresses in this section only the

2   violations of the CFAA that serve as the basis of Facebook's CFAA cause of action and addresses

3   the "damage or loss" requirement in Section C below.

4          In Facebook's § 502/CFAA Motion, Facebook alleged that Defendants had violated both

5   18 U.S.C. § 1030(a)(2)(C) and 18 U.S.C. § 1030(a)(4).  Either violation could serve as the basis for

6   Facebook's CFAA cause of action.  Section 1030(a)(2)(C) prohibits a person from "intentionally

7   access[ing] a computer without authorization or exceed[ing] authorized access, and thereby

8   obtain[ing] . . . information from any protected computer."  Section 1030(a)(4) meanwhile

9   prohibits a person from:

10             knowingly and with intent to defraud, access[ing] a protected computer without
               authorization, or exceed[ing] authorized access, and by means of such conduct
11             further[ing] the intended fraud and obtain[ing] anything of value, unless the object
               of the fraud and the thing obtained consists only of the use of the computer and
12             the value of such use is not more than $5,000 in any 1-year period.

13  Notably, while Section 1030(a)(4) prohibits unauthorized access to a protected computer that

14  results in obtaining "anything of value," Section 1030(a)(2)(C) prohibits unauthorized access that

15  results in obtaining only "information."  Thus, Section 1030(a)(2)(C) does not require a showing

16  that the taken information had value.

17         In the February 16 order, Judge Ware determined that Defendants had violated Section

18  1030(a)(2)(C).  ECF No. 275 at 17-18.  In his analysis, Judge Ware found that an admission by

19  Defendants that Defendants had taken, copied, or used data from Facebook's site established that

20  Defendants had "obtain[ed] information" from Facebook, as required to establish a violation under

21  Section 1030(a)(2)(C).  ECF No. 275 at 18.  Because Judge Ware found a violation of the CFAA

22  under Section 1030(a)(2)(C), Judge Ware did not need to address Facebook's alternative argument

23  that Defendants had also violated Section 1030(a)(4), which would require a showing that the taken

24  information had value.  Accordingly, as Defendants correctly point out, Judge Ware in the

25  February 16 order did not explicitly analyze whether the taken information had value.  Thus,

26  Defendants' argument is meritless.  Defendants have not shown that Judge Ware manifestly failed

27  to consider a dispositive legal argument or that Judge Ware clearly erred.

28

11

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

United States District Court
For the Northern District of California

1  Defendants' arguments regarding § 502(c) likewise are unavailing.  Section 502(c)

2  prohibits, among other things, a person from "knowingly access[ing] and without permission

3  tak[ing], cop[ying] or ma[king] use of any data from a computer, computer system or computer

4  network."  Cal. Penal Code § 502(c)(2).  Section 502(e)(1) confers standing for a civil cause of

5  action on an "owner or lessee of the . . . data who suffers damage or loss by reason of a violation of

6  any of the provisions of subdivision (c)."  In Section C below, the Court addresses the "damage or

7  loss" requirement.

8  Judge Ware determined that Defendants' admission established that Defendants had

9  violated § 502(c), and Judge Ware further determined that Facebook had suffered a loss as a result

10  of that violation.  ECF No. 275 at 14-15; ECF No. 89 at 8.  As with Section 1030(a)(2)(C) of the

11  CFAA, the plain language of § 502(c) does not require that any data that was taken be valuable.

12  Defendants offered no case law in their opposition to Facebook's § 502/CFAA Motion and do not

13  offer any case law in this motion suggesting that § 502(c) requires that the data that was taken be

14  valuable.  *See* ECF No. 242 at 4-5; Mot. Default. J. at 5.  Thus, Defendants have not shown that

15  Judge Ware's finding that Defendants were liable under § 502(c) reflects a manifest failure to

16  consider a dispositive legal theory or clear error.

17  Defendants also include a new argument in the motion for leave to seek reconsideration that

18  because Defendants did not destroy any information or data Defendants are not liable under the

19  CFAA or § 502.[2]  Mot. Default J. at 5.  Nothing in the plain language of either Section

20  1030(a)(2)(C) or § 502 requires that taken information be destroyed, and Defendants do not point

21  to any case law suggesting otherwise.  Furthermore, Defendants do not explain why Defendants did

22  not or could not raise the new argument in their opposition to Facebook's § 502/CFAA Motion.

23  The Court thus finds Defendants' new argument is not grounds for leave to request reconsideration.

24  **C.**      **Standing**

25  ───────────────

26  [2] Defendants also assert that Facebook never had ownership over the information and that the
   information did not have proprietary value.  Mot. Recons. at 5.  The Court finds these arguments to
   be duplicative of arguments that Defendants presented to Judge Ware in their opposition to
27  Facebook's Section 502/CFAA Motion.  The Court thus finds these arguments do not constitute
   grounds for leave to seek reconsideration.

28

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

United States District Court
For the Northern District of California

1    Defendants finally argue that Judge Ware erred in finding that Facebook had established

2    sufficient harm to have standing under the CAN-SPAM Act, § 502, and the CFAA.  Mot. Recons.

3    at 5-6.  Defendants have not made the requisite showing to justify reconsidering the February 16

4    order.

5         **1.    CAN-SPAM Act**

6         To recover under the CAN-SPAM Act, Facebook had to establish that it was "adversely

7    affected by a violation of . . . or a pattern or practice that violates" the Act.  15 U.S.C. § 7706(g)(1).

8    In *Gordon v. Virtumundo, Inc.*, the Ninth Circuit held that to be "adversely affected" under the

9    CAN-SPAM Act, an ISP must experience harm that is "both real and the type experienced by

10   ISPs."  575 F.3d 1040, 1053 (9th Cir. 2009).

11        In this motion, Defendants argue that Facebook's harm evidence fails to meet the standard

12   under *Gordon*.  Defendants' argument, however, is recycled from the argument Defendants made

13   before Judge Ware in opposition to Facebook's CAN-SPAM Motion.  In their opposition to the

14   CAN-SPAM Motion, Defendants argued that under *Gordon* Facebook's claimed injuries do not

15   give rise to standing under the statute.  ECF No. 239 at 14-15.  Defendants repeat that argument in

16   this motion.  Accordingly, Defendants have not established that leave for reconsideration is

17   warranted.

18        The Court further finds that Judge Ware considered Defendants' argument in the February

19   16 order.  In his order, Judge Ware addressed *Gordon* and concluded that Facebook's evidence of

20   costs incurred as a result of investigating Defendants' unauthorized access and the legal fees

21   incurred in trying to stop Defendants' unauthorized access sufficed to confer standing on Facebook

22   under the CAN-SPAM Act.  ECF No. 275 at 8-9.  The analysis of *Gordon* and Facebook's

23   evidence in the February 16 order precludes any claim by Defendants that Judge Ware manifestly

24   failed to address either material facts or legal arguments.  *See id.*

25        There is no clear error or manifest injustice in Judge Ware's analysis.  The February 16

26   order describes how Facebook's evidence of injury from having to address Defendants'

27   unauthorized access amounts to the type of specialized harm against which the CAN-SPAM Act

28                                        13

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

United States District Court
For the Northern District of California

protects.  ECF No. 275 at 7-8.  *Gordon* advises that "the threshold of standing should not pose a high bar for the legitimate service operations contemplated by Congress" in instituting the CAN-SPAM Act, and so for "well-recognized ISPs or plainly legitimate [ISPs] . . . adequate harm might be presumed."  575 F.3d at 1055.  In light of that advice, the Court finds no clear error or manifest injustice in Judge Ware's holding.

### 2.   CFAA and § 502

In this motion, Defendants argue that the costs Facebook incurred from investigating Defendants' actions and having Facebook's attorneys respond to Defendants' activities are insufficient to show harm under the CFAA and § 502.

The CFAA defines "loss" as:

> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service[.]

18 U.S.C. § 1030(e)(11).

§ 502(e)(1) in turn provides that:

> the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief. Compensatory damages shall include any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access.

§ 502 does not further define "loss."

Defendants' argument in support of its request for leave to move for reconsideration is unavailing.  First, Defendants raised this argument in the opposition to Facebook's § 502/CFAA Motion.  ECF No. 242 at 11.  To the extent Defendants repeat arguments from their opposition to the § 502/CFAA Motion, Defendants have not established grounds for seeking reconsideration. Defendants add new case law in this motion, but Defendants offer no reasons why they did not or could not present these decisions in Defendants' opposition to Facebook's § 502/CFAA Motion.

14

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE RELIEF

United States District Court
For the Northern District of California

1    Second, Judge Ware addressed Defendants' arguments regarding harm under the CFAA and

2    § 502.  Judge Ware specifically determined that the costs Facebook incurred to block Defendants

3    from the site, to investigate Defendants' activities, and to have its attorneys attempt to stop

4    Defendants from continuing the activities were sufficient to establish loss under the CFAA and §

5    502.  ECF No. 275 at 18; ECF No. 89 at 8.  Defendants therefore cannot assert that the order

6    reflects a manifest failure to consider either material facts or dispositive legal arguments.

7    Third, the Court finds no manifest injustice or clear error in the February 16 order regarding

8    Facebook's "loss" under the CFAA or § 502.  Given that the CFAA explicitly identifies the "cost

9    of responding to an offense" and "conducting a damage assessment" as types of losses for which

10   the CFAA confers standing, the Court finds no clear error in Judge Ware's determination that

11   Facebook's costs meet the definition of "loss" provided by the CFAA.  *See Multiven, Inc. v. Cisco*

12   *Sys., Inc.*, 725 F. Supp. 2d 887, 895 (N.D. Cal. 2010) ("Costs associated with investigating

13   intrusions into a computer network and taking subsequent remedial measures are losses within the

14   meaning of the statute.").  The Court also finds that Judge Ware's determination that Facebook's

15   costs satisfy the "loss" requirement under § 502 is not clear error.  *See Yee v. Lin*, No. C 12-02474

16   WHA, 2012 WL 4343778, at *3 (N.D. Cal. Sept. 20, 2012) (finding that plaintiff's expenses

17   "associated with responding" to defendant's unauthorized access were sufficient to meet loss

18   requirement under § 502).

19   The Court further finds no manifest injustice or clear error in the February 16 order based

20   on Defendants' late-added case law.  *See AtPac, Inc. v. Aptitude Solutions, Inc.*, 730 F. Supp. 2d

21   1174, 1184 (E.D. Cal. 2010) (noting that under the CFAA, "[c]ognizable costs also include the

22   costs associated with assessing a hacked system for damage"); *Farmers Insurance Exchange v.*

23   *Steele Insurance Agency, Inc.*, No. 2:13-cv-00784-MCE-DAD, 2013 WL 3872950, at *21 (E.D.

24   Cal. July 25, 2013) (same).

25   Defendants have not established that leave to request reconsideration of the February 16

26   order is warranted.

27

28
     15

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.    STEVEN VACHANI'S PERSONAL LIABILITY FOR VIOLATIONS OF THE CAN-SPAM ACT, CFAA, AND CALIFORNIA PENAL CODE § 502

The next issue before the Court is whether there is a genuine issue of material fact as to whether Defendant Steve Vachani, who was CEO of Power Ventures during the time period in question, is personally liable for statutory violations of the CAN-SPAM Act, CFAA, and California Penal Code § 502.  For the reasons explained below, the Court concludes Vachani is personally liable as a matter of law and is thus jointly and severally liable with Power Ventures for violations of these statutory provisions.

Before analyzing Vachani's personal liability, the Court first summarizes this Court's previous findings regarding the precise conduct by Power Ventures that led to Judge Ware's finding of Power Venture's liability under the CAN-SPAM Act, CFAA, and California Penal Code § 502.  *See* ECF No. 275.  The Court first held that Power Ventures, by creating the Launch Promotion and the software that caused Facebook's servers to send out the misleading emails with "@facebookmail.com" addresses to Facebook users, violated the provision of the CAN-SPAM Act which makes it unlawful "for any person to initiate the transmission, to a protected computer, of a commercial electronic mail message, or a transactional or relationship message, that contains, or is accompanied by, header information that is materially false or misleading," 15 U.S.C. § 7704(a)(1).  ECF No. 275 at 9-14.  Second, the Court held that Power Ventures, by intentionally circumventing technical barriers to take, copy, or make use of data from the Facebook website without permission, violated California Penal Code § 502, which provides that a person is guilty of a public offense if he (1) knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network; (2) knowingly and without permission uses or causes to be used computer services; or (3) knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network. California Penal Code §§ 502(c)(2)(3) & (7).  ECF No. 275 at 14-17.  Third, the Court held that Power Ventures, by accessing Facebook without authorization, and obtaining information from the Facebook website, violated the provision of CFAA that imposes liability on any party that "intentionally accesses a computer without authorization or exceeds authorized access, and thereby

16

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE RELIEF

United States District Court
For the Northern District of California

1    obtains . . . information from any protected computer," 18 U.S.C. § 1030(a)(2)(C).  ECF No. 275 at

2    17-19.

3           The Court must decide whether Vachani should be held personally liable for violating these

4    statutory provisions.  The Ninth Circuit has held that "a corporate officer or director is, in general,

5    personally liable for all torts which he authorizes or directs or in which he participates,

6    notwithstanding that he acted as an agent of the corporation and not on his own behalf."  *Comm.*

7    *for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996) (quoting *Transgo, Inc. v.*

8    *Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985)).  "Cases which have found

9    personal liability on the part of corporate officers have typically involved instances where the

10   defendant was the 'guiding spirit' behind the wrongful conduct, . . . or the 'central figure' in the

11   challenged corporate activity."  *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 523 n.10 (9th Cir.

12   1989).  Under such circumstances, both the corporation and the officers or directors who

13   participated in the tortious conduct may be held liable.  *See Moseley v. U.S. Appliance Corp.*, 155

14   F.2d 25, 27 (9th Cir. 1946).  Thus, where an officer authorized, directed, or participated in a

15   corporation's tort or statutory violation, the officer can be held personally liable.  *See United States*

16   *v. Reis*, 366 Fed. Appx. 781, 782 (9th Cir. 2010) (finding personal liability where corporate officer

17   was an active participant in the acts giving rise to corporate liability under the Resource

18   Conservation and Recovery Act); *Dish Network, LLC v. Sonicview USA, Inc.*, 2012 WL 1965279,

19   at *11 (S.D. Cal. May 31, 2012), *reconsideration denied*, 2012 WL 4339047 (finding personal

20   liability of several corporate officers who were the "guiding spirits" of the corporation's statutory

21   violations of the Digital Millennium Copyright Act and the Federal Communications Act).

22          In this case, the Court must assess whether there is a genuine issue of material fact as to

23   whether Vachani directed and authorized the specific activities giving rise to Power Ventures'

24   liability to a degree that reflects more than simply his supervisory role as CEO of the company.

25   More specifically, the Court assesses whether he was a "guiding spirit" or "central figure" in Power

26

27

28
                                                    17
     Case No.: 08-CV-5780-LHK
     ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
     VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
     RELIEF

United States District Court
For the Northern District of California

1   Venture's unlawful access to and use of the Facebook website.[3]  *Davis*, 885 F.2d at 523 n.10.

2   Again, the unlawful activities that led to Power Venture's liability under the three relevant statutes

3   were 1) creating the Launch Promotion and the software that caused Facebook's servers to send out

4   the misleading emails to Facebook users; 2) circumventing technical barriers to take, copy, or make

5   use of data from the Facebook website without permission; 3) accessing Facebook without

6   authorization and obtaining information from the Facebook website without authorization.  ECF

7   No. 275 at 9-19.  Drawing all reasonable inferences in the light most favorable to Vachani, the

8   Court concludes that the undisputed facts prove that Vachani authorized and directed these

9   activities.

10          First, with respect to the creation of the Launch Promotion[4] and the software through which

11  Power Ventures caused Facebook's servers to send out the misleading emails to Facebook users,

12  Vachani admitted he was "controlling and directing [Power's] activities as it related to Facebook,"

13  including "controlling and directing the activities related to the use of the Power 100 campaign in

14  conjunction with Facebook users."  ECF No. 299-3 at 27.  Vachani also admitted that the Power

15  100 Campaign was his very own idea, ECF No. 229 at 7, and Defendants admit he managed the

16  campaign's implementation.  ECF No. 232-2 at 5-6 (Power Venture's Response to Interrogatories,

17  noting Vachani was the "director responsible for developing the technology to allow Power or

18  Power users to continue to access the Facebook website following Facebook's IP blocking" and for

19

20  [3] The Court notes that Facebook does not argue an alter ego theory; namely, it does not ask the
Court to pierce the corporate veil in order to hold Vachani liable.  In any event, courts have held
21  that where officers direct, order, or participate in the company's tortious conduct, there is no need
to pierce the corporate veil to establish the personal liability of the corporate officer. *Chase Inv.*
22  *Servs. Corp. v. Law Offices of Jon Divens & Assocs.*, No. 09–9152, 2010 WL 4056022, at *28
(C.D .Cal. Oct. 14, 2010) ("This principle applies regardless of the piercing of the corporate veil.")
23  [4] Around December 2008, Power Ventures began integrating with Facebook by allowing users to
enter their Facebook account information and access the Facebook site through Power.com.  FAC ¶
24  49-50; Answer ¶ 49-50.  Later, Power Ventures initiated a "Launch Promotion," or the Power 100
Campaign, that promised Power Venture's users the chance to win a $100 award if they invited and
25  signed up new users. FAC ¶ 65; Answer ¶ 65.  Power Ventures gave existing users a list of their
Facebook friends Power Ventures had obtained from Facebook, and users had to select the friends
26  who would receive a Power Ventures invitation, which would contain a "@facebookmail.com"
sender address.  *Id. ¶* 66-68; *Id.* ¶ 66-68.
27
                                                         18
28  Case No.: 08-CV-5780-LHK
    ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
    VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
    RELIEF

1    "creating the email messages sent to Facebook users asking Facebook users to use the Power

2    website to access the Facebook website").[5]  Given these admissions, the Court finds there is no

3    genuine dispute regarding whether Vachani actually led the effort to create the Launch Promotion

4    and to develop the software behind Power Venture's illegal actions.

5           Second, with respect to Power Venture's circumvention of Facebook's technical barriers to

6    take, copy, or make use of data from the Facebook website without permission, the undisputed

7    facts show that Vachani anticipated Facebook's attempts to block Power Venture's access and

8    oversaw the implementation of a system that would be immune to such technical barriers so that

9    Power Ventures could access Facebook's network.  Vachani admitted that he directed the

10   company's decision to circumvent Facebook's blocks of Power Venture's IP addresses.  ECF No.

11   299-3 at 6-7 (Vachani deposition in which he admits he "was the person making the executive

12   decision . . . to ensure that Facebook could not block Power.com"); ECF No. 299-3 at 28-29

13   (Vachani deposition admitting he controlled and directed employees' activities related to ensuring

14   that Power Ventures continued to have access to Facebook); *see also* ECF No. 232-2 at 5-6 (Power

15   Venture's Response to Interrogatories noting that Vachani was the "director responsible for

16   developing the technology to allow Power or Power users to continue to access the Facebook

17   website following Facebook's IP blocking").  There is also other evidence that Vachani instructed

18   employees to circumvent the blocks he anticipated.  ECF No. 236-6 at 2 (Email from Vachani to

19   staff members stating that "we need to be prepared for Facebook to try and block us . . ."); ECF

20   No. 299-5 at 2 (Email from Vachani to employee noting, "please just make sure they cannot block

21   us").[6]

22          Third, with respect to *obtaining* information from the Facebook website without

23   authorization, Defendants admitted that they "took, copied, or made use of data from the Facebook

---

24   [5]  Defendants also admitted to the court in other papers that Vachani has "been personally involved
25   in all of Power's operations including the Facebook integration that occurred in December 2008
     that gave rise to this litigation."  ECF No. 269 at 7 (response to Judge Joseph Spero regarding
26   discovery dispute in this litigation).
     [6]  There is evidence that Vachani took other actions himself as well.  ECF No. 299-3 at 8-9
27   (Vachani admitting he sent Facebook an email informing Facebook that Power Ventures would
     continue to try to access Facebook's services despite Facebook's request that the company stop).

28
     Case No.: 08-CV-5780-LHK
     ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
     VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
     RELIEF

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   website without Facebook's permission to do so."  ECF No. 241-3 at 6 (Defendants' Reponses to

2   Interrogatories).  Vachani's admission that he controlled and directed "the activities related to the

3   use of the Power 100 campaign in conjunction with Facebook users," ECF No. 299-3 at 27,

4   suffices to show that there is no genuine dispute regarding whether he led the company's quest to

5   obtain proprietary Facebook information, as that information was a necessary ingredient to the

6   Power 100 Campaign.  Ultimately, the Court concludes that these uncontroverted facts demonstrate

7   Vachani was the "guiding spirit" behind Power Venture's efforts to send the misleading spam

8   emails to Facebook users, and thus should be held personally liable.

9         Defendants' arguments to the contrary are unpersuasive.  First, Defendants concede that

10  corporate officers may be held liable for torts they authorize or direct, *see* Defendants'

11  Damages/Liability Brief at 4-5, but claim that "corporate executives like Vachani cannot be held

12  liable merely by virtue of their office for the torts of the corporation." *Id*. at 5.  This argument

13  neglects to take into consideration Vachani's specific acts with respect to the Power 100 Campaign

14  that went above and beyond his merely advisory role as CEO of the company.  Second, Defendants

15  note that "there is no precedent for holding a CEO liable in this type of computer fraud and tort

16  action where the CEO is not the exclusive owner or director . . ."  Defendants' Inj. Opp. at 6.

17  Vachani himself similarly argues he was never the sole owner, controlling shareholder, or

18  controlling board member of Power Ventures, which he claims had six other executive officers and

19  multiple board members who had significant influence in decision-making as well.  *See* Vachani

20  Damages/Liability Brief at 5-7, 15.  It is true that the cases holding corporate officers personally

21  liable for violations of CFAA, CAN-SPAM, or California Penal Code § 502 have involved factual

22  situations in which the officer was either the *sole* officer or a majority shareholder of the company

23  or some combination of both.  *F.T.C. v. Sili Neutraceauticals, L.L.C.*, No. 07-C-4541, 2008 WL

24  474116, at *3 (N.D. Ill. Jan. 23, 2008) (finding that sole officer of defendant corporation who

25  formulated, directed, and controlled the acts giving rise to CAN-SPAM liability by the corporation

26  was individually liable under CAN-SPAM); *Facebook v. Fisher*, No. C 09-05842, 2011 WL

27  250395 (N.D. Cal. Jan. 26, 2011) (finding that sole officer of defendant corporation who conducted

28
                                             20
   Case No.: 08-CV-5780-LHK
   ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
   VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
   RELIEF

the acts giving rise to CAN-SPAM and CFAA liability by the corporation was individually liable under CAN-SPAM and CFAA); *Hanger Prosthetics &Orthotics, Inc., v. Capstone Orthopedic Inc.*, 556 F.Supp.2d 1122, 1134035 (E.D. Cal. 2008) (denying motion for summary judgment on CFAA and California Penal Code § 502 claims against CEO where CEO owned one third of the corporation and a reasonable jury could infer that he authorized and directed the unlawful acts). However, Defendants fail to argue why an officer's majority shareholder status or sole officer position should make any difference to the liability outcome, especially given clear Ninth Circuit law in various other statutory contexts that holds corporate officers liable regardless of whether they are majority shareholders or sole officers.  *See, e.g.*, *Coastal Abstract Serv. Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (holding officer of insurance company personally liable for violations of the Lanham Act despite the fact that he was acting as a corporate agent when committing the illegal conduct, without any discussion of his shareholder status). Accordingly, given the overwhelming evidence of Vachani's personal involvement in the unlawful acts leading to the statutory violations in this case, Defendants have failed to show that there is a genuine disputed issue of material fact concerning Vachani's personal liability, and the Court finds Vachani personally liable as a matter of law for violations of CAN-SPAM, CFAA, and California Penal Code § 502.

## V.     DAMAGES

In its memorandum in support of its request for injunctive relief, Facebook expressly waives its entitlement to attorneys' fees under the CFAA and its right to exemplary damages under California Penal Code § 502.  Facebook Inj. Brief at 2.[7]  However, Facebook seeks statutory damages under CAN-SPAM, asks the Court to treble damages, and also seeks compensatory damages under either CFAA or California Penal Code § 502.  *Id.* at 1-13.

## A.     Facebook is entitled to damages under the CAN-SPAM ACT

---

[7] Facebook had previously requested punitive damages under Penal Code § 502.  Facebook's Damages/Liability Brief at 10.

21

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE RELIEF

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Under the CAN–SPAM Act, a plaintiff may elect to recover monetary damages in an

2    amount equal to the greater of actual losses or statutory damages.  15 U.S.C. § 7706(g)(1)(B).

3    Facebook elects to recover statutory damages.  It is well established that "[a] plaintiff may elect

4    statutory damages regardless of the adequacy of the evidence offered as to his actual damages and

5    the amount of the defendant's profits . . . and if statutory damages are elected, the court has wide

6    discretion in determining the amount of statutory damages to be awarded, constrained only by the

7    specified maxima and minima."  *Facebook v. Wallace*, No. 09-798, 2009 WL 3617789, at *2 (N.D.

8    Cal. Oct. 29, 2009) (citation omitted) (internal quotations omitted).  However, a statutory damages

9    award may violate the due process rights of a defendant "where the penalty prescribed is so severe

10   and oppressive as to be wholly disproportioned to the offense and obviously unreasonable."

11   *United States v. Citrin*, 972 F.2d 1044, 1051 (9th Cir. 1992) (citation omitted).

12         CAN–SPAM Act statutory damages are calculated as follows:

13   (3) Statutory damages.

14

15   (A) In general. For purposes of paragraph (1)(B)(ii), the amount determined under this paragraph is
     the amount calculated by multiplying the number of violations (with each separately addressed
16   unlawful message that is transmitted or attempted to be transmitted over the facilities of the
     provider of Internet access service, or that is transmitted or attempted to be transmitted to an
17   electronic mail address obtained from the provider of Internet access service in violation of section
     5(b)(1)(A)(i) [15 USCS § 7704(b)(1)(A)(i) ], treated as a separate violation) by—

18
19         (i) up to $ 100, in the case of a violation of section 5(a)(1) [15 USC § 7704(a)(1)]; or
           (ii) up to $ 25, in the case of any other violation of section 5 [15 USC § 7704].

20
21   (B) Limitation. For any violation of section 5 [15 USCS §7704] (other than section 5(a)(1) [15
     USC 7704(a)(1) ]), the amount determined under subparagraph (A) may not exceed $ 1,000,000.

22   (C) Aggravated damages. The court may increase a damage award to an amount equal to not more
     than three times the amount otherwise available under this paragraph if—
23

24         (i) the court determines that the defendant committed the violation willfully and knowingly;
           or
25         (ii) the defendant's unlawful activity included one or more of the aggravated violations set
           forth in section 5(b) [15 USC § 7704(b)].

26
27   15 U.S.C. § 7706(g)(3).

28
                                          22

United States District Court
For the Northern District of California

1    In this case, Facebook seeks to recover statutory damages pursuant to 15 U.S.C. §

2    7706(g)(3)(A)(i), which are calculated by multiplying the number of Header violations by up to

3    $100.[8]   The Court has already determined Defendants are liable for violating 15 U.S.C. §

4    7704(a)(1) because they initiated "a minimum of 60,000 instances of spamming."  ECF No. 275 at

5    9.  Facebook thus argues it is entitled to the maximum statutory damages of 100 dollars for each of

6    the 60,627 spam messages Defendants sent to Facebook users.  Facebook Damages/Liability Brief

7    at 2.  In its briefing, Defendants do not appear to contest the fact that they sent 60,627 email

8    messages.  Defendants' Damages/Liability Brief at 2-4.  Facebook argues that the maximum is

9    warranted because Defendants committed "egregious" actions by "designing their spamming

10   campaign to ensure that it would continue notwithstanding any actions Facebook took to stop it"

11   and "us[ing] cash payments to induce third parties to send deceptive electronic messages."  *Id.* at 2-

12   3.  Indeed, Defendants undisputedly utilized the incentive of monetary payments as a means to

13   access Facebook users' accounts.  FAC ¶¶ 66-70; Answer ¶¶ 66-70 (noting how Power's "Launch

14   Promotion" offered site users 100 dollars if they successfully invited and signed up the most new

15   Power.com users").  Defendants also undisputedly designed a system that would circumvent

16   Facebook's blocking efforts.  ECF No. 232-2 at 5-6 (Power Venture's Response to Interrogatories

17   answering that they "develop[ed] the technology to allow Power or Power users to continue to

18   access the Facebook website following Facebook's IP blocking").[9]  Facebook also asks the Court

---

[8] Under the CAN-SPAM Act, each message is considered a separate violation.  15 U.S.C.
§ 7706(g)(3)(i).

[9] Facebook also argues that Defendants' actions were "egregious" because they "destroyed
evidence necessary to establish exactly how many messages, above the 60,627, they initiated."
Facebook Damages/Liability Brief at 2-3.  There is some evidence that Defendants did in fact
delete evidence relevant to this lawsuit.  Facebook's source code expert testified that a database
called "Power_Logger" was one of two databases that should have recorded information about how
many emails were sent to Facebook users throughout the Power 100 campaign.  ECF No. 217 at ¶
31-34.  Defendants admitted that they deleted the Power_Logger database in April 2011.  ECF No.
299-15 at 4-5 (Vachani admitting he made the decision to delete the database).  *See also* ECF No.
220 at 12 (engineer's declaration in support of Facebook's opposition to Defendants' motion for
summary judgment noting that "by deleting the Power_Logger database, Defendants effectively
erased arguably the most relevant and useful information concerning the number of electronic mail
messages that Defendants initiated through execution of their PowerScript software associated with
the 100x100x100 campaign."); ECF No. 299-36 at 3 (Email from Defendants' counsel answering

23

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

United States District Court
For the Northern District of California

to treble the damages, contending that Defendants willfully and knowingly sent the deceptive spam messages to Facebook users.  *Id.* at 8-9.[10]  The record supports Facebook's contention that Defendants acted knowingly and willfully, *see e.g.* ECF No. 232-2 at 5-6 (Power's Response to Interrogatories answering that Vachani was "responsible for developing the technology to allow Power or Power users to continue to access the Facebook website following Facebook's IP blocking" and for "creating the email messages sent to Facebook users asking Facebook users to use the Power website to access the Facebook website").

In light of this evidence, the Court finds that a statutory damages award is warranted in this case.  While Defendants argue that the Court should not award any damages under the CAN-SPAM Act because Facebook did not suffer "any specific harm" as a result of the email messages, citing *Gordon v. Virtumundo Inc.*, 575 F.3d 1040 (9th Cir. 2009), *see* Defendants' Damages/Liability Brief at 1-2, this argument fails for two reasons.  First, this Court has already determined that under *Gordon*, Facebook has shown that it was "adversely affected" by Defendants' actions within the meaning of the CAN-SPAM Act.  ECF No. 275 at 8-9.  Second, *Gordon* is inapposite here because it deals with whether a plaintiff has standing to bring a claim under the CAN-SPAM Act as opposed to whether the plaintiff deserves damages once liability under the Act has been determined, as in this case.[11]  Nonetheless, exercising its broad discretion to determine an appropriate damages award, the Court finds that the $18,000,000 award requested by Facebook is unnecessary to address the deterrent and punitive purposes of a statutory damages award.  Without deciding whether the requested $18,000,000 award would violate Defendants' due

---

Plaintiff's counsel's request to identify the "missing databases related to the number of Launch Promotion messages that were sent to Facebook users" and stating that the Power_Logger database, which logs the activities on Power Venture's servers, has "missing tables" because Defendant chose not to back up those large files after it ceased operations and closed its server).

[10] A court may treble damages under the CAN-SPAM Act where (1) the court determines that the defendant committed the violation willfully and knowingly; or (2) the defendant's unlawful activity included one or more of the aggravated violations in §7704(b).  15 U.S.C. § 7706(f)(3)(C).

[11] Defendant Vachani's own arguments against damages, namely that a damages decision could deter innovation and that "creating CAN-SPAM liability . . . would be unprecedented," are similarly unavailing.  Vachani Damages/Liability Brief at 12-13.  This Court has already found that he is liable, *see supra*, Part IV, and more importantly, damages, not liability, are at issue here.

24

United States District Court
For the Northern District of California

1   process rights, the Court declines to award that amount and finds it sufficient to award $50 per

2   email communication that was sent.  This decision is consistent with other cases where courts have

3   declined to award the maximum statutory damages of $100 per violation, instead granting awards

4   of either $50 or $25 per violation of the CAN-SPAM Act.  *See Fisher*, 2011 WL 250395 (awarding

5   plaintiffs $50 per violation of the CAN-SPAM Act); *Wallace*, 2009 WL 3617789 at *2 (same);

6   *Tagged, Inc. v. Does 1 through 10*, No. C 09–01713, 2010 WL 370331 (N.D. Cal. Jan. 25. 2010)

7   (awarding plaintiffs only $25 for each of 6,079 spam emails in violation of CAN-SPAM Act in

8   case where, unlike the instant case, *see supra* n.9, there was no evidence Defendants had actively

9   deleted relevant database information to conceal the number of spam messages sent).  Thus,

10  Facebook will be granted $50 per email communication that was sent.  It will be awarded

11  $ 3,031,350 ($50 for each of the estimated 60,627 spam messages sent) in CAN–SPAM damages.

12          The Court also finds trebling unnecessary given the large size of the primary award amount.

13  This finding is consistent with past cases where, despite defendants' willful and knowing violation

14  of the statutes in question, courts refused to treble damages.  *See Fisher*, 2011 WL 250395 (holding

15  that although defendants willfully and knowingly violated the statutes by engaging in the

16  circumvention of Facebook's security measures, the requested maximum statutory award was

17  disproportionate to the gravity of defendants' acts, and thus the court awarded plaintiffs $50 per

18  violation and declined to treble damages); *Wallace*, 2009 WL 3617789 at *2 (holding that although

19  defendant "willfully violated the statutes in question with blatant disregard for the rights of

20  Facebook and the thousands of Facebook users whose accounts were compromised by his

21  conduct," and even violated a temporary restraining order and preliminary injunction, the requested

22  maximum statutory award was not merited and the court awarded plaintiffs $50 per violation and

23  declined to treble damages); *Tagged*, 2010 WL 370331 (awarding $25 for each of 6,079 spam

24  emails for a total amount of $151,975 and declining to treble damages because although

25  defendant's violations were allegedly intentional and willful, a $2,000,000 award was not

26

27

28

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

justified).[12]  Ultimately, a statutory damages award of $3,031,350 along with a permanent

injunction which this Court grants, *see infra* Part VI, will adequately serve the purpose of

punishment and deterrence in this case.

**B.      Facebook is entitled to compensatory damages under the CFAA**

Under the CFAA, "[a]ny person who suffers damage or loss by reason of a violation of this

section may maintain a civil action against the violator to obtain *compensatory* damages and

injunctive relief or other equitable relief."  18 U.S.C. § 1030(g) (emphasis added).  This Court

previously held that Facebook suffered "loss" as a result of Defendants' violation of CFAA.  ECF

No. 275 at 18.  Facebook is thus entitled to recover compensatory damages under the statute.

Facebook has established through undisputed testimony[13] that it expended            to investigate

Defendants' actions and for outside legal services in connection with the Defendants' actions.

Accordingly, this Court grants Facebook compensatory damages in the amount of $        .

Defendants' arguments against a grant of compensatory damages are unavailing.  Defendants argue

that Facebook "makes no effort to quantify any real harm it suffered" or "identify anything that

Power misappropriated from Facebook's network."  Defendants' Damages/Liability Brief at 3.

Again, these arguments are irrelevant as they address issues on the merits that have already been

---

[12] Facebook cites two default judgment orders in support of its request for $18,000,000.  Facebook
Damages/Liability Brief at 2-3.  In *Facebook v. Guerbuez*, No. C 08–03889 (N.D. Cal. Nov. 21,
2008), Facebook was awarded $873 million against a defendant who sent four million spam emails
to other Facebook users.  In *Myspace v. Wallace*, 2008 U.S. Dist. LEXIS 75752 (C.D. Cal. May 28,
2008), Myspace was awarded $223 million against a defendant who had sent nearly 400,000
messages and posted 890,000 comments from 320,000 Myspace.com user accounts which were
"hijacked."  Here, in contrast, Defendants sent an estimated 60,627 individual emails.
Accordingly, the Court concludes that it is just to award $3,031,350.  Further, even if, as Facebook
asserts, there are "tens of thousands of additional messages that Defendants littered through
Facebook that cannot be accounted for in the damages calculation" due to Defendants' alleged
destruction of the relevant database information, *see* Facebook Damages/Liability Brief at 6, the
Court finds that a $3,031,350 award is sufficient, as courts in this district have granted awards
proportionate to this award for similar violations.  *See Tagged*, 2010 WL 370331 (awarding
plaintiff $151,975 for 6,079 emails that violated the CAN-SPAM Act where defendants' actions
were intentional and willful and where defendant circumvented plaintiff's security measures like in
this case).
[13] This Court previously recognized that "Defendants do not dispute the accuracy or veracity of
[the] evidence of [Facebook's] expenditures."  ECF No. 275 at 8.  Indeed, Defendants never filed a
rebuttal brief to Facebook's expert report regarding the monetary damages Facebook incurred.
ECF No. 299-26 (Expert Report of Richard Ostiller).

26

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

1    decided; this Court previously found that Facebook *did* incur a "loss" under CFAA, and that Power

2    Ventures *did* obtain information from Facebook without permission.  ECF No. 275 at 18.[14]

## VI.    PERMANENT INJUNCTIVE RELIEF

Facebook moves for permanent injunctive relief to prevent future statutory violations by

Defendants Vachani and Power Ventures.  The CAN–SPAM Act authorizes the Court to grant a

permanent injunction "to enjoin further violation by the defendant."  15 U.S.C. § 7706(g)(1)(A).

Likewise, the CFAA provides that "[a]ny person who suffers damage or loss by reason of a

violation of [§1030] may maintain a civil action against the violator to obtain compensatory

damages and injunctive relief or other equitable relief."  18 U.S.C.A. § 1030(g).  California Penal

Code § 502 also allows a plaintiff to obtain injunctive relief.  California Penal Code § 502(e)(1).

A party seeking a permanent injunction must make a four-part showing: (1) that it has

suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are

inadequate to compensate for that injury; (3) that, considering the balance of hardships between the

plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not

be disserved by a permanent injunction.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388,

390 (2006).[15]  The Court has discretion to grant or deny permanent injunctive relief.  *Id.* at 391.

_____

[14] As the Court decides to grant Facebook compensatory damages under CFAA, the Court need not and does not analyze Facebook's alternative argument that Facebook deserves compensatory damages under California Penal Code Section 502(e)(1).  Facebook's Damages/Liability Brief at 9.
[15] Defendants cite Ninth Circuit law holding that when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief, future violations are presumed once a statutory violation is shown and the standard requirements for equitable relief need not be satisfied before an injunction is granted.  Facebook Inj. Brief at 6 (citing *Silver Sage Partners, LTD v. City of Desert Hot Springs*, 251 F.3d 814, 826-27 (9th Cir. 2001) (Fair Housing Act context).  The Court notes that although some courts have granted statutory injunctions in similar contexts without analyzing the traditional four factor test, *see Tagged,* 2010 WL 370331(CFAA and California Penal Code §502); *Fisher,* 2011 WL 250395 (CAN-SPAM Act and CFAA context), this Court declines to do so in light of Supreme Court authority reemphasizing the traditional four factor test.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-93 (2006) ("According to well established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief" and noting that the Supreme Court "has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed.")

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

United States District Court
For the Northern District of California

1    The Court will consider each of these factors in turn, and will then consider whether, on balance,

2    the principles of equity support the issuance of a permanent injunction in this case.[16]

3    **A.    Irreparable Harm**

4            Facebook has shown irreparable injury as a result of Defendants' violations of the law.

5    Judge Ware's previous order granting Facebook summary judgment cited undisputed evidence that

6    Defendants created a software program to access Facebook's website, scraped user information

7    from Facebook, repeatedly changed Power Venture's IP address in order to circumvent technical

8    barriers Facebook had installed, and used that information to cause Facebook's servers to send

9    spam emails to Facebook users with "@facebookmail.com" mailing addresses.  ECF No. 275 at 9-

10   13.  These activities constituted irreparable harm by harming Facebook's goodwill with its users

11   because Facebook users receiving these emails are likely to associate the spam messages with

12   Facebook.  ECF No. 213 at ¶¶ 4-5.  *Hotmail Corp. v. Van$ Money Pie Inc.*, 1998 U.S. Dist. LEXIS

13   10729, at *20-21 (N.D. Cal. Apr. 16, 1998) (holding that customer confusion from source of spam

14   emails, which can lead to loss of goodwill, constituted irreparable harm to plaintiff); *Meineke Car*

15   *Care Centers, Inc. v. Quinones*, 2006 WL 1549708, *3 (W.D.N.C. 2006) (finding, in preliminary

16   injunction context, that possible loss in customers resulting from defendants' deceptive suggestion

17   that they were associated with plaintiff constituted irreparable harm).  While Defendants argue that

18   Facebook has not produced evidence that its reputation or goodwill with its users has been

19   damaged as a result of Defendants' activities, *see* Defendants' Inj. Opp. at 5, 9, Defendants cite no

20   case law suggesting that such specific and direct evidence is needed to prove harm to goodwill.

21   *C.f. Optinrealbig.com, LLC v. Ironport Sys., Inc.*, 323 F.Supp.2d 1037, 1050 (N.D. Cal. 2004)

22   (emphasis added) ("Damage to a business' goodwill is typically an irreparable injury because it is

23   ─────────────

[16] Facebook objects to Vachani's declaration submitted in support of Defendants' Opposition to
24   Injunctive Relief on the grounds that Vachani lacks personal knowledge for his various
     conclusions, including whether Facebook received any complaints about Defendants' conduct, and
25   because he is not competent to testify regarding the various legal conclusions he makes, such as
     claiming "Power did not obtain [anything] . . . of value from Facebook."  ECF No. 357-1;
26   Facebook Injunction Brief at 2.  For purposes of this Order only, the Court finds that Vachani's
     lack of qualifications and personal knowledge affect the weight his testimony should be accorded
27   and not its admissibility.  Thus, Facebook's objection is OVERRULED.

28                                                         28
     Case No.: 08-CV-5780-LHK
     ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
     VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
     RELIEF

1    *difficult to calculate*"); *see also Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 17 (1st

2    Cir. 2004) (rejecting argument that "only *direct* evidence (with no room for inference) may

3    establish harm to goodwill" in the trademark law context).[17]   As Facebook has shown irreparable

4    harm, this factor weighs in favor of a permanent injunction.

5    **B.       Inadequacy of Money Damages**

6             Facebook has established that "remedies available at law, such as monetary damages, are

7    inadequate to compensate for [its] injury," *eBay*, 547 U.S. at 391, for three reasons.  First, money

8    damages will not ensure that Defendants will not take steps again in the future to spam Facebook

9    users, which is a possibility.  Defendants may still possess the software that enabled their illegal

10   activities, and like in other cases in this district, Defendants also "deliberately implemented other

11   tactics to circumvent plaintiff's security measures."  *Tagged*, 2010 WL 370331, at *12.

12   Defendants may even still possess Facebook-user data which they misappropriated.  Because there

13   is a "reasonable likelihood of defendant's future violations," injunctive relief is warranted.  *Id;*

14   *Pyro Spectaculars North Inc. v. Souza*, 861 F.Supp.2d 1079, 1092 (E.D. Cal. March 21, 2012)

15   (granting injunction in part because defendant still possessed plaintiff's data).  Second, money

16   damages will not compensate for the loss of goodwill Facebook may have suffered due to any

17   confusion created by Defendants' emails. *See Hotmail*, 1998 U.S. Dist. at *21 (holding that loss of

18   goodwill caused by confusion generated by misleading spam emails "is not easily quantified and

19   not adequately compensated with money damages.").  Last, the Ninth Circuit has held that a district

20   court has authority to issue an injunction "where the plaintiffs can establish that money damages

21   will be an inadequate remedy due to impending insolvency of the defendant . . ." *In re Estate of*

22   *Marcos*, 25 F.3d 1467 (9th Cir. 1994).  Here, Defendants' voluntary petitions for bankruptcy, *see*

23

[17]  Defendants also argue Facebook has not shown irreparable harm because Facebook has failed to
24   submit proof of user complaints about the spam messages.  Defendants' Inj. Opp. at 9.  However,
     Facebook has provided evidence that in general, deceptive spam messages detract from Facebook
25   user experiences and have been the source of complaints by Facebook users.  ECF 218-8 at ¶ 5
     (Declaration of Ryan McGeehan in support of Facebook's Motion for Partial Summary Judgment
26   noting that "spam messages detract from the overall Facebook experience and are sometimes a
     source of complaints by Facebook users.
27

28

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

United States District Court
For the Northern District of California

1   ECF No. 323, 324, suggest they may be unable to satisfy a damages award and that non-monetary

2   relief may be necessary.

3         In rebuttal, Defendants argue they never misappropriated Facebook user data.  Defendants'

4   Inj. Opp. at 8.[18]  Defendants emphasize that one of their "primary" objections to injunctive relief is

5   that "Defendants are not in possession of any Facebook data or any user data that was not expressly

6   granted to Power by the users themselves."  *Id.* at 3.  This argument is irrelevant to the issue at

7   hand because the Court has already ruled that Defendants did misappropriate data without

8   Facebook's permission.  ECF No. 275 at 14-18.  Defendants also argue that the Court should not

9   consider the fact that they may still possess the software that enabled the alleged violations because

10  Power Ventures ceased operations in 2011.  Defendants' Inj. Opp. at 8.  But this argument ignores

11  the fact that Defendants could easily start another company or give the data to other entities that

12  wish to engage in the illegal spamming conduct.[19]  Overall, as money damages will likely be

13  inadequate, this factor weighs in favor of a permanent injunction.

14  **C.     Balance of Hardships**

15        The balance of hardships analysis also weighs in favor of granting Facebook a permanent

16  injunction.  Defendants have been found liable for violating various laws, *see* ECF No. 275, and

17  while an injunction would simply serve to force their compliance with the law, *see Myspace v.*

18  *Wallace*, 498 F.Supp.2d 1293, 1306 (C.D. Cal. July 3, 2007) (holding defendant would experience

19  no hardship if enjoined from committing further violations of the CAN-SPAM Act), Facebook may

20  suffer harm if an injunction is not issued.  As this Court previously concluded in its summary

21  judgment order, Facebook has already suffered harm, as it incurred expenditures to both block

22  Defendants' continued access to Facebook and to respond to the spamming emails.  ECF No. 275

23

24  [18] *See also* Defendants' Inj. Opp. at 5 ("Facebook is unable to identify anything that Power
    misappropriated from Facebook's network, as Power did not take anything that belonged to
25  Facebook.")

26  [19] Defendants also argue that "damages were avoidable" because Defendants allegedly cooperated
    with Facebook through the litigation.  Defendants' Inj. Opp. at 3, 10.  This argument is irrelevant;
27  the issue is not whether damages were "avoidable" but whether damages are sufficient to
    compensate Facebook for its injury.

28

    Case No.: 08-CV-5780-LHK
    ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
    VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
    RELIEF

at 7-10.  Absent an injunction Facebook may have to deal with future violations of the law.
*Tagged*, 2010 WL 370331, at *12 (granting a preliminary injunction against a defendant who
violated CFAA and California Penal Code § 502 in part because defendant might engage in future
violations).  Indeed, Defendants have demonstrated a willingness to do so, as they did not stop
even after requests from Facebook.  ECF No. 299-3 at 8-9 (Vachani admitting that he sent
Facebook an email informing Facebook that Power Ventures would continue to try to access
Facebook's services despite Facebook's request that the company stop).  On the other hand,
Defendants claim that the requested injunction impermissibly threatens Vachani's employability
and livelihood.  Defendants' Inj. Opp. at 10-11; Vachani Damages/Liability Brief at 9.  However,
Defendants fail to provide a persuasive reason why this is the case, and in any event, given that
Vachani brought this risk upon himself by violating the law, the balance would not shift in favor of
Defendants even if there were evidence to support this speculative claim.  Accordingly, the balance
of hardships weighs in favor of Facebook.

**D.      Public Interest**

        The public interest weighs in favor of an injunction as well, and courts in this district have
reached this conclusion in analogous cases.  *See, e.g.*, *Craigslist, Inc. v. Troopal Strategies, Inc.*,
2011 U.S. Dist. LEXIS 15625, at *11 (N.D. Cal. 2011) (holding injunction would be in the public
interest where defendant violated CFAA).  Injunctive relief would serve the public interest by
preventing Defendants from impermissibly spamming Facebook users again and setting an
example to members of the public who may consider violating these various statutes as well.  In
passing the CAN–SPAM Act, Congress recognized the burdens which commercial spam poses to
the public.  15 U.S.C. § 7701(a)(2) ("The convenience and efficiency of electronic mail are
threatened by the extremely rapid growth in the volume of unsolicited commercial electronic
mail.").  Namely, the public "is forced to incur the costs of needlessly expended energy and time
evaluating and eventually discarding defendants' unsolicited messages[.]"  *F.T.C. v. Phoenix
Avatar, LLC*, 2004 WL 1746698, *14 (N.D. Ill. July 30, 2004) (enjoining defendants for violations
of the CAN–SPAM Act).  Because Defendants' activities fall within those activities Congress

31

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    deemed detrimental to the public, this factor weighs in favor of Facebook.  Defendants' arguments

2    to the contrary are unavailing.  While Defendants claim the injunction will pose "unacceptable

3    risks for innovators" and enhancements in social networking technology, Defendants' Inj. Opp. at

4    11, this argument fails to recognize that the injunction will serve to deter only conduct that violates

5    the law.  The law explicitly provides for injunctive relief.  Thus, to the extent that granting

6    Facebook injunctive relief for Defendants' violations of CFAA and CAN-SPAM may have

7    negative "impacts on innovation, competition, and the general 'openness' of the internet," courts

8    have held that it is up to Congress, not the courts, to decide whether to amend those statutes.

9    *Craigslist Inc. v. 3Taps*, No. CV 12–03816 CRB, 2013 WL 4447520, at *25 (N.D. Cal. Aug. 16,

10   2013) ("[I]t is for Congress to weigh the significance of those consequences and decide whether

11   amendment would be prudent.")

## E.    Balance of all four equitable factors

13          The balance of all four factors weighs strongly in favor of granting an injunction in this

14   case.  Thus, the Court grants Facebook its request for permanent injunctive relief against both

15   Power Ventures and Vachani in his individual capacity.[20]  This decision is in line with past

16   decisions of this Court.  *See Tagged*, 2010 WL 370331, at *12 (granting injunctive relief for

17   violations of CFAA and California Penal Code § 502); *Facebook v. Fisher*, 2011 U.S. Dist. LEXIS

18   9668, at *7-8 (N.D. Cal. Jan. 26. 2011) (granting injunction for violations of CAN-SPAM Act and

19   CFAA); *Microsoft Corp. v. Neoburst Net LLC*, 2004 U.S. Dist. LEXIS 18733, at *2-4 (N.D. Cal.

20

21   [20] While Defendants claim Facebook provides "no basis for enjoining the individual defendant
     from any action given that Vachani never acted independently or otherwise in a personal or
22   individual capacity while employed by Power during the period of Facebook's grievances,"
     Defendants' Inj. Opp. at 6, this argument fails for two reasons.  First, as this Court finds that
23   Vachani is personally liable, he may be enjoined in his individual capacity.  *FTC v. Sili
     Neutraceuticals LLC*, 2008 U.S. Dist. LEXIS 105683 (N.D. Ill. Jan. 23, 2008).  Second, even
24   assuming this Court found Vachani was *not* personally liable, Defendants' argument ignores Ninth
     Circuit law holding that Federal Rule of Procedure 65 "establishes that an injunction may bind not
25   only parties to the action but also 'their officers, agents, servants, employees, and attorneys, and
     [upon] those persons in active concert or participation with them.'"  *Comedy Club Inc. v. Improv
26   West Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009) (citing Fed. R. Civ. P. 65(d)).  Here, Vachani
     may be enjoined under FRCP 65 as an officer of Power Venture.

27
                                                      32
28   Case No.: 08-CV-5780-LHK
     ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
     VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
     RELIEF

2004) (granting injunctive relief for violations of CAN-SPAM Act, CFAA, and California Penal Code § 502).[21]  Facebook is hereby entitled to a permanent injunction against Power Ventures and Vachani as follows:

1. Defendants, their agents, officers, contractors, directors, shareholders, employees, subsidiary companies or entities, affiliated or related companies and entities, assignees, and successors-in-interest, and those in active concert or participation with them, are permanently enjoined from:

      A. Sending, or assisting others in the sending of, or procuring the sending of unauthorized or unsolicited commercial electronic text messages to users of the Facebook website, www.facebook.com, or via the Facebook website or service.

      B. Making, or assisting others in making, any false or misleading oral or written statement or representation of material fact when advertising, promoting or selling any good or service, including, but not limited to any false or misleading statement or representation that Defendants, their representatives, or any other person is affiliated or associated with, under contract with, acting in partnership with, endorsed or approved by, or otherwise connected to Facebook or to a service offered by Facebook.

      C. Accessing or using, or directing, aiding, facilitating, causing, or conspiring with others to use or access the Facebook website or servers for any purpose, without Facebook's prior permission.

      D. Using any data, including without limitation Facebook-user data and data regarding Facebook's website or computer networks, obtained as a result of the unlawful conduct alleged in the operative complaint in this action.

      E. Developing, using, selling, offering for sale, or distributing, or directing, aiding, or conspiring with others to develop, sell, offer for sale, or distribute, any software that allows the user to engage in the unlawful conduct alleged in the operative complaint in this action.

2. Defendants, their agents, officers, contractors, directors, shareholders, employees, subsidiary companies or entities, affiliated or related companies and entities, assignees, and successors-in-

---

[21] Defendants' brief fails to distinguish or otherwise discuss these relevant authorities.

33

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

interest, and those in active concert or participation with them shall destroy any software, script(s) or code designed to access or interact with the Facebook website, Facebook users, or the Facebook service.  They shall also destroy Facebook data and/or information obtained from Facebook or Facebook's users, or anything derived from such data and/or information.

3. Within three calendar days of entry of this permanent injunction and order, Defendants shall notify their current and former officers, agents, servants, employees, successors, and assigns, and any persons acting in concert or participation with them of this permanent injunction.

4. Within seven calendar days of entry of this injunction and order, Defendants shall certify in writing, under penalty of perjury, that they have complied with the provision of this order.

5. The Court shall continue to retain jurisdiction over the parties for the purpose of enforcing this injunction and order.

## VII.    CONCLUSION

The Court finds Defendants have failed to set forth grounds pursuant to Civil L.R. 7-9(b) for leave to file a motion for reconsideration of Judge Ware's February 16 order.  Thus, the request for leave is DENIED.  The Court finds Vachani personally liable as a matter of law for violations of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM Act"), 15 U.S.C § 7701; the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; and California Penal Code § 502.  The Court further finds Facebook is entitled to statutory damages in the amount of $3,031,350, compensatory damages in the amount of $       , and permanent injunctive relief as described above.  The Clerk shall close the file.

**IT IS SO ORDERED.**


Dated: September 25, 2013                    _____

                                             LUCY H. KOH
                                             United States District Judge

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF