1 | Amy Sommer Anderson (STATE BAR NO. 282634)
2 | anderson@aroplex.com
  | Aroplex Legal Services & the Law Practice of Amy
3 | Sommer Anderson
  | 156 2nd Street
4 | San Francisco, California 94105
  | Telephone:    415-529-5148
5 | Facsimile:    415-520-0606
  | Attorney for Defendant
6 | POWER VENTURES, INC.
7 |
  | STEVEN VACHANI (*pro se*)
8 | 2425B Channing, #216
  | Berkeley, CA 94704
9 | Telephone: (917) 267-8823

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., | Case No. 5:08-CV-05780 LHK |
| Plaintiff, | **DEFENDANTS' JOINT CASE MANAGEMENT STATEMENT** |
| v. | |
| POWER VENTURES, INC., a Cayman Island corporation and d//b/a POWER.COM, a California corporation; STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, DOES 2-25, inclusive, | Date:        February 15, 2017<br>Time:        2:00 P.M.<br>Judge:       Hon. Lucy J. Koh<br>Courtroom: 8, 4th Floor |
| Defendants. | |

This Court has set a Case Management Conference for February 15, 2017. In light of fact that Facebook previously submitted its Case Management Statement (Dkt. No. 404) in anticipation of the originally scheduled Case Management Conference on January 11, 2017, and given that Facebook attempts to argue the merits of their position with respect to the remaining issues in this matter and submitted a proposed order to the Court thereon, Power Ventures, Inc. and *pro se* defendant Steven Vachani hereby submit this Defendants' Case Management Statement.

## I. JURISDICTION AND SERVICE

On December 19, 2016, a mandate issued from the Ninth Circuit affirming in part and reversing and vacating in part the district court's summary judgment in favor of Facebook, Inc. Reversing in part, the Ninth Circuit held that Power's actions did not violate the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM Act") because the transmitted messages were not materially misleading. As such, the associated award of statutory damages in the sum of $3,031,350 was vacated.

Reversing in part and affirming in part, the panel held that Power violated the Computer Fraud and Abuse Act of 1986 ("CFAA"), which prohibits acts of computer trespass by those who are not authorized users or who exceed authorized use, and California Penal Code § 502, but *only after* it received a cease and desist letter from Facebook on December 1, 2008. Significantly, the Ninth Circuit found Power did not initially access Facebook's computers "without authorization" within the meaning of the CFAA and only accessed Facebook's computers "without authorization" after receiving written notification—the cease and desist letter—from Facebook on December 1, 2008.

The Ninth Circuit vacated the district court's awards of injunctive relief and damages and remanded for consideration of appropriate remedies under the CFAA and § 502. As this Court has not ordered additional briefing on the issue of remedies in light of the appellate court's decision, Defendants bring this motion to request permission to file supplemental briefing on the issue of damages, as well as the issue of determining the prevailing party for the purpose of allowing costs and fees.

## II. FACTS

**A. Compensatory Damages**

The Ninth Circuit mandate vacated the Court's September 25, 2013 order of, *inter alia*, compensatory damages and remanded the issue to this Court for re-determination based on (1) the fact that the CAN-SPAM judgment is reversed in full, and (2) the Ninth Circuit's restriction of damages under CFAA/CPC § 502 to those incurred *after* December 1, 2008 (i.e., the "allowable period"), which is the date Facebook sent the cease and desist letter to the defendants[1]. Since Facebook's evidence supporting their prior and current requests for compensatory damages is based, at least in part, on the alleged CAN-SPAM violations as well as during a period of time preceding and including December 1, 2008 (i.e., the "unallowable period"), the prior award of $80,543.00 cannot simply be reinstated as Facebook requests.

At the very least, additional briefing should be submitted by Facebook, with opportunity for opposition by the defendants, clearly showing damages incurred and awardable under CFAA and CPC § 502 during the allowable period. Should the Court find sufficient cause to make a determination of compensatory damages pursuant to the Mandate, the defendants present the following issues with Facebook's evidence and damages claims in support of their assertion that Facebook is entitled to $0.00 based on their own showings and arguments.

1. <u>Facebook's Claimed Damages Contemplate and Were Expressly Related, in Part, to Alleged CAN-SPAM Violations</u>.

In its final order of damages, this Court further awarded $80,543.00 in compensatory damages under the heading of CFAA and CPC § 502 damages. In fact, the Court allowed compensatory damages in the amount claimed by Facebook—$80,543.00—based on a prior

---

[1] "Because we reverse in significant part, we also vacate the injunction and the award of damages. We remand the case to the district court to reconsider appropriate remedies under the CFAA and section 502, including any injunctive relief. With respect to damages, the district court shall calculate damages only for the period *after* Power received the cease and desist letter, when Power continued to access data contained in Facebook's servers and memory banks." *Facebook, Inc. v. Power Ventures, Inc.*, 828 F.3d 1068, 1080 (9th Cir. Cal. 2016) (emphasis added).

order finding that Facebook suffered a "loss" in connection with these violations[2]. Since the prior assessment of "loss" was based on activities and purported costs associated with all three claims, including alleged CAN-SPAM violations, the Court's award of compensatory damages linked to this "loss" is inherently based, in part, on a finding that has been reversed by the Ninth Circuit.

2. <u>Facebook's Claimed Damages Expressly Include Purported Costs Incurred During the Unallowable Period</u>.

Significantly, the Ninth Circuit found Power did not initially access Facebook's computers "without authorization" within the meaning of the CFAA and only accessed Facebook's computers "without authorization" after receiving written notification—the cease and desist letter—from Facebook on December 1, 2008. *See,* Fn. 1. Facebook's Case Management Statement materially misrepresents the Ninth Circuit's order and mandate by stating the Ninth Circuit remanded the matter for determination of damages "on and after" December 1, 2008 and arguing for damages inclusive of those incurred on or before December 1, 2008. *See, e.g.,* Facebook's CMS; Dkt. No. 404 at 3:5-7 (stating that Facebook "expended $80,543 **on or after** December 1, 2008, as a result of its internal and external investigations and implementing technical measures that served as the basis for its CFAA and Penal Code Section 502(b) claims") (emphasis added). Since the Ninth Circuit's order specifies that damages with respect to CFAA and CPC § 502 be determined for the period *after* December 1, 2008 (*see,* fn. 1), Facebook's claimed expenses inherently include those purported to be incurred during the unallowable period. Facebook has not provided any evidence supporting a claim to compensatory damages within the scope circumscribed by the Ninth Circuit.

---

[2] *See*, the Court's order of damages and injunctive relief; Dkt. No. 373 at 26:7-8 ("This Court previously held that Facebook suffered 'loss' as a result of Defendants' violation of CFAA;" citing the prior order granting Facebook's motion for summary judgment, Dkt. No. 275 at 18, which finds that costs "as discussed above with regard to Plaintiff's CAN-SPAM claim" is sufficient evidence of loss under CFAA and CPC § 502.)

Further, the Ostiller Report is provided in support of Facebook's claim that it incurred an estimated $5,000 in damages due to the time that Facebook employee Ryan McGeehan spent investigating and responding to Power's activities starting prior to December 1, 2008, which is supported by his testimony that he and his team made the initial investigation with respect to Power's activities before reporting their findings to outside counsel Joseph Cutler, who then claims to have conducted his own investigation to identify who was accessing Facebook's network before sending a cease and desist letter to Power on December 1, 2008. *See*, McGeehan Declaration at ¶ 7. It is conceivable, however unlikely, that all of these events occurred on December 1, 2008, but (1) Facebook provides no schedule of hours or other evidence supporting the dates on which efforts were made and fees were incurred, and (2) costs incurred on December 1, 2008 are not allowable as compensatory damages pursuant to the Mandate.

3. <u>Facebook's Claim Includes Attorney Fees for Litigation, Which Have Not Been Awarded</u>.

The bulk of this Court's original compensatory damages award—$75,543 of the total $80,543—is for attorney fees paid to outside counsel at Perkins Coie for the purpose of taking "legal action against illegal spamming, phishing, and other forms of malicious Internet behavior." Cutler Declaration at ¶ 2, Dkt. No. 213-2. The Ostiller Report provides, without detail, that Facebook paid $38,719 to its attorneys at Perkins Coie in December 2008 and $36,824 from January-March 2009. Ostiller Report at Schedule 1b. This lawsuit was filed on December 30, 2008 by the law firm Perkins Coie.

Even if the Court finds cause to allow Facebook to claim attorney fees as damages during December 2008, Facebook has not been awarded attorney fees in this case, and such fees associated with filing and prosecuting this lawsuit, which commenced December 30, 2008, are not allowable as an item of costs for the purpose of awarding damages under CFAA/CPC § 502.

"Costs *not related* to computer impairment or computer damages are not compensable under the CFAA." *Farmers Insurance Exchange v. Steele Insurance Agency, Inc.*, No. 2:13-cv-00784-MCE-DAD, 2013 WL 3872950 (E.D. Cal. July 25, 2013) at 21 (*emphasis added*).

4. <u>Facebook's Evidence Shows It Did Not Actually Incur A Substantial Portion of the Claimed Expenses</u>.

Facebook's own evidence shows it did not, in fact, incur the expenses claimed in their prior and current requests for compensatory damages. For example, in support of their claim for $80,543, Facebook states it "expended $80,543 on or after December 1, 2008, as a result of its internal and external investigations and implementing technical measures that served as the basis for its CFAA and Penal Code Section 502(b) claims" and references specific portions of the Expert Report of Richard Ostiller (Dkt. No. 299-25), the declaration of Facebook's outside counsel Joseph Cutler (Dkt. No. 213-2), and the declaration of Facebook's Security Manager Ryan McGeehan (Dkt. No. 213-4). Dkt. No. 404 at 3:5-7.

First, the Facebook committed to paying the claimed $75,543 in attorney "costs" to Perkins Coie before learning of Power's actions and irrespective of whether Perkins Coie ever dealt with Power because Facebook had an overarching fixed fee agreement for this type of service. The Ostiller Report provides, without detail, that Facebook paid $38,719 to its attorneys at Perkins Coie in December 2008 and $36,824 from January-March 2009. *See,* Ostiller Report at Schedule 1b. Further contained in the Ostiller Report is the disclosure that Facebook had a deal with Perkins Coie beginning in January 2009 whereby the law firm would perform enforcement-related legal services as necessitated by Facebook at a fixed rate. Ostiller Report at ¶ 29. The Report then provides, based on Cutler's Declaration, an ***estimated*** $36,824 of the total fixed fee for January – March 2009 could be attributed to work Perkins Coie performed in relation to Power's activities, yet this amount, as already disclosed by Ostiller, was not actually paid in

Defendants' Case Management Statement — 6 — CASE NO. 5:08-CV-05780 LHK

response to Power's actions but rather was part of a fixed fee Facebook committed to paying Perkins for all enforcement efforts.  Thus, in addition to any other issue with claiming attorney fees as costs, Facebook did not incur attorney fees from January-March 2009 for work related to Power other than what they had already committed to paying irrespective of whether Facebook elected to pursue this action or not.

Second, Facebook's claim that it incurred an estimated $5,000 in damages due to the time that Facebook employee Ryan McGeehan spent investigating and responding to Power's activities is utterly unsupported by evidence. The Ostiller Report asserts that Ryan McGeehan worked an estimated 50 hours in response to Power's activities at an estimated rate of $100 per hour in "fully burdened payroll costs." Ostiller Report at ¶ 18 and Schedule 1a. Ostiller's assertion of McGeehan's 50 hours references the McGeehan Declaration (Dkt. No. 213-4), which does not actually provide a numerical estimate of time expended but rather states that McGeehan spent "many hours" investigating and talking to Facebook personnel about Power's activities, in addition to 3 – 4 days of McGeehan's "own engineering time" addressing other security issues related to Power's activities. McGeehan Declaration at ¶ 17.

To be clear, Facebook provides no evidence supporting Ostiller's estimate of McGeehan's 50 hours. Ostiller states that McGeehan *said* he estimates his total expenditure at 50 hours. Ostiller Dec. at ¶ 19. Since Facebook provides no evidence of such statement by McGeehan, it must be assumed that McGeehan made the statement in an interview with Ostiller, which makes the estimate impermissible hearsay. Without even an estimate of hours expended, Facebook has no basis for claiming damages related to McGeehan's efforts.

Further, even if the Court considers Ostiller's estimate of 50 hours, and even if the Court assumes 50 hours were spent during the allowable period and were related to CFAA and CPC § 502, this estimate must be offset by the 3 – 4 days of work representing McGeehan's "own

engineering time" since Facebook makes no allegation nor offers any evidence that Facebook compensated McGeehan for working on his own time. McGeehan does not state how many hours constitute one of his own workdays, so assuming (once again) the 50 hour estimate includes 3 – 4 of McGeehan's own days at 8 hours per day (24 – 32 hours total), the estimate is reduced to 18 – 26 hours that McGeehan spent while "on the clock" working for Facebook where he was a salaried employee.

Further still, neither McGeehan nor Ostiller discloses McGeehan's actual salary, and Ostiller provides no evidentiary basis for estimating McGeehan's hourly rate at $100 or claiming McGeehan was compensated for his own engineering time. Surely Facebook should be required to show more specificity with respect to damages it claims are certain and were actually incurred and not be allowed to rely on estimates of estimates based on facts not on the record or not properly before the Court.

### B. Costs of Suit to Prevailing Party

Entry of judgment entitles the prevailing party to an award of costs. FRCP 54(d); 28 USC § 1920. Since Plaintiff Facebook, Inc. was originally awarded summary judgment on all three of their claims, they were the prevailing party for the purpose of claiming allowable costs and fees. On January 2, 2014, costs were taxed on this basis in favor of Facebook in the sum $49,637.93.

FRCP 54 provides in its notes[3], however, that a new period for filing a Bill of Costs will automatically begin if a new judgment is entered following a reversal or remand by the appellate court. Here, no effective judgment has been entered in light of the Ninth Circuit's partial reversal/vacation/affirmation/remand, and as such the time for filing of a Bill of Costs has not begun to run.

On appeal, the Ninth Circuit reversed in part, vacated in part, affirmed in part, and

---

[3] FRCP 54. Notes of Advisory Committee on Rules—1993 Amendment.

DEFENDANTS' CASE MANAGEMENT STATEMENT - 8 - CASE NO. 5:08-CV-05780 LHK

remanded the matter back to this Court to determine damages, including injunctive relief if warranted, as limited to the CFAA and CPC § 502 claims. The appellate court made no specific reference to the prevailing party in the District Court case but did order that the parties bear their own costs on appeal given of the partial reversal of this Court's judgment. Since the appeal challenged the merits of Plaintiff's entire case, the Ninth Circuit's ruling that the parties bear their own costs strongly supports application of the same finding with respect to costs incurred in this Court, and the defendants should be permitted to make their arguments in support of this position and in light of the modified judgment of liability.

### C. Discovery Sanctions Order

Facebook appears to seek an additional order of damages for the discovery sanctions order that was upheld by the Ninth Circuit. Since this order was not reversed or remanded in any way, it already stands and does not need to be—and should not be awarded again as damages.

### D. Injunctive Relief

This Court further awarded to Facebook permanent injunctive relief amounting to a broad prohibition of activities related to all three claims. With the CAN-SPAM award reversed and the award of damages and injunctive relief vacated, Defendants offer that the Court and the parties will be well served by the opportunity to argue and assess damages within the scope of the Ninth Circuit's circumscribed CFAA/CPC § 502 determination and independent of the now defeated CAN-SPAM claim.

### E. Summary

In summary:

1. No judgment need be made regarding the order for discovery sanctions in Facebook's favor, as that order was sustained without remand and, thus, remains in effect.

2. The costs previously taxed against the defendants are no longer valid since the

judgment on which Facebook's Bill of Costs was filed has been vacated by the Ninth Circuit, and this Court has yet to enter an effective judgment. Defendants further request the Court determine the prevailing party for the purpose of allowable costs and fees.

3. For the reasons presented above and based on Facebook's own assertions and proffered evidence, Defendants request they receive $0.00 in compensatory damages. In the alternative, Defendants request the Court order supplemental briefing on this issue.

4. Defendants suggest the parties provide supplemental briefing on the issue of injunctive relief even if the Court finds the evidence and arguments submitted heretofore supportive of an award of damages since the previous injunction was responsive to the CAN-SPAM claim as much as it was responsive to the CFAA and CPC § 502 claims.

### III.  LEGAL ISSUES

At this time, it is the defendants' position that the following issues remain open:

1. What amount of damages should be awarded to Facebook for Defendants' violations of the CFAA and California Penal Code Section 502, for the period *after* December 1, 2008, as mandated by the Ninth Circuit?

2. What, if any, should be the scope of permanent injunctive relief?

3. Who is the prevailing party, if any, for the purpose claiming allowable costs and/or attorney fees?

### IV.  MOTIONS

#### A.  Pending Motions

There are no pending motions filed by the Parties.

#### B.  Anticipated Motions

The defendants strongly believe additional briefing is necessary to enable the court to reassess damages in light of the Ninth Circuit's decision and have included a proposed order to

that effect. Defendants do not anticipate filing any motion other than in relation to such further briefing, if necessary.

## V. AMENDMENT OF PLEADINGS

The case is now fully at issue.

## VI. EVIDENCE PRESERVATION

The defendants have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

## VII. INITIAL DISCLOSURES

Facebook served its initial disclosures on Defendants on July 29, 2011. Facebook served its supplemental and second supplemental initial disclosures on Defendants on October 14, 2011 and January 13, 2012, respectively. Defendants served their initial disclosures on Facebook on August 15, 2011. To date, Defendants have not supplemented the initial disclosures.

## VIII. DISCOVERY

Discovery closed on January 20, 2012. The parties agree that no additional discovery is necessary at this time

## IX. CLASS ACTIONS

This is not a class action case.

## X. RELATED CASES

Vachani's bankruptcy proceeding in the United States Bankruptcy Court for the Northern District of California, Case No. 12-47150 RLE 13, is related to this matter.

## XI. RELIEF

Defendants request the Court enter an award of compensatory damages of $0.00 pursuant

to Facebook's own evidence as provided above (Section II. FACTS) and decline to award injunctive relief in light of the absence of risk of further harm to Facebook. Defendants further request the Court find there is no prevailing party and that the parties bear their own costs and fees in the District Court case.

In the alternative and for the reasons outlined above, Defendants request the Court order additional briefing on the issues of damages, injunctive relieve, and which party is considered the "prevailing party."

Defendants are compelled to correct an error in this section of Facebook's CMS, which states that an award of attorney fees was upheld by the Ninth Circuit in this matter. In fact, Facebook previously waived any right to attorney fees[4] and the Ninth Circuit made no judgment with respect to attorney fees. Further, Facebook has made no proper motion for an award of attorney fees following the Ninth Circuit's disposition.

## XII.   SETTLEMENT AND ADR

The parties engaged in an ADR mediation session on December 14, 2009. The session was facilitated by mediator Daralyn Durie, who has filed papers with the Court indicating that the ADR process is not yet complete and that further facilitated discussions are expected. *See* Dkt. No. 59. To date, the parties have engaged in numerous settlement discussions, but have been unable to reach resolution. The latest of these settlement discussions was on or around April 26, 2013.

## XIII.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The parties have not consented to a magistrate judge.

## XIV.   OTHER REFERENCES

The parties do not believe any other references are necessary at this time.

---

[4] "Facebook waives its entitlement to attorneys' fees under the CFAA, its right to exemplary damages under Penal Code section 502." Dkt. No. 369 at 2:14-15; FACEBOOK'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR INJUNCTIVE RELIEF.

## XV. NARROWING OF ISSUES

Defendants do not believe that issues can be narrowed at this time.

## XVI. EXPEDITED TRIAL PROCEDURES

An expedited schedule is not necessary in this case.

## XVII. SCHEDULING

In light of the fact that the Ninth Circuit's order affects the scope of compensatory damages and injunctive relief, Defendants are prepared to submit supplemental briefing on these issues.

## XVIII. TRIAL

Defendants acknowledge a trial may be necessary on the issue of compensatory damages based on, *inter alia*, the disputed facts regarding timing and actual incursion of damages as provided above. Contrary to Facebook's claim in the same section of its CMS, the defendants have disputed Facebook's claimed damages at every opportunity, including in their briefs supporting and opposing summary judgment, as well as their supplemental briefs regarding damages and in their appellate briefs.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES AND PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

## XX. OTHER MATTERS

None.

DATED: 2/8/2017                                         AROPLEX LAW

By:  /s/ Amy Sommer Anderson
Amy Sommer Anderson
Attorney for Defendant,
Power Ventures, Inc.

Dated: 2/8/2017                                        STEVEN VACHANI

                                         By: /s/ Steven Vachani
                                         STEVEN VACHANI
                                         Steven Vachani (pro per)
                                         2425B Channing, #216
                                         Berkeley, CA  94704

     FILER'S ATTESTATION: Pursuant to General Order No. 45 §X(B), I attest under penalty of perjury that concurrence in the filing of the document has been obtained from its signatory.

Dated: 2/8/2017                                        Respectfully submitted,

                                         By:  /s/ Amy Sommer Anderson
                                           Amy Sommer Anderson
                                           Attorney for Defendant,
                                           Power Ventures, Inc.

# CERTIFICATE OF SERVICE

I hereby certify that this document has been or will be filed through the ECF system, and notice will be sent via the following method:

**X**    **ECF System:** By filing the within document on the Court's Electronic Case Filing System, I am informed and believe that the documents will be electronically served on all individuals registered with such system. To my knowledge, every individual to whom notice is required is registered with this system and, thus, has been served with due notice by action of this electronic filing.

I declare under penalty of perjury under the laws of the State of California that the above statements are true and correct.

Executed 2/9/2017 at San Francisco, California.

                                     */s/* AMY SOMMER ANDERSON
                                        Amy Sommer Anderson