```
1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4


5

   FACEBOOK, INC.,                    )  C-08-05780 LHK
6                                     )
                    PLAINTIFF,        )  SAN JOSE, CALIFORNIA
7                                     )
             VS.                      )  FEBRUARY 15, 2017
8                                     )
   POWER VENTURES, INC., A CAYMAN     )  PAGES 1-31
9  ISLAND CORPORATION; STEVE          )
   VACHANI, AN INDIVIDUAL; DOE 1      )
10 D/B/A POWER.COM, DOES 2-25,        )
   INCLUSIVE,                         )
11                                    )
                    DEFENDANTS.       )
12 _____)

13

14              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE LUCY H. KOH
               UNITED STATES DISTRICT JUDGE
15

16 A P P E A R A N C E S :

17 FOR THE PLAINTIFF:    ORRICK, HERRINGTON & SUTCLIFFE
                         BY:  I. NEEL CHATTERJEE
18                            ROBERT L. URIARTE
                         1000 MARSH ROAD
19                       MENLO PARK, CALIFORNIA  94025

20 FOR DEFENDANT         AROPLEX LEGAL SERVICES
   POWER VENTURES:       BY:  AMY S. ANDERSON
21                       156 2ND STREET
                         SAN FRANCISCO, CALIFORNIA  94105
22
                 APPEARANCES CONTINUED ON NEXT PAGE
23
   OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
24                             CERTIFICATE NUMBER 9595

25         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER
```

1

2        APPEARANCES (CONTINUED)

3        FOR DEFENDANT          STEVEN VACHANI
         VACHANI:               IN PROPRIA PERSONA
4                               2425B CHANNING, #216
                                BERKELEY, CALIFORNIA  94704
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    SAN JOSE, CALIFORNIA                    FEBRUARY 15, 2017

 2                    P R O C E E D I N G S

 3         (COURT CONVENED AT 2:35 P.M.)

 4             THE CLERK:  CALLING CASE NUMBER 08-5780, FACEBOOK,

 5    INC. VERSUS POWER VENTURES.

 6         WILL COUNSEL AND PARTIES PLEASE COME FORWARD AND STATE

 7    YOUR APPEARANCES.

 8             MR. CHATTERJEE:  GOOD AFTERNOON, YOUR HONOR.

 9         NEEL CHATTERJEE AND ROB URIARTE FOR FACEBOOK.

10             THE COURT:  OKAY.  GOOD AFTERNOON.

11             MS. ANDERSON:  GOOD AFTERNOON, YOUR HONOR.

12         AMY ANDERSON FOR POWER VENTURES, INC.

13             MR. VACHANI:  STEVE VACHANI REPRESENTING MYSELF.

14             THE COURT:  OKAY.  GOOD AFTERNOON AND WELCOME.  THANK

15    YOU FOR YOUR PATIENCE.  I'M SORRY THAT WE HAD TO DELAY THE

16    START OF THIS CALENDAR BECAUSE OUR CRIMINAL CALENDAR WENT LATE.

17         WHAT I'M PLANNING TO DO IS TO SET A BRIEFING SCHEDULE FOR

18    US TO RESOLVE SOME OF THE OUTSTANDING ISSUES BASED ON THE NINTH

19    CIRCUIT DECISION.

20         IN ADDITION TO DOING THAT, I WANTED TO EXPLORE WHETHER THE

21    PARTIES WOULD BE INTERESTED IN ALTERNATIVE DISPUTE RESOLUTION

22    AT THIS POINT.  YOUR LAST SESSION WAS APRIL 26TH OF 2013.

23         IS IT WORTH AN EFFORT, OR NOT?

24             MR. CHATTERJEE:  YOUR HONOR, WE'RE ALWAYS WILLING TO

25    PARTICIPATE.  QUITE HONESTLY, I DON'T WANT TO GET INTO THE
```

1    DETAILS, BUT OUR -- OUR REQUEST TO THEM HAS ALWAYS BEEN THE

2    SAME AND WE'VE NEVER BEEN ABLE TO CROSS THAT BRIDGE.  SO I

3    DON'T KNOW IF THERE'S ANY REASON TO BE OPTIMISTIC AT THIS

4    POINT.

5            THE COURT:  ALL RIGHT.  AND I ALSO SEE MS. ANDERSON

6    SHAKING HER HEAD NO.

7        SO YOU DON'T THINK IT WOULD BE USEFUL?

8            MS. ANDERSON:  WELL, I -- CERTAINLY WE'RE OPEN TO IT.

9    BUT REALISTICALLY, WE'RE DOWN TO -- WE'RE DOWN TOO MUCH TO A

10   FACTUAL DETERMINATION.  I'M NOT SURE THAT -- IF -- IF PLAINTIFF

11   AGREES THAT IT WOULD BE BENEFICIAL, THEN CERTAINLY.

12           MR. CHATTERJEE:  SO, YOUR HONOR, JUST TO KIND OF CUT

13   TO THE CHASE, FROM OUR PERSPECTIVE -- I THINK THE FACTUAL

14   ISSUES SHE'S TALKING ABOUT ARE WHAT YOU SEE IN THE BRIEFS ABOUT

15   WHATEVER THE DAMAGES NUMBER MIGHT BE.  WE DON'T THINK IT IS

16   DISPUTED AND WE THINK YOU FOUND THAT WASN'T DISPUTED.

17       BUT THE ISSUE OF INJUNCTION, AS FAR AS I KNOW, YOU MORE OR

18   LESS RESOLVED THAT EARLIER.  THERE WERE ASPECTS OF IT THAT

19   NEEDED TO BE REMOVED BECAUSE OF THE CAN-SPAM PIECE OF IT.

20           THE COURT:  UM-HUM.

21           MR. CHATTERJEE:  BUT IF THE INJUNCTION WERE IN PLACE

22   AND THE UNDISPUTED AMOUNT OF MONEY THAT'S DUE, WHICH IS THE

23   37,000 OR SO IN SANCTIONS THAT'S NOW BEEN AFFIRMED BY THE

24   FEDERAL CIRCUIT -- BY THE NINTH CIRCUIT, THOSE AREN'T REALLY

25   DISPUTED ISSUES, OR AT LEAST I DIDN'T SEE ANYTHING IN THEIR

```
1          PAPERS OTHER THAN THE MOST GENERAL COMMENTS.

2              THAT WOULD SUBSTANTIALLY MOVE THE BALL FORWARD AS FAR AS

3      GETTING TO AN ALTERNATIVE DISPUTE RESOLUTION OR SOME SORT OF

4      OUTCOME HERE.

5              THE COURT:  WELL, LET ME -- I DON'T WANT TO ASK YOU

6      TO DO SOMETHING FUTILE AND WASTE YOUR TIME AND MONEY.

7              THIS CASE HAS BEEN LITIGATED FOR A LONG TIME BEFORE

8      JUDGE WARE, AND A LITTLE BIT BEFORE ME, AND THEN NOW WITH THE

9      NINTH CIRCUIT.  SO I'M NOT GOING TO REQUIRE ADR IF YOU -- I

10     SENSE FROM BOTH SIDES A SENSE THAT IT MAY NOT BE WORTH YOUR

11     TIME, SO I'M NOT GOING TO REQUIRE IT.

12             LET ME ASK, ON THE INJUNCTION QUESTION -- AND I DON'T WANT

13     TO GET INTO ARGUMENT TODAY BECAUSE I'M GOING TO ALLOW YOU TO

14     BRIEF IT, BUT I JUST WANT TO GET SOME SENSE OF WHAT THE SCOPE

15     OF THE DISPUTES ARE.

16             DO THE DEFENDANTS DISAGREE WITH FACEBOOK'S SUGGESTED

17     MODIFICATIONS TO THE PERMANENT INJUNCTION?

18             MS. ANDERSON:  YES.

19             THE COURT:  OKAY.

20             MS. ANDERSON:  YES, WITH SOME OF IT.

21             THE COURT:  ALL RIGHT.  WELL, I GUESS THAT WILL HAVE

22     TO BE PART OF YOUR BRIEFING.

23             I'M JUST TRYING TO GET SOME SCOPE-OF-THE-DISPUTE CLARITY

24     RIGHT NOW.

25             LET ME ASK, WITH REGARD TO THE COSTS, DOES FACEBOOK AGREE
```

1    THAT IT WOULD HAVE TO WAIT UNTIL A NEW FINAL JUDGMENT IS

2    ENTERED BEFORE FACEBOOK MOVES FOR COSTS?

3              MR. CHATTERJEE:  ON THE TAXABLE COSTS?  BECAUSE

4    THERE'S -- SOMETIMES THEY'RE USED IN DIFFERENT WAYS.

5         AS FAR AS THE DAMAGES GO, YOU KNOW, I THINK THOSE

6    ISSUES -- YOU KNOW, THOSE ISSUES ARE NOT REALLY IN DISPUTE, AS

7    I SAID.

8         AS FAR AS THE TAXABLE COSTS GO, I DO THINK WE NEED

9    JUDGMENT TO BE ENTERED TO GET INTO THAT.

10        I DID NOT THINK THAT WAS A DISPUTED ISSUE WHEN THEY WENT

11   UP ON APPEAL AND THEY WERE AWARDED AT THAT TIME, SO WE AT LEAST

12   THINK THE ISSUE IS WAIVED.

13        BUT I THINK THE TYPICAL THING IS FOR A FINAL JUDGMENT TO

14   BE ENTERED BEFORE THE TAXABLE COSTS.

15             THE COURT:  OKAY.  SO IT SOUNDS LIKE THE DEFENDANT IS

16   ARGUING THAT RULE 54 WILL REQUIRE A NEW JUDGMENT TO BE ENTERED.

17   IT SOUNDS LIKE YOU'RE IN AGREEMENT ON THAT ISSUE.

18             MR. CHATTERJEE:  THAT'S FINE, YOUR HONOR.

19             THE COURT:  OKAY.  ALL RIGHT.

20             MR. CHATTERJEE:  WE WON'T DISPUTE THAT PIECE AND

21   WE'LL SEEK THAT AFTERWARDS.

22             THE COURT:  OKAY.  LET ME ASK -- AND THIS AGAIN IS

23   JUST TRYING TO FIGURE OUT THE SCOPE OF WHAT'S IN DISPUTE HERE

24   SO I CAN GET SOME SENSE OF WHAT MIGHT BE IN THE BRIEFING -- SO

25   FACEBOOK SAYS THAT IT EXPENDED $80,543 ON OR AFTER DECEMBER 1,

1    BUT THEN IT ALSO SAYS IT SUSTAINED $46,883 IN DAMAGES AFTER

2    DECEMBER 1, 2008.

3        SO I WAS WONDERING IF YOU COULD TALK ABOUT THOSE TWO

4    DIFFERENT NUMBERS.

5            MR. CHATTERJEE:  YES, YOUR HONOR.

6        SO IN THE DOCKET ENTRY, I BELIEVE IT'S 299-26, OR

7    EXHIBIT 26 -- IT'S EXHIBIT 25, BUT IT'S MARKED IN THE FILE AS

8    26 -- THERE'S A DAMAGES REPORT OF RICK OSTILLER, AND HE BREAKS

9    DOWN THE DAMAGES THAT WERE ASSOCIATED WITH ATTORNEYS' FEES AND

10   COSTS IN DECEMBER IN ONE CATEGORY, AND THEN EVERYTHING AFTER

11   JANUARY IN A SECOND CATEGORY.

12       THAT NUMBER COMES OUT ROUGHLY, COLLECTIVELY, IN TOTAL AT

13   ABOUT -- IT COMES OUT AT ABOUT $75,000.

14       AND THEN HE ALSO ESTIMATES THAT THE INTERNAL COSTS TO

15   FACEBOOK WERE ABOUT $5,000.

16       AND WHAT WE DID IN OUR REQUEST WAS, GIVEN THE NINTH

17   CIRCUIT ORDER WHERE IT SAID, YOU KNOW, DON'T TAKE A LOOK AT

18   PRE-DECEMBER 1, WAS WE BASICALLY REMOVED THE THINGS THAT WERE

19   PRE-DECEMBER 1 --

20            THE COURT:  UM-HUM.

21            MR. CHATTERJEE:  -- AND THE NUMBER WENT DOWN, NOT

22   SURPRISINGLY, TO $46,883.

23            THE COURT:  OH, OKAY.  SO YOU'RE NOT SEEKING 80,543?

24            MR. CHATTERJEE:  NO.  WHAT WE'RE SEEKING NOW IS

25   46,883.

```
 1              THE COURT:  OKAY.

 2              MR. CHATTERJEE:  BECAUSE WE EFFECTIVELY ELIMINATED

 3   NEARLY ALL OF THE COSTS IN DECEMBER.  EVEN THOUGH THE NINTH

 4   CIRCUIT SAID IT WAS ONLY DECEMBER 1 AND NOT THE TIME

 5   THEREAFTER, WE ACTUALLY TOOK OUT THE VAST MAJORITY, IT WAS

 6   ABOUT $37,000, OF DECEMBER.

 7              THE COURT:  I SEE.  OKAY.  SO THAT'S -- AND WILL --

 8   WILL THE DEFENDANTS BE DISPUTING THE 46,883 NUMBER?

 9              MS. ANDERSON:  YES.

10        THIS ACTUALLY BRINGS UP A BROADER ISSUE THAT WILL NEED TO

11   BE RESOLVED.  THE COURT DOESN'T ACTUALLY -- THE NINTH CIRCUIT

12   DOESN'T ACTUALLY SAY DECEMBER 1.  THEY -- THEY ACKNOWLEDGE THAT

13   DECEMBER 1 IS WHEN FACEBOOK ORIGINALLY SENT THE CEASE AND

14   DESIST LETTER TO LEE POWER, WHO OWNED THE WEBSITE, WHO WASN'T

15   ASSOCIATED WITH THE COMPANY.

16        THAT WASN'T EFFECTIVELY SENT TO THE COMPANY.

17              THE COURT:  SO I'M SORRY TO INTERRUPT YOU.

18              MS. ANDERSON:  YEAH.

19              THE COURT:  COULD YOU INCLUDE THAT IN YOUR BRIEFING?

20   BECAUSE RIGHT NOW I'M NOT GOING TO INCLUDE THE STATUS OF

21   DECEMBER 1 DAMAGES.

22              MS. ANDERSON:  WE WILL.  BUT IN TERMS OF SCOPE,

23   IT'S -- THERE'S -- YOU KNOW, IN ADDITION TO THE NEGOTIATIONS

24   BETWEEN THE PARTIES, FACEBOOK'S EXPRESS ALLOWING -- OBVIOUSLY

25   THEY'LL ARGUE THIS -- OF POWER TO CONTINUE OPERATING FOR A
```

1    CERTAIN PERIOD WHILE THEY NEGOTIATED.

2         AS FAR AS WHEN THE AUTHORIZATION WAS ACTUALLY RESCINDED OR

3    REVOKED, THAT'S STILL AN OPEN QUESTION.

4         THE COURT:  SO LET ME ASK -- I HAVE TWO MORE

5    QUESTIONS AND THEN I WOULD LIKE TO SET THE BRIEFING SCHEDULE.

6    I THINK THAT WOULD BE MOST USEFUL FOR TODAY.

7         YOU KNOW, DEFENDANTS ARE ASSERTING THAT THE SECURITY

8    MANAGER WAS RESPONDING TO SOME ACTIONS THAT OCCURRED BEFORE THE

9    DECEMBER 1 --

10        MR. CHATTERJEE:  IT'S SIMPLY NOT SUPPORTED BY THE

11   EVIDENCE OR THE --

12        MR. VACHANI:  BEFORE THE DATE.  THERE'S NO

13   DECEMBER 1 -- WE HAVEN'T ESTABLISHED THE DATE.

14        THE COURT:  I'M SORRY.  LET'S LET MR. CHATTERJEE

15   FINISH AND THEN YOU CAN CONTINUE.

16        MR. CHATTERJEE:  YOUR HONOR, THE EVIDENCE THAT WAS

17   SUBMITTED, AND JUDGE WARE AND YOU SO FOUND, WAS THAT THERE WAS

18   NO ACTIVITY BY THE SECURITY UNTIL AFTER THE CEASE AND DESIST

19   LETTER WAS FILED.

20        I'M A LITTLE SURPRISED, YOUR HONOR, TO BE HEARING THESE

21   COMMENTS NOW.  WE REPEATEDLY TRIED TO ENGAGE IN A MEET AND

22   CONFER WITH OPPOSING COUNSEL, AND THE FIRST TIME WE HEARD

23   ANYTHING WAS WHEN THEY FILED THEIR DOCUMENT WITH YOU.

24        SOME OF THESE THINGS ARE THE TYPES OF THINGS WE COULD TRY

25   AND TALK THROUGH AND WORK OUT.  I DON'T KNOW IF THEY WOULD GET

1    WORKED OUT.

2         BUT IT'S A LITTLE FRUSTRATING FOR US, GIVEN THE LENGTH OF

3    TIME THIS CASE HAS BEEN AROUND AND THE ACCOMMODATIONS WE'VE

4    MADE, TO HAVE THEM RAISING THESE ISSUES FOR THE FIRST TIME IN A

5    COURT HEARING.

6         MS. ANDERSON:  THIS IS THE FIRST TIME I'M HEARING THE

7    REQUEST TO MEET AND CONFER ON THIS.

8         ALSO, WE'VE RAISED THESE ISSUES IN EVERY BRIEFING THAT

9    I'VE --

10         THE COURT:  WELL, YOU FILED SEPARATE JOINT CASE

11    MANAGEMENT STATEMENTS BECAUSE OF PERSONAL CRISES.  IN THE

12    FUTURE, IF YOU COULD FILE JOINT ONES, THAT WOULD, I THINK,

13    PROVIDE THE MEET AND CONFER PERHAPS THAT COULD HAVE HELPED

14    HERE.

15         MS. ANDERSON:  UM-HUM.

16         THE COURT:  NOW, WASN'T THE ATTORNEYS' FEES ISSUE

17    ALREADY LITIGATED?  WHY IS THAT -- I JUST FEEL LIKE THERE'S A

18    CERTAIN AMOUNT OF RELITIGATION HERE THAT'S HAPPENING.

19         MS. ANDERSON:  WELL, THERE IS BECAUSE --

20         THE COURT:  I MEAN, JUDGE WARE ALREADY FOUND THAT

21    FACEBOOK'S COSTS RESPONDING INCLUDED ATTORNEYS' FEES.  I

22    ALREADY MADE THE DETERMINATION THAT THERE'S NO CLEAR ERROR IN

23    THAT FINDING.

24         SO WHY ARE WE NOW -- WHY ARE YOU NOW TRYING TO RELITIGATE

25    THAT?

```
 1                 MS. ANDERSON:  WELL --

 2                 MR. CHATTERJEE:  WELL, THAT'S MY POINT, YOUR HONOR,

 3        IS THAT WE SHOULDN'T BE RELITIGATING THIS BECAUSE YOU SAID

 4        THERE WAS NO DISPUTE ON IT.

 5             AND THERE'S A SLIGHT TIMING CHANGE GIVEN WHAT THE NINTH

 6        CIRCUIT SAID, BUT I DON'T THINK THE EVIDENCE IS ANY DIFFERENT.

 7                 MS. ANDERSON:  WELL, IT --

 8                 THE COURT:  WELL, I'M JUST --

 9                 MS. ANDERSON:  THE PROBLEM --

10                 THE COURT:  -- ASKING THE PARTIES -- THIS IS NOT JUST

11        A DO-OVER, YOU KNOW, TO NOW RELITIGATE THINGS.

12             YOU KNOW, A RELATED ISSUE IS ABOUT A LOT OF THE ISSUES

13        WITH REGARD TO THE DAMAGES WERE NOT RAISED BEFORE JUDGE WARE,

14        AND SO I -- YOU KNOW, THIS IS NOT AN OPPORTUNITY TO GET A

15        DO-OVER, OKAY?

16                 MS. ANDERSON:  ABSOLUTELY.  SO AS FAR AS WHAT -- JUST

17        BASED ON EVERYTHING THAT WAS SUBMITTED TO JUDGE WARE AND THAT

18        WAS CONSIDERED IN THE ORIGINAL MOTIONS FOR SUMMARY JUDGMENT,

19        THE EVIDENCE THAT FACEBOOK PROVIDED IN SUPPORT OF THEIR DAMAGES

20        CLAIM, BOTH TO SUBSTANTIATE STANDING AND FOR ACTUAL DAMAGES,

21        WAS VERY GENERAL.  SO THE PROBLEM IS WE'RE NOW LOOKING AT A

22        DIFFERENT, A DIFFERENT START DATE FOR -- AS FAR AS THE

23        VIOLATION.  WE'RE NOT SURE WHAT THAT IS.  THAT'S THE ONE THING

24        THAT WE NEED TO ESTABLISH IS WHEN AUTHORIZATION WAS REVOKED.

25                 THE COURT:  RIGHT.
```

```
 1              MS. ANDERSON:  AND --

 2              THE COURT:  I'M SORRY TO INTERRUPT YOU.

 3          YOUR CLAIM THAT ATTORNEYS' FEES ARE NOT COMPENSABLE

 4      DAMAGES UNDER THE CFAA, THAT'S ALREADY BEEN LITIGATED.  THAT'S

 5      THE LAW OF THE CASE.

 6              MS. ANDERSON:  OKAY.  BUT THEY HAVEN'T PROVIDED --

 7              THE COURT:  PLEASE DON'T RETREAD --

 8              MS. ANDERSON:  SURE.  THEY HAVEN'T PROVIDED --

 9              THE COURT:  -- THAT IN YOUR BRIEFS.  THAT'S ALREADY

10      BEEN DECIDED BY JUDGE WARE.  THAT'S ALREADY BEEN DECIDED BY ME.

11      IT'S NOT A REOPEN TIME NOW FOR THAT.  OKAY?

12          NOW, LET ME ASK ABOUT, SIMILARLY, YOU'RE RAISING, RELATED

13      TO THE ATTORNEYS' FEES ISSUE, THAT PERKINS COIE WAS ON A

14      RETAINER, IT WAS A FIXED FEE FOR ALL ENFORCEMENT EFFORTS.

15              THAT ARGUMENT DOES NOT APPEAR TO HAVE BEEN RAISED EARLIER.

16              MS. ANDERSON:  WELL, THIS -- THE ISSUE OF TIMING

17      WASN'T NARROWED EARLIER.  SO IF WE'RE LOOKING AT -- IN OTHER

18      WORDS --

19              THE COURT:  THERE WERE A LOT OF DAMAGES -- I'M SORRY

20      TO INTERRUPT YOU, BUT A LOT OF YOUR DAMAGES ARGUMENTS ARE NOT

21      RELATED TO THE DATE ISSUE.

22              MS. ANDERSON:  WELL, THAT IS RELATED TO THE DATE

23      ISSUE, BECAUSE IF THEY'RE SAYING -- SO WHAT THEY PRESENTED IS

24      ESTIMATES FROM A THIRD PARTY BASED LARGELY ON CONVERSATIONS, IF

25      YOU LOOK AT HIS REPORT, AN ESTIMATE OF 50 HOURS, AN ESTIMATE OF
```

1    THE AMOUNT THAT IT MIGHT HAVE COST IF THEY HAD PAID HIM FOR

2    THAT.

3         AND THEN IN TERMS OF THE ATTORNEYS' FEES, THEY GIVE

4    MONTHS.  AND SO IF WE'RE -- IF THEY'RE SAYING FOR DECEMBER IT

5    WAS THIS AMOUNT, BUT WHEN WE -- WHEN WE ESTABLISH AT WHAT POINT

6    THE VIOLATION ACTUALLY OCCURRED AND THAT'S INTO DECEMBER, IT'S

7    AT LEAST AFTER THE 1ST JUST BASED ON THE NINTH CIRCUIT'S

8    DECISION, THEN THEY HAVEN'T PROVIDED ANY KIND OF BREAKDOWN

9    WHATSOEVER.

10         SO THEY'RE CLAIMING THAT ALL OF THE DAMAGES THAT THEY -- I

11   MEAN, WHETHER THEY'RE SAYING THEY SHOULD BE ENTITLED TO THAT

12   NOW OR NOT, THEY DID SAY IN THEIR STATEMENT THAT THEY -- THAT

13   WHAT THEY REQUESTED BEFORE, THE 80, SHOULD BE -- IS STILL VALID

14   EVEN THOUGH THAT COVERED A PERIOD OF TIME THAT HASN'T BEEN

15   ESTABLISHED TO BE VIOLATED.

16         THE COURT:  WELL, I REALIZE YOU MAY HAVE DISPUTES

17   ABOUT PERHAPS INDIVIDUAL CALCULATIONS BASED ON THE DATE, BUT I

18   REALLY WANT TO EMPHASIZE THAT THIS IS NOT A DO-OVER TO LITIGATE

19   THINGS THAT ARE ALREADY LAW OF THE CASE.  OKAY?  I DO NOT WANT

20   TO BE SEEING ANY BRIEFING ON WHETHER ATTORNEYS' FEES ARE

21   COMPENSABLE DAMAGES UNDER THE CFAA.  THAT'S THE LAW OF THE

22   CASE.  WE'RE NOT RETREADING AND REOPENING ISSUES THAT HAVE NOW

23   BEEN DECIDED.

24         NOW, WHAT IS THE BEST FORM FOR THIS BRIEFING?  SHOULD IT

25   BE ANOTHER SUMMARY JUDGMENT MOTION JUST SO I KNOW WHO'S GOT THE

```
1    BURDEN, WHAT THE STANDARD IS?  SHOULD IT BE ANOTHER SUMMARY

2    JUDGMENT?

3              MR. CHATTERJEE:  YOU KNOW, I DON'T THINK SO, YOUR

4    HONOR.

5              THE COURT:  OKAY.

6              MR. CHATTERJEE:  JUST -- I'M VERY WORRIED ABOUT THIS

7    BECOMING A DO-OVER BECAUSE EVERYTHING IN THIS CASE HAS ALWAYS

8    BECOME A DO-OVER.  SO WE REALLY WOULD LIKE TO DO OUR BEST TO

9    GET THIS DONE.

10             THE COURT:  SURE.

11             MR. CHATTERJEE:  YOUR HONOR, IN YOUR ORDER, YOU FOUND

12   NOT ONLY DID JUDGE WARE SAY THERE WAS NO ISSUE AS TO THE

13   ACCURACY OR VERACITY OF THE DAMAGES EXPENDITURES, BUT THEN YOU

14   LOOKED AT IT YOURSELF AND YOU SAID THAT THEY HADN'T CHALLENGED

15   MR. OSTILLER'S REPORT AT ALL, AND THAT'S IN FOOTNOTE 13 OF THE

16   ORDER.

17        I WANT TO -- I THINK THE WAY TO DO THIS IS IF THEY'RE

18   GOING TO PUT ON A CHALLENGE TO THE EVIDENCE THAT WE

19   SUBMITTED -- BECAUSE RIGHT NOW THE STATE OF THE RECORD IS THERE

20   IS NO DISPUTED ISSUE OF FACT ON THE AMOUNT OF DAMAGES.

21        IF THERE'S SOME QUIBBLE THEY HAVE WITH THE OSTILLER

22   REPORT, WHICH THEY HAVE NOT PUT IN ANY EVIDENCE TO THE

23   CONTRARY, THEY SHOULD IDENTIFY WHAT IT IS BECAUSE THAT -- AT

24   THIS POINT THE STATE OF THE RECORD IS THAT IT ISN'T A DISPUTED

25   THING.
```

1          AND I THINK THAT'S, THAT'S THE WAY THAT WE SHOULD BE

2     GOING, BECAUSE IF THEY HAVE AN ISSUE, THEY CAN FILE A

3     SUPPLEMENTAL BRIEF ON WHATEVER THEIR CHALLENGE IS AND THEN WE

4     CAN RESPOND TO IT.

5               THE COURT:  ALL RIGHT.  I THINK THAT SOUNDS FAIR.

6          DO YOU THINK -- I KNOW BOTH PARTIES WERE NOT REALLY

7     OPEN -- OR YOU DIDN'T THINK AN ADR SESSION WOULD BE SUCCESSFUL.

8          WOULD IT AT ALL HELP, IN SORT OF NARROWING THE ISSUES FOR

9     THE BRIEFING, TO HAVE A SETTLEMENT CONFERENCE WITH A MAGISTRATE

10    JUDGE?

11              MR. CHATTERJEE:  WE'RE OPEN TO DOING THAT.

12         I DO THINK, YOUR HONOR, THAT THE NUMBER ONE ISSUE FROM OUR

13    PERSPECTIVE IS GETTING THAT INJUNCTION IN PLACE.

14              THE COURT:  OKAY.

15              MR. CHATTERJEE:  AND I THINK THAT'S THE THING THAT

16    WILL LIKELY MOVE THE NEEDLE THE MOST.

17              THE COURT:  UM-HUM.

18              MR. CHATTERJEE:  AND I DON'T -- I STILL NOW, I DON'T

19    KNOW WHAT THEIR ISSUE IS WITH OUR PROPOSAL.

20              THE COURT:  OKAY.  BUT I THINK THAT THE PERMANENT

21    INJUNCTION, IF IT'S GOING TO BE BRIEFED, SHOULD BE BRIEFED

22    TOGETHER WITH THE DAMAGES.

23              MR. CHATTERJEE:  THAT'S FINE.

24              THE COURT:  BECAUSE I DON'T WANT TO BIFURCATE AND TRY

25    TO DO THE INJUNCTION FIRST.

```
 1              MR. CHATTERJEE:  NO, I AGREE WITH THAT.

 2              THE COURT:  ALL RIGHT.

 3              MR. CHATTERJEE:  THAT'S FINE IF YOU WANT TO DO THAT.

 4              THE COURT:  ALL RIGHT.  WELL, WHY DON'T WE DO THIS?

 5              MS. ANDERSON:  SO MAY I ASK ONE QUESTION JUST FOR

 6      CLARIFICATION WITH RESPECT TO THE ATTORNEYS' FEES?

 7              SO IN GENERAL, THE ISSUE, AND THE ISSUES THAT WERE POINTED

 8      OUT WITH THE REPORT, GO TO THE FACT THAT THERE'S NO

 9      ITEMIZATION.  SO IF THERE'S -- WE ARE TALKING ABOUT FIGURING

10      OUT THE DAMAGES DURING THE PERIOD OF TIME THAT THE NINTH

11      CIRCUIT SAYS DAMAGES ARE APPLICABLE.

12              THE OSTILLER REPORT SAYS DECEMBER, OR DECEMBER 1.  IT'S

13      NOT BROKEN DOWN INTO -- YOU KNOW, THERE'S NO LISTING OF -- YOU

14      KNOW, NO SCHEDULE OF HOURS.  THEY DIDN'T PROVIDE ANY SPECIFICS.

15              SO WHAT WE'RE SAYING IS THERE SHOULD BE A BRIEFING, AT THE

16      VERY LEAST, AND FACEBOOK SHOULD PROVIDE THAT INFORMATION.

17              IF THEY'RE GOING OFF OF -- THEY'RE SAYING THAT WHAT THEY

18      PROVIDED IS -- WELL, ALL THEY HAVE SUBSTANTIATES THAT.

19              THE PROBLEM IS THAT IT SPANS A PERIOD OF TIME THAT THE

20      NINTH CIRCUIT SAID IS INAPPLICABLE.  AND THAT'S WHY THEY

21      REMANDED -- THAT'S WHY THEY VACATED THAT, THE COMPENSATORY

22      DAMAGES ORDER.  OTHERWISE THEY WOULD HAVE LEFT IT.

23              SO WE AREN'T TRYING TO RELITIGATE EVERYTHING HERE.  IT'S

24      JUST A MATTER OF DAMAGES AT THIS POINT ARE IMPORTANT.  WE'VE

25      GOTTEN IT DOWN TO JUST THIS -- YOU KNOW, THE CAN-SPAM WAS
```

 1    REMOVED, SO WE CAN FOCUS ON THIS.

 2         BUT THEY SHOULD BE ABLE TO PROVIDE EVIDENCE OF THEIR

 3    DAMAGES DURING THE TIME THAT YOU, THAT YOU ESTABLISHED IS WHEN

 4    THE VIOLATION OCCURRED.

 5              THE COURT:  ALL RIGHT.  WHAT I'M LOOKING AT IS PAGE 6

 6    OF THE DEFENDANT'S JOINT CASE MANAGEMENT STATEMENT, LINES 1

 7    THROUGH 2.  IT SAYS, "COSTS NOT RELATED TO COMPUTER IMPAIRMENT

 8    OR COMPUTER DAMAGES ARE NOT COMPENSABLE UNDER THE CFAA," AND IT

 9    CITES AN EASTERN DISTRICT OF CALIFORNIA CASE FROM 2013.

10              MS. ANDERSON:  YOU'RE SAYING THAT --

11              THE COURT:  AND YOU'RE SAYING THAT YOU ARE NOW

12    CONTENDING THAT ATTORNEYS' FEES ARE NOT COMPENSABLE.  OKAY?

13         I WANT TO TURN YOUR ATTENTION TO JUDGE WARE'S ORDER, WHICH

14    IS ECF NUMBER 275 AT 8 WHERE HE ALREADY FOUND THAT FACEBOOK'S

15    COSTS OF RESPONDING, INCLUDING ATTORNEYS' FEES, CONSTITUTED

16    COMPENSABLE LOSS UNDER THE CFAA AND CALIFORNIA PENAL CODE

17    SECTION 502.

18         AND THEN I WANT TO TURN YOUR ATTENTION TO MY ORDER, WHICH

19    IS ECF NUMBER 373, ON PAGE 15 WHERE I FOUND NO CLEAR ERROR IN

20    JUDGE WARE'S DETERMINATION THAT FACEBOOK'S COSTS MEET THE

21    DEFINITION OF LOSS PROVIDED BY THE CFAA OR CALIFORNIA PENAL

22    CODE SECTION 502.

23         SO THAT'S WHERE I'M COMING FROM.  I'M READING THAT YOU'RE

24    NOW CITING CASE LAW THAT SEEMS TO STAND FOR THE PROPOSITION

25    THAT ATTORNEYS' FEES ARE NOT COMPENSABLE, AND I'M TELLING YOU

1          THAT LAW OF THE CASE, PURSUANT TO JUDGE WARE'S ORDER AND MY

2     ORDER, HAS ALREADY DECIDED THAT ISSUE AND I DO NOT WANT --

3               MS. ANDERSON:  I UNDERSTAND.

4               THE COURT:  -- THAT LEGAL ISSUE RELITIGATED BECAUSE

5     IT'S IN YOUR STATEMENT THAT YOU FILED ON FEBRUARY 9TH, 2017, AS

6     ECF DOCKET NUMBER 409.

7               MS. ANDERSON:  I UNDERSTAND.

8               THE COURT:  THAT'S WHAT I'M TALKING ABOUT.

9               MS. ANDERSON:  I UNDERSTAND THAT.

10              THE COURT:  SO I DON'T WANT TO SEE THAT CASE CITED IN

11    YOUR SUPPLEMENTAL BRIEF BECAUSE THAT'S THE LAW OF THE CASE.

12    THAT'S NOT A DO-OVER.

13              MS. ANDERSON:  THAT'S MY QUESTION.

14         IN TERMS OF THAT SCOPE, HOWEVER, THEY INCLUDED, EVEN IN

15    THEIR -- IN THE OSTILLER BRIEF, IT PROVIDES FOR ATTORNEYS'

16    FEES -- THEY CLAIMED IT AS COSTS IN THAT 80 -- OR IN THE 75

17    THAT IS THE ATTORNEYS' FEES.

18         PART OF THAT GOES FROM JANUARY TO MARCH.

19         WELL, THEY FILED THE LAWSUIT AT THE END OF DECEMBER, SO

20    ARE THEY CLAIMING THAT PART OF THE -- THIS IS THE SAME FIRM WHO

21    FILED THE LAWSUIT.

22         SO IT'S NOT CLEAR IF YOU'RE SAYING THAT THEY'RE ENTITLED

23    TO THREE MONTHS OF THEIR ATTORNEYS' FEES IN THIS CASE, EVEN

24    THOUGH THEY NEVER REQUESTED FEES.

25         THAT'S -- THAT'S WHAT WE'RE -- THAT IS THE PART THAT WE DO

1    NEED SOME CLARIFICATION ON.

2         MR. CHATTERJEE:  YOUR HONOR, THAT DOES SEEM LIKE A

3    DO-OVER OF WHAT YOU JUST READ.  IT -- THE ONE ISSUE THAT

4    THEY'VE IDENTIFIED IS THE FACT THAT DECEMBER 1 MAY HAVE BEEN

5    INCLUDED OR MAY NOT HAVE BEEN INCLUDED, THAT ONE DAY.

6         WE TOOK OUT --

7         MR. VACHANI:  NO.

8         MS. ANDERSON:  WE'RE NOT ARGUING THAT AT THIS POINT.

9         MR. CHATTERJEE:  WE TOOK OUT THE ENTIRE MONTH, THE

10   ENTIRE MONTH OF DECEMBER IN WHAT WE PUT IN OUR PAPERS TO YOU.

11        MS. ANDERSON:  WELL, THAT WAS THE ENTIRE -- THAT WAS

12   THE OTHER THING.

13        MR. CHATTERJEE:  AND THEY'RE STILL HERE ARGUING

14   SAYING THEY SHOULDN'T BE RESPONSIBLE.

15        WE CAN DEAL WITH IT IN THE BRIEFING, BUT I DO THINK THAT

16   THEY NEED TO SPECIFY WHAT THEIR OBJECTION IS THAT ISN'T JUST A

17   RELITIGATION.

18        WHAT I HEAR THEM SAYING IS THEY'RE TRYING TO REOPEN

19   DISCOVERY, WHICH THAT SHIP I THINK HAS LONG SINCE SAILED.  THEY

20   HAD AN OPPORTUNITY TO DEPOSE OUR EXPERT.  THEY HAD AN

21   OPPORTUNITY TO DEPOSE ALL THE FACT WITNESSES.  THEY CHOSE NOT

22   TO DO THAT.

23        MS. ANDERSON:  EVERYTHING THAT WE'VE REFERENCED AND

24   THAT WE'LL REFERENCE IN THE BRIEF IS ON THE RECORD.  IT'S

25   PROVIDED BY FACEBOOK.  NOBODY IS LOOKING TO REOPEN DISCOVERY.

1    THE -- FIRST OF ALL, WE DISAGREE THAT WE'RE TALKING ABOUT

2    ONE DAY.

3         THE COURT:  OKAY.  I'M SORRY TO INTERRUPT YOU.

4         MS. ANDERSON:  SURE.

5         THE COURT:  I APOLOGIZE, BUT I HAVE ANOTHER CRIMINAL

6    SENTENCING THIS AFTERNOON, WE HAVE FIVE CMC'S, THE SENTENCING I

7    DID THIS MORNING, THEY HAVE TO COME BACK FOR A PRETRIAL

8    SUPERVISION ELECTRONIC MONITORING ISSUE.  SO I REALLY CANNOT

9    EFFECTIVELY HAVE A SUBSTANTIVE ORAL ARGUMENT ON THE MOTION.

10   LET'S JUST SET THE BRIEFING SCHEDULE.

11        HOW QUICKLY -- I KNOW FACEBOOK WANTS THIS RESOLVED

12   QUICKLY.  HOW QUICKLY CAN YOU FILE YOUR BRIEF?  AND I WANT IT

13   TO BE SPECIFIC BECAUSE REALLY VAGUE ARGUMENTS AS -- SOME OF THE

14   STATEMENTS IN THE JOINT CASE MANAGEMENT STATEMENTS, IT WAS

15   UNCLEAR -- AND I'M SAYING THIS ON BOTH SIDES -- IT WAS REALLY

16   HARD TO SORT OF CRYSTALLIZE WHAT THE ISSUE IS.  SO IF YOU COULD

17   BE MORE SPECIFIC, THAT WOULD BE GREAT.

18        HOW QUICKLY CAN YOU DO IT?  TODAY IS FEBRUARY 15TH.

19         MS. ANDERSON:  CAN WE SET IT FOR MARCH 15TH?

20        ARE THESE SIMULTANEOUS?

21         THE COURT:  NO.  FACEBOOK WILL DO THE RESPONSE.

22        WHEN IS YOUR RESPONSE?

23         MR. CHATTERJEE:  WE CAN GET IT DONE, LET'S SAY, THREE

24   WEEKS AFTERWARDS.  WE CAN DO IT TWO WEEKS AFTERWARDS, YOUR

25   HONOR, IF WE COMPRESS THEIR TIME A LITTLE BIT.

```
1              THE COURT:  DO YOU WANT TO SAY MARCH 8TH AND

2    MARCH 29TH?  IS THAT --

3              MR. CHATTERJEE:  THAT'S FINE, YOUR HONOR.

4              THE COURT:  OKAY.  THEN I NEED TO FIND A HEARING

5    DATE.

6         (PAUSE IN PROCEEDINGS.)

7              THE COURT:  OKAY.  I WILL SET THIS FOR A HEARING ON

8    APRIL 13.

9              MS. ANDERSON:  ONE POINT OF CLARIFICATION.  IF

10   FACEBOOK IS SEEKING DAMAGES, SHOULD THEY MAKE THE INITIAL

11   BRIEF?  OR ARE WE GOING OFF OF WHAT THEY'RE REQUESTING IN THE

12   CASE MANAGEMENT STATEMENT?

13             THE COURT:  WELL, THERE HAVE ALREADY BEEN -- WELL,

14   WHY DON'T I LET MR. CHATTERJEE RESPOND?

15             MR. CHATTERJEE:  YOUR HONOR, WE'VE SUBMITTED THE

16   EVIDENCE IN THE ORDER ON SUMMARY JUDGMENT.  THE COURT FOUND

17   THERE WAS NO DISPUTED ISSUE OF FACT AND AWARDED US DAMAGES

18   BASED UPON THE EVIDENTIARY SUBMISSIONS THAT WE MADE.

19        WHAT I HAD SUGGESTED HERE WAS THAT -- WAS THAT MR. VACHANI

20   AND POWER VENTURES SIMPLY FILE A SUPPLEMENTAL BRIEF ON THAT

21   ISSUE.

22        WHAT I'M TRYING TO DO REALLY IS MINIMIZE THE AMOUNT OF

23   EXPENSE GOING INTO THIS, AND SO MY THOUGHT WAS IF THEY THOUGHT

24   THERE WAS SOMETHING SUPPLEMENTAL THAT THEY NEEDED TO SAY

25   ASSOCIATED WITH THIS ISSUE, THAT THEY COULD MAKE WHATEVER
```

1    SPECIFIC OBJECTION TO WHAT MODIFICATIONS NEEDED TO BE MADE, AND

2    THEN WE WOULD RESPOND TO THAT.

3         MS. ANDERSON:  AND WE WOULD HAVE AN OPPORTUNITY TO

4    REPLY IF THERE ARE NEW ARGUMENTS?

5         AND, I MEAN, THIS IS FROM -- I'M A LITTLE CONFUSED BECAUSE

6    THE EVIDENCE THAT THEY'RE REFERRING TO INCLUDES DATES THAT

7    AREN'T --

8         THE COURT:  ALL RIGHT.  WHY DON'T WE DO THIS:  WHY --

9    I KNOW EVERYONE IS TRYING TO KEEP COSTS LOW BECAUSE THE CASE

10   HAS GONE ON FOR QUITE SOME TIME.

11       I THINK MS. ANDERSON RAISES A FAIR POINT, THAT DAMAGES

12   WOULD BE ON -- THE BURDEN WOULD BE ON THE PLAINTIFFS, SO WHY

13   DON'T YOU GO FIRST AND LAST?

14       MR. CHATTERJEE:  WE WILL DO THAT, YOUR HONOR.

15       THE COURT:  OKAY.

16       MR. CHATTERJEE:  IT --

17       THE COURT:  SO HOW MUCH TIME DO YOU NEED?  CAN YOU DO

18   IT MARCH 8TH?  THAT'S IN THREE WEEKS.

19       MR. CHATTERJEE:  I THINK WE CAN DO MARCH 8TH, YES.

20       THE COURT:  OKAY.  SO THEN THE OPENING BRIEF BY THE

21   PLAINTIFF WILL BE MARCH 8TH, AND YOUR OPPOSITION WILL BE

22   MARCH 29TH.

23       MS. ANDERSON:  UM-HUM.

24       THE COURT:  AND THEN WHEN CAN YOU DO A REPLY?

25       MR. CHATTERJEE:  WE CAN DO IT TWO WEEKS LATER, YOUR

```
 1    HONOR.

 2                  THE COURT:  SO APRIL -- THAT WOULD BE THE 12TH.

 3                  MS. ANDERSON:  AND DID WE ESTABLISH THAT --

 4                  MR. CHATTERJEE:  AND YOUR HONOR IS FINE --

 5                  MS. ANDERSON:  -- THERE IS EVIDENCE ALREADY ON THE

 6    RECORD?  THAT IS WHAT FACEBOOK IS SAYING.

 7                  MR. CHATTERJEE:  WHAT THEY'RE ASKING US TO DO IS TO

 8    RELITIGATE THE ISSUE, AND IF THEY'RE GOING TO RAISE THESE

 9    ISSUES, WE WILL ADDRESS, YOU KNOW, THE ISSUES AS WE UNDERSTAND

10    THEM AND WE'LL SUBMIT WHATEVER EVIDENCE WE THINK WE NEED TO

11    ASSOCIATED WITH THAT, YOUR HONOR.

12                  MS. ANDERSON:  THIS ISN'T INCONSISTENT WITH WHAT

13    JUDGE WARE OR WHAT YOU SAID, YOUR HONOR.  THIS IS JUST

14    CONSISTENT WITH WHAT THE NINTH CIRCUIT IS ORDERING, WHICH IS

15    NARROW THOSE DAMAGES, AND THEY'VE PROVIDED EVIDENCE THAT WAS

16    BROADER.  SO THEY NEED TO PROVIDE EVIDENCE THAT IS NARROWER.

17        IN OTHER WORDS --

18                  THE COURT:  WELL, THEY ARE NARROWING, RIGHT?  THEY'RE

19    DROPPING FROM 80,543 TO 46,883.  I THINK THERE IS SOME

20    NARROWING THAT THEY ARE DOING.

21                  MS. ANDERSON:  THEY THREW OUT THE ONE MONTH --

22                  THE COURT:  OKAY, LOOK, LET'S SET THE BRIEFING

23    SCHEDULE, AND PLEASE PLACE YOUR ARGUMENTS IN YOUR BRIEFS, OKAY?

24        SO MARCH 8, MARCH 29, APRIL 12TH WILL BE THE REPLY, AND

25    LET'S SET A NEW HEARING DATE BECAUSE THE 13TH WILL NOW NOT GIVE
```

1        US ENOUGH TIME TO PREPARE.

2             WHY DON'T WE SET THIS FOR -- SO APRIL 12TH --

3             CAN I ASK MS. GARCIA, WHAT DO WE HAVE SET ON THE 27TH?  I

4    HAVE FINAL APPROVAL OF DATTA, DISPOSITIVES IN WATKINS.

5             THE CLERK:  CORRECT.

6             THE COURT:  MOTION TO DISMISS AND MOTION TO DECLARE

7    VEXATIOUS LITIGATION IN BROOKE, MOTION TO DISMISS IN HERGUAN,

8    AND A BANKRUPTCY APPEAL.

9         IS THAT IT FOR THE 27TH, OR IS THERE ANYTHING ELSE?

10            THE CLERK:  ONE SPECIAL SET CRIMINAL MATTER THAT

11   MORNING, BUT THERE'S NOTHING ELSE IN THE AFTERNOON.

12            THE COURT:  OKAY.

13        OTHERWISE WHAT DOES MAY 4TH LOOK LIKE?

14            THE CLERK:  FURTHER PRETRIAL CONFERENCE IN CHEN V.

15   FLEETCOR; GRADY VERSUS EXPERIAN, DISPOSITIVE MOTIONS; AND

16   MOTIONS TO DISMISS IN NEVAREZ VERSUS FORTY NINERS.

17            MS. ANDERSON:  I WILL BE ON INTERNATIONAL FLIGHTS ON

18   THE 27TH AND THE 4TH.  BEFORE -- ANY DAY BEFORE OR AFTER THAT.

19   OR I CAN -- I CAN TRY TO MOVE THEM.

20            THE COURT:  WELL, TO BE FRANK, I'M LIKELY TO VACATE

21   THE HEARING AND JUST ISSUE A RULING ON THE PAPERS.  THERE'S

22   PROBABLY A VERY STRONG LIKELIHOOD THAT THAT'S GOING TO HAPPEN,

23   THAT I'M NOT GOING TO HAVE THE HEARING.

24        BUT I DO WANT TO SET IT ON A DATE THAT YOU COULD BE

25   AVAILABLE IN THE EVENT THERE IS A HEARING.  SO YOU ARE NOT

```
 1       AVAILABLE ON APRIL 27TH AND YOU'RE NOT AVAILABLE ON MAY 4TH?

 2       IS THAT RIGHT?

 3               MS. ANDERSON:  I MEAN, I'VE GOT TWO INTERNATIONAL

 4       FLIGHTS.  DEPENDING ON THE TIMING, I COULD TRY TO CALL IN, BUT

 5       I'D RATHER BE HERE.

 6               THE COURT:  I COULD SET IT ON MAY 11TH, OR I COULD

 7       TRY TO SET IT ON -- WHEN ARE YOUR FLIGHTS?

 8               MS. ANDERSON:  MAY 11TH IS GREAT.  YOU CHOSE THE

 9       BEGINNING AND THE END.  SO ANYTHING BEFORE OR AFTER.

10               THE COURT:  SO WHEN ARE YOU -- I'M SORRY, WHEN ARE

11       YOU LEAVING?

12               MS. ANDERSON:  THE 27TH AND BACK ON THE -- FLYING

13       BACK ON THE 4TH AND 5TH.

14               THE COURT:  I SEE.  DO YOU HAVE ANY OBJECTION TO

15       HAVING THE HEARING ON THE 11TH?  THAT'S A LITTLE BIT LATER THAN

16       PROBABLY WHAT YOU WANTED.

17               MR. CHATTERJEE:  WE WOULD JUST LIKE TO GET IT DONE,

18       AND DONE SOONER.  IF MAY 11 IS THE EARLIEST WE CAN DO, WE'LL DO

19       THAT.

20           WE COULD TRY AND MAKE THE TIMEFRAMES FOR THE BRIEFING

21       EARLIER SO WE CAN GET IT DONE EARLIER.  THAT'S ONE POSSIBILITY.

22               THE COURT:  WELL, THE OTHER THING I COULD DO IS I

23       COULD SPECIALLY SET IT ON -- WELL, LET ME JUST MAKE SURE WITH

24       MS. GARCIA, DO WE HAVE ANY TRIALS SET ON APRIL 24TH OR 25TH?

25       THAT'S MONDAY OR TUESDAY.
```

```
1              SO IT WOULD BE TWO OR THREE DAYS BEFORE YOUR FLIGHT.

2              MS. ANDERSON:  THAT'S FINE.

3              THE CLERK:  APRIL 24TH, WILLIAM PHILIPS, ET AL, V.

4    FORD, ST. PAUL FIRE VERSUS INSURANCE COMPANY OF STATE OF

5    PENNSYLVANIA, AND A SPECIAL SET SENTENCING MATTER.

6              THE COURT:  OKAY.  WHY DON'T WE --

7         WHAT DO WE HAVE ON THE 13TH?  THE PHILIPS V. FORD PTC,

8    ST. PAUL FIRE PTC, NEUROSPINE MOTION FOR LEAVE, AND A MOTION TO

9    DISMISS IN NISSAN.  DOES THAT SOUND RIGHT?

10             THE CLERK:  YES.  AND THE SMALL BUSINESS

11   ADMINISTRATION.

12             THE COURT:  OKAY.  AND THEN WE HAVE THE SHAYOTAS ON

13   THE 12TH, AND THAT'S ACTUALLY --

14        WHAT DO WE HAVE ON THE 18TH OF APRIL?

15        OR I CAN SET THIS ON APRIL 25.  WHY DON'T WE SET IT ON

16   APRIL 25 AT 2:00 O'CLOCK?  OKAY?

17             MR. VACHANI:  YOUR HONOR --

18             THE COURT:  ALL RIGHT.  WHAT ELSE DO WE NEED?

19             MR. CHATTERJEE:  YOUR HONOR, WE HAVE ONE, ONE OTHER

20   THING --

21             MR. VACHANI:  I HAVE TO --

22             MR. CHATTERJEE:  -- ONE OTHER THING THAT WE WOULD

23   LIKE TO RAISE --

24             THE COURT:  WHAT'S THAT?

25             MR. CHATTERJEE:  -- WHICH IS THE NINTH CIRCUIT
```

```
1        AFFIRMED THE SANCTIONS ORDER OF $39,796.73.  THAT ISSUE IS NO

2    LONGER A CONTESTED ISSUE AND IT'S BEEN AFFIRMED.

3        WE'D LIKE TO HAVE A COURT ORDER THAT THEY PAY THAT WITHIN

4    THE NEXT 30 DAYS.

5            THE COURT:  ALL RIGHT.  I'M LOOKING AT THE NINTH

6    CIRCUIT ORDER.  THEY DID AFFIRM DISCOVERY SANCTIONS, SO THAT IS

7    ORDERED.

8        WHY DON'T -- DO YOU WANT TO PREPARE AN ORDER -- OR I'LL

9    JUST INCLUDE THAT IN THE CASE MANAGEMENT ORDER.

10       SO YOU ARE TO PAY THE DISCOVERY SANCTION -- LET'S JUST GO

11   AHEAD AND SET A DATE.

12           MR. CHATTERJEE:  THAT'S FINE, YOUR HONOR.

13   MARCH 15TH?

14           MR. VACHANI:  YOUR HONOR --

15           THE COURT:  THAT'S FINE.

16       YES?

17           MR. VACHANI:  YOUR HONOR, I WANTED TO BRING UP ONE

18   ISSUE RELATING TO THE PERSONAL LIABILITY AND THE INJUNCTION

19   AGAINST ME PERSONALLY.

20       AS ONE OF THE -- I THINK THE FUNDAMENTAL PROBLEM OF THE

21   NINTH CIRCUIT DECISION IS THAT A CORE PREMISE OF THE ENTIRE

22   CASE -- SO MUCH OF THIS ENTIRE CASE WAS REFERENCING ACTIONS

23   RELATING TO THE CAN-SPAM ISSUE.  TESTS REGARDING PERSONAL

24   LIABILITY AND THE INJUNCTION HEAVILY REFERRED AND WERE PASSED

25   IN THE LEGAL JUDGMENT RELATING TO THE CAN-SPAM ISSUE AND THAT
```

1    ENTIRE DECISION WAS THROWN OUT.

2          I JUST WONDER HOW SOME OF THESE ISSUES, WITHOUT A CLEAR

3    ANALYSIS OF THE RATIONALE FOR THE PERSONAL INJUNCTION, I

4    REALIZE IT WAS VACATED AND HAS TO BE LOOKED AT -- IT WAS

5    VACATED BY THE COURT.

6          BUT BECAUSE SO MUCH OF THIS CASE AND THE PREMISE OF

7    WRONGDOING WAS THROWN OUT, I'M STILL -- I FIND THAT I'M

8    CONFUSED ON EXACTLY HOW WE ADDRESS THAT, INCLUDING THE FACT

9    THAT WE DON'T EVEN KNOW THE DATE AT WHICH AUTHORIZATION WAS

10   REVOKED ALSO.  I MEAN, THAT COULD BE JUST -- IT COULD HAVE BEEN

11   DECEMBER 30TH.  IT COULD HAVE BEEN DECEMBER 15TH.

12         THESE ISSUES HAVE NOT REALLY BEEN RESOLVED.

13             MS. ANDERSON:  AND THESE ARE NEW ISSUES, TO BE CLEAR.

14             MR. VACHANI:  THESE ARE NEW ISSUES THAT COME AS A

15   RESULT OF THE NINTH CIRCUIT VACATING THE INJUNCTION, AND ALSO

16   AS A RESULT OF THROWING OUT --

17             THE COURT:  OKAY.  BUT THE BASIS OF THE INJUNCTION

18   WAS THREE-FOLD.  I AGREE CAN-SPAM IS GONE, BUT CFAA IS STILL IN

19   EXISTENCE AND IT'S STILL A BASIS FOR AN INJUNCTION, AND SO IS

20   CALIFORNIA PENAL CODE SECTION 502.

21         SO THERE WILL BE AN INJUNCTION IN THIS CASE.

22             MR. VACHANI:  BUT THERE WERE TESTS THAT WERE REFERRED

23   TO IN THE BRIEFING AND THE DECISION THAT JUSTIFIED WHY THEY

24   GAVE THE INJUNCTION THAT SPECIFICALLY USED THE CAN-SPAM AND

25   HARM TO GOODWILL, ALL THAT WERE RELATING TO CAN-SPAM.

1    WHILE THE NINTH CIRCUIT HAS DETERMINED THAT WE WERE NOT

2    WRONG IN THE BEGINNING OF THIS CASE WHEN IT STARTED, AND THE

3    ENTIRE PREMISE OF THIS CASE WAS BASED ON THE -- INITIALLY ON

4    THE UNDERSTANDING THAT WE WERE WRONG FROM THE BEGINNING.

5    AND NOW WE MAY HAVE ONLY BEEN IN VIOLATION ONE DAY, AND

6    THAT'S WHY I THINK BEFORE WE CAN --

7    THE COURT:  WHY DON'T YOU INCLUDE THIS IN YOUR

8    BRIEFING?

9    MR. VACHANI:  YEAH, SURE.

10    THE COURT:  I WILL SAY THAT THE NINTH CIRCUIT

11    SPECIFICALLY SAID TO CONSIDER THE INJUNCTIVE RELIEF UNDER THE

12    CFAA AND CALIFORNIA PENAL CODE SECTION 502, SO THERE ARE STILL

13    TWO OUT OF THREE BASES FOR AN INJUNCTION.

14    SO WHY DON'T YOU ADDRESS THIS IN YOUR BRIEF, PLEASE?

15    MR. VACHANI:  I WILL MOST LIKELY BE FILING MY

16    PERSONAL LIABILITY -- I'D LIKE TO FILE SEPARATELY, AND I'M NOT

17    SURE HOW THAT RELATES ON THIS ISSUE, BECAUSE IT'S GOT A VERY --

18    IT HAS DIFFERENCES, A DIFFERENT ISSUE, AND I DON'T KNOW HOW

19    THAT SHOULD BE ADDRESSED.

20    THE COURT:  IT NEEDS TO BE INCLUDED IN YOUR BRIEF.

21    OKAY?  YOU HAVE A RESPONSE DUE ON MARCH 29TH AND IT SHOULD BE

22    FILED TOGETHER.  OKAY?  YOU CAN ADDRESS SEPARATE ISSUES.

23    MR. VACHANI:  OKAY.  IF MY INTERESTS AND THE

24    INTERESTS OF THE COMPANY, WHO OBVIOUSLY HAS A LOT MORE

25    SHAREHOLDERS, THEY ARE VERY DIFFERENT, I'M JUST WONDERING, WILL

```
 1        I BE ABLE --

 2               THE COURT:  SO JUST INCLUDE THAT IN THE JOINT BRIEF

 3        AND SAY THIS IS THE SECTION THAT RELATES TO PERSONAL LIABILITY.

 4        OKAY?

 5               MR. VACHANI:  OKAY.

 6               THE COURT:  ALL RIGHT.

 7               MR. CHATTERJEE:  AND THEN JUST ONE QUICK THING.  OUR

 8        NUMBERS -- BECAUSE WE DID KIND OF ERODE, JUST CUTTING OUT ALL

 9        OF DECEMBER, IF WE'RE GOING TO BE PUT TO THE TASK OF HAVING TO

10        BRIEF THIS WHOLE THING, OUR NUMBERS THAT WE PUT IN THERE MIGHT

11        CHANGE A LITTLE BIT IN OUR REQUEST, BECAUSE IF WE'VE GOT TO GO

12        THROUGH THE EXPENSE OF FILING THIS, WE'RE GOING TO -- WE'LL

13        PROBABLY ASK FOR SOME OF DECEMBER AT LEAST, AND I JUST -- THERE

14        MIGHT BE AN INCONSISTENCY IN THE NUMBERS AND I DIDN'T WANT YOU

15        CONFUSED.

16               THE COURT:  THAT'S FINE.  JUST DO THE BEST YOU CAN TO

17        EXCISE WHATEVER PORTION --

18               MR. CHATTERJEE:  WE WILL.

19               THE COURT:  -- THAT'S NOT APPROPRIATE UNDER THE NINTH

20        CIRCUIT'S ORDER, AND DOCUMENT AS BEST YOU CAN SO HOPEFULLY WE

21        WILL NOT HAVE UNNECESSARY DISPUTES.

22               MR. CHATTERJEE:  WE WILL, YOUR HONOR.

23               THE COURT:  ALL RIGHT.  THANK YOU.

24               MR. CHATTERJEE:  THANK YOU.

25               MS. ANDERSON:  THANK YOU, YOUR HONOR.
```

1           MR. VACHANI:  THANK YOU, YOUR HONOR.

2        (THE PROCEEDINGS WERE CONCLUDED AT 3:13 P.M.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                          CERTIFICATE OF REPORTER

4

5

6

7            I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11           THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____
     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595

18           DATED:   FEBRUARY 28, 2017

19

20

21

22

23

24

25