1  I. NEEL CHATTERJEE (State Bar No. 173985)
   nchatterjee@goodwinlaw.com
2  GOODWIN PROCTER LLP
   135 Commonwealth Drive
3  Menlo Park, CA  94025-1105
   Telephone:    650-752-3100
4  Facsimile:    650-853-1038

5

6  MONTE COOPER (State Bar No. 196746)
   mcooper@orrick.com
7  ROBERT L. URIARTE (State Bar No. 258274)
   ruriarte@orrick.com
8  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Rd.
9  Menlo Park, California  94025
   Telephone:    650-614-7400
10 Facsimile:    650-614-7401

11 Attorneys for Plaintiff
   FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>POWER VENTURES, INC. a Cayman Island corporation, STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, DOES 2-25, inclusive,<br><br>    Defendants. | Case No. 5:08-cv-05780-LHK<br><br>**FACEBOOK'S SUPPLEMENTAL REMEDIES BRIEF**<br><br>Date:     April 25, 2017<br>Time:     2:00 P.M.<br>Dept:     Courtroom 8, 4th Floor<br>Judge:    Hon. Judge Lucy H. Koh |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................................ 1

II.  RELEVANT FACTUAL BACKGROUND ......................................................................... 2

III. ARGUMENT ....................................................................................................................... 4

    A.   Facebook is entitled to $79,640.50 in Compensatory Damages for Remediation Expenses Incurred from December 2, 2008 through March 31, 2009 .......................................................................................................................... 4

    B.   Facebook is Entitled to a Permanent Injunction Enjoining Defendants from Unauthorized Access to Facebook's Website .............................................................. 5

        1.   Defendants' Unauthorized Access Causes Facebook Irreparable Harm ......... 6

        2.   Monetary Damages are Insufficient ................................................................ 8

        3.   The Balance of Hardships Favors Facebook .................................................. 9

        4.   The Public Interest Weighs in Favor of an Injunction ................................... 9

IV.  CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Columbia Mach., Inc. v. Besser Co.*,
  2012 U.S. Dist. LEXIS 48633 (W.D. Wash. Apr. 5, 2012) ................................................................ 8

*Craigslist, Inc. v. Troopal Strategies, Inc.*,
  2011 U.S. Dist. LEXIS 156825 (N.D. Cal. 2011) ............................................................................. 9

*eBay, Inc. v. Bidder's Edge, Inc.*,
  100 F. Supp. 2d 1058 (N.D. Cal. 2000) ............................................................................................ 7

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) .......................................................................................................................... 6

*EF Cultural Travel BV v. Explorica, Inc.*,
  274 F.3d 577 (1st Cir. 2001) ............................................................................................................ 7

*Energy Power Co. v. Xiaolong Wang*,
  2013 U.S. Dist. LEXIS 170193 (D. Mass. Dec. 3, 2013) ................................................................. 7

*Facebook, Inc. v. Power Ventures, Inc.*,
  844 F.3d 1058 (9th Cir. 2016) ...................................................................................................... 1, 3

*Facebook, Inc. v. Power Ventures, Inc.*,
  2013 U.S. Dist. LEXIS 137890
  (N.D. Cal. Sept. 25, 2013) .................................................................................................. 6, 7, 8, 9

*Golden Gate Hotel Ass'n v. City of San Francisco*,
  836 F. Supp. 707 (N.D. Cal. 1993) .................................................................................................. 8

*Hilao v. Marcos (In re Estate of Marcos)*,
  25 F.3d 1467 (9th Cir. 1994) ............................................................................................................ 8

*Liberty Media Holdings, LLC v. Vinigay.com*,
  2011 U.S. Dist. LEXIS 153615
  (D. Ariz. Dec. 27, 2011) ................................................................................................................... 8

*Moore v. Jas. H. Matthews & Co.*,
  682 F.2d 830 (9th Cir. 1982) ............................................................................................................ 4

*Optinrealbig.com, LLC v. Ironport Sys., Inc.*,
  323 F. Supp. 2d 1037 (N.D. Cal. 2004) ............................................................................................ 7

*Phillip Morris USA Inc. v. Shalabi*,
  352 F. Supp. 2d 1067 (C.D. Cal. 2004) ............................................................................................ 9

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
  659 F.3d 1142 (Fed. Cir. 2011)..................................................................................................8

*Sony Computer Entm't Am. LLC v. Hotz*,
  2011 U.S. Dist. LEXIS 13253 (N.D. Cal. Jan. 26, 2011) ............................................................7

*Tagged, Inc. v. Doe*,
  2010 U.S. Dist. LEXIS 5428 (N.D. Cal. Jan. 25, 2010) ..........................................................8, 9

*Tracfone Wireless, Inc. v. Adams*,
  98 F. Supp. 3d 1243 (S.D. Fla. 2015) ........................................................................................7

*WIT Wälchli Innovation Techs. v. Westrick*,
  2012 U.S. Dist. LEXIS 7933 (S.D. Fla. Jan. 24, 2012) ..............................................................9

**Statutes**

18 U.S.C.A. § 1030(g) ......................................................................................................................6

15 U.S.C. § 7702...............................................................................................................................7

28 U.S.C. § 1927...............................................................................................................................5

California Penal Code § 502 ...............................................................................................1, 4, 6, 9

California Penal Code § 502(e)(1) ...................................................................................................6

iii   FACEBOOK'S SUPPLEMENTAL REMEDIES BRIEF
CASE NO. 5:08-CV-05780-LHK

**I.     INTRODUCTION**

The Ninth Circuit affirmed this Court's liability rulings under the Computer Fraud and Abuse Act ("CFAA") and California Penal Code § 502. With respect to remedies, the Ninth Circuit remanded the case "to reconsider appropriate remedies under the CFAA and Section 502, including injunctive relief." *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1070 (9th Cir. 2016). The Ninth Circuit further ordered that "[w]ith respect to damages, the district court shall calculate damages only for the period after Power received the cease and desist letter, when Power continued to access data contained in Facebook's servers and memory banks." *Id*. This memorandum addresses the appropriate remedies in this case pursuant to the Ninth Circuit's decision.

Facebook, Inc. ("Facebook") requests that this Court (1) order Steve Vachani and Power Ventures, Inc. to jointly pay Facebook $79,640.50, and (2) issue a modified version of the Court's prior injunction directed only to Defendants CFAA and section 502 violations.

The following undisputed facts warrant Facebook's damage award:

1.     Both documents and testimony demonstrate that Vachani and Power received Facebook's cease and desist letter on December 1, 2008 in the evening.

2.     Facebook incurred a total of $80,543 in expenditures caused by Defendants' unauthorized access to Facebook's protected computers. The Court previously found this amount "undisputed."

3.     Roughly $902.50 ($50 for internal expenditures and $852.50 in outside counsel expenses) of those expenditures occurred on December 1 and all other expenditures associated with Defendants' intrusion occurred on or after December 2.

4.     Applying simple math, the compensatory damages for December 2 and thereafter was $79,640.50.

As to injunctive relief, Facebook has narrowly tailored its requested relief to prevent Defendants from repeating their unlawful access to, and misappropriation of, Facebook's protected computers in violation of the CFAA and California Penal Code § 502. Despite repeated requests, Defendants have not identified anything wrong with Facebook's proposed injunction and have not

shared any reason to deny injunctive relief. This Court's previous decision issuing injunctive relief was correct and should not be disturbed.

## II. RELEVANT FACTUAL BACKGROUND

The following facts are not in dispute. They are established by the Declaration of Joseph Cutler in Support of Facebook's Supplemental Damages Brief ("Cutler Supp. Decl."), the deposition testimony of both Power and Vachani, and the previous evidentiary record. *See* Dkt. No. 275 and Dkt. No. 373. The Court previously found these latter two submissions undisputed. Dkt. No. 373 at 26.

Defendant Power Ventures ("Power") is a Cayman Islands entity and Defendant Steven Vachani ("Vachani") is Power's former CEO. Sometime prior to December 1, 2008, Defendants created software designed to proxy Facebook's website, scrape data from Facebook's protected computers, and then use that data to generate advertising emails using Facebook's internal and external messaging systems. Dkt. No. 189, at ¶¶ 2-4; Dkt. No. 214, Ex. 3; Dkt. No. 299, Ex. 8. Defendants at all times prior to December 1, 2008 knew that their conduct violated Facebook's terms of use, and anticipated that Facebook would employ technical means to counter Defendants' acts. Dkt. No. 248, Ex. 4, at 279:13-280:19; Dkt. No. 299, Ex. 14 at 121:24-122:1; 122:19-20. So, Defendants "intentionally implemented a system that would be immune to such technical barriers." Dkt. No. 275 at 17.

Power launched its website service connecting to Facebook on December 1, 2008. Dkt. No. 299, Ex. 8. On December 1, 2008, Facebook's Security Incident Response team ("SIR") determined that the website located at the URL http://www.power.com was running an automated scripting routine to harvest and download data from Facebook's website. Dkt. No. 214, Ex. 9 (McGeehan Decl.), ¶ 7. On that same day, Facebook's outside counsel emailed Power a cease and desist letter instructing Power to terminate its activities on Facebook's website. Dkt. No. 214, Ex. 8 (Cutler Decl.), ¶¶ 2-6 & Ex. A; Cutler Supp. Decl. ¶ 5. Cutler spent ▮▮▮▮ on December 1, 2008 in conjunction with his preparation and service of Facebook's cease and desist letter, amounting to $852.50 of billed legal work. Cutler Supp. Decl. ¶6. No other Perkins Coie attorney or employee

other than Cutler billed time for work related to Power or the cease and desist letter on December 1, 2008. *Id.*

As shown in emails and sworn testimony, Defendants received Facebook's letter no later than 7:54 p.m. Pacific Time on December 1, 2008. Dkt. No. 299, Ex. 3; *see also* Declaration of Monte Cooper in Support of Facebook's Supplemental Damages Brief ("Cooper Supp. Decl."), Ex. 1 (Vachani 7/20/11 Dep. Tr.), at 290:1-9; Ex. 2 (3/7/12 Power Dep. Tr.), at 70:9-71:5, 98:5-100:6, Ex. 3 (Dep. Ex. 238, December 2, 2008 email from Herrara to Vachani). Just minutes later, at 8:01 p.m., Vachani forwarded the cease and desist letter to other Power employees, and instructed that Power needed "to be prepared for Facebook to try and block us and turn this into a national battle that gets us huge attention." Dkt. No. 299, Ex. 3.

After Defendants' receipt of Facebook's cease and desist letter, Defendants continued to access Facebook's website. Dkt. No. 214, Ex. 8 (Cutler Decl.), ¶¶ 7-15 & Ex. C; Dkt. No. 214, Ex. 9 (McGeehan Decl.), ¶¶ 13-17; Cooper Supp. Decl. Ex. 2 (Power 3/7/12 Depo. Tr.), at 153:15-162:3; Ex. 4 (Dep. Ex. 245, Power email chain beginning December 23, 2008 and ending December 29, 2008); Cutler Supp. Decl. ¶ 8. For instance, Defendants continued to secretly circumvent Facebook's technical barriers, ignoring their Director of Legal Operations' repeated pleas to consult legal counsel. *See generally* Dkt. No. 299, at 8-9 (including evidence referenced). Vachani repeatedly misrepresented to Facebook's counsel that Defendants would comply with Facebook's demands, only to abruptly change course after weeks of assurances. Dkt. No. 57-1 (Avalos Decl. Exhibit A, email correspondence between Facebook's counsel and Vachani); Dkt. No. 214, Ex. 8 (Cutler Decl.), ¶¶ 7-15 & Ex. C. Not only did Defendants refuse to comply with Facebook's demands, they upped the ante. As part of the power.com "Launch Promotion," Defendants—*after* December 1, 2008—accessed Facebook's website and sent over 60,000 external e-mails and an unknown number of internal Facebook messages through Facebook's system. *Power Ventures,* 844 F.3d at 1063.

Defendants' unauthorized access to Facebook's website after December 1, 2008 caused Facebook to incur two types of expenses. First, Facebook incurred internal costs attributable to investigating and remediating Defendants' conduct. Former Facebook SIR team employee Ryan

McGeehan[1] spent 50 hours of time beginning in December of 2008 through March 23, 2009 attempting to remediate Defendants' unauthorized access to Facebook's website.  These internal costs are valued at $5,000 (or $100/hour).  Dkt. No. 214, Ex. 9 (McGeehan Decl.), ¶ 17; Cooper Supp. Decl. Ex. 5 (Expert Damages Report of Richard Ostiller), at ¶¶ 16-21 & Schedules 1 & 1a). McGeehan's tickets reflect that he worked on the Power investigation on December 1, 2008 from 11:42 a.m. Pacific Time, to 12:13 p.m. – *i.e.* a total of 31 minutes or $50 worth of time—the rest of his work was performed on December 2, 2008 or thereafter, within the damages period established by the Ninth Circuit.  Dkt. No. 214, Ex. 9 (McGeehan Decl.), ¶ 17 & Ex. 4.

Second, Facebook incurred $75,543 in attorneys' fees on and after December 1, 2008 through March 2009 in an attempt to halt and remediate Defendants unlawful actions.  Cooper Supp. Decl. Ex. 5 at ¶¶ 22-29 & Schedule 1.   All but ▮▮▮▮▮ (or $852.50) of these legal fees were incurred on and after December 2, 2008.  Cutler Supp. Decl. ¶¶ 6, 7.

### III.  ARGUMENT

Consistent with the doctrine of law of the case and the Court's case management order, this memorandum discusses only two issues:  (1) compensatory damages, and (2) injunctive relief. *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 833 (9th Cir. 1982) (discussing limited scope of permissible district court action after prior appellate decision remanded for determination of three discrete issues).

**A.  Facebook is entitled to $79,640.50 in Compensatory Damages for Remediation Expenses Incurred from December 2, 2008 through March 31, 2009**

This Court previously awarded Facebook $80,543 in compensatory damages for Defendants' violations of the CFAA and Penal Code Section 502 that occurred between December 1, 2008 and March 31, 2009.  Dkt. No. 373, at 34.  This amount was calculated from the fact that Facebook incurred $5000 in damages as a result of the internal remediation efforts, as well as an additional $75,543 that were billed to the company in attorney fees for these same activities as a result of the external remediation efforts of its outside legal counsel at Perkins Coie.  *Id.*; Cooper Supp. Decl. Ex.

---

[1] During the pendency of Defendants' appeal of this Court's summary judgment rulings, Mr. McGeehen departed Facebook as an employee.

5 (Expert Damages Report of Richard Ostiller), at ¶¶ 16-29 & Schedules 1-1b). The Court found this amount undisputed. Dkt. No. 373 at 26.

The Ninth Circuit limited damages only to the period <u>after</u> Defendants received Facebook's cease and desist letter. Undisputed evidence shows that Defendants received the letter in the evening of December 1, 2008. Cooper Supp. Decl., Ex. 1 (Vachani 7/20/11 Dep. Tr.), at 290:1-9; Ex. 2 (3/7/12 Power Dep. Tr.), at 70:9-71:5, 98:5-100:6, Ex. 3 (Dep. Ex. 238, December 2, 2008 email from Herrara to Vachani). The compensatory damages on or after December 2, 2008 were $79,640.50. $4,950 of these damages were internal expenditures and $74,690.50 were external expenditures.[2]

Facebook's internal compensatory damages are approximately $4,950. The time-stamped tickets of Facebook SIR team employee Ryan McGeehan for December 1, 2008 reflect he devoted only 31 minutes to investigating Power on that date. Dkt. No. 214, Ex. 9 (McGeehan Decl.), ¶ 17 & Ex. 4. Mr. McGeehan's effective rate is $100/hour. As Mr. McGeehan's time on December 1 was 31 minutes (and all other time was after December), this Court need only reduce its prior $5,000 award by $50. Dkt. No. 214, Ex. 9 (McGeehan Decl.), ¶ 17; Cooper Supp. Decl. Ex. 5 (Expert Damages Report of Richard Ostiller), at ¶¶ 16-21 & Schedules 1 & 1a).

Facebook's external compensatory damages are an additional $74,690. Facebook originally sought $75,543 for external attorney fees. $852.50 ▓▓▓▓▓ of those fees were incurred on December 1, 2008. Cutler Supp. Decl. ¶¶ 6, 7. All other fees occurred on or after December 2. Applying simple math, the undisputed amount due for external damages is $74,690.50. *Id*.

**B.     Facebook is Entitled to a Permanent Injunction Enjoining Defendants from Unauthorized Access to Facebook's Website**

Facebook requests a circumscribed form of this Court's prior injunction revised to remove provisions enjoining Defendants from sending spam messages to Facebook users and from making misleading factual representations in connection with advertising or selling services. These provisions were predicated on Facebook's CAN-SPAM Act claims and are no longer included in

---

[2] Facebook reserves its right to seek attorney fees pursuant to 28 U.S.C. § 1927 or the Court's inherent powers in the event Defendants once again attempt to raise any of these already rejected positions in their own damages papers.

Facebook's proposed injunction.[3]  Facebook's proposed injunction would enjoin Defendants from (1) accessing or using Facebook's websites or servers for any commercial purpose (including for the purpose of sending spam) without Facebook's prior permission; (2) using any data obtained as a result of Defendants' unlawful conduct; and (3) developing or distributing any software that allows users to engage in conduct found to be unlawful.  Facebook's proposed injunction would also require Defendants to destroy (1) all software, scripts, or code designed to access or interact with Facebook; and (2) all data obtained or derived from Defendants' unlawful conduct.  This relief is narrowly tailored to redress the irreparable harm caused by Defendants' violations of the CFAA and Section 502.  In short, Facebook seeks an injunction preventing Defendants from engaging in the conduct found unlawful in this case and prohibiting Defendants from using the ill-gotten Facebook data that remains in their possession.

As this Court found before, Facebook is entitled to a permanent injunction because (1) Defendants' conduct causes irreparable injury, (2) monetary damages alone are inadequate relief, (3) the balance of hardships counsel in favor of the relief requested by Facebook, and (4) the public interest will be served by entry of a permanent injunction.  *Facebook, Inc. v. Power Ventures, Inc.*, No. 08-CV-5780-LHK, 2013 U.S. Dist. LEXIS 137890, *53 (N.D. Cal. Sept. 25, 2013) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006); 18 U.S.C.A. § 1030(g) (authorizing injunctive relief); California Penal Code § 502(e)(1) (same).  This Court should apply its previous ruling here.

### 1.   Defendants' Unauthorized Access Causes Facebook Irreparable Harm

As this Court previously found, Defendants' CFAA and Section 502 violations inflicted at least two irreparable injuries on Facebook, *see Facebook, Inc. v. Power Ventures, Inc.*, 2013 U.S. Dist. LEXIS 137890, *55.  First, Defendants' infiltration of Facebook's network caused Facebook

---

[3] The first two provisions of the Court's original injunction prohibited Defendants from "A. Sending, or assisting others in the sending of, or procuring the sending of unauthorized or unsolicited commercial electronic text messages to users of the Facebook website, www.facebook.com, or via the Facebook website or service" and "B. Making or assisting others in making, any false or misleading oral or written statement or representation of material fact when advertising, promoting or selling any good or service." Dkt. No. 373.  Facebook's proposed injunction removes these CAN-SPAM Act related prohibitions.

irreparable harm in the form of interference with Facebook's right to exclude others from using its protected computers. *See, e.g., Sony Computer Entm't Am. LLC v. Hotz,* No. CV11 0167JCS, 2011 U.S. Dist. LEXIS 13253, *3 (N.D. Cal. Jan. 26, 2011) (granting CFAA injunction based on finding that unauthorized access to PlayStation Network created irreparable harm); *Energy Power Co. v. Xiaolong Wang,* No. 13-11348-DJC, 2013 U.S. Dist. LEXIS 170193, *28-29 (D. Mass. Dec. 3, 2013) (analogizing CFAA violations to trespass and holding that interference with plaintiff's right to its computers amounted to irreparable harm warranting injunction); *Ebay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1071-1072 (N.D. Cal. 2000) (similar, enjoining defendant from scraping eBay's website based on trespass to chattels theory); *Tracfone Wireless, Inc. v. Adams*, 98 F. Supp. 3d 1243, 1256 (S.D. Fla. 2015) (granting CFAA injunction because "impairing the integrity of TracFone's proprietary computer system" amounted to irreparable harm); *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 580, 585 (1st Cir. 2001) (upholding an injunction barring defendants from using a "scraper program" and requiring the return of all information generated through the scraper).

Second, Defendants used their unauthorized access to engage in unauthorized commercial activity, which hurt Facebook's user experience and damaged its goodwill.[4]  Dkt. No. 214, Ex. 9 at ¶ 6. d.  Injury to goodwill is a quintessential form of irreparable harm. *Optinrealbig.com, LLC v. Ironport Sys., Inc.,* 323 F. Supp. 2d 1037, 1050 (N.D. Cal. 2004) (emphasis added) ("Damage to a business' goodwill is typically an irreparable injury because it is difficult to calculate").  The Ninth Circuit's holding that Defendants' spam was not "materially misleading" for purposes of the CAN-SPAM Act does nothing to alter this Court's conclusion that Defendants' conduct injured Facebook's goodwill.  *Facebook, Inc. v. Power Ventures, Inc.*, 2013 U.S. Dist. LEXIS 137890, *58

---

[4] The Ninth Circuit held that because Facebook's automated system was involved in transmission of the subject emails, Facebook was technically one of multiple entities that "initiated" the Power Launch Promotion emails for purposes of 15 U.S.C. § 7702. Therefore, the Ninth Circuit found that email header information was not "materially misleading" for listing "Facebook" in the sender line of the email.  *Power Ventures*, 844 F.3d at 1065. Nevertheless, the fact remains that Power took data from Facebook's protected computers without authorization and then used that data to send the type of commercial spam emails that detract from Facebook user experience.

& n. 17 (citing ECF 218-8 at ¶ 5[5], Declaration of Ryan McGeehan in support of Facebook's Motion for Partial Summary Judgment: "spam messages detract from the overall Facebook experience and are sometimes a source of complaints by Facebook users").

### 2. Monetary Damages are Insufficient

This Court correctly found that monetary damages are an insufficient remedy in this case for three reasons. First, money damages will not ensure that Defendants refrain from unauthorized access to and scraping of Facebook's protected computers, which remains a possibility given Defendants' history of bad faith conduct. *Facebook, Inc. v. Power Ventures, Inc.*, 2013 U.S. Dist. LEXIS 137890, *58-60 (noting "Defendants may still possess the software that enabled their illegal activities" and that Defendants actively circumvented Facebook's security measures.'"); *Golden Gate Hotel Ass'n v. City of San Francisco*, 836 F. Supp. 707, 709 (N.D. Cal. 1993) ("[I]njunction[s] [are] appropriate where a federal litigant has prevailed on the merits, yet is threatened with burdensome and repetitious relitigation of the same issues in a multiplicity of actions"). In fact, the nature of Defendants' conduct creates a likelihood of future violations that warrants an injunction, *Tagged, Inc. v. Doe*, No. C 09-01713 WHA, 2010 U.S. Dist. LEXIS 5428, *33-34 (N.D. Cal. Jan. 25, 2010) (issuing permanent injunction where "deliberately implemented [] tactics to circumvent plaintiff's security measures such as creating intermediary landing pages…and using IP addresses from other parts of the world"). Second, monetary damages are not an adequate remedy for future disruption of Facebook's services, network capacity, or goodwill. Third, monetary damages are an insufficient remedy in light of Defendants' insolvency. *Hilao v. Marcos (In re Estate of Marcos)*, 25 F.3d 1467, 1480 (9th Cir. 1994) (insolvency may render monetary remedies inadequate); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (defendant's inability to pay damages weighed in favor of injunction); *accord Columbia Mach., Inc. v. Besser Co.*, No. 10-cv-5667 RBL, 2012 U.S. Dist. LEXIS 48633, at *9 (W.D. Wash. Apr. 5, 2012) (monetary damages inadequate where defendant cannot satisfy damages award); *Liberty Media Holdings, LLC v.*

---

[5] The Court's order mistakenly cited the McGeehan declaration as ECF 218-8, but the correct docket entry is ECF 214, Ex. 9.

*Vinigay.com,* No. CV-11-280-PHX-LOA, 2011 U.S. Dist. LEXIS 153615, at *51 (D. Ariz. Dec. 27, 2011) (similar).

### 3. The Balance of Hardships Favors Facebook

Defendants' violations of law have already caused Facebook to suffer hardship, and an injunction would protect Facebook from further hardship by deterring Defendants from future misconduct, and by providing a speedy pathway to relief in the event of future violations of the CFAA or California Penal Code section 502 by Defendants. *Tagged*, 2010 U.S. Dist. LEXIS 5428, 2010 WL 370331, at *12 (granting a preliminary injunction against a defendant who violated CFAA and California Penal Code § 502 in part because defendant might engage in future violations). On the other hand, an injunction would work no hardship on Defendants, as they have no legitimate interest in carrying out the acts identified in Facebook's proposed injunction. *See Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1075 (C.D. Cal. 2004) (hardship attendant to enjoining illegal activity does not weigh against injunction).

There is no reason why Defendants should not be enjoined from further unlawful acts or from using data obtained via such acts. During the February 15, 2017 case management conference, the Court asked Defendants if they had any problems with Facebook's proposed injunction, and Defendants were unable to identify any issues whatsoever. Facebook had repeatedly asked Defendants to identify any concerns with its proposed injunction. Defendants have not articulated any specific objection to Facebook's proposed injunction.

### 4. The Public Interest Weighs in Favor of an Injunction

"The public interest weighs in favor of an injunction as well, and courts in this district have reached this conclusion in analogous cases." *Facebook, Inc. v. Power Ventures, Inc.*, 2013 U.S. Dist. LEXIS 137890, *63-66 (citing *Craigslist, Inc. v. Troopal Strategies, Inc.*,No. C 09-04741 JW, 2011 U.S. Dist. LEXIS 156825, at *11 (N.D. Cal. 2011) (holding injunction would be in the public interest where defendant violated CFAA)); *WIT Wälchli Innovation Techs. v. Westrick*, No. 12-CIV-20072-COHN/SELTZER, 2012 U.S. Dist. LEXIS 7933, *11 (S.D. Fla. Jan. 24, 2012) ("A permanent injunction would effectively serve the public interest by protecting businesses from violations of the CFAA").

## IV. CONCLUSION

For these reasons, Facebook requests that the Court enjoin Defendants as requested and award compensatory damages in the amount of $79,640.50

Dated: March 8, 2017

Respectfully Submitted,

By:  /s/ *I. Neel Chatterjee*
I. NEEL CHATTERJEE
nchatterjee@goodwinlaw.com
GOODWIN PROCTER LLP
135 Commonwealth Drive
Menlo Park, CA 94025-1105
Telephone:    650-752-3100
Facsimile:    650-853-1038

MONTE COOPER
mcooper@orrick.com
ROBERT L. URIARTE
ruriarte@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Rd.
Menlo Park, California 94025
Telephone:    650-614-7400
Facsimile:    650-614-7401

Attorneys for Plaintiff
FACEBOOK, INC.

OHSUSA:766470456.8