Amy Sommer Anderson #282634
AROPLEX LAW
156 2nd Street, Floor 1
San Francisco, CA 94105
Phone: 415-529-5148
Facsimile: 415-970-5016
Email: Anderson@aroplex.com
Attorney for Defendants,
POWER VENTURES, INC.

STEVEN VACHANI (*pro se*)
2425B Channing, #216
Berkeley, CA 94704
Telephone: (917) 267-8823

AROPLEX LAW
A California Law Practice

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>Defendants,<br><br>v.<br><br>POWER VENTURES, INC. and STEVEN VACHANI,<br><br>Plaintiff. | Case No. 5:08-cv-05780-LHK<br><br>**DEFENDANTS' OPPOSITION TO FACEBOOK'S SUPPLEMENTAL REMEDIES BRIEF**<br><br>Date: April 25, 2017<br>Time: 2:00 P.M.<br>Dept: Courtroom 8, 4th Floor<br>Judge: Hon. Judge Lucy H. Koh |

AROPLEX LAW
A California Law Practice

# TABLE OF CONTENTS


**TABLE OF AUTHORITIES** 3

**I. RELEVANT PROCEDURAL HISTORY** 4

**II. THE COURT MUST FIRST DETERMINE THE APPLICABLE ALLOWABLE PERIOD FOLLOWING THE NINTH CIRCUIT'S JUDGMENT.** 6

**A. To Determine Awardable Compensatory Damages, The Court Must First Determine the Applicable Allowable Period.** 6

1. The Start Date. 6

2. The End Date. 7

**B. The Broadest Possible Allowable Period is from December 2 - December 30, 2008.** 7

**III. AGAINST THE COURT'S ORDER, FACEBOOK CLAIMS COMPENSATORY DAMAGES FOR COSTS ASSOCIATED WITH THE REVERSED CAUSE OF ACTION.** 8

**A. Under the Defendants' Interpretation of the Applicable Allowable Period, Facebook Fails to Prove or Even Allege Any Compensable Damages from December 26 - 30, 2008.** 10

**B. Under the Broadest Interpretation of the Applicable Allowable Period, Facebook Still Fails to Prove Compensable Damages Incurred December 2 - 30, 2008.** 11

**IV. FACEBOOK HAS NOT BEEN DEEMED THE "PREVAILING PARTY" AND IS NOT ENTITLED TO COSTS OF SUIT CLAIMED AFTER THIS COURT'S ORIGINAL JUDGMENT.** 14

**V. FACEBOOK IS NOT ENTITLED TO JUDGMENT FOR AN UNDISTURBED DISCOVERY SANCTIONS AWARD.** 15

**VI. FACEBOOK'S PROPOSED PERMANENT INJUNCTION IS OVER-BROAD AND INCLUDES PROVISIONS SPECIFIC TO THE REVERSED CAN-SPAM CLAIM.** 15

**A. Restriction of Lawful Commercial Activity.** 15

**B. Restriction of Unrelated Activities.** 17

**C. Imposition on Unrelated Third Parties.** 17

**VII. CONCLUSION.** 18

AROPLEX LAW
A California Law Practice

## TABLE OF AUTHORITIES

### CASE LAW


| Authority | Page(s) |
|---|---|
| *Big Country Foods, Inc. v. Board of Education of Anchorage School Dist.* (9th Cir. 1989) 868 F2d 1085 | 16 |
| *Goldie's Bookstore, Inc. v. Sup.Ct.* (9th Cir. 1984) 739 F2d 466 | 16 |
| *Horwitz v. Southwest Forest Indus., Inc.* (D NV 1985) 604 F.Supp. 1130, 1136 | 17 |
| *Kaimowitz v. Orlando, Fla.* (11th Cir. 1997) 122 F3d 41, 43 | 16 |
| *Omega World Travel, Inc. v. Trans World Airlines* (4th Cir. 1997) 111 F3d 14, 16 | 16 |
| *Publications Int'l, Ltd. v. Meredith Corp.* (7th Cir. 1996) 88 F3d 473, 478) | 17 |
| *S.J.W. ex rel. Wilson v. Lee's Summit R–7 School Dist.* (8th Cir. 2012) 696 F3d 771 | 16 |


### STATUTES/RULES


| Authority | Page(s) |
|---|---|
| 9th Cir. Civ. Jury Instr. 5.1 | 8 |
| 15 U.S.C. § 7704 (Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003) | 4, 5, 8-10, 12, 15 |
| 18 U.S.C. § 1030 (Computer Fraud and Abuse Act of 1986) | 4-10, 12-17 |
| 28 USC § 1920 | 14 |
| California Penal Code § 502 | 4-10, 12-17 |
| FRCP 54 | 14 |

AROPLEX LAW
A California Law Practice

Defendants POWER VENTURES, INC. and STEVEN VACHANI hereby submit their response and opposition to Plaintiff FACEBOOK, INC.'s Supplemental Remedies Brief filed March 8, 2017 in response to the Court's February 15, 2017 Case Management Order calling for supplemental briefing on the issue of damages following the Ninth Circuit's partial reversal and remand.

## I. RELEVANT PROCEDURAL HISTORY

On September 25, 2013, this Court entered an award of damages and permanent injunctive relief to Facebook on the basis of the Court's original order granting summary judgment in Facebook's favor on its claims for violation of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM Act"; 15 U.S.C. § 7704), the Computer Fraud and Abuse Act of 1986 ("CFAA"; 18 U.S.C. § 1030), and California Penal Code § 502, which is California's version of the CFAA. (Dkt. No. 373). The Court awarded $3,031,350.00 in statutory damages with respect to the CAN-SPAM claim and awarded $80,543.00 in compensatory damages for costs claimed by Facebook to be incurred through "enforcement efforts" related to the defendants' activities, including the alleged spamming activities for which Facebook sought to impose liability against the defendants under the CAN-SPAM Act. *Id*.

On December 19, 2016, a mandate issued from the Ninth Circuit affirming in part and reversing and vacating in part the District Court's summary judgment in favor of Plaintiff Facebook. Reversing in part, the Ninth Circuit held that the defendant's actions did not violate the CAN-SPAM Act because the transmitted messages were not materially misleading. As such, the associated award of statutory damages in the sum of $3,031,350 was vacated.

Reversing in part and affirming in part, the panel held that the defendants violated the CFAA and CPC § 502, which prohibit acts of computer trespass by those who are not authorized users or

AROPLEX LAW
A California Law Practice

who exceed authorized use, but the defendants were only liable after Facebook revoked the defendants' authorized access, such initial revocation occurring *only after* the defendants received a cease and desist letter from Facebook. Significantly, the Ninth Circuit found Power did not initially access Facebook's computers "without authorization" within the meaning of the CFAA and only accessed Facebook's computers "without authorization" after receiving notice of Facebook's desire that access be revoked, thus clarifying that the defendants' activities were not inherently unlawful but rather only violated the CFAA and CPC § 502 when Facebook deliberately and expressly revoked authorized access.

The Ninth Circuit vacated the district court's awards of injunctive relief and damages and remanded for consideration of appropriate remedies limited to the period of defendants' liability under the CFAA and CPC § 502 and excluding any prior remedy for damages incurred in relation to Plaintiff's CAN-SPAM claim. Facebook, however, argues in its Supplemental Remedies Brief that this Court's original compensatory damages award should be reinstated less the costs Facebook claims were incurred on December 1, 2008. (Dkt. No. 416 at 4:9-12). In arguing for this simple recalculation of damages, Facebook neglects to adjust its demand to account for the CAN-SPAM reversal and fails to provide sufficient evidentiary support for damages incurred on any date for which compensation is claimed. Since Facebook's evidence supporting their prior and current requests for compensatory damages is based, at least in part, on the alleged CAN-SPAM violations as well as during a period time after Facebook initiated litigation and Power ceased all interactions with facebook.com, the prior award cannot simply be reinstated as Facebook requests. Facebook bears the burden of demonstrating its damages by a preponderance of the evidence, and it fails to meet this burden by neglecting to offer evidentiary support for its claimed losses as they relate to CFAA/CPC § 502 efforts during the Allowable Period.

In response to Facebook's request for compensatory damages and injunctive relief, Defendants present the following arguments in support of their assertions that Facebook is entitled to $0.00 based on Facebook's own evidence and that the proposed permanent injunction is overly broad and burdensome by impermissibly applying to unrelated and undefined third parties and by restricting lawful activities that are either unrelated to Facebook or insufficiently related to the statutes upon which the injunction is based.

## II. THE COURT MUST DETERMINE THE APPLICABLE ALLOWABLE PERIOD FOLLOWING THE NINTH CIRCUIT'S JUDGMENT.

### A. To Determine Awardable Compensatory Damages, The Court Must First Determine the Applicable Allowable Period.

To determine Facebook's damages incurred during the relevant Allowable Period, the Court must first define the Allowable Period wherein the defendants accessed Facebook's website without Facebook's authorization as to be liable under CFAA and CPC § 502.

1. The Start Date.

Facebook asserts that the Allowable Period begins on December 2, 2008, which is the date after December 1, 2008 when Facebook sent the initial cease and desist letter to the owner of the email address hostmaster1@poweremail.org, who is a third party and was not a representative of Power Ventures, Inc. or power.com. Power and Facebook's counsel first communicated on December 4, 2008, at which time Facebook made its cease and desist demand directly to Power for the first time. (Dkt. No. 416-2 at ¶ 8). Therefore, it was on December 4, 2008 that Facebook first revoked authorization of Power's access to facebook.com.

The Allowable Period does not, however, begin on December 4, 2008 because Facebook thereafter engaged in ongoing negotiation with Power concerning Facebook's requirements for Power's use of facebook.com, and Facebook expressly authorized Power to continue accessing



AROPLEX LAW
A California Law Practice

AROPLEX LAW
A California Law Practice

facebook.com and gave Power an extension of time, ending December 26, 2008, by which Power would need to have its software in full compliance with Facebook's requirements. (Dkt. No. 225-1, Exhibit 8 at ¶ 11[1]). Without further permission, Facebook's authorization of Power's continued access of facebook.com expired and was effectively withdrawn on December 26, 2008.

Given the parties' negotiations and Facebook's express authorization of Power's continued access of facebook.com while Power worked to get its software in compliance with Facebook's requirements, the effective start date of the defendant's Allowable Period under the CFAA and CPC § 502 is December 26, 2008.

2. The End Date.

Facebook does not provide any suggestion as to the end date of the Allowable Period. The only hint at Facebook's opinion on the issue is their claim to costs spanning December 2008 through March 2009, yet Facebook makes no assertion that Power continued activities deemed to violate the applicable statutes after this lawsuit was filed on December 30, 2008 and provides no evidence that would support any such assertion[2].

**B. The Broadest Possible Allowable Period is from December 2 - December 30, 2008.**

Even if the Court finds Facebook revoked authorization upon sending the cease and desist letter and that no further authorization was afforded the defendants through their negotiations with Facebook, the broadest possible Allowable Period is from December 2, 2008 through December 30, 2008. December 2, 2008 is the date after Facebook sent their cease and desist letter, albeit *not* to the

[1] Dkt. No. 225-1, Para. 11 of Cutler Declaration, "On December 15, I sent an email to Mr. Vachani responding to his December 12, 2008 email. In that message, I reconfirmed that Facebook expected the Power website to delete all user data and to fully comply with the Facebook Connect policies and all other applicable Facebook Terms of Use and guidelines within two weeks, or by December 26, 2008."

[2] Facebook's evidence is limited to a showing of Power's activities as late as December 29, 2008. *See, for example*, Exhibit 4 to the Declaration of Monte Cooper in support of Plaintiff's Supplemental Remedies Brief.

AROPLEX LAW
A California Law Practice

defendants, and the date Facebook claims is the beginning of the Allowable Period. December 30, 2008 is the date this lawsuit was filed and the date on which the defendants ceased all unauthorized interaction with Facebook's website, specifically all interaction forming the basis of Facebook's Complaint—i.e., December 30, 2008 would be considered the last date of "unauthorized access" assuming this broadest interpretation.

Whichever interpretation the Court finds applicable, it is indisputable from their filings that Facebook makes no effort to define the end date of this period or to claim unlawful activities by the defendants occurring any time after they filed their lawsuit on December 30, 2008. The burden is on Facebook to prove compensatory damages by a preponderance of the evidence, and Facebook fails to so much as make a supported assertion of the period of time within which Facebook's incurred damages are compensable—i.e., through which date the defendants accessed facebook.com without authorization—and on what dates Facebook incurred compensable costs. (9th Cir. Civ. Jury Instr. 5.1). Facebook's unsupported claim of internal and external enforcement costs from December 2008 through March 2009 fails to meet this burden.

## III. AGAINST THE COURT'S ORDER, FACEBOOK CLAIMS COMPENSATORY DAMAGES FOR COSTS ASSOCIATED WITH THE REVERSED CAUSE OF ACTION.

Facebook claims it is entitled to the same award of compensatory damages made by this Court following the original judgment, less $902.50 in costs incurred on December 1, 2008, which Facebook admits is outside the Allowable Period. Providing no evidence of the source or character of these costs and no adjustment for costs associated with efforts related to CAN-SPAM, which are now not awardable, Facebook claims entitlement to the following:

AROPLEX LAW
A California Law Practice

(1) $4,950.00 billed internally for engineer Ryan McGeehan's enforcement time, which represents an estimated 50 hours spent on power.com activities in general, billed at $100.00 per hour, from December 2, 2008 through March 2009:

(2) $37,816.50 billed externally for legal work by Joseph Cutler and Perkins Coie from December 2, 2008 through December 31, 2008; and

(3) $36,834 billed externally for legal work by Joseph Cutler and Perkins Coie from January 2009 through March 2009. (Dkt. Nos. 416 and 418-8).

In response to the Ninth Circuit's mandate instructing this court to reassess damages in light of both the CAN-SPAM reversal and redefined liability limitation under the CFAA and CPC § 502, Facebook responded with a demand for the same damages as previously awarded with the exception of deduction of activities billed on December 1, 2008. At the outset, Facebook fails to meet its burden of proving compensatory damages by neglecting to make any effort at adjustment or to make any argument against the necessity for adjustment in the face of their own contradictory evidence attributing claimed damages to CAN-SPAM activities, as detailed below.

In relying on the same calculation of damages the Court used *prior* to the Ninth Circuit's reversal and remand, Facebook argues in essence that because Judge Ware did not require Facebook to produce any such evidentiary support the first time the Court awarded compensatory damages, the Court should not require any such evidence now that it is tasked with narrowing the scope of Facebook's award. It is arguments like this, combined with Facebook failure to produce evidentiary support for its claimed costs, that make it clear Facebook lacks evidence sufficient to support these costs, and this Court is not required to simply look the other way. Each of the causes of action prosecuted by Facebook in this case required Facebook to meet a "loss" threshold as a standing requirement, so Facebook's entire case is predicated on its claimed damages due to the defendants'

AROPLEX LAW
A California Law Practice

actions and its ability to prove that loss by a preponderance of the evidence. Facebook provides no argument as to why it should be excused from this requirement, and in fact there is no legal basis for making such excuse.

**A. Under the Defendants' Interpretation of the Applicable Allowable Period, Facebook Fails to Prove or Even Allege Any Compensable Damages from December 26-30, 2008.**

Assuming Facebook is entitled to its costs of enforcement incurred between December 26-30, 2008, the defendants have no way of disputing or agreeing with Facebook's claimed costs since Facebook has never provided any kind of expense log or itemization more granular than the two categories of "December 2008" and "January - March 2009," nor has Facebook narrowed such costs to include only those incurred in CFAA and CPC § 502 enforcement efforts. It makes no logical sense—and there is no support under the law—that a party should be awarded compensatory damages incurred on dates when the party is not entitled to compensation. Here, Facebook should not be awarded the whole of its "December 2008" costs (less $852.50 for December 1, 2008) if the Court determines the Allowable Period is anything less than December 2-31, 2008, as Defendants argue it is. When pressed to file their Supplement Remedies Brief, Facebook was able to produce new evidence in the form of a declaration by Joseph Cutler defining the number of hours Mr. Cutler billed on December 1, 2008. Still, Facebook neglects to produce any evidence supporting the actual time spent by internal and external personnel on compensable activities during the Allowable Period or any period at all. Should the Court agree with the defendants' assertion that the Allowable Period extends from December 26, 2008 through December 30, 2008, Defendants argue that the Court must also find Facebook's claimed damages fails in its entirety since there is no way of determining what costs were actually incurred during this period and, at the very least, since Facebook's

AROPLEX LAW
A California Law Practice

summary claim fails to account for the CAN-SPAM reversal as ordered by this Court and instructed by the Ninth Circuit.

**B. Under the Broadest Interpretation of the Applicable Allowable Period, Facebook Still Fails to Prove Compensable Damages Incurred December 2 - 30, 2008.**

Under the broadest interpretation of the Allowable Period applicable to Facebook's compensatory damages—i.e., December 2 - 30, 2008—the best evidence Facebook provides for estimating Facbeook's claimed costs is: (1) the report of Facebook's expert analyst, Mr. Ostiller, who concluded without any supporting evidence that Facebook incurred $38,719.00 in legal fees for Perkins Coie's alleged enforcement activities in the whole of December 2008 (referred to generally as "Perkins Costs"); (2) Mr. Ostiller's report stating that Facebook incurred $5,000.00 in damages for the work of engineer Ryan McGeehan, which is estimated at 50 hours over the period of December 2008 through March 2009; and (3) the claims in Facebook's supplemental brief that $902.50 of these claimed costs was incurred on December 1, 2008. (Dkt. No. 416-8. Exhibit 5 to the Cooper Declaration, Ostiller Report).

As a general note and as argued above, the defendants object to the veracity of any damages award based on a period of time (i.e., "December 2008") that is broader than the broadest possible applicable Allowable Period.

With specific regard to the Cutler Costs, Facebook fails to provide so much as an unsupported statement regarding the type of legal work Cutler's firm was performing in 2009 in furtherance of the claimed "enforcement." Since Cutler's firm filed the complaint initiating this matter on December 30, 2008, it must be assumed that (1) all claimed legal work performed by Perkins Coie in 2009 was litigation-related and not some undefined, unrelated "enforcement" activities, and (2) at least some of the legal fees billed by Cutler's firm in December 2008 were

AROPLEX LAW
A California Law Practice

generated by research and drafting the complaint that initiated litigation. These are the obvious assumptions that must be made in the absence of any showing whatsoever by Facebook as to what legal activities are properly being claimed as compensable enforcement expenses. The defendants and the Court are entitled to know what exactly is being awarded and are not expected or required to rely on summary statements by the plaintiff without any further proof, especially where the plaintiff makes no adjustment pursuant to the Court's order.

Specifically, with respect to the claimed $4,950.00 for Mr. McGeehan's estimated 50 hours of time spent on power.com-related enforcement efforts, there are two glaring problems with Facebook's claim:

(1) Facebook's own evidence provides that the 50 hours was spent over four months, and Facebook provides no further evidence or assertion as to what amount of Mr. McGeehan's time was spent in December 2008 or provides a log of McGeehan's activities.

(2) Even if the Court finds Facebook is entitled to compensatory damages related to Mr. McGeehan's undocumented work for the full period spanning December 2008 through March 2009, Facebook blatantly seeks compensation for time Mr. McGeehan spent on efforts related to CAN-SPAM, stating in his own declaration, "My investigation included analyzing the complexity of the attack was, and [sic] involved a substantial amount of my time being spent determining how much effort was needed to contain the spamming." (Dkt. No. 213 at 5:8-10). Facebook makes no attempt to exclude the "substantial amount" of Mr. McGeehan's time specifically related to spamming, which was solely an issue under the CAN-SPAM claim.

Facebook's claim that it incurred an estimated $5,000 in damages due to the time that Facebook employee Ryan McGeehan spent investigating and responding to Power's activities is utterly unsupported by evidence. The Ostiller Report (Dkt. No. 416-8) asserts that Ryan McGeehan

worked an estimated 50 hours in response to Power's activities at an estimated rate of $100 per hour in "fully burdened payroll costs." Ostiller Report at ¶ 18 and Schedule 1a. Ostiller's assertion of McGeehan's 50 hours references the McGeehan Declaration (Dkt. No. 213-4), which does not actually provide a numerical estimate of time expended but rather states that McGeehan spent "many hours" investigating and talking to Facebook personnel about Power's activities, in addition to 3 – 4 days of McGeehan's "own engineering time" addressing other security issues related to Power's activities. McGeehan Declaration at ¶ 17. To be clear, Facebook provides no evidence supporting Ostiller's estimate of McGeehan's 50 hours. Ostiller states that McGeehan *said* he estimates his total expenditure at 50 hours. Ostiller Dec. at ¶ 19. Since Facebook provides no evidence of such statement by McGeehan, it must be assumed that McGeehan made the statement in an interview with Ostiller, which makes the estimate impermissible hearsay. Without even an estimate of hours expended, Facebook has no basis for claiming damages related to McGeehan's efforts.

Further still, neither McGeehan nor Ostiller discloses McGeehan's actual salary, and Ostiller provides no evidentiary basis for estimating McGeehan's hourly rate at $100 or claiming McGeehan was compensated for his own engineering time. Surely Facebook should be required to show more specificity with respect to damages it claims are certain and were actually incurred and not be allowed to rely on estimates of estimates based on facts not on the record or not properly before the Court.

Facebook's failure to provide minimal evidentiary support of its claimed awardable damages pursuant to the Ninth Circuit's remand is not a minor deficiency and cannot be overlooked at this critical final stage in litigation, nor is it too much to expect a party to produce a schedule of hours or other evidence supporting the dates on which efforts were made and for what activities costs were

incurred. Likewise, Facebook's continued assertion of costs incurred in relation to the overturned CAN-SPAM claim is not inconsequential to the defendants, one of which has long since been put out of business due to this litigation, and the other of whom has been forced into bankruptcy because of it[3]. The defendants have already suffered through one appeal in order to reclaim their right against a $3+ million award of statutory damages, and they are now simply asking that the Court hold Facebook to its burden of proving damages by a preponderance of evidence and not merely based on statements that certain sums were incurred for generalized activities over broad periods of time.

## IV. FACEBOOK HAS NOT BEEN DEEMED THE "PREVAILING PARTY" AND IS NOT ENTITLED TO COSTS OF SUIT CLAIMED AFTER THIS COURT'S ORIGINAL JUDGMENT.

Facebook makes no mention of the costs of suit previously claimed by Facebook following the Court's original judgment in favor of Facebook on all three causes of action, yet Facebook includes the sum of $49,637.00 for costs of suit previously taxed against the defendants as a line item in the proposed order filed with its Supplemental Remedies Brief. (Dkt. No. 416-1 at line 22).

Entry of judgment entitles the prevailing party to an award of costs. FRCP 54(d); 28 USC § 1920. Since Plaintiff Facebook, Inc. was originally awarded summary judgment on all three of their claims, they were the prevailing party for the purpose of claiming allowable costs and fees. On January 2, 2014, costs were taxed on this basis in favor of Facebook in the sum $49,637.93.

FRCP 54 provides in its notes, however, that a new period for filing a Bill of Costs will automatically begin if a new judgment is entered following a reversal or remand by the appellate court. Here, no effective judgment has been entered in light of the Ninth Circuit's partial reversal/ vacation/affirmation/remand, and as such the time for filing a Bill of Costs has not begun to run.

[3] See, for example, Dkt. No. 357, Defendants' Opposition to Facebook's Request for Injunctive Relief at 5:1.



AROPLEX LAW
A California Law Practice

AROPLEX LAW
A California Law Practice

Likewise, Facebook has not been deemed the "prevailing party" for the purpose of claiming costs and fees, so it is not entitled to its original costs following an appeal that substantially changes the original judgment.

## V. FACEBOOK IS NOT ENTITLED TO JUDGMENT FOR AN UNDISTURBED DISCOVERY SANCTIONS AWARD.

As with their claim for costs of suit, Facebook makes no mention of the award for discovery sanctions in the sum of $39,796.73 previously entered by the Court (Dkt. No. 356) and left undisturbed by the Ninth Circuit, but Facebook does include this line item in the proposed order filed with its Supplemental Remedies Brief. (Dkt. No. 416-1 at lines 20-21). An order for discovery sanctions is unrelated to the underlying action and is not appropriately included a judgment on the action, nor is it necessary since the order is effective on its own. Facebook provides no basis for including discovery sanctions in the Court's judgment regarding compensatory and injunctive relief.

## VI. FACEBOOK'S PROPOSED PERMANENT INJUNCTION IS OVER-BROAD AND INCLUDES PROVISIONS SPECIFIC TO THE REVERSED CAN-SPAM CLAIM.

Facebook submits with its Supplemental Remedies Brief a proposed order including language instituting a permanent injunction against the defendants. (Dkt. No. 416-1 beginning at 1:23). The proposed language is overly broad in that it (1) restricts activity that is lawful and does not harm Facebook, such as prohibiting any commercial use of Facebook without Facebook's express permission, (2) prohibits activities specifically related to software production that are outside the scope of the CFAA and CPC § 502 and unconnected to Facebook, and (3) applies to third parties unrelated to the litigation.

### A. Restriction of Lawful Commercial Activity.

Subpart A of Section 1 of the proposed injunction prohibits the defendants and a broad group of third parties from "Accessing or using, or directing, aiding, facilitating, causing, or conspiring

AROPLEX LAW
A California Law Practice

with others to use or access the Facebook website or servers for any commercial purpose, without Facebook's prior permission…" (Dkt. No. 416-1 at 2:3-5). This provision makes no mention of unlawful activity or to any activity specific to the statutes at issue in Facebook's complaint. The CFAA and CPC § 502 have no provision relating to activities for any kind of "commercial purpose." On its face, this subpart A does nothing more than give Facebook a competitive advantage over the defendants and third parties by holding the right to prevent them from utilizing Facebook's ubiquitous products, including Facebook Connect and other business tools, for any reason whatsoever.

This provision, as written, would specifically and detrimentally affect the ability of defendant Vachani to earn a living conducting perfectly lawful business since access to and use of facebook.com and Facebook's products are essential to operating in any kind of online or technology-centered business, which Mr. Vachani does. This harm to the defendants is inevitable if this breadth of injunction were simply in place, yet Facebook does not demonstrate any countervailing harm posed to Facebook if the defendants were not enjoined pursuant to this provision. Facebook does claim that it would suffer irreparable harm in the form of loss of goodwill and reputation if the injunction were not granted, yet (1) there is no rational relationship between Facebook's general claim of loss and the perfectly lawful activity Facebook seeks to restrict in subpart A, and (2) Facebook does not meet the legal requirement to establish the risk of irreparable harm to goodwill. There must be evidence of actual injury to support claims of "irreparable" injury. Facebook speculative losses relating to goodwill are insufficient. (*Goldie's Bookstore, Inc. v. Sup.Ct.* (9th Cir. 1984) 739 F2d 466, 472 —findings that plaintiff would lose goodwill and "untold" customers held speculative; *S.J.W. ex rel. Wilson v. Lee's Summit R–7 School Dist.* (8th Cir. 2012)

AROPLEX LAW
A California Law Practice

696 F3d 771, 779; *Big Country Foods, Inc. v. Board of Education of Anchorage School Dist.* (9th Cir. 1989) 868 F2d 1085).

**B. Restriction of Unrelated Activities.**

Section 1, subpart C prohibits software development activities that "allows the user to engage in the conduct found to be unlawful." (Dkt. No. 416-1 at 2:14). This provision makes no reference to the plaintiff or activity directed toward the plaintiff. Likewise, this provision specifically covers activities associated with software development, sales, and use, which is not within the scope of either the CFAA or CPC § 502. To the extent this provision is intended to prohibit the conduct found to be unlawful, it should be limited to that language and scope and not attempt to control one specific means of that conduct which is not an element of the statutes at issues. Courts generally will not grant an injunction when the relief requested is "not of the same character that could be granted finally," and involves matters "wholly outside of the issues in the suit." (*Kaimowitz v. Orlando, Fla.* (11th Cir. 1997) 122 F3d 41, 43; *Omega World Travel, Inc. v. Trans World Airlines* (4th Cir. 1997) 111 F3d 14, 16).

**C. Imposition on Unrelated Third Parties.**

The proposed language attempts to impose a permanent injunction against using Facebook for commercial purpose without Facebook's prior consent on persons and entities unrelated to the activities at issues in this litigation in that it attempts to apply to "Defendants, their agents, officers, contractors, directors, shareholders, employees, subsidiary companies or entities, affiliated or related companies and entities, assignees, and successors-in-interest, and those in active concert or participation with them…" (Dkt. No. 416-1 beginning at 1:25). Without any limit on Facebook's power to refuse permission, his language reaches far beyond the scope of this litigation, particularly with respect to the individual defendant, Mr. Vachani, who would undoubtedly be hindered in his

AROPLEX LAW
A California Law Practice

ability to obtain employment or raise capital or even engage in a business partnership if any person or entity who becomes associated with with Mr. Vachani were suddenly enjoined from conducting business as they otherwise are perfectly allowed. Injunctive relief may be refused where it would adversely affect the rights of persons who are not parties to the litigation. (*Horwitz v. Southwest Forest Indus., Inc*. (D NV 1985) 604 F.Supp. 1130, 1136; see *Publications Int'l, Ltd. v. Meredith Corp*. (7th Cir. 1996) 88 F3d 473, 478).

In summary, the defendants object specifically to Section 1, subparts A and C, and generally to any and all language prohibiting otherwise lawful actions by persons or entities unrelated to this litigation and to any restriction on the defendants' otherwise lawful actions subject to Facebook's unlimited discretion. Defendants further submit that in order to avoid unnecessary future litigation, any injunction against unlawful or harmful activities that the Court finds warranted and permissible under the facts of this case should include language to the effect that the defendants are not enjoined from utilizing authorized Facebook channels available to the public, including but not limited to Facebook Connect.

## VII. CONCLUSION.

Based on the foregoing arguments, Defendants pray that this Court deny Facebook's request for compensatory damages and enter a judgment of $0.00 based on Facebook's failure to prove entitlement to the claimed amount and failure to provide evidence supporting a claim for any amount of compensable damages incurred during the Allowable Period. Defendants further pray this Court limit any injunctive relief to prohibiting only unlawful activities by the defendants and any entity within their exclusive control.

AROPLEX LAW
A California Law Practice

DATED: 3/29/2017 AROPLEX LAW

By: /s/ Amy Sommer Anderson
Amy Sommer Anderson
Attorney for Defendant,
Power Ventures, Inc.

Dated: 3/29/2017 STEVEN VACHANI

By: /s/ Steven Vachani
STEVEN VACHANI
Steven Vachani (pro per)
2425B Channing, #216
Berkeley, CA 94704

FILER'S ATTESTATION: Pursuant to General Order No. 45 §X(B), I attest under penalty of perjury that concurrence in the filing of the document has been obtained from its signatory.

Dated: 3/29/2017 Respectfully submitted,

By: /s/ Amy Sommer Anderson
Amy Sommer Anderson
Attorney for Defendant,
Power Ventures, Inc.

AROPLEX LAW
A California Law Practice

**CERTIFICATE OF SERVICE**

I am a citizen of the United States and a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 156 2nd Street, San Francisco, CA 94105.

On March 30, 2017**,** I served the attached document by the method indicated below:

**X** **ECF System:** By filing the document(s) listed above on the Court's Electronic Case Filing System, I am informed and believe that the documents will be electronically served on all individuals registered with such system. To my knowledge, every individual to whom notice is required is registered with this system and, thus, has been served with due notice by action of this electronic filing.

I declare under penalty of perjury under the laws of the State of California that the above statements are true and correct.

Executed March 30, 2017 at San Francisco, California.

By: /s/ Amy Sommer Anderson
Amy Sommer Anderson
Attorney for Defendant,
Power Ventures, Inc.