I. NEEL CHATTERJEE (State Bar No. 173985)
nchatterjee@goodwinlaw.com
GOODWIN PROCTER LLP
135 Commonwealth Drive
Menlo Park, CA  94025-1105
Telephone:     650-752-3100
Facsimile:      650-853-1038


MONTE COOPER (State Bar No. 196746)
mcooper@orrick.com
ROBERT L. URIARTE (State Bar No. 258274)
ruriarte@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Rd.
Menlo Park, California  94025
Telephone:     650-614-7400
Facsimile:      650-614-7401

Attorneys for Plaintiff
FACEBOOK, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>Plaintiff,<br><br>v.<br><br>POWER VENTURES, INC. a Cayman Island corporation, STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, DOES 2-25, inclusive,<br><br>Defendants. | Case No. 5:08-cv-05780-LHK<br><br>**FACEBOOK'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL REMEDIES BRIEF**<br><br>Date:        April 25, 2017<br>Time:        2:00 P.M.<br>Dept:        Courtroom 8, 4th Floor<br>Judge:       Hon. Judge Lucy H. Koh |

ACTIVE/89744633.3

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ......................................................................................... 1

II.    RELEVANT FACTUAL SUMMARY ........................................................ 1

III.   FACEBOOK IS ENTITLED TO THE REQUESTED INJUNCTION ................................... 2

IV.   FACEBOOK IS ENTITLED TO $79,640.50 IN COMPENSATORY DAMAGES ............. 5

      A.     Defendants' "Start Date" Arguments are Foreclosed by the Factual Record and Law of the Case.................................................................................. 5

      B.     Defendants' "End Date" Argument is Foreclosed by the Factual Record and Law of the Case ................................................................................... 6

      C.     Defendants' CAN-SPAM Act Damages Argument Fails........................................... 8

V.     DEFENDANTS' REMAINING MISCELANEOUS ARGUMENTS LACK MERIT .......... 9

VI.   CONCLUSION.......................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.V. ex rel. Vanderhye v. iParadigms, LLC*,
   562 F.3d 630 (4th Cir. 2009) ......................................................................................7

*Brown Jordan Int'l, Inc. v. Carmicle*,
   846 F.3d 1167 (11th Cir. 2017) ...................................................................................7

*d'Hedouville v. Pioneer Hotel Co.*,
   552 F.2d 886 (9th Cir. 1977) .....................................................................................10

*EF Cultural Travel BV v. Explorica, Inc.*,
   274 F.3d 577 (1st Cir. 2001) .......................................................................................7

*Facebook, Inc. v. Power Ventures, Inc.*,
   844 F.3d 1058 (9th Cir. 2016) ...............................................................................3, 5, 6

*Farrar v. Hobby*,
   506 U.S. 103 (1992) ..................................................................................................10

*Health First, Inc. v. Hynes*,
   628 Fed. Appx. 723 (11th Cir. Fla. 2016) ...................................................................7

*I.M.S. Inquiry Mgmt. Sys. v. Berkshire Info. Sys.*,
   307 F. Supp. 2d 521 (S.D.N.Y. 2004) .........................................................................7

*Lucent Techs., Inc. v. Microsoft Corp.*,
   2010 U.S. Dist. LEXIS 147554 (S.D. Cal. Oct. 27, 2010) ...........................................8

*Magnesystems v. Nikken, Inc.*,
   933 F. Supp. 944 (C.D. Cal. 1996) ..............................................................................8

*NCMIC Fin. Corp. v. Artino*,
   638 F. Supp. 2d 1042 (S.D. Iowa 2009) ......................................................................7

*San Diego Police Officers' Ass'n v. San Diego City Employees' Ret. Sys.*,
   568 F.3d 725 (9th Cir. 2009) .....................................................................................10

*Securities Investor Protection Corp. v. Vigman*,
   74 F.3d 932 (9th Cir. 1996) .........................................................................................8

*SuccessFactors, Inc. v. Softscape, Inc.*,
   544 F. Supp. 2d 975, 980-81 (N.D. Cal. 2008) ............................................................7

*United States v. Holtzman*,
   762 F.2d 720 (9th Cir. 1985) .......................................................................................3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*United States v. Lagos*,
   2017 U.S. App. LEXIS 4834 (5th Cir. Mar. 17, 2017)....................................................7

*United States v. Phillips*,
   477 F.3d 215 (5th Cir. 2007) .........................................................................................7

**Statutes**

18 U.S.C. 1030(a)(2)...........................................................................................................9

Cal. Pen. Code § 502......................................................................................................3, 4, 9

Cal. Pen. Code § 502(e)(1) .................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 54..............................................................................................................9

Fed. R. Civ. P. 54(d) .......................................................................................................10

Fed. R. Civ. P. 65(d)(2)......................................................................................................4

## I.   INTRODUCTION

Facebook should be awarded $79,640 in damages, and the Court should enter its requested injunction.  Defendants do not dispute (1) that they received the cease and desist letter on December 1, 2008, or (2) the amount of Facebook resources Facebook deployed to address Defendants' unlawful activity.  These undisputed points should end the inquiry on damages.  Instead, Defendants misapply the express rulings of the Ninth Circuit and ignore previous rulings of this Court.

Facebook's need for an injunction remains as clear today as it was when the Court first entered its original permanent injunction.  Without a Court order, a real risk exists that Defendants will flout their legal obligations.  For example, Defendants' post-remand conduct demonstrates a pattern of disregard for the Court's orders.  Defendants have disobeyed every single order the Court has issued since remand: they refused to meet and confer about the joint case management conference statement, flouted the Court's express order to pay discovery sanctions, and disregarded the court-ordered remedies briefing schedule.  Defendants complain that Facebook's requested injunction would place them under restrictions that don't apply to the general public, but those restrictions make perfect sense here.  The Court should exclude Defendants from using Facebook's website without permission given their history of unlawful conduct and continued refusal to obey court orders.

## II.   RELEVANT FACTUAL SUMMARY

Defendants do not dispute that they received Facebook's cease and desist letter on December 1, 2008 at 7:54 p.m.  Facebook's Supp. Brief at 3.  Defendants do not dispute Facebook employee Ryan McGeehan spent 50 hours of time at $100 per hour investigating and remediating Defendants' conduct from December of 2008 through March 23, 2009.  *Id.* at 4.  Other than 31 minutes of work performed on December 1, 2008, all of Mr. McGeehan's efforts occurred after December 1, 2008.  *Id.*; *see also* Dkt. 214, Ex. 9.

Defendants quibble about the specific date their attacks on Facebook ended.  Defendants' supplemental brief states that "December 30, 2008 would be considered the last date of [Defendants'] 'unauthorized access'," but no evidence is provided to support this allegation.  Defs' Br. at 8.  In fact, in a prior pleading, Defendants represented that "[f]or approximately two months

from December 2008 through January 2009, Power offered Facebook users the ability to connect to Facebook through Power's browser." Dkt. 234 at 2. The record evidence indicates that Defendants' current unsupported assertion is wrong and that Defendants accessed Facebook again on February 5, 2009. Dkt. 213, Ex. C at 5. As discussed in earlier Court filings, after this litigation commenced, Defendants destroyed extensive evidence regarding the scope of their post-December 2008 activities. Dkt. 300 at 2-5; Dkt. 299-14 at 83:23-84:10 (Vachani deposition testimony regarding his decision to delete logging database in April 2011). Nevertheless, the precise date on which Defendants stopped accessing Facebook's website is immaterial because it is undisputed that Facebook continued to incur remediation costs through March 2009. Defendants do not dispute that Facebook's outside counsel negotiated with Defendants from December 4, 2008 to March 14, 2009 in an attempt to obtain Defendants' voluntary compliance with Facebook's cease and desist demands. Dkt. 213, Ex. C; Dkt. 415-5, ¶¶ 7-8. Defendants had no intention to engage in good faith negotiation and instead used Facebook's efforts to engage in a game of cat and mouse. Dkt. 275 at 16. Facebook then broke off negotiations on March 14, 2009 once it became clear that Facebook needed to seek court relief. Dkt. 213, Ex. C at 5-6.

## III.      FACEBOOK IS ENTITLED TO THE REQUESTED INJUNCTION

Facebook's proposed injunction enjoins Defendants from (1) accessing or using Facebook's websites or servers for any commercial purpose (including for the purpose of sending spam) without Facebook's prior permission; (2) using any data obtained as a result of Defendants' unlawful conduct; and (3) developing or distributing any software that allows users to engage in conduct found to be unlawful. Defendants challenge three aspects of the proposed injunction.

**Proposed Injunction Section 1(A).** Section 1(A) of Facebook's injunction is a narrowed version of Section 1(C) of the Court's original injunction, which prohibited Defendants from "[a]ccessing or using, or directing, aiding, facilitating, causing, or conspiring with others to use or access the Facebook website or servers for any purpose, without Facebook's prior permission." Dkt. 373. Section 1(A) narrows the language of original injunction Section 1(C) by adding the qualifying

language "accessing…for any *commercial purpose*."  Dkt. 416-1 (emphasis added).[1]  Nevertheless, Defendants complain that Section 1(A) of Facebook's proposed injunction is overly broad because it "restricts activity that is lawful" by prohibiting use of Facebook's website for commercial purposes without permission.  Defs' Br. at 15.  This argument is both factually and legally incorrect.  It is not lawful for Defendants to access Facebook's website *at all* at this point in time because Facebook revoked their permission to do so on December 1, 2008.[2]  If Defendants wish to use Facebook's website for commercial purposes, they must seek permission first.  *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1068 (9th Cir. 2016) (confirming Facebook's right to exclude Defendants from its website and holding that Defendants "need[] authorization…from Facebook" to lawfully access Facebook post receipt of the December 1, 2008 cease and desist letter).

Defendants' argument is also meritless here, as other users did not break the law.  For that reason, Defendants have a special status warranting special treatment.  *See United States v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985).  In determining whether an injunction against otherwise lawful conduct is necessary and appropriate, a court must balance the burden on the defendant against (1) the detriment that would be caused by continued violations of law, (2) the probability of continuing violations unless the associated lawful activity is also enjoined, and (3) the effectiveness of other means of deterrence.  *Id.*  The balance of these factors clearly weighs in favor of granting Facebook's requested injunction, even if it prohibits some purportedly lawful conduct.

First, the Court has already found that Defendants' conduct causes Facebook irreparable harm, is contrary to the public interest, and that the balance of hardships weighs in Facebook's favor. Dkt. No. 373 at 28-31.  Second, Defendants' conduct establishes that they are extremely likely to continue violating the CFAA and Cal. Pen. Code § 502 absent the requested relief.  Without a doubt, Defendants will claim "permission" to conduct whatever commercial activities they want on

---

[1] Section 1(A) enjoins defendants from "Accessing or using, or directing, aiding, facilitating, causing, or conspiring with others to use or access the Facebook website or servers for any commercial purpose, without Facebook's prior permission, including by way of example and not limitation for the purpose of sending or assisting others in sending, or procuring the sending, of unsolicited commercial electronic text messages via the Facebook website or service."

[2] Notably, Vachani is in violation of this demand today, as he maintains an active Facebook presence.

Facebook's website, regardless of Facebook's policies, unless there is a court order in place preventing further violations of law.  Indeed, in their last submission to this Court, Defendants argued that they had "express authorization" from Facebook to access Facebook's computers from December 1 to December 26, 2008—*while they were actively evading Facebook's IP address blocking efforts*—because they were "negotiating" with Facebook about its cease and desist demand. Defs' Br. at 7.  Third, no other effective means of deterrence exist.  Defendant Power is a defunct Cayman Islands entity that claims inability to pay the discovery sanctions award owed to Facebook, and Defendant Vachani has filed for bankruptcy.  As revealed by Defendants' disregard for this Court's sanctions order, the only effective means of deterrence is injunctive relief.

Defendants offer no evidentiary support for their assertion of prejudice.  Defendants do not state what anticipated legal activities Section 1(A) would prevent them from engaging in, nor do they offer any evidentiary support for the bald assertion that Section 1(A) would prevent Defendant Vachani from earning a living (an argument that this Court previously rejected in imposing the original injunction).  Dkt. 373 at 31.  Apparently, Vachani is already operating in "[some] kind of online or technology-centered business," and there is no evidence that he requires commercial use of Facebook to do so.  Defs' Br. at 16.

**Proposed Injunction Section 1(C).**  Like Section 1(E) of the original injunction, Dkt. 373 at 33, Section 1(C) would enjoin Defendants from "developing, using, selling, offering for sale, or distributing, or directing, aiding, or conspiring with others to develop, sell, offer for sale, or distribute, any software that allows the user to engage in *the conduct found to be unlawful,*" i.e., software designed to facilitate violations of the CFAA and California Penal Code § 502.  Defendants complain that "this provision makes no reference to the plaintiff" and covers "activit[ies]…not within the scope of either CFAA or CPC 502," but these arguments are of no consequence.  The Court can and should enjoin Defendants from using their IP-address-proxying-scraper software to commit crimes, or from providing such software to others who intend carry out CFAA violations.

**Objection to Standard Rule 65 Language.**  Defendants' final objection is that the injunction applies to persons other than Defendants, *i.e.*, agents, officers, employees, affiliates, and others acting in concert with Defendants.  This is standard injunction language authorized under

4

Rule 65.  *See* Fed. R. Civ. P. 65(d)(2).  Defendants' unsupported argument that this language will hinder Vachani's employment prospects should be rejected for the same reasons already noted by this Court.  Dkt. 373 at 31.

## IV.   FACEBOOK IS ENTITLED TO $79,640.50 IN COMPENSATORY DAMAGES

Facebook's entitlement to $79,640.50 in compensatory damages is established by three undisputed facts.  First, "after receiving the cease and desist letter from Facebook, [Defendants] intentionally accessed Facebook's computers knowing that it was not authorized to do so, making [Defendants] liable under the CFAA."  *Power Ventures,* 844 F.3d at 1069.  Second, Facebook's efforts to remediate Defendants' CFAA violations were ongoing from the date of Facebook's cease and desist letter on December 1, 2008 to March 23, 2009.  Dkt. 213 Ex. C (Cutler Timeline); Dkt. 214, Ex. 9 at Ex. 4 (McGeehan logs).  Third, Defendants' unauthorized access to Facebook's computers after December 1, 2008 caused Facebook to incur two types of remediation expenses: (1) the cost of technical measures aimed at blocking Defendants from Facebook's website ($4,950); and (2) the cost of negotiations with Defendants in an attempt to convince Defendants to voluntarily stop accessing Facebook's website and to destroy the database Defendants created with the data scraped from Facebook's website ($74,690.50).  Facebook's Supp. Brief at 3-4; *see also* Dkt. 373 at 15 (holding that these costs are compensable damages under the CFAA).  The evidence establishing Facebook's remediation expenses is and always has been uncontroverted.  *See* Dkt. 373 at 26.

### A.   Defendants' "Start Date" Arguments are Foreclosed by the Factual Record and Law of the Case

Defendants offer two faulty arguments about the proper start date for Facebook's compensatory damages period.  First, Defendants quibble about whether the proper damages period "start date" is Saturday, December 2, 2008 or Monday, December 4, 2008.  This argument is irrelevant.  Facebook's damages evidence establishes that the first remediation costs Facebook incurred after sending Defendants the cease and desist letter on Friday, December 1, 2008 were actually incurred on Monday, December 4, 2008.[3]  Dkt. 415-5, ¶¶ 7-8; Dkt. 214, Ex. 9 at Ex. 4

---

[3] Defendants argue that "it was on December 4, 2008 that Facebook first revoked authorization of Power's access to facebook.com," because the original recipient of Facebook's cease and desist demand (hostmaster1@poweremail.org) was "not a representative of Power Ventures, Inc."  Defs'

(McGeehan logs).

Second, Defendants argue that "Facebook expressly authorized power to continue accessing facebook.com" from December 4, 2008 to December 26, 2008 by engaging in "ongoing negotiation with Power." Defs Br. at 6:27-7:10. The Ninth Circuit already rejected Defendants' "authorization" argument, stating unequivocally that:

> Facebook expressly rescinded Power's permission when Facebook issued its written cease and desist letter to Power on December 1, 2008. Facebook's cease and desist letter informed Power that it had violated Facebook's terms of use and demanded that Power stop soliciting Facebook users' information, using Facebook content, or otherwise interacting with Facebook through automated scripts…We therefore hold that, after receiving written notification from Facebook on December 1, 2008, Power accessed Facebook's computers 'without authorization' within the meaning of the CFAA and is liable under that statute…after receiving the cease and desist letter from Facebook, Power intentionally accessed Facebook's computers knowing that it was not authorized to do so, making Power liable under the CFAA.

*Power Ventures,* 844 F.3d at 1067-69.

Defendants' "express authorization" argument cannot be squared with the undisputed fact that Defendants' actively circumvented Facebook's technical measures to block their access to the Facebook website throughout the month of December 2008. *E.g.,* Dkt. 373 at 18 ("Vachani admitted that he directed the company's decision to circumvent Facebook's blocks of Power Venture's IP addresses"); *Power Ventures*, 844 F.3d at 1068 (discussing Defendants' December 2008 measures to evade Facebook's IP-blocking efforts).   In fact, the record evidence shows that Defendants merely engaged in negotiation so that they could deploy circumvention measures during the negotiation period.  Dkt. 233, Ex. B (email string from Vachani showing last-minute about face "business decisions" to continue accessing Facebook without permission after weeks of promises to comply with Facebook's demands).

---

Br. at 6:17-24.  This argument ignores the record evidence that Vachani and other Power employees received Facebook's cease and desist letter on December 1, 2008 and that the Ninth Circuit found that Facebook revoked Defendants' authorization on December 1, 2008.  *Power Ventures*, 844 F.3d at 1067.

**B.**     **Defendants' "End Date" Argument is Foreclosed by the Factual Record and Law of the Case**

Defendants next argue that the proper "end date" for Facebook's CFAA damages period is the last date they accessed Facebook's website.  Defs' Br. at 7:11-17. This argument is nothing more than a repackaging of the previously rejected argument that attorneys' fees incurred by Facebook in responding to Defendants' conduct should not be cognizable as CFAA damages.

The harm caused by computer crimes does not instantaneously abate the moment a trespasser withdraws from an owner's digital premises.  Computer crimes often—if not always—cause victims to incur remediation costs that continue to accrue after the initial breach is over, including legal fees. That is why the CFAA's definition of loss is a "broadly worded provision" that plainly contemplates damages in the form of "costs incurred as part of the response to a CFAA violation, including the investigation of an offense." *NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1064 (S.D. Iowa 2009) (citing *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 646 (4th Cir. 2009) (emphasis added).  Cases awarding damages accruing after an intrusion has concluded are legion. *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 584 n.17 (1st Cir. 2001) (money plaintiff paid after the fact "to assess whether their website had been compromised" held compensable loss under CFAA); *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1174-1175 (11th Cir. 2017) (affirming CFAA damages award that included the costs of an "extensive forensic and physical review of [the victim's] systems to determine the extent of [the] hacking activity" that occurred *after* the defendant's intrusion into the victim's computer systems); *see also* California Penal Code § 502(e)(1)(defining compensatory damages to include damages associated with verification of status of data after an intrusion).[4]

---

[4] *See also SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 980-81 (N.D. Cal. 2008) (the cost of investigating and identifying the CFAA offense…qualified as cost[s] of responding to an offense under § 1030(e)(11)); *Health First, Inc. v. Hynes*, 628 Fed. Appx. 723, 724 (11th Cir. Fla. 2016) (affirming CFAA damages award including legal fees incurred by victim after breach); *I.M.S. Inquiry Mgmt. Sys. v. Berkshire Info. Sys.*, 307 F. Supp. 2d 521, 525-26 (S.D.N.Y. 2004) (including cost of "damage assessment and remedial measures" in CFAA damages award); *A.V. ex rel. Vanderhye v. iParadigms, LLC,* 562 F.3d 630, 646 (4th Cir. 2009) ("the costs of responding to the offense are recoverable including costs to investigate and take remedial steps" (internal quotations omitted)); *United States v. Lagos*, 2017 U.S. App. LEXIS 4834, *2-3 (5th Cir. Mar. 17, 2017) (noting that in *United States v. Phillips*, 477 F.3d 215 (5th Cir. 2007), the Fifth Circuit affirmed the

1    Defendants' cursory argument that Facebook has not provided any evidence to support its

2    claim of damages through March 2009 is simply incorrect.  The declaration of Joseph Cutler and

3    exhibits thereto establish that he continued to attempt to negotiate compliance with Facebook's cease

4    and desist demand until March 14, 2009.  Cutler Supplemental Declaration at ¶¶ 7-9; Dkt. 213, Ex

5    C.  Likewise, the declaration of Ryan McGeehan and logs of his activity establish that he updated

6    the incident ticket for Defendants' activities on March 23, 2009.  Dkt. 214 Ex. 9 at p. 49-50

7    (McGeehan Logs).  Facebook's damages expert's report also supports the fact that Facebook's

8    remediation efforts lasted until March 2009.  Dkt. 416-8 at 31.  Defendants never challenged the

9    factual sufficiency of Facebook's evidence in opposing summary judgment or on appeal; Defendants

10    offered only the legal argument that attorneys' fees are not compensable CFAA damages.  As

11    Defendants' new factual sufficiency issue was not raised on appeal before, this argument has been

12    waived.  *E.g., Securities Investor Protection Corp. v. Vigman*, 74 F.3d 932, 937 (9th Cir. 1996)

13    (argument not raised on appeal is waived); *Magnesystems v. Nikken, Inc*., 933 F. Supp. 944, 949-950

14    (C.D. Cal. 1996) ("an issue or factual argument waived at the trial level before a particular order is

15    appealed, or subsequently waived on appeal, cannot be revived on remand") (collecting cases);

16    *Lucent Techs., Inc. v. Microsoft Corp*., No. 07-CV-2000 H (CAB), 2010 U.S. Dist. LEXIS 147554,

17    *18 (S.D. Cal. Oct. 27, 2010) (similar).

18        **C.    Defendants' CAN-SPAM Act Damages Argument Fails**

19        Defendants argue—again without citation to any evidence or legal authority—that there

20    should be some type of "adjustment [to Facebook's CFAA damages claim] for costs associated with

21    efforts related to CAN-SPAM, which are not awardable."  Defs' Br. at 8:20-25.  In essence,

22    Defendants' argument is that because Facebook's remediation effort involved attempting to stop

23    Defendants' unauthorized scraping of data from Facebook's website *and* Defendants' *use* of that

24    data to spam Facebook users via Facebook's own communications systems, some unspecified

25    portion of Facebook's remediation costs should be counted as CAN-SPAM related costs that are not

26    compensable as CFAA damages.  Defendants' argument fails for two principal reasons.

27    _____

28    district court's inclusion in a restitution award of costs incurred "notify[ing] other victims of the
hacker's data theft.").

8

First, Defendants' argument ignores the fact that the Court's original judgment awarded compensatory damages *solely* for Facebook's CFAA and California Penal Code § 502 claims. Facebook elected statutory damages on its CAN-SPAM Act claim.  Thus, the Court's original compensatory damages award did not include any CAN-SPAM damages component, and the Ninth Circuit's reversal of Defendants' CAN-SPAM liability does not affect the Court's prior compensatory damages finding in any way.[5]

Second, Defendants' argument misapprehends the nature of Facebook's CFAA claim. Facebook obtained summary judgment against Defendants for violation of CFAA section 1030(a)(2), which makes it unlawful to (1) intentionally access a protected computer, and (2) *thereby obtain information* from the protected computer.  18 U.S.C. 1030(a)(2).  Here, Defendants used the data they obtained via their unauthorized access to Facebook's protected computers to create a database that Defendants then used to spam Facebook users.  Stopping Defendants from using of the spoils of their unlawful activity has always been a central element of Facebook's CFAA claim: Facebook's initial cease and desist letter to Defendants demanded that Defendants' delete the data they scraped from Facebook, Facebook attempted to negotiate destruction of Defendants' ill-gotten database for months after the lawsuit was filed,[6] and the CFAA portion of the Court's original injunction required Defendants to "destroy Facebook data and/or information obtained from Facebook or Facebook's users."  Dkt. 373 at 34.

## V.    DEFENDANTS' REMAINING MISCELANEOUS ARGUMENTS LACK MERIT

Defendants raise two arguments having nothing to do with the damages and injunction requests: arguments about (1) awarding costs to the prevailing party and (2) an issue about the sanctions order affirmed by the Ninth Circuit.

Defendants' arguments under Rule 54 are premature.  During the previous case management

---

[5] Facebook's original judgment included a statutory damages award on its CAN-SPAM Act claim and compensatory damages award on its CFAA claim.

[6] Defendants continued to use for commercial gain their database of scraped Facebook data until at least March 2009 in connection with the Power 100x100 launch promotion. Dkt. 299-12 (Vachani deposition testimony regarding use of database); Dkt. 299-13 (March 29 email discussing need to pay winners of launch promotion, which required use of database).  Defendants subsequently destroyed some of the relevant data during pendency of discovery, which prevented Facebook and the Court from learning the full magnitude of Defendants' malfeasance.  Dkt. 300 at 4-6.

conference, this Court made clear that the issue of costs was premature and should only be raised after judgment has entered.  For that reason, these arguments are not ripe for adjudication.

In any event, Defendants' argument that Facebook is not the prevailing party ignores the applicable standard under Rule 54.  Courts consistently hold that "a party in whose favor judgment is rendered is generally the prevailing party for purposes of awarding costs under Rule 54(d)."  *San Diego Police Officers' Ass'n v. San Diego City Employees' Ret. Sys.*, 568 F.3d 725, 741 (9th Cir. 2009) (quoting *d'Hedouville v. Pioneer Hotel Co.*, 552 F.2d 886, 896 (9th Cir. 1977)).  A party need not prevail on all of its claims to be considered the prevailing party.  *Id.*  What is necessary is for the party to obtain "actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the [other party's] behavior in a way that directly benefits [the first party]."  *Farrar v. Hobby,* 506 U.S. 103, 111-12 (1992).  There is no question that Facebook is the prevailing party here.

Second, Defendants argue that the discovery sanctions award should not be reduced to judgment.  As of the date of this filing, Facebook still has not received any payment pursuant to the Court's previous order, and the Court has even invited a motion for contempt.   There is little question that the sanctions order should be part of the judgment.

## VI.   <u>CONCLUSION</u>

For these reasons, Facebook requests that the Court enjoin Defendants as requested and award compensatory damages in the amount of $79,640.50.

1

2  Dated: April 7, 2017                    Respectfully Submitted,

3
                                           By:  _____*I. NEEL CHATTERJEE*_____
4                                                I. NEEL CHATTERJEE
                                                 nchatterjee@goodwinlaw.com
5                                                GOODWIN PROCTER LLP
                                                 135 Commonwealth Drive
6                                                Menlo Park, CA  94025-1105
                                                 Telephone:      650-752-3100
7                                                Facsimile:      650-853-1038

8                                                MONTE COOPER
                                                 mcooper@orrick.com
9                                                ROBERT L. URIARTE
                                                 ruriarte@orrick.com
10                                               ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                 1000 Marsh Rd.
11                                               Menlo Park, California  94025
                                                 Telephone:      650-614-7400
12                                               Facsimile:      650-614-7401

13                                               Attorneys for Plaintiff
                                                 FACEBOOK, INC.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FACEBOOK'S SUPP. REMEDIES RESPONSE
CASE NO.  5:08-CV-05780-LHK