UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(San Jose Division)

FACEBOOK, INC

      Plaintiff(s),

vs.

Case No: 08-cv5780 (LHK)

POWER VENTURES, INC. a Cayman Island corporation, STEVE VACHANI, an individual; DOE 1, d/b/a POWER.COM, DOES 2-25, inclusive,

      Defendant(s).

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY**

Defendant Steve Vachani replies to the Plaintiff's Opposition to his Motion to Stay proceedings pending Supreme Court certiorari review, and states as follows:

## I.   Overview

In 2012, this district court was found to have erred when it issued CAN-SPAM charges with over $3,000,000 in damages against defendants. In 2013, this court compounded that error and caused even greater hardship to the defendant when it issued the harshest of permanent injunctions.[1] The rationale to justify this injunction relied on the severity, *'irreparable harm'*, and damages caused specifically by the alleged "prolific" spamming. (Dkt 373, pp. 27-32).  In December 2016, the 9th Circuit Court of Appeals decision, overturning and vacating all spam charges and completely recasting the reasons why defendants were accessing accounts (purportedly without authorization), undercut this now-vacated injunction. It *completely* eliminated over $3,000,000 of the previously charged spam-related damages. Unfortunately, this correction happened a little too late.  Defendants were subject to irreparable reputational damage in many global media publications labeling defendants as 'spammers.'  I suffered incredible hardship, including a grueling 5-year bankruptcy process with Facebook [2] and limited employment opportunities as a consumer internet CEO due to the interdependence that almost every consumer internet company in the world today has with Facebook.

---

[1]  Facebook claims that my stay motion is procedurally defective because I claim to speak for my co-defendant Power. My motion was filed solely as a prose defendant independent of my co-defendant. My name was the only name listed on the motion and I am not representing Power

[2]  This related proceeding with Facebook was recently stayed by Bankruptcy Judge Efremsky for 90 days after we filed our Supreme Court petition. Facebook approached defendant requesting to file joint request for stay.

2

In opposing Defendant's request for a stay of proceedings, Facebook failed to adequately respond to or refute my arguments that they will not be harmed by this stay, that this petition is clearly not frivolous or filed merely for delay, and that our petition clearly presents to the Supreme Court an issue that is arguably of importance and with a reasonable probability of being granted.

## II. LEGAL STANDARDS FOR ISSUANCE OF A STAY

A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997), citing *Landis v. North American Co.,* 299 U.S. 248, 254 (1936). [3]

Where, as here, a party seeks to stay proceedings pending Supreme Court review, district courts across the country, and including this Court, often exercise their discretion to enter a stay. See, e.g., *Peaceable Planet, Inc. v. Ty, Inc.*, No. 01 C 7350, 2004 WL 1574043, at *2 (N.D. Ill. July 13, 2004) ("Therefore, considering the relatively short amount of time anticipated to resolve the pending writ of certiorari, granting Defendants' stay is the more efficient procedure."); *NGV Gaming, Ltd. v. Harrah's Operating Co.*, No. 04-3955 SC, 2008 WL 4951587, at *1 (N.D. Cal. Nov. 18, 2008) (staying case pending petition for writ of certiorari pursuant to the Court's inherent power in the interest of "the orderly

---

[3] Indeed, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. at 254.

course of justice without causing hardship to either party"); *United States v. Kenney*, No. CR-07-66-B-W, 2008 WL 3285891, at *1 (D. Me. Aug. 5, 2008) (staying case pending petition for writ of certiorari despite low likelihood of success on appeal because "there is no evident harm to the Government from delay"); *Davis v. Blige*, No. 03 CIV. 993 (CSH), 2008 WL 2477461, at *2 (S.D.N.Y. June 16, 2008) ("If the Court grants certiorari on this novel and economically important question for the recording industry, reverses the opinion of the Second Circuit, and reinstates the judgment of this Court, the federal case is likely at an end, and the time and effort of conducting damages discovery and preparing for a trial on that issue would have been wasted."); *Evans v. Buchanan*, 435 F. Supp. 832, 848 (D. Del. 1977) ("I believe that a stay of implementation of the one-district plan for grades 7 through 11 is justified, pending disposition of the writ of certiorari by the Supreme Court."); *Inclusive Cmtys. Project, Inc. v. Texas Dep't of Hous. & Cmty. Affairs*, No. 3:08-CV-0546-D, 2014 WL 2815683, at *2 (N.D. Tex. June 23, 2014) ("The court holds in its discretion that the proceedings on remand should be stayed pending resolution of the Supreme Court's decision on TDHCA's petition for a writ of certiorari."); *Tecsec, Inc. v. Int'l Business Machines, Corp.*, No. 10-cv-115, slip op. at 1 (E.D. Va. February 21, 2014) ("the stay of litigation against all remaining defendants in this action is continued until such time as the United States Supreme Court acts on defendants' petition for certiorari").

In *Landis v. N. Am. Co.*, *supra,* the Supreme Court identified three important (but not exclusive) factors for lower courts to consider when determine whether to issue a stay pending petition for certiorari: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Landis v. North American Co.*, 299 U.S. at 254.  The party seeking the stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Google Inc. v. Creative Labs, Inc.*, 2016 U.S. Dist. LEXIS 163696, *3-4 (N.D. Cal. Nov. 28, 2016).  However, the standard is not formulaic: "A stay is ... an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 129 S.Ct. 1749, 173 L.Ed.2d 550, 556 U.S. 418 (2009), quoting *Virginian Ry Co v. United States*, 272 U.S. 658, 672, 47 S.Ct. 222, 71 L.Ed. 463 (1926) ("[T]he traditional stay factors contemplate individualized judgments in each case").

## II.  A Stay is Warranted Herein.

A.  <u>A stay in this case will preclude substantial interim harm to Defendant.</u>

Facebook's primary claim in opposition is that "Vachani's arguments claiming hardship are also simply not credible." Opposition, p. 4. Such a claim is not legitimate. As noted above, I have been forced into bankruptcy and lost years of accumulated professional reputation based on a lawsuit by Facebook the vast bulk of which was later found invalid. And whether this motion for stay immediately followed the petition for cert itself or followed two weeks later is wholly irrelevant to the merits (Opposition, p.4.) and do not undercut a claim of severe hardship. Prematurely issuing a new permanent injunction that could once again be vacated by the Supreme Court is premature and will continue the same hardship that I have suffered for the previous years, specifically limited employment options and an open bankruptcy process.

B. Facebook faces little or no burden from a stay in this case.

It is ludicrous to suggest that a business the size and scope of Facebook (Facebook is currently valued over $400 billion with over $60 billion in assets) will confront any significant burden in waiting 90 days for a hearing to collect what now amounts to some tens of thousands of dollars. See Opening Motion at approx. p. 4. Since the defendant is already in bankruptcy proceedings with Facebook, Facebook would not be prejudiced by delay since the bankruptcy proceedings have already been stayed by Judge Efremsky. In any event, a temporary delay in resolving a claim for damages, is not adequate grounds to deny a stay. *Lockyer v. Migrant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005);

*Gustavson*, 2014 U.S. Dist. LEXIS 171736, at *7 (holding that a "mere delay in monetary recovery is an insufficient basis to deny a stay"). Nor should the length of possible delay be an issue. This Court should issue a 90 day stay and revisit the matter if and when the Supreme Court were to grant certioriari. In any event, the offer of a temporary restraining order, see below, moots this point as well.

C. <u>Judicial economy is best served by issuance of a stay.</u>

A simple 3 month initial stay would potentially save all parties more months of wasted resources (in the event that the Supreme Court approves the petition and eventually overturns 9th circuit mandate) from additional proceedings, motions, and appeals that will likely follow these remand hearings due to the dramatic difference in the parties' positions. Such proceedings, potential damages decisions, potential decisions on new motions to be filed over the coming months, and any potential injunction could be rendered moot by forthcoming Supreme Court action. Additional hardship herein arises from pursuit of potentially wasteful litigation. Cf. *Negotiated Data Solutions, LLC v. Dell Inc*. No. CV-03-05755 JSW. (N.D. Cal. Sep. 16, 2008) [4]

---

[4] "N-Data argues that the substantial reduction in the cost of litigation would result from a stay, and that both parties would therefore benefit, and stand to lose costs if the litigation were to continue regardless. Due to the representations that N-Data has made, and which will bind them once the stay is lifted, the Court finds that duplicative litigation costs and the pursuit of broad discovery when a far narrower scope of discovery would be required, are sufficient to make a showing of hardship justifying a stay." Ibid.

In its opposition, Facebook failed to refute my arguments supported by well established case law with these commonly used criteria for granting stays pending writ of certiorari. Instead, they simply attacked my character and said my arguments were 'faulty' with little substance. The only thing Facebook actually did say regarding these arguments was that we filed a "hail mary" petition which "lacks merit" and that "Defendants have made no showing that the Supreme Court is likely to grant certiorari ... the Supreme Court receives approximately 7000-8000 petitions for a writ of certiorari each term, but grant and hears oral arguments in only 80 cases." Opposition, p. 5.  Facebook put in their opposition that I "cite no evidence to support the objectively  unlikely conclusion that the Supreme Court will grant certiorari."  Ibid.

First, the petition for certiorari presents a strong merits case.  The Supreme Court ordered Facebook to file a brief in opposition after it at first declined to do so.  This fact itself is evidence of the strength of the merits issue.  'Objectively" speaking, in a statistical review of four years of Supreme Court petitions, "among the 2,256 petitions naming a business as the first respondent, the Court called for a response (CFR) in 2.5% of cases (56 instances). Of these 56 calls for a response, the Court granted nearly a quarter of the cases (23.2%)." [5] This study

---

[5]  Thompson, D., and Wachtell, M., *AN EMPIRICAL ANALYSIS OF SUPREME COURT CERTIORARI PETITION PROCEDURES:  THE CALL FOR RESPONSE,* 16 Geo. Mason L. Rev. 237, 250, 268. (2008-2009)

8

further stated: "When a CFR is issued, it is a strong sign that the Court is interested in hearing argument in a case." Ibid.  Based on objective historical records, 23.2% is not a 'hail-mary' petition and a CFR indicates that at least one justice has deemed our petition to be cert-worthy.

Appropriate guidance is offered by the Federal Rules of Appellate Procedure Rule 41(d)(2)(A).  That rule provides that "staying the issuance of the mandate pending application for a writ of certiorari is appropriate where "the certiorari petition would present a substantial question and … there is good cause for a stay." Fed. R. App. P. 41(d)(2)(A).  Although a stay of the mandate pending petition to the Supreme Court is not "granted as a matter of course", see 9th Cir. R. 41-1, "a party seeking a stay of the mandate following this [C]ourt's judgment need not demonstrate that exceptional circumstances to justify a stay." *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir. 1989). The Comments to Circuit Rules indicate that a stay is only denied where the petition would be "frivolous or filed merely for delay." See 9th Cir. R. 41-1.  That the 9th Circuit wrestled at length with this issue, and that the Supreme Court has ordered Facebook to respond, it can hardly be argued that the merits issues herein is frivolous.

As is all too common with Facebook's litigation antics since the beginning of this case, Facebook's opposition to my 'motion for stay' is full of hyperbole with misleading, irrelevant, or greatly exaggerated allegations focused more on attacking my personal character rather than properly responding to the actual

legal questions and arguments I presented on why this court should approve the 'Motion for stay'. This kind of ad hominem attack shouldn't distract the court from the merits of this motion for stay.

   D. <u>This Request for Stay is not waived by participation in earlier case management conferences.</u>

In a rather confusing and somewhat desperate argument, Facebook claims that I procedurally waived my right to seek a stay because I participated in case management conferences. Opposition at pp. 2-3. There is absolutely nothing that may be inferred from participation in case management processes other than respect for the orderly procedures of the court. It certainly gives rise to no inference of waiver of important litigation rights.

### III. An Interim TRO would obviate any claim of hardship.

Despite a pending appeal to the Supreme Court, which could once again render moot all current and future district court decisions, Facebook insists on raising dramatic complaints of 'suffering.' Facebook's justifies this 'suffering' by asking the court to urgently issue a new damages decision of $79,640 (charges which are heavily disputed by defendants) and a new permanent injunction,.[6]

---

[6] Defendant has argued no longer meet the legal requirements for issuance of a permanent injunction. See *Defendant's Opposition to Facebook Motion for Supplemental Remedies, Dkt 423*. Defendant also will be filing new motions specifically challenging the validity of and seeking reconsideration of district court summary judgements issued prior to the 9th Circuit decision.

However, in order to demonstrate its good faith and to respond to Facebook's specious argument that they will 'suffer' over the next few months without an injunction in place, Defendant will agree to a temporary injunction for the duration of any stay of these district court remand hearings. By agreeing to this temporary injunction, almost all of the concerns that Facebook brought up in its opposition would be addressed. (See Facebook Proposed Permanent Injunction and Defendant's Proposed Temporary Injunction – Exhbit A)

## Conclusion

Based on the above, this Court should stay further proceedings pending completion of Supreme Court review.  A stay promotes no hardship to Facebook and minimizes a history of extremely hardship for the Defendant.  It is a logical use of judicial resources:  just as the 9th Circuit decision upended this Court's initial determinations, so the Supreme Court could reverse that portion of the Court's findings upheld by the 9th Circuit.  All ancillary litigation would be affected, and possibly rendered superfluous.  Finally, there is already indication that the Supreme Court considers the merits issue herein to be a significant one.  For these reasons, it makes judicial, and common, sense to stay further proceedings pending Supreme Court review.  An interim temporary restraining order as would be agreed to by the Defendant renders pointless any opposition by Facebook to this stay.

Dated:  May 1, 2017               Respectfully submitted,

__/s/ Steven Vachani_____

Steven Vachani, Pro Se *Defendant*
2425B Channing Way #216
Berkeley, CA 94704
1-917-267-8823
vachani@outlook.com

**Exhibit A – Facebook's current proposed injunction and Defendant's Proposed Temporary Injunction**

*Facebook's currently proposed permanent injunction states:  Defendants are enjoined from (1) accessing or using Facebook's websites or servers for any commercial purpose without Facebook's prior permission; (2) using any data obtained as a result of Defendants' unlawful conduct; and (3) developing or distributing any software that allows users to engage in conduct found to be unlawful.  Facebook's proposed injunction would also require Defendants to destroy (1) all software, scripts, or code designed to access or interact with Facebook; and (2) all data obtained or derived from Defendants' unlawful conduct.*

***Power's proposed temporary injunction (this is same language Power would propose in future if court decides that a permanent injunction should be issued)***

*Defendant's proposed injunction states: Defendants are enjoined from (1) accessing or using Facebook's websites or servers for any commercial purpose without Facebook's prior permission.* ***EXCEPTION: DEFENDANTS ARE AUTHORIZED TO ACCESS FACEBOOK THROUGH STANDARD DEVELOPER AND USER CHANNELS*** ***that are publicly available to all developers and users and which are subject to standard user and developer terms and conditions) (i.e. Defendant's would be authorized to access Facebook through Facebook Connect, Facebook Developers Channels, and standard Facebook user channels)*** *(2) using any data obtained as a result of Defendants' unlawful conduct; and (3) developing or distributing any software that allows users to engage in conduct found to be unlawful. Facebook's proposed injunction would also require Defendants to destroy (1) all software, scripts, or code designed to access or interact with Facebook; and (2) all data obtained or derived from Defendants' unlawful conduct.*