UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., | Case No. 08-CV-05780-LHK |
| Plaintiff, | **ORDER REGARDING REMEDIES AND DENYING MOTION FOR STAY** |
| v. | |
| POWER VENTURES, INC., et al., | |
| Defendants. | |

On December 9, 2016, the Ninth Circuit issued an order affirming in part and reversing in part the Court's grant of summary judgment. ECF No. 401. The Ninth Circuit remanded for this Court to reconsider the issue of remedies in light of the Ninth Circuit's order. *Id.* at 22. The Court held a case a management conference on February 15, 2017, ECF No. 412, and set a briefing schedule on the remanded issue of remedies, ECF No. 410. Facebook filed its initial brief on March 8, 2017. ECF No. 416. Defendants filed their responsive brief on March 30, 2017. ECF No. 423. Facebook filed a reply on April 7, 2017. ECF No. 424.

On April 24, 2017, Defendant Steven Vachani ("Vachani") filed a motion to stay all proceedings in the case pending resolution of his petition for certiorari in the United States Supreme Court. ECF No. 428. Facebook filed an opposition to this motion on April 24, 2017. ECF

1

No. 429. On April 26, 2017, Vachani filed a letter stating that Facebook had not filed a brief in opposition to the petition for certiorari. ECF No. 431. On May 1, 2017, Vachani filed a reply to Facebook's opposition to the motion for a stay. ECF No. 434.

Having considered the briefing of the parties, the record in the case, and the relevant law, the Court finds that Facebook is entitled to $79,640.50 in compensatory damages and a permanent injunction as described below. The Court also DENIES Vachani's motion for a stay.

# I.    BACKGROUND

## A. Factual Background

Facebook owns and operates the social networking website located at facebook.com. First Amended Complaint ("FAC") ¶ 2. Power Ventures ("Power") is a corporation incorporated in the Cayman Islands and doing business in California. Answer ¶ 10. At the times relevant to the instant case, Power has operated the website www.power.com, which offers to integrate users' various social media accounts into a single experience. FAC ¶ 5; Answer ¶ 5. Vachani is the Chief Executive Officer of power.com. Answer ¶ 11.

In December 2008, Facebook brought against Defendants this action, which alleges violations of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CANSPAM Act"), 15 U.S.C § 7701; the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; California Penal Code § 502; and the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201; copyright infringement under 17 U.S.C. § 101; trademark infringement under 15 U.S.C. §§ 1114 and 1125(a) and under California law; and violations of California Business and Professions Code Section 17200. ECF Nos. 1, 9. Facebook complains that Defendants employ Facebook's proprietary data without its permission by inducing Facebook users to provide their login information and then using that information to "scrape" Facebook's proprietary material. FAC ¶¶ 49, 50, 52. Defendants then display Facebook's material on power.com. FAC ¶ 52. Facebook asserts that it never gave Defendants permission to use its material in this way. FAC ¶ 54.

Facebook also accuses Defendants of sending unsolicited and deceptive email messages to

2

Facebook users. FAC ¶¶ 65-69. To launch their site, Defendants promised power.com users a chance to win $100 if they invited and signed up the most new users to Defendants' site. FAC ¶ 65. Defendants provided to their users a list of the users' Facebook friends from which the users could choose people to whom to send the invitation. FAC ¶ 66. Power.com sent commercial emails to those friends that included on the "from" line a "@facebookmail.com" address. FAC ¶¶ 66, 68. The content of the message included a line that the message was from "The Facebook Team." FAC ¶ 69, 70. Facebook contends that it never gave permission to send these messages and that the emails were deceptive because they "do not properly identify the initiators of the messages, nor do they provide clear or conspicuous notice that the messages are advertisements for" power.com. FAC ¶ 71.

**B. Procedural History**

On February 18, 2011, Judge Ware granted the parties' stipulation to dismiss Facebook's DMCA claim, copyright and trademark infringement claims, and claims for violations of California Business and Professions Code Section 17200. ECF No. 97. On May 9, 2011, Defendants moved for summary judgment on Facebook's CFAA, Section 502, and CAN-SPAM Act claims. ECF No. 98. On November 17, 2011, Facebook moved for summary judgment on Facebook's § 502 and CFAA claims. ECF No. 214 ("§ 502/CFAA Motion"). On November 18, 2011, Facebook moved for summary judgment on Facebook's CAN-SPAM Act claim. ECF No. 215. On February 16, 2012, Judge Ware issued an order denying Defendants' motion for summary judgment and granting summary judgment in Facebook's favor as to Facebook's § 502, CFAA, and CAN-SPAM Act claims. ECF No. 275 ("February 16, 2012 order").

In the February 16, 2012 order, Judge Ware requested additional briefing regarding Vachani's individual liability and the amount of damages Facebook should receive in light of the February 16, 2012 order. *Id.* at 19. On March 30, 2012, Facebook filed its supplemental brief regarding damages and the liability of Vachani. ECF No. 299 ("Facebook Damages/Liability Brief"). The same day, Defendants lodged with the court a brief regarding damages and the liability of Vachani. ECF No. 288 ("Defendants' Damages/Liability Brief"). On August 15, 2012,

Vachani also submitted a supplemental brief regarding damages and his personal liability. ECF No. 317 ("Vachani Damages/Liability Brief").

On June 4, 2012, the attorneys representing Vachani and Power moved to withdraw as counsel. ECF Nos. 302, 303. On July 2, 2012, Judge Ware granted the motions to withdraw. ECF No. 306. In the order granting the withdrawal requests, Judge Ware required Vachani and Power to file Notices of Identification of Substitute Counsel no later than July 17, 2012. *Id.* Judge Ware noted that although Vachani could proceed pro se, Power had to be represented by a member of the bar pursuant to Civil Local Rule 3-9(b). Civil L.R. 3-9(b) ("A corporation, unincorporated association, partnership or other such entity may appear only through a member of the bar of this Court."). Judge Ware cautioned Defendants that a failure to file timely Notices of Identification of Substitute Counsel may result in default of the case. *Id.*

On July 19, 2012, after neither Vachani nor Power had filed a Notice of Identification of Substitute Counsel, Judge Ware ordered both parties to appear on August 6, 2012 to respond to an Order to Show Cause regarding Defendants' failure to obtain counsel. ECF No. 308. On August 6, 2012, the parties appeared for the hearing, and on August 8, 2012, Judge Ware issued an order regarding Defendants' failure to obtain counsel ("August 8, 2012 order"). ECF No. 313. Because Power had failed to identify replacement counsel, Judge Ware found good cause to strike Power's answer to Facebook's complaint and enter default against Power. *Id.* Judge Ware permitted Vachani a short extension to find new counsel, which was conditioned on Vachani's immediate filing of a Notice of Self-Representation. *Id.* The Clerk entered default against Power on August 9, 2012. ECF No. 314.

On August 15, 2012, new counsel filed a Notice of Appearance on behalf of Power. ECF No. 316. That same day, Power moved for leave to file a motion for reconsideration of Judge Ware's August 8 order requiring entry of default against Power. ECF No. 318. Judge Ware gave Power leave to file a motion for reconsideration on August 21, 2012. ECF No. 320. On August 23, 2012, Power filed its motion for reconsideration. ECF No. 321.

On August 27, 2012, Facebook filed its response and simultaneously requested entry of

default judgment against Power. ECF No. 322. On August 27, 2012, Defendants provided notice that both Power and Vachani had filed for bankruptcy. ECF Nos. 323, 324. Noting that pursuant to 11 U.S.C. § 362(a)(1), a voluntary petition for bankruptcy operates as an automatic stay of any judicial actions involving the petitioners, Judge Ware stayed the proceedings and administratively closed the case on August 29, 2012. ECF No. 325. In the same order, Judge Ware denied as premature Power's motion for reconsideration of the August 8 order requiring entry of default. *Id.*

On March 20, 2013, Facebook notified the Court that the Bankruptcy Court had dismissed Power's bankruptcy case and had granted Facebook's request for relief from the automatic stay in Vachani's bankruptcy case. ECF No. 327. Facebook sought to reopen the case. *Id.* Facebook also sought reassignment to a new judge because on August 31, 2012, while the automatic stay was in effect, Judge Ware resigned from the bench. *Id.* On April 8, 2013, the undersigned judge, as the Duty Judge at the time Facebook filed its motion, granted Facebook's request. ECF No. 328. The undersigned judge ordered that the stay be lifted, the case be reopened, and the case be reassigned. *Id.* The case then was reassigned to the undersigned judge. ECF No. 329.

On April 25, 2013, Vachani moved for clarification of Judge Ware's February 16, 2012 order regarding whether Vachani's liability had been determined in the February 16, 2012 order. ECF No. 332. On April 29, 2013, Facebook filed a case management statement in which Facebook again requested that default judgment be entered against Power. ECF No. 333. On the same day, Defendants filed a consolidated case management statement in which Power again sought to set aside default. ECF No. 334. Defendants also stated their intent to request leave to file a motion for reconsideration of the February 16, 2012 order. *Id.* In Facebook's and Defendants' respective case management statements, the parties acknowledged that Vachani's liability and the issues of damages and injunctive relief still needed to be addressed. ECF No. 333, 334.

On May 2, 2013, following a case management conference, the Court issued a case management order. ECF No. 340. In that order, the Court clarified that the February 16, 2012 order did not decide Vachani's liability. *Id.* The Court granted Power's request to set aside default and denied Facebook's request for entry of default judgment against Power. *Id.* The Court also set

a briefing schedule for the damages and injunctive relief issues. *Id.* The Court set a hearing date of September 26, 2013 to consider Vachani's liability and the issue of remedies. *Id.*

On August 1, 2013, Power filed its request for leave to file a motion to reconsider Judge Ware's February 16, 2012 order. ECF No. 353. On August 1, 2013, Facebook filed its supplemental memorandum in support of its request for injunctive relief. ECF No. 354 ("Facebook Injunction Brief"). On September 25, 2013, Facebook filed a supplemental motion for a permanent injunction. ECF No. 369.

On August 7, 2013, Magistrate Judge Spero issued an order requiring Vachani to pay Facebook $39,796.73 as a discovery sanction because of Vachani's noncompliance during a Rule 30(b)(6) deposition. ECF No. 356. Following Judge Spero's order, Vachani immediately appealed the discovery sanction to the Ninth Circuit on September 6, 2013. ECF No. 360. Despite the appeal, this Court retained jurisdiction over aspects of the case unrelated to the discovery sanctions.

On September 25, 2013, the Court filed an Order Denying Leave to File Motion for Reconsideration, Finding Defendant Steven Vachani Liable as a Matter of Law, and Granting Damages and Permanent Injunctive Relief. ECF No. 373. In the order, the Court first found that Defendants had not identified any new material facts, changes in law, or issues that Judge Ware manifestly failed to consider in his February 16, 2012 order. The Court therefore denied leave to file a motion for reconsideration of the February 16, 2012 order. *Id.* at 15. The Court also found that because Vachani directed and authorized the activities at issue, Vachani was personally liable for violations of the CAN-SPAM Act, CFAA, and California Penal Code § 502 along with Power. *Id.* at 17.

The Court then addressed the issue of damages for the first time. The Court noted that under the CAN-SPAM Act, Facebook was entitled to elect between monetary damages in the amount of actual losses and statutory damages. *Id.* at 22. Facebook elected to recover statutory damages, and the Court ordered Defendants to pay $50 for each of 60,627 spam messages sent, for a total of $3,031,350. *Id.* at 25–26. The Court then held that Facebook was entitled to

Case No. 08-CV-05780-LHK
ORDER REGARDING REMEDIES AND DENYING MOTION FOR STAY

compensatory damages under the CFAA. The Court held that "Facebook has established through undisputed testimony that it expended $80,543 to investigate Defendants' actions and for outside legal services in connection with the Defendants' actions." *Id.* at 26.

Finally, the Court issued a permanent injunction against Defendants. The Court found that each of the applicable four factors – (1) irreparable injury, (2) no adequate remedy at law, (3) balance of hardships, and (4) the public interest – favored granting a permanent injunction. *Id.* at 27 (citing *eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006)). In doing so, the Court considered Defendants' CAN-SPAM Act violations as well as Defendants' violations of the CFAA and § 502. The Court granted a permanent injunction that enjoined Defendants from (1) making any misleading statement in advertising, including statements that Facebook had authorized a particular communication; (2) accessing Facebook's website or servers "for any purpose" without Facebook's prior permission; (3) using any data obtained from the unlawful conduct; and (4) developing or using any software to commit the illegal acts alleged in the complaint. *Id.* at 33–34. The injunction also required Defendants to destroy all the software at issue, destroy all data obtained from Facebook with the illegal software, and take measures to ensure that the injunction was obeyed. *Id.* at 34. The Court entered judgment against Defendants the same day, September 25, 2013. ECF No. 374.

On October 23, 2013, Defendants appealed the Court's grant of summary judgment. ECF No. 379. On November 21, 2013, the Ninth Circuit dismissed Vachani's appeal of Magistrate Judge Spero's August 7, 2013 order granting discovery sanctions because the August 7, 2013 order was not final or appealable. ECF No. 386.

On December 9, 2016, the Ninth Circuit affirmed in part and reversed in part the Court's grant of summary judgment. ECF No. 401. The Ninth Circuit reversed the Court's finding that Defendants had violated the CAN-SPAM Act because the Ninth Circuit found that Facebook initiated the email messages at issue and that the sender of the messages was not materially misleading within the meaning of the CAN-SPAM Act. *Id.* at 9–13. The Ninth Circuit then held that Defendants had violated CFAA, but only for the period "after receiving written notification

7

from Facebook on December 1, 2008." *Id.* at 19. The Ninth Circuit held that by sending the December 1, 2008 notification, Facebook revoked Defendants' permission to use Facebook's computers. *Id.*

With respect to damages, the Ninth Circuit held that "[i]t is undisputed that Facebook employees spent many hours, totaling more than $5,000 in costs, analyzing, investigating, and responding to Power's actions." *Id.* at 14. However, in light of the Ninth Circuit's finding that the violation began only after Facebook sent its cease and desist letter, the Ninth Circuit remanded to "calculate damages only for the period after Power received the cease and desist letter . . . ." *Id.* at 22.

After remand, the Court initially scheduled a case management conference for January 11, 2017. However, Defendants filed a motion requesting a continuance of the case management due to "ongoing personal considerations." ECF No. 405. The Court granted this motion and continued the case management conference to January 25, 2017. Facebook then filed a motion requesting a continuance due to scheduling problems with the January 25, 2017 date. ECF No. 407. The Court therefore continued the case management to February 15, 2017. ECF No. 408.

The Court held a case management conference on February 15, 2017. At the case management conference, the Court set a briefing schedule for the remanded issue of remedies. ECF No. 410. In doing so, the Court warned that "the parties shall limit their arguments to the issues that the Ninth Circuit remanded for consideration. The parties shall not present arguments regarding aspects of the Court's decision which the Ninth Circuit did not reverse on appeal. . . . The parties shall carefully review the Ninth Circuit's opinion and the record in this case to ensure that the parties argue only those issues that the Ninth Circuit ordered the district court to address on remand." ECF No. 410, at 1–2. The Court also ordered Defendants to pay by March 15, 2017 the $39,796.73 discovery sanction that the Ninth Circuit affirmed.[1]

---

[1] Although the Ninth Circuit dismissed Vachani's earlier appeal of Magistrate Judge Spero's August 7, 2013 order granting discovery sanctions, ECF No. 386, the Ninth Circuit later considered the issue of discovery sanctions in its December 9, 2016 order, ECF No. 401.

Pursuant to the briefing schedule, Facebook filed its supplemental remedies brief on March 8, 2017. ECF No. 416. On March 9, 2017, Defendants filed a petition for certiorari with the United States Supreme Court. ECF No. 418. Defendants failed to pay the $39,796.73 discovery sanction by the March 15, 2017 deadline and still have not done so. Subsequently, on March 28, 2017, Vachani filed an "urgent motion" requesting that the Court stay all district court proceedings for 90 days or grant a 45–60 day extension because Vachani had been unable to contact Power's attorney for over a month. ECF No. 420. The same day, Vachani filed a letter with the Court stating that although he has not paid the $39,796.73 discovery sanction, Vachani is "in compliance with this court's order" because he is "in an active bankruptcy proceeding." ECF No. 421.

On March 29, 2017, the Court denied Vachani's motion for a stay and for an extension of time. ECF No. 422. On March 30, 2017, Power's attorney filed Defendants' supplemental brief regarding remedies. ECF No. 423. On April 17, 2017, Facebook filed a reply brief. ECF No. 424.

## II.    LEGAL STANDARD

### A. Damages Under the CFAA

Under the CFAA, "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g) (emphasis added). The CFAA defines "loss" to mean "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11); *see also* ECF No. 401, at 13–14. Thus, pursuant to the Ninth Circuit's order, the Court's task is to calculate the amount of Facebook's "loss" under the statute after Facebook sent a cease and desist letter on December 1, 2008 and thus revoked Power's authorization to access Facebook's computer.

### B. Injunctive Relief

The CFAA provides that "[a]ny person who suffers damage or loss by reason of a violation of [§1030] may maintain a civil action against the violator to obtain compensatory damages and

United States District Court
Northern District of California

injunctive relief or other equitable relief." 18 U.S.C.A. § 1030(g). California Penal Code § 502 also allows a plaintiff to obtain injunctive relief. California Penal Code § 502(e)(1).

A party seeking a permanent injunction must make a four-part showing: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006). The Court has discretion to grant or deny permanent injunctive relief. *Id.* at 391.

## III.  DISCUSSION

The Ninth Circuit ordered the Court to address two narrow issues on remand. First, the Ninth Circuit ordered the Court to recalculate damages "only for the period after Power received the cease and desist letter, when Power continued to access data contained in Facebook's servers and memory banks." ECF No. 401, at 22. Second, the Ninth Circuit ordered the Court to consider "appropriate remedies under the CFAA and section 502, including any injunctive relief." *Id.* The Court therefore considers the issue of damages and the issue of injunctive relief in turn. The Court then considers issues that Defendants raise regarding taxable costs and the $39,796.73 discovery sanction. Finally, the Court considers Vachani's motion for a stay.

### A.  Damages

The Ninth Circuit ordered the Court to calculate damages for the period after Power received Facebook's cease and desist letter on December 1, 2008. Specifically, the Ninth Circuit emphasized that although violation of a website's terms of use is not sufficient to sustain a CFAA violation, "after receiving written notification from Facebook on December 1, 2008, Power accessed Facebook's computers 'without authorization' within the meaning of the CFAA and is liable under that statute." ECF No. 401, at 19. The Ninth Circuit also noted that "Facebook expressly rescinded [its] permission when Facebook issued its written cease and desist letter to Power on December 1, 2008." *Id.* at 16.

Facebook argues that because the Ninth Circuit's order requires this Court to calculate

damages for the period after Power received Facebook's cease and desist letter on December 1, 2008, this Court should simply subtract the amount of Facebook's loss that occurred on December 1, 2008 or earlier and reinstate the remaining damages award. ECF No. 416, at 4–5. Thus, Facebook asks for all damages incurred on or after December 2, 2008. Defendants argue that this method is improper for several reasons. First, Defendants claim that the "allowable period" for damages began on December 26, 2008 rather than December 2, 2008. Second, Defendants claim that the "allowable period" ended on December 30, 2008, the date that the instant lawsuit was filed and the date "on which defendants ceased all unauthorized interaction with Facebook's website." ECF No. 423, at 8. Third, Defendants argue that an unknown amount of Facebook's claimed damages are not compensable because those damages were caused by the reversed CAN-SPAM Act violation rather than the CFAA or § 502 violations. Fourth, Defendants argue that Facebook has not adequately documented the work of McGeehan for which Facebook requests compensatory damages.

Before addressing Defendants' objections in detail, the Court notes that Defendants failed to comply with the Court's instructions. At the February 15, 2017 case management conference, Defendants raised many issues that went beyond the scope of the Ninth Circuit's remand. Therefore, at the case management conference, the Court informed Defendants that "a lot of your damages arguments are not related to the date issue" on which the Ninth Circuit remanded and warned Defendants against "retreading and reopening issues that have now been decided." ECF No. 414, at 12–13. Additionally, in the Court's February 15, 2017 case management order, the Court ordered that "[i]n briefing the remanded issue of damages, the parties shall limit their arguments to the issues that the Ninth Circuit remanded for consideration. The parties shall not present arguments regarding aspects of the Court's decision which the Ninth Circuit did not reverse on appeal. For example, the Court will not consider arguments regarding whether attorney's fees constitute compensable damages under the CFAA." ECF No. 410, at 1. The Court also ordered that "[t]he parties shall carefully review the Ninth Circuit's opinion and the record in this case to ensure that the parties argue only those issues that the Ninth Circuit ordered the district

United States District Court
Northern District of California

court to address on remand." *Id.* at 1–2.

However, despite the Court's explicit instructions, Defendants' briefing contains many arguments that essentially re-raise issues that the Court has already resolved or raise issues that Defendants never raised before either this Court or the Ninth Circuit. For example, Defendants repeatedly argue that Facebook has not met its burden to justify compensatory damages by a preponderance of the evidence. *See* ECF No. 423, at 9. However, although Facebook does bear the burden of justifying its damages by a preponderance of the evidence, the Court has already found that Facebook met this burden. In the Court's September 25, 2013 order, the Court found that Facebook's damages calculations were fully justified by "undisputed testimony," and the Ninth Circuit did not disturb this finding on appeal. ECF No. 373, at 26.

Defendants also raise many other issues that have already been decided, and the Court will discuss these issues in detail below. However, as a general matter, the Court notes that issues that were previously resolved and were not raised on appeal are the law of the case and are not subject to relitigation absent a motion for leave to file a motion for reconsideration. *Securities Investor Protection Corp. v. Vigman*, 74 F.3d 932, 937 (9th Cir. 1996) (finding that an issue was "subsumed within [the Court's] summary judgment" order was therefore "law of the case."). Additionally, "an issue or factual argument waived at the trial level before a particular order is appealed, or subsequently waived on appeal, cannot be revived on remand." *Magnesystems v. Nikken, Inc.*, 933 F. Supp. 944, 949–950 (C.D. Cal. 1996); *see also Vigman*, 74 F.3d at 937 (holding that an argument not raised on appeal was waived).

Thus, on remand, the Court's task is not to relitigate issues that the Court has already decided and which the Ninth Circuit did not disturb on appeal. Instead, the Court's task is to determine which of the CFAA damages that the Court granted in its September 25, 2013 order were incurred after Facebook revoked its permission by sending a cease and desist letter to Power on December 1, 2008. With the narrow scope of the Ninth Circuit's remand in mind, the Court now considers Defendants' arguments in turn.

**1. Defendants' Arguments about the "Start Date of the Applicable Period"**

12

United States District Court
Northern District of California

1    Defendants first argue that contrary to the Ninth Circuit's order, Facebook did not revoke

2    authorization when Facebook sent its December 1, 2008 cease and desist letter. Instead,

3    Defendants argue that Facebook did not revoke authorization until December 26, 2008.

4        Before addressing Defendants' arguments, the Court first outlines the relevant sequence of

5    events. Power launched its website on December 1, 2008. ECF No. 299, Ex. 8. The same day,

6    Facebook's Security Incident Response team determined that the website was running an

7    automated script to download Facebook data. Specifically, Facebook employee Ryan McGeehan

8    spent 31 minutes or $50 worth of time investigating the incident. ECF No. 214, at Ex. 9 & Ex. 4.

9    In response to this finding, Joseph Cutler ("Cutler"), Facebook's outside counsel at Perkins Coie,

10   spent ███████ on December 1, 2008 drafting a cease and desist letter.

11       The same day, Facebook sent the cease and desist letter to Power no later than 7:54 p.m.

12   on December 1, 2008. ECF No. 299, Ex. 3. At 8:01 p.m., Vachani forwarded the letter to other

13   Power employees and stated that employees should "be prepared for Facebook to try and block us

14   and turn this into a national battle that gets us huge attention." *Id.* Soon afterward, Vachani

15   contacted Cutler. Cutler states that in December 2008 and early 2009, Cutler had many

16   discussions with Vachani and "[i]n nearly all of [the] discussions, [Cutler] continued to demand

17   that Defendants cease their unlawful activities." ECF No. 213-2. In one such conversation, on

18   December 15, 2008, Cutler emailed Vachani and informed him that he expected Power to delete

19   all user data and conform to Facebook policies within two weeks, or by December 26, 2008. *Id.*

20   However, despite these warnings and despite Vachani's repeated assurances that the Power

21   website would be changed to comply with Facebook policies, Vachani failed to make the

22   requested changes to the Power website. *Id.* Facebook therefore filed the instant suit on December

23   30, 2008. Defendants ceased interaction with Facebook's website the same day. However,

24   Defendants again accessed Facebook through the Facebook Connect program on February 5,

25   2009. ECF No. 213-3. To date, it is not clear whether Defendants have deleted the data acquired

26   from Facebook. After considering this sequence of events, the Ninth Circuit ruled as follows:

27

28

> Facebook expressly rescinded that permission when Facebook issued its written cease and desist letter to Power on December 1, 2008. Facebook's cease and desist letter informed Power that it had violated Facebook's terms of use and demanded that Power stop soliciting Facebook users' information, using Facebook content, or otherwise interacting with Facebook through automated scripts. . . . We therefore hold that, after receiving written notification from Facebook on December 1, 2008, Power accessed Facebook's computers "without authorization" within the meaning of the CFAA and is liable under that statute. . . . . . [A]fter receiving the cease and desist letter from Facebook, Power intentionally accessed Facebook's computers knowing that it was not authorized to do so, making Power liable under the CFAA. ECF No. 401, at 17–20.

With this background in mind, the Court addresses Defendants' argument. Defendants argue that Facebook did not actually deny Defendants permission to use Facebook's website until December 26, 2008, because Cutler "gave Power an extension of time, ending December 26, 2008, by which Power would need to have its software in full compliance with Facebook's requirements." ECF No. 423, at 7. This argument fails for two reasons.

First, and most importantly, the argument is flatly contradicted by the Ninth Circuit's order, which held that "Facebook expressly rescinded [its] permission when Facebook issued its written cease and desist letter to Power on December 1, 2008." ECF No. 401, at 15. Second, the notion that Facebook gave Power permission to use its website until December 26, 2008 is incorrect. As Facebook points out, between December 2, 2008 and December 26, 2008, Power was actively evading Facebook's attempts to block IP addresses associated with Power from accessing Facebook's servers. ECF No. 424, at 8. Additionally, during this period Cutler repeatedly demanded that Power cease its activities. The mere fact that Cutler gave Power a two-week deadline before Facebook took further action does not indicate that Facebook gave Power permission to access Facebook. Therefore, the Court rejects Defendants' argument that the "allowable period" for damages began on December 26, 2008.

As an alternative, Defendants argue that the "allowable period" began at the earliest on December 4, 2008, when "Facebook made its cease and desist demand directly to Power for the first time." ECF No 423, at 6. However, this again is inconsistent with the Ninth Circuit's order, which held that Facebook revoked authorization on December 1, 2008. Defendants never argued

before the Ninth Circuit or this Court that the allowable period began on December 4, 2008, and thus, this argument is waived. *See Magnesystems*, 933 F. Supp. at 949–950 ("[A]n issue . . . waived on appeal[] cannot be revived on remand."). This argument is also inconsistent with the undisputed facts, which show that Vachani received Cutler's cease and desist letter and forwarded it to Power employees at 8:01 p.m. on December 1, 2008. ECF No. 299, Ex. 3. Therefore, the Court finds that for the purposes of damages calculations, Facebook revoked Power's authorization on December 1, 2008.

### 2. Defendants' Arguments about the "End Date of the Applicable Period"

Defendants also argue that the damages calculation should end on December 30, 2008. Specifically, Defendants argue that December 30, 2008 was the "last date of 'unauthorized access'" because "December 30, 2008 is the date this lawsuit was filed and the date on which the defendants ceased all unauthorized interaction with Facebook's website." ECF No. 423 at 8. In short, Defendants argue that Facebook is entitled to recover for losses sustained only while Power was interacting with Facebook's website.

At the outset, the Court notes that Defendants' claim that "December 30, 2008 is the date . . . on which the defendants ceased all unauthorized interaction with Facebook's website" is incorrect. ECF No. 423 at 8. As the Ninth Circuit held, "Power's campaign lasted less than two months. On December 20, 2008, Facebook filed this action. Toward the end of January 2009, Power ended its campaign." ECF No. 401, at 8. Additionally, despite the cease and desist letter, Defendants accessed Facebook's computers again through the Facebook Connect program on February 5, 2009. ECF No. 213-3. Furthermore, the full extent of Defendants' activities after December 2008 is unknown because Vachani testified at his deposition that in April 2011, Vachani destroyed a logging database that contained evidence about the scope of Defendants' activities after December 2008. Dkt. 300 at 2-5; Dkt. 299-14 at 83:23-84:10.

However, even if Defendants were correct that they ceased actively interacting with Facebook computers on December 30, 2008, nothing in the Ninth Circuit's order indicated that the Court should consider this issue on remand. This Court already decided that Facebook's attorney's

fees and investigation and enforcement costs through March 2009 are compensable even though Power was not actively interacting with Facebook's website for significant portions of that time. ECF No. 373, at 26. The Ninth Circuit did not question this finding in its order, and indeed the Ninth Circuit stated that Facebook had "suffered a loss" based on all time spent "analyzing, investigating, and responding to Power's actions." ECF No. 401, at 14. Therefore, the Court's ruling on this issue is law of the case and is not subject to relitigation at this stage.

Even if the Court were to reconsider the issue, however, the Court would find that Facebook's attorneys' fees and investigation and enforcement costs are compensable even if Power was not actively interacting with Facebook's website at the time the expenses were incurred. Under the CFAA, a defendant can recover for "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11). Nothing in this definition limits compensable damages to the precise time that the unauthorized access is occurring.

Consistent with this understanding, there are many cases in which courts have granted damages under the CFAA for actions taken after the offense itself. In *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 584 n.17 (1st Cir. 2001), for example, the First Circuit affirmed a damages award for money plaintiffs paid "to assess whether their website had been compromised." Similarly, in *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1174-1175 (11th Cir. 2017), the Eleventh Circuit affirmed a damages award for "extensive forensic and physical review of [the victim's] systems to determine the extent of . . . hacking activity" after a hack occurred. *See also, e.g.*, *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 646 (4th Cir. 2009) ("the costs of responding to the offense are recoverable including costs to investigate and take remedial steps" (internal quotations omitted)). Therefore, pursuant to the plain language and consistent with persuasive caselaw, Facebook's attorney's fees and investigation and enforcement costs through March 2009 are compensable as long as those costs were reasonably

16

incurred responding to the offense.

Facebook has presented undisputed evidence that it incurred expenses both for technical measures to block Power from accessing Facebook servers and expenses for negotiating with Power to voluntarily stop its activities and destroy the data. Specifically, Facebook incurred $4,950 in costs for technical measures after December 1, 2008 and $74,690.50 in legal fees to negotiate with Defendants. This Court previously held that these costs were reasonably incurred to respond to Defendants' CFAA violation. ECF No. 373, at 26 n.13 ("This Court previously recognized that 'Defendants do not dispute the accuracy or veracity of [the] evidence of [Facebook's] expenditures.' Indeed, Defendants never filed a rebuttal brief to Facebook's expert report regarding the monetary damages Facebook incurred.").

For the foregoing reasons, the Court rejects Defendants' argument that Facebook can recover only damages that were incurred on or before December 30, 2008. Facebook is entitled to compensation for all costs incurred after December 1, 2008 in response to Defendants' CFAA violations, and not merely for costs incurred while Defendants were actively interacting with Facebook's website.

### 3. Defendants' Argument that Facebook's Claimed Damages Include CAN-SPAM Act Damages

Next, Defendants argue that Facebook's claimed damages of $79,640.50 includes damages that are attributable only to the CAN-SPAM Act violation, which the Ninth Circuit reversed, rather than to the CFAA or § 502 violations. For example, Defendants point out that Facebook employee Ryan McGeehan ("McGeehan"), who incurred $4,950.000 in enforcement costs, spent a "substantial amount of . . . time specifically related to spamming, which was solely an issue under the CAN-SPAM claim." ECF No. 423, at 12. Here again, however, Defendants raise an issue that was already resolved prior to appeal, that Defendants did not raise on appeal, and upon which the Ninth Circuit did not opine. Def.'s Appellate Br., *Facebook v. Power Ventures, et al.*, Case No. 13-17102, Dkt Entry 18-1. The Court's previous decision on this issue is law of the case that is not subject to relitigation at this stage of the proceedings.

17

In the Court's September 25, 2013 order, the Court granted Facebook $80,543 in compensatory damages under the CFAA. ECF No. 373, at 26–27. The September 25, 2013 order also made clear that none of this $80,543 compensatory damages award included damages for CAN-SPAM Act violations. Indeed, the Court did not grant any compensatory damages for the CAN-SPAM Act violations because Facebook had elected to recover "statutory damages" rather than "monetary damages" for "actual losses" as a remedy for the CAN-SPAM Act violation. ECF No. 373, at 22 (citing 15 U.S.C. § 7706(g)(1)(B)). In other words, contrary to Defendants' argument, the Court's earlier compensatory damages award did not include a portion of compensatory damages attributable to Defendants' CAN-SPAM Act violation. This is because Facebook elected to receive statutory damages rather than compensatory damages.

Additionally, Defendants never raised, either before this Court or before the Ninth Circuit on appeal, the argument that the compensatory damages that Facebook requested under the CFAA included damages attributable only to the CAN-SPAM Act violation. Def.'s Appellate Br., *Facebook v. Power Ventures, et al.*, Case No. 13-17102, Dkt Entry 18-1. Therefore, Defendants have waived this argument. *See Magnesystems*, 933 F. Supp. at 949–950 ("[A]n issue or factual argument waived at the trial level before a particular order is appealed, or subsequently waived on appeal, cannot be revived on remand.").

Even if the Court were to consider Defendants' argument that Facebook's requested damages included losses attributable only to the CAN-SPAM Act violation, the Court would reject the argument. In granting Facebook's motion for summary judgment, the Court found that Defendants violated the CFAA when Defendants accessed Facebook's computers without authorization and thereby gained access to Facebook's data.[2] ECF No. 373, at 11; *see also* 18 U.S.C. § 1030(a)(2) (establishing penalties against anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any

---

[2] The Ninth Circuit held that Facebook did not revoke authorization until Facebook sent the cease and desist letter on December 1, 2008, but otherwise the Ninth Circuit did not disturb the Court's grant of CFAA damages.

protected computer."). Defendants then used this data, obtained in violation of the CFAA, to send messages to Facebook's users. Even though under the Ninth Circuit's order these messages did not violate the CAN-SPAM Act, these messages were nevertheless sent using data acquired in violation of the CFAA. Therefore, all enforcement or investigation actions that Facebook took regarding the messages were a reasonable response to the CFAA violation. Therefore, the costs of these enforcement and investigation actions are compensable.

In short, all of Facebook's investigation and enforcement efforts were reasonable responses to the CFAA violation. Thus, all of Facebook's investigation and enforcement costs are compensable under the CFAA. The Court therefore rejects Defendants' argument that Facebook has not sufficiently separated CAN-SPAM Act damages from CFAA damages.

### 4. Argument about Inadequate Documentation

Finally, Defendants argue that Facebook has not adequately documented or justified the salary and hours worked by McGeehan. Specifically, Defendants argue that "Facebook's claim that it incurred an estimated $5,000 in damages due to the time that Facebook employee Ryan McGeehan spent investigating and responding to Power's activities is utterly unsupported by evidence." ECF No. 423, at 12.

As discussed above, the Court already found in its September 25, 2013 order that Facebook's damages calculations were fully justified by "undisputed testimony." ECF No. 373, at 26. The Ninth Circuit did not reverse this finding on appeal, and indeed the Ninth Circuit affirmed the Court's finding that "[i]t is undisputed that Facebook employees spent many hours, totaling more than $5,000 in costs, analyzing, investigating, and responding to Power's actions." ECF No. 401 at 14. Thus, the Court's earlier ruling on the adequacy of Facebook's proof of damages is the "law of the case" and is not subject to relitigation at this stage. *Vigman*, 74 F.3d at 937.

Nevertheless, even if the Court were to consider Defendants' arguments, the Court would find that Facebook has presented adequate evidence justifying its claim that McGeehan's work after December 1, 2008 was worth $4,950. On March 30, 2012, Facebook filed the expert report of Richard J. Ostiller. According to the Ostiller report, "McGeehan estimate[d] that he spent

19

approximately 50 hours responding to Power's unauthorized activities . . . ." ECF No. 416-8, at ¶ 19. Additionally, the Ostiller report concluded that "a rate of $100 per hour for the fully burdened payroll costs of Mr. McGeehan" properly took into account "his estimated salary and fringe benefits." *Id.* ¶ 20. Defendants "never challenged the factual sufficiency of Facebook's evidence in opposing summary judgment or on appeal; Defendants offered only the legal argument that attorneys' fees are not compensable CFAA damages." ECF No. 424, at 12.

Defendants now claim that "it must be assumed" that Ostiller's report relies on impermissible hearsay. ECF No. 423, at 13. However, under the Federal Rules of Evidence, an expert may rely on hearsay testimony if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. It is unquestionable that an expert forming an opinion about the salary and the hours worked by an employee would rely on statements by the employee in an interview. Thus, Ostiller's decision to rely on an interview with McGeehan to determine McGeehan's salary, benefits, and hours worked was consistent with the Federal Rules of Evidence. *See* ECF No. 416-8, at 3 (stating that Ostiller calculated damages using information gained from an interview of McGeehan). Additionally, Defendants never challenged the reliability of Ostiller's report. Therefore, the Court finds that Ostiller's report is reliable and provides adequate justification for the damages attributable to work by McGeehan.

### 5. Conclusion

For the reasons discussed above, Defendants' objections to the $79,640.50 damages award are unpersuasive. The Ninth Circuit's order instructed this Court to calculate CFAA damages for the period after Facebook sent its cease and desist letter on December 1, 2008. In all other respects, the Ninth Circuit left the Court's CFAA damages award undisturbed, and therefore the Court's earlier rulings on these damages issues is law of the case that is not subject to relitigation at this stage of the proceedings.

Pursuant to the Ninth Circuit's order, the Court therefore determines what damages were incurred after Facebook sent its cease and desist letter on the evening of December 1, 2008.

Facebook has established through undisputed evidence that of the $80,543 in damages that Court granted prior to appeal, only $902.50 was incurred on or before December 1, 2008. Specifically, on December 1, 2008, McGeehan spent .5 hours of time, valued at $50, investigating Power's actions, and Cutler spent ████ of time, valued at $852.50 drafting the cease and desist letter, for a total of $902.50 in losses incurred on December 1, 2008. Subtracting this amount from the $80,543 that the Court previously granted in damages, the Court determines that Facebook incurred $79,640.50 in losses on December 2, 2008 or later. Therefore, in accordance with the Ninth Circuit's order, the Court GRANTS Facebook $79,640.50 in compensatory damages under the CFAA.

### B. Permanent Injunction

The Court next considers whether Facebook is entitled to a permanent injunction against Defendants. In the Court's September 25, 2013 order, the Court granted a permanent injunction meant to cure violations of the CAN-SPAM Act, the CFAA, and § 502. However, the Ninth Circuit ordered that this Court "reconsider appropriate remedies under the CFAA and section 502, including any injunctive relief." ECF No. 401, at 22.

In Facebook's supplemental briefing on the issue of remedies after the Ninth Circuit's remand, Facebook requests a revised permanent injunction. The permanent injunction that Facebook requests is narrower than the injunction that the Court granted in September 25, 2013 order in two important ways. First, Facebook no longer requests that the injunction include two sections specific to the CAN-SPAM Act violation that prohibited Defendants from sending unsolicited messages to Facebook users or making misleading statements about Defendants' affiliation with Facebook in commercial messages. Second, whereas the previous injunction forbade Defendants from accessing the Facebook website "for any purpose" without prior permission, Facebook now requests that this language be narrowed to forbid Defendants from accessing the Facebook website "for any *commercial* purpose" without prior permission. ECF No. 424, at 6–7. Thus, Facebook states that the revised permanent injunction is "narrowly tailored . . . to prevent Defendants from repeating their unlawful access to, and misappropriation of,

United States District Court
Northern District of California

Facebook's protected computers in violation of the CFAA and California Penal Code § 502." ECF No. 416, at 1.

The CFAA creates civil liability against anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). The CFAA provides that "[a]ny person who suffers damage or loss by reason of a violation of [§1030] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C.A. § 1030(g).

California Penal Code § 502 imposes liability on a person who "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network." Cal. Penal Code § 502(c)(2). California Penal Code § 502 also allows a plaintiff to obtain injunctive relief. *Id.* § 502(e)(1). Although § 502 is "different" than the CFAA, *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015), the Ninth Circuit held that "the analysis under both statutes is similar in the present case," ECF No. 401, at 20.

A party seeking a permanent injunction must make a four-part showing: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See eBay*, 547 U.S. at 390. The Court has discretion to grant or deny permanent injunctive relief. *Id.* at 391. The Court will consider each of these factors in turn and will then consider whether, on balance, the principles of equity support the issuance of a permanent injunction in this case. Applying this standard, the Court finds below that the revised injunction that Facebook seeks is narrowly tailored to Defendants' violations of the CFAA and California Penal Code § 502.

Case No. 08-CV-05780-LHK
ORDER REGARDING REMEDIES AND DENYING MOTION FOR STAY

### 1. Irreparable Harm

Facebook has suffered irreparable harm because of Defendants' violations of the CFAA and § 502. Specifically, in accessing Facebook's computers without authorization, Defendants have interfered with Facebook's right to control access to its own computers and have acquired data to which Defendants have no lawful right in violation of the CFAA and § 502. Numerous courts have found that unauthorized access of computers and the acquisition of data in violation of the CFAA constitute irreparable harm. *See, e.g.*, *Enargy Power Co. v. Xiaolong Wang*, 2013 U.S. Dist. LEXIS 170193, *28-29 (D. Mass. Dec. 3, 2013) ("[P]revent[ing] Enargy from enjoying the uninterrupted use of its property . . . constitutes irreparable harm. Furthermore, Plaintiffs' inability to make use of the PH Project files has hampered Enargy . . . .") (internal citations omitted); *Reliable Prop. Servs., LLC v. Capital Growth Partners, LLC*, 1 F. Supp. 3d 961, 965 (D. Minn. 2014) (finding "substantial threat of irreparable harm" based on the public dissemination of information after the defendant "unlawfully took volumes of detailed data" in violation of the CFAA); *TracFone Wireless, Inc. v. Adams*, 98 F. Supp. 3d 1243, 1256 (S.D. Fla. 2015) ("TracFone would be irreparably harmed because Adams' actions, if allowed to persist, will continue to cause TracFone to suffer harm by impairing the integrity of TracFone's proprietary computer system and wireless telecommunications network.").

Additionally, unless the Court issues a permanent injunction, it is very likely that Facebook will suffer irreparable harm again because Defendants will again attempt to access Facebook's servers without authorization. Defendants have frequently exhibited bad faith conduct that indicates that they will not easily be deterred from attempting to access Facebook's servers without authorization in violation of the CFAA and § 502. When Vachani first received the cease and desist letter from Facebook, Vachani forwarded it to Power employees with the message to "be prepared for Facebook to try and block us and turn this into a national battle that gets us huge attention." ECF No. 299, Ex. 3. Consistent with that intent, Vachani then engaged in lengthy negotiations with Facebook. For example, Vachani initially promised to bring Power into compliance with Facebook's terms by December 26, 2008. ECF No. 225-1, at ¶ 11. However, on

December 26, 2008, Vachani informed Facebook that Power would not comply with Facebook's terms for at least another month, and that Power would not stop accessing Facebook's servers in the meantime because Power "made the business decision to not prevent the interruption of service to our millions of users." ECF No. 233-1, at 2. Additionally, while Vachani negotiated with Facebook in December 2008, Defendants acknowledged that they violated the law and yet nevertheless actively took steps to evade Facebook's IP-blocking measures. *See* ECF No. 275, at 16–17. As the Ninth Circuit stated,

> On December 4, 2008, a Power executive sent an e-mail agreeing that Power engaged in four "prohibited activities"; acknowledging that Power may have "intentionally and without authorization interfered with [Facebook's] possessory interest in the computer system," while arguing that the "unauthorized use" did not cause damage to Facebook; and noting additional federal and state statutes that Power "may also be accused of violating," beyond those listed in Facebook's cease and desist letter. Emails sent later in December 2008 discussed the IP blocks that Facebook had imposed and the measures that Power took to evade them. Nevertheless, Power continued to access Facebook's data and computers without Facebook's permission. ECF No. 401, at 17.

Thus, Defendants' actions suggest that Defendants may continue to access Facebook's servers unless they are strongly deterred. Thus, not only has Facebook suffered irreparable harm, it is very likely that in the absence of a permanent injunction, Facebook will suffer irreparable harm again in the future. *See Tagged, Inc. v. Does 1 through 10*, 2010 WL 370331 (N.D. Cal. Jan. 25. 2010) (approving permanent injunction in part because of the likelihood that the defendant might violated the CFAA and § 502 again in the future).

Furthermore, in their briefing, Defendants do not contest that Facebook has suffered irreparable harm. Therefore, the Court finds that Facebook has shown that it has suffered irreparable harm through Defendants' unauthorized access to its computer systems and Defendants' illegal possession of Facebook's data. Because Facebook has shown irreparable harm, this factor weighs in favor of a permanent injunction.

### 2. Inadequacy of Money Damages

Facebook has established that "remedies available at law, such as monetary damages, are

Case No. 08-CV-05780-LHK
ORDER REGARDING REMEDIES AND DENYING MOTION FOR STAY

inadequate to compensate for [its] injury." *eBay*, 547 U.S. at 391. Most importantly, Defendants' conduct indicates that there is a "reasonable likelihood of defendant's future violations." *Souza*, 861 F. Supp. 2d at 1092. Defendants may still possess the software at issue in this litigation and the data illegally acquired from Facebook. ECF No. 373, at 29. Additionally, before Facebook filed the instant suit, Defendants "deliberately implemented . . . tactics to circumvent plaintiff's security measures," *Tagged*, 2010 WL 370331, at *12, and Defendants continued to illegally access Facebook's computers even after Vachani "repeatedly assured [Facebook's counsel] that the functionality of the Power website would be changed to comply with Facebook's requests . . . ," ECF No. 213-2, at ¶ 9. As discussed above, this conduct indicates that unless the Court issues an injunction, there is a high probability that Defendants will repeat their illegal conduct.

Additionally, the Ninth Circuit has held that a district court has authority to issue an injunction "where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant . . . ." *In re Estate of Marcos*, 25 F.3d 1467, 1480 (9th Cir. 1994). In the instant case, Power has been out of business since April 2011 and filed for Chapter 11 bankruptcy on August 27, 2012. ECF No. 401, at 8 ("In April 2011, Power ceased doing business altogether."); ECF No. 323 ("Defendant Power Ventures, Inc.'s Suggestion of Bankruptcy"). Power's bankruptcy petition was dismissed on November 27, 2012. ECF No. 327-1. Additionally, Vachani petitioned for Chapter 13 bankruptcy on August 27, 2012. ECF No. 324. Vachani's bankruptcy petition was dismissed because Vachani failed to make payments pursuant to the Chapter 13 Plan. ECF No. 327, at 2. Therefore, it is very unlikely that Defendants will be able to pay a $79,640.50 money judgment.

Indeed, despite being ordered three times to pay the $39,796.73 discovery sanction, Defendants have not yet done so and the Court has even invited a motion to hold Defendants in contempt of Court. ECF No. 356 (August 7, 2013 order requiring Defendants to pay discovery sanction); ECF No. 401 (affirming discovery sanction); ECF No. 410 (ordering Defendants to pay discovery sanction by March 15, 2017); ECF No. 422 (inviting motion to hold Defendants in contempt of Court). Therefore, it is unlikely that Facebook will be able recover the monetary

25

damages that the Court has awarded.

Furthermore, in their briefing, Defendants do not contest that Facebook has no adequate remedy at law. For these reasons, Facebook has established that money damages are inadequate to compensate for its injury. Therefore, this factor weighs in favor of a permanent injunction.

### 3. Balance of Hardships

The balance of hardships also weighs in favor of granting a permanent injunction. Facebook has suffered substantial harm because of Defendants' activities. Defendants' conduct also makes clear that if the Court does not issue an injunction, there is a probability that Defendants will engage in similar conduct in the future. Therefore, Facebook would suffer significant hardship in the absence of an injunction.

Defendants, on the other hand, would not suffer substantial hardship if the Court issued an injunction. As the Court held in its September 25, 2013 motion, an injunction would "simply serve to force [Defendants'] compliance with the law." ECF No. 373, at 30. However, Defendants' raise three specific objections to Facebook's proposed injunction, which appear to be most relevant to the balance of hardships factors. First, Defendants argue that the proposed injunction prohibits lawful activity such as the commercial use of Facebook without prior permission. Second, Defendants argue that the proposed injunction relates to software production that is unconnected to Facebook or to the instant litigation. Third, Defendants argue that the proposed injunction applies to third parties unrelated to the litigation. The Court addresses these arguments in turn.

First, Defendants claim that using Facebook for commercial purposes is perfectly legal and therefore should not be enjoined.[3] However, although Facebook's proposed injunction restricts Defendants from using Facebook for commercial purposes without Facebook's prior permission, this restriction is warranted to prevent future violations of the law. Additionally, Defendants' Facebook for commercial purposes is not legal if, as in the instant case, Facebook has explicitly

---

[3] As discussed above, the injunction that Facebook now seeks, which prohibits Defendants from using Facebook for any commercial purpose, is narrower than the injunction the Court granted in its September 25, 2013 motion, which prohibited Defendants from using Facebook for any purpose. ECF No. 373, at 33.

revoked Defendants' authorization to do so. Furthermore, the proposed injunction does not entirely prohibit Defendants from using Facebook for commercial purposes; it simply requires that Defendants receive permission from Facebook before doing so.

Additionally, even if the proposed injunction did prohibit legal conduct, it is well established that "federal courts have the equitable power to enjoin otherwise lawful activity if they have jurisdiction over the general subject matter and if the injunction is necessary and appropriate in the public interest to correct or dissipate the evil effects of past unlawful conduct" or to prevent "continued violations" of the law. *United States v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985). For the reasons discussed above, there is a probability that Defendants will attempt to access Facebook's computers without authorization unless enjoined. Therefore, the Court finds that even if Facebook's proposed injunction prohibits legal conduct, the injunction is not overbroad in light of Defendants' conduct in the instant case.

Second, Defendants argue that the prohibition on software development that "allows the user to engage in the conduct found to be unlawful" is overbroad. ECF No. 423, at 17. However, Defendants will suffer no harm from being unable to develop software to engage in illegal conduct. Therefore, the Court finds that this is provision is narrowly tailored to correct the legal violations at issue and is not overbroad.

Finally, Defendants object to the fact that Facebook's proposed injunction applies to "Defendants, their agents, officers, contractors, directors, shareholders, employees, subsidiary companies or entities, affiliated or related companies and entities, assignees, and successors-in-interest, and those in active concert or participation with them." *Id.* However, this proposed language closely tracks the terms of Federal Rule of Civil Procedure 65(d)(2) (providing that an injunction binds "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).)."). Additionally, Defendants raised this same argument in briefing before the Court's September 25, 2013 order. Specifically, Defendants claimed that "the requested injunction impermissibly threatens Vachani's employability and livelihood." ECF No. 373, at 31.

The Court rejected this argument and held that "Defendants fail[ed] to provide a persuasive reason why this is the case, and in any event, given that Vachani brought this risk upon himself by violating the law, the balance would not shift in favor of Defendants even if there were evidence to support this speculative claim." *Id.* Similarly, at this stage Defendants have provided no evidence to support their argument that Vachani's livelihood would be threatened by the injunction.

For these reasons, the Court finds that the balance of hardships weighs in favor of Facebook, and therefore this factor supports granting Facebook's requested injunction.

### 4. Public Interest

The Court also finds that the public interest weighs in favor of an injunction, as courts have consistently held in CFAA cases. *See, e.g., Craigslist, Inc. v. Troopal Strategies, Inc.*, 2011 U.S. Dist. LEXIS 156825, at *11 (N.D. Cal. 2011) (holding that public interest factor supported an injunction where defendant violated CFAA). The public has an interest in ensuring that computers are not accessed without authorization. Additionally, Defendants do not argue that the public interest would be disserved by an injunction. Therefore, the Court finds that this factor weighs in favor of granting Facebook's proposed injunction

### 5. Injunction

For the reasons discussed above, each of the four factors strongly supports granting an injunction in the instant case. The Court therefore grants Facebook's request for permanent injunctive relief against both Power and against Vachani in his personal capacity. Specifically, the Court grants the following injunction:

1. Defendants, their agents, officers, contractors, directors, shareholders, employees, subsidiary companies or entities, affiliated or related companies and entities, assignees, and successors-in-interest, and those in active concert or participation with them, are permanently enjoined from:

    A. Accessing or using, or directing, aiding, facilitating, causing, or conspiring with others to use or access the Facebook website or servers for any commercial purpose, without

28

Facebook's prior permission, including by way of example and not limitation for the purpose of sending or assisting others in sending, or procuring the sending, of unsolicited commercial electronic text messages via the Facebook website or service.

B. Using any data, including without limitation Facebook-user data and data regarding Facebook's website or computer networks, obtained as a result of the unlawful conduct for which Defendants' have been found liable.

C. Developing, using, selling, offering for sale, or distributing, or directing, aiding, or conspiring with others to develop, sell, offer for sale, or distribute, any software that allows the user to engage in the conduct found to be unlawful.

2. Defendants, their agents, officers, contractors, directors, shareholders, employees, subsidiary companies or entities, affiliated or related companies and entities, assignees, and successors-in-interest, and those in active concert or participation with them shall destroy any software, script(s) or code designed to access or interact with the Facebook website, Facebook users, or the Facebook service. They shall also destroy Facebook data and/or information obtained from Facebook or Facebook's users, or anything derived from such data and/or information.

3. Within three calendar days of entry of this permanent injunction and order, Defendants shall affirm that they already have notified, or shall notify, their current and former officers, agents, servants, employees, successors, and assigns, and any persons acting in concert or participation with them of this permanent injunction.

4. Within seven calendar days of entry of this injunction and order, Defendants shall certify in writing, under penalty of perjury, that they

29

have complied with the provision of this order, and state how notification

of this permanent injunction in accordance with paragraph 3 above was

accomplished, including the identities of all email accounts (if any) used

for notification purposes.

5. The Court shall continue to retain jurisdiction over the parties for the

purpose of enforcing this injunction and order.

### C. Costs and Discovery Sanctions

In addition to their arguments about damages and injunctive relief, Defendants raise two

other issues. First, Defendants argue that Facebook is not entitled to costs because Facebook has

not been deemed the prevailing party. Second, Defendants argue that Facebook is not entitled to

judgment for the discovery sanctions award that the Ninth Circuit affirmed. The Court addresses

these issues in turn.

First, the Court addresses the issue of costs. At the February 15, 2017 case management

conference, Facebook agreed that it would wait until after a new judgment was entered under

Federal Rule of Civil Procedure 54 before requesting costs. ECF No. 414, at 6. Thus, it is not

surprising that, as Defendants state, Facebook's brief on damages "makes no mention of the costs

of suit previously claimed by Facebook following the Court's original judgment." ECF No. 423, at

14–15. Therefore, because Facebook has not yet requested costs, the Court does not consider

Defendants' arguments regarding costs at this time.

Second, the Court addresses the issue of discovery sanctions. The Court has already

ordered Defendants to pay the $39,796.73 discovery sanction by March 15, 2017, ECF No. 410,

and has even invited Facebook to file a motion for contempt based on Defendants' ongoing failure

to pay the discovery sanction, ECF No. 422, at 3. Additionally, Defendants give no explanation or

authority for their position that the discovery sanction should not be included in the judgment. The

Court's prior orders requiring Defendants to pay the discovery sanction are "effective on [their]

own." ECF No. 423, at 15. However, in order to ensure that the record is clear and in light of

Defendants' ongoing failure to pay the discovery sanction, the Court will include the $39,796.73

discovery sanction in the judgment.

**D. Motion for Stay**

Vachani has also filed a motion for a stay pending resolution of his petition for certiorari to the United States Supreme Court. ECF No. 434. However, the Ninth Circuit has held that "once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority." *Yong v. INS*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000). Therefore, the Court DENIES Vachani's motion for a stay.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Facebook is entitled to $79,640.50 in compensatory damages and permanent injunctive relief as described above. The Court also again orders Defendants to pay the $39,796.73 discovery sanction. Finally, the Court DENIES Vachani's motion for a stay.

**IT IS SO ORDERED.**

Dated: May 2, 2017

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge