UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., <br><br> Plaintiff, <br><br> v. <br><br> POWER VENTURES, INC., et al., <br><br> Defendants. | Case No. 08-CV-05780-LHK <br><br> **ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR CONTEMPT SANCTIONS** <br><br> Re: Dkt. Nos. 446, 447 |

On May 2, 2017, the Court entered judgment in the instant case.  On May 16, 2017, Plaintiff Facebook, Inc. ("Facebook") filed a motion for attorney's fees and a motion for contempt sanctions against Defendants Steve Vachani ("Vachani") and Power Ventures, Inc. ("Power"). ECF Nos. 446–47. Defendants did not oppose either of these motions. Having considered the motions, the relevant law, and the record in this case, the Court hereby GRANTS Facebook's motion for attorney's fees and GRANTS IN PART Facebook's motion for contempt sanctions against Defendants.

## I.    BACKGROUND

### A.  Factual Background

United States District Court
Northern District of California

Facebook owns and operates the social networking website located at facebook.com. First Amended Complaint ("FAC") ¶ 2. Power Ventures ("Power") is a corporation incorporated in the Cayman Islands and doing business in California. Answer ¶ 10. At the times relevant to the instant case, Power has operated the website www.power.com, which offered to integrate users' various social media accounts into a single experience. FAC ¶ 5; Answer ¶ 5. Vachani is the Chief Executive Officer of power.com. Answer ¶ 11.

In December 2008, Facebook brought against Defendants this action, which alleges violations of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CANSPAM Act"), 15 U.S.C § 7701; the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; California Penal Code § 502; and the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201; copyright infringement under 17 U.S.C. § 101; trademark infringement under 15 U.S.C. §§ 1114 and 1125(a) and under California law; and violations of California Business and Professions Code Section 17200. ECF Nos. 1, 9. Facebook complained that Defendants employed Facebook's proprietary data without its permission by inducing Facebook users to provide their login information and then using that information to "scrape" Facebook's proprietary material. FAC ¶¶ 49, 50, 52. Defendants then displayed Facebook's material on power.com. FAC ¶ 52. Facebook asserts that it never gave Defendants permission to use its material in this way. FAC ¶ 54.

Facebook also accuses Defendants of sending unsolicited and deceptive email messages to Facebook users. FAC ¶¶ 65-69. To launch their site, Defendants promised power.com users a chance to win $100 if they invited and signed up the most new users to Defendants' site. FAC ¶ 65. Defendants provided to their users a list of the users' Facebook friends from which the users could choose people to whom to send the invitation. FAC ¶ 66. Power.com sent commercial emails to those friends that included on the "from" line a "@facebookmail.com" address. FAC ¶¶ 66, 68. The content of the message included a line that the message was from "The Facebook Team." FAC ¶ 69, 70. Facebook contends that it never gave permission to send these messages

2

and that the emails were deceptive because they "do not properly identify the initiators of the messages, nor do they provide clear or conspicuous notice that the messages are advertisements for" power.com. FAC ¶ 71.

## B. Procedural History

On December 30, 2008, Facebook filed the complaint in the instant case. ECF No. 1. On January 13, 2009, Facebook filed a First Amended Complaint. ECF No. 9. On February 18, 2011, Judge Ware granted the parties' stipulation to dismiss Facebook's DMCA claim, copyright and trademark infringement claims, and claims for violations of California Business and Professions Code Section 17200. ECF No. 97. On May 9, 2011, Defendants moved for summary judgment on Facebook's CFAA, Section 502, and CAN-SPAM Act claims. ECF No. 98. On November 17, 2011, Facebook moved for summary judgment on Facebook's § 502 and CFAA claims. ECF No. 214 ("§ 502/CFAA Motion"). On November 18, 2011, Facebook moved for summary judgment on Facebook's CAN-SPAM Act claim. ECF No. 215. On February 16, 2012, Judge Ware issued an order denying Defendants' motion for summary judgment and granting summary judgment in Facebook's favor as to Facebook's § 502, CFAA, and CAN-SPAM Act claims. ECF No. 275 ("February 16, 2012 order").

In the February 16, 2012 order, Judge Ware requested additional briefing regarding Vachani's individual liability and the amount of damages Facebook should receive in light of the February 16, 2012 order. *Id.* at 19. On April 17, 2012, Facebook filed its supplemental brief regarding damages and the liability of Vachani. ECF No. 299 ("Facebook Damages/Liability Brief"). On August 15, 2012, Vachani submitted a supplemental brief regarding damages and Vachani's personal liability. ECF No. 317 ("Vachani Damages/Liability Brief").

On June 4, 2012, the attorneys representing Vachani and Power moved to withdraw as counsel. ECF Nos. 302, 303. On July 2, 2012, Judge Ware granted the motions to withdraw. ECF No. 306. In the order granting the withdrawal motions, Judge Ware required Vachani and Power to file Notices of Identification of Substitute Counsel no later than July 17, 2012. *Id.* Judge Ware

noted that although Vachani could proceed pro se, Power had to be represented by a member of the bar pursuant to Civil Local Rule 3-9(b). Civil L.R. 3-9(b) ("A corporation, unincorporated association, partnership or other such entity may appear only through a member of the bar of this Court."). Judge Ware cautioned Defendants that a failure to file timely Notices of Identification of Substitute Counsel may result in default. *Id.*

On July 19, 2012, after neither Vachani nor Power had filed a Notice of Identification of Substitute Counsel, Judge Ware ordered both parties to appear on August 6, 2012 to respond to an Order to Show Cause regarding Defendants' failure to obtain counsel. ECF No. 308. On August 6, 2012, the parties appeared for the hearing, and on August 8, 2012, Judge Ware issued an order regarding Defendants' failure to obtain counsel ("August 8, 2012 order"). ECF No. 313. Because Power had failed to identify replacement counsel, Judge Ware found good cause to strike Power's answer to Facebook's complaint and enter default against Power. *Id.* Judge Ware permitted Vachani a short extension to find new counsel, which was conditioned on Vachani's immediate filing of a Notice of Self-Representation. *Id.* The Clerk entered default against Power on August 9, 2012. ECF No. 314.

On August 15, 2012, new counsel filed a Notice of Appearance on behalf of Power. ECF No. 316. That same day, Power moved for leave to file a motion for reconsideration of Judge Ware's August 8 order requiring entry of default against Power. ECF No. 318. Judge Ware gave Power leave to file a motion for reconsideration on August 21, 2012. ECF No. 320. On August 23, 2012, Power filed its motion for reconsideration. ECF No. 321.

On August 27, 2012, Facebook filed its response and simultaneously requested entry of default judgment against Power. ECF No. 322. On August 27, 2012, Defendants provided notice that both Power and Vachani had filed for bankruptcy. ECF Nos. 323, 324. Noting that pursuant to 11 U.S.C. § 362(a)(1), a voluntary petition for bankruptcy operates as an automatic stay of any judicial actions involving the petitioners, Judge Ware stayed the proceedings and administratively closed the case on August 29, 2012. ECF No. 325. In the same order, Judge Ware denied as

4

premature Power's motion for reconsideration of the August 8 order requiring entry of default. *Id.*

On March 20, 2013, Facebook notified the Court that the Bankruptcy Court had dismissed Power's bankruptcy case and had granted Facebook's request for relief from the automatic stay in Vachani's bankruptcy case. ECF No. 327. Facebook sought to reopen the instant case. *Id.* Facebook also sought reassignment to a new judge because on August 31, 2012, while the automatic stay was in effect, Judge Ware resigned from the bench. *Id.* On April 8, 2013, the undersigned judge, as the Duty Judge at the time Facebook filed its motion, granted Facebook's request. ECF No. 328. The undersigned judge ordered that the stay be lifted, the case be reopened, and the case be reassigned. *Id.* The case then was reassigned to the undersigned judge. ECF No. 329.

On April 25, 2013, Vachani moved for clarification of Judge Ware's February 16, 2012 order regarding whether Vachani's liability had been determined in the February 16, 2012 order. ECF No. 332. On April 29, 2013, Facebook filed a case management statement in which Facebook again requested that default judgment be entered against Power. ECF No. 333. On the same day, Defendants filed a consolidated case management statement in which Power again sought to set aside default. ECF No. 334. Defendants also stated their intent to request leave to file a motion for reconsideration of the February 16, 2012 order. *Id.* In Facebook's and Defendants' respective case management statements, the parties acknowledged that Vachani's liability and the issues of damages and injunctive relief still needed to be addressed. ECF No. 333, 334.

On May 2, 2013, following a case management conference, the Court issued a case management order. ECF No. 340. In that order, the Court clarified that the February 16, 2012 order did not decide Vachani's liability. *Id.* The Court granted Power's request to set aside default and denied Facebook's request for entry of default judgment against Power. *Id.* The Court also set a briefing schedule for the damages and injunctive relief issues. *Id.* The Court set a hearing date of September 26, 2013 to consider Vachani's liability and the issue of remedies. *Id.*

On August 1, 2013, Power filed its request for leave to file a motion to reconsider Judge

United States District Court
Northern District of California

Ware's February 16, 2012 order. ECF No. 353. On August 1, 2013, Facebook filed its supplemental memorandum in support of its request for injunctive relief. ECF No. 354 ("Facebook Injunction Brief"). On September 25, 2013, Facebook filed a supplemental motion for a permanent injunction. ECF No. 369.

On August 7, 2013, Magistrate Judge Spero issued an order requiring Vachani to pay Facebook $39,796.73 as a discovery sanction because of Vachani's noncompliance during a Rule 30(b)(6) deposition. ECF No. 356. Specifically, Judge Spero found that Vachani "was not prepared for his Rule 30(b)(6) deposition, read from [a prepared] declaration, and was 'argumentative' and 'evasive.'" *Id.* at 5. In the same order, Judge Spero noted that Defendants had committed another discovery violation by failing to timely disclose relevant emails. *Id.* Following Judge Spero's order, Vachani immediately appealed the discovery sanction to the Ninth Circuit on September 6, 2013. ECF No. 360. Despite the appeal, this Court retained jurisdiction over aspects of the case unrelated to the discovery sanctions.

On September 25, 2013, the Court filed an Order Denying Leave to File Motion for Reconsideration, Finding Defendant Steven Vachani Liable as a Matter of Law, and Granting Damages and Permanent Injunctive Relief. ECF No. 373. In the order, the Court first found that Defendants had not identified any new material facts, changes in law, or issues that Judge Ware manifestly failed to consider in his February 16, 2012 order. The Court therefore denied leave to file a motion for reconsideration of the February 16, 2012 order. *Id.* at 15. The Court also found that because Vachani directed and authorized the activities at issue, Vachani was personally liable for violations of the CAN-SPAM Act, CFAA, and California Penal Code § 502 along with Power. *Id.* at 17.

The Court then addressed the issue of damages for the first time. The Court noted that under the CAN-SPAM Act, Facebook was entitled to elect between statutory damages and monetary damages in the amount of actual losses. *Id.* at 22. Facebook elected to recover statutory damages, and the Court ordered Defendants to pay $50 for each of 60,627 spam messages sent, for

United States District Court
Northern District of California

a total of $3,031,350. *Id.* at 25–26. The Court then held that Facebook was entitled to compensatory damages under the CFAA. The Court held that "Facebook has established through undisputed testimony that it expended $80,543 to investigate Defendants' actions and for outside legal services in connection with the Defendants' actions." *Id.* at 26.

Finally, the Court issued a permanent injunction against Defendants. The Court found that each of the applicable four factors – (1) irreparable injury, (2) no adequate remedy at law, (3) balance of hardships, and (4) the public interest – favored granting a permanent injunction. *Id.* at 27 (citing *eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006)). In doing so, the Court considered Defendants' CAN-SPAM Act violations as well as Defendants' violations of the CFAA and § 502. The Court granted a permanent injunction that enjoined Defendants from (1) making any misleading statement in advertising, including statements that Facebook had authorized a particular communication; (2) accessing Facebook's website or servers "for any purpose" without Facebook's prior permission; (3) using any data obtained from the unlawful conduct; and (4) developing or using any software to commit the illegal acts alleged in the complaint. *Id.* at 33–34. The injunction also required Defendants to destroy all the software at issue, destroy all data obtained from Facebook with the illegal software, and take measures to ensure that the injunction was obeyed. *Id.* at 34. The Court entered judgment against Defendants the same day, September 25, 2013. ECF No. 374.

On October 23, 2013, Defendants appealed the Court's grant of summary judgment. ECF No. 379. On November 21, 2013, the Ninth Circuit dismissed Vachani's appeal of Magistrate Judge Spero's August 7, 2013 order granting discovery sanctions because the August 7, 2013 order was not final or appealable. ECF No. 386.

On December 9, 2016, the Ninth Circuit affirmed in part and reversed in part this Court's grant of summary judgment. ECF No. 401. The Ninth Circuit reversed the Court's finding that Defendants had violated the CAN-SPAM Act because the Ninth Circuit found that Facebook initiated the email messages at issue and that the sender of the messages was not materially

United States District Court
Northern District of California

misleading within the meaning of the CAN-SPAM Act. *Id.* at 9–13. The Ninth Circuit then held that Defendants had violated CFAA, but only for the period "after receiving written notification from Facebook on December 1, 2008." *Id.* at 19. The Ninth Circuit held that by sending the December 1, 2008 notification, Facebook revoked Defendants' permission to use Facebook's computers. *Id.*

With respect to damages, the Ninth Circuit held that "[i]t is undisputed that Facebook employees spent many hours, totaling more than $5,000 in costs, analyzing, investigating, and responding to Power's actions." *Id.* at 14. However, in light of the Ninth Circuit's finding that the violation began only after Facebook sent its cease and desist letter on December 1, 2008, the Ninth Circuit remanded to "calculate damages only for the period after Power received the cease and desist letter . . . ." *Id.* at 22.

After remand, the Court initially scheduled a case management conference for January 11, 2017. However, Defendants filed a motion requesting a continuance of the case management conference due to "ongoing personal considerations." ECF No. 405. The Court granted this motion and continued the case management conference to January 25, 2017. ECF No. 406. Facebook then filed a motion requesting a continuance due to scheduling problems with the January 25, 2017 date. ECF No. 407. The Court therefore continued the case management conference to February 15, 2017. ECF No. 408.

The Court held a case management conference on February 15, 2017. At the case management conference, the Court set a briefing schedule for the remanded issue of remedies. ECF No. 410. The Court also ordered Defendants to pay by March 15, 2017 the $39,796.73 discovery sanction that the Ninth Circuit affirmed.[1]

Pursuant to the briefing schedule, Facebook filed its supplemental remedies brief on March 8, 2017. ECF No. 416. On March 9, 2017, Defendants filed a petition for certiorari with the United

---

[1] Although the Ninth Circuit dismissed Vachani's earlier appeal of Magistrate Judge Spero's August 7, 2013 order granting discovery sanctions, ECF No. 386, the Ninth Circuit later considered the issue of discovery sanctions in its December 9, 2016 order, ECF No. 401.

Case No. 08-CV-05780-LHK
ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR CONTEMPT SANCTIONS

States Supreme Court. ECF No. 418. Defendants failed to pay the $39,796.73 discovery sanction by the March 15, 2017 deadline and still have not done so. Subsequently, on March 28, 2017, Vachani filed an "urgent motion" requesting that the Court stay all district court proceedings for 90 days or grant a 45–60 day extension because Vachani had been unable to contact Power's attorney for over a month. ECF No. 420. Vachani stated that he would likely be forced to find new counsel and that it would "truly take some time to properly regroup and get new counsel up to speed." *Id.* at 3. The same day, Vachani filed a letter with the Court stating that although he has not paid the $39,796.73 discovery sanction, Vachani is "in compliance with this court's order" because he is "in an active bankruptcy proceeding." ECF No. 421.

On March 29, 2017, the Court denied Vachani's motion for a stay and for an extension of time. ECF No. 422. The next day, despite Vachani's claim that he had been unable to contact Power's attorney for 30 days and that an extension was necessary in light of a "truly exceptional emergency," ECF No. 420 at 2, Power's attorney filed a 20 page brief addressing the issue of remedies, ECF No. 423. Subsequently, on April 17, 2017, Vachani filed yet another motion to stay pending resolution of the writ of certiorari to the United States Supreme Court. ECF No. 434.

On May 2, 2017, the Court ruled on the remanded issue of damages. ECF No. 435. In doing so, the Court noted that despite the Court's explicit warning, Defendants had raised several issues that the Ninth Circuit had not reversed on appeal. For example, although the Ninth Circuit had held that "Facebook expressly rescinded [its] permission when Facebook issued its written cease and desist letter to Power on December 1, 2008," Defendants nevertheless argued extensively that Facebook did not actually deny Defendants permission to use Facebook's website until December 26, 2008. *Id.* at 14.

In ruling on the issue of remedies, the Court found that Facebook was entitled to $79,640.50 in compensatory damages. This figure did not include the $3,031,350 in CAN-SPAM damages that were reversed by the Ninth Circuit. This figure also did not include $902.50 in damages incurred on or before December 1, 2008, when Facebook sent the cease and desist letter.

9

Instead, this figure reflected only the damages incurred by Facebook after December 1, 2008 in responding to Defendants' CFAA violation.

The Court also issued a permanent injunction against Defendants that was narrowly tailored to Defendants' CFAA violation. The injunction prohibited Defendants and anyone in participation with Defendants from "[a]ccessing or using, or directing, aiding, facilitating, causing, or conspiring with others to use or access the Facebook website or servers for any commercial purpose, without Facebook's prior permission"; from "using any data . . . obtained as a result of the unlawful conduct"; or from developing or using "any software that allows the user to engage in the conduct found to be unlawful." *Id.* at 28–29. The injunction also required Defendants and those in participation with Defendants to "destroy any software, script(s) or code designed to access" Facebook's services and to "destroy Facebook data and/or information obtained from Facebook or Facebook's users, or anything derived from such data and/or information." *Id.* at 29. Finally, the injunction required Defendants within three days to "affirm that they already have notified, or shall notify, their current and former officers, agents, servants, employees, successors, and assigns, and any persons acting in concert or participation with them of this permanent injunction" and within seven days to "certify in writing, under penalty of perjury, that they have complied with the provision of this order, and state how notification of this permanent injunction . . . was accomplished, including the identities of all email accounts (if any) used for notification purposes." *Id.* at 29–30.

Finally, the Court again ordered Defendants to pay the $39,796.73 discovery sanction and denied Defendants' May 1, 2017 motion to stay. *Id.* at 31. The Court issued a judgment on May 2, 2017. ECF No. 437.

On May 9, 2017, Defendants filed a letter representing compliance with the permanent injunction. ECF No. 439. According to Facebook's motion for contempt, Facebook informed Vachani that it did not believe that the May 9, 2017 letter was sufficient to comply with the permanent injunction. In response, on May 11, 2017 Defendants filed a new letter "recalling and

United States District Court
Northern District of California

rescinding" the May 9, 2017 letter. ECF No. 440. In the May 11, 2017 letter, Vachani stated that "[a]s defendants have different requirements, different counsel, and different interests, Defendants intend to file revised letters of compliances [sic] or responses to court separately." *Id.* at 1. Vachani and Power then filed separate updated letters on May 12, 2017. ECF Nos. 441–42. The letter sent on behalf of Power, which Vachani drafted and signed, stated that Power has "abided by all the provisions of this court's order to the best of its abilities" and that "Power has no reasons to believe that it has not fully complied with all provisions." ECF No. 442. Vachani's letter on his own behalf claimed that Sections 2 through 4 of the permanent injunction did not apply to Vachani. *Id.* Further details of the May 11, 2017 letters are discussed below.

On May 16, 2017, Facebook filed the instant motion for attorney's fees and motion for contempt sanctions. ECF Nos. 446–47. Defendants' oppositions to these motions were due May 30, 2017. *Id.* On May 31, 2017, the day after these oppositions were due, Power filed an ex parte application for extensions of time to file an opposition. ECF No. 449. Power stated that this extension was justified based on Power's counsel's "uncharacteristic and prohibitively burdensome workload . . . ." *Id.* at 2. The Court denied this ex parte application on May 31, 2017. ECF No. 450.

On June 1, 2017, Defendants appealed the Court's May 2, 2017 judgment to the Ninth Circuit. ECF No. 451. Defendants did not move to stay execution of the judgment under Federal Rule of Civil Procedure 62(b). Defendants also never timely opposed Facebook's motion for attorney's fees or Facebook's motion for contempt sanctions. Facebook filed reply briefs for both motions on June 6, 2017. ECF Nos. 454–55.

On July 14, 2017, Defendants filed a "recertification of compliance." ECF No. 462. This "recertification of compliance" was essentially an untimely opposition to Facebook's motion for contempt sanctions. The details of the July 14, 2017 letter are discussed below.

On July 28, 2017, the Court ordered Facebook to file detailed billing records and further justification of its billing rates in support of Facebook's motion for attorney's fees. ECF No. 464.

United States District Court
Northern District of California

Facebook filed a supplemental declaration and submitted detailed billing records for in camera review on August 3, 2017. ECF No. 467.

## II. DISCUSSION

### A. Motion for Attorney's Fees

Facebook requests $145,028.40 in attorney's fees pursuant to California Penal Code § 502(e)(2).[2] California Penal Code § 502(e)(2) states that "[i]n any action brought pursuant to this subdivision the court may award reasonable attorney's fees." This provision allows prevailing Plaintiffs to recover attorney's fees for actions brought under § 502(e). *See Swearingen v. HAAS Automation, Inc.*, 2010 WL 1495204, *2 (S.D. Cal. Apr. 14, 2010) ("[A]n examination of the history of § 502 reveals that it was the intention of the California legislature to allow only prevailing plaintiffs to recover attorney's fees."). Facebook brought this action under § 502(e) and is a prevailing plaintiff for the purposes of determining attorney's fees. *See* California Code of Civil Procedure § 1032(a)(4) ("'Prevailing party' includes the party with a net monetary recovery . . . ."); *see also Farrar v. Hobby*, 506 U.S. 103, 109 (1992) ("Under our generous formulation of the term, plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.") (internal quotation marks omitted).

As the prevailing party, Facebook is entitled to reasonable attorney's fees under California Penal Code § 502(e)(2). Although Facebook is entitled to all reasonable attorney's fees incurred in this action, Facebook requests only a small subset of those attorney's fees. Specifically, Facebook requests only "a narrow recovery encompassing its attorneys' and paralegals' preparation for post-remand proceedings" through April 2017. ECF No. 446 at 4. The instant motion does not request attorney's fees for any other work performed in the eight years between the filing of the complaint

---

[2] Facebook's original motion on May 16, 2017 sought $146,667.84 in attorney's fees. ECF No. 446. However, in Facebook's August 3, 2017 response to the Court's order regarding billing records, Facebook stated that it had decided to "remove[] $1,639.44 of attorneys' fees related to services performed in response to Defendants' Supreme Court petition." ECF No. 467, at 1. Thus, Facebook now requests only $145,028.40 in attorney's fees.

12

1    in December 2008 and the Ninth Circuit's remand in December 2016. The instant motion also

2    does not seek attorney's fees for any work performed after April 2017, including the filing of the

3    instant motions on May 16, 2017 and the replies on June 6, 2017, as well as extensive

4    correspondence with Defendants in May 2017 attempting to secure Defendants' compliance with

5    the Court's orders. *See* ECF No. 446-1, at 1 ("Billings for May 2017 have not been included.").

6    Thus, Facebook's request for attorney's fees is reasonable in light of the fact that Facebook

7    requests only a small portion of the fees to which Facebook is entitled under California Penal

8    Code § 502(e)(2).

9        Facebook requests a total of $145,028.40 in attorney's fees, which Facebook claims is

10   reasonable under the lodestar method. Under the lodestar method, a "lodestar figure is calculated

11   by multiplying the number of hours the prevailing party reasonably expended on the litigation (as

12   supported by adequate documentation) by a reasonable hourly rate for the region and for the

13   experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir.

14   2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

15       Having reviewed the billing rates for and qualifications of the attorneys and paralegals

16   representing Facebook in this case, the Court finds that these rates are reasonable in light of

17   prevailing market rates in this district and that counsel for Plaintiffs have submitted adequate

18   documentation justifying those rates. Along with its motion for attorney's fees, Facebook filed two

19   declarations describing the billing rates and hours worked in the instant case. *See* Declaration of

20   Monte Cooper, ECF No. 446-1; Declaration of Neel Chatterjee, ECF No. 226-2. Specifically,

21   these declarations describe an hourly rate of ▮▮▮▮▮ for Partner I. Neel Chatterjee, an

22   hourly rate of ▮▮ for Of Counsel Monte Cooper, an hourly rate of ▮▮▮ for associate Robert

23   Uriarte, an hourly rate of ▮▮▮▮▮ for Senior Paralegal Amy Dalton, an hourly rate of

24   ▮▮ for associate Victor Wang, and an hourly rate of ▮▮▮ for Senior Paralegal Matt Leahy. *See*

25   ECF Nos. 446-1 & 446-2. Facebook filed a third declaration on August 3, 2017, providing further

26   justification for these hourly rates. *See* Declaration of Michael R. Caplan, ECF No. 467-1.

27

28

The reasonableness of the requested rates is strongly supported by the fact that these are the rates that counsel billed to Facebook and that Facebook has already paid. *See* ECF No. 446-1, at 1 ("The tables below reflect the amount of legal fees expended by Facebook, Inc. specifically related to services billed by Orrick, Herrington & Sutcliffe LLP after the Ninth Circuit's December 2016 remand."); ECF No. 446-2, at 1 ("The tables below reflect the amount of legal fees expended by Facebook, Inc. specifically related to services billed by Goodwin Procter LLP after the Ninth Circuit's December 2016 remand."). Thus, the fact that this is the rate that counsel actually charged Facebook "provides a market-based cross-check" for the reasonableness of the fees. *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017).

Additionally, in the instant case, Magistrate Judge Spero previously evaluated similar hourly rates and found them to be reasonable. *See* ECF No. 356, at 4 ("[T]he Court has reviewed the hours and rates in detail and finds them to be reasonable."); *see also* ECF No. 347, at 4 (detailing hourly rates found reasonable). Furthermore, the Court has previously approved hourly rates in a similar range for attorneys of similar experience. Specifically, in *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017), the Court approved rates of "$870 and $1,200 per hour" for lead attorneys, rates of "$275 to $750" for associates, and rates of $290 or lower for paralegals. Similarly, in *In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015), the Court approved rates of "about $490 to $975" for partners, rates of "$310 to $800" for non-partner attorneys, and rates of "about $190 to $430" for support staff including paralegals. The rates for which Facebook seeks compensation in the instant case are comparable to these rates. *See* ECF Nos. 446-1 & 446-2 (describing hourly rates for partners, associates, and paralegals).

Additionally, having reviewed the declarations accompanying the motion for attorney's fees, the Court finds that the hours expended are reasonable in light of the work required for post-remand proceedings. This work included preparing a joint case management statement in advance

14

of a case management conference, ECF No. 409; attending the case management conference, ECF No. 412; filing an initial brief and a reply brief on the issue of remedies in light of the Ninth Circuit's remand, ECF Nos. 416 & 424; engaging in extensive correspondence with Defendants; filing a March 20, 2017 letter informing the Court of Defendants' failure to pay the discovery sanction, ECF No. 419; and opposing Defendants' motion to stay pending resolution of Defendants' petition for writ of certiorari, ECF No. 429. As discussed above, the reasonableness of the hours worked is strongly supported by the fact that Facebook is requesting only a small fraction of the total attorney's fees to which Facebook is entitled as a prevailing party. The reasonableness of the fees is also strongly supported by the fact that the requested fees are fees that counsel actually charged Facebook, which "provides a market-based cross-check" for the reasonableness of the fees. *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *9.

Thus, the Court finds that Facebook's request of $145,028.40 in attorney's fees is reasonable and that Facebook is entitled to these fees because Facebook is the prevailing party in the instant case pursuant to California Penal Code § 502(e)(2). For these reasons, the Court GRANTS Facebook's motion for attorney's fees. The Court finds that Vachani and Power are jointly and severally liable for the $145,028.40 attorney's fee award.

### B. Motion for Contempt Sanctions

Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006) (internal quotation marks and citation omitted). "The contempt need not be willful, and there is no good faith exception to the requirement of obedience to a court order." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir.1993) (internal quotation marks and citation omitted). However, contempt sanctions are not warranted where the alleged contemnor's actions appear to be based upon a reasonable interpretation of the court's order. *Id.* Substantial compliance also is a defense to civil contempt—"[i]f a violating party has taken all reasonable steps to comply with the court

order, technical or inadvertent violations of the order will not support a finding of civil contempt." *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir.1986) (internal quotation marks and citation omitted). "The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by clear and convincing evidence." *Dual-Deck*, 10 F.3d at 695 (internal quotation marks and citation omitted). Thus, the party alleging civil contempt must demonstrate by clear and convincing evidence that (1) the contemnor violated a court order, (2) the noncompliance was more than technical or de minimis, and (3) the contemnor's conduct was not the product of a good faith or reasonable interpretation of the violated order. *See United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010) (outlining these factors); *Inst. of Cetacean Research v. Sea Shepherd Conservation Society*, 774 F.3d 935, 945 (9th Cir. 2014) (same). "Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *Gen. Signal Corp.*, 787 F.2d at 1380.

In the instant case, Facebook asks the Court to find both Power and Vachani in contempt for two reasons. First, Facebook argues that Power and Vachani have failed to comply with the Court's February 15, 2017 order requiring Power to pay $39,796.73 in discovery sanctions by March 15, 2017. ECF No. 447 at 1. Second, Facebook argues that Power and Vachani have not fully complied with the Court's May 2, 2017 permanent injunction. *Id.* The Court addresses these issues in turn.

**1. Discovery Sanction**

First, the Court addresses Defendants' failure to pay the $39,796.73 discovery sanction. At the outset, the Court notes that Facebook does not seek a finding of contempt for Vachani's failure to pay the discovery sanction based on Vachani's personal liability. *Id.* at 1 n.1. Instead, Facebook seeks a finding of contempt against Power and against Vachani in his capacity as Power's Chief Executive Officer (CEO). *Id.*

As discussed above, Magistrate Judge Spero issued an order on August 7, 2013 imposing

16

the discovery sanction because of Vachani's noncompliance during a Rule 30(b)(6) deposition. ECF No. 356. Specifically, Judge Spero found that Vachani "was not prepared for his Rule 30(b)(6) deposition, read from [a prepared] declaration, and was 'argumentative' and 'evasive.'" *Id.* at 5. Vachani immediately appealed the discovery sanction to the Ninth Circuit on September 6, 2013. ECF No. 360. On November 21, 2013, the Ninth Circuit dismissed Vachani's appeal of Magistrate Judge Spero's August 7, 2013 order granting discovery sanctions because the August 7, 2013 order was not final or appealable. ECF No. 386.

The Ninth Circuit affirmed the discovery sanction in its December 9, 2016 order affirming in part and reversing in part the Court's grant of summary judgment. ECF No. 401 at 22. The Ninth Circuit found that Defendants had waived their right to appellate review of the issue. *Id.* The Ninth Circuit also found that even if the issue was not waived, "[t]he magistrate judge's findings that Vachani was unprepared, unresponsive, and argumentative and that Power Ventures had failed to produce many e-mails responsive to Facebook's requests prior to discovery are supported by the record." *Id.*

Because the Ninth Circuit affirmed the discovery sanction, at the February 15, 2017 case management conference following the Ninth Circuit's remand, the Court ordered Defendants to pay the $39,796.73 discovery sanction by March 15, 2017. ECF No. 410. On March 20, 2017, Facebook filed a letter with the Court stating that Defendants had not yet paid the sanction. ECF No. 419. On March 28, 2017, Vachani filed a letter in which he stated that Vachani personally was not required to pay the sanction because of his ongoing bankruptcy proceedings. ECF No. 421. As to Power, Vachani stated that Power did not have "the financial resources to pay this $39,796.73 immediately" and reached out to Facebook to request an extension of time. *Id.* at 4. Vachani also suggested that "it might be best to wait at least 90 days so that we all have a clearer idea on the final amounts owed." *Id.* Vachani requested that the Court grant a 90-day extension to make the payment as well as a 90-day stay of all proceedings. *Id.*; ECF No. 420. On March 29, 2017, the Court denied the request for a payment extension and the request for a stay. ECF No. 422. As part

United States District Court
Northern District of California

of that order, the Court stated that "[t]o the extent that Facebook asserts that Defendants are not in compliance with this Court's order to pay Facebook $39,796.73 by March 15, 2017, Facebook may file a motion for contempt of Court." *Id.* at 3.

Defendants still had not paid the discovery sanction by the time the Court ruled on the remanded issue of remedies on May 2, 2017. Thus, in ruling on the issue of remedies, the Court stated that "despite being ordered three times to pay the $39,796.73 discovery sanction, Defendants have not yet done so and the Court has even invited a motion to hold Defendants in contempt of Court." ECF No. 435 at 25. The Court therefore again ordered Defendants to pay the discovery sanction. *Id.* at 30–31; ECF No. 437.

However, although the Court has ordered Defendants to pay the discovery sanction at least four times, Defendants have not yet paid the discovery sanction. ECF No. 356 (August 7, 2013 order requiring Defendants to pay discovery sanction); ECF No. 401 (affirming discovery sanction); ECF No. 410 (ordering Defendants to pay discovery sanction by March 15, 2017); ECF No. 422 (inviting motion to hold Defendants in contempt of Court); ECF No. 435 (remedies order). Defendants did not file an opposition to the motion for contempt. However, on July 14, 2017, Defendants filed a letter of "recertification of compliance" with the permanent injunction. ECF No. 462. This letter was essentially an untimely opposition to Facebook's motion for contempt sanctions. In this letter, Defendants stated that "Power Ventures is financially unable to pay the $39,796 sanctions payment that was ordered by this court on February 15, 2017. Power Ventures has not had a bank account or any incoming revenues, investment, or cash flow since 2013." *Id.* at 5.

In short, there is clear and convincing evidence that Defendants violated the court's order to pay the discovery sanction, that this noncompliance was more than technical or de minimis, and that Defendants' conduct was not the product of a good faith or reasonable interpretation of the violated order. *See Bright*, 596 F.3d at 694 (describing the factors in a contempt finding).

Thus, all three requirements for a contempt finding are met. Nevertheless, even when all

18

United States District Court
Northern District of California

requirements for contempt are met, "[a] party's inability to comply with a judicial order constitutes a defense to a charge of civil contempt." *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999); *see also United States v. Bryan*, 339 U.S. 323, 330-331 (1950). However, the burden is on the party against whom contempt is sought to show "categorically and in detail" why the party is unable to pay. *NLRB v. Trans Ocean Exp. Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973); *see also Cutting v. Van Fleet*, 252 F. 100, 102 (9th Cir. 1918) ("[T]he inability to pay must clearly appear.").

Defendants have not met this burden in the instant case. For example, Defendants' July 14, 2017 letter states "under penalty of perjury" that "Power Ventures has not had a bank account or any incoming revenues, investment, or cash flow since 2013." ECF No. 462 at 5. However, Defendants do not state that Power "owns no property, real or personal, out of which [the required payment] could be realized, or that it [has] no property concealed, or transferred to others, or other resources out of which [it] might pay the required sum." *Cutting*, 252 F. at 102. Additionally, Defendants do not state that Power has insufficient cash on hand to pay the $39,796.73 discovery sanction.

Power's ability to pay is particularly uncertain in light of the fact that Power previously filed for Chapter 11 bankruptcy, but the bankruptcy petition was dismissed on November 27, 2012, nearly five years ago. ECF No. 327-1. Additionally, on March 28, 2017, Defendants stated that "Power will need further time to consult with its remaining interested stakeholders to determine its best path forward." ECF No. 421. The March 28, 2017 letter also stated that Power did not "have the financial resources to pay this $39,796.73 immediately" and therefore requested a 90-day extension. *Id.* at 3. This suggests that as of March 28, 2017, Power anticipated that it would be able to pay the discovery sanction within 90 days, which would have been the end of June 2017. Thus, Power's financial situation may not be as straightforward as Defendants' July 14, 2017 letter suggests. In short, Defendants have not met their burden of showing "categorically and in detail" that Power is unable to pay the $39,796.73 discovery sanction.

United States District Court
Northern District of California

1    Thus, because each of the requirements for contempt is met and because Defendants have

2 not met their burden of establishing an affirmative defense, a finding of civil contempt is justified.

3 As discussed above, Facebook does not seek a contempt finding against Vachani in his personal

4 capacity. Instead, Facebook seeks a contempt finding only against Power and Vachani in his

5 capacity as CEO of Power.

6    Therefore, the Court finds that Power and Vachani, in his capacity as CEO of Power, are in

7 contempt of Court for their ongoing failure to pay the $39,796.73 discovery sanction. The Court

8 will discuss the proper contempt sanction below.

9    **2. Permanent Injunction**

10    Next, the Court discusses Defendants' failure to comply with the permanent injunction that

11 the Court issued on May 2, 2017. Section 1 of the May 2, 2017 permanent injunction prohibited

12 Defendants and anyone in participation with Defendants from "[a]ccessing or using, or directing,

13 aiding, facilitating, causing, or conspiring with others to use or access the Facebook website or

14 servers for any commercial purpose, without Facebook's prior permission"; from "using any data .

15 . . obtained as a result of the unlawful conduct"; or from developing or using "any software that

16 allows the user to engage in the conduct found to be unlawful." *Id.* at 28–29. Section 2 of the

17 permanent injunction required Defendants and those in participation with Defendants to "destroy

18 any software, script(s) or code designed to access" Facebook's services and to "destroy Facebook

19 data and/or information obtained from Facebook or Facebook's users, or anything derived from

20 such data and/or information." *Id.* at 29. Section 3 of the injunction required Defendants within

21 three days to "affirm that they already have notified, or shall notify, their current and former

22 officers, agents, servants, employees, successors, and assigns, and any persons acting in concert or

23 participation with them of this permanent injunction." *Id.* Section 4 of the injunction required

24 Defendants within seven days to "certify in writing, under penalty of perjury, that they have

25 complied with the provision of this order, and state how notification of this permanent injunction .

26 . . was accomplished, including the identities of all email accounts (if any) used for notification

27

28
ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
CONTEMPT SANCTIONS

United States District Court
Northern District of California

purposes." *Id.* at 29–30.

On May 9, 2017, Vachani filed a letter with the Court regarding his and Power's compliance with the permanent injunction. ECF No. 439. This letter was not signed under penalty of perjury. *Id.* Additionally, the letter simply stated that "Defendants hereby certify in this written letter that they have complied with all provisions of Sections 1, 2, 3, and 4 of this order to the best of their knowledge and capabilities" and that Power "ha[s] notified or shall notify" employees and agents of Power about the terms of the injunction. *Id.*

This May 9, 2017 letter was not sufficient to comply with the terms of the injunction. Section 4 of the injunction required Defendants to "certify in writing, under penalty of perjury, that they have complied with the provision of this order, and state how notification of this permanent injunction in accordance with paragraph 3 above was accomplished, including the identities of all email accounts (if any) used for notification purposes." ECF No. 435 at 29–30. However, the May 9, 2017 letter was not signed under penalty of perjury, nor did the letter specify how notification was accomplished.

After the May 9, 2017 letter, Facebook sent a letter to Defendants indicating that Facebook did not believe that the letter was sufficient to comply with the May 2, 2017 permanent injunction. In response, on May 10, 2017, Vachani sent a letter "rescinding and recalling the letter filed on May 9th." ECF No. 440. The May 10, 2017 letter also stated that "[a]s [D]efendants have different requirements, different counsel, and different interests, Defendants intend to file revised letters of compliances [sic] or responses to court separately." *Id.* On May 12, 2017, Vachani filed an "updated letter" with the Court. ECF No. 441. In the letter, Vachani claimed that Sections 2 through 4 of the permanent injunction did not apply to Vachani. *Id.* ("Sections 2,3, and 4 of the May 2nd order do not directly apply to me in an individual capacity and are specifically directed at the corporate defendant Power Ventures Inc.").

On May 12, 2017, Vachani also filed a separate letter on behalf of Power, which stated that Power has "abided by all the provisions of this court's order to the best of its abilities" and that

United States District Court
Northern District of California

"Power has no reasons to believe that it has not fully complied with all provisions." ECF No. 442. As to Section 1 of the injunction, the letter stated that "Power Ventures acknowledges this court's injunction and this section requires no further action from Power Ventures Inc." *Id.* at 2. As to Section 2, of the injunction, the letter stated the following:

> Power Ventures Inc. represents that all employees, subsidiary companies or entities, affiliated or related companies and entities, assignees, and successors-in-interest, and those in active concert or participation with them have destroyed any software, script(s) or code designed to access or interact with the Facebook website, Facebook users, or the Facebook service. Power further represents that it has destroyed Facebook data and/or information obtained from Facebook or Facebook's users, or anything derived from such data and/or information.

*Id.* As to Section 3 of the injunction, the letter affirmed that Power had notified all agents, employees, etc. in compliance with the injunction. *Id.* As to Section 4, the letter stated that on May 9, 2017, Power sent "a copy of this Court's May 2nd order and permanent injunction" to the email addresses listed in Exhibit A. *Id.* Power also stated it will "communicate with remaining parties by telephone or US mail." *Id.*

Facebook argues that both Vachani and Power should be found in contempt for failure to comply with the May 2, 2017 permanent injunction. As discussed above, Defendants did not file a timely opposition to the instant motion for contempt sanctions. However, on July 14, 2017, Defendants filed a letter of "recertification of compliance" to the permanent injunction. ECF No. 462. This letter certified Defendants' compliance with the permanent injunction and argued against the imposition of contempt sanctions. In this letter, Defendants stated the following:

> [D]efendants hereby certify they have taken all necessary steps to comply with and implement the Permanent Injunction. Defendants have notified officers, agents, servants, employees, successors, and assigns, and any persons acting in concert with them of the permanent injunction. Defendants, their agents, officers, contractors, directors, shareholders, employees, subsidiary companies or entities, affiliated or related companies and entities, assignees, and successors-in-interest, and those in active concert or participation with them have destroyed any software, script(s) or code designed to access or interact with the Facebook website, Facebook users, or the Facebook service, and Facebook data and/or information obtained from Facebook or Facebook's users, or anything derived from such data and/or information. Defendants declare under the penalty of perjury of the laws of the State of California that the foregoing is true and correct.

22

*Id.* at 4. The Court first addresses Power and then addresses Vachani.

### a. Power

Facebook argues that Power has failed to comply with the permanent injunction. Specifically, Facebook claims that Power's May 12, 2017 letter, which was drafted and signed by Vachani, "provides a short list of email recipients but does not provide any details as to who received the notice emails or what the notice emails said. Moreover, Power's submissions do not even mention what efforts Power undertook to destroy the software and scraped data underlying Facebook's claims." ECF No. 447 at 7. Because of these failures, Facebook asks the Court to hold Power in contempt.

However, no provision of the permanent injunction requires Power to "provide details" about "what the notice emails said." ECF No. 447 at 7. Instead, the permanent injunction stated that Power must "state how notification of this permanent injunction in accordance with paragraph 3 above was accomplished, including the identities of all email accounts (if any) used for notification purposes." ECF No. 435 at 29–30. The May 12, 2017 letter lists the email accounts to which notice was sent and also stated that Power will "communicate with remaining parties by telephone or US mail." ECF No. 442 at 2. The letter also states that "on May 9th, 2017, [Power] sent emails to the last known email address to all known parties listed in section 3 with a copy of this court's May 2nd order and permanent injunction." ECF No. 442 at 2. Thus, Defendants have certified that the notice emails contained at least a copy of the Court's May 2, 2017 order and the permanent injunction. Therefore, the May 12, 2017 letter complies with the terms of the permanent injunction. At the very least, the May 2, 2017 letter is in "substantial compliance" with a "reasonable interpretation" of the permanent injunction. *Bright*, 596 F.3d at 694.

Similarly, although Facebook complains that the May 12, 2017 letter does not describe "what efforts Power undertook to destroy the software and scraped data," there is no provision of the permanent injunction that requires Power to describe these efforts. ECF No. 447 at 7. Instead, the permanent injunction requires only that Power certify under penalty of perjury that it has

23

complied with the provisions of the permanent injunction.[3] Except for a requirement that Defendants describe how notice of the permanent injunction was accomplished, there is no requirement that Defendants describe *how* they complied with the permanent injunction.

Although the Court is sympathetic to Facebook's concerns that Power may attempt to "skirt the Permanent Injunction's requirements," Facebook has not presented "clear and convincing evidence" that Power is violating the terms of the permanent injunction. ECF No. 447 at 7. Power has certified under penalty of perjury that it has complied with the permanent injunction, and although this certification of compliance is not detailed, it meets the requirements of Section 4 of the permanent injunction. If this certification of compliance is knowingly false, Power and Vachani may be subject to prosecution for perjury. However, Facebook has not produced "clear and convincing evidence" of noncompliance that is more than de minimis and is not the product of a "reasonable interpretation" of the permanent injunction.

For these reasons, the Court finds that a contempt finding is not warranted against Power based on failure to comply with the permanent injunction.

### a. Vachani

Vachani's May 12, 2017 letter to the Court stated that Vachani acknowledged Section 1 of the permanent injunction, but that "Sections 2, 3, and 4 of the May 2nd order do not directly apply to me in an individual capacity and are specifically directed at the corporate defendant Power Ventures Inc." ECF No. 441. However, this is inaccurate. The May 2, 2017 permanent injunction did not distinguish between Vachani and Power. Specifically, Sections 2, 3, and 4 each stated that "Defendants" shall comply with their terms. ECF No. 435, at 29–30 ("Defendants . . . shall destroy any software . . . ."); *id.* ("Defendants shall affirm that they have already notified . . . ."); *id.* ("Defendants shall certify in writing . . . .").

---

[3] The permanent injunction did require Defendants to certify compliance within seven days of the May 2, 2017 order. ECF No. 435 at 29–30. Thus, Defendants' May 12, 2017, and July 14, 2017 did not comply with this deadline. However, Facebook does not seek a finding of contempt based on the untimeliness of the letters.

24

1    Thus, Vachani's refusal to certify that he has personally complied with Sections 2, 3, and 4

2    of the permanent injunction violates the terms of the Court's May 2, 2017 order. Particularly,

3    Vachani's failure to certify compliance with Section 3 raises the possibility that Vachani

4    personally has possession of "script(s) or code designed to access or interact with the Facebook

5    website" or "data and/or information obtained from Facebook." ECF No. 435 at 29. Therefore, at

6    the time that Facebook filed its motion for contempt sanctions on May 16, 2017, Vachani was in

7    contempt of court for failing to certify compliance with all provisions of the permanent injunction.

8    However, in Defendants' July 14, 2017 letter, Vachani states generally that both

9    Defendants "have destroyed any software, script(s) or code designed to access or interact with the

10    Facebook website, Facebook users, or the Facebook service, and Facebook data and/or information

11    obtained from Facebook or Facebook's users, or anything derived from such data and/or

12    information." ECF No. 462 at 4. The July 14, 2017 letter also states that "Defendants have notified

13    officers, agents, servants, employees, successors, and assigns, and any persons acting in concert

14    with them of the permanent injunction." *Id.* Thus, the July 14, 2017 letter suggests that Vachani in

15    his personal capacity has certified compliance with the permanent injunction.

16    Nevertheless, Vachani has not withdrawn his earlier statement that Sections 2, 3, and 4 of

17    the permanent injunction do not apply to Vachani personally. In short, there is tension between

18    Vachani's May 12, 2017 letter, which denies that portions of the permanent injunction apply to

19    Vachani personally, and Vachani's July 14, 2017 letter, which appears to certify that both

20    Defendants have complied with each section of the permanent injunction. However, although there

21    is some doubt about Vachani's compliance with the permanent injunction, there is not clear and

22    convincing evidence of noncompliance.

23    Therefore, in light of Vachani's July 14, 2017 letter certifying compliance, the Court finds

24    that there is not clear and convincing evidence that Vachani has failed to comply with the May 2,

25    2017 permanent injunction.[4] Thus, a contempt finding against Vachani is not warranted at this

26    _____

27    [4] As discussed above, Defendants' May 12, 2017, and July 14, 2017 were untimely. However,

25

28    Case No. 08-CV-05780-LHK
ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
CONTEMPT SANCTIONS

1  stage. However, in order to clarify whether Vachani is compliant with the permanent injunction,

2  the Court ORDERS that within five days of the instant order, Vachani shall file a certification in

3  writing, under penalty of perjury, that all sections of the permanent injunction apply to Vachani

4  personally. Vachani shall also explicitly certify his compliance in his personal capacity with each

5  section of the permanent injunction. If Vachani fails to file this certification within five days, the

6  Court may find Vachani in contempt of court and order additional sanctions.

7        **3.  Contempt Sanctions**

8        As discussed above, the Court holds that Power and Vachani, in his capacity as CEO of

9  Power, are in contempt of court for failing to pay the $39,796.73 discovery sanction. The Court

10  now considers the proper contempt sanction.

11        Facebook requests a fine of $500 per day of noncompliance as well as an award of

12  attorney's fees for the instant motion. Thus, attorney's fees are justified because "the cost of

13  bringing the violation to the attention of the court is part of the damages suffered by the prevailing

14  party . . . ." *Id.*; *see also Gen. Signal Corp.*, 787 F.2d at 1380 ("Compensatory awards are limited

15  to actual losses sustained as a result of the contumacy."). The instant motion was necessary to

16  "bring a violation of an order to the court's attention." *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th

17  Cir. 1985). Specifically, the instant motion was necessary to inform the Court of Defendants'

18  ongoing failure to pay the discovery sanction. Additionally, as discussed above, at the time of

19  Facebook's motion for contempt sanctions, Vachani was in contempt for failing to certify

20  compliance with the injunction in his personal capacity, and the instant motion was necessary to

21  bring this failure to the Court's attention. Therefore, an attorney's fees award is justified. As

22  discussed above, Facebook has filed a companion motion for attorney's fees along with the instant

23  motion. The Court has granted this motion. In the motion for attorney's fees, Facebook has chosen

24  not to request fees for any work performed after April 2017. *See* ECF No. 446-1, at 1 ("Billings

25  for May 2017 have not been included.").

26

27  Facebook does not seek a finding of contempt based on the untimeliness of the letters.

28  Case No. 08-CV-05780-LHK
ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
CONTEMPT SANCTIONS

As to the requested fine, the Ninth Circuit has held that a "per diem fine imposed for each day a contemnor fails to comply with an affirmative court order" is a "paradigmatic civil contempt sanction[]." *United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999); *NLRB v. Ironworkers Local 433*, 169 F.3d 1217, 1222 (9th Cir. 1999) (describing per diem fines as a method of "coercing future compliance" with court orders). Facebook argues that a $500 per day fine is appropriate in coercing compliance. *See, e.g.*, *United States v. Ayres*, 166 F.3d 991, 994 (9th Cir. 1999) (upholding $500 per day coercive sanction for failing to comply with subpoena); *United States v. Bright*, 2009 U.S. Dist. LEXIS 15915, *40 (D. Haw. 2009) (issuing $500 per day coercive sanction until party produced documents); *Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165, 166 (7th Cir. 1997) (discussing $300 per day coercive sanction until defendants complied with order to pay for previous sanctionable misconduct).

However, the Ninth Circuit has held that "a district court should apply the least coercive sanction (e.g., a monetary penalty) reasonably calculated to win compliance with its orders." *United States v. Alfredoflores*, 628 F.2d 521, 527 (9th Cir. 1980) (internal quotation marks omitted). In light of the fact that the Court has not found contempt based on the permanent injunction and the fact that Defendants appear to have few assets, the Court finds that a $500 per day fine is not "the least coercive sanction . . . reasonably calculated to win compliance." *Id.* Although higher awards are sometimes appropriate, the Ninth Circuit and other courts have found that a fine in the amount of $100–$200 per day is proper and proportional in coercing compliance. *See In re Rubin*, 172 F.3d 876 (9th Cir. 1999) (unpublished) (affirming $100 per day contempt fine); *In re E. W. Const. Co., Inc.*, 21 F.3d 1112 (9th Cir. 1994) (same); *Rich v. Kirkland*, 2016 WL 199390, at *4 (C.D. Cal. Jan. 15, 2016) (ordering $200 per day contempt sanction). The Court finds that a $100 per day coercive sanction is warranted in the instant case.

Courts may also apply grace periods before coercive sanctions go into effect. *See Ayres*, 166 F.3d at 994 (upholding order providing for ten-day grace period); *Donovan v. Mazzola*, 761 F.2d 1411, 1416 (9th Cir. 1985) (discussing month-long grace period). The Court finds that a short

Case No. 08-CV-05780-LHK
ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
CONTEMPT SANCTIONS

1  five-day grace period is warranted in the instant case.

2  The Court therefore ORDERS that after a five-day grace period beginning on the date of

3  this order, for each day that Power does not pay the $39,796.73 discovery sanction, $100 shall be

4  added to the amount owed.

5  ### III.  CONCLUSION

6  For the foregoing reasons, the Court makes the following rulings:

7  The Court GRANTS Facebook's motion for attorney's fees. The Court finds that Vachani

8  and Power are jointly and severally liable for the $145,028.40 attorney's fee award.

9  In order to clarify whether Vachani is compliant with the permanent injunction, the Court

10  ORDERS that within five days of the instant order, Vachani shall file a certification in writing,

11  under penalty of perjury, that all sections of the permanent injunction apply to Vachani personally

12  and that Vachani personally has complied with each section of the permanent injunction.

13  The Court also finds that Power and Vachani, in his capacity as CEO of Power, are in

14  contempt of Court for their ongoing failure to pay the $39,796.73 discovery sanction. The Court

15  therefore ORDERS that after a five-day grace period beginning on the date of this order, for each

16  day that Power does not pay the $39,796.73 discovery sanction, $100 shall be added to the amount

17  owed.

18  **IT IS SO ORDERED.**

19

20  Dated: August 8, 2017

21  *Lucy H. Koh*
_____

22  LUCY H. KOH
United States District Judge

23

24

25

26

27

28

United States District Court
Northern District of California